UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Yolany PADILLA, Ibis GUZMAN, and Blanca ORANTES;<br><br>             Plaintiffs-Petitioners,<br><br>             v.<br><br>U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and Immigration Services ("USCIS"); U.S. Department of Health and Human Services ("HHS"); Office of Refugee Resettlement ("ORR"); Thomas Homan, Acting Director of ICE; Kirstjen Nielsen, Secretary of DHS; Kevin K. McAleenan, Acting Commissioner of CBP; L. Francis Cissna, Director of USCIS; Alex M. Azar II, Secretary of HHS; Scott Lloyd, Director of ORR; and Marc J. Moore, Seattle Field Office Director, ICE;<br><br>             Defendants-Respondents. | Case No. 2:18-cv-928<br><br>**COMPLAINT—CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT - 0

## INTRODUCTION

1.      This case challenges the United States government's forcible separation of parents from their minor children for no legitimate reason and notwithstanding the threat of irreparable psychological damage that separation causes children.

2.      This case also challenges the United States government's practice of prolonging the separation and detention of families by failing to expeditiously conduct credible fear interviews, which trigger the detained immigrants' rights to appear before an immigration judge to present their asylum claims and to request individual custody hearings to seek their release.

3.      Plaintiffs Ibis Guzman, Blanca Orantes, and Yolany Padilla are parents who entered the United Sates with their children seeking asylum. In May 2018, federal immigration authorities took their children away from them and then transferred Plaintiffs to immigration detention in Washington State, thousands of miles from their children. The government has refused to release them or even allow them to be reunited with their children during the pendency of their civil immigration proceedings.

4.      The government separated Ms. Guzman from her five-year-old son, R.G., transferring and detaining them in facilities thousands of miles from each other.

5.      The government separated Ms. Orantes from her eight-year-old son, A.M., transferring and detaining them in facilities thousands of miles from each other.

6.      The government separated Ms. Padilla from her six-year-old son, J.A., transferring and detaining them in facilities thousands of miles from each other.

7.      Mss. Guzman, Orantes, and Padilla bring this action on behalf of themselves and other similarly situated, asking this Court to order the government to reunite them with their

COMPLAINT - 1

children, from whom they have been separated now for more than a month. None of them have been permitted to visit or even see their children.

8.      The United States government has not provided these mothers with a credible fear interview. Thus, they have been unable to even initiate their applications for asylum or to request a custody hearing before an immigration judge to petition for their release. Moreover, there is no established framework of time in which they can expect to be reunited with their children.

9.      These mothers bring this action on behalf of the dozens of other parents detained in Washington State whom the government has forcibly separated from their children and continues to separate. Like Mss. Guzman, Orantes, and Padilla, these parents have fled persecution and are seeking asylum in the United States. Without any assertions of abuse, neglect, or parental unfitness, and with no hearings of any kind, the government is detaining these parents on the other side of the country from their young children, who have been left to face an uncertain future frightened and alone. Many of these parents have been unable to even speak to their children since their separation.

10.     Forced separation from parents causes severe trauma to children, especially those who are already traumatized and are fleeing persecution in their home countries. The resulting cognitive and emotional damage can be permanent.

11.     Such forced separation is also deeply damaging to parents, many of whom have little to no information regarding the well-being of their children and fear they may never see them again.

12.     Defendants have ample ways to keep parents together with their children. They may parole them into the country, or release them on bond or supervised conditions as they

COMPLAINT - 2

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

pursue the often-lengthy asylum process, pursuant to the government's prior policy. If, however, the government insists on continuing to detain these parents and children, it must at a minimum detain them *together* in one of its immigration family detention centers.

13.    Moreover, if the government chooses to detain them, it must provide prompt credible fear interviews, affording the detained asylum seekers the opportunity to initiate the asylum process without suffering prolonged separation and detention.

14.    The Due Process Clause of the Fifth Amendment does not permit the government to forcibly take minor children from their parents without a compelling justification. The Due Process Clause also prevents the government from separating these families without a hearing. That separation also violates the asylum statutes, which guarantee a meaningful right to apply for asylum, and the Administrative Procedure Act (APA), which prohibits arbitrary government action. Additionally, the government's unreasonable delay in providing credible fear interviews for plaintiff mothers and class members further prolongs their separation from their children and the detention of the family, constituting agency action unlawfully withheld or unreasonably delayed under the APA.

