1

*The Honorable Marsha J. Pechman*

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
8                               AT SEATTLE

9   YOLANY PADILLA, on behalf of herself and her 6-year-old
    son J.A.;  IBIS GUZMAN, on behalf of herself and her
10  5-year-old son R.G.;  BLANCA ORANTES, on behalf of          No. 2:18-cv-928  MJP
    herself and her 8-year-old son A.M.;  BALTAZAR
11  VASQUEZ, on behalf of himself;                              **AMENDED COMPLAINT:**
                                          Plaintiffs-Petitioners, **CLASS ACTION FOR**
12                                                              **INJUNCTIVE AND**
           v.                                                   **DECLARATORY RELIEF**
13
    U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
14  ("ICE"); U.S. DEPARTMENT OF HOMELAND
    SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
15  PROTECTION ("CBP"); U.S. CITIZENSHIP AND
    IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
16  OFFICE FOR IMMIGRATION REVIEW ("EOIR");  U.S.
    DEPARTMENT OF HEALTH AND HUMAN SERVICES
17  ("HHS"); OFFICE OF REFUGEE RESETTLEMENT
    ("ORR"); THOMAS HOMAN, Acting Director of ICE;
18  KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K.
    McALEENAN, Acting Commissioner of CBP; L. FRANCIS
19  CISSNA, Director of USCIS; ALEX M. AZAR II, Secretary
    of HHS; SCOTT LLOYD, Director of ORR; MARC J.
20  MOORE, Seattle Field Office Director;, ICE, JEFFERSON
    BEAUREGARD SESSIONS III, United States Attorney
21  General; LOWELL CLARK, warden of the Northwest
    Detention Center in Tacoma, Washington;  CHARLES
22  INGRAM, warden of the Federal Detention Center in
    SeaTac, Washington;  DAVID SHINN, warden of the
23  Federal Correctional Institute in Victorville, California;

24

25                                          Defendants-Respondents.

26

AMENDED COMPLAINT - 1
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

I.   **INTRODUCTION**

1.      This lawsuit challenges the legality of the following three parts of the federal government's zero-tolerance policy with respect to persons fleeing for safety and asylum in the United States: (1) family separations, (2) credible fear interviews and determinations, and (3) the related bond hearings.

**A.      Family Separations**

2.      This lawsuit challenges the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum.  The day after plaintiffs filed this suit in the Western District of Washington, however, a federal court in the Southern District of California issued a nationwide preliminary injunction Order against this forcible separation. (*Ms. L v. ICE*,  S.D.Cal. case no. 18cv0428 DMS (MDD), docket no. 83).

3.      With this Amended Complaint, plaintiffs confirm that they are not waiving their previously-asserted claims for relief with respect to forcible separation, but will not further pursue those claims in this case pending defendants' promised compliance with the *Ms. L v. ICE* Order.

**B.      Credible Fear Interviews & Determinations**

4.      This lawsuit also challenges the legality of the government's zero-tolerance practice of excessively prolonging the detention of asylum seekers placed in expedited removal proceedings by failing to promptly provide them their credible fear interview and determination. Federal law requires that persons who have asked for asylum or expressed a fear of persecution must be scheduled for a "credible fear interview" with a DHS official to determine whether that person should be allowed to proceed with applying for asylum because he or she has a credible fear of persecution.  If the interviewer determines the asylum seeker <u>does</u> have a credible fear of persecution, the government assigns the case to the federal immigration court for hearings to adjudicate the merits of that person's asylum claim.  If the interviewer determines the asylum seeker does <u>not</u> have a credible fear of persecution, the asylum seeker can appeal that

AMENDED COMPLAINT - 2
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   determination to a federal immigration judge.  But in either case, the federal government detains

2   the asylum seeker until it determines that she or he has a credible fear of persecution.  The *Ms. L*

3   *v. ICE* Order did not address the federal government's lengthy delays in conducting these

4   statutorily required credible fear interviews and or determinations.

5         5.      With this Amended Complaint, plaintiffs clarify and confirm their full pursuit of

6   their claims with respect to defendants' excessively prolonging the detention of asylum seekers

7   by failing to promptly provide the credible fear interviews and determinations required by

8   federal law.

9   **C.**     **Bond Hearings**

10         6.      This lawsuit also challenges the legality of the government's related

11   zero-tolerance practice of excessively prolonging the detention of asylum seekers by failing to

12   promptly conduct the bond hearings required by federal law after an asylum seeker's positive

13   completion of their credible fear interview.  Federal law requires that if an asylum seeker enters

14   the United States at a location other than a designated "Port Of Entry" and is determined to have

15   a credible fear of persecution in his or her credible fear interview, that asylum seeker is entitled

16   to an individualized bond hearing before an immigration judge to determine reasonable

17   conditions for that person's release from federal detention while he or she awaits the many

18   months it takes to adjudicate his or her asylum claim (e.g., a reasonable bond amount or parole

19   without posting a monetary bond).  This bond hearing must comport with constitutional

20   requirements.  Yet the government does not establish any timeline for setting this hearing, and as

21   a matter of practice, does not even audio record or provide a transcript of this hearing for appeal

22   or appellate review (unlike other hearings in removal proceedings before the immigration judge).

23   The *Ms. L v. ICE* Order did not address the federal government's failure to conduct prompt bond

24   hearings that comport with constitutional requirements.

25

26

7.      With this Amended Complaint, plaintiffs specify their claims with respect to defendants' excessively prolonging the detention of asylum seekers by failing to promptly conduct the bond hearings required by federal law.

**D.      United States Constitution**

8.      The Bill of Rights prohibits the federal government from depriving any person of their liberty without due process of law (U.S. Constitution, 5th Amendment).  The Bill of Rights also prohibits the federal government from imposing or inflicting on any person any excessive bail or any cruel punishments.  (U.S. Constitution, 8th Amendment).

9.      Asylum seekers who cross the United States border are persons.  They accordingly have a constitutionally protected liberty interest in (1) remaining together as a family, (2) not being imprisoned for an unreasonable time awaiting their credible fear interview and determination, and (3) not being imprisoned without the opportunity for a prompt bond hearing that comports with constitutional requirements.  And especially with respect to the federal government's avowed zero-tolerance policy to deter criminal violations of federal immigration laws, asylum seekers also have a constitutionally protected interest in (4) not being subjected to prolonged imprisonment for deterrence or penalty reasons unrelated to adjudicating the merits of their individual asylum claim, and (5) not being subjected to cruel punishments though unreasonably delayed or denied bond or parole.

10.     With this Amended Complaint, plaintiffs specify with more particularity how defendants' implementation of the federal government's zero-tolerance policy with respect to persons fleeing for safety and seeking asylum in the United States violates the United States Constitution.

**E.      Federal Law**

11.     Federal law prohibits final agency action that is arbitrary, capricious, unlawfully withheld, or unreasonably delayed (e.g., Administrative Procedures Act, 5 U.S.C. §706).  Federal

AMENDED COMPLAINT - 4
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    law also grants persons fleeing persecution the right to apply for safety and asylum in the United

2    States (e.g., 8 U.S.C. §§1225 &1158; 8 C.F.R. §§235.3, 208.30, & 1003.42).

3         12.    Federal law accordingly prohibits federal agencies from arbitrarily or capriciously

4    depriving an asylum seeker of their child, their prompt credible fear interview and determination,

5    or their prompt bond hearing.  Federal law prohibits federal agencies from unlawfully

6    withholding or unreasonably delaying an asylum seeker's reunification with their child, an

7    asylum seeker's credible fear interview and determination, or an asylum seeker's bond hearing.

