*The Honorable Marsha J. Pechman*

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9   YOLANY PADILLA, on behalf of herself and her
10  6-year-old son J.A.;  IBIS GUZMAN, on behalf of herself
    and her 5-year-old son R.G.;  BLANCA ORANTES, on
11  behalf of herself and her 8-year-old son A.M.;  BALTAZAR
    VASQUEZ, on behalf of himself;
12                                    Plaintiffs-Petitioners,
    v.
13
14  U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
    ("ICE");  U.S.  DEPARTMENT  OF  HOMELAND
15  SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
    PROTECTION  ("CBP");  U.S.  CITIZENSHIP  AND
16  IMMIGRATION  SERVICES  ("USCIS");  EXECUTIVE
    OFFICE FOR IMMIGRATION REVIEW ("EOIR");  U.S.
17  DEPARTMENT OF HEALTH AND HUMAN SERVICES
    ("HHS");  OFFICE  OF  REFUGEE  RESETTLEMENT
18  ("ORR");  THOMAS HOMAN, Acting Director of ICE;
    KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K.
19  McALEENAN,  Acting  Commissioner  of  CBP;  L.
    FRANCIS CISSNA, Director of USCIS; ALEX M. AZAR
20  II, Secretary of HHS; SCOTT LLOYD, Director of ORR;
    MARC J. MOORE, Seattle Field Office Director;, ICE,
21  JEFFERSON  BEAUREGARD  SESSIONS III,  United
    States Attorney General; LOWELL CLARK, warden of the
22  Northwest  Detention  Center  in  Tacoma,  Washington;
    CHARLES INGRAM, warden of the Federal Detention
23  Center in SeaTac, Washington;  DAVID SHINN, warden of
    the Federal Correctional Institute in Victorville, California;
24
25                                  Defendants-Respondents.
26

No. 2:18-cv-928  MJP

**STIPULATION AND
NOTICE REGARDING
SECOND AMENDED
COMPLAINT**

NOTE ON MOTION
CALENDAR:
AUGUST 22, 2018.

**STIPULATION AND
NOTICE REGARDING
SECOND AMENDED
COMPLAINT**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

 Pursuant to Local Civil Rules 7(d)(1) and 10(g), Fed. R. Civ. P. 15(a)(2), and the prior stipulated schedule between the parties (Dkt. # 23) plaintiffs and defendants notify the Court that plaintiffs are filing their second amended complaint with defendants' written consent. For the Court's convenience, a copy of the second amended complaint is attached as Exhibit A and a redline of the second amended complaint showing changes from the first amended complaint is attached as Exhibit B.

 Subsequent to this Notice, plaintiffs will file the second amended complaint with the Court's ecf system.

**STIPULATION AND NOTICE REGARDING SECOND AMENDED COMPLAINT**- 1

CASE NO. 2:18-cv-928  MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

RESPECTFULLY SUBMITTED this 20th day of August, 2018.


*s/ Matt Adams*
Matt Adams, WSBA No. 28287
Email:  matt@nwirp.org

*s/ Glenda M. Aldana Madrid*
Glenda M. Aldana Madrid, WSBA No. 46987
Email:  glenda@nwirp.org

*s/ Leila Kang*
Leila Kang, WSBA No. 48048
Email:  leila@nwirp.org

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
*Attorneys for Plaintiffs-Petitioners*

*s/ Thomas F. Ahearne*
Thomas F. Ahearne, WSBA #14844
Email:  ahearne@foster.com

*s/ William F. Abrams*
*William F. Abrams, CA Bar #88805
*Admitted pro hac vice
*Email:  bill.abrams@foster.com

*s/ Joanna Plichta Boisen*
Joanna Plichta Boisen, WSBA #38368
Email:  Joanna.boisen@foster.com

*s/ Benjamin J. Hodges*
Benjamin J. Hodges, WSBA #49301
Email:  ben.hodges@foster.com

*s/ Kevin Ormiston*
Kevin Ormiston, WSBA #49835
Email:  kevin.ormiston@foster.com

FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington  98101-3292
Telephone: (206) 447-4400
Facsimile: (206) 447-9700

*Attorneys for Plaintiffs-Petitioners*

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

EREZ REUVENI
Assistant Director, District Court Section
Office of Immigration Litigation

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Trial Attorney, District Court Section
Office of Immigration Litigation
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

*Attorneys for Defendants-Respondents*

**STIPULATION AND
NOTICE REGARDING
SECOND AMENDED
COMPLAINT**- 2
CASE NO. 2:18-cv-928  MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

[
## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.


*s/ Benjamin J. Hodges*
Benjamin J. Hodges
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington  98101-3292
Telephone: (206) 447-6282
Facsimile: (206) 447-9700
Email:ben.hodges@foster.com

**STIPULATION AND NOTICE REGARDING SECOND AMENDED COMPLAINT**- 3
CASE NO. 2:18-cv-928  MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

EXHIBIT A

1

*The Honorable Marsha J. Pechman*

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED COMPLAINT - 1
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   YOLANY PADILLA;  IBIS GUZMAN; BLANCA
2   ORANTES; BALTAZAR VASQUEZ;
                              Plaintiffs-Petitioners,     No. 2:18-cv-928  MJP
3         v.
4   U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT        **SECOND AMENDED**
    ("ICE"); U.S. DEPARTMENT OF HOMELAND            **COMPLAINT:**
5   SECURITY ("DHS"); U.S. CUSTOMS AND BORDER       **CLASS ACTION FOR**
    PROTECTION ("CBP"); U.S. CITIZENSHIP AND        **INJUNCTIVE AND**
6   IMMIGRATION SERVICES ("USCIS"); EXECUTIVE       **DECLARATORY RELIEF**
    OFFICE FOR IMMIGRATION REVIEW ("EOIR");
7   THOMAS HOMAN, Acting Director of ICE; KIRSTJEN
    NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,
8   Acting Commissioner of CBP; L. FRANCIS CISSNA,
    Director of USCIS; MARC J. MOORE, Seattle Field Office
9   Director, ICE; JEFFERSON BEAUREGARD
    SESSIONS III, United States Attorney General; LOWELL
10  CLARK, warden of the Northwest Detention Center in
    Tacoma, Washington;  CHARLES INGRAM, warden of the
11  Federal Detention Center in SeaTac, Washington;  DAVID
    SHINN, warden of the Federal Correctional Institute in
12  Victorville, California;JAMES JANECKA, warden of the
    Adelanto Detention Facility;
13
14                            Defendants-Respondents.
15
16
17
18
19
20
21
22
23
24
25
26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## I.     <u>INTRODUCTION</u>

1.     This lawsuit initially challenged the legality of the following three parts of the federal government's zero-tolerance policy with respect to persons fleeing for safety and asylum in the United States: (1) family separations, (2) credible fear interviews and determinations, and (3) the related bond hearings.

**A.     Family Separations**

2.     This lawsuit previously challenged the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum.  The day after plaintiffs filed this suit in the Western District of Washington, however, a federal court in the Southern District of California issued a nationwide preliminary injunction Order against this forcible separation.  (*Ms. L v. ICE*, S.D.Cal. case no. 18cv0428 DMS (MDD), docket no. 83).

3.     With this Second Amended Complaint, plaintiffs confirm that they will not further pursue those claims in this case.

**B.     Credible Fear Interviews & Determinations**

4.     This lawsuit challenges the legality of the government's policy or practice of excessively prolonging the detention of asylum seekers placed in expedited removal proceedings by failing to promptly provide them their credible fear interview and determination.  Federal law requires that persons who have asked for asylum or expressed a fear of persecution must be scheduled for a "credible fear interview" with a DHS official to determine whether that person should be allowed to proceed with applying for asylum because he or she has a credible fear of persecution.  If the interviewer determines the asylum seeker <u>does</u> have a credible fear of persecution, the government assigns the case to the federal immigration court for hearings to adjudicate the merits of that person's asylum claim.  If the interviewer determines the asylum seeker does <u>not</u> have a credible fear of persecution, the asylum seeker can appeal that determination to a federal immigration judge.  But in either case, the federal government detains the asylum seeker until it determines that she or he has a credible fear of persecution.  The *Ms. L*

SECOND AMENDED COMPLAINT - 3
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

*v. ICE* Order did not address the federal government's lengthy delays in conducting these statutorily required credible fear interviews and or determinations.

**C.    Bond Hearings**

5.    This lawsuit also challenges the legality of the government's related policy or practice of excessively prolonging the detention of asylum seekers by failing to promptly conduct the bond hearings required by federal law after an asylum seeker's positive completion of their credible fear interview.  Federal law requires that if an asylum seeker enters the United States at a location other than a designated "Port Of Entry" and is determined to have a credible fear of persecution in his or her credible fear interview, that asylum seeker is entitled to an individualized bond hearing before an immigration judge to determine reasonable conditions for that person's release from federal detention while he or she awaits the many months it takes to adjudicate his or her asylum claim (e.g., a reasonable bond amount or parole without posting a monetary bond).  This bond hearing must comport with constitutional requirements.  Yet the government does not establish any timeline for setting this hearing, and as a matter of practice, does not even audio record or provide a transcript of this hearing for appeal or appellate review (unlike other hearings in removal proceedings before the immigration judge). The government also places the burden on asylum seekers to demonstrate in the bond hearing that they should not continue to be detained throughout the lengthy immigration proceedings.  When an immigration judge denies bond, the immigration judge routinely fails to make specific findings but instead simply checks a box on a template order. The *Ms. L v. ICE* Order did not address the federal government's failure to conduct prompt bond hearings that comport with constitutional requirements.

**D.    United States Constitution**

6.    The Bill of Rights prohibits the federal government from depriving any person of their liberty without due process of law (U.S. Constitution, 5th Amendment).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

7.     Asylum seekers who cross the United States border are persons.  They accordingly have a constitutionally protected liberty interest in (1) not being imprisoned for an unreasonable time awaiting their credible fear interview and determination and (2) not being imprisoned without the opportunity for a prompt bond hearing that comports with constitutional requirements.  And especially with respect to the federal government's avowed policy or practice to deter criminal violations of federal immigration laws, asylum seekers also have a constitutionally protected interest in (3) not being subjected to prolonged imprisonment for deterrence or penalty reasons unrelated to adjudicating the merits of their individual asylum claim.

8.     With this Second Amended Complaint, plaintiffs specify with more particularity how defendants' implementation of the federal government's policies and practices with respect to persons fleeing for safety and seeking asylum in the United States violates the United States Constitution.

**E.     Federal Law**

9.     Federal law prohibits final agency action that is arbitrary, capricious, unlawfully withheld, or unreasonably delayed (e.g., Administrative Procedures Act, 5 U.S.C. §706).  Federal law also grants persons fleeing persecution the right to apply for safety and asylum in the United States (e.g., 8 U.S.C. §§ 1225 & 1158; 8 C.F.R. §§ 235.3, 208.30, & 1003.42).

10.     Federal law accordingly prohibits federal agencies from arbitrarily or capriciously depriving an asylum seeker of their child, their prompt credible fear interview and determination, or their prompt bond hearing.  Federal law prohibits federal agencies from unlawfully withholding or unreasonably delaying an asylum seeker's reunification with their child, an asylum seeker's credible fear interview and determination, or an asylum seeker's bond hearing.  And federal law prohibits federal agencies from impeding or seeking to deter an asylum seeker's legal right to apply for asylum.

SECOND AMENDED COMPLAINT - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

11.     With this Second Amended Complaint, plaintiffs specify with more particularity how defendants' implementation of the federal government's policies and practices with respect to persons fleeing for safety and asylum in the United States violates federal law.

**F.     Requested Relief**

12.     With respect to (1)  credible fear interviews and determinations and (2) the related bond hearings, plaintiffs request <u>injunctive</u> relief requiring defendants to cease their policies and practices implementing the federal government's policy or practice in violation of the United States Constitution and federal law.  Plaintiffs request <u>declaratory</u> relief to terminate the parties' disagreement with respect to whether (and how) defendants' implementation of the federal government's policies or practices with respect to persons fleeing for safety and asylum in the United States violates the United States Constitution and federal law.  Lastly, plaintiffs request whatever <u>additional</u> relief this Court finds warranted, just, or equitable.

## II.     <u>JURISDICTION</u>

13.     This case arises under the Fifth  Amendment of the United States Constitution, the Administrate Procedures Act ("APA"), and federal asylum statutes.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States Constitution ("Suspension Clause").

14.     The original plaintiffs in this case were all in custody for purposes of habeas jurisdiction when this action was filed on June 25, 2018.

15.     After this action was filed, plaintiffs Padilla, Orantes, and Guzman were eventually released from detention after they were eventually provided a credible fear interview and individualized bond hearings before an immigration judge.  At the time this Second Amended Complaint is electronically filed on August 22, 2018, plaintiff  Vasquez is still in custody for purposes of habeas jurisdiction.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

16.     At the time this Second Amended Complaint is electronically filed on August 22, 2018, all the children that the federal government took away from plaintiffs have been returned to their mothers after approximately two months of being separated.

### III.     VENUE

17.     Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of the relevant facts occurred within this District.  Those facts include defendants' detention of plaintiffs Padilla, Guzman, and Orantes in this District while forcibly separated from their children, failure in this District to promptly conduct a credible fear interview and determination for their asylum claims, and failure in this District to promptly conduct bond hearings that comport with constitutional requirements to set reasonable conditions for release pending adjudication of their asylum claims.

### IV.     PARTIES

18.     Plaintiff **Yolany Padilla** is a human being seeking asylum for herself and her 6-year-old son (J.A) in the United States.  She is a citizen of Honduras.

19.     Plaintiff **Ibis Guzman** is a human being seeking asylum for herself and her 5-year-old son (R.G.) in the United States.  She is a citizen of Honduras.

20.     Plaintiff **Blanca Orantes** is a human being seeking asylum for herself and her 8-year-old son (A.M.) in the United States.  She is a citizen of El Salvador.

21.     Plaintiff **Baltazar Vasquez** is a human being seeking asylum in the United States.  He is a citizen of El Salvador.

22.     Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal government agency that carries out removal orders and oversees immigration detention.  ICE is part of DHS.  ICE's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings on the merits before the immigration court.  ICE's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

23.    Defendant U.S. Department of Homeland Security ("DHS") is the federal government agency that enforces immigration laws of the United States.  DHS's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings before the immigration court.  DHS's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

24.    Defendant U.S. Customs and Border Protection ("CBP") is the federal government agency that conducts the initial processing and detention of asylum seekers crossing the U.S. border.  CBP is part of DHS.  CBP's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and determination.

25.    Defendant U.S. Citizenship and Immigration Services ("USCIS") is the federal government agency that, through its asylum officers, interviews asylum seekers to determine whether they should be assigned to the immigration court to be allowed to proceed with applying for asylum because they have a credible fear of persecution.  USCIS is a part of DHS.

26.    Defendant Executive Office for Immigration Review ("EOIR") is the federal government agency that is responsible for conducting immigration court proceedings, including adjudicating plaintiffs' asylum claims in removal proceedings and conducting individual bond hearings for persons in removal proceedings.  EOIR is a part of the Department of Justice.

27.    Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of plaintiff Vasquez and putative class members.

28.    Defendant Marc J. Moore is sued in his official capacity as the ICE Seattle Field Office Director, and is a legal custodian of detained plaintiffs.

SECOND AMENDED COMPLAINT - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

29.     Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of DHS.  In this capacity, she directs DHS, ICE, CBP, and USCIS.  As a result, defendant Nielsen has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103 and is a legal custodian of detained plaintiffs.

