1

*The Honorable Marsha J. Pechman*

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

YOLANY PADILLA;  IBIS GUZMAN; BLANCA
ORANTES; BALTAZAR VASQUEZ;

9

Plaintiffs-Petitioners,

No. 2:18-cv-928  MJP

10

v.

11

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR");
THOMAS HOMAN, Acting Director of ICE; KIRSTJEN
NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,
Acting Commissioner of CBP; L. FRANCIS CISSNA,
Director of USCIS; MARC J. MOORE, Seattle Field Office
Director, ICE; JEFFERSON BEAUREGARD
SESSIONS III, United States Attorney General; LOWELL
CLARK, warden of the Northwest Detention Center in
Tacoma, Washington;  CHARLES INGRAM, warden of the
Federal Detention Center in SeaTac, Washington;  DAVID
SHINN, warden of the Federal Correctional Institute in
Victorville, California; JAMES JANECKA, warden of the
Adelanto Detention Facility;

**SECOND AMENDED
COMPLAINT:
CLASS ACTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

12

13

14

15

16

17

18

19

20

21

22

Defendants-Respondents.

23

24

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

# I.  <u>INTRODUCTION</u>

1.      This lawsuit initially challenged the legality of the following three parts of the federal government's zero-tolerance policy with respect to persons fleeing for safety and asylum in the United States: (1) family separations, (2) credible fear interviews and determinations, and (3) the related bond hearings.

## A.      Family Separations

2.      This lawsuit previously challenged the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum.  The day after plaintiffs filed this suit in the Western District of Washington, however, a federal court in the Southern District of California issued a nationwide preliminary injunction Order against this forcible separation.  (*Ms. L v. ICE*, S.D.Cal. case no. 18cv0428 DMS (MDD), docket no. 83).

3.      With this Second Amended Complaint, plaintiffs confirm that they will not further pursue those claims in this case.

## B.      Credible Fear Interviews & Determinations

4.      This lawsuit challenges the legality of the government's policy or practice of excessively prolonging the detention of asylum seekers placed in expedited removal proceedings by failing to promptly provide them their credible fear interview and determination.  Federal law requires that persons who have asked for asylum or expressed a fear of persecution must be scheduled for a "credible fear interview" with a DHS official to determine whether that person should be allowed to proceed with applying for asylum because he or she has a credible fear of persecution.  If the interviewer determines the asylum seeker <u>does</u> have a credible fear of persecution, the government assigns the case to the federal immigration court for hearings to adjudicate the merits of that person's asylum claim.  If the interviewer determines the asylum seeker does <u>not</u> have a credible fear of persecution, the asylum seeker can appeal that determination to a federal immigration judge.  But in either case, the federal government detains

SECOND AMENDED COMPLAINT - 1
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

the asylum seeker until it determines that she or he has a credible fear of persecution.  The *Ms. L v. ICE* Order did not address the federal government's lengthy delays in conducting these statutorily required credible fear interviews and or determinations.

**C.      Bond Hearings**

5.      This lawsuit also challenges the legality of the government's related policy or practice of excessively prolonging the detention of asylum seekers by failing to promptly conduct the bond hearings required by federal law after an asylum seeker's positive completion of their credible fear interview.  Federal law requires that if an asylum seeker enters the United States at a location other than a designated "Port Of Entry" and is determined to have a credible fear of persecution in his or her credible fear interview, that asylum seeker is entitled to an individualized bond hearing before an immigration judge to determine reasonable conditions for that person's release from federal detention while he or she awaits the many months it takes to adjudicate his or her asylum claim (e.g., a reasonable bond amount or parole without posting a monetary bond).  This bond hearing must comport with constitutional requirements.  Yet the government does not establish any timeline for setting this hearing, and as a matter of practice, does not even audio record or provide a transcript of this hearing for appeal or appellate review (unlike other hearings in removal proceedings before the immigration judge). The government also places the burden on asylum seekers to demonstrate in the bond hearing that they should not continue to be detained throughout the lengthy immigration proceedings.  When an immigration judge denies bond, the immigration judge routinely fails to make specific findings but instead simply checks a box on a template order. The *Ms. L v. ICE* Order did not address the federal government's failure to conduct prompt bond hearings that comport with constitutional requirements.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

**D.      United States Constitution**

2       6.      The Bill of Rights prohibits the federal government from depriving any person of

3   their liberty without due process of law (U.S. Constitution, 5th Amendment).

4       7.      Asylum seekers who cross the United States border are persons.  They

5   accordingly have a constitutionally protected liberty interest in (1) not being imprisoned for an

6   unreasonable time awaiting their credible fear interview and determination and (2) not being

7   imprisoned without the opportunity for a prompt bond hearing that comports with constitutional

8   requirements.  And especially with respect to the federal government's avowed policy or practice

9   to deter criminal violations of federal immigration laws, asylum seekers also have a

10  constitutionally protected interest in (3) not being subjected to prolonged imprisonment for

11  deterrence or penalty reasons unrelated to adjudicating the merits of their individual asylum

12  claim.

