*The Honorable Marsha J. Pechman*

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

11   YOLANY PADILLA, on behalf of herself and her
     6-year-old son J.A.;  IBIS GUZMAN, on behalf of herself
12   and her 5-year-old son R.G.;  BLANCA ORANTES, on
     behalf of herself and her 8-year-old son A.M.;  BALTAZAR
13   VASQUEZ, on behalf of himself;

                                    Plaintiffs-Petitioners,
14
               v.
15
     U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
16   ("ICE"); U.S. DEPARTMENT OF HOMELAND
     SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
17   PROTECTION ("CBP"); U.S. CITIZENSHIP AND
     IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
18   OFFICE FOR IMMIGRATION REVIEW ("EOIR");
     THOMAS HOMAN, Acting Director of ICE; KIRSTJEN
19   NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,
     Acting Commissioner of CBP; L. FRANCIS CISSNA,
20   Director of USCIS; MARC J. MOORE, Seattle Field Office
     Director, ICE, JEFFERSON BEAUREGARD
21   SESSIONS III, United States Attorney General; LOWELL
     CLARK, warden of the Northwest Detention Center in
22   Tacoma, Washington;  CHARLES INGRAM, warden of the
     Federal Detention Center in SeaTac, Washington;  DAVID
23   SHINN, warden of the Federal Correctional Institute in
     Victorville, California; JAMES JANECKA, warden of the
24   Adelanto Detention Facility;

25                                   Defendants-Respondents.
26

27

28

No. 2:18-cv-928  MJP

**DEFENDANTS' MOTION
TO DISMISS**

NOTE ON MOTION
CALENDAR: SEPTEMBER 28,
2018.

---

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

LEGAL BACKGROUND ....................................................................................... 1

ALLEGATIONS OF THE COMPLAINT............................................................... 3

LEGAL STANDARD.............................................................................................. 5

ARGUMENT ........................................................................................................... 6

   I.   The credible fear interview (CFI) claims should be dismissed.......................... 6

     **A.    The court lacks jurisdiction over Plaintiffs' claims challenging the timing of credible fear interviews under 8 U.S.C. § 1252(a)(2)(A) (Counts I & II).** ...................... 6

     **B.    The CFI class's constitutional claim (Count I) also must be dismissed for lack of jurisdiction as there has been no waiver of sovereign immunity for the claim and it is not appropriately raised through a 28 U.S.C. § 2241 habeas petition.** ........................... 8

     **D.    The CFI class's APA claims should be dismissed for failure to state a claim (Count II).** ................................................................................................ 11

II.    The bond hearing class claims should be dismissed........................................ 14

     **A.    The bond hearing class's constitutional claim must be dismissed for failure to state a claim (Count I).** .................................................................... 14

     **B.    The bond hearing class's APA claims should be dismissed (Count II)**................ 19

     **C.    None of the individual Plaintiffs can state a claim for relief based on the timing of their bond hearings or the procedures available under section 1226(a).** .................. 21

III.   The court should dismiss Count III in its entirety under both Rule 12(b)(6) and 12(b)(1). 21

     **A.    The court lacks jurisdiction over Plaintiffs' claims brought pursuant to asylum law.** 21

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

**B.      The Complaint does not plead any violation of asylum law.** ............................... 23

IV.    The court should strike Plaintiffs' request for class-wide injunctive relief for lack of

jurisdiction. ........................................................................................................................ 23

CERTIFICATE OF SERVICE .................................................................................................. 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

# INTRODUCTION

Plaintiffs, individually and on behalf of two proposed nationwide classes, seek to graft two new, inflexible and unworkable deadlines into the Immigration and Nationality Act (INA) without the hassle of legislative action or agency rulemaking. Specifically, Plaintiffs and a class of aliens apprehended at or near ports of entry with pending credible fear interviews (the CFI class) assert an absolute right, regardless of any other fact or circumstance, to receive a credible fear interview within ten days of claiming fear of returning to their home country. In addition, Plaintiffs and their putative class of aliens found to have a credible fear of persecution or torture after surreptitiously crossing into the United States (the bond hearing class) claim a right to receive bond hearings within seven days of a request. The court should dismiss both sets of claims.

The court lacks jurisdiction to impose deadlines in the credible fear process or to enjoin the operation of the INA's bond procedure on a class-wide basis under 8 U.S.C. § 1252(a)(2)(A), (e), and (f)(1). Plaintiffs have also failed to properly identify causes of action to support their claims. Plaintiffs' credible fear claims are not challenges to their custody and therefore are not properly raised under 28 U.S.C. § 2241 and none of Plaintiffs' claims are challenges to "final agency actions" as defined by the Administrative Procedures Act (APA). Jurisdictional issues aside, neither of Plaintiffs' proposed inflexible deadlines has any basis in the statute, or the attendant regulations; nor can they be justified on the basis of the highly-adaptable Due Process Clause. Plaintiffs are all aliens apprehended at or near ports of entry, and therefore lack any cognizable interest in release into the United States, and *a fortiori* lack sufficient interest to support Plaintiffs' claims for immediate action. Accordingly, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) or (6).

# LEGAL BACKGROUND

8 U.S.C. 1225(b) requires that aliens like the CFI class who are "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," 8 U.S.C. § 1225(b)(1)(A)(i) & (iii); 69 Fed. Reg. 48877-01 (Aug. 11, 2004); 82 Fed. Reg. 4902 (Jan. 17, 2017), who are inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or (a)(7), are subject to inspection to determine their admissibility to the United States. If an alien seeking admission is

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

determined to be inadmissible, such alien "shall be detained" pending their immigration

proceedings. 8 U.S.C. § 1225(b)(2). Such aliens who are inadmissible on grounds of fraud or

misrepresentation, or for lack of proper documentation, may be placed into expedited removal

proceedings, pursuant to 8 U.S.C. § 1225(b)(1). These aliens are subject to removal without a

formal hearing before an immigration judge. 8 U.S.C. § 1225. However, if an alien subject to

expedited removal indicates to the immigration officer that he fears persecution or torture if

returned to his home country, the officer shall refer the alien for an interview by an asylum officer

with the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services

("USCIS"), to determine if he has a credible fear of persecution or torture. *Id.* § 1225(b)(1)(A)(ii)

& (B)(ii); 8 C.F.R. § 208.30(d). If the alien cannot show a credible fear of persecution or torture—

*i.e.*, a significant possibility that he or she could establish eligibility for asylum under 8 U.S.C.

