The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

Yolany PADILLA, et al.,

    Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

    Defendants.

No. 18-cv-0928 MJP

**DECLARATION OF CAROLINA ANTONINI**

I, Carolina Antonini, hereby declare:

1. I am an attorney licensed to practice law in Georgia. My business address is: 2751 Buford Highway, N.E. 8th Floor, Atlanta GA 30324. I am admitted to practice law in the State of Georgia.

2. I have been practicing immigration law for over twenty-two years. I am a partner in the firm of Antonini and Cohen. My practice exclusively involves immigration law. I am also an Adjunct Professor at Georgia State University, College of Law where I teach immigration law and procedure.

3. For the entire span of my career, I have represented hundreds of asylum seekers either in a pro bono or paid basis. I have also consulted and provided guidance to pro se asylum seekers. Asylum seekers are individuals who have expressed a fear

CAROLINA ANTONINI DEC. - 1
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

of return to their country of origins or an intention to apply for asylum to officials in the Department of Homeland Security. Certain asylum seekers are entitled to a credible fear interview before an asylum officer. The Asylum Offices have been mostly inconsistent with the scheduling of credible fear interviews. In at least one third of the cases I have seen, the asylum office fails to schedule credible fear interview within 10 days after people have requested asylum or expressed a fear of return. These cases take anywhere from 15 days to over one month for DHS to schedule a credible fear interview. The delay has often resulted in prolonged detention, a lack of confidence about the process by asylum seekers who often are either despondent by the time their interview is scheduled and this affects their performance during the interview or who simply give up and request to be removed before their claim is heard. The delay also impacts the attorney-client relationship when clients view delays as ineffective representation and not as a systematic problem. In a handful of occasions, clients and I have appeared at the local ICE office for credible fear interviews that were cancelled without explanation. In one recent occasion, the client and I made four separate appearances and never had the credible fear interview and the ICE officer was forced to issue a Notice to Appear in regular removal proceedings and the case is proceedings before the immigration court without an asylum office determination.

4. Most of the detained asylum seekers that I have consulted or represented passed a credible fear interview. A large number of them opt to abandon their claim and to be deported when they are not released from detention after passing the credible

CAROLINA ANTONINI DEC. - 2
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

fear interview. Their prolonged detention impacts their emotional state and willingness to pursue protection, eliminates their belief that the process and limits their ability to participate in their defense. Detention cuts them off from their ability to contact witnesses and obtain supporting documents. Many would greatly benefit from counseling that they cannot obtain while detained. Pro se individuals are in a precarious situation as they are not familiar with asylum standards and do not bring forth the relevant facts. They also are unfamiliar with the process of requesting release on parole or bond.

5. Bond hearings in Georgia can take from a few days to a couple of weeks to be scheduled no matter the court. Georgia has three immigration courts, two in the city of Atlanta and one in Lumpkin County. These courts hear bond matters from the Folkston Detention Center, the Stewart Detention Center and the Atlanta City Jail. I have met pro se litigants who did not figure out that they had bond rights until after being detained for over one month. Most pro se bond requests that I have seen have taken significant longer to schedule and adjudicate and have been mostly denied. Detained pro se litigants are unable to access the witnesses and documents required to establish that they are neither a flight risk nor a danger to society. They also lack identity and supporting documents because their documents are confiscated by CBP at detention. Those documents are supposedly transferred to ICE and held in the litigant's file. ICE often does not make the documents available to litigants during their bond hearing. Additionally, even when ICE provides the documents, they are in a foreign language and without

CAROLINA ANTONINI DEC. - 3
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

translation are not acceptable as evidence. Detained litigants are generally unable to have documents translated. I have known of asylum seekers whose supporting documents were confiscated by the detention officers and whose documents are subsequently not found. Others must wait months to access them via a Freedom of Information Act request.

6. The harms of delayed bond and parole requests are significant: asylum seekers become emotionally distraught. Their trust in the system weakens. Constantly clients tell me that they are experiencing memory difficulties. Some clients are emotional and breakdown, sometimes, inconsolably, making trial preparation extremely difficult. They do not have their reference material in their possession and cannot provide phone numbers, names and other vital information required for the proper identification and preparation of witnesses and of persons who could help obtain evidence from the home country. In my many years of representing detained asylum seekers, every single one of them who gave up their claim did so because of the detention.

7. The asylum seekers must show that he or she will neither be a risk to the community nor a flight risk. This is a difficult burden to meet for new arrivals. The seeker bears the burden of proof and even when there is no evidence to contradict a favorable finding, immigration judges deny the bond request because the seeker was unable to mount a case. Pro se asylum seekers are also left to blindly prove standards that they do not know exist and, even if they knew the standards, lack the knowledge of legal presentation. In my experience, most asylum seekers who

CAROLINA ANTONINI DEC. - 4
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

are denied bond are denied because they could not meet the legal burden placed upon them. Immigration judges often do not articulate a decision for denying bond unless there is an appeal to the Board of Immigration Appeals. Most bond denials are not appealed, by represented or pro se litigants because those appeals mean remaining in custody several months while the appeal is pending. I have had many clients give up their claim and request deportation or voluntary departure because they could not bear being detained for months while their bond denials are reviewed and their asylum case is heard. Detained bond denial reviews can take 90 days or more. Often a bond appeal takes longer than the detained merits, forcing asylum seekers to pursue their claim while detained and with insufficient witnesses, documents and preparation. An ill-prepared case is more likely to fail.

I declare under penalty of perjury of the laws of the State of Georgia and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 17 day of September 2018 in Atlanta, Georgia.

By: _____
Carolina Antonini

CAROLINA ANTONINI DEC. - 5
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611