The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

Yolany PADILLA, *et al.*,

    Plaintiffs,

  v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

    Defendants.

No. 18-cv-0928 MJP

**DECL. OF JEREMY JONG**

I, Jeremy Jong, hereby declare:

1. I am attorney licensed to practice law in the State of New Jersey. I graduated from Rutgers Law School in 2013 and was admitted to the New Jersey State Bar in 2014. From February 2014 until March 2017, I worked as a staff attorney for Catholic Charities in Baton Rouge, Louisiana. After that, I worked as a National Qualified Representative Program Attorney for El Pueblo Immigration Services. I then served as the Lead Attorney for the Southern Poverty Law Center's Southeast Immigrant Freedom Initiative at LaSalle ICE Processing Center from September 2017 until September 7, 2018. I am currently a consultant with the Southern Poverty Law Center.

2. I have appeared at immigration courts in Oakdale, New Orleans, and LaSalle, Louisiana. I estimate that I have represented people in approximately sixty bond

JONG DEC. - 1
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

hearings. In the past year, I represented six recent entrant asylum seekers who have passed their credible fear interviews in their bond hearings.

3. A client I recently represented entered the country expressed fear of return on May 23, 2018, received his credible fear interview on July 6, 2018, and was found credible on July 9, 2018. He received his bond hearing before the Lasalle Immigration Court on August 9, 2018.

4. Another client expressed fear on May 22, 2018, received his credible fear interview on June 29, 2018, and was found credible on July 1, 2018. He received his bond hearing before the Lasalle Immigration Court on August 28, 2018. The New Orleans DHS Asylum Sub-Office handled both interviews.

5. In my experience, asylum seekers do not receive a credible fear interview in under ten days.

6. These long waits in detention centers with horrific conditions severely curtail the willingness of our asylum-seeking clients to pursue fully pursue their claims. LaSalle has been the site of four detainee deaths since 2016. Women at LaSalle often go without access to feminine hygiene products. A client at Pine Prairie recently complained of not being given blankets or toilet paper for a week at a time. Both facilities have used tear gas against non-compliant detainees. Many clients and prospective clients have expressed to me that they would have pursued their asylum claims to fruition or appealed negative bond decisions but for the extended periods of time already spent in terrible conditions at both detention centers.

JONG DEC. - 2
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

7. In bond hearings, the burden falls on the asylum seeker to prove that they are neither a flight risk nor a danger to the community. Whether represented or not, it is extremely difficult for recent entrant asylum seekers to meet their burden. For example, on March 21, 2018, Immigration Judge Madeline Garcia cited the fact that the income of my client's uncle, who had pledged to support my client, fell below the federal poverty line as a reason for denying the client bond. Judge Garcia reasoned that because of the client's family's poverty, my client would be at risk for trafficking and therefore would be a flight risk. On July 17, 2018, Judge Garcia denied another client bond on the grounds that my client presented a letter that she would receive financial support from a friend of her sister upon her release. In that case, Judge Garcia reasoned that this pledge rendered my client a flight risk because it would place her in a dependent relationship with a man that she did not know.

8. Immigration Judges often deny bond when they deem immigration relief to be speculative. For example, on May 1, 2018 Immigration Judge Marsha Nettles denied bond in the case of my client who was fled severe domestic violence at the hands of her partner. That client subsequently decided to request voluntary departure rather than pursue her withholding of removal claim because she could no longer stand being detained. This is not uncommon as clients with viable claims regularly cite detention conditions as a reasoning for deciding not to pursue those claims.

9. These cases were denied even with the assistance of counsel. Pro se respondents, without the advantage of counsel gathering evidence and developing their claims to relief have an incredibly difficult time proving that they are not a flight risk. Many

JONG DEC. - 3
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957-8611

lack access to the outside world due to the expensive, non-confidential phone systems that the detention centers force their detainees to rely on. Those phones are located in "dorms" in which asylum seekers are held with around one hundred other detainees. Often, those who lack an outside source of income must "work" for the detention center for a dollar a day. A system that places the burden on asylum seekers to gather corroborative evidence in those conditions for proceedings in which their liberty is at stake lacks fundamental fairness.

10. Immigration Judges also often deny bond without providing any reasoning for the denial. For example, on February 28, 2018, Immigration Judge Denise Marks Lane denied bond for a client who was fleeing anti-LGBT violence in his country, finding him to be both a flight risk and a danger to the community. When I asked Judge Marks Lane for her reasoning for so finding, she responded that she would provide the reasoning in a written decision if the decision was appealed. While this was a specifically egregious case, Immigration Judges often provide little to no reasoning as to why they deny bond and typically do not issue a written decision until after a Notice of Appeal is filed with the Board of Immigration Appeals.

11. This practice makes advising clients on whether to appeal extremely difficult. It is near impossible to advise a client on his or her chances of appeal if I have little to no idea of what the Immigration Judge's reasoning was for denying bond in the first place.

JONG DEC. - 4
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

12. Although I have had no difficulties in obtaining records of bond proceedings, the Board of Immigration Appeals has never provided us with transcripts of bond proceedings.

13. The length of time that a bond appeals stay pending with the Board of Immigration of Appeals is another factor that persuades asylum seekers to give up on their claims as bond appeals have remained pending for about three months before receiving a decision. I have had many clients outraged over the denial of bond who then decide to take removal orders or request voluntary departure after I tell them that they will have to wait at least three months to receive a decision regarding their bond appeal.

14. In sum, excessive wait times for credible fear Interviews, horrid detention conditions, high evidentiary burdens in bond hearings, and lack of due process in bond appeals all serve to dissuade asylum seekers from actually pursuing their claims.

I declare under penalty of perjury of the laws of the State of Washington and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 19th day of September 2018 in Tacoma, Washington.

By: _____
Jeremy Jong

JONG DEC. - 5
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611