The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

Yolany PADILLA, et al.,

        Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al.,

        Defendants.

No. 18-cv-0928 MJP

**DECLARATION OF JENNIFER LEE KOH**

I, Jennifer Lee Koh, hereby declare:

1. I am an attorney licensed to practice law in the States of California and New York. I graduated from Columbia Law School in 2001 and from Yale University in 1998. My business address is 1 Banting, Irvine CA 92618.

2. I am submitting this declaration to explain the harms that result from the Department of Homeland Security's (DHS) practice of not scheduling individuals for credible fear interviews in a prompt manner (i.e., within 10 days of requesting asylum or expressing fear to a DHS official), not scheduling individuals who have passed their credible fear interviews for bond hearings in a prompt manner (i.e., within 7 days of a positive credible fear determination) and not preparing an individualized decision or a recording in connection with bond hearings for asylum

KOH DEC. - 1
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

seekers who have passed their credible fear interviews.

**Relevant Background and Experience**

3. I have been teaching, practicing, writing and researching in the immigration law field on a full-time basis for over ten years. From 2007 to 2010, I was a clinical teaching fellow at Stanford Law School's Immigrants' Rights Clinic. In 2010, I joined the full-time faculty at Western State College of Law, an American Bar Association-accredited law school located in Irvine, California. I am currently a tenured law professor at Western State College of Law, where I am the founding director of the law school's Immigration Clinic.

4. I have published extensively on the deportation and immigration detention systems, and have written a number of articles that address due process and fundamental fairness principles in the immigration laws. The United States Supreme Court and Ninth Circuit Court of Appeals have cited my scholarship. Several of my articles specifically address the expedited removal system, including the credible fear process, namely *Removal in the Shadows of Immigration Court*, 90 Southern California Law Review 181 (2017); *Anticipating Expansion, Committing to Resistance: Removal in the Shadows of Immigration Court Under Trump*, 43 Ohio Northern Law Review 459 (2017); and *When Shadow Removals Collide: Searching for Solutions to the Legal Black Holes Created by Expedited Removal and Reinstatement*, 96 Washington University Law Review __ (forthcoming 2018, available online). As part of my research, I am in regular communication with other academics studying expedited removal and other forms

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

of removal that bypass the immigration court system.

5. I have delivered numerous talks, presentations and trainings on immigration law, immigration enforcement trends, deportation defense and immigration court advocacy. In the past several years, a number of those presentations have addressed the expedited removal, credible fear and immigration detention systems, including presentations delivered at the American Immigration Lawyers Association's national conference, the American Immigration Lawyers Association Colorado Chapters conference, Association of American Law Schools Annual Conference, St. Mary's Law School, Ohio Northern Law School, and to pro bono attorneys associated with emergency response networks in Los Angeles, California and Orange County, California.

6. In my capacity as the Director of the Western State College of Law Immigration Clinic (the "Clinic"), I represent clients and supervise law students who work on a range of immigration matters on behalf of indigent clients in the Southern California area. The Clinic's practice focuses primarily on removal defense cases, including asylum-seekers in immigration detention, bond hearings for persons seeking release from detention, and cases involving persons with expedited removals issued in the past. The Clinic also works on a range of other immigration matters such as cases involving the immigration consequences of criminal convictions, relief applications for survivors of domestic violence and other crime, and appeals before the Ninth Circuit Court of Appeals and Board of Immigration Appeals. In February 2018, the Clinic received the Community

KOH DEC. - 3
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

Justice Award from Resilience OC, a grassroots organization based in Orange County, in recognition of the Clinic's leadership on immigration-related policies in the Santa Ana, CA area. The Clinic participates in a Legal Orientation Program at a local detention facility and regularly conducts consultations with persons detained by federal immigration authorities. I am in regular communication with attorneys and advocates who work with immigrant detainees, including asylum seekers who are awaiting credible fear interviews because they have expressed a fear of return to their home countries or an intent to apply for asylum before DHS, who have passed credible fear interviews and are in the process of applying for asylum before DHS, and asylum seekers and other immigrant detainees who are eligible for bond hearings.

**DHS Scheduling of Credible Fear Interviews for Detained Asylum Seekers**

7. One of the biggest problems with the expedited removal and credible fear processes is that they operate with very little accountability to ensure that CBP officers actually follow the written laws and procedures that they are required to follow. A series of well-known reports conducted by the United States Commission on International Religious Freedom in 1998, 2005, 2007 and 2016 found rampant failures by CBP officers to do things that they are required by regulation and agency policy to do, like accurately record statements made during the border screening and give individuals an opportunity to review forms before signing them. It is also important to acknowledge that DHS exercises tremendous power over individuals who are going through the expedited removal and credible

KOH DEC. - 4
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

1  fear process. If CBP officers fail to follow the law or even violate the
2  Constitution, individuals with expedited removal orders generally have very
3  limited recourse to seek judicial review in the federal courts.

8. Given the frequent failure of CBP officers to follow standards that they are required to follow, it is not surprising to me that there are significant delays in the scheduling of credible fear interviews after persons have expressed fear to CBP officers or requested asylum at or near the border.

9. In connection with the Clinic's work with detained asylum seekers in Orange County, it is common to hear of asylum seekers who have waited for longer than 10 days after requesting asylum or expressing fear of return to be scheduled for a credible fear interview. The waiting periods have varied over time, and it not clear what factors account for longer waiting periods. I have also had conversations with advocates and academics in other parts of the country that lead me to believe that the time period varies across the country.

10. Delays in scheduling credible fear interviews harm individuals with asylum claims in a number of ways. One problem is that delaying a person's credible fear interview permits DHS to continuing detaining the person. While they are waiting for their credible fear interview, the person's ability to seek release from detention is extremely limited. They cannot request parole from DHS, which allows DHS to release the person in DHS's discretion, pending an assessment of the person's identity and public safety concerns. A related problem is that when DHS does not promptly schedule people for credible fear interviews, those people are left in a

KOH DEC. - 5
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

state of uncertainty and confusion. Without a clear time requirement that DHS must follow, people seeking asylum cannot predict when they might be able to continue with their claims or how long they will be forced to stay in detention.

11. When people do not know when they will receive a credible fear interview, they become more vulnerable to a host of other factors. They are more likely to experience despair as to whether their claims will ever be fairly heard, especially since most people awaiting credible fear interviews do not have attorneys. They are more susceptible to rumors from officers at immigration detention facilities or other detainees, and these rumors can lead them to prematurely give up on their asylum claims. Given that significant numbers of people seeking asylum have already experienced severe trauma, delays and continued detention also tend to exacerbate the trauma they are already experiencing. This trauma can also lead people to give up on their cases, even if their claims to asylum are strong.

12. In the cases of parents separated by their children, delays in scheduling credible fear interviews appear to have contributed to delays in parents being reunified with their children. Although the government has been forced to cease the family separation policy, I do not know what additional policies DHS will introduce that are similarly designed to maximize the hardship and suffering of asylum seekers. Permitting DHS to continue with delays in the scheduling of credible fear interviews would likely enhance the cruelty of any future such policies.

KOH DEC. - 6
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

**DHS and DOJ Practice with Respect to Bond Hearings**

13. It is worth noting that detention is not the only option available to DHS to ensure appearance at future immigration court hearings. Individuals who have passed their credible fear interviews have already demonstrated that they have an incentive to appear for future court hearings because they have viable claims to asylum, withholding of removal or relief under the Convention Against Torture. Important alternatives to detention, such as supervised release and ankle bracelet monitoring, exist as well.

14. Because no existing statute, regulation or agency policy requires DHS to schedule a bond hearing for an individual who has passed their credible fear interview within a particular period of time, the time it takes for a person who has passed their credible fear interview to receive a bond hearing varies. In some cases, they may not receive a bond hearing at all. In general, individuals who have passed their credible fear interviews must wait longer than 7 days until they are scheduled for a bond hearing.

15. The bond process is extremely confusing for individuals who have passed their credible fear interviews. Assuming a person is scheduled for a bond hearing before an immigration judge, the burden is on the individual to prove that they are not a danger to the community and that they will appear for future court dates. An immigration judge's assessment of whether to release someone is highly discretionary, and depends in large part on the inclinations of the immigration judge as well as the DHS attorney assigned to the case.

KOH DEC. - 7
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

16. In part because judges are not required to prepare a written decision for later review, they are free to engage in a wide range of approaches to bond hearings. Every immigration judge seems to handle bond hearings in their own distinct manner. Some immigration judges defer heavily to the opinion of the DHS attorney. Some bond hearings are extremely informal. Many bond hearings are very fast, lasting a handful of minutes, if that. Some immigration judges routinely deny bond as a matter of course unless the individual has an attorney and meaningful evidence in support of bond. Other judges undertake their own scrutiny of the evidence submitted and will deny release or set a high bond even if the DHS attorney is willing to stipulate to a lower bond. Some judges conduct questioning of the individual in court, and after one or two questions draw sharp conclusions about the strength of the individual's asylum claim which they rely on as a basis for denying release or setting high bonds.

17. Because the bond process is highly discretionary, it is important in many cases that people seeking bond obtain documentary evidence to support their claims that they are not a danger to the community and will appear for future court dates. But the process of obtaining evidence in support of bond can be extremely difficult. Most people do not arrive at the U.S. border with extensive documentation in their possession. Instead, they must rely on either people in their home country or family members or friends living in the U.S. to provide them with supporting documents. In order to obtain those documents, people must be able to make telephone calls to communicate with their loved ones. Making telephone calls

KOH DEC. - 8
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

from immigration detention facilities is often extremely costly, and many detainees do not have the funds to make the necessary phone calls. When people do not have an attorney, the process is particularly difficult. When people seeking bond have the burden to obtain documents in support of their bond requests, their inability to obtain any or enough documentation can result in the denial of their request.

18. When asylum seekers are not scheduled for bond hearings in a timely manner, the uncertainty of not knowing whether they will receive a chance to request bond before an immigration judge carries its own harms. As with delays in scheduling credible fear interviews, the uncertainty creates more anxiety for people. For many individuals, the prospect of staying in detention longer causes them to give up on their claims to asylum altogether. For people who have already experienced trauma or persecution, the delays and uncertainty can cause great psychological and emotional harm. Simply knowing when a bond hearing will be scheduled provides a sense of expectation that prevents them from experiencing more mental trauma than necessary.

19. As noted, immigration judges typically do not prepare individualized explanations of the basis for bond, and bond hearings are often not recorded. The absence of a written or oral record creates serious obstacles to prevailing on bond appeals. It is already extremely difficult to prevail in a bond appeal because one must show either legal error or an abuse of discretion. Also, the nature of bond appeals is that the individual remains detained during the pendency of an appeal, thus making

KOH DEC. - 9
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

bond appeals time-sensitive as a practical matter. Without an oral recording or written explanation for the decision, the only person who can adequately handle a bond appeal is the attorney who was present in court during the initial bond hearing – if the person was represented by an attorney. For people who are *pro se*, the ability to raise a viable appeal depends on the person's ability to remember what the immigration judge said. Given language barriers, the anxiety associated with a bond hearing, and the trauma that many asylum seekers have experienced, it is entirely unrealistic to expect a *pro se* asylum seekers to accurately recall everything stated by an immigration judge during a bond hearing. Even in cases where a person was represented in the bond hearing and then subsequently represented on appeal by the same attorney, if the attorney did not take sufficient notes during the hearing, the basis for the appeal is very difficult to establish. But even in cases where there is an oral recording, the absence of a clear written explanation makes a timely bond appeal difficult. It takes time to order the recording of a court hearing, and bureaucratic delays in the immigration courts are common.

20. Once an immigration judges makes a decision in a bond hearing, it is difficult to convince the court to reconsider the decision. Detainees must show that "circumstances have changed materially since the prior bond redetermination," 8 C.F.R. § 1003.19(e). This is not an easy standard to meet. Obtaining evidence that arrived after the bond hearing may not justify a new hearing unless and until the immigration judge determines that the new evidence constitutes a material change

KOH DEC. - 10
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

in the person's circumstances. In other words, the change must be viewed as "material" in the judge's view in order for the person to receive a new bond hearing.

21. In sum, delays in scheduling individuals seeking asylum for credible fear interviews, delays in scheduling bond hearings for those who have passed credible fear interviews, and a failure by immigration judges to record bond hearings or prepare individualized decisions in bond hearings create a situation where DHS has an unfair advantage in continuing detention. Detention that is any longer than necessary discourages people from pursuing their right to seek asylum and imposes mental and psychological trauma.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct to the best of my knowledge and belief. Executed this 19th day of September 2018 in Irvine, California.

By: _____
Jennifer Lee Koh

KOH DEC. - 11
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611