The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Yolany PADILLA, *et al.*,<br><br>        Plaintiffs,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>        Defendants. | No. 18-cv-0928 MJP<br><br>**DECLARATION OF TAYLOR LEVY** |

I, Taylor Levy, hereby declare:

1. I am a law graduate and a fully accredited representative with the Department of Justice. My business address is 815 Myrtle Ave, El Paso, TX 79901

2. I have been practicing immigration law as an accredited representative with the Department of Justice since March of 2014. I am currently the legal coordinator for Annunciation House in El Paso, Texas. My practice primarily involves representing asylum seeking families in immigration court, removal defense, and representing crime victims with USCIS.

3. I have worked with migrants who have expressed a fear of return to their country of origin or an intention to apply for asylum to officials in the Department of Homeland Security and who are given credible fear interviews before an asylum

TAYLOR LEVY DEC. - 1
Case No. 2:18-cv-0928-MJP

officer since 2009, although only since 2014 as counsel.

4. I have been working with asylum seekers who have initially been found by the asylum office to have credible fear since 2014. I have also represented detained asylum seekers who have been found by an immigration judge to have a credible fear of return to their country of origin (after a negative credible fear determination by an asylum officer); and I also work with people who are representing themselves pro-se in front of the asylum office and during Immigration Judge review of a negative credible fear interview. I have also worked with many clients who entered the country without inspection, received a positive determination of credible fear and were eligible for bond with the Immigration Judge. While bond is not my primary area of representation, I have handled several bond hearings and often work with pro-se individuals or assist other attorneys with bond cases.

5. The asylum office virtually always fails to schedule credible fear interview within 10 days after people have requested asylum or expressed a fear of return. The longest time I have ever had a client wait for DHS to schedule a credible fear interview was around 60 days. The average amount of time that respondents have to wait for a credible fear interview is approximately 3-4 weeks. The harm that my clients face when they have to wait more than 10 days is hopelessness, detention fatigue, and deciding to give up on their claims because they feel like they cannot cope with the additional trauma of detention. Over the years, I have seen numerous pro se respondents tell me that they have decided to give up on their cases rather than wait weeks in detention for a credible fear interview.

6. When individuals are found to have a credible fear of return to their home countries, in my experience they almost always have to wait more than 7 days for a bond hearing. In El Paso, Sierra Blanca, and Otero, bond hearings are not automatically scheduled. Respondents must move the court for a bond hearing and they usually take between 4-6 weeks to be scheduled. Pro se respondents often do not know that they have to move for a bond hearing until their first Master Calendar Hearing, that is usually scheduled approximately 4 weeks after a positive fear determination. Therefore, the longest I have seen someone wait for a bond hearing following a positive credible fear determination is approximately 2 months.

7. When my clients have to wait more than seven days for a bond hearing, they experience hopelessness, detention fatigue, and sometimes a desire to give up on their cases. It is even harder for pro-se asylum seekers who lack counsel. Over the years, I have seen dozens of pro se respondents with positive fear determinations become so depressed from detention that they ask to be deported at their first Master Calendar Hearing rather than continue suffering in detention as they await their bond hearings.

8. I have had clients give up because they are depressed and hopeless from the pain of detention. For example, I had had a client claim fear and wait for approximately 8 weeks to get a credible fear interview. During this time, he was transferred from detention facilities 3 times, and eventually sent out of state. When he passed his credible fear interview, he was transferred once again and then waited another

TAYLOR LEVY DEC. - 3
Case No. 2:18-cv-0928-MJP

approximately 4 weeks for a bond hearing. The Immigration Judge denied bond despite this client having a very strong case. When the bond was denied, this client decided that he could no longer cope with the trauma of being detained and decided to give up his case and ask to be deported, despite having a very real fear of return complete with ample evidence of the danger he faced in his home country.

9. During bond hearings for individuals who pass credible fear proceedings the detained asylum seeker has the burden of proving eligibility for release from detention. Because DHS does not bear the burden on proof, the government has to do virtually nothing to secure a high bond where the asylum seeker with limited access to counsel, money, resources, internet, and telephones must produce evidence for the bond to be low enough to be feasibly paid. I have seen immigration judges deny release to an asylum seeker in this situation because he/she could not meet the burden of proof due to inability to gather evidence from detention. This seems to be particularly problematic with respondents who are poor and lacking the proper resources to secure documentation from their home countries.

10. To the best of my knowledge, I have never seen a bond hearing that was "on record" and neither recordings nor transcripts of the proceedings are made available. Bond hearings in our jurisdiction are almost always very quick, often approximately five minutes long, and there is no record or transcript. Bond hearings are rarely interpreted in their entirety for the respondent, with the

Immigration Judge and government attorneys communicating almost entirely with counsel without providing for interpretation.

11. My clients and I do not receive written bond decisions from immigration judges with particularized findings before they file an appeal with the Board of Immigration Appeals. The immigration judge issues a decision on the form entitled Custody Order of the Immigration Judge.

12. All of these things completely inhibit our ability to assess bond eligibility and the strength of the appeal and write a compelling brief of an appeal. It makes a bond decision virtually impossible to appeal for a pro-se respondent.

13. It also makes it extremely difficult to appeal a bond denial for a respondent who was represented by different counsel at the bond hearing since new counsel has almost no information available to understand why the original bond was denied. Since bond hearings are rarely interpreted in their entirety, the respondent often has little to no information about what occurred, other than that bond was denied. Likewise, there is no recording or transcript available. In my opinion, these practices make it easier for unscrupulous attorneys to prey on desperate detained respondents by presenting exceptionally-weak arguments and evidence for bond without fear of repercussions; since there is no recording or transcript of the bond hearing, it is near-impossible to launch a successful bar complaint against these individuals. This is a constant problem that I observe in the El Paso and Otero detention courts.

I declare under penalty of perjury of the laws of the State of Texas and the United

States that the foregoing is true and correct to the best of my knowledge and belief. Executed this nineteenth day of September 2018 in El Paso, TX.

By: _____
Taylor Levy