The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Yolany PADILLA, *et al.*,<br><br>                   Plaintiffs,<br><br>     v.<br><br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT, *et al.*,<br><br>                  Defendants. | No. 18-cv-0928 MJP<br><br>**DECLARATION OF<br>LAURA P. LUNN** |

I, Laura Patricia Lunn, hereby declare:

1.     I am an attorney licensed to practice law in the State of Oregon. My business address is: 3489 W. 72nd Avenue, Suite 211, Westminster, CO 80030. I am admitted to practice law in Oregon and Iowa.

2.     I graduated from law school in 2011 and passed the Iowa Bar that same year. Subsequent to law school I clerked with the Attorney General's Honors Program, Department of Justice, Executive Office for Immigration Review ("EOIR") at the El Paso, Texas Immigration Courts. Subsequent to my clerkship, I spent over two years in private immigration practice. In 2014 I became actively involved in legal advocacy in support of families detained in Artesia, New Mexico. I, along with other attorneys engaged in that representation project, was awarded the Oregon

LAURA P. LUNN DEC. - 1
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

AILA Pro Bono Award for 2015 as well as the 2015 AILA Michael Maggio Pro Bono Award.  Later, I served as the interim Managing Attorney at the CARA Pro Bono Project at the family detention center in Dilley, Texas. Currently, I am the Detention Program Managing Attorney for the Rocky Mountain Immigrant Advocacy Network ("RMIAN"). My practice primarily involves removal defense for individuals who are detained at the Aurora Immigration Court in Colorado, with a focus on representing respondents deemed to be mentally incompetent by the Immigration Court who are appointed counsel through the National Qualified Representative Program.

3.   I have extensive experience engaging with the expedited removal process in the United States. While I was clerking in El Paso, Texas from 2011–2013, the Immigration Judges began receiving referrals from the Houston Asylum Office to review negative determinations after a reasonable/credible fear interview. Additionally, the Court began receiving Notices to Appear from the Houston Asylum Office after an officer made a positive fear determination. As a result, I became very familiar with EOIR policies and procedures for processing cases referred to the Court by the Houston Asylum Office. Once I became a practicing immigration attorney, I began to represent clients in credible and reasonable fear proceedings as well as before EOIR after a negative determination from the Asylum Office. Through my family detention work, I have represented a high volume of families subject to expedited removal who articulated a fear of return to their home countries and requested the opportunity to present their fear-based

LAURA P. LUNN DEC. - 2
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

claims to asylum officers who work for the Department of Homeland Security.

Finally, through my current role, I provide legal representation and mentor other

attorneys who serve clients in credible/reasonable fear proceedings. At the Denver

Contract Detention Facility located in Aurora, Colorado, individuals frequently

wait well over 10 days before being scheduled for a credible fear interview. For

example, I recently represented multiple clients impacted by the family separation

policy who waited over a month before being scheduled for a credible fear

interview and RMIAN referred out many more similarly situated cases to pro bono

counsel. I have personally represented a client who waited approximately four

months from the time she entered the United States and the date the Department of

Homeland Security conducted her credible fear interview. During that time, my

client's mental health deteriorated so significantly that she was hospitalized.

Asylum seekers endure many layers of trauma before reaching the United States

and the experience of being detained – and the frequent separation from family

members – creates an additional hardship that is detrimental to the mental health of

RMIAN's clients. Furthermore, that same client seriously considered asking for

her deportation during the pendency of her case because she did not want to

continue being detained. She is just one of many who report symptoms of

depression, hopelessness, and the desire to waive one's legal rights due to the

extended length of detention they experience while waiting for the Department of

Homeland Security to process their cases.

4.    For almost five years I have engaged in direct representation of individuals

LAURA P. LUNN DEC. - 3
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

1    requesting bond redetermination hearings after a positive credible fear finding –

2    either from the Department of Homeland Security or after an Immigration Judge

3    vacated a negative determination from the Department.   I have personally

4    represented and served as the supervising attorney for dozens of asylum seekers

5    requesting release from detention on bond.

6

7    5.    It is common for individuals who receive a positive credible fear finding and are

8    served with a Notice to Appear to wait more than a month before receiving a bond

9    hearing. For example, I represented a man who waited over a month-and-a-half for

10    his credible fear interview and then, subsequent to the interview he waited over

11    two more months before he had a bond hearing. I obtained an independent doctor

12    who conducted a pro bono physical evaluation of the client and stated that he was

13    experienced irreversible physical harm due to the severity of his medical condition

14    and the length of detention hindering him from receiving adequate medical care. In

15    total, he was detained for over four months from the time he sought protection in

16    the United States and the date he was released from the Department of Homeland

17    Security's custody.

18

19    6.    I have offered to represent individuals who decide that they are unable to endure

20    the constraints of detention due to fear of its implications to their mental/physical

21    wellbeing as well as in situations where family members may be at risk of harm or

22    death. In these situations, people who have a profound fear of return to their home

23    countries waive their rights to seek asylum because their continued detention is

24    detrimental to their health and the wellbeing of their loved ones.

25

26

LAURA P. LUNN DEC. - 4
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

7.      Release on bond is crucial in many cases so that asylum seekers can reunify with

loved ones, access evidence crucial to the merits of their claims for asylum, and

maintain their health so that they can meaningfully participate in their defense

against deportation. Asylum seekers often have limited resources, which hinders

their ability to hire legal counsel to represent them in their bond proceedings. As a

result, asylum seekers – most of whom are recent arrivals to the United States and

frequently do not speak English – are responsible for preparing sophisticated

evidence packets in support of bond without assistance. When asylum seekers are

unable to meet their burden in bond proceedings, Immigration Judges deny release.

Under those circumstances, asylum seekers must move forward with representing

themselves in their full asylum cases. RMIAN devotes a great deal of resources

training and mentoring pro bono counsel so that they can offer representation to

asylum seekers in bond redetermination hearings, but our organization is rarely

able to provide a free attorney to each asylum seeker who needs one. As a result,

individuals are forced to move forward with their bond hearings without access to

counsel. If the government bore the burden of proof it is likely that more asylum

seekers would qualify for release from detention. Release means that asylum

seekers have access to community support, medical care, education, and eventually

will be eligible to obtain a work permit so that they can work in order to hire legal

counsel to represent them in their merits cases. Nationally, individuals in non-

detained courts have a much higher rate of legal representation, and in turn,

success in their removal proceedings than those who remain detained throughout

LAURA P. LUNN DEC. - 5
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

1   the duration of their proceedings.

2   I declare under penalty of perjury of the laws of the State of Colorado and the United

3   States that the foregoing is true and correct to the best of my knowledge and belief.  Executed

4   this 18th day of September 2018 in Westminster, Colorado.

5

6   By: _____

7   Laura Patricia Lunn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAURA P. LUNN DEC. - 6
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611