The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

Yolany PADILLA, *et al.*,

           Plaintiffs,

    v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

           Defendants.

No. 18-cv-0928 MJP

**DECLARATION OF JESSICA
SHULRUFF SCHNEIDER**

I, Jessica Shulruff Schneider, hereby declare:

1.     I am an attorney licensed to practice law in Florida. My business address is: 3000 Biscayne Blvd. Ste 400 Miami, FL 33137. I am admitted to practice law in Florida.

2.     I have been practicing immigration law for the past nine years. I am the director of the Detention Program at Americans for Immigrant Justice, a non-profit organization that protects and promotes the basic human rights of immigrants. My practice primarily involves supervising a team of attorneys and paralegals that regularly visit and represent immigrant detainees in the south Florida area.  The

JESSICA SHULRUFF SCHNEIDER DEC. - 1
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

detention program conducts Know Your Rights presentations, free legal screenings and representation of detained immigrants. On average, our team of attorneys advises around one-hundred detained immigrants per month. As director of the Detention Program I oversee this process. I also present at conferences regarding immigration laws and procedures and regularly provide training and technical assistance to other attorneys. I currently serve as a steering committee member of the Detention Watch Network and regularly engage in advocacy on detention related issues with advocates around the country.

3.      Throughout my many years of practice I have interviewed and advised hundreds of detained asylum seekers, many of them torture survivors, victims of domestic violence, sexual assault and human trafficking. I have represented detained asylum seekers who initially have been found by an asylum officer to have a credible fear of return to their country of origin.  Our detention program, under my direct supervision, regularly represents and provides pro se assistance to individuals who initially entered the country without inspection and who are eligible to seek a bond hearing before an immigration judge. Our attorneys regularly appear before the immigration courts at the Krome Service Processing Center and the Broward Transitional Center.

4.      In my experience, the asylum seekers described above regularly wait more than 7 days for a bond hearing.

5.      Asylum seekers experience great harm when they are required wait a long time for a bond hearing.  In general, it is difficult for clients or pro se asylum seekers to

JESSICA SHULRUFF SCHNEIDER DEC. - 2
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

establish eligibility for release. Often times, asylum seekers struggle to obtain the documentation required by the immigration judge to prove that they are not a flight risk. If asylum seekers do not have the benefit of an extensive support system outside of detention to assist them in gathering these essential documents, then they often are unable to provide requested evidence in support of their bond case.  As a result, many asylum seekers are unable to obtain release on bond and are forced to fight their asylum claim in detention.

6.   In the course of my work, I have witnessed many asylum seekers give up hope and abandon their asylum cases because they could not endure the hardship of prolonged detention.  I have witnessed the severe psychological and emotional impact that prolonged detention has on asylum seekers, particularly those who are survivors of trauma. Many of these asylum seekers suffer from Post-Traumatic Stress Disorder that is then exacerbated by prolonged detention. I have witnessed several asylum seekers who have suffered mental health breakdowns, depression and anxiety so severe that they required acute psychological treatment and were transferred to a mental health facility as a result. In a specific instance, I had a client who was an asylum seeker and had been in ICE custody for close to a year. When I first met this client, she was intelligent and articulate. However, over the course of her many months of detention her mental health declined so rapidly that she was transferred to a mental health facility on several occasions. She was placed on a cocktail of heavy medications, including psychotropic drugs, which rendered her speech practically incoherent and severely interfered with my client's ability to testify in court and

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

assist me in her own defense.  This one case exemplifies the severe consequences that can occur when asylum seekers are unable to obtain a bond and are forced to endure months of prolonged detention.

7.    During bond hearings for individuals who pass credible fear proceedings the detained asylum seeker has the burden of proving eligibility for release from detention. Often times, the onus of obtaining proof that the asylum seeker is not a flight risk or danger to the community proves to be an insurmountable task. Asylum seekers are completely reliant on others outside of detention to assist them in obtaining these important documents as they normally require documentation and support letters from family members or friends. An asylum seeker's ability to obtain documentation is severely limited by their detention. Detained asylum seekers often struggle to pay for the expensive telephone calls that are required to coordinate the preparation of the documents. These challenges often result in the inability of the asylum seeker to obtain the required evidence to obtain a bond. At the Broward Transitional Center, immigration judges regularly deny release to asylum seekers in this situation because they could not meet the burden of proof due to inability to gather evidence from detention.  In my opinion, the immigration judge be more likely to order release if the government bore the burden of proof. The government is much better situated to obtain evidence to demonstrate that the asylum seeker is a flight risk or danger to the community.

8.    Bond hearings for individuals who pass credible fear proceedings are not recorded and as a result a transcript is normally not available.

JESSICA SHULRUFF SCHNEIDER DEC. - 4
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

9.      Normally our clients do not receive written bond decisions from immigration judges with particularized findings before they file an appeal with the Board of Immigration Appeals.  The immigration judge normally issues a decision on the form, entitled Custody Order of the Immigration Judge and briefly states a generalized finding such as "poor bail risk".

10.     In my experience, asylum seekers, particularly pro se applicants, are often times completely unaware of the underlying reasons for the bond denial and as a result are unable to articulate arguments in the appellate process. The lack of a written decision with individualized findings renders the appellate process very challenging. The lack of a written decision with individualized findings impedes the ability to assess bond eligibility, strength of the bond appeal, and the ability to write a compelling brief on appeal of the denial of bond. Bond hearings not being recorded/transcribed further compounds these challenges.

JESSICA SHULRUFF SCHNEIDER DEC. - 5
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611

1    I declare under penalty of perjury of the laws of the State of Florida and the United

2    States that the foregoing is true and correct to the best of my knowledge and belief.  Executed

3    this 19th day of September 2018 in Miami, Florida.

4                                By:    _____

5                                       Jessica Shulruff Schneider

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JESSICA SHULRUFF SCHNEIDER DEC. - 6
Case No. 2:18-cv-0928-MJP

NORTHWEST IMMIGRANT
RIGHTS PROJECT
615 Second Ave., Ste. 400
Seattle, WA 98104
Telephone (206) 957- 8611