UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, *et al.*, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 18-cv-00928-MJP |
| | ) |
| KIRSTJEN M. NIELSEN, et al. | ) |
| | ) |
| Respondents. | ) |

## DECLARATION OF AARON A. HULL

Pursuant to 28 U.S.C. § 1746, I, Aaron Hull, declare as follows:

(1) I am the Chief Patrol Agent, El Paso Sector, United States Border Patrol (USBP). I have held this position since December 2017. I lead almost 2400 agents and professional staff, and am responsible for border security along 264 miles of international boundary between the ports of entry in New Mexico and Far West Texas. El Paso Sector agents operate eleven stations, six permanent checkpoints, and three forward operating bases. El Paso Sector agents also perform a variety of special operations and specialty assignments that include canine units, horse patrol, all-terrain vehicles, bike patrol, prosecutions, intelligence, international liaison, Border Patrol Tactical Unit (BORTAC) and Border Patrol Search, Trauma and Rescue (BORSTAR).

I have over 18 years of progressive USBP supervisory and leadership experience. I have worked in all four Southwest Border states, on the Northern Border, and at USBP Headquarters in Washington, DC. I entered on duty as a Border Patrol agent in April 1996, at Temecula Station, San Diego Sector. In November 1999, I was promoted to Senior Patrol Agent at Douglas Station, Tucson Sector. I was subsequently promoted to Supervisory Border Patrol Agent in August 2000, and Field Operations Supervisor in June 2003, also at Douglas Station.

In June 2006, I was promoted to Assistant Chief at USBP Headquarters, where I served in the Intelligence Division and as the USBP liaison to the U.S. Customs and Border Protection (CBP) Office of Internal Affairs. In July 2008, I was promoted to Associate Chief of the Policy Branch in the Strategic Planning, Policy and Analysis Division. In that capacity, I served as the USBP's primary subject matter expert in reviewing, drafting, and negotiating national policies and

1

directives. During this tour of duty, I was temporarily assigned to Blaine Sector as the Acting Deputy Chief Patrol Agent, from December 2010 to April 2011.

In January 2012, I left USBP Headquarters to serve as the Patrol Agent in Charge of Santa Teresa Station, El Paso Sector. I held this position until January 2015, when I entered the ranks of the Senior Executive Service as Deputy Chief of the Law Enforcement Operations Directorate at USBP Headquarters in Washington, DC. In this position, I oversaw all USBP operational specialty programs, including canine, horse patrol, all-terrain vehicles, foreign operations, special operations, alien processing and removal initiatives, and liaison with other DHS and DOD components. I served in this role until December 2017, when I entered on duty in my current position.

Prior to joining USBP, I served as a commissioned officer in the U.S. Army Reserve. I hold a Bachelor of Science in Agricultural Economics and Agricultural Business from New Mexico State University and a Master of Agribusiness Management from Mississippi State University.

(2) I make this declaration on the basis of my own knowledge, as well as the documents and information made available to me in my position.

(3) CBP is a federal law enforcement agency within the U.S. Department of Homeland Security ("DHS"). It is comprised of Air and Marine Operations (AMO), Office of Field Operations (OFO), and USBP.

(4) I am familiar with the policies and procedures that govern the apprehension, processing, temporary short-term holding, and prosecution of illegal aliens by USBP. As a Chief Patrol Agent, I am responsible for ensuring that those policies and procedures are communicated to the agents, overseen by the supervisors, and implemented within El Paso Sector.

(5) USBP is comprised of 20 sectors. The USBP mission is to detect and prevent illegal aliens, contraband, terrorists, and terrorist weapons from entering the United States between the ports of entry (POEs), and prevent illegal trafficking of people and contraband.

(6) USBP patrols the United States' border between ports of entry (POEs), which are operated by OFO. This area includes approximately 1,989 miles of international border between the United States and Mexico, 3,987 miles of international border between the U.S. and Canada (excluding Alaska). Additionally, USBP patrols 2,684 miles of marine border. USBP has developed a layered approach to border security that involves law enforcement activities both directly at the border as well as enforcement activities inland from the border consistent with federal law and DHS and CBP policy.

(7) Individuals seeking to enter the United States are required by law to present themselves at a POE for an immigration and customs inspection. If an individual tries to cross into the United States between the POEs without submitting to an immigration and customs inspection, they have violated federal law, including 8 U.S.C. § 1325(a), and are subject to prosecution for this violation.

(8) USBP agents arrest aliens who have entered or remain in the United States illegally. So far, in FY 2018, USBP agents have apprehended over 361,993 aliens. Once arrested, aliens are then transported to USBP stations located within each sector for processing. During processing, agents will attempt to learn information about the alien, including name, country of origin, and criminal history. In certain cases, agents may recommend the prosecution of these aliens for illegally entering the United States or committing other violations of federal law; and the aliens are transferred to the custody of a state, local, or federal agency for criminal prosecution if prosecution is accepted. In other cases, the aliens will be referred to U.S. Immigration and Customs Enforcement (ICE) for removal from the United States or other appropriate action.

(9) USBP does not operate detention facilities. USBP stations are used only for the short-term holding of individuals while they are processed for violations of immigration and criminal law. Once processing is completed, aliens are transferred to ICE or the U.S. Department of Health and Human Services (HHS) for detention, repatriation to another country, or release.

(10) Aliens will stay in USBP custody until they are processed, and either ICE or another appropriate agency is able to take custody of them.

(11) An alien's time in USBP custody may depend upon a number of factors that vary by sector, station, and individual. For example, USBP sectors may encounter a sudden influx in illegal crossings due to factors beyond their control, such as political unrest in other countries, natural disasters, sudden changes in economic conditions, perceived lack of consequences for their illegal entry, or relatives illegally in the U.S. sponsoring an illegal smuggling scheme. When such an influx occurs, processing times may be longer. Additionally, USBP has no control over the population it encounters. If USBP agents apprehend particularly vulnerable populations, such as children, processing times may also increase, due to time in custody limitations imposed by the Flores Settlement Agreement (FSA) and corresponding prioritization of the processing of children. Conversely, if agents apprehend particularly high-risk individuals, such as narcotic smugglers or criminal aliens with a history of serious felonies or sexual abuse, processing times may increase as such high-risk individuals are processed and transferred from USBP custody. Finally, an alien's medical circumstances may prolong their time in custody if, for example, they require emergency medical care, including a short to long-term hospital stay. These aliens are referred to hospitals for treatment and would generally be transferred to another agency's custody upon their release from the hospital.

(12) Aliens arrested by USBP may claim a fear of return to their country of origin. If during processing an alien makes a fear claim, the agent will document the claim in the electronic system of record and refer the individual for an interview with U.S. Citizenship and Immigration Services (USCIS). USBP agents do not conduct these interviews, analyze validity, or weigh the strength of a claim of fear to return to their country of origin.

(13) USBP uses the e3 system as the electronic system of record to track information about individuals within its custody. USBP agents use the e3 for all alien processing and casework such as Expedited Removal and Notice to Appear.

(14) During processing, USBP will complete a Form I-213 (Record of Deportable/Inadmissible Alien), which summarizes the case, documents the basis for removability, and outlines the alien's criminal and immigration history.

(15) When processing an alien, USBP's standard practice is to present the alien with a Form I-826 (Notice of Rights and Request for Disposition). Aliens who read and speak Spanish are provided with the Spanish language version of Form I-826. For aliens that do not speak or read English or Spanish, USBP agents use contracted translation services to ensure that the aliens comprehend the processing documents in a language they can understand.

(16) With respect to the Form I-826, if an alien requests a hearing before an immigration judge (box 1) or expresses a fear of return to country of origin (box 2), the alien will be processed for a Notice to Appear. If, however, an alien requests to receive a voluntary return (box 3), the alien will be processed accordingly and may be granted a voluntary return to their country of origin. In all cases, USBP ensures that the individual signs the Form I-826 after one of the three boxes is checked, or annotates the form to indicate the individual has refused to sign the form. The USBP agent then completes the certificate of service section of the same form.

(17) In the case of aliens processed for Expedited Removal, agents are required to ask the aliens if they have a fear of harm or persecution if returned to their country of citizenship.

(18) Regardless of the processing disposition, aliens always retain their right to claim a fear of harm or persecution if returned to their country of citizenship and be referred to USCIS.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is based on facts personally known by me, as well as my review of all available information, and all true and correct to the best of my knowledge and belief.

Executed this 21st day of September, 2018.

_____
Aaron A. Hull
Chief Patrol Agent
El Paso Sector
U.S. Border Patrol

4