UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, *et al.*, | ) |
| Petitioner, | ) |
| v. | ) No. 18-cv-00928-MJP |
| KIRSTJEN M. NIELSEN, et al. | ) |
| Respondents. | ) |

## DECLARATION OF SIDNEY K. AKI

Pursuant to 28 U.S.C. § 1746, I, Sidney K. Aki, declare as follows:

(1) I am the Port Director of the Port of San Ysidro, California. I have been in this position since May 2013. Prior to this position, I was the Port Director of the Port of Laredo, Texas beginning in July 2011. I was also the Acting Port Director at the J.F.K. International Airport, in New York, New York. I was also the Acting Director of Field Operations for the Field Office in Miami, Florida and Tampa, Florida. I have also held leadership positions in the Field Office in Detroit, Michigan, and as the Port Director for the Detroit Metropolitan Airport. I began my career as an inspector with the legacy U.S. Immigration and Naturalization Service at the Calexico Port of Entry, in Calexico, California.

(2) I have personal knowledge of the matters discussed in this Declaration as well as the documents and information made available to me in my position. If called to do so, I could testify competently to these matters.

(3) I am familiar with the policies and procedures that govern the apprehension, processing, and temporary detention of aliens at the ports of entry ("POEs"). As Port Director at the San Ysidro POE, I am responsible for ensuring that those policies and procedures are communicated to and implemented by U.S. Customs and Border Protection Officers ("CBPOs") and overseen by their supervisors.

(4) U.S. Customs and Border Protection ("CBP") is a federal law enforcement agency within the U.S. Department of Homeland Security ("DHS"). CBP is comprised of the U.S. Border Patrol,

1

the Office of Field Operations, Air and Marine Operations, Office of Trade, and mission support offices.

(5) All individuals who seek to enter the United States are subject to an immigration and customs inspection to ensure that they have a lawful basis to enter the United States and are not introducing contraband or other threats into the United States. CBPOs generally conduct these inspections at POEs, which are physical sites/facilities at which travelers seek to enter the United States.

(6) Operations at POEs vary depending upon a number of factors, including the POE's location, size, and nearby infrastructure. For example, CBP operates land POEs, sea POEs, and air POEs. Land POEs typically process travelers arriving by vehicle or foot and also process commercial shipments that cross by land. Sea POEs typically process travelers arriving in the United States by boat as well as cargo shipments arriving by boat. Air POEs process travelers arriving by air as well as air shipments of cargo. The travel population will vary widely based upon the type of port, and CBPOs are trained to address the typical populations they serve. POEs also vary widely by size and nearby infrastructure. Some POEs are large and centered at major land, sea, or air transportation hubs. Others are small and operate in remote rural areas. Thus, the operations at each POE will vary based upon the unique local conditions.

(7) POEs typically differentiate between a "primary inspection" area and a "secondary inspection" area. If a CBPO can conclude during the primary inspection that the traveler is compliant with all applicable laws, regulations, and rules, the traveler is allowed to proceed to enter the country. However, if a CBPO concludes that either more information is necessary to determine whether a traveler can enter the U.S., or suspects the traveler may be attempting to smuggle contraband or concealed persons into the U.S., or potentially pose a threat to the U.S., the traveler will be referred to secondary inspection. During the secondary inspection, CBPOs will conduct a more in-depth inspection of the traveler and his or her effects.

(8) Generally, an alien who is arriving in the United States and deemed to be inadmissible pursuant to INA § 212(a)(6)(C) or 212(a)(7) may alternatively be processed for expedited removal pursuant to INA § 235(b)(1), or be placed in removal proceedings pursuant to INA § 240, or allowed to withdraw their application for admission in lieu of formal removal proceedings.

(9) There are certain scenarios where an alien ordered removed pursuant to INA § 235(b)(1) is not immediately removed from the United States. One of those scenarios is when such an alien indicates either an intention to apply for asylum under INA § 208 or a fear to return to their country of origin. The alien is not immediately removed from the United States and is instead transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE"). There, the alien will be interviewed by a U.S. Citizenship and Immigration Services ("CIS") asylum officer, as required by INA § 235(b)(1)(A)(ii) and 235(b)(1)(B)(i). CBP does not have asylum officers, and CIS asylum officers do not conduct their interviews at any POEs.

(10) Where an alien is placed in removal proceedings pursuant to INA § 240, he or she, too, will be transferred to the custody of ICE, or if the alien is paroled to be seen by the Immigration

Judge at a later date, they would then have the ability to present their claim during the removal proceedings in front of an Immigration Judge.

(11) POEs are not designed as detention facilities, and they do not accommodate the long-term holding of individuals. POEs only hold individuals for a limited period until they can be admitted into the United States, transferred to a federal, state, or local agency for criminal proceedings, transferred to ICE for administrative proceedings, or repatriated to another country. As a general guide, CBP tries to move travelers out of its POEs within 72 hours of the completion of processing.

(12) How quickly individuals are released or otherwise moved from POEs is dependent upon a number of factors. Principally, in cases where CBP is turning individuals over to other agencies—whether for criminal or administrative proceedings—CBP has no control over how quickly those other agencies actually take custody. This factor cannot be overemphasized, and is compounded by the fact that CBP also has no control over the number and types of travelers it encounters. For instance, in the past, the San Ysidro POE has experienced significant influxes of arriving aliens seeking asylum. By regulation, such aliens are to be detained pending a credible fear determination. Therefore, CBP must maintain custody of such aliens until ICE is ready and able to do so. At times, this has taken longer than 72 hours. There are also various less prevalent reasons that any given individual may end up being in CBP custody for longer than 72 hours. For example, in some cases CBP cannot complete a secondary inspection until it procures the services of hard-to-find translators for obscure foreign languages. As another example, in some cases, individuals need medical attention. CBP will transport such individuals to medical facilities, stay with them there until they have received the appropriate treatment, and then transport them back to the POE to finish their processing.

(13) Coordinating the transfer of custody of an alien from CBP at the San Ysidro POE to ICE is a multi-step process. First, CBP must request bed space from ICE. Once ICE indicates that space is available to detain the alien, CBP must make arrangements with ICE for the transportation of the alien to ICE custody. This transportation is accomplished either by a CBPO or a contract transportation provider (e.g., Spectrum, La Salle, Core Civic). Finally, once the method of transportation is secured, the alien is then transported to ICE custody. However, transportation is generally restricted to a certain time range when ICE Enforcement and Removal Officers have available transportation resources to perform the movement. Due to this circumstance, aliens who arrive at the POE on one day may not be transported to ICE custody until a future date.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is based on facts personally known by me, as well as my review of all available information, and all true and correct to the best of my knowledge and belief.

Executed this 24TH day of September, 2018.

_____
Sidney K. Aki
Port Director
Port of San Ysidro
U.S. Customs and Border Protection