The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, et al., <br><br> Plaintiffs-Petitioners, <br><br> vs. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*, <br><br> Defendants-Respondents. | Case No. 2:18-cv-00928-MJP <br><br><br> DECLARATION OF JOHN L. LAFFERTY |

I, John L. Lafferty, declare as follows:

1. I am the Chief of the Asylum Division within U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS). I make this declaration based on my personal knowledge and my review of official documents and records maintained by USCIS. If called to testify, I could and would do so competently.

2. I have held this position in the Asylum Division since June 30, 2013.

   The Asylum Division is a component of USCIS in the Refugee, Asylum and International Operations Directorate that:

   (1) adjudicates applications for asylum pursuant to 8 U.S.C. § 1158 (including applications by unaccompanied alien children (UACs) for which the Asylum Division has original jurisdiction pursuant to 8 U.S.C. § 1158(b)(3)(C));

   (2) conducts screening determinations regarding whether particular individuals have a credible fear of persecution or torture upon return to their countries of origin pursuant to 8 U.S.C. § 1225(b)(2)(B) and the regulations at 8 C.F.R. § 208.30;

   (3) conducts screening determinations regarding whether particular individuals have a reasonable fear of persecution or torture pursuant to the regulations at 8 C.F.R. § 208.31; and

   (4) adjudicates applications for relief under section 203 of the Nicaraguan Adjustment and Central American Relief Act (NACARA), enacted as title 2 of Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997) (as amended by Technical Corrections to the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-139, 111 Stat. 2644 (1997)).

3. The Asylum Division oversees eight Asylum Offices located in New York, NY; Lyndhurst, NJ; Arlington, VA; Miami, FL; Chicago, IL; Houston, TX; Los Angeles, CA; and San Francisco, CA., and three sub or ancillary offices in Boston, MA., New Orleans, LA., and Arlington, VA.

4. The Asylum Division is composed of a cadre of specially trained adjudicators known as Asylum Officers. There are approximately 530 Asylum Officers presently on

board in the Asylum Division. By statute and regulation, Asylum Officers must receive training on international human rights law, non-adversarial interview techniques, and country conditions information. See 8 U.S.C. § 1225(b)(1)(E); 8 C.F.R. § 208.1(b). It takes between three and nine months to get a new selectee on board, and then between two and four months to get the person trained once they have joined the asylum office.

5. USCIS asylum officers conduct credible fear screenings on individuals pursuant to the expedited removal statutory requirements at 8 U.S.C. § 1225(b)(1)(A). These individuals are subject to expedited removal and indicate an intention to apply for asylum, assert a fear of persecution or torture, or a fear of return to his or her country and are subsequently referred to USCIS for a credible fear screening. In order for an asylum office to have jurisdiction over an alien in the expedited removal process, the alien must have sought admission to the U.S. either through misrepresentation or without documentation, and either expressed a fear of return or was unable to communicate with the Inspector. The asylum office has jurisdiction to conduct a credible fear interview after receiving correct and completed copies of the following documents from ICE or CBP:

- Form I-867, Parts A&B
- Form I-860 – only for an alien in expedited removal
- Form M-444, signed and dated by the alien, or with a notation that the alien refused to sign.

6. Form I-860 lists the charges of inadmissibility for an alien in expedited removal, and Form I-867, Parts A&B is the sworn statement taken by an Inspector that contains some expression of an alien's fear of return, or refusal/inability to communicate with an Inspector. The M-444, signed by the alien or with a notation that the alien refused to sign, indicates that the alien was apprised of his or her rights under the credible fear process, including the right to a rest period after apprehension and consultation with family members, friends, or other representatives (e.g. accredited representatives or attorneys). These documents are normally scanned and sent to USCIS as attachments to a

centralized e-mail box established by each Asylum Office. Designated employees at the Asylum Office will open and review the e-mail and attachments to determine if all the required documents have been received for a proper credible fear referral. Once these documents have been received, USCIS begins the steps to schedule the alien for a credible fear screening interview.

7. A credible fear screening includes an interview conducted in person or telephonically by a specially trained asylum officer to determine whether the individual can demonstrate credible fear of persecution or torture. *See generally* 8 C.F.R. § 208.30. Credible fear of persecution is defined at 8 U.S.C. § 1225(b)(1)(B)(v) as: "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]."

8. Various issues can arise that impact how long it takes to schedule and conduct a credible fear interview and complete a credible fear screening once the complete referral is received from CBP/ICE. A non-exhaustive list of the issues that can cause delays in credible fear screenings after referral include:

    a. When an applicant requests more time to obtain an attorney or consultant prior to the credible fear interview.

    b. If an applicant's attorney or consultant is unavailable at the time a credible fear is scheduled for, often resulting in that interview being rescheduled to a later date.

    c. Asylum Offices uses contracted interpreters to conduct credible fear interviews. The Asylum Division contracts with interpretation services companies to provide direct interpretation. In FY 2018, interpreters provided interpretation in approximately 50 languages. At times it can be difficult to obtain an interpreter due to interpreter availability (for languages for which there are a limited number of interpreters) or when there is an influx of individuals speaking a particular language. For example, the Asylum

Division recently received a number of credible fear referrals for Punjabi speakers and credible fear interviews were delayed while offices shared interpreters.

d. Due to competing priorities, there are times where an asylum officer is unavailable, thereby delaying the credible fear interviews. An example of this is where reasonable fear screenings have had to be prioritized due the regulatory time frame for such adjudications at 8 C.F.R. § 208.31(b).

e. Another example is due to the influx of credible fear referrals from ICE to the Asylum Division. . This occurs when ICE transfers a large group of individuals to a detention facility at one time and they all express a fear of return. This results in delays for credible fear interview scheduling and processing as the Asylum Division works through the surge of referrals.

f. Detained applicants are prioritized over non-detained applicants in order to attempt to limit the length of time individuals remain in detention. As such, non-detained applicants may have their credible fear interviews delayed.

g. Applicants may be detained in a Bureau of Prisons facility or other facility that ICE does not normally use for individuals in the credible fear process.

h. Some detention facilities have limited phone lines available for telephonic interviews at the facility as well as limited interview space. This lack of telephones or interview rooms can cause delays in credible fear interviews.

i. Credible fear interviews have been delayed where there are detention facility security or other issues (for example, where a facility has been on lockdown or closed due to a weather or other emergency).

j. An asylum office may also be closed due to weather or other emergencies resulting in delays to credible fear interviews.

k. There are times where an individual is transferred to a different facility after referral due to detention space needs, resulting in interview delays.

l.  When an individual has been prosecuted criminally ICE transfers the individual to U.S. Marshals custody. Once such a transfer occurs, the credible fear interview is postponed until the individual is returned to ICE custody.

m.  Medical issues may also cause a delay. For example, there may be a quarantine at a detention facility or a particular applicant may have a medical or potential psychiatric condition that requires treatment or isolation prior to conducting a credible fear interview.

n.  Pursuant to the regulation at 8 C.F.R. § 208.6(a), information contained in any credible fear determination is confidential and protected from disclosure to a third party. Some detention facilities lack sufficient confidential interview space separate and apart from other detainees or other individuals without-a-need to know. Due to the confidentiality requirements in credible fear determinations, the lack of a confidential interview space can result in delays in credible fear interviews.

I declare, under penalty of perjury under the laws of the State of Washington and the United States, that the foregoing is true and accurate to the best of my knowledge.

Executed this 24th day of September, 2018, in Washington, DC.

_____
JOHN L. LAFFERTY
Chief, Asylum Division
US Citizenship and Immigration Services