UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, *et al.*, <br><br> Petitioner, <br><br> v. <br><br> KIRSTJEN M. NIELSEN, et al. <br><br><br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 18-cv-00928-MJP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DECLARATION OF DAVID W. JENNINGS

I, David W. Jennings, for my declaration pursuant to 28 U.S.C. § 1746, hereby state and depose as follows, based on my personal knowledge and information provided to me in the course of my official duties:

1. I am currently serving as the Acting Assistant Director (AD), Field Operations, Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS), a position I have held since April 2018. In this capacity, I oversee, direct, and coordinate field operations in 24 ERO field offices.

2. Previously, I was the Acting Deputy Assistant Director (DAD), Western Operations for ERO, a position I held from October 2017 to March 2018.

3. In June 2016, I was named Field Office Director for the San Francisco Field Office. I served as the Field Office Director for the Los Angeles Field Office from June 2014 until June 2016 and as the Houston Field Office Director from May 2012 to June 2014.

1

4. I am writing this declaration to support the motion filed by the Government in opposition to class certification in the matter of *Padilla et al. v. U.S. Immigration and Customs Enforcement et al.,* No. 18-928 (W.D. Wash. filed July 15, 2018). By this declaration I seek to address the procedures that make up the U.S. Immigration and Custom Enforcement (ICE) credible fear referral process with respect to the named Plaintiffs in this matter and the process as it occurs across the country generally.

5. This declaration is based on personal knowledge and information made known to me in the course of my professional duties.

6. I understand that the named plaintiffs allege, among other things, that under the zero-tolerance policy ICE is intentionally delaying credible fear interviews and subsequent custody redetermination hearings for those with positive credible fear determinations as a deterrent to asylum seekers entering the United States.

7. ICE and U.S. Customs and Border Protection (CBP) routinely refer aliens who are encountered and express fear of return to their home countries to United States Citizenship and Immigration Service (USCIS) for credible fear interviews. The credible fear referral process requires ICE, CBP, and USCIS to work together to ensure that the alien is properly processed and brought before an immigration judge if USCIS finds that the alien has established a credible fear.

8. The process of referring an alien begins when a fear of return has been expressed, whether that be when the alien is encountered by CBP at a port of entry or between the ports of entry, or when transferred to the custody of ICE Enforcement and Removal Operations (ERO) for further processing. Several forms make up the credible fear referral packet that is sent to USCIS, including Forms I-296, I-860 Notice & Order of Expedited Removal, I-867A, I-867B and M-444 Information About Credible Fear Interview.

9. The number of undocumented aliens encountered by ICE who express fear varies from region to region and may fluctuate due to external factors such as those set forth below. The number of referrals required, and other logistical considerations may delay the referral of an individual credible fear case. Some instances encountered by ICE are articulated herein.

10. In 2018, as a result of new enforcement initiatives at the southern border, ICE experienced an influx of adult aliens entering its custody after apprehension by CBP and referral for prosecution by the U.S. Department of Justice. ICE's regular means of absorbing an increase in its adult detention population—including the use of bed space at U.S. Marshals Service (USMS) facilities near the border and the negotiation of new Intergovernmental Service Agreements with state and local jails—were overwhelmed. The USMS facilities had little availability, as they were housing adult aliens pending their prosecution, and the negotiation of a new detention contract can take months to complete. To accommodate the influx, therefore, ICE relied instead on a federal partner and entered into Inter-Agency Agreements (IAAs) to use bed space at five new Bureau of Prisons (BOP) facilities, including the Victorville Federal Correctional Institution ("Victorville" or "FCI Victorville") and the Federal Detention Center SeaTac ("SeaTac"). ICE intended to use these BOP facilities to meet its immediate need to house detainees for short periods of time until the detainees could be removed, transferred to an established ICE detention facility, or released. ICE intended to use these facilities for approximately 120 days while it secured additional bed space elsewhere. In keeping with this intent, ICE temporarily transferred aliens into the BOP facilities. ICE is no longer housing *any* detainees at Victorville. And with respect to the other four BOP facilities it entered in 2018, ICE now has zero detainees at one, and fewer than 100 detainees total in the remaining three.

11.     As its detainees began to enter the BOP facilities in summer 2018, ICE worked with BOP to ensure that ICE detainees would have consular and attorney access and appropriate medical care while at BOP facilities.  However, because these facilities had not been used to house immigration detainees before, they did not have established procedures—or in some cases, appropriate physical space—for USCIS to conduct credible fear interviews onsite.  Therefore, ERO officers had to prepare credible fear referrals on a rolling basis and transfer aliens to other facilities for interviews. In addition to the challenges posed by the influx of adult aliens into ICE custody and their rapid transfer into new facilities, ICE ERO was in some cases hindered by court order from proceeding with credible fear processing.  On June 21, 2018, the U.S. District Court for the Central District of California entered a temporary restraining order (TRO) mandating that ICE and the U.S. government defendants "shall not proceed with the immigration proceedings of immigration detainees at FCI Victorville" until the detainees had an opportunity to consult with an attorney or attend a "know your rights" presentation.  *Rodriguez Castillo v. Nielsen*, No. 5:18-cv-01317 (C.D. Cal. filed June 19, 2018).  ICE understood this order to encompass the credible fear process as well as traditional removal proceedings under Section 240 of the Immigration and Nationality Act (INA), and therefore suspended the credible fear process for hundreds of individual aliens pending their consultation with an attorney or an immigration legal services provider and/or attendance at a "know your rights" presentation.  That said, ICE ERO continued to work diligently to comply with the TRO and complete the credible fear referrals at Victorville and elsewhere as quickly as possible under the circumstances.

12.     There may also be occasions when an alien's medical needs prevent the referral of a credible fear packet until after Plaintiffs' requested time frame has elapsed.  If an alien needs

4

medical treatment, the wellbeing of the alien will supersede any deadline for the filing of a referral packet.

### Plaintiff Velazquez

15.     On or about May 31, 2018, CBP apprehended Plaintiff Velasquez near San Ysidro, California.  At that time, he claimed fear of return to his home country.

16.     According to ICE records, ICE took custody of Velazquez on June 6, 2018.  Two days later, he was transferred to FCI Victorville, which began holding immigration detainees on June 6, 2018.

17.     On or about June 8, 2018, ICE ERO began transferring detainees out of FCI Victorville and placing them in the nearby Adelanto ICE Processing Center (AIPC or Adelanto).  As noted earlier, ICE faced a lawsuit alleging that detainees at FCI Victorville did not have sufficient access to legal counsel.

18.     In that case, on June 21, 2018, the United States District Court for the Central District of California issued a Temporary Restraining Order in the case of *Rodriguez Castillo v. Nielsen*, No. 18-cv-01317 (C.D. Cal. filed June 19, 2018), which limited ICE's ability to proceed with immigration proceedings for some detainees at FCI Victorville.

19.     On July 20, 2018, ERO transferred Plaintiff Velasquez to AIPC, and his case was referred to USCIS shortly thereafter.

20.     On August 2, 2018, after conducting a credible fear interview, USCIS issued a positive credible fear determination, and Plaintiff Velasquez's case was referred to the Executive Office for Immigration Review (EOIR) for a bond hearing and removal proceedings.

**Plaintiffs Padilla, Guzman and Orantes**

21.     The cases of named Plaintiffs Padilla, Guzman and Orantes presented similar situational and logistical difficulties for ICE in the processing of their credible fear referral.  Plaintiffs Padilla, Guzman and Orantes were encountered by CBP in Texas in May 2018. At the time of apprehension, all Plaintiffs were accompanied by alien minors. All Plaintiffs were referred for criminal prosecution for illegal entry into the United States.

22.     Aliens detained by ICE in the Seattle AOR are normally housed at the Northwest Detention Center (NWDC), a dedicated ICE detention facility in Tacoma, Washington. Credible fear interviews for detainees housed at the NWDC are conducted at the facility by USCIS.

23.     As discussed earlier, in June 2018, ICE ERO faced an influx of adult aliens entering its custody at the southern border after apprehension by CBP.  ICE ERO transferred many of these recent arrivals to SeaTac and other BOP facilities while additional dedicated ICE bed space could be obtained.

24.     SeaTac began housing ICE detainees on June 2, 2018.  SeaTac is a BOP facility that ICE has used in the past, but not in recent years, to house its immigration detainees.  ICE worked quickly to design and implement new procedures to accommodate the incoming immigration detainees housed at SeaTac, including assigning ICE staff to SeaTac and implementing new procedures for intake processing and referring credible fear claims to USCIS.  ICE also worked closely with USCIS to implement new procedures for scheduling and transporting SeaTac detainees to the ICE Office in Tukwila, Washington for credible fear interviews conducted by USCIS.  Further, ICE coordinated with the Executive Office for Immigration Review (EOIR) to

set up an entirely new, functioning mobile immigration court to conduct removal proceedings within SeaTac.

**Plaintiff Padilla**

25.     Plaintiff Padilla is a native and citizen of Honduras who was encountered by CBP in the Rio Grande Valley in Texas on May 19, 2018 after entering the United States without inspection. Padilla was processed as an expedited removal. She came into ICE custody in Texas on May 21, 2018. ICE sent a credible fear referral for Padilla to USCIS while she was in custody in Texas on May 22, 2018. On June 2, 2018, Padilla was transferred to SeaTac. Due to her transfer, a new referral was sent to USCIS after she arrived at SeaTac. On July 2, 2018, Padilla was given a credible fear interview at the Seattle Field Office in Tukwila, Washington. She was then transferred to NWDC the same day. Padilla was subsequently placed in proceedings pursuant to a Notice to Appear (NTA), issued July 3, 2018, charging her with inadmissibility under section 212(a)(7)(A)(i)(I) of the INA. On July 6, 2018, Padilla had a bond hearing before an Immigration Judge and was granted an $8,000 bond. Padilla posted bond later that day and was released from ICE custody.

**Plaintiff Guzman**

26.     Plaintiff Guzman is a native and citizen of Honduras who was encountered by CBP near Brownsville, Texas on May 16, 2018 after entering the United States without inspection. Guzman was processed as an expedited removal and for prosecution for illegal entry. Guzman came into ICE custody in Texas on May 20, 2018, where she remained until her transfer to SeaTac on June 3, 2018. A credible fear referral for Guzman was sent to USCIS in Texas on May 21, 2018. Due to her transfer to Seattle, however, ICE sent a new referral to USCIS after Guzman arrived at SeaTac. Guzman was transferred into custody at the NWDC on June 20,

2018.  She had a credible fear interview on June 27, 2018.  Guzman was subsequently placed in proceedings pursuant to an NTA issued June 28, 2018, charging her with inadmissibility under section 212(a)(7)(A)(i)(I) of the INA.  Guzman was transferred back to Texas on July 19, 2018 for family reunification and released from ICE custody on an Order of Recognizance on July 31, 2018.

## Plaintiff Orantes

27.     Plaintiff Orantes is a native and citizen of El Salvador who was encountered by CBP near Roma, Texas on May 21, 2018 after entering the United States without inspection.  Orantes was processed as an expedited removal and for prosecution for illegal entry.  Orantes came into ICE custody in Texas on May 24, 2018, where she remained until her transfer to SeaTac on June 3, 2018.  She was subsequently transferred into custody at the NWDC on June 20, 2018.  Orantes had a credible fear interview on June 27, 2018.  Orantes was initially issued an NTA on June 28, 2018, charging her with inadmissibility under section 212(a)(7)(A)(i)(I) of the INA.  That NTA was filed with EOIR but subsequently rejected because it failed to list a time and date of hearing.  An amended NTA issued on July 10, 2018.  Guzman was transferred back to Texas on July 20, 2018 for family reunification and subsequently released on an Order of Recognizance on July 25, 2018.

Executed this <u>21st</u> day of September 2018 in Washington, DC.


_____
David W. Jennings
Acting Assistant Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement