*SeaThe Honorable Marsha J. Pechman*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, on behalf of herself and her 6-year-old son J.A.;  IBIS GUZMAN, on behalf of herself and her 5-year-old son R.G.;  BLANCA ORANTES, on behalf of herself and her 8-year-old son A.M.;  BALTAZAR VASQUEZ, on behalf of himself;

                Plaintiffs-Petitioners,

    v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); THOMAS HOMAN, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; MARC J. MOORE, Seattle Field Office Director, ICE, JEFFERSON BEAUREGARD SESSIONS III, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington;  CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington;  DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility;

                Defendants-Respondents.

No. 2:18-cv-928  MJP

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION, ECF 37**

NOTE ON MOTION CALENDAR: SEPTEMBER 28, 2018.

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

PROPOSED CLASS REPRESENTATIVES ...................................................................... 7

LEGAL STANDARD .......................................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.    The Court lacks jurisdiction to certify the classes. ................................................ 10

II.    Plaintiffs' proposed classes do not share any common claim that is capable of uniform resolution as required for certification under Rule 23(a)(2) and (b)(2). .................................. 11

    A.    Plaintiffs' TRAC claims cannot be decided without an individualized assessment of the reason for the challenged delay in each individual case. ................................................. 12

    B.    Plaintiffs' constitutional claims cannot be commonly resolved as to the class as a whole. ............................................................................................................................ 14

    C.    Plaintiffs have not offered any explanation of the legal standard governing their asylum law claims (Count III) and therefore have failed to satisfy Rule 23 for that claim. . 15

III.    The named Plaintiffs are inadequate representatives with claims that are not typical of the claims brought by the proposed classes. ........................................................... 16

    A.    Plaintiffs have not satisfied their burden of demonstrating the suitability of the proposed class representatives given that none of them has a stake in the outcome of the litigation. ....................................................................................................................... 16

    B.    None of the proposed representatives has claims that are typical of the putative classes' claims. ....................................................................................................................... 19

IV.    In the event the Court finds certification is appropriate, the class should be limited to

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1

the Western District of Washington........................................................................... 21

CONCLUSION ........................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................... 26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

**INTRODUCTION**

Plaintiffs move to certify two classes: one comprised of all detained aliens nationwide who have been waiting for a credible fear determination for at least ten days, and another comprised of all aliens nationwide eligible for a bond hearing under *Matter of X-K-,* 23 I. & N. Dec. 731 (BIA 2005), who were not afforded a bond hearing within seven days of making the request. Plaintiffs seek to certify these classes of very differently-situated detainees to address a laundry list of legal challenges—challenges to the scheduling of their interviews and bond hearings as well as to the standards and procedures governing bond hearings—without making any attempt to show that the appropriate legal analysis can be conducted while ignoring the *reason* the request remained pending. It can't. The motion for class certification should therefore be denied.

As an initial matter, the Court lacks jurisdiction to certify the proposed classes due to the nature of the claims and the relief sought. Neither class can be certified because the Immigration and Nationality Act (INA), at 8 U.S.C. § 1252(e)(3), bars this Court from certifying a class for the purpose of challenging the procedures under section 1225(b). The INA, at 8 U.S.C. § 1252(f)(1), also bars certification of either of the classes for injunctive relief on any of the claims. Because the INA prohibits class litigation of these claims, the named Plaintiffs must pursue their claims as individuals, and Plaintiffs' motion for class certification must be denied.

In addition, Plaintiffs cannot satisfy their "rigorous" burden under Federal Rule of Civil Procedure 23(a) and (b)(2) to demonstrate that their claims are susceptible to common resolution because different issues of law and fact will overwhelm the analysis. Plaintiffs' scheduling claims are not capable of classwide resolution because there is no legal basis for Plaintiffs' contention that the proposed classes are entitled to dictate arbitrary deadlines—especially given the variety of reasons credible fear determinations and bond hearings may take longer to complete. Plaintiffs' challenges to bond hearing standards and procedures are similarly incapable of uniform resolution, owing to the highly-flexible legal tests governing the disposition of these challenges. Plaintiffs' standards and procedures challenges fail for the additional reason that the proposed class is a complete mismatch with the claims. The proposed class is exclusively composed of aliens who have not been injured by any of the challenged procedures because they have not had a bond

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

hearing—much less been denied bond as a result of any of the challenged procedures. Moreover, as demonstrated by the outcomes of the named Plaintiffs' hearings, the proposed class includes individuals that, when provided bond hearings under the traditional procedures, could be granted bond and thus have no claim for modified bond procedures whatsoever under any of Plaintiffs' legal theories. The classes therefore cannot be certified consistent with Rule 23(a) and (b)(2).

The dispositive differences between the proposed classes and their representatives demonstrate an additional flaw: the named Plaintiffs are inadequate class representatives for the proposed classes and have claims that are atypical of the class claims. All of the proposed representatives have already received their credible fear interviews and been released from detention. As a result, none has a personal stake in the outcome of this litigation. The record supporting the motion is devoid of any evidence demonstrating the proposed representative's commitment to the litigation—including any mention of their desire (or ability) to litigate a complicated class action while attempting to pursue individual claims for relief from removal. What the record contains, instead, is extensive evidence that Plaintiffs were detained under unique circumstances that will not be shared by the vast majority of future class members. As a result, the named Plaintiffs' claims are unlikely to be typical of the class as a whole. Plaintiffs have failed to meet their burden under Rule 23(a)(3) and (4) of demonstrating the adequacy of their proposed representatives and that their claims are typical of the claims brought by the class.

Plaintiffs' half-hearted efforts to satisfy their burdens under Rule 23 are especially problematic given what is at stake here: if successful in their bid for class certification, no individual alien anywhere in the United States meeting the class definition would be able to file an individual writ of habeas corpus raising these claims. In addition, if certified, this Court will prevent other Courts from addressing these important issues of first-impression in their own jurisdictions. Instead, the Court will be exercising exclusive jurisdiction over habeas custodians far outside of its jurisdiction. The Court should exercise such power with caution. Accordingly, even if this Court finds class certification appropriate, the Court should limit the class to aliens located within the Court's jurisdiction.

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

## BACKGROUND

Aliens seeking admission to the United States are required to submit to an immigration inspection so that an immigration officer can determine whether the alien is admissible to the United States. *See, e.g.*, 8 U.S.C. §§ 1181, 1182, 1225(a)(3). Aliens are required to present themselves at a port of entry for this inspection, but aliens apprehended crossing the border unlawfully between ports of entry are also applicants for admission and subject to an immigration inspection. 8 U.S.C. § 1225(a)(1) & (3).

These aliens are all initially processed by U.S. Customs and Border Protection (CBP), but the processing steps and timing will vary significantly based on numerous factors, including whether the alien is encountered at a port of entry or intercepted after illegally crossing into the United States. *See* ECF 62, Declaration of Aaron Hull, Chief Patrol Agent, El Paso Sector, United States Border Patrol (Hull Decl.) ¶¶ 7-16; ECF 63, Declaration of Sidney K. Aki, Port Director of the Port of San Ysidro, California, CBP (Aki Decl.) ¶¶ 6-9. Entering the United States between the ports of entry is illegal and subjects an alien to potential criminal prosecution. *See, e.g.*, 8 U.S.C. § 1325(a). In contrast, it is not illegal, absent some attempt to evade inspection, for an alien to present himself or herself at a port of entry and be found inadmissible. *See also, e.g.*, 8 U.S.C. § 1182 (grounds of inadmissibility). These legal distinctions can lead to significant variances in processing if, for example, an alien is subject to criminal prosecution.

Processing will further vary based on the size and location of the port where an alien seeks admission or the Border Patrol station nearest to entry, whether the alien requires medical attention, as well as the volume and characteristics of other aliens arriving with or apprehended in close geographic and temporal proximity to the alien. Hull Decl. ¶¶ 7-16; Aki Decl. ¶¶ 6-9. For example, processing during influxes will take more time. Aki Decl. ¶ 12; Hull Decl. ¶ 11. Additionally, processing time may vary depending on the characteristics of the population. If, for example, CBP encounters a significant number of minors, people with medical concerns, or individuals that pose a risk (such as individuals with serious criminal histories), processing times will vary as CBP processes that population in a safe manner. Hull Decl. ¶ 11. It is also possible that processing times may vary slightly based upon other individualized needs, including, for

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

example, the need to obtain interpretive services to communicate with an alien. Aki Decl. ¶ 11.

Aliens remain in CBP custody until they can be removed or transferred—most commonly to the Department of Health and Human Services (unaccompanied alien children), the United States Marshals Service (for criminal prosecution), or to Immigration and Customs Enforcement (ICE) (adults and family units) for placement in an appropriate facility. Aki Decl. ¶ 11; Hull Decl. ¶ 11. The amount of time aliens spend in CBP custody will depend on factors unique to each situation and often dependent on the transferee agency. Hull Decl. ¶ 12. For transfers to ICE, CBP has to wait until ICE has identified an appropriate space for the individual and transportation may be arranged, often through contract carriers with specified hours. Aki Decl. ¶ 12.

An aliens who indicates an intention to apply for asylum, asserts a fear of persecution or torture, or return to his or her country (either to CBP during inspection or to ICE after transfer) are referred to U.S. Citizenship and Immigration Services (USCIS) for a credible fear interview (CFI) to assess whether they have a "significant possibility" of persecution or torture. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(v); 8 C.F.R. § 208.30(d). Aliens who express such fear will be provided with several forms: (1) Form I-860, Notice and Order of Expedited Removal, the document listing the charges of inadmissibility; (2) Form I-867A, providing information to aliens concerning the Expedited Removal process, the consequences of providing false information, and the protections given by the U.S. for those individuals fleeing persecution; (3) Form I-867B, the alien's sworn statement or documentation of the officer's efforts to obtain a sworn statement related to assessing whether the alien has a fear; and (4) Form M-444, a signed acknowledgement that the alien was apprised of his or her rights under the credible fear process, including a right to request a 48-hour delay in their hearing. *See* ECF 64, Declaration of John L. Lafferty, Chief of the Asylum Division, USCIS (Lafferty Decl.) ¶¶ 5-6; ECF 65, Declaration of David W. Jennings, Acting Assistant Director, Field Operations, Enforcement and Removal Operations, ICE (Jennings Decl.) ¶ 8.

The timing of ICE's referral of a case to USCIS will vary based on a number of factors, many related to the volume of the fear claims by detained aliens in a given region and logistical considerations in conducting the interviews. Jennings Decl. ¶¶ 9-12. The credible fear process

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

requires the coordination of CBP, ICE, and USCIS. *Id.* at ¶ 7. Accordingly, in making referrals to USCIS, ICE is mindful of USCIS's resources and other practical limitations associated with the credible fear process. *See id.* at ¶¶ 7, 9-12, 24.

For example, in the summer of 2018, ICE faced a unique challenge when it experienced an influx in adult aliens that exceeded the available bed space. *Id.* at ¶¶ 10-11. As a result, ICE entered into Inter-Agency Agreements (IAA) to use bed space at five Bureau of Prison (BOP) facilities, including Victorville Federal Correctional Institution (Victorville) and the Federal Detention Center SeaTac (SeaTac) where the four named Plaintiffs were housed. *Id.* at ¶¶ 10, 16, 25-27. ICE intended to use the five BOP facilities for a short period while ICE secured additional bed space elsewhere. *Id.* at ¶ 10. ICE faced some initial challenges in using the new BOP facilities that impacted the timing of referrals to USCIS. *Id.* at ¶¶ 10-11, 24. Because the facilities had not previously housed immigration detainees, there were not established procedures or (in some cases) appropriate physical space to conduct confidential credible fear interviews. *Id.* To address this problem, ICE worked closely with USCIS to implement new procedures for scheduling and transporting detainees from certain BOP facilities to ICE offices for interviews. *Id.* Under the new procedures, ICE prepared credible fear referrals on a rolling basis and to best coordinate the transfer of referred aliens to other facilities for interviews. *Id.* In addition, on June 21, 2018, ICE was temporarily enjoined from further credible fear processing prior to facilitating legal presentations or attorney consultations at Victorville. *Id.* at ¶¶ 11, 18. The temporary challenges associated with the influx and the IAAs have abated as there are no immigration detainees housed in Victorville or SeaTac at this time and fewer than 100 immigration detainees at the three other IAA BOP facilities. *Id.* at ¶ 10.

After a credible fear referral is made to USCIS, USCIS begins the process of scheduling the alien for a credible fear screening interview. Lafferty Decl. at ¶ 6. There are an unlimited number of factors that may impact when an interview is scheduled following the referral to USCIS *Id.* at ¶ 8a-n. Interviews may be delayed due to the availability of interpreters, interview space, and phone lines. *Id.* at ¶ 8c, g, h. Interviews may have to be delayed or rescheduled for detention facility access issues, such as inclement weather or health or safety issues at the detention facility, or

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

because the alien was transferred due to space issues following the referral. *Id.* at ¶ 8i-k. The volume of credible fear claims—as well as the volume of other claims that require use of the same cadre of asylum officers—will necessarily impact the timing of interviews. *Id.* at ¶ 8i-k. There are presently approximately 530 specially-trained asylum officers in the asylum division. *Id.* at ¶ 4. Due to lengthy onboarding and statutorily-required trainings, hiring is not an immediate solution to volume fluctuations. *Id.* Thus, USCIS inevitably makes prioritization decisions in scheduling interviews. *See id.* at ¶ 8d-f.

If the alien is found to have a positive credible fear or persecution or torture, the Department of Homeland Security (DHS) refers the case to the Executive Office for Immigration Review (EOIR) for removal proceedings by filing a Notice to Appear (NTA). *See* ECF 66, Declaration of Joe Neifert, Court Administrator, EOIR Tacoma Immigration Court (Neifert Decl.) ¶ 9; ECF 67, Declaration of Hilma Torres, Court Administrator, EOIR Adelanto Immigration Court (Torres Decl.) ¶ 9. DHS may also file a copy of the Form I-286 Notice of Custody Determinations with the NTA. *Id.* The Form I-286 includes a box on which the alien can check if they are requesting that an immigration judge (IJ) review ICE's initial custody determination. *Id.*; 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). In Tacoma and Adelanto, filings are typically processed in 1-3 business days, depending on volume. Torres Decl. ¶ 8; Neifert Decl. ¶ 8. If the alien makes a request for a bond hearing on the Form I-286, the bond hearing is automatically scheduled. Torres Decl. ¶ 10; Neifert Decl. ¶ 10. Alternatively, an alien may request a bond hearing in writing, or while in court, Torres Decl. ¶ 11; Neifert Decl. ¶ 11, or in some locations, an alien's representative may request a bond hearing by telephone, Neifert Decl. ¶ 11.

Bond hearings are scheduled as promptly as possible in light of docket space, attorney availability, and procedural considerations (such as time to properly notice the bond hearing and schedule interpreters). Torres Decl. ¶ 13; Neifert Decl. ¶ 13. Adelanto has six IJs (one for each available courtroom) presiding over a total of 1,356 cases as of September 17, 2018. Torres Decl. ¶ 5. Hearings are scheduled into November 2018, save for 2-3 hours per day, four days per week that is reserved for each IJ to conduct bond hearings. *Id.* at ¶¶ 5, 13. Tacoma has five IJs, three who appear in person, and two who appear in courtrooms via video teleconference from locations

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

outside of Tacoma. *See* Neifert Decl. ¶ 6. As of September 17, these five IJs are presiding over a total of 1,271 cases and each IJ's calendar is set into December 2018. *Id*. at ¶ 5. Tacoma currently reserves approximately three hours per day for bond hearings. *Id*. In some instances, it may not be possible to schedule a bond hearing without impacting older detained cases that are already scheduled. *Id*. at ¶¶ 13-15; Torres Decl. ¶¶ 13-15. Under existing conditions, bond hearings at Adelanto are typically scheduled within 7-14 days of the request, Torres Decl. ¶ 12, and at Tacoma, they are typically scheduled within 10 days of the request, Neifert Decl. ¶ 12.

The alien has the burden of demonstrating that he or she is statutorily eligible for bond, is not a flight risk, and is not a danger to the community in order to obtain release on bond. 8 C.F.R. § 236.1(c). The alien may appeal the IJ's custody redetermination to the Board of Immigration Appeals (BIA). 8 C.F.R. §§ 236.1(d)(3)(i), 1236.1(d)(3)(i). There is no policy requiring that bond hearings be recorded (though some are); however, if either party appeals the IJ's bond decision, the IJ will prepare a written bond memorandum that sets forth the grounds for the bond determination. *See* Immigration Court Practice Manual, § 9.3(e)(vii) available at https://www.justice.gov/eoir/page/file/1084851/download (last accessed September 22, 2018); *see e.g.* Torres Decl. ¶ 18; Neifert Decl. ¶ 20.

### PROPOSED CLASS REPRESENTATIVES

Plaintiff Yolany Padilla entered the United States without inspection on May 18, 2018, was apprehended shortly thereafter, and expressed fear of returning to Honduras. ECF 12 at 4; *see also* Jennings Decl. ¶ 25. She was transferred to ICE custody on May 21, 2018. Jennings Decl. ¶ 25. On May 22, 2018, ICE sent a credible fear referral to USCIS while Padilla was in custody in Texas, but she was transferred to SeaTac less than ten days later, on the first day it began housing immigration detainees under the new IAA. *Id*. at ¶¶ 24-25. Once appropriate procedures were in place, ICE again referred Padilla to USCIS for a credible fear interview, which took place on July 2, 2018. *Id*. On July 3, 2018, USCIS made a positive credible fear determination, ECF 12 at 10, and DHS submitted an NTA to EOIR, Jennings Decl. ¶ 25. Before the NTA was docketed, counsel for Padilla contacted the Tacoma immigration court and requested a bond hearing. Neifert Decl. ¶ 18. The bond hearing occurred three days later on July 6, 2018, and Padilla was granted an $8,000

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

bond. Jennings Decl. ¶ 25. Padilla posted bond later that day and was released from ICE custody. *Id*. She waived appeal of the bond order and, as a result, no written bond decision was issued. *See* ECF 12 at 12.

Plaintiff Ibis Guzman entered the United States without inspection on May 16, 2018, was apprehended shortly thereafter, and expressed fear of returning to Honduras. ECF 12 at 24; *see also* Jennings Decl. ¶ 26. She was transferred to ICE custody on May 20, 2018. Jennings Decl. ¶ 26. On May 21, 2018, ICE sent a credible fear referral to USCIS while Guzman was in custody in Texas, but she was transferred to SeaTac on June 3, 2018, one day after it began housing immigration detainees under the new IAA. *Id*. at ¶¶ 24, 26. ICE transferred Guzman to the Northwest Detention Center (NWDC) on June 20, 2018, and submitted a new credible fear referral to USCIS. *Id*. at ¶ 26. She had a credible fear interview on June 27, 2018, received a positive credible fear determination, and was placed in proceedings pursuant to an NTA issued on June 28, 2018. *Id*. The following day, counsel for Guzman contacted the Tacoma immigration court and requested a bond hearing. Neifert Decl. ¶ 19. Plaintiff Guzman received a bond hearing on July 3, 2018, and was denied bond. ECF No. 12 at 32. Guzman reserved appeal and, as a result, a written decision was issued by the Immigration Judge. *See* Exhibit A, Guzman Bond Decision. Guzman later withdrew her appeal as she was released from custody on July 31, 2018. ECF No. 26 at ¶ 119; *see also* Neifert Decl. ¶ 19.

Plaintiff Blanca Orantes entered the United States without inspection on May 21, 2018, was apprehended shortly thereafter, and expressed fear of returning to El Salvador. ECF 26 at ¶ 44; ECF 12 at 14. She was transferred to ICE custody in Texas on May 24, 2018. Jennings Decl. ¶ 27. Orantes was transferred to SeaTac on June 3, 2018, one day after it began housing immigration detainees under the new IAA. *Id*. at ¶¶ 24, 27. To facilitate her credible fear interview, ICE then transferred Orantes to NWDC on June 20, 2018. *See id*. at ¶¶ 22, 24, 27. Orantes had a credible fear interview on June 27, 2018, and received a positive credible fear determination on June 28, 2018. ECF 12 at 21. ICE filed an NTA the same day, but the NTA was rejected as a result of a Supreme Court decision issued earlier the same week, *Pereira v. Sessions*, 138 S. Ct. 2105 (June 21, 2018). Jennings Decl. ¶ 27. On July 3, 2018, prior to the NTA being accepted for filing,

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

counsel for Orantes called the immigration court to request a bond hearing. Neifert Decl. ¶ 20. ICE filed an amended NTA on July 10, 2018. Jennings Decl. ¶ 27. An IJ conducted Orantes' bond hearing on July 16, 2018. Neifert Decl. ¶ 20. The hearing was recorded. *Id*. She was denied bond, but never filed an appeal of the order, *id*., presumably because she was released on an Order of Recognizance on July 25, 2018, Jennings Decl. ¶ 27.

Plaintiff Baltazar Vasquez entered the United States without inspection on or about June 1, 2018, was apprehended shortly thereafter, and expressed a fear of returning to El Salvador. ECF No. 26 at ¶ 46; Jennings Decl. ¶ 15. ICE took custody of him on June 6, 2018. *Id*. On June 8, 2018, Vasquez was transferred to FCI Victorville, two days after it began housing immigration detainees under the new IAA. Jennings Decl. ¶¶ 16. On June 21, 2018, ICE was temporarily enjoined from processing credible fear claims prior to facilitating legal presentations or attorney consultations at Victorville. *Id*. at ¶¶ 11, 18. On July 20, 2018, ICE transferred Vasquez to Adelanto, and his case was referred to USCIS shortly thereafter. *Id*. ¶ 19. He was interviewed by an asylum officer on July 31, 2018, and received a positive credible fear determination on August 2, 2018. ECF No. 26 at ¶ 108; Jennings Decl. ¶ 20. EOIR received an NTA and custody determination form for Vasquez on August 3, 2018, and the bond hearing was scheduled on August 7, 2018. Torres Decl. ¶ 18. His bond hearing was conducted on August 20, 2018, and it was recorded by the immigration judge. *Id*. He stipulated to a bond in the amount of $8,000.00, and was released. ECF 36-1, Vasquez Bond Order. He waived appeal of the bond order. Torres Decl. ¶ 18.

## LEGAL STANDARD

"Plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.,* 134 S. Ct. 2398, 2412 (2014); see *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). The Courts may certify a class only if Plaintiffs present "evidentiary proof" sufficient to withstand a "rigorous analysis" of Rule 23's requirements. *Comcast Corp. v. Behrend,* 569 U.S. 27, 33 (2013). Plaintiffs' "rigorous" burden includes showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met. Fed. R. Civ. P. 23(a), (b); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).. A district

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In this case, Plaintiffs seek certification under Rule 23(b)(2), *see* ECF 37 at 22 n.4, which permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart,* 564 U.S. at 360.

## ARGUMENT

### I.   The Court lacks jurisdiction to certify the classes.

As set forth in Defendants' Motion to Dismiss, this Court lacks jurisdiction to certify a class on claims raised under section 1252(a)(2)(A)(i), (e), and (f)(1). ECF 36 at 6-8, 23-24. The INA requires that any challenge to "procedures and policies adopted by the [Secretary of Homeland Security] to implement the provisions of section 1225(b)(1)" must be brought in accordance with section 1252(e). 8 U.S.C. § 1252(a)(2)(A)(iv); *see* 8 U.S.C. § 1252(a)(2)(A)(i) (channeling jurisdiction over "any cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" through section 1252(e)); *see also* 6 U.S.C. §§ 202, 291, 557 (transferring responsibility to the Secretary). Plaintiffs' CFI claims challenge the Secretary's procedures for scheduling and conducting credible fear screening interviews and therefore fall within the types of challenges to section 1225(b)(1) that may not be litigated on behalf of a class. In addition, Plaintiffs' class challenges to the detention framework applicable to aliens subject to section 1225(b)(1)'s procedures are similarly barred by section 1252(a)(2)(A)(iv) and not brought in accordance with section 1252(e)(2). The Court, therefore, must deny the motion for class certification consistent with sections 1252(a), (e).

The Court also lacks jurisdiction to certify a class seeking injunctive relief for these claims

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

under section 1252(f)(1). Section 1252(f)(1) bars "classwide injunctive relief against the operation of §§ 1221-1231" with a narrow carve-out that applies to "individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999). Plaintiffs seek to enjoin the operation of section 1225(b) on a classwide—not individual—basis to dictate time limits that are not contemplated by statute, to overhaul the detention scheme set forth in section 1225(b)(1), and to revise the standards and burdens that govern those hearings. Accordingly, this Court lacks jurisdiction to certify a class seeking an injunctive remedy for Plaintiffs' claims. Class certification should be denied.

## II.    Plaintiffs' proposed classes do not share any common claim that is capable of uniform resolution.

To obtain class certification, Plaintiffs must demonstrate that the proposed class is entitled to common relief as to each count on which certification is sought. *See* Fed. R. Civ. P. 23(a)(2), (b)(2). The Supreme Court has repeatedly held that "[i]t is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal–Mart*, 564 U.S. at 350. The commonality requirement is uniquely rigorous when applied to a class—like the proposed classes here—seeking certification under Rule 23(b)(2). For certification under Rule 23(b)(2), Plaintiffs must show that "declaratory relief is available to the class as a whole" and that the challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal–Mart*, 564 U.S. at 360. Accordingly, Plaintiffs have the burden of demonstrating that factual differences in the class are unlikely to bear on the individual's entitlement to relief. *See id.* If the factual differences have the likelihood of changing the outcome of the legal issue, then class certification is not appropriate. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Wal–Mart*, 564 U.S. at 350-51, 360. Satisfaction of Rule 23(a)(2) for a class under Rule (b)(2), therefore, requires two steps: (1) the identification of a common legal problem and, (2) a demonstration that the common legal issue may be resolved as to all class members simply by virtue of their membership in the class. *Wal–Mart*, 564 U.S. at 350, 360 (The common legal problem "must be of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims *in one stroke*." (emphasis added)).

Plaintiffs' claims fail this test because none of the necessary legal inquiries can be conducted without consideration of unique characteristics and factual circumstances that are not shared by the class as a whole. Plaintiffs' APA claims challenging the "unreasonable delay" of their interviews or hearings require (at a minimum) an analysis of the reason why the government did not meet Plaintiffs' arbitrary deadline, which is not common to the class a whole. Similarly, Plaintiffs' constitutional claims must be individually analyzed under the flexible framework contemplated by the Due Process Clause and must account for a multitude of facts—not just the amount of time that has passed. Plaintiffs do not even suggest a legal standard governing the asylum claims or otherwise discuss why certification of these claims using the proposed class is appropriate. Accordingly, Plaintiffs have not demonstrated that either class can be certified consistent with Rule 23(a)(2) and (b)(2).

A.   Plaintiffs' TRAC claims cannot be decided without an individualized assessment of the reason for the challenged delay in each individual case.

Plaintiffs' unreasonable delay claims are not proper for class resolution because applicable precedent does not support imposition of a one-size-fits-all deadline—especially where the government is not alleged to be violating a statutory or regulatory timeline. *Cf. Rosario v. United States Citizenship & Immigration Servs.*, No. C15-0813JLR, 2017 WL 3034447, at *9 (W.D. Wash. July 18, 2017) (TRAC class claim appropriate where there is a statutory or regulatory deadline for competition). "[C]ourts generally apply the so-called TRAC factors in deciding whether to order relief in claims of agency delay brought under the APA." *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.1997). The *TRAC* factors are:

(1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001).

The legitimacy of the challenged "delays" cannot be determined in a vacuum without any consideration of the *reasons* for the delay. As this Court has repeatedly held, "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Chen v. Heinauer*, No. C07-103RSL, 2007 WL 2743390, at *4 (W.D. Wash. Sept. 17, 2007) (quoting *Gelfer v. Chertoff*, 2007 WL 902382 at *2 (N.D.Cal. Mar. 22, 2007)). Just as this Court has rejected the government's generalized defenses to TRAC claims, this Court should reject Plaintiffs' attempt to categorically litigate its TRAC claims here. *See id.*

The reasonableness of the alleged "delays" cannot be determined uniformly for the proposed class as a whole. The class is unlimited in time, geographic scope, or circumstances of apprehension—it includes anyone subject to expedited removal at any time anywhere in the United States who did not receive a credible fear determination within ten days of expressing an intention to apply for asylum or a fear of persecution. But there are any number of reasons why an individual alien may not receive a credible fear determination within ten days. *See* Hull Decl. ¶¶ 7-16; Aki Decl. ¶¶ 6-12; Lafferty Decl. ¶ 8; Jennings Decl. ¶¶ 10-12. The CFI referral process requires the coordination of three components of the federal government responsible for prioritizing their use of limited resources. *Id.* Prioritization aside, interviews may be delayed during an influx of credible fear referrals, due to the unavailability of a qualified interpreter, or when the detainee requires medical attention. *Id.* These situations—all of which are encompassed by the class definition—call for a different analysis of under the TRAC factors.

Similarly, the reasons why an individual may not receive a bond hearing within seven days of "making a request" will vary based on to whom the request is made, the timing of the request (*i.e.*, whether it is at a time when the Court has jurisdiction to provide a bond hearing), and staffing and docketing considerations that are unique to the immigration court. *See* Torres Decl. ¶¶ 13-14; Neifert Decl. ¶¶ 13-14. These individualized considerations make it impossible for the Court to categorically examine the TRAC factors, including the fourth factor ("the effect of expediting

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

delayed action on agency activities of a higher or competing priority"), because it can only be analyzed through an individualized assessment of each immigration court's docketing policies and priorities. Classwide adjudication of the scheduling claims is therefore not possible because the validity of the claim cannot be decided in one stroke. *Wal–Mart*, 564 U.S. at 350.

      B.   <u>Plaintiffs' constitutional claims cannot be commonly resolved as to the class as a whole.</u>

Plaintiffs' 5 U.S.C. § 706(2) and due process claims cannot be commonly resolved because the Due Process Clause (like the TRAC factors) requires consideration of more than a period of time in isolation. As a result, the proposed classes are not matched to the necessary legal analysis such that membership in the class is sufficient to determine the validity of the claim. Accordingly, certification must be denied on all of the constitutional claims.

1. Plaintiffs' scheduling claims cannot be resolved for either proposed class. A rigid temporal mandate is fundamentally inconsistent with the flexibility inherent in due process. The Supreme Court has "repeatedly stressed" that due process is a flexible concept that requires an individualized assessment of numerous factors including the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures. *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976).

The individual characteristics of the members of the classes and the variety of reasons for their "delays" make it impossible for the Court to answer the due process question the same way for each of them. *See Lujan v. G&G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."); *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1033 (9th Cir. 2004). In addition, the CFI class includes aliens who presented at a port of entry, as well as aliens (like the proposed representatives) who violated federal laws by entering between the POEs. These two categories of aliens are differently because the delay related to criminal prosecution contributes to the reasonableness of a ten-day delay and undermines the alien's liberty interest and interest in timely

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

processing as they sought to evade the legal process altogether. These factual differences prevent deciding or remedying the due process claim in a common manner.

2. In addition, the bond hearing class—made up of aliens who have not yet had bond hearings—is not an appropriate class to challenge the constitutionality of standards or procedures applied at immigration bond hearings. The proposed class members do not have ripe challenges to these procedures as they have not been denied bond at all, much less as a result of the challenged procedures. Due process violations in immigration proceedings are subject to a harmless error analysis and therefore the plaintiff must demonstrate prejudice to prove a due process claim. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008) ("Prieto–Romero contends that *Tijani* requires all aliens to receive bond hearings where the government bears the burden of establishing ineligibility for release. We need not resolve the issue because Prieto–Romero cannot demonstrate prejudice") (citing *Getachew v. INS,* 25 F.3d 841, 845 (9th Cir. 1994)); *see also Singh v. Holder*, 638 F.3d 1196, 1210 (9th Cir. 2011) (applying harmless error analysis to claims challenging procedural defects at immigration bond hearings). As demonstrated by the named Plaintiffs, many members of the proposed class could be released from custody, even if required to carry the burden of proof at the bond hearing. *See* ECF 12 at 12; ECF 36-1. Moreover, many of the class members may never have a claim related to the transcription or recording of bond hearings because, as demonstrated by the named Plaintiffs, their hearings may be recorded. Neifert Decl. ¶ 20; Torres Decl. ¶ 18. In addition, any putative class member who files a bond appeal will not have a challenge related to receipt of a written order because they will be provided a written order. *Cf.* Neifert Decl. ¶ 19. Therefore, the putative class does not present a common challenge to the bond procedures and cannot be certified for this claim consistent with Rule 23.

C. <u>Plaintiffs have not offered any explanation of the legal standard governing their asylum law claims and therefore have failed to satisfy Rule 23.</u>

Plaintiffs' motion does not refer to the asylum law claim or discuss whether it is appropriate (or possible) to adjudicate Count III under Rule 23. Plaintiffs have therefore failed to "affirmatively demonstrate" "that there are in fact . . . common questions of law" that are capable of classwide adjudication. *Wal-Mart*, 564 U.S. at 350. Because "the class determination . . .

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

involves considerations that are enmeshed in the factual and legal issues comprising the . . . cause of action," the Supreme Court has directed certifying courts to "probe behind the pleadings" and engage in an analysis of the merits before certifying a class. Plaintiffs' failure to identify the legal standard they believe governs this claim makes that "rigorous analysis" impossible. *See Comcast Corp.,* 569 U.S. at 33. Therefore, the Court cannot certify a class for Count III.

**III.     The named Plaintiffs are inadequate representatives with claims that are not typical of the claims brought by the proposed classes.**

Both the typicality and adequacy requirements under Rule 23(a)(3) and (4) serve to protect the due process rights of absent class members who will be bound by the judgment. *See Hanlon Chrysler Corp.*, 150 F.3d, 1011, 1020 (9th Cir. 1998); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010). Like commonality, these requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 350. Plaintiffs have failed to demonstrate that the proposed representatives will fairly protect the interests of the class.

A.     Plaintiffs have not satisfied their burden of demonstrating the suitability of the proposed class representatives given that none of them has a stake in the outcome of the litigation.

The adequacy of representation determination is based on two inquiries: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Id.* at 1021; *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006) ("proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members"). The nature of class certification under Rule 23(b)(2) amplifies the need to confirm the commitment of the representatives because members of a Rule 23(b)(2) class have no right to opt out of the class. *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

All of the plaintiffs have received a credible fear determination, were found to have a credible fear, were scheduled for a bond hearing, and have been released from immigration detention. *See supra* pp. 6-9. They are now pursuing their claims for relief in removal proceedings. When a "plaintiff's claim becomes moot before the district court certifies the class, the class action normally also becomes moot." *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014). But even if Plaintiffs' claims are not moot,[1] they have not shown that they are interested in, willing to, or capable of prosecuting this action on behalf of all named class members. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (concluding that former employees are not adequate representatives of a class of current employees seeking injunctive relief arising out of gender discrimination claim); *Schulken v. Washington Mut. Bank*, No. 09-cv-02708, 2012 WL 28099, *5 & n.2 (N.D. Cal. Jan. 5, 2012) (analogizing Rule 23(a)(4) analysis to standing analysis). Plaintiffs—despite filing two amended complaints, an amended motion for class certification, and dozens of declarations—have not submitted a single sworn statement from any proposed representative. At a minimum, Plaintiffs have the burden of demonstrating that the proposed class representatives are aware of this class action litigation and their role in it. *See Spinelli v. Capital One Bank*, 265 F.R.D. 598, 614 (M.D. Fla. 2009) ("[The class representative] provided no affidavit reflecting her understanding and acceptance of the duties of a class representative. . . . Her lack of interest in the lawsuit makes her unsuitable to represent the putative class.").

Plaintiffs' motion for class certification makes no representations about the adequacy of the class representative besides counsel's unsworn assertions that the named Plaintiffs' "interests in this case are shared with the other putative members of their respective classes" and a bare, unsupported assertion that "Plaintiffs seek the same justice for all similarly situated asylum seekers that they seek for themselves . . . ." ECF 37 at pp. 19-20; *Buford v. H & R Block, Inc.*, 168 F.R.D.

---

[1] Although Plaintiffs generally assert that their claims are the type that qualify for an exception to the mootness doctrine, they have not supported that claim with additional argument or evidence. Even if that were the case for Plaintiffs' scheduling claims (contrary to their claims about lengthy delays), it is certainly not the case for Plaintiffs' challenges to the bond hearing standards and procedures.

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

340, 353–54 (S.D. Ga. 1996), aff'd, 117 F.3d 1433 (11th Cir. 1997) (a class representative must have a working knowledge of the case in order to "avoid investing unbridled discretion in the class attorney and effectively anointing the class attorney as the class representative."). The motion, however, lacks any acknowledgement that class representatives are required to actively participate in the litigation. *See In re AEP ERISA Litig., 45 Employee Benefits Cas. (BNA) 2184*, 2008 WL 4210352 (S.D. Ohio 2008) (finding the proposed class representative inadequate because his "statement that he's 'just a member of a class,' suggests that he did not realize that he had agreed to serve as a class representative and that he further did not appreciate that this designation carries with it a special responsibility to actively assist class counsel in prosecuting the litigation and monitor their work"); *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421 (E.D. La. 1997) (the fact the class representative was  "admittedly unaware that the [had] duties as a class representative" led court to finding inadequate representation). The lack of any evidence from the named Plaintiffs is particularly problematic here given that they have already received the relief that they are seeking from this litigation and are now turning their attention to defending their removal proceedings. There is therefore good reason to seek confirmation of their commitment to the litigation given what is at stake for an expansive class of detained aliens whose rights will be decided in this litigation. Plaintiffs did not satisfy their burden of showing that the proposed representatives will "vigorously" pursue those interests on behalf of the unnamed class members. Certification should be denied on this basis.

Alternatively, given the complete lack of evidence supporting the adequacy of the class representatives, this Court should permit Defendants discovery into the suitability of the proposed representatives prior to ruling on the motion for class certification. Defendants request the opportunity to depose the representatives for the purpose of ascertaining their understanding of and commitment to their role as a class representative, and ability to fulfill the requirements of acting as a class representative. *See McKay v. Tharaldson*, 272 F.R.D. 465, 468 (D.N.D. 2011) (reviewing the deposition of the proposed class representative and "find[ing] he understands the nature of the suit, his role as class representative, and can meaningfully assist the lawyers in the case.") (citations omitted).

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

**B.** <u>None of the proposed representatives has claims that are typical of the putative classes' claims.</u>

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin*, 617 F.3d at 1175 (quoting *Hanon*, 976 F.2d at 508).

**1.**   Plaintiffs have not proposed an adequate representative with claims typical of those of the proposed CFI class's claims.

The named Plaintiffs represent only a fraction of individuals who are subject to these processes. Each of the named Plaintiffs entered the United States without inspection between the ports of entry. As such, these individuals were subject to criminal prosecution and, at the time of their entry, were subject to the government's adaptation to significant policy shifts with respect to these prosecutions. The named Plaintiffs cannot represent individuals apprehended in other contexts, such as at ports of entry, who may also subsequently be entitled to CFIs or bond proceedings. Moreover, as discussed at length above, the processing and transfer times may vary significantly depending on where aliens are detained. Although some aliens may be detained near a major area, many ports of entry and Border Patrol stations are located in remote areas, and, as discussed above, the processing at these facilities will depend on each alien's circumstances. The named Plaintiffs here are plainly atypical and inadequate representatives of the class they purport to represent.

The named Plaintiffs were processed under unique circumstances that are no longer present. As a result, the proposed representative's claims are not typical of the claims of the class going forward under current conditions and procedures. The named Plaintiffs all surreptitiously entered the United States within a particular two-week span during an unprecedented influx of adult immigration detainees that, in turn, caused ICE to enter into temporary agreements with BOP

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

facilities who had not recently (or in some cases, ever) housed immigration detainees. *See* Jennings Decl. ¶ 10.  The named Plaintiffs were all among the first detainees transferred to the new BOP facilities and, as a result, endured an atypical credible fear referral process while the infrastructure at those facilities was being developed. Those issues have now been addressed. ICE no longer houses any immigration detainees at Victorville and has fewer than 100 total immigration detainees in the four other new BOP facilities, including SeaTac. And, in any event, procedures for those facilities are now in place such that any similar claims brought by a current BOP detainee would be viewed differently than a claim brought during the start-up phase. Simply put, the claims brought by the named Plaintiffs are the result of a unique combination of circumstances that are not shared by the class. Plaintiffs are not typical or adequate class representatives for a nationwide class of individuals whose circumstances are meaningfully different.

2.     Plaintiffs do not have an adequate representative for their bond hearing claims.

Plaintiffs propose two representatives (Orantes and Vasquez) for adjudication of two sets of bond claims—one set challenging the scheduling of bond hearing and a second set challenging the burdens and procedures applied at those hearings. Neither is inadequate for either claim.

i. *Scheduling claims*. Orantes and Vasquez's situations are atypical from those of the proposed class, as this summer saw an influx in the numbers of detained adults in ICE's custody so large that ICE had to partner with the BOP to ensure adequate detention space. *See* Jennings Decl. ¶ 10. The decision to house people in new facilities such as SeaTac and Victorville likely had an impact on the dockets at Tacoma and Adelanto, as the caseload is "tied directly to DHS enforcement activities and may fluctuate depending on the number of individuals booked into DHS custody on any given week." *See* Torres Decl. ¶ 14; Neifert Decl. ¶ 14.

ii. *Bond procedures claims*. Neither proposed representative filed an appeal of their bond decision and, as a result, have failed to meet a requirement for bringing any of the class's procedural bond hearing claims. *See Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (dismissing due process challenges to bond hearing for failure to exhaust to the BIA). Rather, both were released from immigration detention and therefore not prejudiced by the challenged procedures. *See Prieto-Romero*, 534 F.3d at 1066 (requiring a showing of prejudice for due process

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

challenges to immigration court procedures). In addition, both Vasquez and Orantes had recorded bond hearing and therefore cannot serve as representatives for Plaintiffs' claims challenging recording practices.  Neifert Decl. ¶ 20; Torres Decl. ¶ 18. Finally, Vasquez cannot serve as a representative on any of the bond procedure claims because had a bond hearing where he simply stipulated to his release on an $8,000.00 bond. ECF 36-1. Thus, he was not required to carry the burden of proof in order to obtain release on bond.

## IV. In the event the Court finds certification is appropriate, the class should be limited to the Western District of Washington.

The Court should decline to certify a nationwide class. Nationwide class actions are certified with caution because they "may have a detrimental effect by foreclosing adjudication by a number of different courts and judges." *Califano*, 442 U.S. at 702; *see United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question before this Court grants certiorari."). "[A] federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts." *Califano*, 442 U.S. at 702. Certification of a nationwide class is not appropriate here because certifying a nationwide class would deprive other jurisdictions of the ability to weigh in on issues of national importance; would interfere with courts already assessing overlapping issues; It would also lock putative class members into this case and deprive them of the ability to seek likely speedier habeas relief through individualized petitions.

First, a nationwide class would violate the principles of intercircuit comity, and strip other courts of jurisdiction over claims currently pending in their own courts. *See Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199, 1205 (3d Cir. 1983) (affirming the district court's decision to limit a class of federal prisoners to the Middle District of Pennsylvania because "it is within the district court's discretion to conclude that classwide consideration of the legality of the parole guidelines and the constitutionality of the [statute at issue] might interfere with the litigation of similar issues in other judicial districts"). Courts with different governing precedent on bond

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

hearings may reach different conclusions regarding the validity of Plaintiffs' claims. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). As a result, the Court cannot be "sure that nationwide relief is indeed appropriate" given that law in at least some jurisdictions may preclude relief. *Califano*, 442 U.S. at 702. Indeed, the constitutionality of placing the burden on the alien at bond hearings was briefed to the Supreme Court, but the Court declined to rule on issue without allowing the Court of Appeals to consider the question in the first instance. *Jennings*, 138 S. Ct. at 851. The issue is now pending before the Court of Appeals, *see Rodriguez v. Jennings*, 887 F.3d 954, 956 (9th Cir. 2018) (requesting briefing on the issue), and in habeas petitions nationwide. *See, e.g.*, *Brevil v. Jones*, Case No. 1:17-cv-01529-LTS-GWG (S.D.N.Y.).

Class treatment of these issues deprives a federal district court sitting in the jurisdiction to decide issues of local importance—including what standard should govern dangerousness and flight assessment before an alien may be released into the community. Congress specifically determined that the local district court alone should have venue to determine whether federal detainees should be released from federal custody. *See* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions*.") (emphasis added); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."). "Congress added the limiting clause—'within their respective jurisdictions'—to the habeas statute in 1867 to avert the 'inconvenient [and] potentially embarrassing' possibility that 'every judge anywhere [could] issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat.'" *Padilla*, 542 U.S. at 442 (quoting *Carbo v. United States*, 364 U.S. 611, 617 (1961)). Deciding the issue of the timing of bond hearing at the national level deprives local courts of their congressionally-dictated authority over detainee release and prevents the local courts from determining when an alien has been sufficiently vetted to permit their release into the individual community they serve. Instead, the Court should allow "several courts of appeals to explore [this] difficult question" for themselves. *Mendoza*, 464 U.S. at 160; *see, e.g.*, *Hootkins v. Chertoff*, No. CV 07-5696, 2009 WL 57031, at

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

\*4 (C.D. Cal. Jan. 6, 2009) (limiting a class of individuals challenging the interpretation of an INA provision to the Ninth Circuit because "the Court is mindful of the importance of allowing the government to litigate legal issues before different courts throughout the country").

Second, the individual and regional difference in factual circumstances counsels against addressing this question in a one-size-fits-all nationwide determination. *See, e.g., Shvartsman v. Apfel*, 138 F.3d 1196, 1201 (7th Cir. 1998) (declining to certify a nationwide class where varying law and circumstances impacted validity of class claims); *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir. 2018) (finding nationwide injunction is unwarranted where "the record is not sufficiently developed on the nationwide impact" of the alleged harm). The evidence indicates that the timing of credible fear determinations and bond hearings turns on a multitude of factors particular to the individual's history and circumstances and the region of their apprehension and detention, *see supra* pp. 2-6 ; *Wal-Mart*, 564 U.S. at 351, 360. Plaintiffs' claims are no different than claims routinely rejected under Rule 23 where "the proposed class's proffered common issues 'stretch[] the notions of commonality' by attempting to aggregate several amorphous claims of systemic or widespread conduct into one 'super-claim.'" *M.D. v. Perry*, 675 F.3d 832, 844 (5th Cir. 2012). A nationwide injunction addressing this "super-claim" would "merely initiate a process through which highly individualized determinations" concerning the interplay between regional programs and an individual class-members' circumstances "are made; this kind of relief would be class-wide in name only, and it would certainly not be final." *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 497-98 (7th Cir. 2012).

Finally, certifying a nationwide class locks all aliens wishing to challenge the timing of their credible fear determinations or bond hearings, or the standards of procedures employed at those hearings into litigating that issue in this case. Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action." *Wal-Mart*, 564 U.S. at 362. But because Plaintiffs seek certification under Rule 23(b)(2), this Court cannot permit opt-outs. *See, e.g., Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 (9th Cir. 2000); *Lewis v. City of Chicago*, 702 F.3d 958, 962 (7th Cir. 2012); *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011). Individual, local habeas challenges filed by

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

putative class members would therefore likely be dismissed. Multiple courts of appeals, including the Ninth Circuit, have upheld dismissals of a case if there is a parallel class action raising the same or substantially similar issues. *See e.g.*, *Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir. 1979) (a district court may dismiss "those portions of [the] complaint which duplicate the [class action's] allegations and prayer for relief"); *McNeil v. Guthrie*, 945 F.2d 1163, 1165-66 (10th Cir. 1991) (individual suits for injunctive and declaratory relief cannot be brought where a class action with the same claims exists); *Horns v. Whalen*, 922 F.2d 835, 835 & n.2 (4th Cir. 1991); *Gillespie v. Crawford,* 858 F.2d 1101, 1103 (5th Cir. 1988) (once a class action has been certified, "[s]eparate individual suits may not be maintained for equitable relief"); *Bennett v. Blanchard*, 802 F.2d 456, 456 (6th Cir. 1986) (affirming dismissal of a case when the plaintiff was a member in a parallel class action); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) (since class members generally "cannot relitigate issues raised in a class action after it has been resolved, a class member should not be able to prosecute a separate equitable action once his or her class has been certified").

Putative class members thus would have no chance to seek speedier or particularized relief by filing individual habeas petitions. *See* 8 U.S.C. § 1252(e)(2) (providing for individual habeas petitions to challenge issues arising from application of section 1225(b)(1)). If a class is certified, this Court will need to assess the due process ramifications of a multitude of factual circumstances and regional variations in immigration court resources. *See Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . Due process … is not a technical conception with a fixed content unrelated to time, place and circumstances."). Resolution of this case may well take significantly longer than resolution of an individual habeas petition limited to narrow claims and factual circumstances. Thus, certifying a nationwide class may well impede putative class members' access to speedier and/or particularized adjudication of their detention. Should the Court certify a class, that class should be limited individuals located in this jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for class certification.

DEFENDANTS' OPP TO CLASS CERT
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Dated: September 24, 2018

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

*/s/ Joseph A. Darrow*
JOSEPH A. DARROW
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 589-2445
Joseph.a.darrow@usdoj.gov

LAUREN C. BINGHAM
Trial Attorney

SARAH STEVENS WILSON
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 24, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Joseph A. Darrow*
Trial Attorney
United States Department of Justice

Defendants' Motion to Dismiss
(Case No. 2:15-cv-01543-RSM)

-26-

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 532-4700

# Exhibit A

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1623 EAST J STREET, SUITE 3
TACOMA, WA  98421


Northwest Immigrant Rights Project
Martinez, Stephanie M
███████████████
Seattle, WA  █████

In the matter of          File  █████████          DATE: Jul 24, 2018
GUZMAN-COLINDRES, IBIS


___ Unable to forward - No address provided.
___ Attached is a copy of the decision of the Immigration Judge. This decision
    is final unless an appeal is filed with the Board of Immigration Appeals
    within 30 calendar days of the date of the mailing of this written decision.
    See the enclosed forms and instructions for properly preparing your appeal.
    Your notice of appeal, attached documents, and fee or fee waiver request
    must be mailed to:    Board of Immigration Appeals
                          Office of the Clerk
                          5107 Leesburg Pike, Suite 2000
                          Falls Church, VA 22041
___ Attached is a copy of the decision of the immigration judge as the result
    of your Failure to Appear at your scheduled deportation or removal hearing.
    This decision is final unless a Motion to Reopen is filed in accordance
    with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
    1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
    1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
    motion must be filed with this court:
                          IMMIGRATION COURT
                          1623 EAST J STREET, SUITE 3
                          TACOMA, WA  98421
___ Attached is a copy of the decision of the immigration judge relating to a
    Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
    1208.31(g)(1), no administrative appeal is available. However, you may file
    a petition for review within 30 days with the appropriate Circuit Court of
    Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.

___ Attached is a copy of the decision of the immigration judge relating to a
    Credible Fear Review. This is a final order. No appeal is available.

 X  Other: **PLEASE SEE ATTACHED BOND MEMORANDUM OF THE IMMIGRATION JUDGE.**
_____

                                        COURT CLERK
                                        IMMIGRATION COURT                    FF
      cc: JASON STANLEY, ICE ASST. CHIEF COUNSEL
          1623 E  "J" STREET  SUITE #2
          TACOMA, WA,  98421

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
NORTHWEST DETENTION CENTER
IMMIGRATION COURT
TACOMA, WASHINGTON

In the Matter of:

Ibis Guzman-Colinderes,

Respondent

File Number ███████
In Bond Proceedings

Application:           Bond Re-determination

On Behalf of the Respondent
Stephanie Martinez, Esq.
███████████████████████

On Behalf of DHS
Jodilyn Erickson-Muldrew, Esq.
Assistant Chief Counsel
Department of Homeland Security
Immigration and Customs Enforcement
1623 East J Street, Suite 2
Tacoma, Washington 98421

**Memorandum of the Immigration Judge**

The court conducted a bond re-determination hearing on July 3, 2018. Respondent was represented by counsel. Respondent is a 24-year-old native and citizen of Honduras. Bond Exh. B-2 at 1. Respondent first entered the United States without inspection on May 16, 2018. Bond Exh. B-2 at 1-2. Respondent was found to have a credible fear of torture. Bond Exh. B-1 at 24. She is charged in the Notice to Appear (NTA) as being removable under INA§ 212(a)(7)(A)(i)(I) as an immigrant without valid entry documents. Respondent has been in Department of Homeland Security (DHS) custody since May 16, 2018. Bond Exh. B-2 at 1-2.

At Respondent's bond hearing, her counsel proffered that Respondent came to the United States with her 5-year-old son who is currently in Office of Refugee Resettlement (ORR) custody

1

in San Antonio, Texas. If released from immigration custody, Respondent plans to live with her United States citizen sister and lawful permanent resident mother in Los Angeles, California. Respondent's mother and sister paid smugglers and arranged to have them help Respondent and her young son travel from Honduras to the United States. However, Respondent claims that these smugglers abandoned her along the journey. Respondent crossed the Rio Grande River on a raft when she entered the United States illegally in May, 2018. She brought her 5-year-old child with her on her journey and across the river into the United States. At her bond hearing, Respondent initially stated that she used smugglers to cross the Rio Grande River, but later changed her testimony to say she did not use smugglers on that portion of her journey. She stated that she and her 5-year-old child were transported across the river at no cost.

Respondent submitted evidence in support of her bond request. Bond Exh. B-1. This evidence included (1) Respondent's declaration; (2) letters of support from friends and family; (3) a photograph of Respondent and her son; and (4) a portion of Respondent's credible fear report. *Id.*

DHS submitted a Record of Deportable Alien/Form I-213 and a record of sworn statement given by Respondent to the Border Patrol shortly after her apprehension. Bond Exh. B-2. These documents indicate that Respondent entered the United States without inspection along the southern border, five miles west of the Gateway International Port of Entry. *Id.* at 2. Respondent was encountered walking north from the Rio Grande River. *Id.* She admitted that she had recently entered the United States by crossing the Rio Grande River and that she knew it was illegal to enter the United States in this manner. *Id.* at 5. Respondent stated that she came to the United States to seek employment. *Id.* at 5-7. She also stated a fear of returning to Honduras. *Id.* at 7.

Under the regulations, the respondent carries the burden of demonstrating: (1) she is not a

danger to the community; and (2) she is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Matter of Urena*, 25 I&N Dec. 140 (BIA 2009). Relying on *Carlson v. Landon*, 342 U.S. 524 (1952) (holding that denial of bail to an alien will be overruled only where it is shown to be "without a reasonable foundation"). The Board of Immigration Appeals has stated there is no limitation on the discretionary factors that an Immigration Judge may consider when ruling on custody and bond issues. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). An immigration judge may consider various factors when setting bond such as: the respondent's immigration history, criminal record, family ties in the United States, employment history, and length of time in the United States. *Id.* at 39; *see also Matter of Andrade*, 19 I&N Dec. 488, 489-90 (BIA 1987) (listing factors, including whether the alien has potential relief from removal, for consideration in a bond hearing). If the court determines that the respondent is not a danger to the community, the court should then assess the respondent's potential risk of flight. *Id.* In setting a bond, the court should consider Respondent's ability to pay a bond. *Hernandez v. Sessions,* 872 F.3d 976, 1000 (9th Cir. 2017).

Based on the totality of evidence of record, the court does not find that the Respondent represents a danger to the community. However, the court finds Respondent represents a significant flight risk and therefore denies her request for bond. In making this determination, the court considered all of the evidence of record including but not limited to: (1) Respondent's length of residence in the United States; (2) Respondent's family and community ties in the United States; (3) Respondent's potential available relief from removal; (4) Respondent's employment history; (5) Respondent's criminal history; and (5) Respondent's immigration history.

Respondent has only recently arrived in the United States and has been in DHS custody the entire time. She has some family ties in the United States consisting of her United States citizen sister and lawful permanent resident mother. While these 2 family members have pledged their

support and sponsorship, the court is very concerned that these same individuals were the people who helped arrange and pay for human traffickers who were to bring Respondent and her young son to the United States and help them enter illegally. *See* 8 U.S.C. 1324(a)(1)(A) and (B) (establishing criminal penalties for alien smuggling, including conspiracy and aiding and abetting smuggling activities); *see also, Corvarrubias v. Gonzalez*, 487 F.3d 742, 747-50 (9th Cir. 2007) (holding that paying a smuggler to bring a family member to the United States from Mexico amounts to adding and abetting alien smuggling) (applying the same definition of alien smuggling activities under 8 U.S.C. § 1324(a)(2) in the context of INA §212(a)(2)(H)).   Respondent's relief is quite limited.  While she has been found to have a credible fear, that finding is as to torture only. Thus, it appears that Respondent's only relief from removal may be protection under the Convention Against Torture.   The court also notes that Respondent indicated her purpose in coming to the United States was to seek employment.  Her fear of return to Honduras is based ▬▬▬▬▬▬▬▬▬▬▬▬▬.  Bond Exh. B-1 at 25.  Respondent has not claimed that she was ever physically harmed in Honduras.  *Id.*  Her claim appears quite speculative at this point. *See* Matter of A-B-, 27 I&N Dec. 316 (A.G. 2018).   Respondent has never worked in the United States and she owns no property in this country.  Respondent used smugglers to help her travel to the United States and enter the United States illegally.  Moreover, Respondent chose to evade detection when she entered the United States by crossing the Rio Grande River with her very young child.  Respondent admitted that she knew it was illegal to enter the United States in that way. Significantly, Respondent entered the United States illegally just 5 miles from an established port of entry where she could have presented herself and her son and sought asylum.  Instead, she chose to employ smugglers and risk her son's life by crossing a river on a raft in a clandestine manner.

4

These circumstances, and the other factors discussed above, indicate that Respondent is unlikely to follow the directions of this court and appear at future hearings as required.

Respondent has limited ties to the United States; she has never been in this country before and her family ties are limited. Respondent's forms of relief from removal are likewise very limited. Respondent has limited incentive to appear at future hearings and she is a very poor bail risk.

Weighing these factors, the court finds that the Respondent has failed to meet her burden to show that she is not a flight risk. No bond amount or condition of parole will insure her presence at future hearings. The court therefore denies her request for bond. The court finds that conditional parole is not appropriate in this case.

## ORDER

The Respondent's motion for a custody re-determination is denied.

Dated: **7/20/18**

Appeal: Reserved by the Respondent

John Odell
Immigration Judge

5

U.S. DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
1623 EAST J STREET   SUITE 3
TACOMA, WA  98421

IN THE MATTER OF:                                        FILE: A

**GUZMAN-COLINDRES, IBIS**

*Attorney Hastine*                      Docket:  **TACOMA, WA**

RESPONDENT                              IN REMOVAL PROCEEDINGS

### CUSTODY ORDER OF THE IMMIGRATION JUDGE

Request having been made for a change in the custody status of the respondent pursuant to 8 C.F.R. Part 236 and having considered the representations of the Immigration and Customs Enforcement and the respondent, it is HEREBY ORDERED that:

_____   No Action _____

_____   ORDERED No Jurisdiction:
                _____ Arriving Alien.
                _____ Mandatory Detention under 236(c).
                _____ Reinstated  Order of Removal / Final Order of Removal
                _____ Withholding Only Proceedings
                _____ Does not meet the 180 day requirement.

__X__   ORDERED that the request for a change in custody status be denied.
        Bond to remain at $_____ or REMAINS AT NO BOND.

_____   ORDERED that the request be granted and that respondent be
        released from custody under bond of $_____

__X__   Danger to Community / Flight Risk.

__X__   OTHER Conditional release is:  granted / denied / was not requested.

                                John C. Odell
                                Immigration Judge
                                Date:  **July 3, 2018**

Appeal: WAIVED / RESERVED  (A/ ) / B)
*IF RESERVED – APPEAL IS DUE BY: August 2, 2018*

_____
CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:    MAIL (M)    PERSONAL SERVICE (P)    FAX (F)
TO:   [ ] ALIEN    [ ] ALIEN c/o Custodial Officer    [ ] Alien's ATT/REP    [P] ICE
DATE:   **July 3, 2018**        BY: COURT STAFF    CL
Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
_____  1T