The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

               Plaintiffs-Petitioners,

    v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

               Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

NOTED ON MOTION CALENDAR:
September 28, 2018

ORAL ARGUMENT
REQUESTED

## I.     **INTRODUCTION**

Defendants erroneously contend that this Court has no authority to determine if they are violating the right to seek asylum by unlawfully delaying credible fear determinations for Plaintiffs and the Proposed Credible Fear Interview Class ("CFI Class") they seek to represent. However, the failure to provide timely credible fear determinations as laid out in the Immigration and Nationality Act (INA) constitutes "agency action unlawfully withheld or unreasonably delayed," and thus is reviewable under the Administrative Procedures Act (APA). *See* 5 U.S.C. § 706(1). In addition, contrary to Defendants' contention, Plaintiffs' claims regarding delays in credible fear determinations are not encompassed by 8 U.S.C. § 1252(a)(2)(A) or 1252(e), as they do not challenge individual orders or determinations, decisions to apply the expedited removal process, or written policies or procedures. Furthermore, as Plaintiffs unambiguously challenge the prolonged detention resulting from Defendants' failure to process their asylum claims, their credible fear claims are properly raised under 28 U.S.C. § 2241.

Defendants' claims challenging delays and procedural failings in bond hearings for Plaintiffs and the Proposed Bond Hearing Class ("BH Class") they seek to represent are also unavailing. Contrary to Defendants assertions, Plaintiffs have due process and statutory rights to the relief they seek. It is well settled that this Court retains jurisdiction to resolve Plaintiffs' claims challenging their detention, and Plaintiffs have adequately stated a claim regarding bond hearings under the Fifth Amendment and the APA.

Lastly, the class-wide injunctive relief that Plaintiffs seek is available and appropriate in this case. Notwithstanding Defendants' position, 8 U.S.C. § 1252(f) is inapplicable as Plaintiffs do not seek an injunction "against the operation of" either 8 U.S.C. §§ 1225(b) or 1226(a); rather, Plaintiffs seek to enjoin Defendants' actions and policies violating those provisions.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

## II.   ARGUMENT

Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) claiming that the facts as alleged in the Second Amended Complaint, Dkt. 26, are insufficient on their face to invoke jurisdiction or to demonstrate a basis for relief. Dkt. 36 at 1, 5. To prevail on their motion to dismiss under Rule 12(b)(1), Defendants must demonstrate that Plaintiffs' allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d 1035, 1039 (9th Cir. 2004). To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs need only show that the "complaint . . . contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In conducting this inquiry, the Court "presumes that the facts alleged by the plaintiff are true" and "draw[s] all reasonable inferences from the complaint in [the Plaintiffs'] favor." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013) (citations, alterations, and internal quotation marks omitted).

**A.   Neither 8 U.S.C. § 1252(a) Nor 1252(e) Prohibits this Court from Reviewing Plaintiffs' Challenge to Defendants' Failure to Provide Timely Credible Fear Determinations**

The APA bars review of agency action "to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Thus, the Court must determine whether the INA precludes judicial review of the claims presented. Defendants assert that 8 U.S.C. § 1252(a)(2)(A) and 1252(e) preclude this Court from reviewing Plaintiffs' challenge to Defendants' failure to provide credible fear interviews within 10 days of expressing fear of return.[1] While those provisions limit how specific claims may be brought,

---

[1]   Defendants do not assert that the bar to discretionary actions, 5 U.S.C § 701(a)(2), is applicable, and for good reason, as the statute and regulations clearly mandate that the agency conduct credible fear determinations. *See* 8 U.S.C. § 1225(b)(1)(B)(i) ("An asylum officer shall conduct" credible fear interviews); 8 C.F.R. § 208.30(e), (f).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

cardinal rules of statutory construction guiding the jurisdictional analysis demonstrate that those subsections do not strip this Court of jurisdiction to review the claims presented here.

When the government claims a statute prohibits all judicial review, including through a habeas petition, "it must overcome both the strong presumption in favor of judicial review of administrative action and the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *INS v. St. Cyr*, 533 U.S. 289, 299 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003) (same). Application of this fundamental principle requires this Court to narrowly construe § 1252(a)(2)(A) and 1252(e). The Court should not accept the sweeping contention that this matter is categorically "not subject to judicial review." Dkt. 36 at 7 (quoting 8 U.S.C. § 1252(a)(2)). Nor should it accept Defendants' assertion that § 1252(a)(2)(A) and 1252(e) preclude this Court's jurisdiction. Those provisions only govern claims involving individual determinations or challenges to the validity of the expedited removal statute, implementing regulations, or written procedures or policies—all of which involve claims which Plaintiffs do not assert. Rather, Plaintiffs' claims are predicated on an accepting the validity of those statutes and regulations, and the lack of a policy or procedure requiring credible fear determinations to be timely completed. Thus, were the Court to adopt Defendants' argument, it would fail to heed the "clear statement of congressional intent" that the Supreme Court has repeatedly required before eliminating all jurisdiction over Defendants' practice, *St. Cyr*, 533 U.S. at 299, and deny Plaintiffs from "receiv[ing] their day in court." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir.2016) (internal quotation marks omitted).

Likewise, as the Supreme Court has held, this Court must strictly limit the jurisdictional provisions under 8 U.S.C. § 1252 to their express terms. For example, in interpreting 8 U.S.C. § 1252(g), a neighboring subsection, the Supreme Court held that despite its seemingly far reaching breadth, the provision was narrowly limited to the "three discrete actions" explicitly listed in that subsection. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482

(1999). Similarly, and just last term, the Supreme Court reaffirmed that same principle, narrowly construing the jurisdiction-stripping provisions of 8 U.S.C. § 1252(b)(9). *See Jennings v. Rodriguez*, 138 S. Ct. 830, 840-41 (2018) (finding that challenge to prolonged detention did not fall within § 1252(b)(9) because it was not a question of law "arising from any action taken or proceeding brought to remove [a noncitizen]"); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (explaining that other provisions of 8 U.S.C. § 1252 do not bar challenge to prolonged detention after final orders of removal). This Court should do the same in construing the provisions at issue here. As Plaintiffs explain below, applying the Supreme Court's exacting approach to 8 U.S.C. § 1252(a)(2)(A) and 1252(e) demonstrates that no portion of those sections bars judicial review over claims that seek to enforce the statutory and regulatory framework provided to asylum seekers under 8 U.S.C. §§ 1225(b) and 1158, and implementing regulations.

Specifically, Plaintiffs' credible fear claims are not "within the scope of sections 1252(a)(2)(A)(i), (iv)" as Defendants assert. Dkt. 36 at 7. First, § 1252(a)(2)(A)(i) bars judicial review only for those actions "arising from or relating to the implementation or operation of *an order of removal* pursuant to section 1225(b)(1)" (emphasis added). Defendants' arguments with respect to § 1252(a)(2)(A)(i) are based on the mistaken premise that Plaintiffs challenge the implementation of an expedited removal order, arguing that the proposed CFI Class members are "at all times prior to the credible fear interview . . . subject to an expedited removal order under section 1225(b)(1)." Dkt. 36 at 7. Members of the proposed CFI Class, all of whom have expressed a fear of return and an intention to seek asylum, are not yet subject to removal under an order of expedited removal because, as explained by the implementing regulations, the Department of Homeland Security (DHS) may "not proceed further with removal of the [noncitizen] until the [noncitizen] has been referred for an interview by an asylum officer." 8 C.F.R. § 235.3(b)(4); *see also* 8 C.F.R. § 208.30(g)(1)(ii) (providing that an expedited removal order be issued *after* a negative credible fear determination). Moreover, once a noncitizen

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

demonstrates a credible fear, any existing expedited removal paperwork is nullified, and the person is placed into regular removal proceedings before an immigration judge (IJ) under 8 U.S.C. § 1229a. 8 C.F.R. § 208.30(f); *Matter of X-K-*, 23 I&N Dec. 731, 733 (BIA 2005). Plaintiffs thus do not seek to challenge any action arising or relating from an order of removal.

This is amply illustrated by the Plaintiffs' cases. After Defendants ultimately determined that all named Plaintiffs had a credible fear of persecution or torture, their cases were withdrawn from the expedited removal process and transferred into removal proceedings before the immigration court. Dkt. 26 ¶¶95, 99, 103, 108. As a result, Plaintiffs' challenges to the delay in receiving credible fear interviews do not fall under § 1252(a)(2)(A)(i) because they do not seek review of—nor are they subject to—any order of expedited removal. *See Sissoko v. Rocha*, 440 F.3d 1145, 1160 (9th Cir. 2006), *withdrawn on other grounds*, 509 F.3d 947 (9th Cir. 2007) (concluding § 1252(a)(2)(A)(i) does not preclude jurisdiction where "there is no removal order").

Moreover, this case is clearly distinguishable from *Garcia de Rincon v. Department of Homeland Security*, 539 F.3d 1133, 1140 (9th Cir. 2008), which involved a challenge to a removal order predicated on an individual's prior expedited removal order. The court found that § 1252(e) precluded any attempt to collaterally challenge the expedited removal order. By contrast, there is no final order affecting Plaintiffs' claims in the instant case, and so Plaintiffs necessarily do not seek to challenge any final expedited removal order. They do not even seek to challenge the initiation of expedited removal proceedings against them.

Defendants also point to § 1252(a)(2)(A)(iv), which bars challenges to written "procedures and policies" implementing § 1225(b)(1) "except as provided in subsection (e)." First, this provision is not applicable to Plaintiffs, who do not contest the validity of the formal agency regulations and written procedures. Instead, Plaintiffs challenge the delays in Defendants' implementation of the statutory and regulatory procedures. These delays are not formal policies or procedures adopted by Defendants.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Second, § 1252(e)(3), as noted in its title, addresses only "Challenges on Validity of the System," that is, challenges to the statute itself, its implementing regulations, *see* § 1252(e)(3)(A)(ii), or written policies or procedures "to implement such section." 8 U.S.C. § 1252(e)(3)(A)(i). Plaintiffs do not bring any such challenge. Indeed, the statute specifies that any such challenge must be brought before the District Court for the District of Columbia, *see* § 1252(e)(3)(A), and filed "no later than 60 days after" the written procedure or policy "is first implemented," 8 U.S.C. § 1252(e)(3)(B). It would be impossible for Plaintiffs to raise these claims under § 1252(e)(3). It also would be nonsensical to require them to do so. This provision cannot apply to any claim challenging Defendants' *failure to implement the statute* because there would be no statute, regulation or written procedure to trigger the sixty-day timeline for bringing such a challenge. This would also lead to an absurd result; it would shield Defendants' actions misapplying the statute so long as they waited sixty days after enactment. Plaintiffs' claims are not subject to § 1252(e)(3) because they are not seeking judicial review over the validity of § 1225(b) or its implementing regulations, but instead, are asking this Court to review Defendants' failure to take nondiscretionary actions. *See infra* Section II.B. Rather than challenging the statutory scheme, Plaintiffs seek to *enforce* the existing statute and procedures in order to guarantee an expedited process for asylum seekers. *See, e.g.*, *Innovation Law Lab v. Nielsen*, No. 3:18-CV-01098-SI, --- F.Supp.3d ---, 2018 WL 3631886, at *4 n.1 (D. Or. July 31, 2018) (finding that § 1252(a)(2)(A)(iv) does not bar review of lawsuit challenging "specific actions . . . that conflict with the very procedures and policies that Defendants . . . have adopted").

Furthermore, as Defendants acknowledge, Plaintiffs' claims do not fall under § 1252(e)(2), which provides for habeas review of three discrete issues, none of which are applicable. For the same reasons, the bar to class certification under 8 U.S.C. § 1252(e)(1)(B) is also inapplicable. That provision states that courts may not certify a class "in any action for which judicial review is authorized under a subsequent paragraph of this subsection." 8 U.S.C. §

1252(e)(1)(B). But, as all parties agree, Plaintiffs' actions do not fall under 8 U.S.C. §§ 1252(e)(2) or (e)(3). Defendants cannot assert that Plaintiffs' credible fear claims do not fall under § 1252(e)(2) and 1252(e)(3), yet seek to bar Plaintiffs' class claims by invoking § 1252(e)(1)(B), which precludes class actions only for challenges arising under § 1252(e).

**B.    This Court Retains Jurisdiction to Review Plaintiffs' and the Proposed CFI Class's Constitutional Claim under the APA**

Defendants acknowledge "the Complaint correctly identifies the APA as a waiver for certain constitutional claims" with respect to the jurisdiction-channeling provisions in 8 U.S.C. § 1252(a)(2)(A) and 1252(e), but assert that "it is not appropriate for this claim because the claim falls outside of the scope of the APA's waiver." Dkt. 36 at 9. In other words, Defendants rely on their prior arguments that the INA precludes judicial review to support their assertion that the waiver provided in the APA is inapplicable. This argument provides no additional line of defense for Defendants: if they are correct with respect to § 1252(a)(2)(A) and 1252(e), then Congress has expressly closed the door on the credible fear claims presented under the APA. But, if Plaintiffs are correct that § 1252(a)(2)(A) and 1252(e) only limit review of challenges stemming from individual expedited removal orders and challenges to the validity of the expedited removal process, then Plaintiffs have in fact pled an appropriate waiver to sovereign immunity for their constitutional claim under the APA, in conjunction with jurisdiction under 28 U.S.C. § 1331.

Under the APA, an agency has a duty to conclude matters within a "reasonable time." 5 U.S.C. § 555(b). To challenge delayed agency action under 5 U.S.C. § 706(1), Plaintiffs need only show that the agency has failed to take a "*discrete* agency action it is *required to take*." *Norton v. South Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*"). Plaintiffs' credible fear claims easily satisfy that requirement. Indeed, Defendants do not claim otherwise, and only

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

argue that Plaintiffs' claims under 706(1) fail under the *TRAC* factors, discussed below.[2]

The Court has also explained that "[w]here no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *SUWA*, 542 U.S. at 61-62 (quoting 5 U.S.C. § 704). Thus, the "failure to act" challenge must be to the failure to take a "final agency action." *Accord Roshandel v. Chertoff*, No. C07-1739, 2008 WL 1969646, at *5 (W.D. Wash. May 5, 2008) (Pechman, J.) (dismissing government motion to dismiss case seeking to compel delayed FBI background checks necessary to for final adjudication of naturalization applications). Credible fear determinations, when taken, constitute final agency action. "As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations and internal quotation marks omitted).

As to the first condition, the credible fear determination marks the culmination of the agency's expedited removal process. When an asylum officer, a DHS official, determines that an individual has a credible fear, the case is transferred from DHS to the Executive Office for Immigration Review and new proceedings are initiated before the immigration court. 8 C.F.R. § 208.30(f). Accordingly, the credible fear determination marks the end of the decisionmaking power of one agency—DHS has no further role in adjudicating the case. *See id.* The credible fear determination thus constitutes DHS' final determination as to whether noncitizens will receive an opportunity to present their claim to the immigration courts, or whether they will be summarily

---

[2]    Discrete agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C. § 551(13). "Relief" is defined as "the whole or a part of an agency— . . . . (C) taking of other action on the application or petition of, and beneficial to, a person." *Id.* at § 551(11). Here, credible fear determinations qualify as "relief" as the agency is required to determine whether an individual gets to present an asylum claim before an immigration court. And as noted above, *supra* n.1, this is a mandatory action, or in other words, required.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

removed. *See* 8 U.S.C. § 1225(b)(1)(B)(ii)-(iii).

Plaintiffs also satisfy the second condition as legal consequences will flow from the credible fear determination. This determination controls whether an individual will be able to present applications for relief for "full consideration" by the immigration court, 8 C.F.R. § 208.30(f), or whether the agency may remove the noncitizen with an expedited removal order, *see id.* § 208.30(g). As such, the agency decision is a final action reviewable under the APA.

Defendants assert that because the Plaintiffs have already received their credible fear determinations, they are prohibited from "retroactively" challenging the delay. Dkt. 36 at 13. However, Plaintiffs may continue pursuing their challenge on behalf of CFI Class because the credible fear claims are inherently transitory. In addition, the credible fear claims are "capable of repetition, yet evading review," and thus are exempt from the mootness doctrine. *See infra* Section II.G.

Finally, Plaintiffs have demonstrated a plausible claim for unreasonable delay based on the six factors in *Telecommunications Research Action Center v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (citations and quotations omitted). In particular, Plaintiffs make a strong showing of the "human health and welfare . . . at stake," and the "nature and extent of the interests prejudiced by delay." *Id.* (citations and internal quotation marks omitted). Plaintiffs must remain detained until the credible fear determination is completed without the possibility of release, s*ee infra* Section II.C. at 11-12, and thus face serious harm to their liberty interests, as well their health and welfare. *Cf.* Dkt. 45 at 20-23 (discussing harm related to detention); *see also* Dkt. 26 ¶¶86-109, 153-54, 157-61. Furthermore, under the first *TRAC* factor, delays of more than 10 days are unreasonable. In the similar context of reasonable fear interviews, Defendant USCIS requires asylum officers to conduct interviews within 10 days. *See* 8 C.F.R. § 208.31(b).[3]

---

[3]    Because Plaintiffs, unlike individuals in reasonable fear process, have not previously been ordered removed or had the opportunity to present their asylum claims, their liberty interest in prompt adjudication of

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Defendant USCIS recognizes that the credible fear process is intended "to *quickly* identify meritorious claims to protection and to resolve frivolous ones with dispatch." USCIS, RAIO Directorate Training and Asylum Division Officer Training Course: Credible Fear of Persecution and Torture Determinations, 12 (Feb. 13, 2017) (quoting INS, Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8479 (Feb. 19, 1999)) (emphasis added). Requiring reasonably prompt action screenings is consistent with the statute, *see* § 1225(b)(1)(B)(iii)(III), and with Defendants' existing recognition that CFIs are intended to quickly screen potential asylum claims. Notably, Defendants acknowledge that the analysis is governed by the *TRAC* factors, but then fail to apply them, and instead argue only that class wide relief is not appropriate because what is "reasonable" differs for each class member, but provide no Ninth Circuit authority supporting their claim. Dkt. 36 at 13-14.

**C.    The Court Retains Jurisdiction to Review the Credible Fear Claim under § 2241**

In addition to the APA, this Court has jurisdiction under 28 U.S.C. § 2241 notwithstanding Defendants' contention otherwise. Dkt. 36 at 9. That 8 U.S.C. § 1252(a)(2)(A) and 1252(e) limit habeas review to certain types of challenges to expedited removal orders has no bearing on whether habeas review is available to challenge the protracted duration of detention during the credible fear process, which, as Defendants concede, falls within § 2241's scope.

As explained above, the government bears an exceptional burden in demonstrating that Congress intended to strip a court of habeas review, and must point to an unambiguous statement that explicitly prohibits review of the specific claim raised here. *See supra* Section II.A. at 3 (citing *St. Cyr*, 533 U.S. at 299, and *Demore*, 538 U.S. at 517). Defendants cannot meet that

---

their claims is arguably even stronger. Notably, IJs must review negative credible fear determinations even more quickly than negative reasonable fear determinations. *Compare* 8 U.S.C. § 1225(b)(1)(B)(iii)(III) (requiring IJs to conclude credible review review "as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days") *with* 8 C.F.R. § 208.31(g) (generally requiring IJs to conclude reasonable fear review within 10 days).

burden here, as § 1252(e)(2) makes clear that the scope of habeas review is limited to "*any determination made* under section 1225(b)(1) of this title" (emphasis added). Plaintiffs here invoke § 2241 to challenge the duration of their detention pending credible fear determinations, not to challenge a determination made under the expedited removal process.

Defendants evidently do not consider that depriving a person of their liberty for one or two months while waiting for a credible fear interview is substantial enough to constitute a basis for a habeas petition claiming unlawful detention under § 2241. But were Defendants keeping asylum seekers locked up for a year before providing the credible fear determination, there would be no serious question that such a practice is reviewable under § 2241. Thus, the real challenge goes to the merits of the claim—whether a delay of one or two months is unlawful—as opposed to whether this Court has jurisdiction over the issue presented.

As Defendants acknowledge, § 2241 authorizes "challenges to the fact or duration of detention." Dkt. 36 at 9. Because Plaintiffs clearly challenge the duration of their detention, Defendants attempt to paint Plaintiffs' detention as being "not directly linked to the timing of the credible fear hearing." Dkt. 36 at 9. This argument ignores that the statute *requires* detention until a credible fear determination is made. 8 U.S.C. § 1225(a)(1)(B)(iii)(IV). Defendants already have acknowledged that the proposed BH Class members—those who entered without inspection—are entitled to a bond hearing upon receiving a positive credible fear determination. Dkt. 36 at 2-3 (citing *Matter of X-K-*, 23 I&N Dec. 731). Members of the proposed CFI Class who are classified as "arriving" because they were apprehended at a port of entry, while not entitled to a bond hearing, may be released on parole, but only after a positive credible fear determination. 8 U.S.C. § 1182(d)(5)(A). Moreover, even those who are denied bond or parole— so long as they are found to have a credible fear—will be entitled to present their claims for resolution by the immigration court, leading to their release with lawful status or to their removal and release abroad. But until the credible fear determination is made, all proposed CFI Class

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

members are necessarily subject to mandatory detention, the legality of which may be challenged under § 2241. *Cf. Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973) (explaining that at the "core of habeas corpus" is any challenge that "seeks either immediate release from that confinement or the shortening of its duration."). Any interpretation failing to provide a mechanism for challenging the duration of confinement would violate the Suspension Clause of the Constitution.

**D.     Plaintiffs and Proposed CFI Class Members Have Due Process Rights**

Defendants' allegation that Plaintiffs and the proposed CFI Class lack "a baseline constitutional entitlement" to timely credible fear determinations, Dkt. 36 at 9, rests on a mischaracterization of Plaintiffs' claims: Plaintiffs do not argue they have a "constitutional right to enter or gain admission to the United States," Dkt. 36 at 9-10, nor request "particular procedures relating to" that admission, Dkt. 36 at 10. Defendants' reliance on caselaw discussing the rights of certain noncitizens with respect to their admission into the country—*see, e.g.*, *Landon v. Plascensia*, 459 U.S. 21, 32 (1982) (discussing right of noncitizen "seeking initial admission"), *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 216 (1953) (analyzing "respondent's right to *enter* the United States") (emphasis added), *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1449 (9th Cir. 1995) (discussing procedural rights "in the admission process")—is inapposite because Plaintiffs do *not* challenge Congress's "plenary power to make rules for the admission of [noncitizens]," Dkt. 36 at 10 (quoting *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972)). Instead, they seek only timely compliance with the law that Congress already saw fit to enact.

Plaintiffs are asylum seekers in search of protection. Their claims concern the right to apply for asylum. As detailed below, Plaintiffs seek only to enforce the rights they *do* have under the Fifth Amendment's Due Process Clause and statutes that Congress passed to govern Defendants' conduct. Regardless of the manner in which Plaintiffs arrived in the United States,

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Defendants may not unreasonably infringe upon this right by delaying their credible fear interviews and thus prolonging their detention. *See, e.g.*, Dkt. 26 ¶¶4-11.

Plaintiffs enjoy the protection of the Due Process Clause of the Fifth Amendment, particularly those who have "entered" the country albeit without inspection. "The Supreme Court has categorically declared that once an individual has entered the United States, he is entitled to the protection of the Due Process Clause." *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014); *see id.* at 1203 (clarifying that "[e]ven a [noncitizen] who has run some fifty yards into the United States *has entered* the country") (emphasis added). Defendants try to distract from Plaintiffs' entitlement to that protection by noting that Plaintiffs were "apprehended shortly after surreptitiously crossing the border." Dkt. 36 at 10. But neither the manner nor timing of their entry strips Plaintiffs of their due process rights. *See, e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ("Even one whose presence in this country is *unlawful*, involuntary, or *transitory* is entitled to that constitutional protection.") (emphases added); *Zadvydas*, 533 U.S. at 693 ("Once [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States . . . ."). A district court rejected a similar contention by Defendants in *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015). In *R.I.L-R*, Defendants claimed that the plaintiffs, as recent arrivals without lawful immigration status, did not have constitutional standing to advance their challenge to Defendants' custody determinations. The district court soundly dismissed this argument:

> "[T]he Supreme Court has made clear that 'once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.'"

*Id.* at 187 (quoting *Zadvydas,* 533 U.S. at 693). Even cases Defendants cite recognize due process rights for individuals who have entered without inspection. *See Mezei*, 345 U.S. at 212 ("It is true that [noncitizens] who have once passed through our gates, even illegally, may be

expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (same).

Proposed CFI Class members who "never entered the United States" because they were apprehended after they presented themselves at a port of entry, Dkt. 36 at 10, and thus fall under the "entry fiction," also enjoy due process rights in this context. While the Ninth Circuit in *Angov* remarked that such individuals, as a general matter, are not entitled to additional protections "beyond those which Congress has provided," 788 F.3d at 898 n.3, the proposed CFI Class asks for nothing more than the protections Congress has enacted. Congress has required that proposed CFI Class members be given the opportunity to present their claim in an interview with an asylum officer. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 U.S.C. § 1225(b)(1)(B)(i). They simply ask that the process that Congress has created be fairly implemented. *See also Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996).

What is more, by virtue of their status as asylum seekers, Plaintiffs and proposed CFI Class members—whether they have "entered" or not—are entitled to certain minimum due process. *See Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984) (noting, in case of Haitian refugee who arrived by boat and conceded he had not entered the United States, that asylum seekers may enjoy some "limited due process rights" under the Due Process Clause of the Fifth Amendment, for "constitutionally protected liberty or property interests may have their source in positive rules of law creating a substantive entitlement to a particular government benefit"). *Cf. Angov*, 788 F.3d at 898 n.3 (noting this is an "open question" in this circuit).

Plaintiffs and proposed CFI Class members—again, irrespective of whether they have "entered" the country—also enjoy substantive due process rights. *See, e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 973-74 (9th Cir. 2004) (declaring that "the entry fiction does not preclude substantive constitutional protection" and holding that non-admitted noncitizen came "within the ambit of the equal protection component of the Due Process Clause").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Defendants' reliance on other authorities is misplaced. *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), concerned the availability of the exclusionary rule to remedy Fourth Amendment violations that occurred in Mexico, not the United States. *Id.* at 262-64. Moreover, the *Verdugo-Urquidez* Court expressly clarified that the Fourth Amendment "operates in a different manner than the Fifth Amendment, which is not at issue in this case." *Id.* at 264; *see also id.* at 265-66. *Castro v. U.S. Department of Homeland Security*, 835 F.3d 422 (3d Cir. 2016), an out-of-circuit decision, also is readily distinguished. The plaintiffs in *Castro* were a group of asylum seekers who were subject to administratively final expedited orders of removal and sought to challenge "the substantive and procedural soundness of DHS's negative credible fear determinations" underlying their removal orders. *Id.* at 428. Unlike those at issue here, the *Castro* claims concerned the operation of their final removal orders, which goes to the heart of the provisions in 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(2). *See id.* at 426-27. Plaintiffs here simply seek the opportunity to *have* those determinations in a timely manner in accordance with the statutory scheme.

**E.     Plaintiffs and the Proposed BH Class Have Stated a Valid Due Process Claim**

Plaintiffs and proposed BH Class members—individuals imprisoned by DHS after having established a bona fide asylum claim—have a strong due process interest in liberty. *See supra* Section II.C; Dkt. 37 at 4-5; Dkt. 45 at 7-8; *see also Zadvydas*, 533 U.S. at 690. Plaintiffs and proposed BH Class members do not, as Defendants suggest, assert a "substantive right to release on bond." *See* Dkt. 36 at 14. Rather, they assert that the right to prompt bond hearings with basic procedural due process protections, including recordings, individualized determinations, and a presumption favoring release. Dkt. 26 at 2, 17, 26-30. In so doing, they have sufficiently alleged due process claims upon which this Court can grant relief.

As an initial matter, Defendants confuse Plaintiffs and proposed BH Class members with individuals seeking entry (also known as "arriving aliens"), who are eligible for parole. Dkt. 36

1    at 14-15 (referring to Plaintiffs as individuals who were apprehended at or near ports of entry).

2    Accordingly, Defendants erroneously rely on *Barrera v. Rison*, to claim that Plaintiffs lack an

3    adequate constitutional interest in release. Dkt. 36 at 14 (citing 44 F.3d 1441, 1449-50 (9th Cir.

4    1995) (en banc)). That case, however, involved an individual who had not legally entered and,

5    thus, was only eligible for parole. 44 F.3d at 1443. Plaintiffs and, by definition, proposed BH

6    Class members, have entered, albeit without inspection, and are eligible for release on bond.

7    *Matter of X-K-*, 23 I&N Dec. at 736.[4]

8

9    Moreover, Defendants attempt to challenge Plaintiffs' procedural due process claims in a

10   vacuum, simply restating the law and calling it "ample process," rather than applying any

11   analysis, let alone the required balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335

12   (1976). *See* Dkt. 36 at 15. Under this test, the need for prompt bond hearings, with the burden of

13   proof on the government, a recording or transcript, and a contemporaneous written decision

14   based on individualized factors, weighs heavily in favor of Plaintiffs and proposed BH Class

15   members. *See* Dkt. 45 at 7-16. Furthermore, Defendants' contention that the bond hearing

16   process is "easy to access" and "provide[s] . . . sufficient opportunity to obtain initial and

17   subsequent bond hearings," Dkt. 36 at 15, is belied by the evidence presented by Plaintiffs

18   demonstrating the many obstacles facing detained asylum seekers, and particularly those who are

19   pro se, *see* Dkt. 45 at 20-23.

20

21   With respect to Plaintiffs' claim that due process requires prompt bond hearings,

22   Defendants' motion relies exclusively on the absence of a statutorily-mandated deadline for bond

23   hearings, and, in so doing, ignores both agency and federal court case law mandating that bond

24

25   _____

26   [4]      The Attorney General (AG) recently indicated an intention to reconsider the validity of *Matter of X-K-*. *See Matter of M-G-G-*, 27 I&N Dec. 469 (A.G. 2018) (inviting briefing on the continued validity of decision

27   in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)). Nevertheless, that decision is based on the plain reading of the statute and implementing regulations, and is supported by over a half century of Supreme Court

28   jurisprudence.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

hearings take place as expeditiously as possible. *See* Dkt. 45 at 4, 9-10 (citing, inter alia, *Matter of Chirinos*, 16 I&N Dec. 276, 277 (BIA 1977); *Matter of Valles-Perez*, 21 I&N Dec. 769, 772 (BIA 1997); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017); *Nguti v. Sessions*, 259 F. Supp. 3d 6, 14 (W.D.N.Y. 2017)); *accord Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981). Thus, the absence of a statutory deadline is not determinative of the existence of a due process violation; where a liberty is at stake, due process requires a bond hearing "as promptly as possible" and certainly within seven days of an affirmative request by a detained asylum seeker.

Defendants also fail in their effort to dismiss Plaintiffs' claim that the government should bear the burden of proving that continued detention is warranted. Defendants exhaustively cite cases in which courts upheld the fact or length of detention, but those cases are distinguishable in two important respects: first, those cases did not involve detained asylum seekers who already demonstrated a bona fide asylum claim to DHS; and second, none of the cases addressed, let alone resolved, the question of which party bears the burden of proof. *See* Dkt. 36 at 15-16 (citing *Demore*, 538 U.S. at 531; *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *Zadvydas*, 533 U.S. at 701; *Jennings*, 138 S. Ct. at 882). *Stare decisis* is not applicable unless the issue was "squarely addressed" in the prior decision. *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993); *see also Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Moreover, placing the burden of continued detention on DHS and restoring the presumption of release is consistent with Congressional intent. It would not, as Defendants suggest, "cause practical problems that Congress has sought to address." Dkt. 36 at 16. As detailed in Plaintiffs' preliminary injunction motion, Congress has legislated the allocation of burden of proof only with respect to individuals with certain criminal convictions. Dkt. 45 at 11.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Indeed, Congress enacted that change understanding that the agency had already clarified that all others do not bear the burden. Dkt. 45 at 10-13.

Finally, Plaintiffs also have sufficiently alleged a due process violation with respect to the lack of transcripts, recordings, or particularized findings underlying an IJ's decision to deny release, all of which interfere with proposed BH Class members' right to appeal IJ decisions denying release. *See Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011) (addressing agency's refusal to provide transcripts or an adequate substitute); *Agonafer v. Sessions*, 859 F.3d 1198, 1207 (9th Cir. 2017) (addressing agency's obligation to consider all issues raised "in a manner showing that it 'heard and thought and not merely reacted'" (citation omitted)); *cf. Bergerco, U.S.A. v. Shipping Corp. of India*, 896 F.2d 1210, 1215 (9th Cir. 1990) (addressing lack of availability of a transcript); *see also* Dkt. 45 at 13-14.

Defendants try to avoid these commonsense protections by claiming that "Congress did not want detention hearings to resemble mini-trials." Dkt. 36 at 17 (citing *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986)). However, the pre-trial criminal detention hearing in *Martir* was conducted under the Bail Reform Act of 1984. As a result, the hearing already contained all the due process protections Plaintiffs seek here, as well as the right to appointed counsel: the hearing was recorded, the court issued a "written memorandum," and the government bore the burden "of providing that no combination of release conditions would reasonably assure [the defendant's] presence at trial." *Id.* at 1143, 1145 n.2. That the *Martir* court ultimately upheld the bail denial at issue there—of bail in a criminal case where the defendant had a panoply of due process protections—simply does not speak to whether it violates due process to deny basic due process protections to asylum seekers challenging their civil incarceration. Likewise, Defendants' reliance on Supreme Court and Ninth Circuit case law addressing transcript requirements in criminal trials, Dkt. 36 at 18, where proceedings are recorded verbatim and transcripts are routinely prepared, does not address the situation here.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Unlike criminal trials, IJs are not required to record bond proceedings, impairing Plaintiffs ability to appeal their cases. *See Mayer v. City of Chicago*, 404 U.S. 189, 195 (1971) (noting that a "full verbatim record" is "necessary to assure the indigent as effective an appeal" as wealthier defendants, and placing burden on state to justify provision of partial transcripts); *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000) ("The transcript in this case makes clear that Colmenar was not given a full and fair hearing or a reasonable opportunity to present evidence on his behalf."). Thus, although "various protections that apply in the context of a criminal trial do not apply in a deportation hearing," *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984), prompt bond hearings, transcripts, recordings, written bond decisions, and appropriate application of the burden of proof are fundamental protections that must apply as a constitutional matter.

**F.     This Court Should Not Dismiss the Proposed BH Class's APA Claims**

**1.   This Court Has Jurisdiction over the 5 U.S.C. § 706(2) Claim**

With regard to their claims challenging Defendants' bond hearing procedures, Plaintiffs challenge final agency action—Defendants' uniform policies setting forth the agency's position on the applicability of those procedures that Defendant EOIR is obligated to follow. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) ("The burden is on the [noncitizen] to show to the satisfaction of the [IJ] that he or she merits release on bond."); *Matter of Chirinos*, 16 I&N Dec. 276, 277 (BIA 1977) ("[T]here is no right to a transcript of a bond redetermination hearing."); EOIR, Operating Policies and Procedures Memorandum 96-4: Processing of Motions and Appeals at 5 (Jun. 19, 1996) (requiring IJs to prepare bond memoranda after a bond appeal has been filed). Defendants acknowledge that (1) IJs issue written decisions with particularized findings only if—and after—a noncitizen files an appeal, (2) bond hearings are not required to be transcribed or recorded, and (3) the asylum seeker bears the burden of proof in initial bond hearings. Dkt. 36 at 15-20. IJs are bound by precedential Board of Immigration Appeals (BIA) decisions. *See* 8 C.F.R. § 1003.1(g) (stating that precedential BIA decisions are "binding on all . .

. immigration judges in the administration of the immigration laws of the United States"). Furthermore, Defendants have a uniform practice of applying these policies. *See* Dkt. 45 at 19-20; *see also R.I.L-R*, 80 F. Supp. 3d at 184 (holding that the relevant action "need not be in writing to be final and judicially reviewable"); *Wagafe v. Trump*, No. C17-0094, 2017 WL 2671254, at \*10 (W.D. Wash. June 21, 2017) (recognizing as final agency action a program of delaying adjudication of immigration applications).[5]

Finally, Defendants' suggestion that the allocation of the burden of proof is set by statute and not agency action, and thus is not subject to challenge under the APA, *see* Dkt. 36 at 20, is simply untrue. *See* Dkt. 45 at 10-13 (explaining that Congress only mandated that noncitizens bear the burden of proof in the case of individuals with certain criminal convictions); *Jennings v. Rodriguez*, 138 S. Ct. 830, 847-48 (2018) (finding that § 1226(a) does not speak to the allocation of burden of proof in hearings conducted after six months' detention); *Matter of Adeniji*, 22 I&N Dec. 1101, 1113 (BIA 1999) (interpreting immigration regulations on DHS custody determinations to require that noncitizens bear the burden of proof in bond hearings). Thus, this Court has jurisdiction over Plaintiffs' § 706(2) bond hearing claims.

### 2. The Proposed BH Class Alleged a Valid Unreasonable Delay Claim under 5 U.S.C. § 706(1)

Plaintiffs and the Proposed BH Class's 5 U.S.C. § 706(1) claim does not fail as a matter of law. Defendants' practice of delaying bond hearings for at least seven days after they are requested is unreasonable under the *TRAC* factors. As Plaintiffs previously explained, EOIR Defendants' own directive to conduct prompt bond hearings, combined with Defendants' and the courts' interpretations of required promptness in analogous situations, demonstrate that bond

---

[5]     That Defendants are not barred from recording hearings or applying other procedural protections, *see* Dkt. 36 at 20 (citing *Matter of Khalifah*, 21 I&N Dec. 107, 112 (BIA 1995)), does not change that the agency recognizes no affirmative obligation to provide these procedural protections. Thus, absent injunctive relief, Plaintiffs and proposed BH class members, especially those who are without legal representation, frequently will be forced to proceed without them.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

hearings reasonably must be held within seven days of request. *See* Dkt. 45 at 17-19; *supra*

Section II.E). Furthermore, Plaintiffs and proposed BH Class members' health and welfare are

harmed by continued detention without a hearing and their fundamental liberty interests are

affected, whereas requiring prompt action would simply require Defendants to act expeditiously

in keeping with their own priorities. *See* Dkt. 45 at 8-9, 17-19.

Defendants do not address the Proposed BH Class's claims under the *TRAC* factors in

their motion to dismiss. Instead, they simply claim that the § 706(1) delay claim should not be

resolved on a class wide basis. Dkt. 36 at 20. But this Court has done so previously, without

relying solely on a statutory or regulatory deadline. *See Roshandel*, 2008 WL 1969646, at *8

(acknowledging that "what constitutes a reasonable time frame to act requires factual analysis,"

but denying motion to dismiss a class-wide § 706(1) claim); *Rosario v. USCIS*, No. C15-

0813JLR, 2017 WL 3034447, at *9-10 (W.D. Wash. July 18, 2018) (granting class certification

motion for plaintiff class facing unreasonable delay in adjudication of employment authorization

document applications). Furthermore, contrary to Defendants claims, Plaintiffs do not ask the

Court to evaluate Defendants' delays "in the abstract." Dkt. 36 at 20 (quoting *Mashpee*

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). Instead, as

required by the Ninth Circuit (and in the *Mashpee Wampanoag* decision itself), Plaintiffs submit

that this Court should apply the *TRAC* factors, including EOIR Defendants' prioritization of

detained cases, to find that Defendants' practice of delaying bond hearings is unreasonable. *See*

*Brower v. Evans*, 257 F.3d 1058, 1068-69 (9th Cir. 2001) (applying the *TRAC* factors); *Mashpee*

*Wampanoag Tribal Council, Inc*, 336 F.3d at 1102 (noting that district courts can "exercise

discretion in determining how soon the agency must act"); *see also* Dkt. 45 at 17-19.

**G.   Plaintiffs Orantes and Vasquez Have Sufficiently Stated Claims for Relief as to
       Their Bond Hearings**

Defendants further claim that the named Plaintiffs' claims are moot and that they thus

lack a legally cognizable interest in the case. *See* Dkt. 36 at 21. However, although Plaintiffs

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

1  ultimately were released from detention, the claims at issue here are not predicated on release in

2  any individual's case. Rather, Plaintiffs seek to enjoin the policies that Defendants applied to

3  Plaintiffs Orantes and Vasquez and continue apply to class members.

4      For at least two reasons, Plaintiffs can continue these claims despite their release from

5  detention. First, where claims are inherently transitory, a class action will remain live even if the

6  named plaintiff's claims may be moot. This is true so long as the claims of proposed BH Class

7  members are not moot; in such cases, certification of the class action complaint can "relate back"

8  to the time it was filed. *Sosna v. Iowa*, 419 U.S. 393, 399-402 & n.11 (1975); *see also Pitts v.*

9  *Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011) ("[T]he termination of a class

10  representative's claim does not moot the class claims."); *Rivera v. Holder*, 307 F.R.D. 539, 548

11  (W.D. Wash. 2015) (applying relation back doctrine even though class certification was

12  considered "well after" plaintiff's claim became moot). Courts recognize that this doctrine

13  applies to immigration detention class action complaints where the named plaintiffs are released

14  prior to resolution of the class claims. *See, e.g.*, *Khoury v. Asher*, 3 F. Supp. 3d 877, 891 (W.D.

15  Wash. 2014). Second, the fundamental exception to the mootness doctrine for conduct that is

16  "capable of repetition, yet evading review" applies. *See, e.g.*, *Kingdomware Techs., Inc. v.*

17  *United States*, 136 S. Ct. 1969, 1975-76 (2016) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17

18  (1998)). Here, Defendants will evade review due to the transitory nature of Plaintiffs' claims

19  and, given Defendants' ongoing practice of conducting delayed bond hearings, Plaintiffs would

20  likely be subject to the same conduct if DHS were to re-detain them.

21      Defendants also allege that Plaintiffs lack standing because they did not use "the full

22  panoply of process available under section 1226(a)." Dkt. 36 at 21. But, while individuals who

23  receive a custody determination from an IJ "may" elect to appeal those decisions to the BIA, 8

24  C.F.R. § 1003.19(f), exhaustion of administrative remedies is not necessary in immigration

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

detention challenges. *See Hernandez v. Sessions*, 872 F.3d 976, 988-89 (9th Cir. 2017).[6] Nor does the fact that Defendants subsequently released Plaintiff Orantes, after denying her bond at her hearing and before she had the opportunity to administratively appeal, defeat her claim. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 170 (2000) ("A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice" unless "the challenged conduct cannot reasonably be expected to recur." (citations omitted)).[7]

## H.  Class-wide Injunctive Relief Is Appropriate and Available.

Finally, Defendants' argument that 8 U.S.C. § 1252(f)(1) prohibits class-wide injunctive relief is not supported by case law and is contrary to the text of the statute. Under the provision's plain language, the prohibition is limited to injunctions "against the operation of [8 U.S.C.] §§ 1221-1232." *See Reno*, 525 U.S. at 481. Plaintiffs are not seeking an injunction "against the operation of" either 8 U.S.C. §§ 1225(b) or 1226(a); rather, they seek to enjoin Defendants' actions and policies violating those provisions. As explained above, Defendants are implementing the CFI determinations and bond hearings in a manner contrary to the governing statutes' language, intent, and context as well as the Due Process Clause of the Fifth Amendment. *See supra* at 8-23. Accordingly, and as several courts have found, § 1252(f)(1) does not bar class-wide relief in this situation. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) (*"Section 1252(f) prohibits only injunction of 'the operation of' the detention statutes, not injunction of a violation of the statutes . . . ."); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 328 (D.D.C. 2018) (same); *R.I.L-R.,* 80 F. Supp. 3d at 184 (same); *Abdi v. Duke*, 280 F. Supp. 3d 373,

---

[6]     Although Plaintiff Vasquez agreed to a stipulated bond amount that Defendants set in his case, he did so in the context of a hearing in which he would bear the burden of proof and would not receive a particularized decision, recording or transcript in time to assist in an appeal, and after he already had been awaiting a hearing for several weeks.

[7]     Plaintiffs Padilla and Guzman no longer seek to be appointed as class representatives for the Proposed BH Class. *See* Dkt. 37 at 2. Thus, they no longer pursue the bond hearing claims.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

409 (W.D.N.Y. 2017) ("Where, as here, the moving party does not seek to enjoin the operation of §§ 1221-1231, and instead, seeks to enjoin violations of the statutory and regulatory framework, the class-wide prohibition on injunctive relief is inapplicable." (internal quotation marks omitted)); *Cabrera Diaz v. Hott*, 297 F. Supp. 3d 618, 627-28 (E.D. Va. 2018) (finding § 1252(f)(1) does not apply to injunctions "requiring respondents to comply with the terms of the INA" ).

As the Supreme Court explained in *Jennings v. Rodriguez*, § 1252(f)(1) prohibits "classwide injunctive relief against the operation of §§ 1221-123[2]." 138 S. Ct. 830 at 851 (alteration in original) (citation omitted). The *Jennings* Court then acknowledged that the Ninth Circuit had previously held that § 1252(f)(1) does not apply where the moving party seeks only an injunction against the government's unlawful interpretation of the law, without criticizing or rejecting that reasoning. *Id*. Indeed, subsequent to *Jennings* courts have continued to certify class actions challenging the unlawful application of the statute. *See Banos v. Asher*, No. C16-1454JLR, 2018 U.S. Dist. LEXIS 57546 (W.D. Wash. Sept. 19. 2018). In sum, Plaintiffs seek an order requiring Defendants to correctly enforce the law governing their credible fear interviews and their detention. Section 1252(f)(1) has no relevance to that determination.

Lastly, § 1252(f)(1) does not prohibit class-wide declaratory relief. *See, e.g., Gonzalez v. Sessions*, 325 F.R.D. 616, 626 (N.D. Cal. June 5, 2018) ("[T]he text of the Act clearly shows that Section 1252(f) was not meant to bar classwide declaratory relief.") (citation omitted). Defendants do not even attempt to argue that declaratory relief is forbidden by § 1252(f)(1).

### III.    CONCLUSION

This Court should deny Defendants' motion to dismiss with respect to all claims.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

RESPECTFULLY SUBMITTED this 24th day of September, 2018.

_s/ Matt Adams_
Matt Adams, WSBA No. 28287
Email:  matt@nwirp.org

_s/ Glenda M. Aldana Madrid_
Glenda M. Aldana Madrid, WSBA No. 46987
Email:  glenda@nwirp.org

_s/ Leila Kang_
Leila Kang, WSBA No. 48048
Email:  leila@nwirp.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT
615 Second Avenue, Suite 400
Seattle, WA  98104
 (206) 957-8611

_s/ Trina Realmuto_
Trina Realmuto*
Email: trealmuto@immcouncil.org

_s/ Kristin Macleod-Ball_
Kristin Macleod-Ball*
Email: kmacleod-ball@immcouncil.org

AMERICAN IMMIGRATION COUNCIL
100 Summer Street, 23rd Floor
Boston, MA 02110
(857) 305-3600

*Admitted _pro hac vice_

*Attorneys for Plaintiffs-Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2018, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if applicable, shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 24th day of September, 2018.


*s/ Leila Kang*
Leila Kang, WSBA No. 48048
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8608
Email: leila@nwirp.org

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611