## JURISDICTION

15.    This case arises under the Fifth Amendment to the United States Constitution, federal asylum statutes, and the APA. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I, § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Plaintiffs are in custody for purposes of habeas jurisdiction.

## VENUE

COMPLAINT - 3

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

16.     Venue is proper under 28 U.S.C. § 1391 because Mss. Guzman, Orantes, and Padilla are detained within this District and a substantial portion of the relevant facts occurred within this District, including the continued separation of Plaintiffs from their children. Defendant DHS, with its local field office located in Tukwila, Washington, is responsible for determining whether Plaintiffs will be released, and how soon their cases will be submitted for hearings before the immigration court.

### **PARTIES**

17.     Plaintiff Guzman is a citizen of Honduras. She is the mother of five-year-old R.G.

18.     Plaintiff Orantes is a citizen of El Salvador. She is the mother of eight-year-old A.M.

19.     Plaintiff Padilla is a citizen of Honduras. She is the mother of six-year-old J.A.

20.     Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

21.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

22.     Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens who are apprehended near the U.S. border, including referring them for a credible fear interview by an asylum officer.

23.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its asylum officers, conducts interviews of certain individuals

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

24.     Defendant U.S. Department of Health and Human Services ("HHS") is a department of the executive branch of the U.S. government which has been delegated with authority over "unaccompanied" noncitizen children.

25.     Defendant Office of Refugee Resettlement ("ORR") is the component of HHS which provides care of and placement for "unaccompanied" noncitizen children.

26.     Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of Plaintiffs.

27.     Defendant Marc J. Moore is sued in his official capacity as the ICE Seattle Field Office Director, and is a legal custodian of Plaintiffs.

28.     Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of DHS. In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP. As a result, Defendant Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, is empowered to grant asylum or other relief, and is a legal custodian of the Plaintiffs.

29.     Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

30.     Defendant Kevin K. McAleenan is sued in his official capacity as the Commissioner of CBP.

31.     Defendant Alex M. Azar II is sued in his official capacity as the Secretary of HHS.

32.     Defendant Scott Lloyd is sued in his official capacity as the Director of ORR.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## **FACTS**

33.     Over the last few months, the government has separated hundreds of migrant families after they were apprehended together at the border.

34.     Upon information and belief, 2,342 children have been separated from their parents at or near the U.S.-Mexico border since early May 2018 alone. *See, e.g.*, Camila Domonoske & Richard Gonzales, *What We Know: Family Separation And 'Zero Tolerance' At The Border*, NPR NEWS (June 19, 2018), https://www.npr.org/2018/06/19/621065383/what-we-know-family-separation-and-zero-tolerance-at-the-border (last visited June 20, 2018).

35.     The vast majority of these migrant families fled persecution and are seeking asylum.

36.     The government has no legitimate purpose in separating these families while they go through their civil immigration proceedings.

37.     There are no allegations that the parents are unfit or abusing their children in any way, yet the government has forcibly separated them from their children and detained the children, generally thousands of miles away, in facilities for "unaccompanied" children. The parents, for their part, have been transferred to detention facilities around the country to await their civil immigration proceedings. The plaintiff mothers and proposed class members in this case were transferred to Washington State—thousands of miles from their initial apprehension.

38.     Some parents were separated from their children when they arrived at a port of entry seeking asylum.

39.     Upon information and belief, many parents were initially separated from their children in order to face federal criminal prosecution for entering the country without permission. Indeed, in April 2018, Attorney General Sessions announced a "zero-tolerance

COMPLAINT - 6

policy" requiring all U.S. Attorney's Offices along the U.S.-Mexico border to prioritize the prosecution of offenses under 8 U.S.C. § 1325(a) (improper entry). *See* Dep't of Justice, Office of Public Affairs, "Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry," Press Release No. 18-417 (Apr. 6, 2018), *available at* https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-illegal-entry (last visited June 22, 2018); U.S. Customs and Border Protection, "Zero Tolerance Immigration Prosecutions – Family Fact Sheet" (June 15, 2018), *available at* https://www.cbp.gov/newsroom/zero-tolerance-immigration-prosecutions-family-fact-sheet ("The Attorney General directed United States Attorneys on the Southwest Border to prosecute all amenable adults who illegally enter the country, including those accompanied by their children, for 8 U.S.C. § 1325(a), illegal entry.").

40.     Thus, many of these parents were charged and prosecuted with the misdemeanor crime of improper entry under 8 U.S.C. § 1325. Most were sentenced to time served, generally three to four days.

41.     However, after the parents served their time on their federal convictions, the government did not reunite them with their children. Instead, it held the parents for several more days or weeks at facilities on the southern border before transferring them to federal prisons across the country, keeping them imprisoned while waiting to begin processing them for civil immigration proceedings. The parents have not been permitted to even visit or see their children. Many have not been permitted to speak with their children.

42.     The federal government has continued to separate the children from their parents for several weeks—all the while failing to provide parents their credible fear interviews in order to continue pursuing their asylum claim, and failing to provide them information on when

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

they will appear in front of an immigration judge, much less when they will be reunited with their children.

43.     What is more, news reports have documented instances of parents who have been released from immigration detention—or been deported—but have not been reunited with their children. *See, e.g.*, Eli Rosenberg, *Woman sues to get her son, 7, back from Border Patrol*, THE MERCURY NEWS (June 20, 2018), https://www.mercurynews.com/2018/06/20/woman-sues-to-get-her-son-7-back-from-border-patrol/ (last visited June 21, 2018); Miriam Jordan, *'I Can't Go Without My Son,' a Mother Pleaded as She Was Deported to Guatemala*, N.Y. TIMES (June 17, 2018) https://www.nytimes.com/2018/06/17/us/immigration-deported-parents.html (last visited June 21, 2018).

44.     Government officials have confirmed that the policy of family separation is intended to deter individuals from unlawfully entering the United States with their children. *See, e.g.*, Philip Bump, *Here are the administration officials who have said that family separation is meant as a deterrent*, THE WASHINGTON POST (June 19, 2018) https://www.washingtonpost.com/news/politics/wp/2018/06/19/here-are-the-administration-officials-who-have-said-that-family-separation-is-meant-as-a-deterrent/?utm_term=.bbb784318bc0 (last visited June 22, 2018) (collecting public statements by White House Chief of Staff John F. Kelly, Attorney General Sessions, and Defendant Nielsen); *see also* Rafael Bernal*, DHS Head Confirms He's Considering Separating Families at Border,* THE HILL (Mar. 6, 2017), http://thehill.com/latino/322608-dhs-head-confirms-hes-considering-separating-families-at-border (last visited June 25, 2018); Caitlin Dickerson & Ron Nixon, *Trump Administration Considers Separating Families to Combat Illegal Immigration*, N.Y. TIMES (Dec. 21, 2017),

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

https://www.nytimes.com/2017/12/21/us/trump-immigrant-families-separate.html (last visited June 22, 2018).

45.     News sources have reported that holding noncitizen children separated from their parents in newly created "tent city" facilities is twice as costly as detaining the children together with their parents. Julia Ainsley, *Trump admin's 'tent cities' cost more than keeping migrant kids with parents*, NBC News (June 20, 2018), https://www.nbcnews.com/politics/congress/house-rejects-conservative-immigration-bill-delays-vote-gop-compromise-measure-n885406 (last visited June 21, 2018).

46.     After much public outcry, on June 20, 2018, President Donald J. Trump issued an Executive Order (EO) addressing the policy and practice of family separation. EO 13841, "Affording Congress an Opportunity to Address Family Separation," § 1, 83 FR 29435 (June 20, 2018). The EO announces that it is the "policy of this Administration to maintain family unity, including by detaining alien families together where appropriate and consistent with law and available resources." *Id.*

47.     The EO further calls for the Secretary of DHS to "maintain custody of alien families during the pendency of any criminal improper entry or immigration proceedings involving their members." *Id.* § 3(e).

48.     Accordingly, under the EO, families will be detained throughout lengthy civil immigration proceedings—that is, for an indefinite period.

49.     However, the EO does not *prohibit* the separation of families during the pendency of immigration proceedings.

50.     Moreover, it does not address what action, if any, the government will take with respect to families the government has already forcibly separated. In fact, news sources report

COMPLAINT - 9

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

that "more than 2,300 children who have already been separated from their parents under the president's 'zero tolerance' policy will not be immediately reunited with their families while the adults remain in federal custody during their immigration proceedings." Michael D. Shear, Abby Goodnough, & Maggie Haberman, *Trump Retreats on Separating Families, but Thousands Will Remain Apart*, N.Y. TIMES (June 20, 2018), https://www.msn.com/en-us/news/us/trump-retreats-on-separating-families-but-thousands-will-remain-apart/ar-AAyVnxm (last visited June 22, 2018) (quoting Kenneth Wolfe, a spokesman for the Administration for Children and Families within Defendant HHS, as stating that "[t]here will not be a grandfathering of existing cases").

51.     Indeed, upon information and belief, the government does not have a plan in place for reuniting these parents with their children. Jonathan Blitzer, *The Government Has No Plan for Reuniting the Immigrant Families It Is Tearing Apart*, THE NEW YORKER (June 18, 2018), https://www.newyorker.com/news/news-desk/the-government-has-no-plan-for-reuniting-the-immigrant-families-it-is-tearing-apart (last visited June 22, 2018) (noting that no protocols are in place to track parents and children or for reuniting them).[1]

52.     On June 23, 2018, DHS issued a Memorandum instructing that the government has taken "the following steps toward reunification:

> Implemented an identification mechanism to ensure on-going tracking of linked family members throughout the detention and removal process;
> Designated detention locations for separated parents and will enhance current processes to ensure communication with children in HHS custody;
> Worked closely with foreign consulates to ensure that travel documents are issued for both the parent and child at time of removal; and

---

[1]     Prior administrations detained migrant families, but did not have a practice of forcibly separating fit parents from their young children. Instead, families were generally released upon demonstrating a credible fear of persecution. They were then able to live with family or community members while they awaited the immigration court to adjudicate their asylum applications. In cases where the family was not released, they were housed together with their children at government-operated family detention centers.

COMPLAINT - 10

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

> Coordinated with HHS for the reuniting of the child prior to the parents' departure from the United States."

None of these steps include any plans to reunite the children with their parents unless they are scheduled for departure from the United States. *See* Dep't of Homeland Sec., "Fact Sheet: Zero-Tolerance Prosecution and Family Reunification" (June 23, 2018), *available at* https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification (last visited June 25, 2018).

53.    There is overwhelming medical evidence that the separation of a young child from his or her parent will have a devastating negative impact on the child's well-being, especially where there are other traumatic factors at work, and that this damage can be permanent.

54.    The American Association of Pediatrics has repeatedly denounced any policy or practice of separating migrant children from their parents, noting in a January 2018 letter signed with more than 200 other organizations that: "Forced separation disrupts the parent-child relationship and puts children at increased risk for both physical and mental illness. . . . [T]he psychological distress, anxiety, and depression associated with separation from a parent would follow the children well after the immediate period of separation—even after the eventual reunification with a parent or other family." Letter to Kirstjen M. Nielsen, Secretary of U.S. Dep't of Homeland Sec. (Jan. 16, 2018), *available at* https://static1.squarespace.com/static/597ab5f3bebafb0a625aaf45/t/5a5e55cf0d9297a44bbb8d3e/1516131791958/2018_01_16+Child+Welfare+Juvenile+Justice+Opposition+to+Parent+Child+Separation+Plan.pdf (last visited June 22, 2018).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

55.     The harm caused by this forced separation is compounded by the government's delay in processing parents' claims for asylum, which continues to unreasonably prolong those parents' separation from their children and their detention.

56.     Upon first interacting with federal immigration officials—often CBP officers or Border Patrol agents—the overwhelming majority of these parents expressed their need for protection or intention to seek asylum. The law requires that Defendant CBP then refer the asylum-seekers to Defendant USCIS to conduct an interview to assess whether they possess a credible fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4).

57.     If an asylum officer makes a positive determination, the asylum-seeker is referred to an immigration judge for a hearing on the petition for asylum. *See* 8 C.F.R. § 208.30(f). If still detained, the asylum-seeker is also then entitled to petition for their release at an individual custody hearing before an immigration judge. 8 C.F.R. § 1236.1(d).

58.     If the asylum officer does not find the expressed fear of persecution to be credible, the noncitizen may seek review of the adverse credible fear determination before an immigration judge. *See* 8 C.F.R. § 208.30(g).

59.     Thus, Plaintiffs must first receive their credible fear interview before they are entitled to present their asylum claims, along with any petition for individual custody hearings, to an immigration judge. Yet Defendants have unreasonably delayed providing this requisite first step.

60.     Moreover, despite Defendants' assertion that "a parent who is ordered removed from the U.S. may request that his or her minor child accompany them," Defendants carve out an exception for those deemed to be a "criminal alien." *See* Dep't of Homeland Sec., "Fact Sheet: Zero-Tolerance Prosecution and Family Reunification" (June 23, 2018), *available at*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

https://www.dhs.gov/news/2018/06/23/fact-sheet-zero-tolerance-prosecution-and-family-reunification (last visited June 25, 2018) ("There will be a small number of children who were separated for reasons other than zero tolerance that will remain separated: generally only if the familial relationship cannot be confirmed, we believe the adult is a threat to the safety of the child, or the adult is a criminal alien.").

61.     This exception could be applied to all who are charged for improper entry under 8 U.S.C. § 1325, in effect nullifying any assurance that the government will not physically deport the parent without reunifying them with their child first.

**Plaintiff Ibis Guzman**

62.     Ms. Guzman and her five-year-old son R.G. are one of the many families that have recently been separated by the government.

63.     Ms. Guzman and her son are seeking asylum in the United States.

64.     On or about May 16, 2018, Ms. Guzman and her son arrived in the United States. When they were apprehended by Border Patrol agents for entering without inspection, Ms. Guzman informed them that she and R.G. are seeking asylum.

65.     Ms. Guzman and her son were transported to a holding facility known as an "hielera," or freezer, because of the freezing temperatures of the rooms. Ms. Guzman was then questioned by Border Patrol officers.

66.     After initial questioning, an officer came and forcibly took Ms. Guzman's son, falsely informing her she would be able to see him again in three days.

67.     After those three days, Ms. Guzman was transferred to another CBP facility. She inquired with officers about reunification with her son. They told her they did not know anything about the boy's whereabouts.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

68.     Ms. Guzman was then transferred to a facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her child and without any means to contact him. She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

69.     About two weeks later, Ms. Guzman was transferred to the Federal Detention Center in SeaTac, Washington. After being held there for about another week, she was finally informed her child had been placed with Baptist Child and Family Services in San Antonio, Texas, thousands of miles from where she was being held. She was still unable to contact him.

70.     On June 20, 2018, Ms. Guzman was transferred to the Northwest Detention Center in Tacoma, Washington, where she continues to be held, separated from her minor child.

71.     Ms. Guzman has not yet received a credible fear interview.

72.     Every day that R.G. is separated from his mother causes him greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

73.     Ms. Guzman is extremely distraught and depressed because of the separation from her son, and cries when she speaks about him. She worries he is also experiencing anxiety from the separation and may not be eating. In Honduras, she was a single mother and was with her son almost constantly, so being apart from him affects her profoundly.

74.     The government has no legitimate interest in separating Ms. Guzman and her child.

75.     There has been no evidence, or even accusation, that R.G. was abused or neglected by Ms. Guzman.

COMPLAINT - 14

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

76.     There has been no evidence, or even accusation, that Ms. Guzman is a threat to R.G.'s safety.

77.     There has been no evidence, or even accusation, that Ms. Guzman is an unfit parent or that she is not acting in the best interests of her child.

**Plaintiff Blanca Orantes**

78.     Ms. Orantes and her eight-year-old son, A.M., also seek asylum in the United States, and are also a family recently separated by the government.

79.     On or around May 21, 2018, Ms. Orantes and A.M. entered the United States without inspection. She immediately walked with her child to the CBP station to request asylum, and was then apprehended by CBP officers.

80.     Ms. Orantes and her son were transported to a CBP facility. Before entering the building, the CBP officers led Ms. Orantes into a *hielera* with other adults, and her son into another part of the station with other children.

81.     Ms. Orantes was later interviewed by a CBP officer. At that time, another officer brought A.M. to her and told her to "say goodbye" to him because they were being separated. A.M. began crying and pleading Ms. Orantes not to leave. She has not seen her son since that date.

82.     On or around May 24, 2018, Ms. Orantes was handcuffed and taken to court, where she pled guilty to improper entry under 8 U.S.C. § 1325 and was sentenced to time served. She was then returned to her cell.

83.     About nine days after this, Ms. Orantes was transported to the Federal Detention Center in SeaTac, Washington.

COMPLAINT - 15

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

84.     Ms. Orantes was not provided any information about her child until June 9th, when an ICE officer handed her a slip of paper advising that her son was being held at Children's Home of Kingston, in Kingston, New York.

85.     On June 20th, Ms. Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she is currently being held, still forcibly separated from her son. It was not until that date—about a month after their separation—that she was finally able to speak to A.M. To date, she has spoken to her son twice.

86.     Ms. Orantes has not yet received a credible fear interview.

87.     Every day that A.M. is separated from his mother causes him greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

88.     Ms. Orantes is experiencing deep distress and mental pain because of the separation from her son. She constantly feels hopeless and distraught, not knowing when she will see her son again. Ms. Orantes is concerned about A.M.'s physical wellbeing and fears that he may be feeling abandoned and isolated.

89.     The government has no legitimate interest in separating Ms. Orantes and her child.

90.     There has been no evidence, or even accusation, that A.M. was abused or neglected by Ms. Orantes.

91.     There has been no evidence, or even accusation, that Ms. Orates is a threat to A.M.'s safety.

92.     There has been no evidence, or even accusation, that Ms. Orantes is an unfit parent or that she is not acting in the best interests of her child.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**Plaintiff Yolany Padilla**

93.     Ms. Padilla and her six-year-old son, J.A., also came to the United States seeking asylum, and are one of the families recently separated by the government.

94.     Ms. Padilla and her son fled Honduras and arrived in the U.S. on or about May 18, 2018. They were arrested by a Border Patrol agent as they were making their way to a nearby port of entry.

95.     When they arrived at the port of entry, an officer there announced to her and the rest of the group that the adults and children were going to be separated. The children old enough to understand the officer began to cry. J.A. clutched his mother's shirt and said, "no, mommy, I don't want to go." Ms. Padilla reassured her son that any separation would be short, and that everything would be okay. She was able to stay with her son until they were transferred later that day to a *hielera*, where they were forcibly separated without explanation.

96.     Ms. Padilla saw her son just one more time about a day later, when the immigration officers took a photograph of the two together. That was the last time she saw J.A.

97.     While they were in that facility, Ms. Padilla informed the immigration officers that she and her son were afraid to return to Honduras.

98.     About three days later, Ms. Padilla was transferred to another facility in Laredo, Texas. The officers in that facility took her son's birth certificate from her. When she asked for it back, she was told that the immigration authorities had it. No one has returned Ms. Padilla's son's birth certificate to her.

99.     About twelve days later, Ms. Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

COMPLAINT - 17

100.     Ms. Padilla was told that she would be criminally charged, but was not taken to a court or presented before a judge.

101.     Despite repeated inquiries into her son's whereabouts, Ms. Padilla was not provided any information about him until about a month into her detention, when the Honduran consul visited the detention center and she explained she had no news of her six-year-old son. Soon thereafter, she was given a piece of paper saying he was in a place called Cayuga Center in New York, along with a phone number. She was unable to contact him, however, because she did not have money to make a call.

102.     She was finally able to speak to him a day later, when someone gave her the opportunity to call him for ten minutes. During the call, the boy mostly cried quietly. Ms. Padilla has been unable to call him again.

103.     Ms. Padilla has not yet received a credible fear interview.

104.     Every day that J.A. is separated from his mother causes him greater emotional and psychological harm and could potentially lead to permanent emotional trauma.

105.     Ms. Padilla is extremely distraught and depressed because of the separation from her son, from whom she had never been separated before. She cries when she speaks about him. She worries about his emotional well-being and whether he is eating.

106.     The government has no legitimate interest in separating Ms. Padilla and her child.

107.     There has been no evidence, or even accusation, that J.A. was abused or neglected by Ms. Padilla.

108.     There has been no evidence, or even accusation, that Ms. Padilla is a threat to J.A.'s safety.

COMPLAINT - 18

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

109.     There has been no evidence, or even accusation, that Ms. Padilla is an unfit parent or that she is not acting in the best interests of her child.

## **CLASS ALLEGATIONS**

110.     Mss. Guzman, Orantes, and Padilla bring this action under Federal Rule of Civil Procedure 23(b)(2) on behalf of themselves and a class of all other persons similarly situated who are or will be detained by DHS in Washington State.

111.     Plaintiffs seek to represent the following class:

> All parents who (1) are or will be detained in immigration custody by the Department of Homeland Security in Washington State and (2) have been separated from a minor child by DHS officials, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

112.     Plaintiffs are each adequate representatives of the proposed class.

113.     The proposed class satisfies the requirements of Rule 23(a)(1) because the class is so numerous that joinder of all members is impracticable.

114.     Upon information and belief, there are at least forty-six parents that currently fit within the class.

115.     The class meets the commonality requirements of Federal Rule of Civil Procedure 23(a)(2). The members of the class are subject to a common practice by Defendants: forcibly separating detained parents from their minor children while they are being processed in civil immigration proceedings. By definition, all class members have experienced that practice, and none has been given an adequate hearing regarding the separation. The lawsuit raises numerous questions of law common to members of the proposed class, including: whether Defendants' family separation practice violates class members' substantive due process right to family integrity; whether the practice violates class members' procedural due process rights;

COMPLAINT - 19

whether the practice violates the federal asylum statute; whether these separations are arbitrary and capricious under the APA; and whether Defendants' delay in providing credible fear interviews constitutes agency action unlawfully withheld or unreasonably delayed under the APA.

116.    The proposed class meets the typicality requirements of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Mss. Guzman, Orantes, and Padilla and the proposed class members are all individuals who have had their children forcibly taken away from them despite there being no proven allegations of abuse, neglect, or any other danger or unfitness. They have all been transferred to detention in Washington State solely for the purpose of their civil immigration proceedings. Plaintiffs and the proposed class also share the same legal claims, which assert the same substantive and procedural rights under the Due Process Clause, the asylum statute, and the APA.

117.    The proposed class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that they be expeditiously reunified with their children, whether through release or in family detention facilities; that Defendants promptly provide credible fear interviews; that no parent be deported without their child, absent a hearing before a court where the government demonstrates that it is not in the child's best interest to be reunified with their parent. In defending their own rights, Mss. Guzman, Orantes, and Padilla will defend the rights of all proposed class members fairly and adequately.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

118.    The proposed class is represented by counsel from the Northwest Immigrant Rights Project. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

119.    The members of the class are readily ascertainable through Defendants' records.

120.    The proposed class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unlawfully separating parents from their young children while they are placed in civil immigration proceedings. Defendants have also unreasonably delayed in conducting class members' credible fear interviews. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

## **CAUSES OF ACTION**

### **COUNT I**

### **(Violation of Due Process)**

### **(Against All Defendants Except USCIS Defendants)**

121.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

122.    The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Mss. Guzman, Orantes, and Padilla and their children as well as all proposed class members.

123.    Plaintiffs, their children, and all class members have a liberty interest under the Due Process Clause in remaining together as a family.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

124.    The separation of the class members from their children violates substantive due process because it furthers no legitimate purpose, much less a compelling governmental interest.

125.    The separation of the class members from their children also violates procedural due process because it was undertaken without any hearing.

## COUNT II

### (Administrative Procedure Act—Arbitrary and Capricious Practice)

### (Against All Defendants Except USCIS Defendants)

126.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

127.    The APA prohibits agency action that is arbitrary and capricious and contrary to constitutional right.

128.    Defendants' separation of Plaintiffs and the other class members from their children without a compelling justification and without a mechanism, protocol, or system to guarantee their reunification is final agency action that is arbitrary and capricious. It accordingly violates the APA. 5 U.S.C. § 706(2)(A).

## COUNT III

### (Administrative Procedure Act—Agency Action Unlawfully Withheld or Unreasonably Delayed)

### (Against Defendants DHS, CBP, ICE, and USCIS)

129.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

130.    Defendant DHS and its sub-agencies are required to conduct an interview to assess whether an asylum-seeker has a credible fear of persecution. This obligation is triggered

COMPLAINT - 22

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

when Defendants learn of an individual's fear of persecution. *See* 8 U.S.C. § 1225(b)(1)(A)(ii). Asylum-seekers are only permitted to raise their claim before an immigration judge after the asylum officer conducts the credible fear interview. *See* 8 C.F.R. § 208.30(f), (g).

131.    Conducting a credible fear interview is a discrete, final agency action that DHS is required to take.

132.    Under the APA, an agency has a duty to conclude matters presented to it within a "reasonable time." 5 U.S.C. § 555(b).

133.    Defendants' failure to expeditiously conduct a credible fear interview when they have detained the asylum-seekers and separated them from their children constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA, *see* 5 U.S.C. § 706(1), for such delay prolongs the baseless separation between the parents and their children, and extends the time all are detained.

## COUNT IV

### (Violation of Asylum Statute)

134.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

135.    Under United States law, noncitizens fleeing persecution shall have the opportunity to apply for asylum in the United States. *See* 8 U.S.C. § 1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1). Plaintiffs have a private right of action to vindicate their right to apply for asylum.

136.    Defendants' separation of Plaintiffs and the other asylum-seeking class members from their children violates federal asylum law, because it infringes on their ability to pursue their asylum claims.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**PRAYER FOR RELIEF**

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.  Certify a class of all parents who (1) are or will be detained in immigration custody by the Department of Homeland Security in Washington State and (2) have been separated from a minor child by DHS officials, absent a demonstration in a hearing that the parent is unfit or presents a danger to the child.

B.  Name Mss. Guzman, Orantes, and Padilla as representatives of the class, and appoint their counsel as class counsel;

C.  Declare the separation of Mss. Guzman, Orantes, and Padilla and all the other class members from their children unlawful;

D.  Preliminarily and permanently enjoin Defendants from continuing to separate Mss. Guzman, Orantes, and Padilla and all the other class members by detaining them in separate locations from where their children are held;

E.  Where Plaintiffs' children have not already been released, order Defendants to expeditiously release Mss. Guzman, Orantes, and Padilla and all the other class members along with their children, or to immediately reunite the parents with their children in a facility where they may remain together;

F.  Order Defendants to conduct credible fear interviews for Mss. Guzman, Orantes, and Padilla and all the other class members who have not received one within seven days of the Court's order;

G.  Declare that Defendants have an obligation to provide credible fear interviews for persons subject to expedited removal under 8 U.S.C. § 1225 within 10 days of any

COMPLAINT - 24

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

individual requesting asylum or expressing a fear of persecution or torture if that person remains detained;

H.   Enjoin Defendants from removing Mss. Guzman, Orantes, and Padilla, and all the other class members, from the country until they are reunited with their children, in the event they are not permitted to remain in the United States, absent the parent's permission or a hearing before a court where the government demonstrates that it is not in the child's best interest to be reunified with their parent;

I.   Require Defendants to pay reasonable attorneys' fees and costs;

J.   Order all other relief that is just and proper.

Dated this 25th day of June, 2018.

Respectfully submitted,

NORTHWEST IMMIGRANT RIGHTS PROJECT

*s/ Matt Adams*
Matt Adams, WSBA No. 28287
615 Second Avenue, Suite 400
Seattle, WA  98104
(206) 957-8611
matt@nwirp.org

*s/ Glenda M. Aldana Madrid*
Glenda M. Aldana Madrid, WSBA No. 46987
615 Second Avenue, Suite 400
Seattle, WA  98104
(206) 957-8646
glenda@nwirp.org

*s/ Leila Kang*
Leila Kang, WSBA No. 48048
615 Second Avenue, Suite 400
Seattle, WA  98104
 (206) 957-8608
leila@nwirp.org

*Attorneys for Plaintiffs*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## <u>CERTIFICATE OF SERVICE</u>

I, Matt Adams, hereby certify that on June 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

Dated: June 25, 2018.

*s/ Matt Adams*
Matt Adams, WSBA No. 28287
615 Second Avenue, Suite 400
Seattle, WA  98104
 (206) 957-8608
matt@nwirp.org

COMPLAINT - 27