8    And federal law prohibits federal agencies from impeding or seeking to deter an asylum seeker's

9    legal right to apply for asylum.

10        13.    With this Amended Complaint, plaintiffs specify with more particularity how

11   defendants' implementation of the federal government's zero-tolerance policy with respect to

12   persons fleeing for safety and asylum in the United States violates federal law.

13   **F.    Requested Relief**

14        14.    With respect to (1) family separations, (2) credible fear interviews and

15   determinations, and (3) the related bond hearings, plaintiffs request <u>injunctive</u> relief requiring

16   defendants to cease their policies and practices implementing the federal government's zero-

17   tolerance policy in violation of the United States Constitution and federal law.  Plaintiffs request

18   <u>declaratory</u> relief to terminate the parties' disagreement with respect to whether (and how)

19   defendants' implementation of the federal government's zero-tolerance policy with respect to

20   persons fleeing for safety and asylum in the United States violates the United States Constitution

21   and federal law.  Lastly, plaintiffs request whatever <u>additional</u> relief this Court finds warranted,

22   just, or equitable.

23                              **II.    <u>JURISDICTION</u>**

24        15.    This case arises under the Fifth and Eighth Amendments of the United States

25   Constitution, the Administrate Procedures Act ("APA"), and federal asylum statutes.  This Court

26

AMENDED COMPLAINT - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  has jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction); 28 U.S.C. §2241 (habeas

2  jurisdiction); and Article I, §9, clause 2 of the United States Constitution ("Suspension Clause").

3      16.    The original plaintiffs in this case were all in custody for purposes of habeas

4  jurisdiction when this action was filed on June 25, 2018.

5      17.    After this action was filed, plaintiff Padilla was eventually released from

6  detention after she was eventually provided her credible fear interview and individualized bond

7  hearing before an immigration judge.  At the time this Amended Complaint is electronically filed

8  on July 15, 2018, plaintiffs Guzman, Orantes, and Vasquez are still in custody for purposes of

9  habeas jurisdiction.

10     18.    At the time this Amended Complaint is electronically filed on July 15, 2018, all

11 but one of the children that the federal government took away from plaintiffs are still in custody

12 for purposes of habeas jurisdiction.  (That one child, Yolany Padilla's 6-year-old son, was finally

13 returned to his mother yesterday, July 14, 2018.)

**III.    VENUE**

15     19.    Venue lies in this District under 28 U.S.C. §1391 because a substantial portion of

16 the relevant facts occurred within this District.  Those facts include defendants' detention of

17 plaintiffs Padilla, Guzman, and Orantes in this District while forcibly separated from their

18 children, failure in this District to promptly conduct a credible fear interview and determination

19 for their asylum claims, and failure in this District to promptly conduct bond hearings that

20 comport with constitutional requirements to set reasonable conditions for release pending

21 adjudication of their asylum claims.

**IV.    PARTIES**

23     20.    Plaintiff **Yolany Padilla** is a human being seeking asylum for herself and her

24 6-year-old son (J.A) in the United States.  She is a citizen of Honduras.

25     21.    Plaintiff **Ibis Guzman** is a human being seeking asylum for herself and her

26 5-year-old son (R.G.) in the United States.  She is a citizen of Honduras.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

22.     Plaintiff **Blanca Orantes** is a human being seeking asylum for herself and her 8-year-old son (A.M.) in the United States.  She is a citizen of El Salvador.

23.     Plaintiff **Baltazar Vasquez** is a human being seeking asylum in the United States. He is a citizen of El Salvador.

24.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal government agency that carries out removal orders and oversees immigration detention.  ICE is part of DHS.  ICE's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings on the merits before the immigration court.  ICE's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

25.     Defendant U.S. Department of Homeland Security ("DHS") is the federal government agency that enforces immigration laws of the United States.  DHS's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings before the immigration court.  DHS's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

26.     Defendant U.S. Customs and Border Protection ("CBP") is the federal government agency that conducts the initial processing and detention of asylum seekers crossing the U.S. border.  CBP is part of DHS.  CBP's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and determination.

27.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is the federal government agency that, through its asylum officers, interviews asylum seekers to determine

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

whether they should be assigned to the immigration court to be allowed to proceed with applying for asylum because they have a credible fear of persecution.  USCIS is a part of DHS.

28.     Defendant Executive Office for Immigration Review ("EOIR") is the federal government agency that is responsible for conducting immigration court proceedings, including adjudicating plaintiffs' asylum claims in removal proceedings and conducting individual bond hearings for persons in removal proceedings.  EOIR is a part of the Department of Justice.

29.     Defendant U.S. Department of Health and Human Services ("HHS") is the federal government agency that has been delegated authority to make custody determinations for "unaccompanied" noncitizen children.

30.     Defendant Office of Refugee Resettlement ("ORR") is the federal government agency that that has been delegated responsibility to care for and place "unaccompanied" noncitizen children.  ORR is part of HHS.

31.     Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of detained plaintiffs.

32.     Defendant Marc J. Moore is sued in his official capacity as the ICE Seattle Field Office Director, and is a legal custodian of detained plaintiffs.

33.     Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of DHS.  In this capacity, she directs DHS, ICE, CBP, and USCIS.  As a result, defendant Nielsen has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103 and is a legal custodian of detained plaintiffs.

34.     Defendant Kevin K. McAleenan is sued in his official capacity as the Commissioner of CBP.

35.     Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

36.     Defendant Alex M. Azar II is sued in his official capacity as the Secretary of HHS.

AMENDED COMPLAINT - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

37.     Defendant Scott Lloyd is sued in his official capacity as the Director of ORR.

38.     Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the United States Attorney General.  In this capacity, he directs agencies within the United States Department of Justice, including EOIR.  Defendant Sessions has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103, oversees defendant EOIR, and is empowered to grant asylum or other relief, including custody determinations made for persons in removal proceedings.

39.     Defendant Lowell Clark is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

40.     Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

41.     Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

## V.     FACTS

### A.     Seeking Asylum

42.     Federal law allows a person to seek asylum in the United States.

43.     Plaintiffs are persons seeking asylum in the United States.

44.     Some asylum seekers cross the U.S.-Mexico border at one of the "Ports Of Entry" designated by the United States government.

45.     An asylum seeker who crosses the border at a designated Port Of Entry and openly declares them self to a CBP agent is referred to as being an "arriving" asylum seeker.

46.     An asylum seeker who crosses the border at a Port Of Entry and does not openly declares them self to a CBP agent is referred to as "entering without inspection."

47.     An asylum seeker who crosses the U.S.-Mexico border at a location that is between the Ports Of Entry designated by the United States government is also referred to as "entering without inspection."

AMENDED COMPLAINT - 9
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

48.    Plaintiff **Yolany Padilla** and her 6-year-old son J.A. are asylum seekers who fled physical danger and persecution in Honduras.

49.    On or about May 18, 2018, plaintiff Yolany Padilla and her 6-year-old son J.A crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  They were arrested by a CBP agent as they were making their way to the closest Port Of Entry.  She informed the CBP agent that they were seeking asylum.

50.    Plaintiff **Ibis Guzman** and her 5-year-old son R.G. are asylum seekers who fled physical danger and persecution in Honduras.

51.    On or about May 16, 2018, plaintiff Ibis Guzman and her 5-year-old son R.G. crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  They were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

52.    Plaintiff **Blanca Orantes** and her 8-year-old son A.M. are asylum seekers who fled physical danger and persecution in El Salvador.

53.    On or about May 21, 2018, plaintiff Blanca Orantes and her 8-year-old son A.M. crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  They immediately walked to the CBP station to request asylum, and were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

54.    Plaintiff **Baltazar Vasquez** is an asylum seeker who fled physical danger and persecution in El Salvador.

55.    On or about June 1, 2018, Baltazar Vasquez crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  He was arrested by a CBP agent, and informed the CBP agent that he was seeking asylum.

**B.    Defendants' Zero-Tolerance Policy**

56.    Defendant Attorney General Sessions made an announcement about the federal government's "Zero-Tolerance Policy" on April 6, 2018,  *See*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-illegal-entry

57.     The federal government's zero-tolerance policy was designed to be a coordinated effort to deter asylum seekers entering the country and exercising their right to apply for asylum by criminally prosecuting them, forcibly separating them from their children, and imposing prolonged, uncertain imprisonment (euphemistically called "detention") on them.

58.     The federal government's zero-tolerance policy has been implemented against asylum seekers who enter the country without inspection requesting asylum.

59.     The federal government's zero-tolerance policy has also been implemented against asylum seekers who appear at a Port Of Entry to request asylum.

**C.     Promptly Taking Children Away From Parents Seeking Asylum**

60.     One part of the federal government's zero-tolerance policy is to promptly take children away from parents seeking asylum in the United States.

61.     The federal government sends the parent and child to separate federal detention facilities – often in different states thousands of miles away from each other.

62.     A child's forced separation from a parent causes the child severe trauma.  This damage is even worse for children who are already traumatized from fleeing danger and persecution in their home country.  The cognitive and emotional damage caused by a child's forced separation from a parent can be permanent.

63.     A parent's forced separation from their child is also deeply damaging to the parent.  This damage is even worse for parents who are already traumatized from fleeing danger and persecution in their home country, are given little to no information regarding the well-being or whereabouts of their child, and fear they may never see their child again.

64.     The federal government promptly takes children away from parents seeking asylum in the United States without any demonstration in a hearing that that parent is unfit or presents any danger to the child.

AMENDED COMPLAINT - 11
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

65.     The federal government promptly takes children away from parents seeking asylum in the United States without any evidence or accusation that the parent seeking asylum is an unfit parent, or presents a danger to the child, or is not acting in the child's best interest, or is a threat to the child's safety, or abused the child, or neglected the child.

66.     The federal government promptly takes children away from parents seeking asylum in the United States to penalize and deter persons from seeking asylum.

67.     The federal government promptly takes children away from parents seeking asylum in the United States as part of its zero-tolerance policy against criminal violations of federal immigration laws.

68.     Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes are parents who sought asylum and were (1) detained in immigration custody by defendants in Washington State and (2) separated from a minor child by defendants without any demonstration in a hearing that that parent is unfit or presents a danger to the child.

69.     When plaintiff **Yolany Padilla** and her 6-year-old son J.A were taken into custody, a federal agent promptly announced that Yolany Padilla's son would be taken away from her.  Her 6-year-old son clutched his mother's shirt and said, "no, mommy, I don't want to go."  She reassured her son that any separation would be short, and that everything would be okay.  She was able to stay with her son as they were transferred to one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.  Once they arrived, Yolany Padilla's 6-year-old son was forcibly taken away from her without explanation.

70.     Yolany Padilla's 6-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

71.     Yolany Padilla was then transferred to another federal facility in Laredo, Texas about three days later.  The federal officers in that facility took her son's birth certificate from her.  When she asked for it back, she was told the immigration authorities had it.  No one has returned her son's birth certificate to her.

72.     About twelve days later, Yolany Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

73.     Despite repeated inquiries into her son's whereabouts, Yolany Padilla was not provided any information about her son until about a month into her detention, when the Honduran consul visited the detention center and she explained she had no news of her son. Soon thereafter she was given a piece of paper saying her son had been put in a place called "Cayuga Center" in New York.  That piece of paper also had a phone number, but she was not able to call her son that day because she did not have money to make a long distance phone call.

74.     The next day, someone gave Yolany Padilla the opportunity to call her son for about ten minutes.  Her 6-year-old son mostly cried quietly.

75.     Yolany Padilla was not released from federal imprisonment until July 6, 2018, after an immigration judge finally granted her a bond.

76.     Yolany Padilla's 6-year-old son was not released from federal imprisonment until July 14, 2018.  That was almost two months after the federal government forcibly took him away from his mom.

77.     CBP transported plaintiff **Ibis Guzman** and her 5-year-old son R.G. to one of the federal detention buildings in Texas that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.   One CBP agent questioned Ibis Guzman, and another CBP agent forcibly took her son away stating she would see her son again in three days.

78.     Ibis Guzman's 5-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  way not acting in his best interest fleeing for safety in the United States, or that she is in any way

2  a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

3        79.    After three days, Ibis Guzman was transferred to a different CBP facility in

4  Texas.  When she asked the federal agents there about the reunification with her son that the

5  CBP agent had promised, they told her they did not know anything about her son's whereabouts.

6        80.    Ibis Guzman was then transferred to another federal facility in Laredo, Texas,

7  where she was detained without any knowledge of the whereabouts of her 5-year-old son and

8  without any means to contact him.  She did not receive any information about him during this

9  time, despite her repeated attempts to obtain such information.

10        81.    About two weeks later, Ibis Guzman was transferred to the Federal Detention

11  Center in SeaTac, Washington.

12        82.    Ibis Guzman was not provided any information about her 5-year-old son until

13  about a week later, when she was told that her son had been given to a place called "Baptist

14  Child and Family Services" in San Antonio, Texas.  But she was still not able to contact him.

15        83.    On June 20, 2018, Ibis Guzman was transferred to the Northwest Detention

16  Center in Tacoma, Washington, where she continues to be held, separated from her 5-year-old

17  son.

18        84.    CBP transported plaintiff **Blanca Orantes** and her 8-year-old son A.M. to a

19  federal detention facility in Texas.  CBP agents led Blanca Orantes into one of the federal

20  detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of

21  its cold temperatures, and took her 8-year-old son to another part of that detention facility.

22        85.    While a CBP agent was later interviewing Blanca Orantes, another agent brought

23  her 8-year-old son to her and told her to "say goodbye" to him because they were being

24  separated.  Her 8-year-old son began crying and pleading for his mom not to leave him.  She has

25  not seen her son since then.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

86.     Blanca Orantes' 8-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

87.     On or around May 24, 2018, Blanca Orantes was handcuffed and taken to court. She pled guilty to improper entry under 8 U.S.C. §1325 and was sentenced to time served.  She was then returned to her cell.

88.     About nine days later, Blanca Orantes was transported to the Federal Detention Center in SeaTac, Washington.

89.     The federal government did not provide Blanca Orantes any information about her 8-year-old son until June 9, 2018, when an ICE officer handed her a slip of paper saying her son was being held at place called "Children's Home of Kingston" in Kingston, New York.

90.     On June 20, 2018, Blanca Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by telephone.  To date, she has not been allowed to see her 8-year-old son, and has rarely been allowed to speak to him by phone.

**D.      Failing To Promptly Provide The Credible Fear Interview & Determination Required By Federal Law**

91.     One part of the federal government's zero-tolerance policy is to keep asylum seekers in limbo in federal detention by delaying the threshold credible fear interview to which asylum seekers are entitled under federal law.

92.     Detained asylum seekers who are subject to expedited removal are not permitted to move forward with their asylum claims until a credible fear determination has been made by a DHS official.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

93.     The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview in part to penalize and deter persons from seeking asylum.

94.     The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview as part of its zero-tolerance policy against criminal violations of federal immigration laws.

95.     The federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law.

96.     Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez are detained asylum seekers subject to expedited removal proceedings under 8 U.S.C. §1225(b) who were not provided a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

97.     When plaintiff **Yolany Padilla** first spoke with the CBP agent on or about May 18, 2018, she told the CBP agent that she and her son were requesting asylum.

98.     Neither Yolany Padilla nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

99.     Neither Yolany Padilla nor her son were provided a credible fear interview as of the date this lawsuit was filed on June 25, 2018.

100.    Instead, Yolany Padilla was not provided her credible fear interview until July 2, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Yolany Padilla does have a credible fear of persecution, and therefore  assigned her asylum claim to immigration court for adjudication on the merits

101.    When plaintiff **Ibis Guzman** first spoke with the CBP agent on or about May 16, 2018, she told the CBP agent that she and her son were requesting asylum.

102.    Neither Ibis Guzman nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

103.    Neither Ibis Guzman nor her son were provided a credible fear interview as of the date this lawsuit was filed on June 25, 2018.

104.    Instead, Ibis Guzman was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Ibis Guzman does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

105.    When plaintiff **Blanca Orantes** first spoke with the CBP agent on or about May 21, 2018, she told the CBP agent that she and her son were requesting asylum.

106.    Neither Blanca Orantes nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

107.    Neither Blanca Orantes nor her son were provided a credible fear interview as of the date this lawsuit was filed on June 25, 2018.

108.    Instead, Blanca Orantes was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Blanca Orantes does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.  .

109.    When plaintiff **Baltazar Vasquez** first spoke with the CBP agent on or about June 1, 2018, he told the CBP agent that he was requesting asylum.

110.    Baltazar Vasquez was not provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

111.    Baltazar Vasquez was not provided a credible fear interview as of the date this lawsuit was filed on June 25, 2018.

112.    Baltazar Vasquez was not provided a credible fear interview as of the date this Amended Complaint is electronically filed on July 15, 2018.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

113.     Baltazar Vasquez is currently imprisoned in the Bureau of Prison's Federal Correctional Institute in Victorville, California.

**E.     Failing To Promptly Provide The Bond Hearing Required By Federal Law**

114.     One part of the federal government's zero-tolerance policy is to prolong imprisonment without a proper bond hearing for asylum seekers who entered the United States without inspection.

115.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing in part to penalize and deter persons from seeking asylum.

116.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing as part of its zero-tolerance policy against criminal violations of federal immigration laws.

117.     The federal government has not established any procedural <u>timeframes</u> for timely providing the bond hearings required by federal law.  The federal government has not established basic procedural <u>safeguards</u> for bond hearings such as verbatim transcripts or audio recordings of bond hearings.  The absence of such basic safeguards impedes an imprisoned asylum seeker's ability to meaningful appeal the denial of bond in their individual case as not being based on evidence of legally relevant factors (their being a flight risk or danger to the community) instead of legally irrelevant factors (e.g., the zero-tolerance policy's general goal of punishing and deterring asylum seekers).   Defendant EOIR maintains audio recordings of proceedings before an Immigration Judge other than bond hearings, and provides verbatim transcripts on appeals to the Board of Immigration Appeals.  But defendants do not maintain audio recordings of an asylum seeker's bond hearing or provide verbatim transcripts for appeal of bond hearing determinations.

118.     Plaintiff **Yolany Padilla** is an asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

8 U.S.C. §1225(b) and detained, was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

119.     The federal government did not provide Yolany Padilla a bond hearing until after she filed this lawsuit.  At the conclusion of that bond hearing, an order was issued allowing her to be released from federal detention on bond pending the adjudication of her asylum claim on the merits.  To her knowledge, there is no verbatim transcript or recording of her bond hearing.

120.     Plaintiffs **Ibis Guzman** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

121.     The federal government did not provide Ibis Guzman a bond hearing until after she filed this lawsuit.  At the conclusion of that bond hearing, an immigration judge issued an order denying her release on *any* bond amount pending the adjudication of her asylum claim on the merits.

122.     The immigration judge circled the preprinted words "Flight Risk" on a form order, rendering her ineligible for bond even though a DHS official had already determined she has a credible fear of persecution and even though the federal government has taken away her 6-year-old son.

123.     The immigration judge provided no written explanation for circling "Flight Risk" or the factors and evidence considered in making that conclusion to deny bond.  Per defendant EOIR's practice, there is no verbatim transcript or recording of her bond hearing.

124.     At the time this Amended Complaint is electronically filed on July 15, 2018, Ibis Guzman is still imprisoned in federal detention.

125.     Plaintiff **Blanca Orantes** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once she was

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

eventually provided her credible fear interview and determination, but was not provided a bond

hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond

hearing.

126.    Blanca Orantes has now been told she will be provided a bond hearing on July 16,

2018.  She accordingly still has not been provided a bond hearing with a verbatim transcript or

recording of the hearing.

127.    Plaintiff **Baltazar Vasquez** is a detained asylum seeker who originally entered

the United States without inspection (thus initially triggering potential expedited removal

proceedings under 8 U.S.C. §1225(b)), but as of the time this Amended Complaint is

electronically filed still has not been provided his credible fear interview and determination, and

accordingly still has not been provided a bond hearing with a verbatim transcript or recording of

the hearing.

## VI.    CLASS ALLEGATIONS

128.    The named plaintiffs are asylum seekers who filed this suit on behalf of

themselves and their family members being detained in federal detention.

129.    The named plaintiffs also bring this suit as a class action under Fed.R.Civ.P. 23(b)

on behalf of the other similarly situated persons specified in the three classes of asylum seekers

specified in Part VI of this Amended Complaint.

**F.    "Family Separation Class"**

130.    As previously noted, plaintiffs will not be currently pursuing their family

separation claim in this case pending defendants' promised compliance with the *Ms. L v. ICE*

Order noted in paragraph 2 of this Amended Complaint.  This Amended Complaint nonetheless

identifies the following class in case defendants' obligations are modified in that Order or their

compliance falls short.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

131.    With respect to plaintiffs' claims concerning the legality of the government's practice of taking children away from parents seeking asylum, plaintiffs seek to represent the following class (the "**family separation class**"):

> All parents who sought asylum and were (1) detained in immigration custody by defendants in Washington State and (2) separated from a minor child by defendants absent a demonstration in a hearing that that parent is unfit or presents a danger to the child.

132.    Plaintiffs allege the following on information and belief:  At least fifty parents currently fit within the **family separation class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

133.    The **family separation class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

134.    The **family separation class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being subject to defendants' practice of separating asylum-seeking parents from their minor child absent a demonstration in a hearing that that parent is unfit or presents a danger to their child.  The members of this class share common questions of law governing whether defendants' practice of taking children away from class members seeking asylum is legal under the Fifth Amendment, Eighth Amendment, APA, or federal asylum statutes.

135.    The **family separation class** satisfies Rule 23(a)(3).  The claims of plaintiffs Padilla, Guzman, and Orantes concerning the legality of defendants' practice of taking children away from parents seeking asylum are typical of the claims of class members.  As noted in the prior paragraph, the definition of this class dictates that plaintiffs Padilla, Guzman, and Orantes share with the other class members the same common factual situation and the same common questions of law under the Fifth Amendment, Eighth Amendment, APA, and federal asylum statutes.

AMENDED COMPLAINT - 21
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1      136.    The **family separation class** satisfies Rule 23(a)(4).  Plaintiffs Padilla, Guzman,

2   and Orantes will fairly and adequately protect the interests of that class.  They are represented by

3   counsel from the Northwest Immigrant Rights Project, who have extensive experience litigating

4   class action lawsuits and other complex cases in federal court, including civil rights lawsuits on

5   behalf of noncitizens.  They are also represented by counsel from the Foster Pepper law firm,

6   who have extensive experience litigating constitutional and statutory rights lawsuits in the

7   federal and state courts, including civil rights lawsuits on behalf of a variety of plaintiffs.

8      137.    The **family separation class** satisfies Rule 23(b)(1).  Requiring separate actions

9   by the members of this class would create the risk of inconsistent or varying adjudications with

10  respect to individual class members that would establish incompatible standards of conduct for

11  defendants.  Requiring separate actions by the members of this class would create the risk of

12  adjudications with respect to individual class members that, as a practical matter, would be

13  dispositive of the interests of the other class members not parties to the individual adjudications,

14  or would at least substantially impair or impede their ability to protect their interests.

15     138.    The **family separation class** satisfies Rule 23(b)(2).  Defendants have acted or

16  refused to act on grounds that apply generally to this class.  Final injunctive relief or

17  corresponding declaratory relief is appropriate with respect to the class as a whole because

18  requiring separate actions by the members of this class would create the risk of inconsistent or

19  varying adjudications with respect to individual class members that would establish incompatible

20  standards of conduct for defendants.

21     139.    The **family separation class** satisfies Rule 23(b)(3).  Questions of law or fact

22  common to members of this class predominate over questions affecting only individual

23  members.  A class action is superior to other available methods for fairly and efficiently

24  adjudicating the legality of defendants' practice of taking children away from parents seeking

25  asylum as part of their implementation of the government's zero-tolerance policy.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**G.    "Credible Fear Interview Class"**

140.    With respect to plaintiffs' claims concerning defendants' failure to promptly provide asylum seekers a credible fear interview and determination, plaintiffs seek to represent the following class (the "**credible fear interview class**"):

> All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

141.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **credible fear interview class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

142.    The **credible fear interview class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

143.    The **credible fear interview class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being a detained asylum seeker subject to defendants' practice of failing to provide a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official, despite the fact they have been placed in expedited removal proceedings under 8 USC 1225(b), which requires immediate action.  The members of this class share common questions of law governing whether defendants' practice of failing to provide class members a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official is legal under the Fifth Amendment, Eighth Amendment, APA, or federal asylum statutes.

144.    The **credible fear interview class** satisfies Rule 23(a)(3).  Plaintiffs' claims concerning the legality of defendants' practice of failing to provide a credible fear interview and

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official are typical of the claims of class members.  As noted in the prior paragraph, the definition of this class dictates that plaintiffs share with the other class members the same common factual situation and the same common questions of law under the Fifth Amendment, Eighth Amendment, APA, and federal asylum statutes.

145.    The **credible fear interview class** satisfies Rule 23(a)(4).  Plaintiffs will fairly and adequately protect the interests of that class.  They are represented by counsel from the Northwest Immigrant Rights Project, who have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.  They are also represented by counsel from the Foster Pepper law firm, who have extensive experience litigating constitutional and statutory rights lawsuits in the federal and state courts, including civil rights lawsuits on behalf of a variety of plaintiffs.

146.    The **credible fear interview class** satisfies Rule 23(b)(1).  Requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.  Requiring separate actions by the members of this class would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other class members not parties to the individual adjudications, or would at least substantially impair or impede their ability to protect their interests.

147.    The **credible fear interview class** satisfies Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to this class.  Final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole, especially as it involves uniform, federal immigration law and plaintiffs are transferred across the country by defendants.  Moreover, requiring separate actions by the members of this class would create the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.

148.    The **credible fear interview class** satisfies Rule 23(b)(3).  Questions of law or fact common to members of this class predominate over questions affecting only individual members.  A class action is superior to other available methods for fairly and efficiently adjudicating the legality of defendants' practice of failing to provide a credible fear interview and determination within 10 days of a person's expressing a fear of persecution or requesting asylum.

**H.    "Bond Hearing Class"**

149.    With respect to plaintiffs' claims concerning defendants' failure to promptly conduct a bond hearing to set reasonable conditions for the asylum seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim, plaintiffs seek to represent the following class (the "**bond hearing class**"):

> All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

150.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **bond hearing class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

151.    The **bond hearing class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

152.    The **bond hearing class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being asylum seekers who entered the United States without

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    inspection, were initially subject to expedited removal proceedings, were found to have a

2    credible fear of persecution, but were then subject to defendants' practice of failing to provide a

3    bond hearing with a transcript or recording of the hearing within 7 days of their requesting a

4    bond hearing.  The members of this class share common questions of law governing whether

5    defendants' practice of failing to provide a bond hearing with a transcript or recording of the

6    proceeding within 7 days of their requesting a bond hearing is legal under the Fifth Amendment,

7    Eighth Amendment, APA, or federal asylum statutes.

8            153.    The **bond hearing class** satisfies Rule 23(a)(3).  Plaintiffs' claims concerning the

9    legality of defendants' practice of failing to provide a bond hearing with a transcript or recording

10   of the proceeding within 7 days of an asylum seeker's requesting a bond hearing are typical of

11   the claims of class members.  As noted in the prior paragraph, the definition of this class dictates

12   that plaintiffs share with the other class members the same common factual situation and the

13   same common questions of law under the Fifth Amendment, Eighth Amendment, APA, and

14   federal asylum statutes.

15           154.    The **bond hearing class** satisfies Rule 23(a)(4).  Plaintiffs will fairly and

16   adequately protect the interests of that class.  They are represented by counsel from the

17   Northwest Immigrant Rights Project, who have extensive experience litigating class action

18   lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of

19   noncitizens.  They are also represented by counsel from the Foster Pepper law firm, who have

20   extensive experience litigating constitutional and statutory rights lawsuits in the federal and state

21   courts, including civil rights lawsuits on behalf of a variety of plaintiffs.

22           155.    The **bond hearing class** satisfies Rule 23(b)(1).  Requiring separate actions by

23   the members of this class would create the risk of inconsistent or varying adjudications with

24   respect to individual class members that would establish incompatible standards of conduct for

25   defendants.  Requiring separate actions by the members of this class would create the risk of

26   adjudications with respect to individual class members that, as a practical matter, would be

AMENDED COMPLAINT - 26
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

dispositive of the interests of the other class members not parties to the individual adjudications, or would at least substantially impair or impede their ability to protect their interests.

156.     The **bond hearing class** satisfies Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to this class.  Final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole especially as it involves uniform, federal immigration law and plaintiffs are transferred across the country by defendants.  Moreover, requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.

157.     The **bond hearing class** satisfies Rule 23(b)(3).  Questions of law or fact common to members of this class predominate over questions affecting only individual members.  A class action is superior to other available methods for fairly and efficiently adjudicating the legality of defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond hearing.

## VII.   CAUSES OF ACTION

### COUNT I
**(Constitutional Violations)**

158.     All allegations in this Amended Complaint that are not inconsistent with this Count are repeated and re-alleged as though fully set forth in this numbered paragraph.

159.     The Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of their liberty without due process of law.

160.     The Fifth Amendment's due process clause applies to all persons in the United States.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

161.    The Eighth Amendment of the United States Constitution prohibits the federal government from imposing or inflicting on any person any excessive bail or any cruel punishments.

162.    The Eighth Amendment's protections apply to all persons in the United States.

163.    Asylum seekers who cross the United States border are persons.

164.    The named plaintiffs are persons are in the United States.  Their children in federal government custody are persons are in the United States.  The proposed class members identified in Section VI of this Amended Complaint are persons in the United States.

165.    The named plaintiffs, their children, and proposed class members have a constitutionally protected liberty interest in (1) remaining together as a family, (2) not being imprisoned in federal detention for an unreasonable time awaiting their credible fear interview and determination, and (3) not being imprisoned in federal detention for an unreasonable time awaiting their bond hearing.

166.    Especially with respect to the federal government's zero-tolerance policy to deter criminal violations of federal immigration laws, the plaintiffs, their children, and proposed class members have a constitutionally protected interest in (4) not being subjected to unreasonable bond conditions, and (5) not being subjected to cruel punishments.

A.    **"Family Separation Class"**

167.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children violated the substantive due process rights of plaintiffs and their children.  That forced separation did not further a legitimate purpose.  That forced separation did not further a compelling governmental interest.  Defendants' forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children violated the constitutional substantive due process rights of plaintiffs and their children.

168.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children violated the procedural due process rights of plaintiffs and their

children.  The government did not make any accusation that plaintiffs were unfit parents, were not acting in the best interest of their child, were a threat to their child's safety, abused their child, or neglected their child.   The government did not have any evidence of plaintiffs being unfit parents, or not acting in the best interest of their child, or being a threat to their child's safety, or abusing their child, or neglecting their child.   Defendants' forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children without any hearing violated the constitutional procedural due process rights of plaintiffs and their children.

169.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children violated the Eighth Amendment.  That forced separation was cruel and excessive.  It was deliberately done to penalize and deter persons from seeking asylum.  And it was deliberately done as part of the federal government's zero-tolerance policy against criminal violations of federal immigration laws.  Defendants' forcibly separating plaintiffs Padilla, Guzman, and Orantes from their children violated the constitutional Eighth Amendment rights of plaintiffs and their children.

170.    As with plaintiffs Padilla, Guzman, and Orantes, defendants' forcibly separating members of the family separation class from their children violated substantive due process, procedural due process, and the Eighth Amendment.

**B.    "Credible Fear Interview Class"**

171.    The federal government's imprisoning plaintiffs in federal detention for an unreasonable time awaiting their credible fear interview and determination violates their substantive due process rights.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a legitimate purpose.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a compelling governmental interest.  Defendants' prolonging plaintiffs' federal detention

AMENDED COMPLAINT - 29
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    by delaying their credible fear interview and determination more than 10 days is a violation of

2    the constitutional substantive due process rights of plaintiffs and their children.

3        172.   The federal government's imprisoning plaintiffs in federal detention for an

4    unreasonable time awaiting their credible fear interview and determination violates their

5    procedural due process rights.  That ongoing imprisonment awaiting a credible fear interview

6    and determination is contrary to the law governing expedited removal proceedings and is

7    imposed without any hearing.  Defendants' imprisoning plaintiffs in federal detention for an

8    unreasonable time awaiting their credible fear interview and determination is a violation of the

9    constitutional due process rights of plaintiffs and their children

10       173.   The federal government's imprisoning plaintiffs in federal detention for an

11   unreasonable time awaiting their credible fear interview and determination violates the Eighth

12   Amendment.  The government's actions maintaining plaintiffs in limbo in federal detention by

13   deliberately delaying the threshold credible fear interview to which they are entitled is excessive.

14   It is deliberately done as part of the government's effort to penalize and deter persons from

15   seeking asylum.  It is deliberately done as part of the federal government's zero-tolerance policy

16   against criminal violations of federal immigration laws.  Deliberately confining asylum seekers

17   in limbo by delaying the credible fear interview to which they are entitled is cruel.  Defendants'

18   imprisoning plaintiffs in federal detention for an unreasonable time awaiting their credible fear

19   interview and determination is a violation of the constitutional Eighth Amendment rights of

20   plaintiffs and their children.

21       174.   As with plaintiffs, defendants' imprisoning members of the credible fear

22   interview class in federal detention for an unreasonable time awaiting their credible fear

23   interview and determination violates substantive due process, procedural due process, and the

24   Eighth Amendment.

25

26

AMENDED COMPLAINT - 30
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   **C.      "Bond Hearing Class"**

2        175.    The federal government's imprisoning plaintiffs in federal detention for an

3   unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending

4   the lengthy proceedings to adjudicate their asylum claim violates substantive due process.  The

5   government's prolonging these asylum seekers' federal detention by delaying their bond hearing

6   more than 7 days does not further a legitimate purpose.  The government's prolonging these

7   asylum seekers' federal detention by delaying their bond hearing more than 7 days does not

8   further a compelling governmental interest.  Moreover, denying bonds for general deterrence or

9   punishment goals unrelated to the specific factors of whether the individual presents a flight risk

10  or danger to the community unlawfully deprives these asylum seekers of their constitutional right

11  to liberty.  Defendants' prolonging plaintiffs' federal detention by delaying their bond hearing

12  more than 7 days is a violation of the constitutional substantive process rights of plaintiffs and

13  their children.

14       176.    The federal government's imprisoning plaintiffs in federal detention for an

15  unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending

16  the lengthy proceedings to adjudicate their asylum claim violates procedural due process.  That

17  ongoing detention is imposed without providing basic procedural protections, such as a bond

18  hearing with a transcript or recording of the hearing, and denying plaintiffs an adequate record to

19  file an administrative appeal or habeas petition.  Moreover, denying bonds for general deterrence

20  goals unrelated to the specific factors of whether the individual presents a flight risk or danger to

21  the community strips detained asylum seekers of a fair hearing.  Defendants' prolonging

22  plaintiffs' federal detention by failing to provide a bond hearing with a verbatim transcript or

23  recording of the hearing within 7 days of requesting a bond is a is a violation of the constitutional

24  substantive due process rights of plaintiffs and their children.

25       177.    The federal government's imprisoning plaintiffs for an unreasonable time pending

26  the lengthy proceedings to adjudicate their asylum claim violates the Eighth Amendment.  The

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

government's keeping their detention in limbo by deliberately delaying the bond hearing to which they are entitled is excessive.  Moreover, the government's determinations to deny bond for general deterrence policy purposes, rather than based on individual determinations based on evidence that the person presents a flight risk or threat to the community, violates the Eighth Amendment.  It is deliberately done as part of the government's effort to penalize and deter persons from seeking asylum.  It is deliberately done as part of the federal government's zero-tolerance policy against criminal violations of federal immigration laws.  Deliberately confining detained asylum seekers by delaying bond hearings and denying bond for general deterrence and policy measures unrelated to their individual cases is cruel.  Defendants' imprisoning plaintiffs in federal detention for an unreasonable time pending the lengthy proceedings to adjudicate their asylum claim by failing to provide a bond hearing with a verbatim transcript or recording of the hearing within 7 days of plaintiffs requesting a bond hearing is a violation of the constitutional Eighth Amendment rights of plaintiffs and their children.

178.    As with plaintiffs, defendants' imprisoning members of the bond hearing class in federal detention for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim violates substantive due process, procedural due process, and the Eighth Amendment.

## COUNT II
### (Administrative Procedure Act - Arbitrary and Capricious Practice)

179.    All allegations in this Amended Complaint that are not inconsistent with this Count are repeated and re-alleged as though fully set forth in this numbered paragraph.

180.    The APA prohibits agency action that is arbitrary and capricious.

181.    The APA prohibits agency action that is contrary to a constitutional right.

AMENDED COMPLAINT - 32
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   **A.    "Family Separation Class"**

2       182.    Defendants' decision to separate plaintiffs Padilla, Guzman, and Orantes from

3   their children without a compelling justification, and without a mechanism, protocol, or system

4   to guarantee their reunification, is a final agency action.  That action is arbitrary and capricious.

5   It violates the APA.  5 U.S.C. §706(2)(A).

6       183.    As with plaintiffs Padilla, Guzman, and Orantes, defendants' decision to separate

7   members of the family separation class from their children without a compelling justification,

8   and without a mechanism, protocol, or system to guarantee their reunification, is a final agency

9   action.  That action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).

10  **B.    "Credible Fear Interview Class"**

11      184.    Defendants' decision to detain plaintiffs for an unreasonable time awaiting their

12  credible fear interview, without a compelling justification and without a mechanism, protocol, or

13  system to assure a prompt and fair credible fear interview and determination, is a final agency

14  action.  That action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).

15      185.    As with plaintiffs, defendants' decision to detain members of the credible fear

16  interview class for an unreasonable time awaiting their credible fear interview, without a

17  compelling justification and without a mechanism, protocol, or system to assure a prompt and

18  fair credible fear interview and determination, is a final agency action.  That action is arbitrary

19  and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).

20  **C.    "Bond Hearing Class"**

21      186.    Defendants' decision to detain plaintiffs for an unreasonable time awaiting a bond

22  hearing to set reasonable conditions for their release pending the lengthy proceedings to

23  adjudicate their asylum claim, without a compelling justification and without a mechanism,

24  protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That

25  action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

187.     As with plaintiffs, defendants' decision to detain members of the bond hearing class for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That action is arbitrary and capricious.  It violates the APA. 5 U.S.C. §706(2)(A).

188.     Defendants' decision to deny plaintiffs a bond hearing with adequate procedural protections, specifically a recording or transcript of the hearing available for any subsequent administrative appeal or habeas petition, is a final agency action.  That action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).

189.     As with plaintiffs, defendants' decision to deny members of the bond hearing class a bond hearing with adequate procedural protections, specifically a recording or transcript of the hearing available for any subsequent administrative appeal or habeas petition, is, is a final agency action.  That action is arbitrary and capricious.  It violates the APA. 5 U.S.C. §706(2)(A).

### COUNT III
**(Administrative Procedure Act -
Agency Action Unlawfully Withheld or Unreasonably Delayed)**

190.     All allegations in this Amended Complaint that are not inconsistent with this Count are repeated and re-alleged as though fully set forth in this numbered paragraph.

191.     The APA imposes on federal agencies the duty to conclude matters presented to it within a "reasonable time."  5 U.S.C. §555(b).

192.     The APA prohibits agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. §706(1).

**A.     "Family Separation Class"**

193.     Defendants' failure to promptly reunify plaintiffs Padilla, Guzman, and Orantes with their children violates defendants' legal duty under the APA to conclude matters within a

AMENDED COMPLAINT - 34
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  reasonable time, and constitutes an agency action unlawfully withheld or unreasonably delayed

2  in violation of the APA.  5 U.S.C. §706(2)(A).

3      194.   As with plaintiffs Padilla, Guzman, and Orantes, defendants' failure to promptly

4  reunify members of the family separation class with their children violates defendants' legal duty

5  under the APA to conclude matters within a reasonable time, and constitutes an agency action

6  that is unlawfully withheld or unreasonably delayed in violation of the APA.

7  5 U.S.C. §706(2)(A).

8  **B.**    **"Credible Fear Interview Class"**

9      195.   A person placed in expedited removal proceedings who is seeking asylum is

10  allowed to present their asylum claim to an immigration judge only after DHS conducts a

11  credible fear interview to determine if the person seeking asylum has a "credible fear of

12  persecution." 8 C.F.R. §208.30(f), (g).

13      196.   Conducting a credible fear interview to determine whether a person seeking

14  asylum has a credible fear of persecution is a discrete, final agency action that DHS is required to

15  take.

16      197.   DHS's obligation to conduct a credible fear interview to determine whether the

17  person seeking asylum has a credible fear of persecution is triggered when that person requests

18  asylum or expresses a fear of persecution to any DHS official. 8 U.S.C. §1225(b)(1)(A)(ii).

19      198.   DHS's failure to promptly conduct a credible fear interview for the credible fear

20  determination after plaintiffs requested asylum or expressed a fear of persecution violated DHS's

21  legal duty under the APA to conclude matters presented to it within a reasonable time.

22      199.   DHS's failure to promptly conduct a credible fear interview for the credible fear

23  determination after plaintiffs requested asylum or expressed a fear of persecution constituted an

24  agency action that was unlawfully withheld or unreasonably delayed in violation of the APA.

25      200.   As with plaintiffs, DHS's failure to promptly conduct a credible fear interview for

26  the credible fear determination after members of the credible fear interview class requested

asylum or expressed a fear of persecution violates its legal duty under the APA to conclude matters presented to it within a reasonable time, and constituted an agency action that is unlawfully withheld or unreasonably delayed in violation of the APA.

**C.     "Bond Hearing Class"**

201.   If the credible fear interview conducted by DHS determines that an asylum seeker has a credible fear of persecution, DHS assigns the case to EOIR to initiate immigration court proceedings for that asylum seeker to adjudicate his or her asylum claim before an immigration judge.

202.   If an asylum seeker in the bond hearing class is found to have a credible fear of persecution and is in federal detention, that asylum seeker is entitled to a bond hearing to set reasonable conditions for his or her release from federal detention pending the lengthy proceedings to adjudicate his or her asylum claim.

203.   Defendant EOIR's failure to promptly conduct a bond hearing to set reasonable conditions for a detained asylum seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim violates defendant's legal duty under the APA to conclude matters presented to it within a reasonable time.

204.   Defendant EOIR's failure to conduct a bond hearing with appropriate procedural safeguards to set reasonable conditions for a detained asylum seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim constitutes an agency action unlawfully withheld or unreasonably delayed in violation of the APA.

205.   As with plaintiffs, defendant EOIR's failure to promptly conduct a bond hearing with appropriate procedural safeguards to set reasonable conditions for a detained asylum seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim violates its legal duty under the APA to conclude matters presented to it within a reasonable time, and constitutes an agency action that is unlawfully withheld or unreasonably delayed in violation of the APA.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

## COUNT IV
### (Violation of Asylum Law)

206.   All allegations in this Amended Complaint that are not inconsistent with this Count are repeated and re-alleged as though fully set forth in this numbered paragraph.

207.   United States law grants noncitizens fleeing persecution the opportunity to apply for asylum in the United States.  8 U.S.C. §1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, & 1003.42; 8 U.S.C. §1158(a)(1).

208.   International law likewise recognizes the fundamental human right to asylum of persons fleeing for safety from persecution and torture.

209.   Noncitizens fleeing persecution have a private right of action to vindicate their right to apply for and receive asylum in the United States.

**A.   "Family Separation Class"**

210.   When plaintiffs Padilla, Guzman, and Orantes requested asylum, defendants promptly took their minor child away from them (1) without any evidence or accusation that they were unfit parents, or were not acting in the best interest of their child, or were a threat to their child's safety, or abused their child, or neglected their child, and (2) without any hearing.

211.   Defendants' promptly taking away the minor children of asylum seekers Padilla, Guzman, and Orantes unlawfully infringed on their legal right to pursue their asylum claims.

212.   As with plaintiffs Padilla, Guzman, and Orantes, defendants separated members of the family separation class from their child (1) without any evidence or accusation that they were unfit parents, or were not acting in the best interest of their child, or were a threat to their child's safety, or abused their child, or neglected their child, and (2) without any hearing.

213.   As with plaintiffs Padilla, Guzman, and Orantes, defendants' promptly taking away the minor children of members of the family separation class unlawfully infringed on their legal right to pursue their asylum claims.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

**B.**     **"Credible Fear Interview Class"**

2     214.     Defendants' failure to promptly conduct a credible fear interview for the credible

3 fear determination after plaintiffs requested asylum or expressed a fear of persecution unlawfully

4 infringed on their legal right to pursue their asylum claims.

5     215.     As with plaintiffs, defendants' failure to promptly conduct a credible fear

6 interview for the credible fear determination after credible fear interview class members

7 requested asylum or expressed a fear of persecution unlawfully infringes on their legal right to

8 pursue their asylum claims.

9 **C.**     **"Bond Hearing Class"**

10     216.     Defendants' failure to promptly conduct a bond hearing to set reasonable

11 conditions for the release of plaintiffs pending the lengthy proceedings to adjudicate their asylum

12 claims unlawfully infringes on their legal right to pursue their asylum claims.

13     217.     As with plaintiffs, defendants' failure to promptly conduct a bond hearing to set

14 reasonable conditions for the release of members of the bond hearing class pending the lengthy

15 proceedings to adjudicate their asylum claims unlawfully infringes on their legal right to pursue

16 their asylum claims.

17                         **VIII.   <u>PRAYER FOR RELIEF</u>**

18     Plaintiffs respectfully request that this Court enter judgment against defendants granting

19 the following relief:

20     A.  Certify the following **Family Separation Class**:  "All parents who sought asylum and

21          were (1) detained in immigration custody by defendants in Washington State and

22          (2) separated from a minor child by defendants absent a demonstration in a hearing

23          that that parent is unfit or presents a danger to the child."

24     B.  Name plaintiffs Padilla, Guzman, and Orantes as representatives of the Family

25          Separation Class, and appoint their counsel as Family Separation Class counsel.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

C. Declare that defendants' separation of plaintiffs Padilla, Guzman, and Orantes from their children is unlawful.

D. Declare that defendants' separation of Family Separation Class members from their children is unlawful.

E. Preliminarily and permanently enjoin defendants from detaining Family Separation Class members (including plaintiffs Padilla, Guzman, and Orantes) in separate locations from where their children are detained; and enjoin defendants from removing Family Separation Class members (including plaintiffs Padilla, Guzman, and Orantes) from the country until they are reunited with their children (in the event they are not permitted to remain in the United States), absent the parent's permission or a hearing before a court where the government demonstrates that it is not in the child's best interest to be reunified with their parent.

F. Certify the following **Credible Fear Interview Class**: "All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official."

G. Name plaintiffs as representatives of the Credible Fear Interview Class, and appoint their counsel as class counsel.

H. Declare that defendants have an obligation to provide Credible Fear Interview Class members (including plaintiffs) their credible fear interview and determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

I. Preliminarily and permanently enjoin defendants from not providing Credible Fear Interview Class members (including plaintiff Vasquez) their credible fear determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

AMENDED COMPLAINT - 39
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

J.  Certify the following **Bond Hearing Class**:  "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing."

K.  Name plaintiffs as representatives of the Bond Hearing Class, and appoint their counsel as class counsel.

L.  Declare that defendants have an obligation to provide Bond Hearing Class members (including plaintiffs ) a bond hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their asylum claim.

M.  Declare that defendants have an obligation to provide Bond Hearing Class members (including plaintiffs) a bond hearing with adequate procedural safeguards, including a verbatim transcript or recording of their bond hearing.

N.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members (including plaintiffs Guzman, Orantes, and Vasquez) their bond hearing with a verbatim transcript or recording of their bond hearing.

O.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members (including plaintiffs Orantes and Vasquez) their bond hearing within 7 days of the asylum seeker's request.

P.  Order defendants to pay reasonable attorneys' fees and costs.

Q.  Order all other relief that is just and proper.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3   Dated this 15th day of July, 2018.

4

5   *s/ Matt Adams*                          *s/ Thomas F. Ahearne*
    Matt Adams, WSBA No. 28287               Thomas F. Ahearne, WSBA #14844
6   Email:  matt@nwirp.org                   Email:  ahearne@foster.com

7                                            *William F. Abrams, CA Bar #88805
    Glenda M. Aldana Madrid, WSBA No. 46987  *Admitted pro hac vice
8   Email:  glenda@nwirp.org                 *Email:  bill.abrams@foster.com

9   Leila Kang, WSBA No. 48048               Joanna Plichta Boisen, WSBA #38368
    Email:  leila@nwirp.org                  Email:  Joanna.boisen@foster.com
10
    NORTHWEST IMMIGRANT RIGHTS PROJECT       Benjamin J. Hodges, WSBA #49301
11  615 Second Avenue, Suite 400             Email:  ben.hodges@foster.com
    Seattle, WA  98104
12  Telephone: (206) 957-8611                Kevin Ormiston, WSBA #49835
    Facsimile: (206) 587-4025                Email:  kevin.ormiston@foster.com
13  *Attorneys for Plaintiffs-Petitioners*
14                                           FOSTER PEPPER PLLC
                                             1111 Third Avenue, Suite 3000
15                                           Seattle, Washington  98101-3292
                                             Telephone: (206) 447-4400
16                                           Facsimile: (206) 447-9700
                                             *Attorneys for Plaintiffs-Petitioners*
17

18

19

20

21

22

23

24

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 15th day of July, 2018.

*s/ Thomas F. Ahearne*
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington  98101-3292
Telephone: (206) 447-8934
Facsimile: (206) 447-9700
Email: ahearne@foster.com

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611