30.     Defendant Kevin K. McAleenan is sued in his official capacity as the Commissioner of CBP.

31.     Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

32.     Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the United States Attorney General.  In this capacity, he directs agencies within the United States Department of Justice, including EOIR.  Defendant Sessions has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103, oversees defendant EOIR, and is empowered to grant asylum or other relief, including custody determinations made for persons in removal proceedings.

33.     Defendant Lowell Clark is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

34.     Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

35.     Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

36.     Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.     FACTS

### A.     Seeking Asylum

37.     Federal law allows a person to seek asylum in the United States.

38.     Plaintiffs are persons seeking asylum in the United States.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

39.     Plaintiff **Yolany Padilla** and her 6-year-old son J.A. are asylum seekers who fled physical danger and persecution in Honduras.

40.     On or about May 18, 2018, plaintiff Yolany Padilla and her 6-year-old son J.A crossed the U.S.-Mexico border .  They were arrested by a CBP agent as they were making their way to the closest Port Of Entry.  She informed the CBP agent that they were seeking asylum.

41.     Plaintiff **Ibis Guzman** and her 5-year-old son R.G. are asylum seekers who fled physical danger and persecution in Honduras.

42.     On or about May 16, 2018, plaintiff Ibis Guzman and her 5-year-old son R.G. crossed the U.S.-Mexico border.  They were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

43.     Plaintiff **Blanca Orantes** and her 8-year-old son A.M. are asylum seekers who fled physical danger and persecution in El Salvador.

44.     On or about May 21, 2018, plaintiff Blanca Orantes and her 8-year-old son A.M. crossed the U.S.-Mexico border.  They immediately walked to the CBP station to request asylum, and were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

45.     Plaintiff **Baltazar Vasquez** is an asylum seeker who fled physical danger and persecution in El Salvador.

46.     On or about June 1, 2018, Baltazar Vasquez crossed the U.S.-Mexico border.  He was arrested by a CBP agent, and informed the CBP agent that he was seeking asylum.

**B.     Defendants' Zero-Tolerance Policy or Practice**

47.     Defendant Sessions made an announcement about the federal government's "Zero-Tolerance Policy" on April 6, 2018,  *See* https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-illegal-entry.

48.     The federal government's zero-tolerance policy was designed to be a coordinated effort to deter asylum seekers entering the country and exercising their right to apply for asylum

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

by criminally prosecuting them, forcibly separating them from their children, and imposing prolonged, uncertain imprisonment (euphemistically called "detention") on them.

49.     The federal government's zero-tolerance policy has been implemented against asylum seekers who enter the country without inspection requesting asylum.

50.     The federal government's zero-tolerance policy has also been implemented against asylum seekers who appear at a Port Of Entry to request asylum.

**C.     Promptly Taking Children Away From Parents Seeking Asylum**

51.     One part of the federal government's zero-tolerance policy or practice  was to promptly take children away from parents seeking asylum in the United States.

52.     The federal government would send the parent and child to separate federal detention facilities – often in different states thousands of miles away from each other.

53.     A child's forced separation from a parent causes the child severe trauma.  This damage is even worse for children who are already traumatized from fleeing danger and persecution in their home country.  The cognitive and emotional damage caused by a child's forced separation from a parent can be permanent.

54.     A parent's forced separation from their child is also deeply damaging to the parent.  This damage is even worse for parents who are already traumatized from fleeing danger and persecution in their home country, are given little to no information regarding the well-being or whereabouts of their child, and fear they may never see their child again.

55.     he federal government promptly tooks children away from parents seeking asylum in the United States without any demonstration in a hearing that that parent is unfit or presents any danger to the child.

56.     The federal government promptly took children away from parents seeking asylum in the United States without any evidence or accusation that the parent seeking asylum is an unfit parent, or presents a danger to the child, or is not acting in the child's best interest, or is a threat to the child's safety, or abused the child, or neglected the child.

57.     The federal government promptly took children away from parents seeking asylum in the United States to penalize and deter persons from seeking asylum.

58.     The federal government promptly took children away from parents seeking asylum in the United States as part of its zero-tolerance policy against criminal violations of federal immigration laws.

59.     Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes are parents who sought asylum and were (1) detained in immigration custody by defendants in Washington State and (2) separated from a minor child by defendants without any demonstration in a hearing that that parent is unfit or presents a danger to the child.

60.     When plaintiff **Yolany Padilla** and her 6-year-old son J.A were taken into custody, a federal agent promptly announced that Yolany Padilla's son would be taken away from her.  Her 6-year-old son clutched his mother's shirt and said, "no, mommy, I don't want to go."  She reassured her son that any separation would be short, and that everything would be okay.  She was able to stay with her son as they were transferred to one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.  Once they arrived, Yolany Padilla's 6-year-old son was forcibly taken away from her without explanation.

61.     Yolany Padilla's 6-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

62.     Yolany Padilla was then transferred to another federal facility in Laredo, Texas about three days later.  The federal officers in that facility took her son's birth certificate from her.  When she asked for it back, she was told the immigration authorities had it.  No one has returned her son's birth certificate to her.

SECOND AMENDED COMPLAINT - 12
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

63.     About twelve days later, Yolany Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

64.     Despite repeated inquiries into her son's whereabouts, Yolany Padilla was not provided any information about her son until about a month into her detention, when the Honduran consul visited the detention center and she explained she had no news of her son. Soon thereafter she was given a piece of paper saying her son had been put in a place called "Cayuga Center" in New York.  That piece of paper also had a phone number, but she was not able to call her son that day because she did not have money to make a long distance phone call.

65.     The next day, someone gave Yolany Padilla the opportunity to call her son for about ten minutes.  Her 6-year-old son mostly cried quietly.

66.     Yolany Padilla was not released from federal imprisonment until July 6, 2018, after an immigration judge finally granted her a bond.

67.     Yolany Padilla's 6-year-old son was not released from federal imprisonment until July 14, 2018.  That was almost two months after the federal government forcibly took him away from his mom.

68.     CBP transported plaintiff **Ibis Guzman** and her 5-year-old son R.G. to one of the federal detention buildings in Texas that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.   One CBP agent questioned Ibis Guzman, and another CBP agent forcibly took her son away stating she would see her son again in three days.

69.     Ibis Guzman's 5-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

70.     After three days, Ibis Guzman was transferred to a different CBP facility in Texas.  When she asked the federal agents there about the reunification with her son that the CBP agent had promised, they told her they did not know anything about her son's whereabouts.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

71.     Ibis Guzman was then transferred to another federal facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her 5-year-old son and without any means to contact him.  She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ibis Guzman was transferred to the Federal Detention Center in SeaTac, Washington.

73.     Ibis Guzman was not provided any information about her 5-year-old son until about a week later, when she was told that her son had been given to a place called "Baptist Child and Family Services" in San Antonio, Texas.  But she was still not able to contact him.

74.     On June 20, 2018, Ibis Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

75.     Ibis Guzman was denied bond by the immigration judge at her bond hearing on July 3, 2018.

76.     She was not released until on or about July 31, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

77.     CBP transported plaintiff **Blanca Orantes** and her 8-year-old son A.M. to a federal detention facility in Texas.  CBP agents led Blanca Orantes into one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures, and took her 8-year-old son to another part of that detention facility.

78.     While a CBP agent was later interviewing Blanca Orantes, another agent brought her 8-year-old son to her and told her to "say goodbye" to him because they were being separated.  Her 8-year-old son began crying and pleading for his mom not to leave him.

79.     Blanca Orantes' 8-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

80.     On or around May 24, 2018, Blanca Orantes was handcuffed and taken to court. She pled guilty to improper entry under 8 U.S.C. §1325 and was sentenced to time served.  She was then returned to her cell.

81.     About nine days later, Blanca Orantes was transported to the Federal Detention Center in SeaTac, Washington.

82.     The federal government did not provide Blanca Orantes any information about her 8-year-old son until June 9, 2018, when an ICE officer handed her a slip of paper saying her son was being held at place called "Children's Home of Kingston" in Kingston, New York.

83.     On June 20, 2018, Blanca Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by telephone.

84.     Blanca Orantes was denied bond by the immigration judge at her bond hearing on July 16, 2018.

85.     She was not released until on or about July 24, 2018, in order to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

**D.     Failing To Promptly Provide The Credible Fear Interview & Determination Required By Federal Law**

86.     One part of the federal government's policy or practice is to keep asylum seekers in limbo in federal detention by delaying the threshold credible fear interview to which asylum seekers are entitled under federal law.

87.     Detained asylum seekers who are subject to expedited removal are not permitted to move forward with their asylum claims until a credible fear determination has been made by a DHS official.

SECOND AMENDED COMPLAINT - 15
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

88.     The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview in part to penalize and deter persons from seeking asylum.

89.     The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview.

90.     The federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law.

91.     Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez are detained asylum seekers subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who were not provided a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

92.     When plaintiff **Yolany Padilla** first spoke with the CBP agent on or about May 18, 2018, she told the CBP agent that she and her son were requesting asylum.

93.     Neither Yolany Padilla nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

94.     Neither Yolany Padilla nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

95.     Instead, Yolany Padilla was not provided her credible fear interview until July 2, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Yolany Padilla does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits

96.     When plaintiff **Ibis Guzman** first spoke with the CBP agent on or about May 16, 2018, she told the CBP agent that she and her son were requesting asylum.

97.     Neither Ibis Guzman nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

SECOND AMENDED COMPLAINT - 16
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

98.     Neither Ibis Guzman nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

99.     Instead, Ibis Guzman was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Ibis Guzman does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

100.    When plaintiff **Blanca Orantes** first spoke with the CBP agent on or about May 21, 2018, she told the CBP agent that she and her son were requesting asylum.

101.    Neither Blanca Orantes nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

102.    Neither Blanca Orantes nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

103.    Instead, Blanca Orantes was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Blanca Orantes does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

104.    When plaintiff **Baltazar Vasquez** first spoke with the CBP agent on or about June 1, 2018, he told the CBP agent that he was requesting asylum.

105.    Baltazar Vasquez was not provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

106.    Baltazar Vasquez was not provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

107.    Baltazar Vasquez was not scheduled for a credible fear interview until after the First Amended Complaint was electronically filed on July 15, 2018.

SECOND AMENDED COMPLAINT - 17
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

108.     Baltazar Vasquez was not provided his credible fear interview until July 31, 2018. That was almost two months after federal officials imprisoned him. The DHS official conducting his credible fear interview determined that Baltazar Vasquez does have a credible fear of persecution, and therefore referred his case to an immigration court for adjudication of the merits of his asylum claim.

109.     Baltazar Vasquez is currently imprisoned at the Adelanto Detention facility in Adelanto, California.

**E.     Failing To Promptly Provide The Bond Hearing Required By Federal Law**

110.     One part of the federal government's policy or practice is to prolong imprisonment without a proper bond hearing for asylum seekers who entered the United States without inspection.

111.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing in part to penalize and deter persons from seeking asylum.

112.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing.

113.     The federal government has not established any procedural timeframes for timely providing the bond hearings required by federal law.  The federal government has not established basic procedural safeguards for bond hearings such as verbatim transcripts or audio recordings of bond hearings.  The absence of such basic safeguards impedes an imprisoned asylum seeker's ability to meaningful appeal the denial of bond in their individual case as not being based on evidence of legally relevant factors (i.e., being a flight risk or danger to the community) instead of legally irrelevant factors (e.g., the zero-tolerance policy's general goal of punishing and deterring asylum seekers).   Defendant EOIR maintains audio recordings of proceedings before an Immigration Judge other than bond hearings, and provides verbatim transcripts on appeals to the Board of Immigration Appeals.  But Defendant EOIR does not maintain audio recordings of an asylum seeker's bond hearing or provide verbatim transcripts for appeal of bond hearing

SECOND AMENDED COMPLAINT - 18
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   determinations.  Indeed, when an immigration judge denies bond, they routinely do not make

2   specific, particularized findings, and instead simply check a box on a template order.  Moreover,

3   Defendants place the burden of proof on the noncitizen to demonstrate that they should not

4   continue to be detained throughout their lengthy immigration proceedings.

5        114.   Plaintiff **Yolany Padilla** is an asylum seeker who originally entered the United

6   States without inspection, was initially subject to expedited removal proceedings under

7   8 U.S.C. §1225(b) and detained, was determined to have a credible fear of persecution, but was

8   not provided a timely bond hearing with a verbatim transcript or audio recording.

9        115.   The federal government did not provide Yolany Padilla a bond hearing until after

10  she filed this lawsuit.  At the conclusion of that bond hearing, an order was issued allowing her

11  to be released from federal detention upon posting an $8,000 bond pending the adjudication of

12  her asylum claim on the merits.  To her knowledge, there is no verbatim transcript or recording

13  of her bond hearing.  At the bond hearing, the immigration judge placed the burden of proof on

14  Yolany Padilla to demonstrate that she qualified for a bond.

15       116.   Plaintiffs **Ibis Guzman** is a detained asylum seeker who originally entered the

16  United States without inspection, was initially subject to expedited removal proceedings under

17  8 U.S.C. §1225(b), was determined to have a credible fear of persecution, but was not provided a

18  timely bond hearing with a verbatim transcript or audio recording.

19       117.   The federal government did not provide Ibis Guzman a bond hearing until after

20  she filed this lawsuit.  At the bond hearing, the immigration judge placed the burden of proof on

21  Ibis Guzman to demonstrate that she qualified for a bond.  At the conclusion of that bond

22  hearing, an immigration judge issued an order denying her release on *any* bond amount pending

23  the adjudication of her asylum claim on the merits.

24       118.   The immigration judge did not make specific, particularized findings for the basis

25  of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order,

26  rendering her ineligible for bond even though a DHS official had already determined she has a

SECOND AMENDED COMPLAINT - 19
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

credible fear of persecution and even though the federal government has taken away her 6-year-old son.

119.    The immigration judge provided no written explanation for circling "Flight Risk" or the factors and evidence considered in making that conclusion to deny bond.  Per defendant EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  She was not released until on or about July 31, 2018, in order to comply with the preliminary injunction in *Ms. L.*

120.    Plaintiff **Blanca Orantes** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once she was eventually provided her credible fear interview and determination, but was not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

121.    Blanca Orantes was not provided a bond hearing until July 16, 2018.  At the bond hearing, the immigration judge placed the burden of proof on Blanca Orantes to demonstrate that she qualified for a bond.  At the conclusion of that bond hearing, an immigration judge issued an order denying her release on *any* bond amount pending the adjudication of her asylum claim on the merits.

122.    The immigration judge did not make specific, particularized findings for the basis of the denial, and even failed to check the box indicating why she was denied bond on the template order. Per defendant EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  At the bond hearing the immigration judge placed the burden on Blanca Orantes to demonstrate that she was qualified for a bond.

123.    She was not released until on or about July 23, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited her with her child.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

124.    Plaintiff **Baltazar Vasquez** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once he was eventually provided his credible fear interview and determination, but was not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

125.    The federal government did not provide Baltazar Vasquez a bond hearing until August 20, 2018.  At the bond hearing, the immigration judge placed the burden of proof on Baltazar Vasquez to demonstrate that he qualified for a bond.  At the conclusion of that bond hearing, an order was issued allowing him to be released from federal detention upon posting a $9,000 bond pending the adjudication of his asylum claim on the merits.  There is no verbatim transcript or recording of his bond hearing.

## VI.    CLASS ALLEGATIONS

126.    The named plaintiffs are asylum seekers who filed this suit on behalf of themselves and their family members being detained in federal detention.

127.    The named plaintiffs also bring this suit as a class action under Fed.R.Civ.P. 23(b) on behalf of the other similarly situated persons specified in the two classes of asylum seekers specified in Part VI of this Second Amended Complaint.

**A.    "Credible Fear Interview Class"**

128.    With respect to plaintiffs' claims concerning defendants' failure to promptly provide asylum seekers a credible fear interview and determination, plaintiffs seek to represent the following class (the "**credible fear interview class**"):

> All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

129.     Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **credible fear interview class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

130.     The **credible fear interview class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

131.     The **credible fear interview class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being a detained asylum seeker subject to defendants' practice of failing to provide a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official, despite the fact they have been placed in expedited removal proceedings under 8 USC § 1225(b), which requires immediate action.  The members of this class share common questions of law governing whether defendants' practice of failing to provide class members a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official is legal under the Fifth Amendment, APA, or federal asylum statutes.

132.     The **credible fear interview class** satisfies Rule 23(a)(3).  Plaintiffs' claims concerning the legality of defendants' practice of failing to provide a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official are typical of the claims of class members.  As noted in the prior paragraph, the definition of this class dictates that plaintiffs share with the other class members the same common factual situation and the same common questions of law under the Fifth Amendment, APA, and federal asylum statutes.

133.     The **credible fear interview class** satisfies Rule 23(a)(4).  Plaintiffs will fairly and adequately protect the interests of that class.  They are represented by counsel from the Northwest Immigrant Rights Project and the American Immigration Council, who have extensive

SECOND AMENDED COMPLAINT - 22
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    experience litigating class action lawsuits and other complex cases in federal court, including

2    civil rights lawsuits on behalf of noncitizens.

3         134.    The **credible fear interview class** satisfies Rule 23(b)(1).  Requiring separate

4    actions by the members of this class would create the risk of inconsistent or varying

5    adjudications with respect to individual class members that would establish incompatible

6    standards of conduct for defendants.  Requiring separate actions by the members of this class

7    would create the risk of adjudications with respect to individual class members that, as a

8    practical matter, would be dispositive of the interests of the other class members not parties to

9    the individual adjudications, or would at least substantially impair or impede their ability to

10   protect their interests.

11        135.    The **credible fear interview class** satisfies Rule 23(b)(2).  Defendants have acted

12   or refused to act on grounds that apply generally to this class.  Final injunctive relief or

13   corresponding declaratory relief is appropriate with respect to the class as a whole, especially as

14   it involves uniform, federal immigration law and plaintiffs are transferred across the country by

15   defendants.  Moreover, requiring separate actions by the members of this class would create the

16   risk of inconsistent or varying adjudications with respect to individual class members that would

17   establish incompatible standards of conduct for defendants.

18        136.    The **credible fear interview class** satisfies Rule 23(b)(3).  Questions of law or

19   fact common to members of this class predominate over questions affecting only individual

20   members.  A class action is superior to other available methods for fairly and efficiently

21   adjudicating the legality of defendants' practice of failing to provide a credible fear interview

22   and determination within 10 days of a person's expressing a fear of persecution or requesting

23   asylum.

24   **B.     "Bond Hearing Class"**

25        137.    With respect to plaintiffs' claims concerning defendants' failure to promptly

26   conduct a bond hearing to set reasonable conditions for the asylum seeker's release pending the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

lengthy proceedings to adjudicate his or her asylum claim, and to provide a bond hearing that comports with the requirements of due process, plaintiffs seek to represent the following class (the "**bond hearing class**"):

> All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

138.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **bond hearing class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

139.    The **bond hearing class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

140.    The **bond hearing class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings, were found to have a credible fear of persecution, but were then subject to defendants' practice of failing to provide a bond hearing with a transcript or recording of the hearing within 7 days of their requesting a bond hearing.  Moreover, defendant EOIR placed the burden on class members to demonstrate in bond hearings that plaintiffs are eligible for release, and defendants EOIR failed to make any specific, particularized findings of fact when denying release. The members of this class share common questions of law governing whether defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of their requesting a bond hearing, Defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate their eligibility for release, and Defendant EOIR's failure to make specific,

SECOND AMENDED COMPLAINT - 24
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    particularized findings when denying release, is legal under the Fifth Amendment, APA, or

2    federal asylum statutes.

3        141.    The **bond hearing class** satisfies Rule 23(a)(3).  Plaintiffs' claims concerning the

4    legality of defendants' practice of failing to provide a bond hearing with a transcript or recording

5    of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, Defendant

6    EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate

7    they are eligible for release , and Defendant EOIR's failure to make specific findings when

8    denying release, are typical of the claims of class members.  As noted in the prior paragraph, the

9    definition of this class dictates that plaintiffs share with the other class members the same

10   common factual situation and the same common questions of law under the Fifth Amendment,

11   APA, and federal asylum statutes.

12       142.    The **bond hearing class** satisfies Rule 23(a)(4).  Plaintiffs will fairly and

13   adequately protect the interests of that class.  They are represented by counsel from the

14   Northwest Immigrant Rights Project and the American Immigration Council, who have extensive

15   experience litigating class action lawsuits and other complex cases in federal court, including

16   civil rights lawsuits on behalf of noncitizens.

17       143.    The **bond hearing class** satisfies Rule 23(b)(1).  Requiring separate actions by

18   the members of this class would create the risk of inconsistent or varying adjudications with

19   respect to individual class members that would establish incompatible standards of conduct for

20   defendants.  Requiring separate actions by the members of this class would create the risk of

21   adjudications with respect to individual class members that, as a practical matter, would be

22   dispositive of the interests of the other class members not parties to the individual adjudications,

23   or would at least substantially impair or impede their ability to protect their interests.

24       144.    The **bond hearing class** satisfies Rule 23(b)(2).  Defendants have acted or

25   refused to act on grounds that apply generally to this class.  Final injunctive relief or

26   corresponding declaratory relief is appropriate with respect to the class as a whole especially as it

SECOND AMENDED COMPLAINT - 25
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

involves uniform, federal immigration law and plaintiffs are transferred across the country by defendants.  Moreover, requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.

145.    The **bond hearing class** satisfies Rule 23(b)(3).  Questions of law or fact common to members of this class predominate over questions affecting only individual members.  A class action is superior to other available methods for fairly and efficiently adjudicating the legality of defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate they are eligible for release, and Defendant EOIR's failure to make specific, particularized findings when denying release.

## VII.   CAUSES OF ACTION

### COUNT I
### (Violation of Due Process)

146.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

147.    The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Mss. Guzman, Orantes, Mr. Vasquez and all proposed class members.

148.    The named plaintiffs and proposed class members have a constitutionally protected liberty interest in (1)  not being imprisoned in federal detention for an unreasonable time awaiting their credible fear interview and determination, (2) not being imprisoned in federal detention for an unreasonable time awaiting their bond hearing, and (3) having a bond hearing that is fair and comports with due process.

SECOND AMENDED COMPLAINT - 26
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

149.    The federal government's imprisoning plaintiffs and members of the Credible Fear Interview Class in federal detention for an unreasonable time awaiting their credible fear interview and determination violates their substantive due process rights.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a legitimate purpose.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a compelling governmental interest. Defendants' prolonging their federal detention by delaying their credible fear interview and determination more than 10 days is a violation of the constitutional substantive due process rights of plaintiffs and their children as well as of members of the Credible Fear Interview Class.

150.    The federal government's imprisoning plaintiffs and members of the Credible Fear Class in federal detention for an unreasonable time awaiting their credible fear interview and determination violates their procedural due process rights.  That ongoing imprisonment awaiting a credible fear interview and determination is contrary to the law governing expedited removal proceedings and is imposed without any hearing.  Defendants' imprisoning plaintiffs and members of the Credible Fear Interview Class in federal detention for an unreasonable time awaiting their credible fear interview and determination is a violation of the constitutional due process rights of plaintiffs and their children as well as of members of the Credible Fear Interview Class.

151.    The federal government's imprisoning plaintiffs and members of the Bond Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim violates substantive due process.  The government's prolonging these asylum seekers' federal detention by delaying their bond hearing more than 7 days does not further a legitimate purpose. The government's prolonging these asylum seekers' federal detention by delaying their bond hearing more than 7 days does not further a compelling governmental interest.  Moreover,

SECOND AMENDED COMPLAINT - 27
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

denying release for general deterrence or punishment goals unrelated to the specific factors of whether the individual presents a flight risk or danger to the community unlawfully deprives these asylum seekers of their constitutional right to liberty.  Defendants' prolonging plaintiffs' and members of the Bond Hearing Class's federal detention by delaying their bond hearing more than 7 days is a violation of the constitutional substantive process rights of plaintiffs and members of the Bond Hearing Class.

152.    The federal government's imprisoning plaintiffs and members of the Bond Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim violates procedural due process.  That ongoing detention is imposed without providing a bond hearing with a transcript or recording of the hearing and specific, particularized findings with respect to any denial of release, denies  plaintiffs and members of the Bond Hearing Class an adequate record to file an administrative appeal or habeas petition.  Moreover, denying release for general deterrence goals unrelated to the specific factors of whether the individual presents a flight risk or danger to the community strips detained asylum seekers of a fair hearing. What is more, placing the burden on the noncitizen to demonstrate their eligibility for release also constitutes a violation of their due process rights. Defendants' prolonging plaintiffs' and members of the Bond Hearing Class's federal detention by failing to provide a bond hearing where the burden of proof is on the government and with a verbatim transcript or recording of the hearing within 7 days of requesting a bond is a is a violation of the constitutional substantive due process rights of plaintiffs and their children as well as of members of the Bond Hearing Class.

## COUNT II
### (Administrative Procedure Act)

153.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

SECOND AMENDED COMPLAINT - 28
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

154.    Defendants' decision to detain plaintiffs and members of the Credible Fear Interview Class for an unreasonable time awaiting their credible fear interview, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair credible fear interview and determination, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).

155.    Defendants' decision to detain plaintiffs and members of the Bond Hearing Class for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).

156.    Defendants' decision to deny plaintiffsand members of the Bond Hearing Class a bond hearing with adequate procedural protections, specifically a hearing where the burden of proof is on the government, a recording or transcript of the hearing available for any subsequent administrative appeal or habeas petition, and specific, particularized findings of any denial of release, is a final agency action.  That action violates 5 U.S.C.  §§706(1) and (2)(A) and (B).

157.    The APA imposes on federal agencies the duty to conclude matters presented to it within a "reasonable time."  5 U.S.C. §555(b).

158.    The APA prohibits agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. §706(1).

159.    Defendant DHS and its sub-agencies are required to conduct an interview to assess whether an asylum seeker has a credible fear of persecution. This obligation is triggered when Defendants learn of an individual's fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(ii). Asylum seekers are only permitted to raise their claims before an immigration judge after the asylum officer's credible fear determination. *See* 8 C.F.R. § 208.30(f), (g).

SECOND AMENDED COMPLAINT - 29
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

160.    Conducting a credible fear interview to determine whether a person seeking asylum has a credible fear of persecution is a discrete, final agency action that DHS is required to take.

161.    Defendants' failure to expeditiously conduct a credible fear interview after detaining plaintiffs and members of the Credible Fear Interview class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1).

162.    If the asylum officer determines that an asylum seeker has a credible fear of persecution, the case is transferred to EOIR for adjudication of the asylum claim by an immigration judge.

163.    An asylum seeker in the Bond Hearing Class is entitled to a bond hearing to assess eligibility for his or her release from DHS custody pending the lengthy proceedings to adjudicate his or her asylum claim.

164.    Defendant EOIR's failure to promptly conduct a bond hearing for plaintiffs and members of the Bond Hearing Class within 7 days violates defendant's legal duty under the APA to conclude matters presented to it within a reasonable time.

165.    Defendant EOIR's failure to conduct a bond hearing for plaintiffs and members of the Bond Hearing Class with appropriate procedural safeguards constitutes an agency action unlawfully withheld or unreasonably delayed in violation of the APA.

## <u>COUNT III</u>
### (Violation of Asylum Statute)

166.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

167.    The Immigration and Nationality Act grants noncitizens fleeing persecution the opportunity to apply for asylum in the United States.  8 U.S.C. §1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, & 1003.42; 8 U.S.C. §1158(a)(1).

SECOND AMENDED COMPLAINT - 30
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

168.    International law likewise recognizes the fundamental human right to asylum of persons fleeing for safety from persecution and torture.

169.    Noncitizens fleeing persecution have a private right of action to vindicate their right to apply for and receive asylum in the United States.

170.    Defendants' failure to promptly conduct a credible fear interview for plaintiffs and members of the Credible Fear Interview Class violates the asylum statute because it unlawfully infringes on their ability to pursue their asylum claims.

171.    Defendants' failure to promptly conduct a bond hearing to assess eligibility for the release of plaintiffs and members of the Bond Hearing Class violates the asylum statute because it unlawfully infringes on their ability to pursue their asylum claims.

## VIII.    <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request that this Court enter judgment against defendants granting the following relief:

A.    Certify the following **Credible Fear Interview Class**: "All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official."

B.    Name plaintiffs as representatives of the Credible Fear Interview Class, and appoint their counsel as class counsel.

C.    Declare that defendants have an obligation to provide Credible Fear Interview Class members their credible fear interview and determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

D.    Preliminarily and permanently enjoin defendants from not providing Credible Fear Interview Class members their credible fear determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

SECOND AMENDED COMPLAINT - 31
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

E. Certify the following **Bond Hearing Class**: "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing."

F. Name plaintiffs as representatives of the Bond Hearing Class, and appoint their counsel as class counsel.

G. Declare that defendants have an obligation to provide Bond Hearing Class members a bond hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their asylum claim.

H. Declare that defendants have an obligation to provide Bond Hearing Class members (including plaintiffs) a bond hearing with adequate procedural safeguards, including a verbatim transcript or recording of their bond hearing.

I. Declare that defendant DHS must bear the burden of proof to show continued detention is necessary in civil immigration proceedings.

J. Declare that in bond hearings immigration judges must make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

K. Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members their bond hearing with a verbatim transcript or recording of their bond hearing.

L. Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members their bond hearing within 7 days of the asylum seeker's request.

SECOND AMENDED COMPLAINT - 32
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

M. Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members bond hearings where defendant DHS bears the burden of proof to show continued detention is necessary.

N. N. Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members where immigration judges make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

O. Order defendants to pay reasonable attorneys' fees and costs.

P. Order all other relief that is just and proper.

SECOND AMENDED COMPLAINT - 33
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3   Dated this 15th day of July, 2018.

4

5   <u>s/ Matt Adams</u>                                        <u>s/ Thomas F. Ahearne</u>
    Matt Adams, WSBA No. 28287                      Thomas F. Ahearne, WSBA #14844
6   Email:  matt@nwirp.org                               Email:  ahearne@foster.com

7
    Glenda M. Aldana Madrid, WSBA No. 46987          *William F. Abrams, CA Bar #88805
8   Email:  glenda@nwirp.org                             *Admitted pro hac vice
                                                        *Email:  bill.abrams@foster.com
9   Leila Kang, WSBA No. 48048
    Email:  leila@nwirp.org                              Joanna Plichta Boisen, WSBA #38368
10                                                       Email:  Joanna.boisen@foster.com

11  NORTHWEST IMMIGRANT RIGHTS PROJECT
    615 Second Avenue, Suite 400                         Benjamin J. Hodges, WSBA #49301
12  Seattle, WA  98104                                   Email:  ben.hodges@foster.com
    Telephone: (206) 957-8611
13  Facsimile: (206) 587-4025                            Kevin Ormiston, WSBA #49835
    *Attorneys for Plaintiffs-Petitioners*               Email:  kevin.ormiston@foster.com
14
    Trina Realmuto*                                      FOSTER PEPPER PLLC
15  Kristin Macleod-Ball*                                1111 Third Avenue, Suite 3000
16  AMERICAN IMMIGRATION COUNCIL                         Seattle, Washington  98101-3292
    100 Summer Street, 23rd Floor                        Telephone: (206) 447-4400
17  Boston, MA 02110                                     Facsimile: (206) 447-9700
    (857) 305-3600                                       *Attorneys for Plaintiffs-Petitioners*
18  trealmuto@immcouncil.org
    kmacleod-ball@immcouncil.org
19

20  *Application for *pro hac vice* admission
    forthcoming
21

22

23

24

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 15th day of July, 2018.

*s/ Thomas F. Ahearne*
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington  98101-3292
Telephone: (206) 447-8934
Facsimile: (206) 447-9700
Email: ahearne@foster.com

SECOND AMENDED COMPLAINT - 35
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

EXHIBIT B

1

*The Honorable Marsha J. Pechman*

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

YOLANY PADILLA, on behalf of herself and her 6-year-old son J.A.;  IBIS GUZMAN, on behalf of herself and her 5-year-old son R.G.;  BLANCA ORANTES, on behalf of herself and her 8-year-old son A.M.;  BALTAZAR VASQUEZ, on behalf of himself;

9

10

11

Plaintiffs-Petitioners,

No. 2:18-cv-928  MJP

**SECOND AMENDED COMPLAINT: CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF**

v.

12

13

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES ("HHS"); OFFICE OF REFUGEE RESETTLEMENT ("ORR"); THOMAS HOMAN, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; ALEX M. AZAR II, Secretary of HHS; SCOTT LLOYD, Director of ORR; MARC J. MOORE, Seattle Field Office Director, ICE.; JEFFERSON BEAUREGARD SESSIONS III, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington;  CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington;  DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility;

14

15

16

17

18

19

20

21

22

23

24

25

26

Defendants-Respondents.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## I.    **INTRODUCTION**

1.    This lawsuit initially challengeds the legality of the following three parts of the federal government's zero-tolerance policy with respect to persons fleeing for safety and asylum in the United States: (1) family separations, (2) credible fear interviews and determinations, and (3) the related bond hearings.

**A.    Family Separations**

2.    This lawsuit previously challengeds the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum.  The day after plaintiffs filed this suit in the Western District of Washington, however, a federal court in the Southern District of California issued a nationwide preliminary injunction Order against this forcible separation.  (*Ms. L v. ICE*, -S.Cal. case no. 18cv0428 DMS (MDD), docket no. 83).

3.    With this Second Amended Complaint, plaintiffs confirm that they are not waiving their previously-asserted claims for relief with respect to forcible separation, but will not further pursue those claims in this case pending defendants' promised compliance with the *Ms. L v. ICE* Order.

**B.    Credible Fear Interviews & Determinations**

4.    This lawsuit also challenges the legality of the government's policy or zero-tolerance practice of excessively prolonging the detention of asylum seekers placed in expedited removal proceedings by failing to promptly provide them their credible fear interview and determination.  Federal law requires that persons who have asked for asylum or expressed a fear of persecution must be scheduled for a "credible fear interview" with a DHS official to determine whether that person should be allowed to proceed with applying for asylum because he or she has a credible fear of persecution.  If the interviewer determines the asylum seeker does have a credible fear of persecution, the government assigns the case to the federal immigration court for hearings to adjudicate the merits of that person's asylum claim.  If the interviewer determines the asylum seeker does not have a credible fear of persecution, the asylum seeker can

SECOND AMENDED COMPLAINT - 2
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   appeal that determination to a federal immigration judge.  But in either case, the federal

2   government detains the asylum seeker until it determines that she or he has a credible fear of

3   persecution.  The *Ms. L v. ICE* Order did not address the federal government's lengthy delays in

4   conducting these statutorily required credible fear interviews and or determinations.

5   ~~1.    With this~~ Second Amended Complaint, plaintiffs clarify and confirm their full

6   ~~pursuit of their claims with respect to defendants' excessively prolonging the detention of~~

7   ~~asylum seekers by failing to promptly provide the credible fear interviews and determinations~~

8   ~~required by federal law.~~

9   **~~D.~~C.    Bond Hearings**

10   5.    This lawsuit also challenges the legality of the government's related policy or

11   ~~zero-tolerance~~ practice of excessively prolonging the detention of asylum seekers by failing to

12   promptly conduct the bond hearings required by federal law after an asylum seeker's positive

13   completion of their credible fear interview.  Federal law requires that if an asylum seeker enters

14   the United States at a location other than a designated "Port Of Entry" and is determined to have

15   a credible fear of persecution in his or her credible fear interview, that asylum seeker is entitled

16   to an individualized bond hearing before an immigration judge to determine reasonable

17   conditions for that person's release from federal detention while he or she awaits the many

18   months it takes to adjudicate his or her asylum claim (e.g., a reasonable bond amount or parole

19   without posting a monetary bond).  This bond hearing must comport with constitutional

20   requirements.  Yet the government does not establish any timeline for setting this hearing, and as

21   a matter of practice, does not even audio record or provide a transcript of this hearing for appeal

22   or appellate review (unlike other hearings in removal proceedings before the immigration judge).

23   The government also places the burden on asylum seekers to demonstrate in the bond hearing

24   that they should not continue to be detained throughout the lengthy immigration proceedings.

25   When an immigration judge denies bond, the immigration judge routinely fails to ~~even~~ make

26   specific findings but instead simply checks a box on a template order. The *Ms. L v. ICE* Order

SECOND AMENDED COMPLAINT - 3
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  did not address the federal government's failure to conduct prompt bond hearings that comport

2  with constitutional requirements.

3  ~~1.      With this~~ Second ~~Amended Complaint, plaintiffs specify their claims with respect~~

4  ~~to defendants' excessively prolonging the detention of asylum seekers by failing to promptly~~

5  ~~conduct the bond hearings required by federal law.~~

6  **~~F.~~D.   United States Constitution**

7       6.      The Bill of Rights prohibits the federal government from depriving any person of

8  their liberty without due process of law (U.S. Constitution, 5th Amendment).  ~~The Bill of Rights~~

9  ~~also prohibits the federal government from imposing or inflicting on any person any excessive~~

10 ~~bail or any cruel punishments.  (U.S. Constitution, 8th Amendment).~~

11      7.      Asylum seekers who cross the United States border are persons.  They

12 accordingly have a constitutionally protected liberty interest in (1) ~~remaining together as a~~

13 ~~family, (2)~~ not being imprisoned for an unreasonable time awaiting their credible fear interview

14 and determination~~,~~ and (~~3~~2) not being imprisoned without the opportunity for a prompt bond

15 hearing that comports with constitutional requirements.  And especially with respect to the

16 federal government's avowed ~~zero-tolerance~~ policy or practice to deter criminal violations of

17 federal immigration laws, asylum seekers also have a constitutionally protected interest in

18 (~~4~~3) not being subjected to prolonged imprisonment for deterrence or penalty reasons unrelated

19 to adjudicating the merits of their individual asylum claim~~, and (5~~4) not being subjected to cruel

20 ~~punishments though unreasonably delayed or denied bond or parole~~.

21      8.      With this Second Amended Complaint, plaintiffs specify with more particularity

22 how defendants' implementation of the federal government's ~~zero-tolerance policy~~policies and

23 practices with respect to persons fleeing for safety and seeking asylum in the United States

24 violates the United States Constitution.

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    ~~G.~~E.    **Federal Law**

2         9.      Federal law prohibits final agency action that is arbitrary, capricious, unlawfully

3    withheld, or unreasonably delayed (e.g., Administrative Procedures Act, 5 U.S.C. §706).  Federal

4    law also grants persons fleeing persecution the right to apply for safety and asylum in the United

5    States (e.g., 8 U.S.C. §§ 1225 & 1158; 8 C.F.R. §§ 235.3, 208.30, & 1003.42).

6         10.     Federal law accordingly prohibits federal agencies from arbitrarily or capriciously

7    depriving an asylum seeker of their child, their prompt credible fear interview and determination,

8    or their prompt bond hearing.  Federal law prohibits federal agencies from unlawfully

9    withholding or unreasonably delaying an asylum seeker's reunification with their child, an

10   asylum seeker's credible fear interview and determination, or an asylum seeker's bond hearing.

11   And federal law prohibits federal agencies from impeding or seeking to deter an asylum seeker's

12   legal right to apply for asylum.

13        11.     With this <u>Second</u> Amended Complaint, plaintiffs specify with more particularity

14   how defendants' implementation of the federal government's ~~zero-tolerance policy~~ <u>policies and</u>

15   <u>practices</u> with respect to persons fleeing for safety and asylum in the United States violates

16   federal law.

17   ~~H.~~F.    **Requested Relief**

18        12.     With respect to (1) ~~family separations, (2)~~ credible fear interviews and

19   determinations~~,~~ and (~~3~~2) the related bond hearings, plaintiffs request <u>injunctive</u> relief requiring

20   defendants to cease their policies and practices implementing the federal government's ~~zero-~~

21   ~~tolerance~~ policy <u>or practice</u> in violation of the United States Constitution and federal law.

22   Plaintiffs request <u>declaratory</u> relief to terminate the parties' disagreement with respect to whether

23   (and how) defendants' implementation of the federal government's ~~zero-tolerance policy~~ <u>policies</u>

24   <u>or practices</u> with respect to persons fleeing for safety and asylum in the United States violates the

25   United States Constitution and federal law.  Lastly, plaintiffs request whatever <u>additional</u> relief

26   this Court finds warranted, just, or equitable.

<u>SECOND</u> AMENDED COMPLAINT - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## II.   JURISDICTION

13.    This case arises under the Fifth ~~and Eighth~~ Amendment~~s~~ of the United States Constitution, the Administrate Procedures Act ("APA"), and federal asylum statutes.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States Constitution ("Suspension Clause").

14.    The original plaintiffs in this case were all in custody for purposes of habeas jurisdiction when this action was filed on June 25, 2018.

15.    After this action was filed, plaintiffs Padilla, Orantes, and Guzman w~~a~~ere~~s~~ eventually released from detention after ~~ts~~hey w~~a~~ere eventually provided a ~~her~~ credible fear interview and individualized bond hearings before an immigration judge.  At the time this Second Amended Complaint is electronically filed on August 22~~July 15~~, 2018, plaintiff~~s~~ ~~Guzman, Orantes, and~~ Vasquez is~~are~~ still in custody for purposes of habeas jurisdiction.

16.    At the time this Second Amended Complaint is electronically filed on August 22~~July 15~~, 2018, all ~~but one of~~ the children that the federal government took away from plaintiffs have been returned to their mothers after ~~roughly~~approximately two months of being separated.~~are still in custody for purposes of habeas jurisdiction.  (That one child, Yolany Padilla's 6-year-old son, was finally returned to his mother yesterday, July 14, 2018.)~~

## III.   VENUE

17.    Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of the relevant facts occurred within this District.  Those facts include defendants' detention of plaintiffs Padilla, Guzman, and Orantes in this District while forcibly separated from their children, failure in this District to promptly conduct a credible fear interview and determination for their asylum claims, and failure in this District to promptly conduct bond hearings that comport with constitutional requirements to set reasonable conditions for release pending adjudication of their asylum claims.

SECOND AMENDED COMPLAINT - 6
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

## IV.   PARTIES

2    18.    Plaintiff **Yolany Padilla** is a human being seeking asylum for herself and her

3    6-year-old son (J.A) in the United States.  She is a citizen of Honduras.

4    19.    Plaintiff **Ibis Guzman** is a human being seeking asylum for herself and her

5    5-year-old son (R.G.) in the United States.  She is a citizen of Honduras.

6    20.    Plaintiff **Blanca Orantes** is a human being seeking asylum for herself and her

7    8-year-old son (A.M.) in the United States.  She is a citizen of El Salvador.

8    21.    Plaintiff **Baltazar Vasquez** is a human being seeking asylum in the United States.

9    He is a citizen of El Salvador.

10    22.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal

11    government agency that carries out removal orders and oversees immigration detention.  ICE is

12    part of DHS.  ICE's responsibilities include determining whether an asylum seeker will be

13    released and how soon his or her case will be submitted for a credible fear interview and

14    subsequent proceedings on the merits before the immigration court.  ICE's local field office in

15    Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington

16    will be released, and how soon their cases will be submitted for credible fear interview and

17    subsequent proceedings before the immigration court.

18    23.    Defendant U.S. Department of Homeland Security ("DHS") is the federal

19    government agency that enforces immigration laws of the United States.  DHS's responsibilities

20    include determining whether an asylum seeker will be released and how soon his or her case will

21    be submitted for a credible fear interview and subsequent proceedings before the immigration

22    court.  DHS's local field office in Tukwila, Washington, is responsible for determining whether

23    plaintiffs detained in Washington will be released, and how soon their cases will be submitted for

24    credible fear interview and subsequent proceedings before the immigration court.

25    24.    Defendant U.S. Customs and Border Protection ("CBP") is the federal

26    government agency that conducts the initial processing and detention of asylum seekers crossing

SECOND AMENDED COMPLAINT - 7
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   the U.S. border.  CBP is part of DHS.  CBP's responsibilities include determining whether an

2   asylum seeker will be released and how soon his or her case will be submitted for a credible fear

3   interview and determination.

4        25.      Defendant U.S. Citizenship and Immigration Services ("USCIS") is the federal

5   government agency that, through its asylum officers, interviews asylum seekers to determine

6   whether they should be assigned to the immigration court to be allowed to proceed with applying

7   for asylum because they have a credible fear of persecution.  USCIS is a part of DHS.

8        26.      Defendant Executive Office for Immigration Review ("EOIR") is the federal

9   government agency that is responsible for conducting immigration court proceedings, including

10  adjudicating plaintiffs' asylum claims in removal proceedings and conducting individual bond

11  hearings for persons in removal proceedings.  EOIR is a part of the Department of Justice.

12       27.      Defendant U.S. Department of Health and Human Services ("HHS") is the federal

13  government agency that has been delegated authority to make custody determinations for

14  "unaccompanied" noncitizen children.

15       28.27.   Defendant Office of Refugee Resettlement ("ORR") is the federal government

16  agency that that has been delegated responsibility to care for and place "unaccompanied"

17  noncitizen children.  ORR is part of HHS.

18       29.28.   Defendant Thomas Homan is sued in his official capacity as the Director of ICE,

19  and is a legal custodian of plaintiff Vasquez and putative class membersdetained plaintiffs.

20       30.29.   Defendant Marc J. Moore is sued in his official capacity as the ICE Seattle Field

21  Office Director, and is a legal custodian of detained plaintiffs.

22       31.30.   Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of

23  DHS.  In this capacity, she directs DHS, ICE, CBP, and USCIS.  As a result, defendant Nielsen

24  has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103 and is a

25  legal custodian of detained plaintiffs.

26

SECOND AMENDED COMPLAINT - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

32.31.  Defendant Kevin K. McAleenan is sued in his official capacity as the Commissioner of CBP.

33.32.  Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

34.    Defendant Alex M. Azar II is sued in his official capacity as the Secretary of HHS.

35.    Defendant Scott Lloyd is sued in his official capacity as the Director of ORR.

36.33.  Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the United States Attorney General.  In this capacity, he directs agencies within the United States Department of Justice, including EOIR.  Defendant Sessions has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103, oversees defendant EOIR, and is empowered to grant asylum or other relief, including custody determinations made for persons in removal proceedings.

37.34.  Defendant Lowell Clark is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

38.35.  Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

36.     Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

39.37.  Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.    **FACTS**

**A.    Seeking Asylum**

40.38.  Federal law allows a person to seek asylum in the United States.

41.39.  Plaintiffs are persons seeking asylum in the United States.

SECOND AMENDED COMPLAINT - 9
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

42.   Some asylum seekers cross the U.S.-Mexico border at one of the "Ports Of Entry" designated by the United States government.

43.   An asylum seeker who crosses the border at a designated Port Of Entry and openly declares them self to a CBP agent is referred to as being an "arriving" asylum seeker.

44.   An asylum seeker who crosses the border at a Port Of Entry and does not openly declares them self to a CBP agent is referred to as "entering without inspection."

45.   An asylum seeker who crosses the U.S.-Mexico border at a location that is between the Ports Of Entry designated by the United States government is also referred to as "entering without inspection."

46.40.  Plaintiff **Yolany Padilla** and her 6-year-old son J.A. are asylum seekers who fled physical danger and persecution in Honduras.

47.41.  On or about May 18, 2018, plaintiff Yolany Padilla and her 6-year-old son J.A crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  They were arrested by a CBP agent as they were making their way to the closest Port Of Entry.  She informed the CBP agent that they were seeking asylum.

48.42.  Plaintiff **Ibis Guzman** and her 5-year-old son R.G. are asylum seekers who fled physical danger and persecution in Honduras.

49.43.  On or about May 16, 2018, plaintiff Ibis Guzman and her 5-year-old son R.G. crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United States government.  They were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

50.44.  Plaintiff **Blanca Orantes** and her 8-year-old son A.M. are asylum seekers who fled physical danger and persecution in El Salvador.

51.45.  On or about May 21, 2018, plaintiff Blanca Orantes and her 8-year-old son A.M. crossed the U.S.-Mexico border at a location between Ports Of Entry designated by the United

SECOND AMENDED COMPLAINT - 10
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   ~~States government~~.  They immediately walked to the CBP station to request asylum, and were

2   arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

3   ~~52.~~46.  Plaintiff **Baltazar Vasquez** is an asylum seeker who fled physical danger and

4   persecution in El Salvador.

5   ~~53.~~47.  On or about June 1, 2018, Baltazar Vasquez crossed the U.S.-Mexico border ~~at a~~

6   ~~location between Ports Of Entry designated by the United States government~~.  He was arrested

7   by a CBP agent, and informed the CBP agent that he was seeking asylum.

8   **B.    Defendants' Zero-Tolerance Policy or Practice**

9   ~~54.~~48.  Defendant ~~Attorney General~~ Sessions made an announcement about the federal

10  government's "Zero-Tolerance Policy" on April 6, 2018,  *See*

11  https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-

12  illegal-entry.

13  ~~55.~~49.  The federal government's zero-tolerance policy was designed to be a coordinated

14  effort to deter asylum seekers entering the country and exercising their right to apply for asylum

15  by criminally prosecuting them, forcibly separating them from their children, and imposing

16  prolonged, uncertain imprisonment (euphemistically called "detention") on them.

17  ~~56.~~50.  The federal government's zero-tolerance policy has been implemented against

18  asylum seekers who enter the country without inspection requesting asylum.

19  ~~57.~~51.  The federal government's zero-tolerance policy has also been implemented

20  against asylum seekers who appear at a Port Of Entry to request asylum.

21  **C.    Promptly Taking Children Away From Parents Seeking Asylum**

22  ~~58.~~52.  One part of the federal government's zero-tolerance policy or practice ~~is~~ was to

23  promptly take children away from parents seeking asylum in the United States.

24  ~~59.~~53.  The federal government would sends the parent and child to separate federal

25  detention facilities – often in different states thousands of miles away from each other.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

60.54.  A child's forced separation from a parent causes the child severe trauma.  This damage is even worse for children who are already traumatized from fleeing danger and persecution in their home country.  The cognitive and emotional damage caused by a child's forced separation from a parent can be permanent.

61.55.  A parent's forced separation from their child is also deeply damaging to the parent.  This damage is even worse for parents who are already traumatized from fleeing danger and persecution in their home country, are given little to no information regarding the well-being or whereabouts of their child, and fear they may never see their child again.

62.56.  The federal government promptly tookakes children away from parents seeking asylum in the United States without any demonstration in a hearing that that parent is unfit or presents any danger to the child.

63.57.  The federal government promptly tookakes children away from parents seeking asylum in the United States without any evidence or accusation that the parent seeking asylum is an unfit parent, or presents a danger to the child, or is not acting in the child's best interest, or is a threat to the child's safety, or abused the child, or neglected the child.

64.58.  The federal government promptly tookakes children away from parents seeking asylum in the United States to penalize and deter persons from seeking asylum.

65.59.  The federal government promptly tookakes children away from parents seeking asylum in the United States as part of its zero-tolerance policy against criminal violations of federal immigration laws.

66.60.  Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes are parents who sought asylum and were (1) detained in immigration custody by defendants in Washington State and (2) separated from a minor child by defendants without any demonstration in a hearing that that parent is unfit or presents a danger to the child.

67.61.  When plaintiff **Yolany Padilla** and her 6-year-old son J.A were taken into custody, a federal agent promptly announced that Yolany Padilla's son would be taken away

1  from her.  Her 6-year-old son clutched his mother's shirt and said, "no, mommy, I don't want to

2  go."  She reassured her son that any separation would be short, and that everything would be

3  okay.  She was able to stay with her son as they were transferred to one of the federal detention

4  buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold

5  temperatures.  Once they arrived, Yolany Padilla's 6-year-old son was forcibly taken away from

6  her without explanation.

7       68.62.  Yolany Padilla's 6-year-old son was taken away from her without any hearing,

8  and without any accusation or evidence that she is in any way an unfit parent, or that she is in

9  any way not acting in his best interest fleeing for safety in the United States, or that she is in any

10  way a threat to his safety, or that she in any way abused him, or that she in any way neglected

11  him.

12       69.63.  Yolany Padilla was then transferred to another federal facility in Laredo, Texas

13  about three days later.  The federal officers in that facility took her son's birth certificate from

14  her.  When she asked for it back, she was told the immigration authorities had it.  No one has

15  returned her son's birth certificate to her.

16       70.64.  About twelve days later, Yolany Padilla was transferred to the Federal Detention

17  Center in SeaTac, Washington.

18       71.65.  Despite repeated inquiries into her son's whereabouts, Yolany Padilla was not

19  provided any information about her son until about a month into her detention, when the

20  Honduran consul visited the detention center and she explained she had no news of her son.

21  Soon thereafter she was given a piece of paper saying her son had been put in a place called

22  "Cayuga Center" in New York.  That piece of paper also had a phone number, but she was not

23  able to call her son that day because she did not have money to make a long distance phone call.

24       72.66.  The next day, someone gave Yolany Padilla the opportunity to call her son for

25  about ten minutes.  Her 6-year-old son mostly cried quietly.

26

SECOND AMENDED COMPLAINT - 13
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

73.67.  Yolany Padilla was not released from federal imprisonment until July 6, 2018, after an immigration judge finally granted her a bond.

74.68.  Yolany Padilla's 6-year-old son was not released from federal imprisonment until July 14, 2018.  That was almost two months after the federal government forcibly took him away from his mom.

75.69.  CBP transported plaintiff **Ibis Guzman** and her 5-year-old son R.G. to one of the federal detention buildings in Texas that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.   One CBP agent questioned Ibis Guzman, and another CBP agent forcibly took her son away stating she would see her son again in three days.

76.70.  Ibis Guzman's 5-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

77.71.  After three days, Ibis Guzman was transferred to a different CBP facility in Texas.  When she asked the federal agents there about the reunification with her son that the CBP agent had promised, they told her they did not know anything about her son's whereabouts.

78.72.  Ibis Guzman was then transferred to another federal facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her 5-year-old son and without any means to contact him.  She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

79.73.  About two weeks later, Ibis Guzman was transferred to the Federal Detention Center in SeaTac, Washington.

80.74.  Ibis Guzman was not provided any information about her 5-year-old son until about a week later, when she was told that her son had been given to a place called "Baptist Child and Family Services" in San Antonio, Texas.  But she was still not able to contact him.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

75.    On June 20, 2018, Ibis Guzman was transferred to the Northwest Detention Center in Tacoma, Washington, where she continues to be held, separated from her 5-year-old son.

76.    Ibis Guzman was denied bond by the immigration judge at her bond hearing on July 3, 2018.

81. 77.  She was not released until on or about July 31, 2018, after the federal government was forced in order to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

82. 78.  CBP transported plaintiff **Blanca Orantes** and her 8-year-old son A.M. to a federal detention facility in Texas.  CBP agents led Blanca Orantes into one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures, and took her 8-year-old son to another part of that detention facility.

83. 79.  While a CBP agent was later interviewing Blanca Orantes, another agent brought her 8-year-old son to her and told her to "say goodbye" to him because they were being separated.  Her 8-year-old son began crying and pleading for his mom not to leave him.  She has not seen her son since then.

84. 80.  Blanca Orantes' 8-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

85. 81.  On or around May 24, 2018, Blanca Orantes was handcuffed and taken to court. She pled guilty to improper entry under 8 U.S.C. §1325 and was sentenced to time served.  She was then returned to her cell.

86. 82.  About nine days later, Blanca Orantes was transported to the Federal Detention Center in SeaTac, Washington.

SECOND AMENDED COMPLAINT - 15
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

87.83.  The federal government did not provide Blanca Orantes any information about her 8-year-old son until June 9, 2018, when an ICE officer handed her a slip of paper saying her son was being held at place called "Children's Home of Kingston" in Kingston, New York.

84.    On June 20, 2018, Blanca Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by telephone.  To date, she has not been allowed to see her 8-year-old son, and has rarely been allowed to speak to him by phone.

85.    Blanca Orantes was denied bond by the immigration judge at her bond hearing on July 16, 2018.

88.86.  She was not released until on or about July 24, 2018, in order to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

**D.    Failing To Promptly Provide The Credible Fear Interview & Determination Required By Federal Law**

89.87.  One part of the federal government's zero-tolerance policy or practice is to keep asylum seekers in limbo in federal detention by delaying the threshold credible fear interview to which asylum seekers are entitled under federal law.

90.88.  Detained asylum seekers who are subject to expedited removal are not permitted to move forward with their asylum claims until a credible fear determination has been made by a DHS official.

91.89.  The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview in part to penalize and deter persons from seeking asylum.

92.90.  The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview as part of its zero-tolerance policy against criminal violations of federal immigration laws.

93.91.  The federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

94.92.   Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez are detained asylum seekers subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who were not provided a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

95.93.   When plaintiff **Yolany Padilla** first spoke with the CBP agent on or about May 18, 2018, she told the CBP agent that she and her son were requesting asylum.

96.94.   Neither Yolany Padilla nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

97.95.   Neither Yolany Padilla nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

98.96.   Instead, Yolany Padilla was not provided her credible fear interview until July 2, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Yolany Padilla does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits

99.97.   When plaintiff **Ibis Guzman** first spoke with the CBP agent on or about May 16, 2018, she told the CBP agent that she and her son were requesting asylum.

100.98.      Neither Ibis Guzman nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

101.99.      Neither Ibis Guzman nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

102.100.      Instead, Ibis Guzman was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Ibis Guzman does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    ~~103.~~101.       When plaintiff **Blanca Orantes** first spoke with the CBP agent on or

2    about May 21, 2018, she told the CBP agent that she and her son were requesting asylum.

3    ~~104.~~102.       Neither Blanca Orantes nor her son were provided a credible fear

4    interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS

5    official.

6    ~~105.~~103.       Neither Blanca Orantes nor her son were provided a credible fear

7    interview as of the date this lawsuit was originally filed on June 25, 2018.

8    ~~106.~~104.       Instead, Blanca Orantes was not provided her credible fear interview until

9    June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS

10   official conducting her credible fear interview determined that Blanca Orantes does have a

11   credible fear of persecution, and therefore assigned her asylum claim to immigration court for

12   adjudication on the merits.

13   ~~107.~~105.       When plaintiff **Baltazar Vasquez** first spoke with the CBP agent on or

14   about June 1, 2018, he told the CBP agent that he was requesting asylum.

15   ~~108.~~106.       Baltazar Vasquez was not provided a credible fear interview within

16   10 days of requesting asylum or expressing a fear of persecution to a DHS official.

17   ~~109.~~107.       Baltazar Vasquez was not provided a credible fear interview as of the date

18   this lawsuit was originally filed on June 25, 2018.

19   ~~110.~~108.       Baltazar Vasquez was not scheduled for ~~provided~~ a credible fear interview

20   until after~~as of the date~~ th~~is~~e First Amended Complaint wa~~is~~s electronically filed on July 15,

21   2018.

22   ~~111.~~109.       Baltazar Vasquez was not provided his credible fear interview until July

23   31, 2018.  That was almost two months after federal officials imprisoned him.~~-~~ The DHS official

24   conducting his credible fear interview determined that Baltazar Vasquez does have a credible

25   fear of persecution, and therefore referred his case ~~assigned his asylum claim~~ to an immigration

26   court for adjudication ~~on~~of the merits of his asylum claim.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

112.110.     Baltazar Vasquez is currently imprisoned at the Adelanto Detention facility in the Bureau of Prison's Federal Correctional Institute in AdelantoVictorville, California.

**E.      Failing To Promptly Provide The Bond Hearing Required By Federal Law**

113.111.     One part of the federal government's zero-tolerance policy or practice is to prolong imprisonment without a proper bond hearing for asylum seekers who entered the United States without inspection.

114.112.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing in part to penalize and deter persons from seeking asylum.

115.113.     The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing as part of its zero-tolerance policy against criminal violations of federal immigration laws.

116.114.     The federal government has not established any procedural timeframes for timely providing the bond hearings required by federal law.  The federal government has not established basic procedural safeguards for bond hearings such as verbatim transcripts or audio recordings of bond hearings.  The absence of such basic safeguards impedes an imprisoned asylum seeker's ability to meaningful appeal the denial of bond in their individual case as not being based on evidence of legally relevant factors (i.e., their being a flight risk or danger to the community) instead of legally irrelevant factors (e.g., the zero-tolerance policy's general goal of punishing and deterring asylum seekers).  Defendant EOIR maintains audio recordings of proceedings before an Immigration Judge other than bond hearings, and provides verbatim transcripts on appeals to the Board of Immigration Appeals. But Ddefendant EOIRs does not maintain audio recordings of an asylum seeker's bond hearing or provide verbatim transcripts for appeal of bond hearing determinations.  Indeed, when an immigration judge denies bond, they routinely do not even make specific, particularized findings, and instead simply checking a box

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

on a template order.  Moreover, Defendants place the burden of proof on the ~~immigrant~~noncitizen to demonstrate that they should not continue to be detained throughout their lengthy immigration proceedings.

~~117.~~115.       Plaintiff **Yolany Padilla** is an asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b) and detained, was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

~~118.~~116.       The federal government did not provide Yolany Padilla a bond hearing until after she filed this lawsuit.  At the conclusion of that bond hearing, an order was issued allowing her to be released from federal detention upon posting an $8,000~~on~~ bond pending the adjudication of her asylum claim on the merits.  To her knowledge, there is no verbatim transcript or recording of her bond hearing.  At the bond hearing, the immigration judge placed the burden of proof on Yolany Padilla to demonstrate that she ~~was~~ qualified for a bond.

~~119.~~117.       Plaintiffs **Ibis Guzman** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

~~120.~~118.       The federal government did not provide Ibis Guzman a bond hearing until after she filed this lawsuit.  At the bond hearing, the immigration judge placed the burden of proof on Ibis Guzman to demonstrate that she qualified for a bond.  At the conclusion of that bond hearing, an immigration judge issued an order denying her release on *any* bond amount pending the adjudication of her asylum claim on the merits.

~~121.~~119.       The immigration judge did not make specific, particularized findings for the basis of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order, rendering her ineligible for bond even though a DHS official had already determined

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   she has a credible fear of persecution and even though the federal government has taken away

2   her 6-year-old son.

3   ~~122.~~   The immigration judge provided no written explanation for circling "Flight Risk"

4   or the factors and evidence considered in making that conclusion to deny bond.  Per defendant

5   EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  ~~At the bond~~

6   ~~hearing, the immigration judge placed the burden on Ibis Guzman to demonstrate that she was~~

7   ~~qualified for a bond.~~

8   ~~123.    At the time this Amended Complaint is electronically filed on July 15, 2018, Ibis~~

9   ~~Guzman is still imprisoned in federal detention.~~

10  120.    She was not released until on or about July 31, 2018, in order to comply with the

11  preliminary injunction in *Ms. ~~L.~~L.*

12  ~~124.~~121.         Plaintiff **Blanca Orantes** is a detained asylum seeker who originally

13  entered the United States without inspection, was initially subject to expedited removal

14  proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once

15  she was eventually provided her credible fear interview and determination, but was not provided

16  a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting

17  a bond hearing.

18  122.    Blanca Orantes was not ~~has now been told she will be~~ provided a bond hearing

19  until~~on~~ July 16, 2018.  At the bond hearing, the immigration judge placed the burden of proof on

20  Blanca Orantes to demonstrate that she qualified for a bond.  At the conclusion of that bond

21  hearing, an immigration judge issued an order denying her release on *any* bond amount pending

22  the adjudication of her asylum claim on the merits.

23  123.    The immigration judge did not make specific, particularized findings for the basis

24  of the denial, and even failed to check the box indicating why she was denied bond on the

25  template order. Per defendant EOIR's practice, there is no verbatim transcript or recording of her

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

bond hearing.  At the bond hearing the immigration judge placed the burden on Blanca Orantes to demonstrate that she was qualified for a bond.

124.   She was not released until on or about July 23, 2018, after the federal government was forced ~~in order~~ to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited her with her child.

~~125.   She accordingly still has not been provided a bond hearing with a verbatim transcript or recording of the hearing.~~

125.   Plaintiff **Baltazar Vasquez** is a detained asylum seeker who originally entered the United States without inspection ~~(thus initially triggering potential expedited removal proceedings under 8 U.S.C. §1225(b)),~~, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once he was eventually provided his credible fear interview and determination, but was not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing. ~~but as of the time this Amended Complaint is electronically filed still has not been provided his credible fear interview and determination, and accordingly still has not been provided a bond hearing with a verbatim transcript or recording of the hearing.~~

126.   The federal government did not provide Baltazar Vasquez a bond hearing until August 20, 2018.  At the bond hearing, the immigration judge placed the burden of proof on Baltazar Vasquez to demonstrate that he qualified for a bond.  At the conclusion of that bond hearing, an order was issued allowing him to be released from federal detention upon posting a $9,000 bond pending the adjudication of his asylum claim on the merits.  There is no verbatim transcript or recording of his bond hearing.

## VI.   CLASS ALLEGATIONS

127.   The named plaintiffs are asylum seekers who filed this suit on behalf of themselves and their family members being detained in federal detention.

1    128.   The named plaintiffs also bring this suit as a class action under Fed.R.Civ.P. 23(b)

2  on behalf of the other similarly situated persons specified in the twohree classes of asylum

3  seekers specified in Part VI of this Second Amended Complaint.

4       .       "Family Separation Class"

5              130.       As previously noted, plaintiffs will not be currently pursuing their

6              family separation claim in this case pending defendants' promised

7              compliance with the *Ms. L v. ICE* Order noted in paragraph 2 of this

8              Amended Complaint.  This Amended Complaint nonetheless identifies the

9              following class in case defendants' obligations are modified in that Order

10             or their compliance falls short.

11             131.       With respect to plaintiffs' claims concerning the legality of the

12             government's practice of taking children away from parents seeking

13             asylum, plaintiffs seek to represent the following class (the "**family**

14             **separation class**"):

15         All parents who sought asylum and were (1) detained in immigration

16             custody by defendants in Washington State and (2) separated from a minor

17             child by defendants absent a demonstration in a hearing that that parent is

18             unfit or presents a danger to the child.

19             133.       Plaintiffs allege the following on information and belief:  At least

20             fifty parents currently fit within the **family separation class**.  Defendants

21             should know the precise number since the members of this class should be

22             readily ascertainable through defendants' records.

23             134.       The **family separation class** satisfies Rule 23(a)(1).  This class is

24             so numerous that joinder of all class members is impracticable.

25             135.       The **family separation class** satisfies Rule 23(a)(2).  There are

26             questions of law or fact common to this class.  Given the definition of this

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  class, its members all share the same common factual situation of being

2  subject to defendants' practice of separating asylum-seeking parents from

3  their minor child absent a demonstration in a hearing that that parent is

4  unfit or presents a danger to their child.  The members of this class share

5  common questions of law governing whether defendants' practice of

6  taking children away from class members seeking asylum is legal under

7  the Fifth Amendment, Eighth Amendment, APA, or federal asylum

8  statutes.

9  136.     The **family separation class** satisfies Rule 23(a)(3).  The claims of

10  plaintiffs Padilla, Guzman, and Orantes concerning the legality of

11  defendants' practice of taking children away from parents seeking asylum

12  are typical of the claims of class members.  As noted in the prior

13  paragraph, the definition of this class dictates that plaintiffs Padilla,

14  Guzman, and Orantes share with the other class members the same

15  common factual situation and the same common questions of law under

16  the Fifth Amendment, Eighth Amendment, APA, and federal asylum

17  statutes.

18  137.     The **family separation class** satisfies Rule 23(a)(4).  Plaintiffs

19  Padilla, Guzman, and Orantes will fairly and adequately protect the

20  interests of that class.  They are represented by counsel from the

21  Northwest Immigrant Rights Project, who have extensive experience

22  litigating class action lawsuits and other complex cases in federal court,

23  including civil rights lawsuits on behalf of noncitizens.  They are also

24  represented by counsel from the Foster Pepper law firm, who have

25  extensive experience litigating constitutional and statutory rights lawsuits

26

SECOND AMENDED COMPLAINT - 24
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  in the federal and state courts, including civil rights lawsuits on behalf of a

2  variety of plaintiffs.

3  138.     The **family separation class** satisfies Rule 23(b)(1).  Requiring

4  separate actions by the members of this class would create the risk of

5  inconsistent or varying adjudications with respect to individual class

6  members that would establish incompatible standards of conduct for

7  defendants.  Requiring separate actions by the members of this class

8  would create the risk of adjudications with respect to individual class

9  members that, as a practical matter, would be dispositive of the interests of

10  the other class members not parties to the individual adjudications, or

11  would at least substantially impair or impede their ability to protect their

12  interests.

13  139.     The **family separation class** satisfies Rule 23(b)(2).  Defendants

14  have acted or refused to act on grounds that apply generally to this class.

15  Final injunctive relief or corresponding declaratory relief is appropriate

16  with respect to the class as a whole because requiring separate actions by

17  the members of this class would create the risk of inconsistent or varying

18  adjudications with respect to individual class members that would

19  establish incompatible standards of conduct for defendants.

20  140.128.     The **family separation class** satisfies Rule 23(b)(3).  Questions of law or

21  fact common to members of this class predominate over questions affecting only individual

22  members.  A class action is superior to other available methods for fairly and efficiently

23  adjudicating the legality of defendants' practice of taking children away from parents seeking

24  asylum as part of their implementation of the government's zero-tolerance policy.

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    F.    A.    "Credible Fear Interview Class"

2        141.129.    With respect to plaintiffs' claims concerning defendants' failure to

3    promptly provide asylum seekers a credible fear interview and determination, plaintiffs seek to

4    represent the following class (the "**credible fear interview class**"):

5        All detained asylum seekers in the United States subject to expedited removal proceedings
6        under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days
         of requesting asylum or expressing a fear of persecution to a DHS official, absent a request
7        by the asylum seeker for a delayed credible fear interview.

8        142.130.    Plaintiffs allege the following on information and belief:  At least several

9    hundred asylum seekers currently fit within the **credible fear interview class**.  Defendants

10   should know the precise number since the members of this class should be readily ascertainable

11   through defendants' records.

12       143.131.    The **credible fear interview class** satisfies Rule 23(a)(1).  This class is so

13   numerous that joinder of all class members is impracticable.

14       144.132.    The **credible fear interview class** satisfies Rule 23(a)(2).  There are

15   questions of law or fact common to this class.  Given the definition of this class, its members all

16   share the same common factual situation of being a detained asylum seeker subject to

17   defendants' practice of failing to provide a credible fear interview and determination within

18   10 days of their expressing a fear of persecution or a request for asylum to a DHS official,

19   despite the fact they have been placed in expedited removal proceedings under 8 USC § 1225(b),

20   which requires immediate action.  The members of this class share common questions of law

21   governing whether defendants' practice of failing to provide class members a credible fear

22   interview and determination within 10 days of their expressing a fear of persecution or a request

23   for asylum to a DHS official is legal under the Fifth Amendment, Eighth Amendment, APA, or

24   federal asylum statutes.

25       145.133.    The **credible fear interview class** satisfies Rule 23(a)(3).  Plaintiffs'

26   claims concerning the legality of defendants' practice of failing to provide a credible fear

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    interview and determination within 10 days of their expressing a fear of persecution or a request

2    for asylum to a DHS official are typical of the claims of class members.  As noted in the prior

3    paragraph, the definition of this class dictates that plaintiffs share with the other class members

4    the same common factual situation and the same common questions of law under the Fifth

5    Amendment, ~~Eighth Amendment~~, APA, and federal asylum statutes.

6        ~~146.~~134.        The **credible fear interview class** satisfies Rule 23(a)(4).  Plaintiffs will

7    fairly and adequately protect the interests of that class.  They are represented by counsel from the

8    Northwest Immigrant Rights Project <u>and the American Immigration Council</u>, who have extensive

9    experience litigating class action lawsuits and other complex cases in federal court, including

10   civil rights lawsuits on behalf of noncitizens.  ~~They are also represented by counsel from the~~

11   ~~Foster Pepper law firm, who have extensive experience litigating constitutional and statutory~~

12   ~~rights lawsuits in the federal and state courts, including civil rights lawsuits on behalf of a variety~~

13   ~~of plaintiffs.~~

14       ~~147.~~135.        The **credible fear interview class** satisfies Rule 23(b)(1).  Requiring

15   separate actions by the members of this class would create the risk of inconsistent or varying

16   adjudications with respect to individual class members that would establish incompatible

17   standards of conduct for defendants.  Requiring separate actions by the members of this class

18   would create the risk of adjudications with respect to individual class members that, as a

19   practical matter, would be dispositive of the interests of the other class members not parties to

20   the individual adjudications, or would at least substantially impair or impede their ability to

21   protect their interests.

22       ~~148.~~136.        The **credible fear interview class** satisfies Rule 23(b)(2).  Defendants

23   have acted or refused to act on grounds that apply generally to this class.  Final injunctive relief

24   or corresponding declaratory relief is appropriate with respect to the class as a whole, especially

25   as it involves uniform, federal immigration law and plaintiffs are transferred across the country

26   by defendants.  Moreover, requiring separate actions by the members of this class would create

SECOND AMENDED COMPLAINT - 27
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    the risk of inconsistent or varying adjudications with respect to individual class members that

2    would establish incompatible standards of conduct for defendants.

3    ~~149.~~137.      The **credible fear interview class** satisfies Rule 23(b)(3).  Questions of

4    law or fact common to members of this class predominate over questions affecting only

5    individual members.  A class action is superior to other available methods for fairly and

6    efficiently adjudicating the legality of defendants' practice of failing to provide a credible fear

7    interview and determination within 10 days of a person's expressing a fear of persecution or

8    requesting asylum.

9        **B.      "Bond Hearing Class"**

10   ~~150.~~138.      With respect to plaintiffs' claims concerning defendants' failure to

11   promptly conduct a bond hearing to set reasonable conditions for the asylum seeker's release

12   pending the lengthy proceedings to adjudicate his or her asylum claim, and to provide a bond

13   hearing that comports with the requirements of due process, plaintiffs seek to represent the

14   following class (the "**bond hearing class**"):

15       All detained asylum seekers who entered the United States without inspection, who were
         initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were
16       determined to have a credible fear of persecution, but who are not provided a bond hearing
         with a verbatim transcript or recording of the hearing within 7 days of requesting a bond
17       hearing.

18
19   ~~151.~~139.      Plaintiffs allege the following on information and belief:  At least several

20   hundred asylum seekers currently fit within the **bond hearing class**.  Defendants should know

21   the precise number since the members of this class should be readily ascertainable through

22   defendants' records.

23   ~~152.~~140.      The **bond hearing class** satisfies Rule 23(a)(1).  This class is so numerous

24   that joinder of all class members is impracticable.

25   ~~153.~~141.      The **bond hearing class** satisfies Rule 23(a)(2).  There are questions of

26   law or fact common to this class.  Given the definition of this class, its members all share the

SECOND AMENDED COMPLAINT - 28
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    same common factual situation of being asylum seekers who entered the United States without

2    inspection, were initially subject to expedited removal proceedings, were found to have a

3    credible fear of persecution, but were then subject to defendants' practice of failing to provide a

4    bond hearing with a transcript or recording of the hearing within 7 days of their requesting a

5    bond hearing. Moreover, defendant EOIR placed the burden on class members to demonstrate in

6    bond hearings that plaintiffs are eligible for release, and defendants EOIR failed to make any

7    specific, particularized findings of fact when denying bondrelease. The members of this class

8    share common questions of law governing whether defendants' practice of failing to provide a

9    bond hearing with a transcript or recording of the proceeding within 7 days of their requesting a

10   bond hearing, and Defendant EOIR's practice of placing the burden of proof on the detained

11   asylum seeker to demonstrate their eligibility for release-, and Defendant EOIR's failure to make

12   specific, particularized findings when denying release, -is legal under the Fifth Amendment,

13   Eighth Amendment, APA, or federal asylum statutes.

14        154.142.        The **bond hearing class** satisfies Rule 23(a)(3). Plaintiffs' claims

15   concerning the legality of defendants' practice of failing to provide a bond hearing with a

16   transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond

17   hearing hearing, and Defendant EOIR's practice of placing the burden of proof on the detained

18   asylum seeker to demonstrate they are eligible for release should be granted a bond, and

19   Defendant EOIR's failure to make specific findings when denying a bondrelease, are typical of

20   the claims of class members. As noted in the prior paragraph, the definition of this class dictates

21   that plaintiffs share with the other class members the same common factual situation and the

22   same common questions of law under the Fifth Amendment, Eighth Amendment, APA, and

23   federal asylum statutes.

24        155.143.        The **bond hearing class** satisfies Rule 23(a)(4). Plaintiffs will fairly and

25   adequately protect the interests of that class. They are represented by counsel from the

26   Northwest Immigrant Rights Project and the American Immigration Council, who have extensive

SECOND AMENDED COMPLAINT - 29
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

experience litigating class action lawsuits and other complex cases in federal court, including

civil rights lawsuits on behalf of noncitizens.  ~~They are also represented by counsel from the~~

~~Foster Pepper law firm, who have extensive experience litigating constitutional and statutory~~

~~rights lawsuits in the federal and state courts, including civil rights lawsuits on behalf of a variety~~

~~of plaintiffs.~~

~~156.~~144.      The **bond hearing class** satisfies Rule 23(b)(1).  Requiring separate

actions by the members of this class would create the risk of inconsistent or varying

adjudications with respect to individual class members that would establish incompatible

standards of conduct for defendants.  Requiring separate actions by the members of this class

would create the risk of adjudications with respect to individual class members that, as a

practical matter, would be dispositive of the interests of the other class members not parties to

the individual adjudications, or would at least substantially impair or impede their ability to

protect their interests.

~~157.~~145.      The **bond hearing class** satisfies Rule 23(b)(2).  Defendants have acted or

refused to act on grounds that apply generally to this class.  Final injunctive relief or

corresponding declaratory relief is appropriate with respect to the class as a whole especially as it

involves uniform, federal immigration law and plaintiffs are transferred across the country by

defendants.  Moreover, requiring separate actions by the members of this class would create the

risk of inconsistent or varying adjudications with respect to individual class members that would

establish incompatible standards of conduct for defendants.

~~158.~~146.      The **bond hearing class** satisfies Rule 23(b)(3).  Questions of law or fact

common to members of this class predominate over questions affecting only individual

members.  A class action is superior to other available methods for fairly and efficiently

adjudicating the legality of defendants' practice of failing to provide a bond hearing with a

transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond

hearing, defendant EOIR's —practice of placing the burden of proof on the detained asylum

seeker to demonstrate they are eligible for release~~should be granted a bond~~, and Defendant EOIR's failure to make specific, particularized findings when denying ~~a bond~~release.

## VII.   CAUSES OF ACTION

### COUNT I
### (Violation of Due Process)~~Constitutional Violations)~~

~~159.~~148.       All of the foregoing allegations ~~in this Amended Complaint that are not inconsistent with this Count~~ are repeated and re-alleged as though fully set forth ~~in this numbered paragraph~~herein.

~~160.   The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Mss. Guzman, Orantes, and Padilla and their children as well as Mr. Vasquez and all proposed class members. The Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of their liberty without due process of law.~~

~~161.   The Fifth Amendment's due process clause applies to all persons in the United States.~~

~~162.       The Eighth Amendment of the United States Constitution prohibits the federal government from imposing or inflicting on any person any excessive bail or any cruel punishments.~~

~~163.       The Eighth Amendment's protections apply to all persons in the United States.~~

~~164.       Asylum seekers who cross the United States border are persons.~~

~~165.~~148.       The named plaintiffs are persons are in the United States.  Their children in federal government custody are persons are in the United States.  The proposed class members identified in Section VI of this Amended Complaint are persons in the United States.

~~166.   The named plaintiffs~~, their children, and proposed class members have a constitutionally protected liberty interest in (1) ~~remaining together as a family, (2)~~ not being

SECOND AMENDED COMPLAINT - 31
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   imprisoned in federal detention for an unreasonable time awaiting their credible fear interview

2   and determination, and (2₃) not being imprisoned in federal detention for an unreasonable time

3   awaiting their bond hearing, and (3) having a bond hearing that is fair and comports with due

4   process.

5       167.149.      Especially with respect to the federal government's zero-tolerance policy

6   to deter criminal violations of federal immigration laws, the plaintiffs, their children, and

7   proposed class members have a constitutionally protected interest in (4) not being subjected to

8   unreasonable bond conditions[ga1], and (5) not being subjected to cruel punishments.

9   A.      "Family Separation Class"

10      168.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and

11  Orantes from their children violated the substantive due process rights of plaintiffs and their

12  children.  That forced separation did not further a legitimate purpose.  That forced separation did

13  not further a compelling governmental interest.  Defendants' forcibly separating plaintiffs

14  Padilla, Guzman, and Orantes from their children violated the constitutional substantive due

15  process rights of plaintiffs and their children.

16      169.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and

17  Orantes from their children violated the procedural due process rights of plaintiffs and their

18  children.  The government did not make any accusation that plaintiffs were unfit parents, were

19  not acting in the best interest of their child, were a threat to their child's safety, abused their

20  child, or neglected their child.   The government did not have any evidence of plaintiffs being

21  unfit parents, or not acting in the best interest of their child, or being a threat to their child's

22  safety, or abusing their child, or neglecting their child.   Defendants' forcibly separating

23  plaintiffs Padilla, Guzman, and Orantes from their children without any hearing violated the

24  constitutional procedural due process rights of plaintiffs and their children.

25      170.    The federal government's forcibly separating plaintiffs Padilla, Guzman, and

26  Orantes from their children violated the Eighth Amendment.  That forced separation was cruel

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   and excessive.  It was deliberately done to penalize and deter persons from seeking asylum.  And

2   it was deliberately done as part of the federal government's zero-tolerance policy against

3   criminal violations of federal immigration laws.  Defendants' forcibly separating plaintiffs

4   Padilla, Guzman, and Orantes from their children violated the constitutional Eighth Amendment

5   rights of plaintiffs and their children.

6          171.    As with plaintiffs Padilla, Guzman, and Orantes, defendants' forcibly separating

7   members of the family separation class from their children violated substantive due process,

8   procedural due process, and the Eighth Amendment.

9   **B.      "Credible Fear Interview Class"**

10         172.150.        The federal government's imprisoning plaintiffs and members of the

11  Credible Fear Interview Class in federal detention for an unreasonable time awaiting their

12  credible fear interview and determination violates their substantive due process rights.  The

13  government's prolonging these asylum seekers' federal detention by delaying their credible fear

14  interview and determination more than 10 days does not further a legitimate purpose.  The

15  government's prolonging these asylum seekers' federal detention by delaying their credible fear

16  interview and determination more than 10 days does not further a compelling governmental

17  interest.  Defendants' prolonging theirplaintiffs' federal detention by delaying their credible fear

18  interview and determination more than 10 days is a violation of the constitutional substantive due

19  process rights of plaintiffs and their children as well as of members of the Credible Fear

20  Interview Class.

21         173.    The federal government's imprisoning plaintiffs and members of the Credible

22  Fear Class in federal detention for an unreasonable time awaiting their credible fear interview

23  and determination violates their procedural due process rights.  That ongoing imprisonment

24  awaiting a credible fear interview and determination is contrary to the law governing expedited

25  removal proceedings and is imposed without any hearing.  Defendants' imprisoning plaintiffs

26  and members of the Credible Fear Interview Class in federal detention for an unreasonable time

SECOND AMENDED COMPLAINT - 33
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   awaiting their credible fear interview and determination is a violation of the constitutional due

2   process rights of plaintiffs and their children as well as of members of the Credible Fear

3   Interview Class.

4   ~~7.      The federal government's imprisoning plaintiffs in federal detention for an~~

5   ~~unreasonable time awaiting their credible fear interview and determination violates the Eighth~~

6   ~~Amendment.  The government's actions maintaining plaintiffs in limbo in federal detention by~~

7   ~~deliberately delaying the threshold credible fear interview to which they are entitled is excessive.~~

8   ~~It is deliberately done as part of the government's effort to penalize and deter persons from~~

9   ~~seeking asylum.  It is deliberately done as part of the federal government's zero-tolerance policy~~

10  ~~against criminal violations of federal immigration laws.  Deliberately confining asylum seekers~~

11  ~~in limbo by delaying the credible fear interview to which they are entitled is cruel.  Defendants'~~

12  ~~imprisoning plaintiffs in federal detention for an unreasonable time awaiting their credible fear~~

13  ~~interview and determination is a violation of the constitutional Eighth Amendment rights of~~

14  ~~plaintiffs and their children.~~

15          ~~7.  As with plaintiffs, defendants' imprisoning members of the credible fear~~

16              ~~interview class in federal detention for an unreasonable time awaiting their~~

17              ~~credible fear interview and determination violates substantive due process,~~

18              ~~procedural due process, and the Eighth Amendment.~~

19      ~~E.~~151.  "Bond Hearing Class"

20      ~~174.~~152.      The federal government's imprisoning plaintiffs and members of the Bond

21  Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess

22  their eligibility for release ~~set reasonable conditions for their release~~ pending the lengthy

23  proceedings to adjudicate their asylum claim violates substantive due process.  The

24  government's prolonging these asylum seekers' federal detention by delaying their bond hearing

25  more than 7 days does not further a legitimate purpose.  The government's prolonging these

26  asylum seekers' federal detention by delaying their bond hearing more than 7 days does not

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   further a compelling governmental interest.  Moreover, denying ~~bonds~~ release for general

2   deterrence or punishment goals unrelated to the specific factors of whether the individual

3   presents a flight risk or danger to the community unlawfully deprives these asylum seekers of

4   their constitutional right to liberty.  Defendants' prolonging plaintiffs' and members of the Bond

5   Hearing Class's federal detention by delaying their bond hearing more than 7 days is a violation

6   of the constitutional substantive process rights of plaintiffs and ~~their children~~ as well as of

7   members of the Bond Hearing Class.

8   ~~175.~~   The federal government's imprisoning plaintiffs and members of the Bond

9   Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess

10   their eligibility for ~~set reasonable conditions for their~~ release pending the lengthy proceedings to

11   adjudicate their asylum claim violates procedural due process.  That ongoing detention is

12   imposed without providing ~~basic procedural protections, such as~~ a bond hearing with a transcript

13   or recording of the hearing and specific, particularized findings with respect to any denial of

14   release, ~~thereby~~and den~~ies~~ ~~ying~~ plaintiffs and members of the Bond Hearing Class an adequate

15   record to file an administrative appeal or habeas petition.  Moreover, denying ~~bonds~~ release for

16   general deterrence goals unrelated to the specific factors of whether the individual presents a

17   flight risk or danger to the community strips detained asylum seekers of a fair hearing.  ~~What is~~

18   more, placing the burden on the noncitizen to demonstrate their eligibility for release ~~entitlement~~

19   ~~to bond~~ also constitutes a violation of their due process rights. Defendants' prolonging plaintiffs'

20   and members of the Bond Hearing Class's federal detention by failing to provide a bond hearing

21   where the burden of proof is on the government and with a verbatim transcript or recording of

22   the hearing within 7 days of requesting a bond is a is a violation of the constitutional substantive

23   due process rights of plaintiffs and their children as well as of members of the Bond Hearing

24   Class.

25   ~~176.~~153.      ~~The federal government's imprisoning plaintiffs for an unreasonable time~~

26   ~~pending the lengthy proceedings to adjudicate their asylum claim violates the Eighth~~

SECOND AMENDED COMPLAINT - 35
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  Amendment.  The government's keeping their detention in limbo by deliberately delaying the

2  bond hearing to which they are entitled is excessive.  Moreover, the government's

3  determinations to deny bond for general deterrence policy purposes, rather than based on

4  individual determinations based on evidence that the person presents a flight risk or threat to the

5  community, violates the Eighth Amendment.  It is deliberately done as part of the government's

6  effort to penalize and deter persons from seeking asylum.  It is deliberately done as part of the

7  federal government's zero-tolerance policy against criminal violations of federal immigration

8  laws.  Deliberately confining detained asylum seekers by delaying bond hearings and denying

9  bond for general deterrence and policy measures unrelated to their individual cases is cruel.

10  Defendants' imprisoning plaintiffs in federal detention for an unreasonable time pending the

11  lengthy proceedings to adjudicate their asylum claim by failing to provide a bond hearing with a

12  verbatim transcript or recording of the hearing within 7 days of plaintiffs requesting a bond

13  hearing is a violation of the constitutional Eighth Amendment rights of plaintiffs and their

14  children.

15      177.   As with plaintiffs, defendants' imprisoning members of the bond hearing class in

16  federal detention for an unreasonable time awaiting a bond hearing to set reasonable conditions

17  for their release pending the lengthy proceedings to adjudicate their asylum claim violates

18  substantive due process, procedural due process, and the Eighth Amendment.

19                          **COUNT II**

20         (**Administrative Procedure Act — Arbitrary and Capricious Practice**)

21

22              All allegations in this Amended Complaint that are not inconsistent with
                this Count are repeated and re-alleged as though fully set forth in this
23              numbered paragraph.

23  1.     All of the foregoing allegations are repeated and re-alleged as though fully set

24  forth herein.

25      1.     The APA prohibits agency action that is arbitrary and capricious ands.

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    ~~1.   The APA prohibits agency action that is contrary to a constitutional right.~~

2    ~~5 U.S.C. §706(2).~~

3    ~~D.   "Family Separation Class"~~

4    ~~1.   Defendants' decision to separate plaintiffs Padilla, Guzman, and Orantes~~

5    ~~from their children without a compelling justification, and without a~~

6    ~~mechanism, protocol, or system to guarantee their reunification, is a final~~

7    ~~agency action.  That action is arbitrary and capricious.  It violates the~~

8    ~~APA.  5 U.S.C. §706(2)(A).~~

9    ~~1.   As with plaintiffs Padilla, Guzman, and Orantes, defendants' decision to~~

10   ~~decision to separate members of the family separation class from their~~

11   ~~children without a compelling justification, and without a mechanism,~~

12   ~~protocol, or system to guarantee their reunification, is a final agency~~

13   ~~action.  That action is arbitrary and capricious.  It violates the APA.~~

14   ~~5 U.S.C. §706(2)(A).~~

15   **~~A.~~**154. "Credible Fear Interview Class"

16   ~~178.~~   Defendants' decision to detain plaintiffs <u>and members of the Credible Fear</u>

17   <u>Interview Class</u> for an unreasonable time awaiting their credible fear interview, without a

18   compelling justification and without a mechanism, protocol, or system to assure a prompt and

19   fair credible fear interview and determination, is a final agency action.  That action ~~is arbitrary~~

20   ~~and capricious.  It~~ violates ~~the APA.~~ 5 U.S.C. §§706<u>(1) and</u> (2)(A) <u>and (B)</u>.

21   ~~1.      As with plaintiffs, defendants' decision to detain members of the credible fear~~

22   ~~interview class for an unreasonable time awaiting their credible fear interview, without a~~

23   ~~compelling justification and without a mechanism, protocol, or system to assure a prompt and~~

24   ~~fair credible fear interview and determination, is a final agency action.  That action is arbitrary~~

25   ~~and capricious.  It violates the APA.  5 U.S.C. §706(2)(A).~~

26   ~~C.~~155. "Bond Hearing Class"

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

179.156.        Defendants' decision to detain plaintiffs and members of the Bond Hearing Class for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §§706(1) and (2)(A) and (B).

180.   As with plaintiffs, defendants' decision to detain members of the bond hearing class for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That action is arbitrary and capricious.  It violates the APA. 5 U.S.C. §706(2)(A).

181.157.        Defendants' decision to deny plaintiffs and members of the Bond Hearing Class a bond hearing with adequate procedural protections, specifically a hearing where the burden of proof is on the government, and a recording or transcript of the hearing is available for any subsequent administrative appeal or habeas petition, and specific, particularized findings of any denial of release, is a final agency action.  That action is arbitrary and capricious.  It violates the APA.  5 U.S.C. §§706(1) and (2)(A) and (B).

182.   As with plaintiffs, defendants' decision to deny members of the bond hearing class a bond hearing with adequate procedural protections, specifically a recording or transcript of the hearing available for any subsequent administrative appeal or habeas petition, is, is a final agency action.  That action is arbitrary and capricious.  It violates the APA. 5 U.S.C. §706(2)(A).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1
2
3
4
5
6

**COUNT III**
**(Administrative Procedure Act -**
**Agency Action Unlawfully Withheld or Unreasonably Delayed)**

185.    All allegations in this Amended Complaint that are not inconsistent with this Count are repeated and re-alleged as though fully set forth in this numbered paragraph. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

7
8

186.158.    The APA imposes on federal agencies the duty to conclude matters presented to it within a "reasonable time."  5 U.S.C. §555(b).

9
10

7.    The APA prohibits agency action that is "unlawfully withheld or unreasonably delayed."  5 U.S.C. §706(1).

11

**B.**    "Family Separation Class"

12
13
14
15
16

7.    Defendants' failure to promptly reunify plaintiffs Padilla, Guzman, and Orantes with their children violates defendants' legal duty under the APA to conclude matters within a reasonable time, and constitutes an agency action unlawfully withheld or unreasonably delayed in violation of the APA.  5 U.S.C. §706(2)(A).

17
18
19
20
21
22

7.    As with plaintiffs Padilla, Guzman, and Orantes, defendants' failure to failure to promptly reunify members of the family separation class with their children violates defendants' legal duty under the APA to conclude matters within a reasonable time, and constitutes an agency action that is unlawfully withheld or unreasonably delayed in violation of the APA.  5 U.S.C. §706(2)(A).

23

**A.**159. "Credible Fear Interview Class"

24
25

187.    A person placed in expedited removal proceedings who is seeking asylum is allowed to present their asylum claim to an immigration judge only after DHS conducts a

26

SECOND AMENDED COMPLAINT - 39
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   credit fear interview to determine if the person seeking asylum has a "credible fear of

2   persecution." 8 C.F.R. §208.30(f), (g).

3   ~~188.~~ Defendant DHS and its sub-agencies are required to conduct an interview to

4   assess whether an asylum seeker has a credible fear of persecution. ~~Conducting a credible fear~~

5   ~~interview to determine whether a person seeking asylum has a credible fear of persecution is a~~

6   ~~discrete, final agency action that DHS is required to take.~~

7   160.   ~~DHS's obligation to conduct a credible fear interview to determine whether the~~

8   ~~person seeking asylum has a credible fear of persecution~~This obligation is triggered when ~~that~~

9   ~~person requests asylum or expresses a fear of persecution to any DHS official.~~Defendants learn

10   of an individual's fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(ii). Asylum seekers are only

11   permitted to raise their claims before an immigration judge after the asylum officer's credible

12   fear determination. *See* 8 C.F.R. § 208.30(f), (g).

13   ~~189.~~161.   Conducting a credible fear interview to determine whether a person

14   seeking asylum has a credible fear of persecution is a discrete, final agency action that DHS is

15   required to take.

16   ~~190.~~   ~~DHS's~~Defendants' failure to ~~promptly~~ expeditiously conduct a credible fear

17   interview after detaining plaintiffs and members of the Credible Fear Interview class ~~for the~~

18   ~~credible fear determination after plaintiffs requested asylum or expressed a fear of persecution~~

19   ~~violated DHS's legal duty~~constitutes "an agency action unlawfully withheld or unreasonably

20   delayed" under the APA.~~; S~~*see* 5 U.S.C. § 706(1) ~~to conclude matters presented to it within a~~

21   ~~reasonable time~~.

22   ~~7.   DHS's failure to promptly conduct a credible fear interview for the credible fear~~

23   ~~determination after plaintiffs requested asylum or expressed a fear of persecution constituted an~~

24   ~~agency action that was unlawfully withheld or unreasonably delayed in violation of the APA.~~

25   ~~7.   As with plaintiffs, DHS's failure to promptly conduct a credible fear~~

26   ~~interview for the credible fear determination after members of the credible~~

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   ~~fear interview class requested asylum or expressed a fear of persecution~~

2   ~~violates its legal duty under the APA to conclude matters presented to it~~

3   ~~within a reasonable time, and constituted an agency action that is~~

4   ~~unlawfully withheld or unreasonably delayed in violation of the APA.~~

5   ~~D.~~162.  "Bond Hearing Class"

6   ~~191.~~163.         If the ~~credible fear interview conducted by DHS~~asylum officer determines

7   that an asylum seeker has a credible fear of persecution, ~~DHS assigns~~ the case is transferred to

8   EOIR ~~to initiate immigration court proceedings for that~~for adjudication of the asylum claim by

9   ~~asylum seeker to adjudicate his or her asylum claim before~~ an immigration judge.

10         ~~192.~~164.         ~~If an asylum seeker in the bond hearing class is found to have a credible~~

11  ~~fear of persecution and is in federal detention, that~~An asylum seeker ~~is~~ in the Bond Hearing

12  Class is entitled to a bond hearing to assess eligibility ~~set reasonable conditions~~ for his or her

13  release from ~~federal~~ DHS custody~~detention~~ pending the lengthy proceedings to adjudicate his or

14  her asylum claim.

15         ~~193.~~165.         Defendant EOIR's failure to promptly conduct a bond hearing for

16  plaintiffs and members of the Bond Hearing Class within 7 days ~~to set reasonable conditions for~~

17  ~~a detained asylum seeker's~~their release ~~pending the lengthy proceedings to adjudicate his or her~~

18  ~~asylum claim~~ violates defendant's legal duty under the APA to conclude matters presented to it

19  within a reasonable time.

20         ~~194.~~166.         Defendant EOIR's failure to conduct a bond hearing for plaintiffs and

21  members of the Bond Hearing Class with appropriate procedural safeguards ~~to set reasonable~~

22  ~~conditions for a detained asylum seeker's release pending the lengthy proceedings to adjudicate~~

23  ~~his or her asylum claim~~ constitutes an agency action unlawfully withheld or unreasonably

24  delayed in violation of the APA.

25         ~~195.   As with plaintiffs, defendant EOIR's failure to promptly conduct a bond hearing~~

26  ~~with appropriate procedural safeguards to set reasonable conditions for a detained asylum~~

1   seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim violates

2   its legal duty under the APA to conclude matters presented to it within a reasonable time, and

3   constitutes an agency action that is unlawfully withheld or unreasonably delayed in violation of

4   the APA.

5   ## COUNT III~~V~~

6   **(Violation of Asylum ~~Law~~Statute)**

7   ~~196.~~167.    A~~All~~ of the foregoing allegations are repeated and re-alleged as though

8   fully set forth herein~~ll allegations in this Amended Complaint that are not inconsistent with this~~

9   ~~Count are repeated and re-alleged as though fully set forth in this numbered paragraph~~.

10  ~~197.~~168.    ~~United States law~~The Immigration and Nationality Act grants noncitizens

11  fleeing persecution the opportunity to apply for asylum in the United States.

12  8 U.S.C. §1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, & 1003.42;

13  8 U.S.C. §1158(a)(1).

14  ~~198.~~169.    International law likewise recognizes the fundamental human right to

15  asylum of persons fleeing for safety from persecution and torture.

16  ~~1.~~    Noncitizens fleeing persecution have a private right of action to vindicate their

17  right to apply for and receive asylum in the United States.

18  ~~B.    "Family Separation Class"~~

19  ~~1.   When plaintiffs Padilla, Guzman, and Orantes requested asylum,~~

20  ~~defendants promptly took their minor child away from them (1) without~~

21  ~~any evidence or accusation that they were unfit parents, or were not acting~~

22  ~~in the best interest of their child, or were a threat to their child's safety, or~~

23  ~~abused their child, or neglected their child, and (2) without any hearing.~~

24  ~~1.   Defendants' promptly taking away the minor children of asylum seekers~~

25  ~~seekers Padilla, Guzman, and Orantes unlawfully infringed on their legal~~

26  ~~right to pursue their asylum claims.~~

SECOND AMENDED COMPLAINT - 42
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1             1.   As with plaintiffs Padilla, Guzman, and Orantes, defendants separated

2              members of the family separation class from their child (1) without any

3              evidence or accusation that they were unfit parents, or were not acting in

4              the best interest of their child, or were a threat to their child's safety, or

5              abused their child, or neglected their child, and (2) without any hearing.

6             1.   As with plaintiffs Padilla, Guzman, and Orantes, defendants' promptly

7              promptly taking away the minor children of members of the family

8              separation class unlawfully infringed on their legal right to pursue their

9              asylum claims.

10      G.170. "Credible Fear Interview Class"

11      199.   Defendants' failure to promptly conduct a credible fear interview for the credible

12 fear determination after plaintiffs requested asylum or expressed a fear of persecutionplaintiffs

13 and members of the Credible Fear Interview Class violates the asylum statute because it

14 unlawfully infringed infringes on their legal rightability to pursue their asylum claims.

15      1.   As with plaintiffs, defendants' failure to promptly conduct a credible fear

16 interview for the credible fear determination after credible fear interview class members

17 requested asylum or expressed a fear of persecution unlawfully infringes on their legal right to

18 pursue their asylum claims.

19      I.171.  "Bond Hearing Class"

20      200.172.    Defendants' failure to promptly conduct a bond hearing to assess

21 eligibility for set reasonable conditions for the release of plaintiffs and members of the Bond

22 Hearing Class pending the lengthy proceedings to adjudicate their asylum claims violates the

23 asylum statute because it unlawfully infringes on their legal rightability to pursue their asylum

24 claims.

25      8.   As with plaintiffs, defendants' failure to promptly conduct a bond hearing to set

26 reasonable conditions for the release of members of the bond hearing class pending the lengthy

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   proceedings to adjudicate their asylum claims unlawfully infringes on their legal right to pursue

2   their asylum claims.

3                          IX. VIII.        **PRAYER FOR RELIEF**

4           Plaintiffs respectfully request that this Court enter judgment against defendants granting

5   the following relief:

6           A.   Certify the following **Family Separation Class**: "All parents who sought asylum and

7                were (1) detained in immigration custody by defendants in Washington State and

8                (2) separated from a minor child by defendants absent a demonstration in a hearing

9                that that parent is unfit or presents a danger to the child."

10          B.   Name plaintiffs Padilla, Guzman, and Orantes as representatives of the Family

11               Separation Class, and appoint their counsel as Family Separation Class counsel.

12          C.   Declare that defendants' separation of plaintiffs Padilla, Guzman, and Orantes from

13               their children is unlawful.

14          D.   Declare that defendants' separation of Family Separation Class members from their

15               children is unlawful.

16          E.   Preliminarily and permanently enjoin defendants from detaining Family Separation

17               Class members (including plaintiffs Padilla, Guzman, and Orantes) in separate

18               locations from where their children are detained; and enjoin defendants from

19               removing Family Separation Class members (including plaintiffs Padilla, Guzman,

20               and Orantes) from the country until they are reunited with their children (in the event

21               they are not permitted to remain in the United States), absent the parent's permission

22               or a hearing before a court where the government demonstrates that it is not in the

23               child's best interest to be reunified with their parent.

24          F. A.      Certify the following **Credible Fear Interview Class**: "All detained asylum

25               seekers in the United States subject to expedited removal proceedings under

26

SECOND AMENDED COMPLAINT - 44
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official."

~~G.~~B.   Name plaintiffs as representatives of the Credible Fear Interview Class, and appoint their counsel as class counsel.

~~H.~~C.   Declare that defendants have an obligation to provide Credible Fear Interview Class members ~~(including plaintiffs)~~ their credible fear interview and determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

~~I.~~D.   Preliminarily and permanently enjoin defendants from not providing Credible Fear Interview Class members ~~(including plaintiff Vasquez)~~ their credible fear determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

~~J.~~E.   Certify the following **Bond Hearing Class**: ~~-~~"All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing."

~~K.~~F.   Name plaintiffs as representatives of the Bond Hearing Class, and appoint their counsel as class counsel.

~~L.~~G.   Declare that defendants have an obligation to provide Bond Hearing Class members ~~(including plaintiffs )~~ a bond hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their asylum claim.

H.   Declare that defendants have an obligation to provide Bond Hearing Class members (including plaintiffs) a bond hearing with adequate procedural safeguards, including a verbatim transcript or recording of their bond hearing.

SECOND AMENDED COMPLAINT - 45
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1      I.   Declare that defendant DHS must bear the burden of proof to show continued

2          detention is necessary in civil immigration proceedings.

3      ~~M.~~J.   Declare that in bond hearings immigration judges must make specific,

4          particularized written findings as to the basis for denying release from detention,

5          including findings identifying the basis for finding that the individual is a flight risk

6          or a danger to the community.

7      ~~N.~~K.   Preliminarily and permanently enjoin defendants from not providing Bond

8          Hearing Class members ~~(including plaintiffs Guzman, Orantes, and Vasquez)~~ their

9          bond hearing with a verbatim transcript or recording of their bond hearing.

10     L.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing

11         Class members ~~(including plaintiffs Orantes and Vasquez)~~ their bond hearing within

12         7 days of the asylum seeker's request.

13     M. Preliminarily and permanently enjoin defendants from not providing Bond Hearing

14         Class members bond hearings where defendant DHS bears the burden of proof to

15         show continued detention is necessary.

16     N. Preliminarily and permanently enjoin defendants from not providing Bond Hearing

17         Class members where immigration judges make specific, particularized written

18         findings as to the basis for denying release from detention, including findings

19         identifying the basis for finding that the individual is a flight risk or a danger to the

20         community~~for any determination that the individual is a flight risk or a danger to the~~

21         ~~community when denying bond.~~

22     ~~O.~~N.   

23     ~~P.~~O.   Order defendants to pay reasonable attorneys' fees and costs.

24     ~~Q.~~P.   Order all other relief that is just and proper.

25

26

SECOND AMENDED COMPLAINT - 46
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3     Dated this 15th day of July, 2018.

4

5     _s/ Matt Adams_                          _s/ Thomas F. Ahearne_
      Matt Adams, WSBA No. 28287              Thomas F. Ahearne, WSBA #14844
6     Email:  matt@nwirp.org                  Email:  ahearne@foster.com

7                                             *William F. Abrams, CA Bar #88805
      Glenda M. Aldana Madrid, WSBA No. 46987 *Admitted pro hac vice
8     Email:  glenda@nwirp.org                *Email:  bill.abrams@foster.com

9     Leila Kang, WSBA No. 48048              Joanna Plichta Boisen, WSBA #38368
      Email:  leila@nwirp.org                 Email:  Joanna.boisen@foster.com
10

11    NORTHWEST IMMIGRANT RIGHTS PROJECT       Benjamin J. Hodges, WSBA #49301
      615 Second Avenue, Suite 400            Email:  ben.hodges@foster.com
12    Seattle, WA  98104
      Telephone: (206) 957-8611              Kevin Ormiston, WSBA #49835
13    Facsimile: (206) 587-4025              Email:  kevin.ormiston@foster.com
      _Attorneys for Plaintiffs-Petitioners_
14
                                             FOSTER PEPPER PLLC
15    Trina Realmuto*                        1111 Third Avenue, Suite 3000
      Kristin Macleod-Ball*                  Seattle, Washington  98101-3292
16    AMERICAN IMMIGRATION COUNCIL           Telephone: (206) 447-4400
      100 Summer Street, 23rd Floor          Facsimile: (206) 447-9700
17    Boston, MA 02110                       _Attorneys for Plaintiffs-Petitioners_
      (857) 305-3600
18    trealmuto@immcouncil.org
      kmacleod-ball@immcouncil.org
19

20    *Application for _pro hac vice_ admission
      forthcoming
21

22

23

24

25

26

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 15, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 15th day of July, 2018.

s/ Thomas F. Ahearne
FOSTER PEPPER PLLC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101-3292
Telephone: (206) 447-8934
Facsimile: (206) 447-9700
Email: ahearne@foster.com

SECOND AMENDED COMPLAINT - 48
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611