13      8.      With this Second Amended Complaint, plaintiffs specify with more particularity

14  how defendants' implementation of the federal government's policies and practices with respect

15  to persons fleeing for safety and seeking asylum in the United States violates the United States

16  Constitution.

17  **E.      Federal Law**

18      9.      Federal law prohibits final agency action that is arbitrary, capricious, unlawfully

19  withheld, or unreasonably delayed (e.g., Administrative Procedures Act, 5 U.S.C. §706).  Federal

20  law also grants persons fleeing persecution the right to apply for safety and asylum in the United

21  States (e.g., 8 U.S.C. §§ 1225 & 1158; 8 C.F.R. §§ 235.3, 208.30, & 1003.42).

22      10.     Federal law accordingly prohibits federal agencies from arbitrarily or capriciously

23  depriving an asylum seeker of their child, their prompt credible fear interview and determination,

24  or their prompt bond hearing.  Federal law prohibits federal agencies from unlawfully

25  withholding or unreasonably delaying an asylum seeker's reunification with their child, an

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

asylum seeker's credible fear interview and determination, or an asylum seeker's bond hearing. And federal law prohibits federal agencies from impeding or seeking to deter an asylum seeker's legal right to apply for asylum.

11.     With this Second Amended Complaint, plaintiffs specify with more particularity how defendants' implementation of the federal government's policies and practices with respect to persons fleeing for safety and asylum in the United States violates federal law.

**F.     Requested Relief**

12.     With respect to (1) credible fear interviews and determinations and (2) the related bond hearings, plaintiffs request injunctive relief requiring defendants to cease their policies and practices implementing the federal government's policy or practice in violation of the United States Constitution and federal law.  Plaintiffs request declaratory relief to terminate the parties' disagreement with respect to whether (and how) defendants' implementation of the federal government's policies or practices with respect to persons fleeing for safety and asylum in the United States violates the United States Constitution and federal law.  Lastly, plaintiffs request whatever additional relief this Court finds warranted, just, or equitable.

## II.     JURISDICTION

13.     This case arises under the Fifth Amendment of the United States Constitution, the Administrate Procedures Act ("APA"), and federal asylum statutes.  This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States Constitution ("Suspension Clause").

14.     The original plaintiffs in this case were all in custody for purposes of habeas jurisdiction when this action was filed on June 25, 2018.

15.     After this action was filed, plaintiffs Padilla, Orantes, and Guzman were eventually released from detention after they were eventually provided a credible fear interview and individualized bond hearings before an immigration judge.  At the time this Second

SECOND AMENDED COMPLAINT - 4
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    Amended Complaint is electronically filed on August 22, 2018, plaintiff Vasquez is still in

2    custody for purposes of habeas jurisdiction.

3        16.    At the time this Second Amended Complaint is electronically filed on August 22,

4    2018, all the children that the federal government took away from plaintiffs have been returned

5    to their mothers after approximately two months of being separated.

### III.    VENUE

7        17.    Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of

8    the relevant facts occurred within this District.  Those facts include defendants' detention of

9    plaintiffs Padilla, Guzman, and Orantes in this District while forcibly separated from their

10   children, failure in this District to promptly conduct a credible fear interview and determination

11   for their asylum claims, and failure in this District to promptly conduct bond hearings that

12   comport with constitutional requirements to set reasonable conditions for release pending

13   adjudication of their asylum claims.

### IV.    PARTIES

15       18.    Plaintiff **Yolany Padilla** is a human being seeking asylum for herself and her

16   6-year-old son (J.A) in the United States.  She is a citizen of Honduras.

17       19.    Plaintiff **Ibis Guzman** is a human being seeking asylum for herself and her

18   5-year-old son (R.G.) in the United States.  She is a citizen of Honduras.

19       20.    Plaintiff **Blanca Orantes** is a human being seeking asylum for herself and her

20   8-year-old son (A.M.) in the United States.  She is a citizen of El Salvador.

21       21.    Plaintiff **Baltazar Vasquez** is a human being seeking asylum in the United States.

22   He is a citizen of El Salvador.

23       22.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal

24   government agency that carries out removal orders and oversees immigration detention.  ICE is

25   part of DHS.  ICE's responsibilities include determining whether an asylum seeker will be

26

SECOND AMENDED COMPLAINT - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings on the merits before the immigration court.  ICE's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

23.    Defendant U.S. Department of Homeland Security ("DHS") is the federal government agency that enforces immigration laws of the United States.  DHS's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings before the immigration court.  DHS's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.

24.    Defendant U.S. Customs and Border Protection ("CBP") is the federal government agency that conducts the initial processing and detention of asylum seekers crossing the U.S. border.  CBP is part of DHS.  CBP's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and determination.

25.    Defendant U.S. Citizenship and Immigration Services ("USCIS") is the federal government agency that, through its asylum officers, interviews asylum seekers to determine whether they should be assigned to the immigration court to be allowed to proceed with applying for asylum because they have a credible fear of persecution.  USCIS is a part of DHS.

26.    Defendant Executive Office for Immigration Review ("EOIR") is the federal government agency that is responsible for conducting immigration court proceedings, including adjudicating plaintiffs' asylum claims in removal proceedings and conducting individual bond hearings for persons in removal proceedings.  EOIR is a part of the Department of Justice.

SECOND AMENDED COMPLAINT - 6
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

27.    Defendant Thomas Homan is sued in his official capacity as the Director of ICE, and is a legal custodian of plaintiff Vasquez and putative class members.

28.    Defendant Marc J. Moore is sued in his official capacity as the ICE Seattle Field Office Director, and is a legal custodian of detained plaintiffs.

29.    Defendant Kirstjen Nielsen, is sued in her official capacity as the Secretary of DHS.  In this capacity, she directs DHS, ICE, CBP, and USCIS.  As a result, defendant Nielsen has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103 and is a legal custodian of detained plaintiffs.

30.    Defendant Kevin K. McAleenan is sued in his official capacity as the Commissioner of CBP.

31.    Defendant L. Francis Cissna is sued in his official capacity as the Director of USCIS.

32.    Defendant Jefferson Beauregard Sessions III is sued in his official capacity as the United States Attorney General.  In this capacity, he directs agencies within the United States Department of Justice, including EOIR.  Defendant Sessions has responsibility for the administration of immigration laws pursuant to 8 U.S.C. §1103, oversees defendant EOIR, and is empowered to grant asylum or other relief, including custody determinations made for persons in removal proceedings.

33.    Defendant Lowell Clark is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

34.    Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

35.    Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

SECOND AMENDED COMPLAINT - 7
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

36.     Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.     FACTS

**A.     Seeking Asylum**

37.     Federal law allows a person to seek asylum in the United States.

38.     Plaintiffs are persons seeking asylum in the United States.

39.     Plaintiff **Yolany Padilla** and her 6-year-old son J.A. are asylum seekers who fled physical danger and persecution in Honduras.

40.     On or about May 18, 2018, plaintiff Yolany Padilla and her 6-year-old son J.A crossed the U.S.-Mexico border.  They were arrested by a CBP agent as they were making their way to the closest Port Of Entry.  She informed the CBP agent that they were seeking asylum.

41.     Plaintiff **Ibis Guzman** and her 5-year-old son R.G. are asylum seekers who fled physical danger and persecution in Honduras.

42.     On or about May 16, 2018, plaintiff Ibis Guzman and her 5-year-old son R.G. crossed the U.S.-Mexico border.  They were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

43.     Plaintiff **Blanca Orantes** and her 8-year-old son A.M. are asylum seekers who fled physical danger and persecution in El Salvador.

44.     On or about May 21, 2018, plaintiff Blanca Orantes and her 8-year-old son A.M. crossed the U.S.-Mexico border.  They immediately walked to the CBP station to request asylum, and were arrested by a CBP agent.  She informed the CBP agent that they were seeking asylum.

45.     Plaintiff **Baltazar Vasquez** is an asylum seeker who fled physical danger and persecution in El Salvador.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

46.     On or about June 1, 2018, Baltazar Vasquez crossed the U.S.-Mexico border.  He was arrested by a CBP agent, and informed the CBP agent that he was seeking asylum.

**B.     Defendants' Zero-Tolerance Policy or Practice**

47.     Defendant Sessions made an announcement about the federal government's "Zero-Tolerance Policy" on April 6, 2018, *See* https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-illegal-entry.

48.     The federal government's zero-tolerance policy was designed to be a coordinated effort to deter asylum seekers entering the country and exercising their right to apply for asylum by criminally prosecuting them, forcibly separating them from their children, and imposing prolonged, uncertain imprisonment (euphemistically called "detention") on them.

49.     The federal government's zero-tolerance policy has been implemented against asylum seekers who enter the country without inspection requesting asylum.

50.     The federal government's zero-tolerance policy has also been implemented against asylum seekers who appear at a Port Of Entry to request asylum.

**C.     Promptly Taking Children Away From Parents Seeking Asylum**

51.     One part of the federal government's zero-tolerance policy or practice was to promptly take children away from parents seeking asylum in the United States.

52.     The federal government would send the parent and child to separate federal detention facilities – often in different states thousands of miles away from each other.

53.     A child's forced separation from a parent causes the child severe trauma.  This damage is even worse for children who are already traumatized from fleeing danger and persecution in their home country.  The cognitive and emotional damage caused by a child's forced separation from a parent can be permanent.

54.     A parent's forced separation from their child is also deeply damaging to the parent.  This damage is even worse for parents who are already traumatized from fleeing danger

SECOND AMENDED COMPLAINT - 9
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  and persecution in their home country, are given little to no information regarding the well-being

2  or whereabouts of their child, and fear they may never see their child again.

3      55.   The federal government promptly took children away from parents seeking

4  asylum in the United States without any demonstration in a hearing that that parent is unfit or

5  presents any danger to the child.

6      56.   The federal government promptly took children away from parents seeking

7  asylum in the United States without any evidence or accusation that the parent seeking asylum is

8  an unfit parent, or presents a danger to the child, or is not acting in the child's best interest, or is

9  a threat to the child's safety, or abused the child, or neglected the child.

10     57.   The federal government promptly took children away from parents seeking

11 asylum in the United States to penalize and deter persons from seeking asylum.

12     58.   The federal government promptly took children away from parents seeking

13 asylum in the United States as part of its zero-tolerance policy against criminal violations of

14 federal immigration laws.

15     59.   Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes are parents who

16 sought asylum and were (1) detained in immigration custody by defendants in Washington State

17 and (2) separated from a minor child by defendants without any demonstration in a hearing that

18 that parent is unfit or presents a danger to the child.

19     60.   When plaintiff **Yolany Padilla** and her 6-year-old son J.A were taken into

20 custody, a federal agent promptly announced that Yolany Padilla's son would be taken away

21 from her.  Her 6-year-old son clutched his mother's shirt and said, "No, mommy, I don't want to

22 go."  She reassured her son that any separation would be short, and that everything would be

23 okay.  She was able to stay with her son as they were transferred to one of the federal detention

24 buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

temperatures.  Once they arrived, Yolany Padilla's 6-year-old son was forcibly taken away from her without explanation.

61.     Yolany Padilla's 6-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

62.     Yolany Padilla was then transferred to another federal facility in Laredo, Texas about three days later.  The federal officers in that facility took her son's birth certificate from her.  When she asked for it back, she was told the immigration authorities had it.  No one has returned her son's birth certificate to her.

63.     About twelve days later, Yolany Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

64.     Despite repeated inquiries into her son's whereabouts, Yolany Padilla was not provided any information about her son until about a month into her detention, when the Honduran consul visited the detention center and she explained she had no news of her son. Soon thereafter she was given a piece of paper saying her son had been put in a place called "Cayuga Center" in New York.  That piece of paper also had a phone number, but she was not able to call her son that day because she did not have money to make a long distance phone call.

65.     The next day, someone gave Yolany Padilla the opportunity to call her son for about ten minutes.  Her 6-year-old son mostly cried quietly.

66.     Yolany Padilla was not released from federal imprisonment until July 6, 2018, after an immigration judge finally granted her a bond.

SECOND AMENDED COMPLAINT - 11
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

67.     Yolany Padilla's 6-year-old son was not released from federal imprisonment until July 14, 2018.  That was almost two months after the federal government forcibly took him away from his mom.

68.     CBP transported plaintiff **Ibis Guzman** and her 5-year-old son R.G. to one of the federal detention buildings in Texas that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.   One CBP agent questioned Ibis Guzman, and another CBP agent forcibly took her son away stating she would see her son again in three days.

69.     Ibis Guzman's 5-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

70.     After three days, Ibis Guzman was transferred to a different CBP facility in Texas.  When she asked the federal agents there about the reunification with her son that the CBP agent had promised, they told her they did not know anything about her son's whereabouts.

71.     Ibis Guzman was then transferred to another federal facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her 5-year-old son and without any means to contact him.  She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ibis Guzman was transferred to the Federal Detention Center in SeaTac, Washington.

73.     Ibis Guzman was not provided any information about her 5-year-old son until about a week later, when she was told that her son had been given to a place called "Baptist Child and Family Services" in San Antonio, Texas.  But she was still not able to contact him.

74.     On June 20, 2018, Ibis Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

75.     Ibis Guzman was denied bond by the immigration judge at her bond hearing on July 3, 2018.

76.     She was not released until on or about July 31, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

77.     CBP transported plaintiff **Blanca Orantes** and her 8-year-old son A.M. to a federal detention facility in Texas.  CBP agents led Blanca Orantes into one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures, and took her 8-year-old son to another part of that detention facility.

78.     While a CBP agent was later interviewing Blanca Orantes, another agent brought her 8-year-old son to her and told her to "say goodbye" to him because they were being separated.  Her 8-year-old son began crying and pleading for his mom not to leave him.

79.     Blanca Orantes' 8-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

80.     On or around May 24, 2018, Blanca Orantes was handcuffed and taken to court.  She pled guilty to improper entry under 8 U.S.C. §1325 and was sentenced to time served.  She was then returned to her cell.

81.     About nine days later, Blanca Orantes was transported to the Federal Detention Center in SeaTac, Washington.

82.     The federal government did not provide Blanca Orantes any information about her 8-year-old son until June 9, 2018, when an ICE officer handed her a slip of paper saying her son was being held at place called "Children's Home of Kingston" in Kingston, New York.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

83. On June 20, 2018, Blanca Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by telephone.

84. Blanca Orantes was denied bond by the immigration judge at her bond hearing on July 16, 2018.

85. She was not released until on or about July 24, 2018, in order to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

**D.    Failing To Promptly Provide The Credible Fear Interview & Determination Required By Federal Law**

86. One part of the federal government's policy or practice is to keep asylum seekers in limbo in federal detention by delaying the threshold credible fear interview to which asylum seekers are entitled under federal law.

87. Detained asylum seekers who are subject to expedited removal are not permitted to move forward with their asylum claims until a credible fear determination has been made by a DHS official.

88. The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview in part to penalize and deter persons from seeking asylum.

89. The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview.

90. The federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law.

91. Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez are detained asylum seekers subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who were not provided a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

92.     When plaintiff **Yolany Padilla** first spoke with the CBP agent on or about May 18, 2018, she told the CBP agent that she and her son were requesting asylum.

93.     Neither Yolany Padilla nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

94.     Neither Yolany Padilla nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

95.     Instead, Yolany Padilla was not provided her credible fear interview until July 2, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Yolany Padilla does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits

96.     When plaintiff **Ibis Guzman** first spoke with the CBP agent on or about May 16, 2018, she told the CBP agent that she and her son were requesting asylum.

97.     Neither Ibis Guzman nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

98.     Neither Ibis Guzman nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

99.     Instead, Ibis Guzman was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Ibis Guzman does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

100.    When plaintiff **Blanca Orantes** first spoke with the CBP agent on or about May 21, 2018, she told the CBP agent that she and her son were requesting asylum.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

101.    Neither Blanca Orantes nor her son were provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

102.    Neither Blanca Orantes nor her son were provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

103.    Instead, Blanca Orantes was not provided her credible fear interview until June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS official conducting her credible fear interview determined that Blanca Orantes does have a credible fear of persecution, and therefore assigned her asylum claim to immigration court for adjudication on the merits.

104.    When plaintiff **Baltazar Vasquez** first spoke with the CBP agent on or about June 1, 2018, he told the CBP agent that he was requesting asylum.

105.    Baltazar Vasquez was not provided a credible fear interview within 10 days of requesting asylum or expressing a fear of persecution to a DHS official.

106.    Baltazar Vasquez was not provided a credible fear interview as of the date this lawsuit was originally filed on June 25, 2018.

107.    Baltazar Vasquez was not scheduled for a credible fear interview until after the First Amended Complaint was electronically filed on July 15, 2018.

108.    Baltazar Vasquez was not provided his credible fear interview until July 31, 2018.  That was almost two months after federal officials imprisoned him. The DHS official conducting his credible fear interview determined that Baltazar Vasquez does have a credible fear of persecution, and therefore referred his case to an immigration court for adjudication of the merits of his asylum claim.

109.    Baltazar Vasquez is currently imprisoned at the Adelanto Detention facility in Adelanto, California.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

**E.      Failing To Promptly Provide The Bond Hearing Required By Federal Law**

2

110.     One part of the federal government's policy or practice is to prolong

3

imprisonment without a proper bond hearing for asylum seekers who entered the United States

4

without inspection.

5

111.     The federal government keeps asylum seekers in limbo in federal detention by

6

delaying their bond hearing in part to penalize and deter persons from seeking asylum.

7

112.     The federal government keeps asylum seekers in limbo in federal detention by

8

delaying their bond hearing.

9

113.     The federal government has not established any procedural <u>timeframes</u> for timely

10

providing the bond hearings required by federal law.  The federal government has not established

11

basic procedural <u>safeguards</u> for bond hearings such as verbatim transcripts or audio recordings of

12

bond hearings.  The absence of such basic safeguards impedes an imprisoned asylum seeker's

13

ability to meaningful appeal the denial of bond in their individual case as not being based on

14

evidence of legally relevant factors (i.e., being a flight risk or danger to the community) instead

15

of legally irrelevant factors (e.g., the zero-tolerance policy's general goal of punishing and

16

deterring asylum seekers).   Defendant EOIR maintains audio recordings of proceedings before

17

an Immigration Judge other than bond hearings, and provides verbatim transcripts on appeals to

18

the Board of Immigration Appeals.  But Defendant EOIR does not maintain audio recordings of

19

an asylum seeker's bond hearing or provide verbatim transcripts for appeal of bond hearing

20

determinations.  Indeed, when an immigration judge denies bond, they routinely do not make

21

specific, particularized findings, and instead simply check a box on a template order.  Moreover,

22

Defendants place the burden of proof on the noncitizen to demonstrate that they should not

23

continue to be detained throughout their lengthy immigration proceedings.

24

114.     Plaintiff **Yolany Padilla** is an asylum seeker who originally entered the United

25

States without inspection, was initially subject to expedited removal proceedings under

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

8 U.S.C. §1225(b) and detained, was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

115.    The federal government did not provide Yolany Padilla a bond hearing until after she filed this lawsuit.  At the conclusion of that bond hearing, an order was issued allowing her to be released from federal detention upon posting an $8,000 bond pending the adjudication of her asylum claim on the merits.  To her knowledge, there is no verbatim transcript or recording of her bond hearing.  At the bond hearing, the immigration judge placed the burden of proof on Yolany Padilla to demonstrate that she qualified for a bond.

116.    Plaintiffs **Ibis Guzman** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution, but was not provided a timely bond hearing with a verbatim transcript or audio recording.

117.    The federal government did not provide Ibis Guzman a bond hearing until after she filed this lawsuit.  At the bond hearing, the immigration judge placed the burden of proof on Ibis Guzman to demonstrate that she qualified for a bond.  At the conclusion of that bond hearing, an immigration judge issued an order denying her release on *any* bond amount pending the adjudication of her asylum claim on the merits.

118.    The immigration judge did not make specific, particularized findings for the basis of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order, rendering her ineligible for bond even though a DHS official had already determined she has a credible fear of persecution and even though the federal government has taken away her 6-year-old son.

119.    The immigration judge provided no written explanation for circling "Flight Risk" or the factors and evidence considered in making that conclusion to deny bond.  Per defendant EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  She was not

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

released until on or about July 31, 2018, in order to comply with the preliminary injunction in *Ms. L.*

120.     Plaintiff **Blanca Orantes** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once she was eventually provided her credible fear interview and determination, but was not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

121.     Blanca Orantes was not provided a bond hearing until July 16, 2018.  At the bond hearing, the immigration judge placed the burden of proof on Blanca Orantes to demonstrate that she qualified for a bond.  At the conclusion of that bond hearing, an immigration judge issued an order denying her release on *any* bond amount pending the adjudication of her asylum claim on the merits.

122.     The immigration judge did not make specific, particularized findings for the basis of the denial, and even failed to check the box indicating why she was denied bond on the template order. Per defendant EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  At the bond hearing the immigration judge placed the burden on Blanca Orantes to demonstrate that she was qualified for a bond.

123.     She was not released until on or about July 23, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited her with her child.

124.     Plaintiff **Baltazar Vasquez** is a detained asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once he was eventually provided his credible fear interview and determination, but was not provided a bond

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

125.    The federal government did not provide Baltazar Vasquez a bond hearing until August 20, 2018.  At the bond hearing, the immigration judge placed the burden of proof on Baltazar Vasquez to demonstrate that he qualified for a bond.  At the conclusion of that bond hearing, an order was issued allowing him to be released from federal detention upon posting a $9,000 bond pending the adjudication of his asylum claim on the merits.  There is no verbatim transcript or recording of his bond hearing.

## VI.    CLASS ALLEGATIONS

126.    The named plaintiffs are asylum seekers who filed this suit on behalf of themselves and their family members being detained in federal detention.

127.    The named plaintiffs also bring this suit as a class action under Fed.R.Civ.P. 23(b) on behalf of the other similarly situated persons specified in the two classes of asylum seekers specified in Part VI of this Second Amended Complaint.

**A.    "Credible Fear Interview Class"**

128.    With respect to plaintiffs' claims concerning defendants' failure to promptly provide asylum seekers a credible fear interview and determination, plaintiffs seek to represent the following class (the "**credible fear interview class**"):

> All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

129.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **credible fear interview class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

SECOND AMENDED COMPLAINT - 20
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   130.    The **credible fear interview class** satisfies Rule 23(a)(1).  This class is so

2   numerous that joinder of all class members is impracticable.

3   131.    The **credible fear interview class** satisfies Rule 23(a)(2).  There are questions of

4   law or fact common to this class.  Given the definition of this class, its members all share the

5   same common factual situation of being a detained asylum seeker subject to defendants' practice

6   of failing to provide a credible fear interview and determination within 10 days of their

7   expressing a fear of persecution or a request for asylum to a DHS official, despite the fact they

8   have been placed in expedited removal proceedings under 8 USC § 1225(b), which requires

9   immediate action.  The members of this class share common questions of law governing whether

10  defendants' practice of failing to provide class members a credible fear interview and

11  determination within 10 days of their expressing a fear of persecution or a request for asylum to

12  a DHS official is legal under the Fifth Amendment, APA, or federal asylum statutes.

13  132.    The **credible fear interview class** satisfies Rule 23(a)(3).  Plaintiffs' claims

14  concerning the legality of defendants' practice of failing to provide a credible fear interview and

15  determination within 10 days of their expressing a fear of persecution or a request for asylum to

16  a DHS official are typical of the claims of class members.  As noted in the prior paragraph, the

17  definition of this class dictates that plaintiffs share with the other class members the same

18  common factual situation and the same common questions of law under the Fifth Amendment,

19  APA, and federal asylum statutes.

20  133.    The **credible fear interview class** satisfies Rule 23(a)(4).  Plaintiffs will fairly

21  and adequately protect the interests of that class.  They are represented by counsel from the

22  Northwest Immigrant Rights Project and the American Immigration Council, who have extensive

23  experience litigating class action lawsuits and other complex cases in federal court, including

24  civil rights lawsuits on behalf of noncitizens.

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    134.    The **credible fear interview class** satisfies Rule 23(b)(1).  Requiring separate

2    actions by the members of this class would create the risk of inconsistent or varying

3    adjudications with respect to individual class members that would establish incompatible

4    standards of conduct for defendants.  Requiring separate actions by the members of this class

5    would create the risk of adjudications with respect to individual class members that, as a

6    practical matter, would be dispositive of the interests of the other class members not parties to

7    the individual adjudications, or would at least substantially impair or impede their ability to

8    protect their interests.

9    135.    The **credible fear interview class** satisfies Rule 23(b)(2).  Defendants have acted

10    or refused to act on grounds that apply generally to this class.  Final injunctive relief or

11    corresponding declaratory relief is appropriate with respect to the class as a whole, especially as

12    it involves uniform, federal immigration law and plaintiffs are transferred across the country by

13    defendants.  Moreover, requiring separate actions by the members of this class would create the

14    risk of inconsistent or varying adjudications with respect to individual class members that would

15    establish incompatible standards of conduct for defendants.

16    136.    The **credible fear interview class** satisfies Rule 23(b)(3).  Questions of law or

17    fact common to members of this class predominate over questions affecting only individual

18    members.  A class action is superior to other available methods for fairly and efficiently

19    adjudicating the legality of defendants' practice of failing to provide a credible fear interview

20    and determination within 10 days of a person's expressing a fear of persecution or requesting

21    asylum.

22    **B.    "Bond Hearing Class"**

23    137.    With respect to plaintiffs' claims concerning defendants' failure to promptly

24    conduct a bond hearing to set reasonable conditions for the asylum seeker's release pending the

25    lengthy proceedings to adjudicate his or her asylum claim, and to provide a bond hearing that

26

SECOND AMENDED COMPLAINT - 22
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

comports with the requirements of due process, plaintiffs seek to represent the following class

(the "**bond hearing class**"):

> All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

138.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **bond hearing class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

139.    The **bond hearing class** satisfies Rule 23(a)(1).  This class is so numerous that joinder of all class members is impracticable.

140.    The **bond hearing class** satisfies Rule 23(a)(2).  There are questions of law or fact common to this class.  Given the definition of this class, its members all share the same common factual situation of being asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings, were found to have a credible fear of persecution, but were then subject to defendants' practice of failing to provide a bond hearing with a transcript or recording of the hearing within 7 days of their requesting a bond hearing.  Moreover, defendant EOIR placed the burden on class members to demonstrate in bond hearings that plaintiffs are eligible for release, and defendants EOIR failed to make any specific, particularized findings of fact when denying release. The members of this class share common questions of law governing whether defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of their requesting a bond hearing, Defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate their eligibility for release, and Defendant EOIR's failure to make specific,

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

particularized findings when denying release, is legal under the Fifth Amendment, APA, or federal asylum statutes.

141.   The **bond hearing class** satisfies Rule 23(a)(3).  Plaintiffs' claims concerning the legality of defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, Defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate they are eligible for release , and Defendant EOIR's failure to make specific findings when denying release, are typical of the claims of class members.  As noted in the prior paragraph, the definition of this class dictates that plaintiffs share with the other class members the same common factual situation and the same common questions of law under the Fifth Amendment, APA, and federal asylum statutes.

142.   The **bond hearing class** satisfies Rule 23(a)(4).  Plaintiffs will fairly and adequately protect the interests of that class.  They are represented by counsel from the Northwest Immigrant Rights Project and the American Immigration Council, who have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

143.   The **bond hearing class** satisfies Rule 23(b)(1).  Requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.  Requiring separate actions by the members of this class would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other class members not parties to the individual adjudications, or would at least substantially impair or impede their ability to protect their interests.

144.   The **bond hearing class** satisfies Rule 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to this class.  Final injunctive relief or

SECOND AMENDED COMPLAINT - 24
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

corresponding declaratory relief is appropriate with respect to the class as a whole especially as it involves uniform, federal immigration law and plaintiffs are transferred across the country by defendants. Moreover, requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.

145. The **bond hearing class** satisfies Rule 23(b)(3). Questions of law or fact common to members of this class predominate over questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating the legality of defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate they are eligible for release, and Defendant EOIR's failure to make specific, particularized findings when denying release.

## VII. CAUSES OF ACTION

### COUNT I
### (Violation of Due Process)

146. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

147. The Due Process Clause of the Fifth Amendment applies to all "persons" on United States soil and thus applies to Mss. Guzman, Orantes, Mr. Vasquez and all proposed class members.

148. The named plaintiffs and proposed class members have a constitutionally protected liberty interest in (1) not being imprisoned in federal detention for an unreasonable time awaiting their credible fear interview and determination, (2) not being imprisoned in federal detention for an unreasonable time awaiting their bond hearing, and (3) having a bond hearing that is fair and comports with due process.

SECOND AMENDED COMPLAINT - 25
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

149.    The federal government's imprisoning plaintiffs and members of the Credible Fear Interview Class in federal detention for an unreasonable time awaiting their credible fear interview and determination violates their substantive due process rights.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a legitimate purpose.  The government's prolonging these asylum seekers' federal detention by delaying their credible fear interview and determination more than 10 days does not further a compelling governmental interest. Defendants' prolonging their federal detention by delaying their credible fear interview and determination more than 10 days is a violation of the constitutional substantive due process rights of plaintiffs and their children as well as of members of the Credible Fear Interview Class.

150.    The federal government's imprisoning plaintiffs and members of the Credible Fear Class in federal detention for an unreasonable time awaiting their credible fear interview and determination violates their procedural due process rights.  That ongoing imprisonment awaiting a credible fear interview and determination is contrary to the law governing expedited removal proceedings and is imposed without any hearing.  Defendants' imprisoning plaintiffs and members of the Credible Fear Interview Class in federal detention for an unreasonable time awaiting their credible fear interview and determination is a violation of the constitutional due process rights of plaintiffs and their children as well as of members of the Credible Fear Interview Class.

151.    The federal government's imprisoning plaintiffs and members of the Bond Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim violates substantive due process.  The government's prolonging these asylum seekers' federal detention by delaying their bond hearing more than 7 days does not further a legitimate purpose. The government's prolonging these asylum seekers' federal detention by delaying their bond

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

hearing more than 7 days does not further a compelling governmental interest.  Moreover, denying release for general deterrence or punishment goals unrelated to the specific factors of whether the individual presents a flight risk or danger to the community unlawfully deprives these asylum seekers of their constitutional right to liberty.  Defendants' prolonging plaintiffs' and members of the Bond Hearing Class's federal detention by delaying their bond hearing more than 7 days is a violation of the constitutional substantive process rights of plaintiffs and members of the Bond Hearing Class.

152.    The federal government's imprisoning plaintiffs and members of the Bond Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim violates procedural due process.  That ongoing detention is imposed without providing a bond hearing with a transcript or recording of the hearing and specific, particularized findings with respect to any denial of release, denies plaintiffs and members of the Bond Hearing Class an adequate record to file an administrative appeal or habeas petition.  Moreover, denying release for general deterrence goals unrelated to the specific factors of whether the individual presents a flight risk or danger to the community strips detained asylum seekers of a fair hearing. What is more, placing the burden on the noncitizen to demonstrate their eligibility for release also constitutes a violation of their due process rights. Defendants' prolonging plaintiffs' and members of the Bond Hearing Class's federal detention by failing to provide a bond hearing where the burden of proof is on the government and with a verbatim transcript or recording of the hearing within 7 days of requesting a bond is a is a violation of the constitutional substantive due process rights of plaintiffs and their children as well as of members of the Bond Hearing Class.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## COUNT II
### (Administrative Procedure Act)

153.    All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

154.    Defendants' decision to detain plaintiffs and members of the Credible Fear Interview Class for an unreasonable time awaiting their credible fear interview, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair credible fear interview and determination, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).

155.    Defendants' decision to detain plaintiffs and members of the Bond Hearing Class for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release pending the lengthy proceedings to adjudicate their asylum claim, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair bond hearing, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).

156.    Defendants' decision to deny plaintiffs and members of the Bond Hearing Class a bond hearing with adequate procedural protections, specifically a hearing where the burden of proof is on the government, a recording or transcript of the hearing available for any subsequent administrative appeal or habeas petition, and specific, particularized findings of any denial of release, is a final agency action.  That action violates 5 U.S.C.  §§706(1) and (2)(A) and (B).

157.    The APA imposes on federal agencies the duty to conclude matters presented to it within a "reasonable time."  5 U.S.C. §555(b).

158.    The APA prohibits agency action that is "unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1).

159.    Defendant DHS and its sub-agencies are required to conduct an interview to assess whether an asylum seeker has a credible fear of persecution. This obligation is triggered when Defendants learn of an individual's fear of persecution. *See* 8 U.S.C. §1225(b)(1)(A)(ii).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

Asylum seekers are only permitted to raise their claims before an immigration judge after the asylum officer's credible fear determination. *See* 8 C.F.R. § 208.30(f), (g).

160.     Conducting a credible fear interview to determine whether a person seeking asylum has a credible fear of persecution is a discrete, final agency action that DHS is required to take.

161.     Defendants' failure to expeditiously conduct a credible fear interview after detaining plaintiffs and members of the Credible Fear Interview class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1).

162.     If the asylum officer determines that an asylum seeker has a credible fear of persecution, the case is transferred to EOIR for adjudication of the asylum claim by an immigration judge.

163.     An asylum seeker in the Bond Hearing Class is entitled to a bond hearing to assess eligibility for his or her release from DHS custody pending the lengthy proceedings to adjudicate his or her asylum claim.

164.     Defendant EOIR's failure to promptly conduct a bond hearing for plaintiffs and members of the Bond Hearing Class within 7 days violates defendant's legal duty under the APA to conclude matters presented to it within a reasonable time.

165.     Defendant EOIR's failure to conduct a bond hearing for plaintiffs and members of the Bond Hearing Class with appropriate procedural safeguards constitutes an agency action unlawfully withheld or unreasonably delayed in violation of the APA.

## COUNT III
### (Violation of Asylum Statute)

166.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

SECOND AMENDED COMPLAINT - 29
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

167.    The Immigration and Nationality Act grants noncitizens fleeing persecution the opportunity to apply for asylum in the United States.  8 U.S.C. §1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, & 1003.42; 8 U.S.C. §1158(a)(1).

168.    International law likewise recognizes the fundamental human right to asylum of persons fleeing for safety from persecution and torture.

169.    Noncitizens fleeing persecution have a private right of action to vindicate their right to apply for and receive asylum in the United States.

170.    Defendants' failure to promptly conduct a credible fear interview for plaintiffs and members of the Credible Fear Interview Class violates the asylum statute because it unlawfully infringes on their ability to pursue their asylum claims.

171.    Defendants' failure to promptly conduct a bond hearing to assess eligibility for the release of plaintiffs and members of the Bond Hearing Class violates the asylum statute because it unlawfully infringes on their ability to pursue their asylum claims.

## VIII.   PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against defendants granting the following relief:

A.  Certify the following **Credible Fear Interview Class**: "All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official."

B.  Name plaintiffs as representatives of the Credible Fear Interview Class, and appoint their counsel as class counsel.

C.  Declare that defendants have an obligation to provide Credible Fear Interview Class members their credible fear interview and determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

D.  Preliminarily and permanently enjoin defendants from not providing Credible Fear Interview Class members their credible fear determination within 10 days of that person's requesting asylum or expressing a fear of persecution to any DHS official.

E.  Certify the following **Bond Hearing Class**: "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing."

F.  Name plaintiffs as representatives of the Bond Hearing Class, and appoint their counsel as class counsel.

G.  Declare that defendants have an obligation to provide Bond Hearing Class members a bond hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their asylum claim.

H.  Declare that defendants have an obligation to provide Bond Hearing Class members (including plaintiffs) a bond hearing with adequate procedural safeguards, including a verbatim transcript or recording of their bond hearing.

I.  Declare that defendant DHS must bear the burden of proof to show continued detention is necessary in civil immigration proceedings.

J.  Declare that in bond hearings immigration judges must make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

K.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members their bond hearing with a verbatim transcript or recording of their bond hearing.

SECOND AMENDED COMPLAINT - 31
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

L.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members their bond hearing within 7 days of the asylum seeker's request.

M.  Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members bond hearings where defendant DHS bears the burden of proof to show continued detention is necessary.

N.  N. Preliminarily and permanently enjoin defendants from not providing Bond Hearing Class members where immigration judges make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

O.  Order defendants to pay reasonable attorneys' fees and costs.

P.  Order all other relief that is just and proper.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

Dated this 22nd day of August, 2018.

2

3

_s/ Matt Adams_            _s/ Thomas F. Ahearne_

4

Matt Adams, WSBA No. 28287     Thomas F. Ahearne, WSBA #14844

Email: matt@nwirp.org        Email: ahearne@foster.com

5

6

Glenda M. Aldana Madrid, WSBA No. 46987   *William F. Abrams, CA Bar #88805

Email: glenda@nwirp.org       *Admitted pro hac vice

7

                  *Email: bill.abrams@foster.com

Leila Kang, WSBA No. 48048

8

Email: leila@nwirp.org        Joanna Plichta Boisen, WSBA #38368

                  Email: Joanna.boisen@foster.com

9

NORTHWEST IMMIGRANT RIGHTS PROJECT

10

615 Second Avenue, Suite 400     Benjamin J. Hodges, WSBA #49301

Seattle, WA  98104         Email: ben.hodges@foster.com

11

Telephone: (206) 957-8611

Facsimile: (206) 587-4025      Kevin Ormiston, WSBA #49835

12

_Attorneys for Plaintiffs-Petitioners_    Email: kevin.ormiston@foster.com

13

Trina Realmuto*         FOSTER PEPPER PLLC

Kristin Macleod-Ball*       1111 Third Avenue, Suite 3000

14

AMERICAN IMMIGRATION COUNCIL   Seattle, Washington  98101-3292

100 Summer Street, 23rd Floor     Telephone: (206) 447-4400

15

Boston, MA 02110        Facsimile: (206) 447-9700

(857) 305-3600         _Attorneys for Plaintiffs-Petitioners_

16

trealmuto@immcouncil.org

kmacleod-ball@immcouncil.org

17

18

*Application for _pro hac vice_ admission

19

forthcoming

20

21

22

23

24

25

26

SECOND AMENDED COMPLAINT - 33    NORTHWEST IMMIGRANT RIGHTS PROJECT

Case No. 2:18-cv-928 MJP        615 Second Avenue, Suite 400

                    Seattle, WA 98104

                  Telephone (206) 957-8611

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 22nd day of August, 2018.

*s/ Matt Adams*
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, Washington  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
Email:  matt@nwirp.org

SECOND AMENDED COMPLAINT - 34
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611