§ 1158 or for withholding of removal under 8 U.S.C. 1231(b)(3) or protection under the

Convention Against Torture—before the asylum officer, the asylum officer "shall order the alien

removed from the United States without further hearing or review." 8 U.S.C. §

1225(b)(1)(B)(iii)(I). An alien may petition an immigration judge (IJ) for *de novo* review of a

negative finding. *Id.* § 1225(b)(1)(B). If the alien establishes a credible fear, the alien "shall be

detained for further consideration of the application for asylum" by an IJ, 8 U.S.C. §

1225(b)(1)(B)(ii), and is issued a notice to appear before the IJ, where he may seek any relief from

removal for which he is eligible.

By statute, "[a]ny alien subject to the procedures under [Section 1225(b)(1)] shall be

detained pending a final determination of credible fear of persecution and, if found to not have

such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (emphasis added); *see* INA, ch. 477,

Tit. II, § 235(b), 66 Stat. 199 (similar); Immigration Act of 1917 (1917 Act), ch. 29, § 16, 39 Stat.

886 (similar). For those aliens who are going through the credible fear process, parole is available

only when "required to meet a medical emergency or is necessary for a legitimate law enforcement

objective." 8 C.F.R. § 235.3(b)(4)(ii).

Those aliens who were apprehended between the ports of entry, placed into expedited

removal, and were found to have a credible fear may be eligible for a custody determination by

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

DHS, and, subsequently, a bond hearing before an IJ. *Matter of X-K-,* 23 I. & N. Dec. 731 (BIA 2005); *see also* 8 C.F.R. § 1003.19(h)(2). Thus, these aliens, once placed into removal proceedings pursuant to 8 U.S.C. § 1229a, are considered for release in accordance with the standards in 8 U.S.C. § 1226(a).

Every alien detained pursuant to section 1226(a) is individually considered for release on bond by an ICE officer and served with a custody determination form. 8 C.F.R. § 236.1(c)(8). If the officer denies bond (or sets a bond the alien thinks is too high), the alien may ask an IJ for a redetermination of the custody decision by checking a box on the custody determination form. 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). At the bond hearing, the alien has the burden of demonstrating that they are not a flight risk or a danger to the community in order to obtain release.

The alien may appeal the IJ's custody redetermination to the BIA. 8 C.F.R. § 236.1(d)(3)(i), 1236.1(d)(3)(i). Although bond hearings are generally not recorded, if either party appeals the IJ's bond decision, the IJ will prepare a written bond memorandum that sets forth the grounds for the bond determination. *See* Immigration Court Practice Manual, § 9.3(e)(vii) available at https://www.justice.gov/eoir/page/file/1084851/download (last accessed September 6, 2018).

An alien who remains detained under section 1226(a) may later obtain another custody determination whenever "circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). There is no limit to the number of changed circumstances bond hearings an alien may request.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs challenge, individually and on behalf of a class of similarly-situated individuals (1) the absence of a  governmental policy of providing credible fear interviews to every alien apprehended at or near a port of entry, within ten days of the alien expressing a fear of returning to their country of origin; and (2) the absence of a governmental policy requiring bond hearings (meeting certain additional procedural requirements) for every such alien found to have a credible fear after entering the United States without inspection within seven days of requesting bond. ECF No. 26. Plaintiffs challenge these two "policies" as violating the Due Process Clause, the

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Administrative Procedures Act (APA), and "the federal asylum statutes." *Id*. Plaintiffs contend that the court has jurisdiction to review their claims under federal question jurisdiction, habeas jurisdiction, and the Suspension Clause. *Id*. at ¶ 13.

Plaintiff Yolany Padilla entered the United States without inspection on May 18, 2018, was apprehended shortly thereafter, and expressed fear of returning to Honduras. *Id*. at ¶ 40. She was interviewed by an asylum officer on July 2, 2018, and determined to have a credible fear one day later. ECF No. 12 at 10. She became eligible for a bond hearing under *Matter of X-K-* on July 3, 2018, and was granted a bond hearing two business days later on July 6, 2018. ECF No. 26 at ¶ 66. She was awarded bond in the amount of $8,000.00. ECF No. 12 at 12. She posted bond and was released the same day. ECF No. 26 at ¶ 66. She waived appeal of her bond order. ECF No. 12 at 12.

Plaintiff Ibis Guzman entered the United States without inspection on May 16, 2018, was apprehended shortly thereafter, and expressed fear of returning to Honduras. ECF No. 26 at ¶ 42. She was interviewed by an asylum officer on June 27, 2018, and determined to have a credible fear one day later. *Id*. at ¶ 99. She became eligible for a bond hearing under *Matter of X-K-* on June 28, 2018, and was granted a bond hearing two business days later on July 3, 2018. ECF No. 12 at 32. At the hearing she was represented by counsel, but ultimately denied bond. *Id*. Guzman reserved appeal, but did not continue her appeal because she was released by Immigration and Customs Enforcement (ICE) in late July 2018. ECF No. 26 at ¶ 119.

Plaintiff Blanca Orantes entered the United States without inspection on May 21, 2018, was apprehended shortly thereafter, and expressed fear of returning to El Salvador. ECF No. 26 at ¶ 44. She was interviewed by an asylum officer on June 27, 2018, and determined to have a credible fear one day later. *Id*. at ¶ 102. She became eligible for a bond hearing under *Matter of X-K-* on June 28, 2018, and was granted a bond hearing eleven business days later on July 16, 2018. ECF No. 26 at ¶ 121. She was denied bond and reserved appeal. Orantes did not continue her appeal because she was released by ICE on July 24, 2018. *Id*. at ¶ 123.

Plaintiff Baltazar Vasquez entered the United States without inspection on June 1, 2018, was apprehended shortly thereafter, and expressed a fear of returning to El Salvador. ECF No. 26

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

at ¶ 46. He was interviewed by an asylum officer on July 31, 2018, and determined to have a credible fear the same day. *Id.* at ¶ 108. He became eligible for a bond hearing under *Matter of X-K-* on July 31, 2018, and was granted a bond hearing three weeks later on August 20, 2018. *Id.* at ¶ 125.  He stipulated to a bond in the amount of $8,000.00, and was released. Exhibit A, Vasquez Bond Order. He waived appeal of the bond order. *Id.*

Plaintiffs Padilla, Guzman, and Orantes had bond hearings in the Tacoma, Washington, immigration court. Plaintiff Vasquez's bond hearing took place at the Adelanto, California immigration court.

## LEGAL STANDARD

"It is axiomatic that '[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree.'" *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *see also Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1).

A complaint may also be dismissed under Rule 12(b)(6) if it fails to allege a cognizable legal theory or fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# ARGUMENT

## I.   The credible fear interview (CFI) claims should be dismissed.

### A.   The court lacks jurisdiction over Plaintiffs' claims challenging the timing of credible fear interviews under 8 U.S.C. § 1252(a)(2)(A) (Counts I & II).

Section 1252(a)(2)(A) precludes this court's review of the CFI class's claim that credible fear interviews must take place within ten days of the individual making a fear claim. The INA requires that any challenge to "procedures and policies adopted by the [Secretary of Homeland Security] to implement the provisions of section 1225(b)(1)" must be brought in accordance with section 1252(e). 8 U.S.C. § 1252(a)(2)(A)(iv); *see* 8 U.S.C. § 1252(a)(2)(A)(i) (channeling jurisdiction over "any cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" through section 1252(e)); *see also* 6 U.S.C. §§ 202, 291, 557 (transferring responsibility to the Secretary). Plaintiffs' CFI claims do not comport with section 1252(e) and therefore must be dismissed for lack of jurisdiction.

Section 1252(e) provides two carefully-narrowed avenues to challenge procedures associated with the implementation of section 1225(b)(1) in individual (but not class) actions. *See* 8 U.S.C. § 1252(e)(1)-(3). *First*, section 1252(e)(2) provides for individual habeas corpus review of expedited removal orders for three issues: "(A) whether the petitioner is an alien; (B) whether the petitioner was ordered removed under [the expedited removal statute, 8 U.S.C. § 1225], and (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee..., or has been granted asylum[.]" 8 U.S.C. § 1252(e)(2)(A)–(C). *Second*, section 1252(e)(3) authorizes challenges to the implementation of section 1225(b)(1). These challenges are limited to the questions of (1) "whether [section 125(b)(1)], or any regulation issued to implement such section, is constitutional" and (2) "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the [the Secretary] to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A). Any action instituted under section 1252(e)(3), however, must be filed in the District Court for the District of Columbia and brought "no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure . . . is

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

first implemented." *Id.* § 1252(e)(3)(B).

Plaintiffs' challenges fall squarely within the scope of section 1252(a)(2)(A)'s list of "[m]atters not subject to judicial review" and outside of section 1252(e)'s clearly-delineated exceptions. Section 1252(a)(2)(A) applies to any challenges "notwithstanding any other of provision of law (statutory or non-statutory) including section 2241 of title 28, or any other habeas provision, and sections 1361 and 1651 of such title," and plainly encompasses Plaintiffs' causes of actions. *See* ECF No. 26 at ¶ 13. Plaintiffs' claims are undeniably challenges to "policies or procedures" they assert were adopted by the Secretary in administering section 1252(b)(1). *See, e.g.*, ECF No. 26 ¶ 4. Plaintiffs' CFI challenges are likewise barred by section 1252(a)(2)(A)(i) as they "aris[e] from or relat[e] to the implementation or operation of an order of removal pursuant to section 1225(b)(1)." Notably, every CFI class member, at all times prior to the credible fear interview, is subject to an expedited removal order under section 1225(b)(1). Accordingly, any challenge to the process employed during the credible fear screening process necessarily "aris[es] from or relat[es] to" to a decision to implement the expedited order of removal. Thus, Plaintiffs' claims are within the scope of sections 1252(a)(2)(A)(i), (iv) and may only be raised in a manner consistent with section 1252(e).

Plaintiffs' claims do not fall within section 1252(e) exceptions. Plaintiffs do not bring individual claims, but purport to bring claims on behalf of a class of aliens. This is plainly barred by section 1252(e)(1) which prohibits any class certified under Federal Rule Civil Procedure 23 from bringing a challenge that falls within the scope of either section 1252(a)(2)(A), or in turn under sections 1252(e)(2) or (3). Plaintiffs' claims are also outside of the scope of section 1252(e)(2). As the Ninth Circuit has held, courts lack jurisdiction to consider any collateral challenge to an individual expedited removal order beyond the three permissible bases identified in section 1252(e)(2). *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008). But Plaintiffs do not claim that they are citizens; they are not subject to expedited removal orders; and they were not previously admitted as lawful permanent residents, refugees, or asylees. *See* 8 U.S.C. § 1252(e)(2)(A)–(C). Rather, their request that they received expedited credible fear hearings implicitly concedes that they are properly subject to section 1225(b)(1) procedures. They

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

are therefore not raising claims permitted under section 1252(e)(2). Finally, there is no basis for jurisdiction under section 1252(e)(3) as jurisdiction for such systemic challenges is limited to the District of Columbia and "must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in [section 1252(e)(3)(A)(i) or (ii)] is first implemented." 8 U.S.C. § 1252(e)(3)(A); *de Rincon*, 539 F.3d at 1141 n.5. Thus, this Court lacks jurisdiction over Plaintiffs' CFI claims under section 1252(a) and (e) and they should be dismissed.

**B.    The CFI class's constitutional claim (Count I) also must be dismissed for lack of jurisdiction as there has been no waiver of sovereign immunity for the claim and it is not appropriately raised through a 28 U.S.C. § 2241 habeas petition.**

Plaintiffs' constitutional claim must be dismissed for lack of jurisdiction. In Count I, Plaintiffs assert a Fifth Amendment due process claim without identifying any appropriate waiver of sovereign immunity to permit suit against the federal government on the claim. *Cf. Chacity v. Tillerson*, 285 F. Supp. 3d 293 (2018) (discussing the difference between the claim, jurisdictional statute, and a waiver of sovereign immunity). The United States, as a sovereign, is immune from suit unless it has waived its immunity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S 834, 841 (1986). Because Plaintiffs sue United States officials overseeing agencies in their official capacities, their complaint operates as a suit against the United States. *Ministerio Roca Solida v. McKelvey*, 820 F.3d 1090, 1095 (9th Cir. 2016) (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001)). Plaintiffs bear the burden of establishing the existence of an unequivocal waiver of sovereign immunity. *See, e.g.*, *Baker v. United States*, 817 F.2d 560, 562 (9th Cir. 1987).

The Fifth Amendment does not itself confer jurisdiction on the Court to hear this claim. *See Jaffee v. United States,* 592 F.2d 712, 717–18 (3d Cir. 1979) (the Constitution does not provide a waiver of sovereign immunity), *cert. denied,* 441 U.S. 961 (1979); *Chen v. United States,* 854 F.2d 622, 625–26 (2d Cir.1988) (government's waiver of sovereign immunity under FTCA does not extend to claims based on "direct violations of the Federal Constitution . . . or of federal statutes or regulations standing alone"). Therefore, Plaintiffs must either establish habeas jurisdiction over

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

the claim or identify an appropriate waiver of sovereign immunity. Although the Complaint correctly identifies the APA as a waiver of sovereign immunity for certain constitutional claims, as discussed in Part I.D., it is not appropriate for this claim because the claim falls outside of the scope of the APA's waiver. To the extent that Plaintiffs rely on the APA as the waiver of sovereign immunity for Count I, Count I is subsumed by Count II and should be dismissed for the same reasons. As such, at the least Plaintiffs must satisfy the pleading requirements for Count II to raise Count I. *See* 5 U.S.C. 706 (2)(b); *see also United States v. Weston*, 255 F.3d 873, 880 (D.C. Cir. 2001)).

Plaintiffs' general invocation of habeas jurisdiction under 28 U.S.C. § 2241 is also not sufficient to support the CFI class's constitutional claim. Even if section 2241 was not expressly prohibited in this context (*see supra* Part I.A.), Plaintiffs' claim for speedier credible fear hearings is not cognizable under section 2241. Jurisdiction under section 2241 is limited to challenges to the fact or duration of detention. *Alcala v. Rios*, 434 F. App'x 668, 669 (9th Cir. 2011); *see* 28 U.S.C. § 2241(c)(3) (stating detainee must be "in custody in violation of the Constitution or laws or treaties of the United States"); 8 U.S.C. § 2243 (a habeas return need only "certify the true cause of detention"). Here, the cause of the CFI class's detention is their status as aliens apprehended at or near a port of entry (which they do not contest) and is not directly linked to the timing of the credible fear hearing. Rather, some portion of the putative CFI class will—regardless of any future CFI interview—never become eligible for release because they will not be found to have a credible fear of removal.  And, of the CFI class members found to have a credible fear, many are not eligible for bond because they were apprehended at a port of entry. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). For those class members, the timing of the credible fear interview does nothing to change bond eligibility. The claims, therefore, are not sufficiently tied to the fact or duration of detention. Count I, therefore, should be dismissed for lack of jurisdiction.

**C.    The CFI class lacks a baseline constitutional entitlement to entry so they cannot plausibly state a constitutional entitlement to an interview within ten days of arrival at a port-of-entry (Counts I & II).**

Plaintiffs cannot plead any constitutional entitlement to a credible fear hearing within ten days of claiming fear of return to their countries because they lack any constitutional right to enter

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   or gain admission to the United States at all under settled constitutional principles. The

2   constitutional (as well as the overlapping APA claim under 5 U.S.C. § 706(2)) should therefore be

3   dismissed under Rule 12(b)(6).

4       Plaintiffs are non-admitted aliens who were apprehended shortly after surreptitiously

5   crossing the border, ECF No. 26 ¶¶ 39-46, and represent a class that includes aliens who never

6   entered the United States. The Supreme Court has long recognized that Congress exercises

7   "plenary power to make rules for the admission of aliens and to exclude those who possess those

8   characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972).

9   And "an alien seeking initial admission to the United States requests a privilege and has no

10  constitutional rights regarding his application." *Landon v. Plascencia*, 459 U.S. 21, 32 (1982).

11  Because the issues Plaintiffs seek to challenge all arise from their requests to seek asylum to avoid

12  removal, they lack constitutional rights regarding their attempts to secure admission. *See Castro*

13  *v. DHS*, 835 F.3d 422, 445 (2016). As aliens on the threshold of initial entry, their rights are limited

14  to only that procedure provided by Congress. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S.

15  206, 212 (1953); *Barrera v. Rison*, 44 F.3d 1441, 1449-50 (9th Cir. 1995) (en banc), *cert. denied*,

16  516 U.S. 976 (1995). Aliens only "receive constitutional protections when they have come within

17  the territory of the United States and developed substantial connections with this country." *United*

18  *States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990).

19      Plaintiffs' claims for speedier credible fear hearings are requests for particular procedures

20  relating to their applications for admission. They therefore lack a constitutional right to demand

21  expedited procedures for such hearings. *Landon*, 459 U.S. at 32. They do not allege any previous

22  substantial voluntary connections to the United States that would lead to greater rights, *see*

23  *Verdugo-Urquidez*, 494 U.S. at 271, but rather are aliens seeking initial admission and are properly

24  treated as at the threshold of initial entry. *See Castro*, 835 F.3d at 445; *Kwai Fun Wong v. United*

25  *States*, 373 F.3d 952, 971 (9th Cir. 2004) ("[A]n alien seeking admission has not 'entered' the

26  United States, even if [he] is in fact physically present."). As the Ninth Circuit explained, in the

27  context of a similarly situated asylum-seeking alien, he sought "due process protections that go

28  beyond those which Congress has provided him. But, as an alien who has never entered the United

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

States, those protections are unavailable to him." *Angov v. Lynch*, 788 F.3d 893, 898 n.3 (9th Cir. 2015). Because Plaintiffs have no constitutional rights regarding their attempts to gain admission (including asylum) to the country, and specifically no rights to other procedures than those provided by Congress for doing so, they lack any constitutional due process right to a credible fear hearing within ten days, which statute does not provide for. *See* 8 U.S.C. § 1225(b)(1)(B); *infra* I.D.2.

**D.** **The CFI class's APA claims should be dismissed for failure to state a claim (Count II).**

Plaintiffs raise two APA claims. Plaintiffs first challenge the government's alleged failure to establish timelines for credible fear interviews as an unlawful final agency action subject to review under 5 U.S.C. § 706(a)(2). In addition, Plaintiffs seek to compel the government to provide credible fear interviews within ten days from when a claim of fear of return is made as agency action unreasonably delayed under 5 U.S.C. § 706(a)(1). Both claims should be dismissed.

> 1. The court lacks jurisdiction over Plaintiffs' challenge to the timing of credible fear interviews under section 706(2) because it is not a challenge to a final agency action.

Plaintiffs' claims challenging the timing of their interviews are not subject to judicial review under 5 U.S.C. § 701(a)(1) and 706(a)(2) because there has been no final agency action precluding earlier interviews.

The APA limits when agency action is subject to judicial review. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *see Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171 (9th Cir. 2017) ("[Section] 704's requirement that to proceed under the APA, agency action must be final or otherwise reviewable by statute is an independent element without which courts may not determine APA claims."). "Where no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'" *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61–62 (2004) [hereinafter "SUWA"] (quoting 5 U.S.C. § 704); *see also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) ("final agency action" is a "jurisdictional requirement imposed by statute").

An agency action is considered final if two elements are met. First, the action must "mark the 'consummation' of the agency's decisionmaking process" and, thus, cannot be tentative or interlocutory. Second, "the action must be one by which 'rights or obligations have been determined,'" or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "The imposition of an obligation or the fixing of a legal relationship is the indicium of finality in the administrative process." *Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d at 1316; *Mount Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1990). "Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one." *Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1989) (citing *FTC v. Standard Oil Co.*, 449 U.S. 232, 239-40 (1980)).

Virtually all of these indicia are lacking here. Plaintiffs do not allege any consummation of a decisionmaking process or arrival at a determination that represents a definitive position statement. In fact, Plaintiffs allege that the named plaintiffs each received credible fear hearings at different intervals following requesting asylum and themselves claim that "[t]he federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law." ECF No. 26 ¶¶ 90, 91, 95, 99, 103, 106. Plaintiffs' allegations do not support an inference that DHS has made a decision determining "rights or obligations" concerning the minimum or maximum time in which an alien must be referred for a credible fear hearing—from which "legal consequences will flow" if such timing is not observed, *Bennett*, 520 U.S. at 177-78—following request for asylum. Because there is no final agency action at issue, the Court lacks jurisdiction over the APA claims under 5 U.S.C. § 704.

### 2. The Complaint does not plead an unreasonable delay in credible fear hearings for either the named Plaintiffs or the CFI class under section 706(1).

Plaintiffs cannot plead either an individual or class claim under 5 U.S.C. § 706(1) for the

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   "unreasonable delay[]" of their credible fear interviews. The class claims aside, none of the

2   individual Plaintiffs have a live section 706(1) claim as they have now been provided credible fear

3   interviews and been released from immigration detention. Plaintiffs cannot state a class claim for

4   a universal 10-day rule consistent with the appropriate analysis governing their section 706(1)

5   claims. Accordingly, the Complaint fails to state a claim for relief under section 706(1).

6       While the APA otherwise requires a party to challenge a final agency action, it also

7   provides for review of agency inaction where "[t]he reviewing court shall . . . compel agency action

8   unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness*

9   *All.*, 542 U.S. 55, 62 (2004). Here, the individual named Plaintiffs acknowledge that they received

10  their credible fear interviews and, instead, retroactively challenge the fact that their interviews did

11  not occur within ten days. But Plaintiffs cannot challenge the timing of an action that has now been

12  completed through section 706(1) because there is no agency action to compel for the individual

13  Plaintiffs. *Norton*, 542 U.S. at 67–68 ("The actions contemplated . . . have already been completed

14  and these claims are therefore moot.").

15      The CFI class's claim also fails as a matter of law. Unreasonable delay claims are not

16  proper for class resolution because applicable precedent does not support imposition of a one-size-

17  fits-all deadline absent a statutory or regulatory deadline. "[C]ourts generally apply the so-called

18  TRAC factors in deciding whether to order relief in claims of agency delay brought under the

19  APA." *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.1997). The *TRAC* factors

20  are:

21      (1) the time agencies take to make decisions must be governed by a "rule of
    reason"[;] (2) where Congress has provided a timetable or other indication of the

22  speed with which it expects the agency to proceed in the enabling statute, that
    statutory scheme may supply content for this rule of reason [;] (3) delays that might

23  be reasonable in the sphere of economic regulation are less tolerable when human
    health and welfare are at stake[;] (4) the court should consider the effect of

24  expediting delayed action on agency activities of a higher or competing priority[;]
    (5) the court should also take into account the nature and extent of the interests

25  prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking
    behind agency lassitude in order to hold that agency action is unreasonably

26  delayed."

27  *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir.2001). Determining "the nature and extent of the

28

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

interests prejudiced by delay" will require specific factual inquiries relevant to individual asylum seekers, and the alleged length of delay itself, and whether it has been "unreasonably" long, 5 U.S.C. § 706(1), will be different for each class member. A delay of a credible fear hearing beyond ten days, even were the Court to find it unreasonable for some plaintiffs under the circumstances, is unlikely to be unreasonable for all asylum seekers. As the APA provision and *TRAC* factors indicate, resolution of these claims would turn on a reasonability analysis particular to the circumstances that is not susceptible to a bright-line ten day rule. "'[R]easonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case.' A bright-line approach strips away the essence of a reasonableness standard." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1215 (11th Cir. 2016), *vacated*, 890 F.3d 952 (11th Cir. 2018) (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). Because unreasonable delay cases are properly adjudicated in individual cases, the Court should dismiss any such claim by the putative class, in addition to dismissing the moot delay claim of the named Plaintiffs.

**II.      The bond hearing class claims should be dismissed.**

      **A.      The bond hearing class's constitutional claim must be dismissed for failure to state a claim (Count I).**

      Plaintiffs raise a host of constitutional challenges to the bond procedures—ranging from the timing of the hearings to the standards and burdens to the adequacy of the appellate record. None of these challenges state a plausible claim for the type of blanket relief sought. Plaintiffs are aliens who were apprehended at or near ports of entry, have not been admitted, and fall within the category of aliens who have no substantive right to release on bond, let alone a certain process for determining *how* or *when* such review of a custody determination should take place. *Barrera v. Rison*, 44 F.3d 1441, 1449-50 (9th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 976 (1995). The bond hearing class's baseline interest in release, therefore, is not sufficiently high to state a claim for a constitutional entitlement to a bond hearing within seven days or to entitle Plaintiffs to set aside settled bond procedures. Plaintiffs' claims should be dismissed under Rule 12(b)(6).

      <u>1. There is no entitlement to a bond hearing within seven days of the positive fear finding.</u>

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Once a positive credible fear is established, the detention and release of the putative bond hearing class is governed by § 1226(a). *Matter of X-K-*, 23 I. & N. Dec. at 732-735. Every such alien is individually considered for release on bond. 8 C.F.R. § 236.1(c)(8). An ICE officer assesses whether the alien has "demonstrate[d]" that "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id*. If the officer denies bond (or sets a bond the alien thinks is too high), the alien may ask an IJ for a redetermination of the custody decision. 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). The alien may appeal the IJ's custody redetermination to the BIA. 8 C.F.R. §§ 236.1(d)(3)(i), 1236.1(d)(3)(i). And if the alien is denied bond or fails to post bond, he may later obtain another hearing by showing that "circumstances have changed materially." 8 C.F.R. § 1003.19(e).

That is ample process, especially for aliens who were apprehended at or near ports of entry and have had only the most minimal of contacts with the United States. As described, section 1226(a) procedures are easy to access and provide the alien with sufficient opportunity to obtain initial and subsequent bond hearings. In the face of no statutorily-mandated deadline, leaving scheduling determinations to the immigration courts appropriately balances the immigration court's interest in docket management while allowing them the flexibility to adapt to fluctuations in cases and to make prioritization decisions. Given these considerations, and the fact-specific inquiry required for Plaintiffs' due process (and related APA challenges), they cannot state a claim for an unbending seven-day bond hearing rule. The claim should therefore be dismissed under Rule 12(b)(6).

### 2. Even if a hearing is ordered, there is no legal basis for departing from the burdens and standards employed under section 1226(a).

Plaintiffs also seek to shift the burden to the government in these bond hearings. However, the Constitution does not require the government to bear the burden of establishing that the alien will be a flight risk or danger to justify temporary detention pending removal proceedings. The Supreme Court has consistently affirmed the constitutionality of detention pending removal proceedings notwithstanding that the government has *never* borne the burden to justify that detention by clear-and-convincing evidence. *E.g.*, *Demore v. Kim*, 538 U.S. 510, 531 (2003); *Reno*

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

*v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. at 524, 538 (1952); *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *see also Jennings*,  138 S. Ct. at 882 (Breyer, J., dissenting) ("[B]ail proceedings should take place in accordance with the customary rules of procedure and burdens of proof rather the special rules that the Ninth Circuit imposed."). In fact, the Supreme Court has repeatedly upheld detention pending removal proceedings on the basis of a categorical, rather than individualized, assessment that a valid immigration purpose warranted interim custody. *Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538.

In the related context of section 1226(c), *Demore* upheld mandatory detention for criminal aliens, which expressly puts the burden on the alien in the only situation in which release is permitted—if it is "necessary" for witness protection and "the alien satisfies the Attorney General" that he "will *not* pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2) (emphasis added). And in *Zadvydas*, this Court placed the burden on the alien who is subject to potentially indefinite detention following entry of a final order of removal to show "that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

Holding that the Constitution requires the government to bear the burden of proof in bond hearings under Section 1226(a) would cause practical problems that Congress has sought to address. Initially, the 1917 Act provided that, when an alien is taken into custody for removal proceedings, "he may be released under a bond." § 20, 39 Stat. 891. A circuit conflict developed, with some courts holding that the phrase "he may be released" meant that the alien had a presumptive right to be released, and others holding that the decision rested with the government's discretion. *See Carlson*, 342 U.S. at 538-540. Congress responded by "enacting the precursor" to Section 1226(a), which "eliminated any presumption of release pending deportation" and instead expressly "committ[ed] that determination to the discretion of the Attorney General." *Flores*, 507 U.S. at 306 (citing *Carlson*, 342 U.S. at 538-540).

In exercising that discretion, the government previously applied a presumption that non-criminal aliens detained under Section 1226(a) would be released on bond, unless the government could show by a preponderance of the evidence that he was a flight risk or danger. *See* 62 Fed.

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Reg. 10,323 (Mar. 6, 1997). Over time, however, the INS was "strongly criticized for its failure to remove aliens who are not detained." *Ibid.* Accordingly, in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009-546, Congress provided "budget enhancements and other legislation," including for increased bed space to hold aliens, to "increase[] detention to ensure removal." 62 Fed. Reg. at 10,323. The INS responded by amending its regulations to place the burden on the alien, which it concluded was "consistent with the intent of Congress" in enacting IIRIRA. *Ibid.* Shifting the burden back to the government, by contrast, would impede removal efforts and lead to more "failure[s] to remove aliens who are not detained." *Id.* Accordingly, Plaintiffs cannot plead a claim for placing the burden of proof on the alien at bond hearings.

### 3. There is no violation of due process by not providing transcripts, recordings, or "particularized" written findings of bond hearings.

Plaintiffs allege that not providing a bond hearing with a transcript or recording of the hearing and specific, particularized findings with respect to any denial of release, denies plaintiffs and members of the Bond Hearing Class an adequate record to file an administrative appeal or habeas petition and therefore violates their due process rights. Due process is a "flexible" concept, and when determining if certain procedures satisfy the Constitution, there is no bright-line rule to follow. *See Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976). Here, this Court can easily conclude that not providing transcripts, recordings, or "particularized" written findings of bond hearings does not violate the Constitution.

"Congress did not want detention hearings to resemble mini-trials." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). The distinction between merits hearings and preliminary hearings is reflected in the statutes and regulations governing removal proceedings and custody redetermination hearings. The statute governing removal proceedings explicitly requires a "complete record . . . of all testimony and evidence produced." 8 U.S.C. § 1229a(b)(4)(C). The statute governing custody, in contrast, contains no specific directives. *See generally* 8 U.S.C. § 1226. The implementing regulations codify the distinctions between the two types of proceedings. *See, e.g.*, 8 C.F.R. § 1003.19(d) (consideration of custody matters "shall be separate and apart

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

from, and shall form no part of, any deportation or removal hearing or proceeding"); *accord Matter of Guerra*, 24 I. & N. Dec. 37, 40 n. 2 (BIA 2006) ("Bond proceedings are separate and apart from the removal hearing"). The immigration judge normally only needs to prepare a Bond Memorandum as a record of the bond proceedings:

> The parties and the Immigration Judge are responsible for creating a full and complete record of the custody proceeding. . . . In any bond case in which the parties or the Immigration Judge rely on evidence from the merits case, it is necessary that such evidence be introduced or otherwise reflected in the bond record (such as through a summary of merits hearing testimony that is reflected in the Immigration Judge's bond memorandum).

*Matter of Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999).

There is no statutory or regulatory requirement of a verbatim record. EOIR's own manual provides that bond hearings are not generally recorded. *See* Immigration Court Practice Manual, § 9.3(e)(iii) ("Bond hearings are generally not recorded"); *see also Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977) ("[T]here is no right to a transcript of a bond redetermination hearing. Indeed there is no requirement of a formal 'hearing'"). But when an immigration judge believes prejudice could result from informal procedures, he may adopt more formal procedures, including recording the custody hearing. *See Matter of Khalifah*, 21 I. & N. Dec. 107, 112 (BIA 1995) ("It is well settled that there is no requirement in bond proceedings for a formal hearing and that informal procedures may be used *so long as no prejudice results*") (emphasis added) (citation omitted)).

The Supreme Court has declined to impose a contemporaneous verbatim record requirement on *criminal* trials. *See Mayer v. City of Chicago*, 404 U.S. 189, 193–94 (1971); *Coppedge v. United States*, 369 U.S. 438, 446 (1962); *United States v. Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990) (citing *Hardy v. United States*, 375 U.S. 277, 279–82 (1964)). Thus, there is no basis for this Court to impose one on immigration custody redetermination hearings, especially where the full range of constitutional rights available in criminal proceedings is not required in removal proceedings. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Accordingly, there is no basis to conclude that transcripts, recordings, or "particularized" written findings of bond hearings are required as a constitutional matter.

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

### B.      The bond hearing class's APA claims should be dismissed (Count II)

Plaintiffs raise the same two categories of APA claims for the bond hearing class. Plaintiffs challenge the government's alleged failure to establish timelines for bond hearings and the standards and procedures employed at those hearings as unlawful final agency actions subject to review under 5 U.S.C. § 706(a)(2). Plaintiffs additionally seek to compel the government to provide bond hearings (in a manner consistent with their preferred standards and procedures) within seven days of any request under 5 U.S.C. § 706(a)(1). Plaintiffs' challenges should be dismissed for reasons similar to those discussed in Part I.D.

> 1. <u>The court lacks jurisdiction over Plaintiffs' challenges to the timing, standards, and recording of bond hearings under section 706(2) because they are not challenges to a final agency action.</u>

Again, an agency action is considered final only if two elements are met: the action must "mark the 'consummation' of the agency's decisionmaking process" and, thus, cannot be tentative or interlocutory, and "the action must be one by which 'rights or obligations have been determined,'" or from which "legal consequences will flow." *Spear*, 520 U.S. at 177-78. "Indicia of finality include: the administrative action challenged should be a definitive statement of an agency's position; the action should have a direct and immediate effect on the day-to-day business of the complaining parties; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one." *Mt. Adams Veneer Co.*, 896 F.2d at 343 (citing *FTC v. Standard Oil Co.,* 449 U.S. 232, 239-40 (1980)). These indicia are lacking here.

First, Plaintiffs have not identified a specific policy, or even a practice, related to the timing of their bond hearings. There is no policy; rather, Defendants provide bond hearings as soon as reasonably possible given the circumstances and docketing realities of each particular court where a bond hearing may be held. Any failure to provide a bond hearing by Plaintiffs' arbitrary day seven deadline does not "finally determine" any "rights or obligations," and is not one "from which legal consequences will flow." *Spear*, 520 U.S. at 177-78.

Similarly, there is no final agency action for Plaintiffs to challenge regarding the recording, transcribing, or making of particularized written findings. Rather, immigration judges prepare a

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Bond Memorandum as part of a record of the bond proceedings if the bond decision is appealed to the Board of Immigration Appeals. *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999); Immigration Court Practice Manual, § 9.3(e)(iv). Similarly, EOIR's manual provides that bond hearings are not generally recorded, but does not prohibit such a practice. *See* Immigration Court Practice Manual, § 9.3(e)(iii); *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977). Moreover, if an IJ believes prejudice might result from informal procedures, he should adopt more formal procedures, including recording the custody hearing. *See Matter of Khalifah*, 21 I. & N. Dec. 107, 112 (BIA 1995) ("It is well settled that there is no requirement in bond proceedings for a formal hearing and that informal procedures may be used *so long as no prejudice results*[.]") (emphasis added) (citation omitted)). Thus, there is no final policy governing Plaintiffs' challenge and therefore it is not subject to review under section 706(2).

Finally, Plaintiffs challenge to the burden of proof at bond hearings is not a challenge to an agency decision because those standards are set by statute, and not by agency action. *Jennings v. Rodriguez*, 138 S. Ct. 830, 847-48 (2018). Accordingly, the APA does not permit review of the claim.

### 2. The bond hearing class cannot show that agency action has been unreasonably withheld as a matter of law after only seven days (Count II).

The bond hearing class's section 706(1) claim fails as a matter of law. Unreasonable delay claims are not proper for class resolution because applicable precedent does not support imposition of a one-size-fits-all deadline where that deadline is not found in statute or regulation. Rather, the reasonableness of an agency's actions "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful," but must be evaluated in the context of competing priorities, the complexity of the issue, and the agency's resources. *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Because there is no statutory or regulatory seven day rule on which to base their claim, Plaintiffs cannot, based the individualized analysis required under section 706(1), plead a uniform "unreasonable delay" in all instances where a bond hearing is not scheduled within seven days without reference to the facts and circumstances surrounding the scheduling of that hearing. *See*

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   *supra* Part I.D.2.

2   **C.     None of the individual Plaintiffs can state a claim for relief based on the
        timing of their bond hearings or the procedures available under section
3       1226(a).**

4       As an initial matter, named Plaintiffs' bond claims are all moot. Plaintiffs have been

5   afforded bond hearings and have subsequently been released from immigration custody. ECF No.

6   26 at ¶¶ 15, 115, 17, 121, 125. Plaintiffs therefore lack a legally cognizable interest in the outcome

7   of the case. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Because federal courts are courts of

8   limited jurisdiction, "a federal court has no authority to give opinions upon moot questions or

9   abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue

10  in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

11  Plaintiffs' claims should be accordingly dismissed as moot.

12      Plaintiffs' claims also fail as a matter of pleading. None of the Plaintiffs availed themselves

13  of the full panoply of process available under section 1226(a) and therefore lack standing to

14  challenge those procedures as constitutionally inadequate—especially Plaintiffs' claims related to

15  the sufficiency of the bond record for appellate review. None of the Plaintiffs perfected an appeal

16  of their bond orders. Two accepted their bonds and waived appeal. Plaintiff Vasquez did not even

17  participate in a hearing in which he was required to carry any burden of proof or production as he

18  simply stipulated to an agreed bond amount. *See* Exhibit A, attached hereto. Plaintiffs' challenges

19  to the procedures should therefore be dismissed as there is no evidence that they were harmed by

20  any of the alleged procedural deficiencies alleged by the putative bond hearing class.

21      Finally, Plaintiffs Padilla and Guzman have not stated any claim to a seven-day bond

22  hearing rule. Both were scheduled for bond hearings within days of their credible fear finding and

23  well-under Plaintiffs' proposed seven day deadline. *See* ECF No. 26 ¶¶ 66, 75, 95, 99. Therefore,

24  at a minimum their bond hearing claims should be dismissed.

25  **III.    The court should dismiss Count III in its entirety under both Rule 12(b)(6) and
        12(b)(1).**
26

27      **A.     The court lacks jurisdiction over Plaintiffs' claims brought pursuant to
            asylum law.**
28      It is settled law that "[l]ike substantive federal law itself, private rights of action to enforce

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1 | federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

2 | Far from creating such a cause of action, 8 U.S.C. § 1158 explicitly says that no such private cause

3 | of action to enforce its provisions exists: "[n]othing in this subsection shall be construed to create

4 | any substantive or procedural right or benefit that is legally enforceable by any party against the

5 | United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7); *see, e.g.,*

6 | *Ivantchouk v. U.S. Att'y. Gen.*, 417 F. App'x 918, 921 (11th Cir. 2011) ("Nothing in § 1158(d)

7 | creates a private right of action against the government."); *Ms. L. v. ICE*, 302 F. Supp. 3d 1149,

8 | 1168 (S.D. Cal. 2018) (similar).

9 |      Nor does section 1225(b)(1) contain the "rights-creating language" necessary to signal a

10 | private cause of action. *Alexander*, 532 U.S. at 288. Section 1225(b)(1) lays out the procedure that

11 | DHS and EOIR must adhere to in screening, detaining, and expeditiously removing inadmissible

12 | aliens detained at or near the border. "Statutes that focus on the person regulated rather than the

13 | individuals protected create 'no implication of an intent to confer rights on a particular class of

14 | persons.'" *Alexander*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294

15 | (1981)). And even were the text of section 1225(b)(1) ambiguous on this point, Congress in section

16 | 1252(a) spoke unequivocally that the only causes or claims arising from or related to actions or

17 | procedures implementing section 1225(b)(1) that courts could hear were causes of action arising

18 | under section 1252(e). 8 U.S.C. § 1252(a)(2)(A). Plaintiffs' claims do not fall within the scope of

19 | section 1252(e)(2) or (e)(3), as explained. Congressional intent to create a private cause of action

20 | and private remedy is the touchstone in this inquiry. *See Alexander*, 532 U.S. at 286-87.  If

21 | Congress intended to create a private cause of action under section 1225(b)(1) outside of section

22 | 1252(e), it would not likely have barred federal jurisdiction over such claims, ensuring courts may

23 | not award plaintiffs remedies.

24 |      Additionally, the international treaties addressing the United States' other *non-refoulement*

25 | obligations are not self-executing, but only enforceable in the immigration procedures created by

26 | Congress. The INA specifies that the only enforceable rights under 8 U.S.C. § 1231(b)(3),

27 | providing for withholding of removal, or the Convention Against Torture, providing for

28 | withholding or deferral of removal based upon on whether the alien would more likely than not be

22

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

tortured upon return to his country of origin, are available in removal proceedings or in a petition for review from those proceedings, *see* 8 U.S.C. § 1252(a)(4), which an alien seeking asylum at the border is placed in if he makes the threshold showing of a credible fear of persecution or torture, *see* 8 U.S.C. § 1225(b)(1)(B)(ii). Congress has barred federal district courts from hearing such claims for relief from removal. *See J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment." 8 U.S.C. § 1252(a)(4); *see also id.* § 1252(b)(9). The limited federal district court review over expedited removal at section 1252(e) does not apply here. Plaintiffs' claim based on violation of section 1225(b)(1), asylum law, and international treaty obligations must be dismissed due to lack of cause of action in this Court.

**B.    The Complaint does not plead any violation of asylum law.**

Plaintiffs' vague references to international law and to various asylum regulations are not sufficient to plead a cause of action for a violation of "asylum law." Notably, Plaintiffs do not allege that Defendants have violated any statute, regulations, or provision of international law, but merely allege that the delays may "infringe on their ability to pursue to their asylum claims." ECF 26 at 30-31. This is not sufficient to plead a violation of "asylum law" because there is no law requiring that asylum be made available in a particular manner. Because asylum continues to be available to Plaintiffs, they have not stated a claim under Count III.

**IV.    The court should strike Plaintiffs' request for class-wide injunctive relief for lack of jurisdiction.**

The court does not have jurisdiction to enter the requested injunctions and therefore the request for injunctive relief should be struck from the Complaint. Section 1252(f)(1), entitled "Limit on injunctive relief," provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [sections 1221-1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been

23

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

initiated.

8 U.S.C. § 1252(f)(1). The Supreme Court has confirmed that section 1252(f)(1) is a bar on "*classwide* injunctive relief against the operation of §§ 1221-1231" with a narrow carve-out that applies to "*individual cases*." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999) (emphasis added). Both the Supreme Court and the Ninth Circuit have indicated that section 1252(f)(1) appears to bar class-wide injunctions for claim that are exceedingly similar to Plaintiffs' claims here. *Rodriguez v. Robbins*, 591 F.3d. 1105, 1120 (9th Cir. 2010) ("*Rodriguez I*") (indicating that even if section 1252(f)(1) bars constitutional claims to modified bond hearing procedures, that bar does not apply to statutory claims); *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (dismissing *Rodriguez I*'s section 1251(f)(1) reasoning as seemingly inapplicable to constitutional challenges to bond procedures).

The requested injunctions fall squarely within section 1252(f)(1)'s jurisdictional bar. Plaintiffs seek to enjoin the operation of section 1225(b) to dictate time limits that are not contemplated by statute, to overhaul the process for bond hearing under section 1226(a), and to revise the standards and burdens that govern those hearings. Accordingly, this Court lacks jurisdiction to maintain the injunction as a remedy for Plaintiffs' claims on a class-wide basis. The relief must, therefore, be struck or class certification denied.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint.

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Dated: September 6, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

*/s/Lauren C. Bingham*
LAUREN C. BINGHAM
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4458
Lauren.C.Bingham@usdoj.gov

JOSEPH A. DARROW
Trial Attorney

DEFENDANTS' MOTION TO DISMISS
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 6, 2018, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this day on all counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically filed Notices of Electronic Filing.

<div align="right">

*/s/ Lauren Bingham*
Trial Attorney
United States Department of Justice

</div>

Defendants' Motion to Dismiss
(Case No. 2:15-cv-01543-RSM)

-26-

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

Exhibit A: Vasquez Bond Order
In Support of Motion to Dismiss

*Padilla v. ICE*, 2:18-CV-928-MJP

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
ADELANTO, CA

FILE: A█████████

IN THE MATTER OF:

VASQUEZ BONILLA, BALTAZAR

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of
respondent pursuant to 8 CFR 236.1(c), and full consideration
having been given to the representations of the Department of
Homeland Security and the respondent, it is hereby

_____  ORDERED that the request for a change in custody status be
         denied.

_____  ORDERED that the request be granted and that respondent be:

_____  released from custody on his own recognizance

_____  released from custody under bond of $ 8,000⁰⁰ (Stip)

_____  OTHER _____ATD - @ DHS Discretion_____

Copy of this decision has been served on the respondent and the
Department of Homeland Security.

APPEAL:  waived  /  reserved

ADELANTO -- ADELANTO DETENTION FACILITY WEST

Date: 8/20/2018                                     _____
                                                    AMY L. LEE
                                                    Immigration Judge

_____
                      CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)      PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN's ATT/REP  [ ] DHS
DATE: 8/20/2018      BY:  COURT STAFF
    Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
_____
                                                                    XS

<div align="center">

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

</div>

| | |
|---|---|
| YOLANY PADILLA, on behalf of herself and her 6-year-old son J.A.;  IBIS GUZMAN, on behalf of herself and her 5-year-old son R.G.;  BLANCA ORANTES, on behalf of herself and her 8-year-old son A.M.;  BALTAZAR VASQUEZ, on behalf of himself; <div align="right">Plaintiffs-Petitioners,</div>    v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE");  U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS");  U.S. CUSTOMS AND BORDER PROTECTION ("CBP");  U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS");  EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); THOMAS HOMAN, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; MARC J. MOORE, Seattle Field Office Director, ICE, JEFFERSON BEAUREGARD SESSIONS III, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington;  CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington;  DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility; <br><br> <div align="right">Defendants-Respondents.</div> | No. 2:18-cv-928  MJP <br><br> **[PROPOSED] ORDER GRANTING DEFEDANTS' MOTION TO DISMISS** |

The Court, having considered Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, and any opposition thereto, hereby **GRANTS** the motion to dismiss. Plaintiffs' Second Amended Complaint is **DISMISSED** and this case is **CLOSED**.

DATED this _____ day of _____, 2018.

_____
THE HONORABLE MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE