*The Honorable Marsha J. Pechman*

1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
9            WESTERN DISTRICT OF WASHINGTON
                      AT SEATTLE
10

11   YOLANY PADILLA,  IBIS GUZMAN,  BLANCA            No. 2:18-cv-928  MJP
     ORANTES,  BALTAZAR VASQUEZ,
12
                            Plaintiffs-Petitioners,
13                                                    **DEFENDANTS'**
           v.                                        **OPPOSITION TO**
14                                                   **PLAINTIFFS' MOTION**
     U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT        **FOR A PRELIMINARY**
15   ("ICE"); U.S. DEPARTMENT OF HOMELAND            **INJUNCTION, ECF 45**
     SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
16   PROTECTION ("CBP"); U.S. CITIZENSHIP AND
     IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
17   OFFICE FOR IMMIGRATION REVIEW ("EOIR");         NOTE ON MOTION
     THOMAS HOMAN, Acting Director of ICE; KIRSTJEN  CALENDAR: OCTOBER 26,
18   NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,  2018.
     Acting Commissioner of CBP; L. FRANCIS CISSNA,
19   Director of USCIS; MARC J. MOORE, Seattle Field Office
     Director, ICE, JEFFERSON BEAUREGARD
20   SESSIONS III, United States Attorney General; LOWELL
     CLARK, warden of the Northwest Detention Center in
21   Tacoma, Washington;  CHARLES INGRAM, warden of the
     Federal Detention Center in SeaTac, Washington;  DAVID
22   SHINN, warden of the Federal Correctional Institute in
     Victorville, California; JAMES JANECKA, warden of the
23   Adelanto Detention Facility;
24
25                          Defendants-Respondents.
26

27

28

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................ 4

ARGUMENT ........................................................................................................ 5

   I.     Plaintiffs cannot show a likelihood of success on the merits of their claims. .................. 5

      A.     The Court lacks jurisdiction to enter the injunction. .................................................... 5

      B.     Plaintiffs have not shown a likelihood of success in overriding immigration court scheduling considerations to require bond hearings to occur within seven days of the class member making a request. ......................................................................................... 7

      C.     Plaintiffs have not shown a likelihood of success on their claims for procedural alterations to bond hearings. ...................................................................................... 13

   II.     Plaintiffs cannot show irreparable injury absent preliminary injunctive relief. ............. 21

   III.    The proposed injunction is not in the public interest. .................................................... 23

CONCLUSION .................................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................ 26

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

## INTRODUCTION

Plaintiffs seek immediate mandatory preliminary injunctive relief for the "bond hearing class," defined as aliens who Plaintiffs contend are eligible for bond hearings under the Board of Immigration Appeals' (Board) decision in *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005). The relief sought would remove the immigration courts' authority to manage their dockets and instead require bond hearings to be held within seven days under a standard that the Supreme Court has described as legally inconsistent with the immigration detention statutes. The Court should reject Plaintiffs' attempt to legislate new scheduling and procedural requirements by injunction.

Plaintiffs have not demonstrated a likelihood of success on the merits of the class claims for the relief sought in the motion. This Court lacks jurisdiction to enter the injunction sought here because the named Plaintiffs lack standing to bring the motion and the relief sought is plainly barred by 8 U.S.C. § 1252(a)'s provision channeling their challenges to the D.C. Circuit and by 8 U.S.C. § 1252(f)(1)'s bar on classwide injunctive relief from the ordinary operation of the challenged provision of the Immigration and Nationality Act (INA).

Plaintiffs have also failed to demonstrate that they are entitled to relief under the appropriate legal framework governing their claims. The proposed class is not entitled to bond hearings within seven days either as a constitutional matter or under 5 U.S.C. § 706(1). Putative class members are subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and therefore lack a due process interest with respect to their release during the pendency of removal proceedings. But even accepting Plaintiffs' asserted liberty interest, the Executive Office of Immigration Review (EOIR) has a weighty interest in maintaining control over its own dockets to afford courts the flexibility to react to changing circumstances. The injunction would necessarily impair EOIR's ability to administer the immigration courts and result in regular delays in merits adjudications. Plaintiffs' limited interests are insufficient to justify their demand for a bond hearing within seven days' time. Plaintiffs' procedural challenges likewise fail as the putative class is confusingly defined to include individuals who cannot plead harmful error, an established element of their claims. Even if the proposed class could state a claim, it would fail as the procedures sought exceed even those required for aliens Congress deemed eligible for bond hearings under 8 U.S.C.

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

§ 1226(a), or citizens in criminal proceedings, and would impose a significant hardship to the immigration courts.

Plaintiffs have also failed to demonstrate that they face irreparable harm or that the injunction is in the public interest. Plaintiffs acknowledged that they are currently being afforded bond hearings but simply quibble with the timing of those hearings. Plaintiffs' desire to impose its own prioritization on immigration courts is not the basis for a cognizable harm. Even so, Plaintiffs' claims could be effectively addressed after the parties have the opportunity to present their claim in full merits briefing; indeed, what they impermissibly seek in this preliminary motion is essentially final relief. The government has a legitimate interest in the administration of the laws of Congress and a weighty interest in making resource allocation decisions in immigration court. The request for a preliminary injunction should be denied.

Finally, this Court should not act on the motion at this time. In February 2018, the Supreme Court held in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), that section 1225(b) does not permit bond hearings. 131 S. Ct. at 842. Because of the *Jennings* decision, the Attorney General is now reevaluating the decision in *Matter of X-K-* to determine whether the decision "should be overruled in light of *Jennings*." *Matter of M-S-*, 27 I. & N. Dec. 476 (A.G. 2018). Briefing on that administrative decision scheduled to conclude by November 9, 2018. Because *Matter of X-K-* is the administrative basis for the bond hearings Plaintiffs seek to be held within seven days, it would be prudent to await the administrative process relating to that decision before taking action on the request for injunctive relief. *See El Rescate Legal Services, Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 747 (9th Cir. 1992) (the agency "might take action that would render unnecessary [the Court's] consideration of constitutional issues").

## BACKGROUND

A.   <u>Immigration Bond Hearings</u>. Aliens apprehended at or the near the port of entry without valid entry documentation are detained under 8 U.S.C. § 1225(b)(1)(B)(ii). If the alien is determined to have a credible fear of removal, the alien is referred to removal proceedings for further consideration of the alien's application for asylum. *Id.* "The plain meaning of [section 1225(b)(1)(B)(ii)] is that detention must continue until immigration officers have finished

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

"consider [ing]" the application for asylum." *Jennings*, 138 S. Ct. at 845. In contrast, aliens encountered and taken into detention within the interior are placed directly into removal proceedings are may either be statutorily eligible for bond hearings or subject to mandatory detention. *See* 8 U.S.C. § 1226(a); § 1226(c). Under *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), however, section 1225(b)(1)(B)(ii) detainees apprehended after illegal entry are eligible for bond hearings as if detained under 8 U.S.C. § 1226(a) and its implementing regulations. In *Matter of X-K-*, the Board of Immigration Appeals ("Board") determined that aliens who present themselves at a port of entry are detained under section 1225(b), and cannot receive a bond hearing, even if they establish a credible fear and are placed into removal proceedings. But the Board interpreted the existing regulations as not barring bond hearings for aliens who are apprehended *between* ports of entry – *i.e.*, aliens who have crossed the border illegally – if they establish a credible fear of removal. That reading is now in tension with the Supreme Court's recent ruling in *Jennings*, where the Court explained that section 1225(b)(1)(B)(ii) "mandates detention" throughout removal proceedings and "not just until the moment those proceedings begin." *Jennings*, 138 S. Ct. at 845.

When an eligible alien requests a bond hearing, the hearing is scheduled as promptly as possible in light of docket space, attorney availability, and other procedural and logistical considerations. Declaration of Joseph Neifert, ECF 66 at ¶ 13; Declaration of Hilma Torres, ECF 67 at ¶ 13. Immigration courts with a detained docket generally reserve regular blocks of time for bond hearings that are filled on a rolling basis. Neifert Decl. at ¶ 13; Torres Decl. at ¶ 13. A significant portion of the remaining docket time is devoted to merits hearings that may be scheduled months in advance. *See e.g.* Neifert Decl. at ¶ 15; Torres Decl. at ¶ 15. Some merits hearings may be difficult to reschedule due to attorney or witness availability or simply due to the amount of time necessary to complete the merits hearing. Neifert Decl. at ¶ 13; Torres Decl. at ¶ 13. If there are more bond requests in a given week than can be addressed during the time allotted for bond hearings, and the docket is otherwise full of merits hearings, the bond hearing may have to be scheduled for the next available bond hearing block. Neifert Decl. at ¶ 13, 15; Torres at ¶ 13, 15. Otherwise the merits hearings already scheduled would need to be rescheduled, causing

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

significant disruption to the cases of other detainees. *Id*. The alien has the burden of demonstrating that he or she is statutorily eligible for bond, is not a flight risk, and is not a danger to the community in order to obtain release on bond. 8 C.F.R. § 236.1(c); *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). There is no policy requiring that bond hearings be recorded (though some are). If either party appeals the immigration judge's (IJ) bond decision, the IJ will prepare a written bond memorandum that sets forth the grounds for the bond determination. *See* Immigration Court Practice Manual, § 9.3(e)(vii) (Aug. 2, 2018), https://www.justice.gov/eoir/page/file/1084851/download; *see e.g.* Torres Decl. ¶ 18.

B.     <u>Class Representatives</u>. Plaintiffs have proposed two representatives for the class for whom they seek injunctive relief: Blanca Orantes and Baltazar Vasquez. Orantes entered the United States without inspection on May 21, 2018, was apprehended shortly thereafter, and expressed fear of returning to El Salvador. ECF 26 at ¶ 44; ECF 12 at 14. Orantes had a credible fear interview on June 27, 2018, and received a positive credible fear determination on June 28, 2018. ECF 12 at 21. On July 3, 2018, counsel for Orantes called the immigration court to request a bond hearing. Neifert Decl. ¶ 20. An IJ conducted Orantes's bond hearing on July 16, 2018. Neifert Decl. ¶ 20. The hearing was recorded. *Id*. She was denied bond, but was released on an Order of Recognizance on July 25, 2018. Declaration of David W. Jennings, ECF 65,  ¶ 27. She did not file an appeal of her bond decision. Neifert Decl. ¶ 20. Vasquez entered the United States without inspection on or about June 1, 2018, was apprehended shortly thereafter, and expressed a fear of returning to El Salvador. ECF 26 at ¶ 46; Jennings Decl. ¶ 15. He was interviewed by an asylum officer on July 31, 2018, and received a positive credible fear determination on August 2, 2018. ECF 26 at ¶ 108; Jennings Decl. ¶ 20. Vasquez requested a bond hearing on August 3, 2018. Torres Decl. ¶ 18. His bond hearing was conducted on August 20, 2018, and it was recorded by the IJ. *Id*. He stipulated to a bond in the amount of $8,000.00, and was released. ECF 36-1, Vasquez Bond Order. He waived appeal of the bond order. *Id*.; Torres Decl. ¶ 18.

## LEGAL STANDARD

A plaintiff seeking a preliminary injunction must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cali.*, 840 F.2d 701, 704 (9th Cir. 1988). Preliminary injunctive relief is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689 (2008), and should be awarded only "upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22. The burden is even higher where, as here, the movant seeks a "mandatory injunction," which rather than preserving the status quo ,""orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal citation and quotation marks omitted). "[M]andatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]" *Id.* (internal citation and quotation marks omitted).

## ARGUMENT

### I. Plaintiffs cannot show a likelihood of success on the merits of their claims.

   A.   <u>The Court lacks jurisdiction to enter the injunction.</u>

      1.   Plaintiffs lack standing to bring a motion for preliminary injunction.

At the threshold, Plaintiffs cannot show any likelihood of success on the merits because they lack standing to bring this request for temporary, prospective injunctive relief. To establish standing, Plaintiffs must have suffered an injury in fact that is "concrete and particularized[,]" "actual or imminent, not conjectural or hypothetical[,]" and is both fairly traceable to the challenged conduct of the defendant and likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). At the preliminary injunction stage, a plaintiff must make a "clear showing" of the elements of standing. *See Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). Where a plaintiff premises his claim for injunctive relief on predicted future injury, that "threatened injury must be certainly impending" and "[a]llegations of possible future injury" are not sufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *accord Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015); *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). "'Past exposure to illegal conduct does not in itself show

a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Lujan*, 504 U.S. at 564 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). That is, to establish entitlement for a prospective injunction, a plaintiff must show an imminent threat of irreparable harm. *Lyons*, 461 U.S. at 111. Finally, although Plaintiffs have filed this action as a putative class action, alleged injuries to unnamed members of a proposed class are irrelevant to the standing analysis, *see Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999), and cannot rescue the case from dismissal if the named plaintiff lacks standing, *see B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).

The alleged injury against named Plaintiffs has ceased because all received bond hearings —within a few weeks of requesting them—and have been released. ECF 36 at 4-5. They are suffering no "continuing, present adverse effects." *Lyons*, 461 U.S. at 108. Thus, there is no basis to grant them injunctive relief. Plaintiffs also do not identify any ongoing specific, concrete injury to any putative class members in the form of particular persons who have waited an allegedly excessive number of days for a bond hearing they have still yet to receive. Plaintiffs have no basis for asserting that it will take however long for the putative class members to receive bond hearings, or that the putative class members will be unable to secure release at or following those hearings under the existing procedural framework. Their speculation that these unfavorable circumstances might occur is a mere allegation of a possible future injury that is insufficient to support standing. *See Clapper*, 568 U.S. at 409; *Mayfield*, 599 F.3d at 970.[1] And at the least, the experiences of named Plaintiffs indicate that any injuries would not be suffered by all class members, undermining the need for mandatory classwide relief. Because plaintiff class members have not made the requisite clear showing of "certainly impending" "threatened injury" needed to establish

---

[1] Plaintiffs' declarants speak in generalities about past experiences of unidentified clients who may or may not even fall within the scope of the putative class. These declarations certainly do not meet the standard of showing "concrete and particularized," nonhypothetical impending injury, *Lujan*, 504 U.S. at 560, to actually named plaintiffs, *see Hodgers-Durgin*, 199 F.3d at 1045. *See* ECF Nos. 46-61. For the few concrete cases of identified aliens mentioned, the alien has already received a bond hearing, ECF 56 ¶ 11, No. 61 ¶ 10, or was otherwise released from custody, ECF 57 ¶ 16. Prospective relief this therefore unwarranted for these aliens. *See Lyons*, 461 U.S. at 111.

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

standing for prospective relief, *see Clapper*, 568 U.S. at 409, this motion should be dismissed for lack of jurisdiction.

>    2.    The Court lacks jurisdiction to enjoin the operation of section 1225(b) as applied to the proposed class.

As set forth in Defendants' Motion to Dismiss, this Court lacks jurisdiction to grant classwide injunctive relief under section 1252(a)(2)(A)(i), (e), and (f)(1). ECF 36 at 6-8, 23-24; ECF 76 at 4-6. The Immigration and Nationality Act (INA) requires that any challenge to "procedures and policies adopted by the [Secretary of Homeland Security] to implement the provisions of section 1225(b)(1)" must be brought in accordance with section 1252(e). 8 U.S.C. § 1252(a)(2)(A)(iv); *see* 8 U.S.C. § 1252(a)(2)(A)(i) (channeling jurisdiction over "any cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" through section 1252(e)); *see also* 6 U.S.C. §§ 202, 291, 557 (transferring responsibility to the Secretary). Plaintiffs' bond hearing class challenges the detention framework applicable to aliens subject to section 1225(b)(1)'s procedures and falls within the types of challenges to section 1225(b)(1) that may not be litigated on behalf of a class in this Court. The Court also lacks jurisdiction to issue the injunction under 1252(f)(1). Section 1252(f)(1) bars "classwide injunctive relief against the operation of §§ 1221-1231" with a narrow carve-out that applies to "individual cases." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999). Plaintiffs seek to enjoin the operation of section 1225(b) on a classwide—not individual—basis to dictate time limits that are not contemplated by statute, to overhaul the detention scheme set forth in section 1225(b)(1), and to revise the standards and burdens that govern those hearings. The motion for preliminary injunction must therefore be denied.

>    B.    Plaintiffs have not shown a likelihood of success in overriding immigration court scheduling considerations to require bond hearings to occur within seven days of the class member making a request.

>    1.    The proposed class is not likely to succeed on its claim of a constitutional entitlement to bond hearings within seven days.

Plaintiffs cannot identify a single case holding that section 1225(b) aliens are as a matter of constitutional law entitled to a bond hearing within seven days of making a request for bond. The class for which Plaintiffs seek injunctive relief is comprised exclusively of aliens who did not

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

present lawfully at a port of entry to make an asylum claim, but were intercepted within two weeks of unlawfully entering the United States and within one hundred miles of a port of entry. *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(II); *Designating Aliens for Expedited Removal*, 69 Fed. Reg. 48877, 48878-80 (Aug. 11, 2004). The detention of such aliens is governed by 8 U.S.C. § 1225(b)(1)(B)(ii), which provides: "If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." In *Jennings*, 138 S. Ct. at 845, the Supreme Court concluded that the statute bars such aliens from being afforded a bond hearing during the pendency of their removal proceedings. The Court expressly rejected the argument that these aliens are entitled to bond hearings at any stage of proceedings, explaining that "[i] n sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id*. Rather, the Court confirmed that Congress assigned the Executive exclusive jurisdiction over decisions related to the release of aliens governed by section 1225(b)(1)(B)(ii). *Id*. The bond class therefore is not entitled to a bond hearing under the statutory text.

The proposed class is likewise not entitled to bond hearings as a matter of constitutional law and certainly not entitled to those hearings simply because a week has passed since their request. Plaintiffs' due process challenges require an assessment of numerous factors including the "interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). Under this framework, Plaintiffs cannot demonstrate that the proposed class is uniformly entitled to bond hearings after only seven days. Recognition of such an entitlement would be fundamentally at odds with longstanding precedent and completely unsupported by any case law on this question to date.

The bond hearing class has no legally cognizable interest with respect to their admission because their status is legally equal to the status of an alien who has not made an entry into the

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1   United States – in short they are in the position of a person standing at the border requesting the

2   privilege of entering the country. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206,

3   212 (1953); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422 (3d. Cir. 2016)

4   ("Petitioners were each apprehended within hours of surreptitiously entering the United States, so

5   we think it appropriate to treat them as alien[s] seeking initial admission to the United States. . . .

6   [They have] no constitutional rights regarding" their applications for admission."). The Supreme

7   Court has repeatedly affirmed that aliens deemed to be outside of the United States—including

8   certain lawful permanent resident aliens—are not entitled to release into the United States. *See,*

9   *e.g.*, *Mezei*, 345 U.S. at 212; *Landon*, 459 U.S. at 32 ("[A]n alien seeking initial admission to the

10  United States requests a privilege and has no constitutional rights regarding his application."). It

11  makes little sense to afford a class of aliens who violated United States law and were intercepted

12  within days of making their unlawful entry more process than the Supreme Court afforded a lawful

13  permanent resident returning from a trip abroad. *See Mezei*, 345 U.S. at 212; *Morales-Izquierdo v.*

14  *Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007).

15          But even if Plaintiffs were correct that by virtue of being physically present for a very brief

16  period of time after entering the country illegally and clandestinely, the bond hearing class has

17  some liberty interest with respect to their admission, that interest is very limited and insufficient

18  to entitle them to bond hearings within a set seven day period. *See Johnson v. Eisentrager*, 339

19  U.S. 763, 770 (1950) (due process is on an "ascending scale"); *Zadvydas v. Davis*, 533 U.S. 678,

20  693 (2001) ("[T]he nature of [due process] protection" always varies "depending upon status and

21  circumstance," and noting that "aliens who have not yet gained initial admission to this country"

22  like Plaintiffs here "would present a very different question."). The bond hearing class is made up

23  of aliens who have not developed any ties or connections to the United States; most class members

24  (like the named Plaintiffs) were apprehended within hours of making an illegal entry. *See*

25  *Eisentrager*, 339 U.S. at 770; ECF 26 at ¶¶ 44, 46. Plaintiffs ignore the variations in the due process

26  analysis and simply argue that "due process applies" to them. ECF 45 at 9. But this blanket

27

28

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

assertion does not address the critical question of *what* process they are due.[2] Even if the court cannot answer that question with precision for the class as a whole, and even if this Court were to disregard the long line of cases holding that there is no due process interest in entry into the United States at the border, whatever liberty interest there is does not mandate a bond hearing within seven days for every putative class member. None of the cases cited by Plaintiffs support affording a recent entrant such a sweeping constitutional entitlement and such a holding would amount to this Court rewriting immigration law.

Plaintiffs' proposed seven-day deadline conversely fails to account for the government's legitimate interests in maintaining control over its own dockets. Although the courts schedule bond hearings expeditiously, they must do so within the confines of their available resources and docketing realities. Neifert Decl. ¶ 13; Torres Decl. ¶ 13. Each court makes an individualized determination of how many hours per week to set aside for bond hearings based in part on the percentage of their dockets that is typically devoted to bond hearings. Neifert Decl. ¶ 13; Torres Decl. ¶ 13. Much of the remainder of the dockets are pre-scheduled months in advance with merits hearings. Neifert Decl. ¶ 5; Torres Decl. ¶ 5. The immigration court administrators for both Adelanto and Tacoma have testified that the injunction sought here will necessarily impose burdens on the immigration courts and will delay merits adjudications for other detained aliens. Neifert Decl. ¶¶ 13-15; Torres Decl. ¶¶ 13-15. In appreciation of and deference to immigration court scheduling priorities, federal district courts routinely afford immigration courts well over seven days to conduct even a single bond hearing ordered through habeas—even when the alien had already been detained for many months. *See, e.g.*, *Chajchic v. Rowley*, No. 1:17-CV-457, 2017 WL 1650088, at *1 (M.D. Pa. May 2, 2017) (21 days); *Lopez v. Napolitano*, No. 1:12-CV-01750 MJS HC, 2014 WL 1091336 (E.D. Cal. Mar. 18, 2014); *Khodr v. Adduci*, 697 F. Supp. 2d 774,

---

[2] Plaintiffs cite *Raya-Vaca* for the proposition that all aliens are entitled to due process regardless of their circumstance so long as they are on U.S. soil. ECF 45 at 7 (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1203 (9th Cir. 2014)). That is not the law. *See, e.g.*, *See Mezei*, 345 U.S. at 207; *Leng May Ma v. Barber*, 357 U.S. 185, 186 (1958). Moreover, *Raya-Vaca*'s rationale, to the extent it is relevant, is "strictly limited" to criminal reentry cases, *Pena*, 815 F.3d at 456, and is therefore inapplicable here.

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1   780 (E.D. Mich. 2010) (21 days); *Qui v. Chertoff*, No. C07-725-JLR-JPD, 2008 WL 1803771, at

2   *1 (W.D. Wash. Apr. 21, 2008); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D.

3   Wash. 2004) (30 days). There is therefore no basis for requiring the government to apply a stricter

4   standard in scheduling *all* such bond hearings nationwide—and certainly not as part of a pre-

5   certification, pre-discovery, preliminary injunctive order.

6           2.     There is no basis for ordering bond hearings within seven days under 5
                     U.S.C. § 706(1) or the *TRAC* factors.

8        Plaintiffs cannot show a likelihood of success on the merits of their claim challenging the

9   "unreasonable delay" of their bond hearings. *See* ECF 46 at 18-21. "Section 706(1) of the APA . .

10   . does not give [courts] license to 'compel agency action' whenever the agency is withholding or

11   delaying an action [the court] thinks it should take." *Hells Canyon Pres. Council v. U.S. Forest

12   Serv.*, 593 F.3d 923, 932 (9th Cir. 2010). Rather, the court's authority to "compel agency action"

13   is "carefully circumscribed to situations where an agency has ignored a specific . . . command,"

14   *id.*, that is located in a federal statute or "agency regulation[ ] that ha[s] the force of law," *Norton

15   v. S. Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55, 65 (2004). Moreover, the "purportedly

16   withheld action must not only be 'discrete,'" *Hells Canyon,* 593 F.3d at 932, meaning that it must

17   be a "precise, definite act," *SUWA*, 542 U.S. at 63, "but also 'legally *required,*'" 593 F.3d at 932,

18   meaning that the text of the statute or regulation contains an "unequivocal command" about which

19   an official has "no discretion whatever," 542 U.S. at 63, such that the duty "could traditionally

20   have been enforced through a writ of mandamus." *Hells Canyon,* 593 F.3d at 932.

21        Plaintiffs have not established that Defendants have a non-discretionary obligation to

22   provide the proposed class with bond hearings. As noted above, the proposed class is detained

23   pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), a provision which the Supreme Court recently concluded

24   does not entitle covered aliens to release. *Jennings*, 138 S. Ct. at 845. Plaintiffs do not clearly

25   allege any source of a non-discretionary obligation to conduct a bond hearings other than a single

26   background reference to *X-K-*, 23 I. & N. Dec. 731, in which the Board determined that governing

27   regulations (rather than the statutory text) permitted bond hearings for detained asylum seekers

28   who entered the country without inspection. ECF 45 at 6. As Plaintiffs acknowledge, the Attorney

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

General recently invited briefing on the question of whether that decision should be overruled in light of the Supreme Court's decision in *Jennings*. *Id*. at 6 n.2. Thus there is no "unequivocal command" that the proposed class receive bond hearings, and there is certainly no requirement regarding the precise timing of such a bond hearing. Absent a non-discretionary obligation to provide bond hearings, this Court lacks jurisdiction over Plaintiffs' section 706(1) claim.

Even if the Court were to conclude that EOIR has an obligation to provide bond hearings to the proposed class, Plaintiffs cannot show a likelihood of success under the so-called *TRAC* factors. Under *TRAC v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984), courts consider the following six factors in reviewing the reasonableness of any delay: (1) the time agencies take to act, which must be governed by a "rule of reason;" (2) whether "Congress has provided a timetable;" (3) whether "human health and welfare are at stake," in which case delays are "less tolerable;" (4) the effect of expediting "on agency activities of a higher or competing priority;" (5) the "interests prejudiced by delay;" and (6) whether there has been agency "impropriety" contributing to the delay. *Id*. at 80.

A seven-day "delay" in scheduling bond hearings fails on all six factors. Bond hearings are scheduled within a rule of reason. Immigration courts aim to schedule bond hearings expeditiously, but must do so in a way that balances their limited resources with their primary obligation of making merits determinations in removal cases. Two court administrators testified that their courts reserve regular blocks of time for bond hearings that are filled on a rolling basis. Thus, while Plaintiffs are correct that immigration courts are committed to scheduling hearings quickly, available resources, prior scheduling obligations, and volume all factor into the rule of reason. Importantly, the rule of reason is also colored by competing legal requirements. For example, at Adelanto (the facility at which Vasquez was housed), the government is enjoined from scheduling prolonged-detention bond hearings *fewer* than seven days from the date of the notice. *Rodriguez v. Holder*, No. 07-3239, 2013 WL 5229795, at *3 (C.D. Cal. Aug. 6, 2013). The government necessarily acts within a rule of reason where it acts to comply with a court order.

Plaintiffs concede the second and sixth factors as there is no timeline required by statute and because impropriety does not contribute to the timing of bond hearings. The fourth factor,

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

competing priorities, firmly supports Defendants' position. Because a large portion of docket time is devoted to merits hearings that are scheduled months in advance (and that often themselves involve aliens who are detained), if there are more bond requests than can be addressed during the allotted time, bond hearings may have to be scheduled for the next available bond hearing block to avoid disruption or a "ripple effect" to the merits docket. *See* Neifert Decl. ¶¶ 13-15; Torres Decl. ¶¶ 13-15. Orders that remove the court's ability to adapt to court needs risks undermining its prioritization efforts.

Plaintiffs' efforts to prevail on the *TRAC* factors based on alleged harm alone fail. Plaintiffs have other means of vindicating their interests, such as through a request for parole or through a motion to expedite to the immigration court. In all, Plaintiffs have not demonstrated the type of "egregious" delay contemplated by the *TRAC* factors. *TRAC*, 750 F.2d at 75.

C.   Plaintiffs have not shown a likelihood of success on their claims for procedural
     alterations to bond hearings.

Plaintiffs seek three rewrites of the current statutory and regulatory bond procedures through their motion for a preliminary injunction. The proposed injunction inverts the burden of production and elevates the standard of proof for bond hearings; imposes an across-the-board requirement that bond hearings be recorded or transcribed; and requires IJs to issue "contemporaneous, particularized" written bond orders regardless of whether the alien reserves appeal. None of these requirements appear anywhere in the immigration laws or practices, and they are also not properly required in this context. In order to show a likelihood of success on their procedural claims, Plaintiffs must (1) demonstrate that they have a cognizable interest at stake sufficient to support a demand for increased procedures, (2) show that there is a risk of an erroneous deprivation of the interest through the current procedures, and (3) rebut the government interest using the current procedures rather than additional or different procedures. *See Plasencia*, 459 U.S. at 34; *Mathews*, 424 U.S. at 334-35. Plaintiffs, however, have not properly applied this test. Plaintiffs incorrectly apply a liberty interest standard that is not appropriate for a class of aliens detained hours after illegally crossing into the United States; they do not fairly describe the risk of erroneous deprivation with respect to the class as a whole; and they fail to account for the

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

government's weighty interests in managing its limited resources in immigration court. Plaintiffs therefore have not shown a likelihood that the proposed class, through these representatives, can succeed on the procedural challenges.

1.    The proposed class is categorically ineligible for any modifications to the bond procedures because they have not been harmed by the challenged procedures and do not have a representative entitled to relief on any of these claims.

The bond hearing class cannot succeed on the merits of any of their claims for modifications to the section 1226(a) bond procedures because (1) they are categorically unable to state a viable challenge to procedures that have not been applied to them, (2) they have not exhausted available administrative remedies, and (3) they do not have any class representatives to bring their claims. There is therefore no basis for relief, much less for affording the class immediate, preliminary injunctive relief.

First, the class is comprised of individuals who are not entitled to relief because they cannot make the prerequisite showing that they were harmed by the challenged procedures. It is settled law in this circuit that due process challenges to the standards and procedures at bond hearing are subject to a harmless-error review. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1066 (9th Cir. 2008). Thus, in order to state a claim, the challenger must show that the "alleged due process violation adversely affected the IJ's determination that he was eligible for bond." *Id*. No one in the putative class can make that showing by virtue of the fact that they have not yet had their hearings. For them, it is entirely uncertain whether their hearings will be recorded, when they will be issued a bond memorandum decision, whether they will be denied bond, and, most importantly, whether they can show that the applied procedures caused them to be denied release. The class as a whole therefore cannot plead a due process challenge to these procedures. They *a fortiori* cannot demonstrate a likelihood of success on the claim.

Second, none of the unnamed class members have exhausted their administrative remedies. "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

(9th Cir. 2011). Similarly, under the APA, the claim must be one for "which there is no other adequate remedy in a court." 5 U.S.C. § 704. Plaintiffs cannot demonstrate that exhaustion is futile given that the Board has discretion to remedy their alleged injuries. Notably, here, Plaintiffs challenge the absence of several policies—including a policy that bond hearings be recorded and that a written bond decision be provided—because they believe that the absence of those policies "interferes with their right to appeal bond decisions to the BIA." ECF 45 at 15. The Board undoubtedly has authority to take action to ensure that its appeals are processed fairly. For example, if an alien has not received a copy of the bond memorandum (which must be provided in the event the alien appeals), then the alien could move for a continuance to avoid having to file a brief prior to seeing the decision or may instead opt to move to expedite the production of a record. Similarly, if an alien believes that he was prejudiced by the lack of a recording or transcript, the alien may request a remand to cure defects in the record. These actions would have the effect of resolving the constitutional challenges. Even Plaintiffs' challenge to the standard at bond hearings should first be exhausted because Plaintiffs may be able to obtain release by showing that they are entitled to release under the ordinary standard. Indeed, without a record on the claim, it is not possible for this (or any) court to assess whether the alien has demonstrated harm. Therefore, there is no basis for circumventing the administrative process.

Finally, the class's procedural claims fail on the facts of their two class representative's cases (Vasquez and Orantes). Both representatives were provided a recorded bond hearing, thereby disproving that the lack of a policy requiring recordings causes the classwide harm. Neifert Decl. ¶ 20; Torres Decl. ¶ 18. In addition, the government stipulated to bond at Vasquez's hearing and therefore he was not required to satisfy any burden of proof at a bond hearing, which demonstrates that the class is not universally harmed by the existing standard. *See Prieto-Romero*, 534 F.3d at 1067 (rejecting a challenge to the burden of proof at immigration bond hearings because bond was granted). Finally, neither representative can show that their appeals were adversely impacted by a lack of a written memorandum because Vasquez waived appeal and Orantes withdrew her appeal. Neifert Decl. ¶ 20; Torres Decl. ¶ 18; ECF 36-1. Thus, the representatives are unable to support a claim that the class is harmed by the existing procedures. To the extent the Court finds these

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1   representatives adequate and typical of the bond hearings class, they soundly demonstrate that the

2   class is not entitled to relief. If, alternatively, the Court agrees that these representatives fail under

3   Federal Rule of Civil Procedure 23, Plaintiffs have similarly failed to demonstrate a likelihood of

4   succeeding in obtaining classwide injunctive relief because they cannot satisfy a requirement for

5   obtaining classwide relief.

6           2.      There is no constitutional right to a verbatim record of the hearing or to a "contemporaneous" written bond decision.

7   IJs, in creating a record of proceedings, are required to create records that provide an

8   adequate basis for the Board to ascertain whether the court considered the relevant factors and

9   applied the correct standards. 8 C.F.R. §§ 1003.36, 1003.19(f). Although there is no requirement

10  that IJs follow formal procedures in bond hearings, the Board will require more formal procedural

11  where informal procedures have caused prejudice. *See Matter of Khalifah*, 21 I. & N. Dec. 107,

12  112 (BIA 1995). This process is constitutionally sufficient.

13  Plaintiffs have not demonstrated a likelihood of success in their alleged constitutional right

14  to a recorded hearing or to have IJs immediately issue a written decision following all bond

15  hearings for proposed class members. *See Plasencia*, 459 U.S. at 34; *Mathews*, 424 U.S. at 334-

16  35. As noted above, the proposed class does not have a liberty interest with respect to their release

17  during the pendency of their removal proceedings. For them, "[w]hatever the procedure authorized

18  by Congress" is due process. *See Mezei*, 345 U.S. at 212 (quoting *United States ex rel. Knauff v.*

19  *Shaughnessy*, 338 U.S. 537, 544 (1950)). The proposed class therefore does not have a sufficient

20  liberty interest to permit Plaintiffs to dictate additional procedural protections beyond what is

21  specifically outlined by Congress in the INA. But Plaintiffs' limited interest aside, even in criminal

22  trials, the Supreme Court has held that the record need not be verbatim to be constitutionally

23  adequate. *See Mayer v. City of Chicago*, 404 U.S. 189, 193-94 (1971); *Coppedge v. United States*,

24  369 U.S. 438, 446 (1962); *United States v. Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990) (citing

25  *Hardy v. United States*, 375 U.S. 277, 279-82 (1964)). The class is certainly not entitled to more

26  process than is afforded citizens in criminal proceedings.

27  Plaintiffs cannot show that the proposed class as a whole is likely to face an erroneous

28

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

16

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

deprivation absent a same-day written bond decision or a verbatim record. Plaintiffs identify the harm associated with these claims as occurring only *after* the bond hearing has occurred and when the alien is contemplating appeal. ECF 45 at 15. In addition, there are many less intrusive ways for the Board to ensure detainees have notice of the basis for their bond decisions prior submitting their bond appeal. *See, e.g.*, *In Re: Fernando Antonio Garro-Rojas*, 2007 WL 1430371, at *1 (BIA Mar. 23, 2007) (remanding bond decision to IJ for a more thorough bond decision); Board of Immigration Appeals Practice Manual, § 4.7(c) (July 11, 2018) https://www.justice.gov/eoir/board-immigration-appeals-2 ("The Board has the authority to set briefing deadlines and to extend them."). In the motion, Plaintiffs attempt to manufacture a risk of erroneous deprivation based on speculative circumstances that are not shared by the entirety of the proposed class. *See* ECF 45 at 15-16. But there is no evidence that any class member's bond appeal has been dismissed as a result of not being able to file a sufficient notice of appeal. Nor is there any indication that class members are regularly not receiving notice of the basis for the IJ's decisions in sufficient time to file their appellate briefs. The fact that Plaintiffs can imagine a hypothetical constitutional challenge to the timing of the IJ's issuance of a written bond decision is not enough to support the imposition of such sweeping preliminary relief for this class (and it underscores that their claims are not appropriate for class-wide resolution).

The government also has a legitimate interest in avoiding the enormous burden of immediately drafting unnecessary written bond orders. In immigration courts, resources are zero-sum. As a result, any additional time devoted to bond determinations necessarily takes time from merits determinations and may slow the rate at which another detained alien is afforded protection from removal. *See* Neifert Decl. ¶¶ 13-15; Torres Decl. ¶¶ 13-15. Immigration courts, therefore, have considerable interest in maintaining discretionary control over their resources, including the ability not to issue lengthy written orders where no appeal is pursued. Existing procedures properly account for that interest: if either party appeals the IJ's bond decision, the IJ will prepare a written bond memorandum that sets forth the grounds for the bond determination. *See* Immigration Court Practice Manual, § 9.3(e)(vii). That procedure properly balances the competing interests. Plaintiffs have not demonstrated a likelihood of success in undoing the government's considered judgment

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

or demonstrated a compelling need for this Court to superintend immigration court resource allocation decisions. The request for verbatim recordings and immediate written orders should therefore be denied.

> 3.     There is no constitutional requirement that the government bear the burden of proof at bond hearings, much less by clear and convincing evidence.

Plaintiffs cannot meet their burden of showing that they are likely to prevail on their challenge to the burden and standard of proof at class member bond hearings. In *Jennings*, a six-justice majority concluded that the requiring the government to bear the burden of proof at bond hearings is "clearly contrary" to 8 U.S.C. § 1226(a). All eight justices rejected the argument that the canon of constitutional avoidance compelled a conclusion that the government must bear the burden of proof at bond hearings for aliens who had been detained for six months or longer. 138 S. Ct. at 847-48. *Jennings*, 138 S. Ct. at 847-48; *id*. at 882 (Breyer, J., dissenting). Three justices— despite having constitutional concerns with the mandatory statutes after six months of detention— declined to find the ordinary bond procedures under section 1226(a) in need of reinterpretation under the constitutional avoidance canon. Rather, the dissenter determined that "bail proceedings should take place in accordance with the customary rules of procedure and burdens of proof rather than the special rules that the Ninth Circuit imposed." *Id*. at 882 (Breyer, J., dissenting). Justice Sotomayor demonstrated that the majority's holding denying relief to the section 1226(a) subclass is fully consistent with the dissent by joining both opinions. The *Jennings* decision therefore provides an exceedingly strong indication that it is both statutorily and constitutionally permissible to require immigration detainees (especially those detained for a very short period) to bear the burden of proof at immigration bond hearings.

The *Jennings* decision is supported by three decades of precedent. The Supreme Court has consistently affirmed the constitutionality of detention pending removal proceedings notwithstanding that the government has *never* borne the burden to justify that detention by clear-and-convincing evidence. *E.g.*, *Demore v. Kim*, 538 U.S. 510, 531 (2003); *Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524, 538 (1952); *see Zadvydas*, 533 U.S. at 701. In fact, the Supreme Court has repeatedly upheld detention pending removal proceedings on

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

the basis of a categorical, rather than individualized, assessment that a valid immigration purpose warranted interim custody. *Flores*, 507 U.S. at 306; *Carlson*, 342 U.S. at 538. In *Carlson*, the Supreme Court recognized that Congress intended the government's discretionary decisions regarding detention to be treated as "presumptively correct and unassailable except for abuse." 342 U.S. at 538. Furthermore, *Demore* upheld mandatory detention under section 1226(c), which expressly puts the burden on the alien even in the only situation in which release is permitted: when release is for witness-protection purposes. And in *Zadvydas*, the Court placed the burden on the alien who is subject to potentially indefinite detention following entry of a final order of removal to show "that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

All of those cases apply with heightened force here because the proposed class is made up entirely of aliens who only recently entered the United States. Aliens detained under section 1225(b) should be entitled to no more than the normal procedures due to aliens detained under section 1226(a). There is ample justification for placing the burden on the alien under section 1226(a). The bond procedures were amended in response to serious concerns by Congress that IJs were not accurately assessing flight risk or danger and releasing dangerous individuals into the community. *See* S. Rep. No. 48, 104th Cong., 1st Sess. 1 (1995) (Senate Report) (identifying criminal aliens as a "serious and growing threat to public safety"). It is appropriate to place the burden of justifying detention on the alien, as opposed to on the government, because the government already has issued a warrant for the alien's detention, which sets out the basis for the detention and advised the alien of the basis for removal, as well as its custody determination. 8 C.F.R. §§ 236.1(b), (g), 239.1. Moreover, there is no reason to place the burden on the government and require the government to prove its case by clear and convincing evidence, dispensing with the ordinary preponderance-of-the-evidence standard that applies in civil proceedings. Placing the burden on the alien is consistent with Congress's requirement that aliens bear the burden of proof in other immigration contexts, particularly in seeking relief from removal. *See, e.g.*, 8 U.S.C. § 1229a(c)(4). That makes sense, because the alien—not the government—is in the best position to present evidence of the alien's ties to the community, lack of criminal activity, and any other

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1    evidence to support an alien's request for release. These concerns are heightened with respect to

2    aliens arriving at the border, where the government may know very little about these individuals.

3    Aliens will have little incentive to provide any information regarding their identity if declining to

4    do so will make it more difficult for the government to meet the high evidentiary burden Plaintiffs

5    would impose.

6          Plaintiffs' reliance on *Addington v. Texas*, 441 U.S. 418 (1979), and *United States v.*

7    *Salerno*, 481 U.S. 739 (1987), is misplaced. The involuntary commitment of a mentally ill citizen

8    is distinguishable from immigration detention in a number of respects. The government has

9    plenary authority over immigration and the exclusion or expulsion of aliens. *See Flores*, 507 U.S.

10   at 305 ("Over no conceivable subject is the legislative power of Congress more complete.").

11   Detention here is a vital incident of removal proceedings in which the alien enjoys significant

12   protections and the opportunity to apply for relief from removal. The alien has the option to

13   voluntarily end removal proceedings and the immigration detention incident to them at any time.

14   And, unlike civil commitment, which is potentially permanent, "*detention pending a determination*

15   *of removability*" is inherently temporary because removal proceedings always end. *Demore*, 538

16   U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 697). *Salerno* involved pretrial detention, 481 U.S. at

17   748, not detention of an alien pending removal proceedings, and favorably cited *Carlson* as

18   establishing that there is "no absolute constitutional barrier to detention of potentially dangerous

19   resident aliens pending deportation proceedings." *Id. Addington* and *Salerno* thus provides no basis

20   for a constitutional mandate shifting the burden to the government and requiring clear-and-

21   convincing evidence to justify temporary detention in the interim.

22         Plaintiffs urge the Court to follow *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), and *Singh*

23   *v. Holder*, 638 F.3d 1196 (9th Cir. 2011), but both decisions rely on a misreading of the regulations

24   and, in any event, are contrary to the Supreme Court's decision in *Jennings*. In *Tijani*, the Ninth

25   Circuit stated that the burden should be on the government to prove that an alien detained under

26   section 1226(c) should be detained during removal proceedings, but the court's brief opinion

27   provided no reasoning for that statement, and the statement appears to be based upon a

28   misunderstanding of the relevant procedures. *Id.* at 1242 (nothing that an alien should be released

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

"unless the government establishes that he is a flight risk or will be a danger"). In *Singh*, the court held that the government must justify the continued detention of an alien detained during removal proceedings under the clear-and-convincing-evidence standard, but the court mistakenly stated that no "Ninth Circuit, statutory, or regulatory authority specifies the appropriate standard of proof" for the alien's bond hearing. *Id.* at 1203. Both decisions conflict with the Supreme Court's conclusion in *Jennings* that it is "clearly contrary" to section 1226(a) to require the government to bear the burden of proof at bond hearings, much less by clear-and-convincing evidence. *Jennings*, 138 S. Ct. at 848. Because the reasoning of *Singh* is "clearly irreconcilable" with *Jennings*, this Court is bound by *Jennings*. *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2002).

## II. Plaintiffs cannot show irreparable injury absent preliminary injunctive relief.

Plaintiffs have not established that they face imminent and irreparable injury, and therefore they cannot obtain preliminary injunctive relief. The Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A lesser showing of irreparable injury is insufficient, even if the plaintiff makes a strong showing on the other preliminary injunction factors. *Id.* at 21-22. Plaintiffs have failed to allege any injury that may be fairly characterized as irreparable, much less that there is a likelihood that it would occur absent injunctive relief.

First, the injury Plaintiffs allege is not cognizably irreparable. *See, e.g.*, *M.R. v. Dreyfus*, 697 F.3d 706, 729 (9th Cir. 2012); *Kern Cty. Superintendent of Sch.-Valley Oaks Charter Sch. Tehachapi v. A.C.*, No. 18-CV-01331, 2018 WL 4698312, at *2 (E.D. Cal. Sept. 28, 2018). Defendants already schedule bond hearings as promptly as possible. ECF 68 at 6. Plaintiffs do not allege prolonged detention without a bond hearing; they acknowledge that they are receiving bond hearings. They do not allege even an "unreasonable" period of delay in receiving bond hearings, but rather a possible difference in terms of days from Plaintiffs' arbitrary seven-day deadline and when they speculate that class members may receive their bond hearings. *See* ECF 68 at 7 (Under existing conditions, bond hearings are typically scheduled within 7 to 14 days of the request at the Adelanto detention facility, and within 10 days of the request at Tacoma.). And they do not show

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

1   that current procedures, even if they would prefer different ones, are keeping any number of aliens

2   with meritorious claims for bond in detention.

3        To the extent any individual aliens actually, as opposed to hypothetically, encounter

4   prolonged detention, such claims could be addressed in the ordinary course of habeas litigation

5   when they are ripe. "The possibility that adequate compensatory or other corrective relief will be

6   available at a later date, in the ordinary course of litigation, weighs heavily against a claim of

7   irreparable harm." *Cali. Pharm. Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), *vacated*

8   *and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of S. Cali., Inc.*, 132 S.

9   Ct. 1204 (2012). And any claims that their brief detention prior to receiving a bond hearing

10  prejudicially affected their removal proceedings, such as meaningfully affecting their access to

11  evidence or counsel, ECF 45 at 22, "arise from" litigating their defenses to removal and therefore

12  can and must be addressed in their removal proceedings. 8 U.S.C. § 1252(b)(9); *J.E.F.M. v. Lynch*,

13  837 F.3d 1026, 1033 (9th Cir. 2016). Similarly, bond procedures may be challenged in federal

14  court review of bond hearings following administrative exhaustion. *E.g.*, *Singh*, 638 F.3d at 1201.

15       For these reasons, the authorities that Plaintiffs cite purporting to show that the day-to-day

16  timing of, or particularities of procedure at, bond hearings are cognizable irreparable injuries of

17  constitutional significance do no such thing. *Mezei* squarely indicates that Plaintiffs are not "being

18  deprived of their physical liberty unconstitutionally," ECF 45 at 20-21, being unconstitutionally

19  deprived of any rights, *id.* at 21, or being subjected to any "unlawful departure from agency

20  procedure," *id.*, as the Court declared that Plaintiffs may constitutionally be held without any bond

21  hearing. 345 U.S. at 212.[3]

22       Second, even under Plaintiffs' novel theory of irreparable injury, Plaintiffs fail to provide

23  any basis for finding that it injury is likely. The Ninth Circuit "has ruled that speculative injury

24

---

25  [3] In discussing "separation from family members" as a possible irreparable injury factor, the Ninth

26  Circuit was addressing a request for a stay of removal. *Leiva-Perez v. Holder*, 640 F.3d 962, 969-
    70 (9th Cir. 2011). Being removed from the country—and the "irreparable" injury to family unity

27  that may be alleged in such a situation—does not compare to the request here regarding the timing
    of a bond hearing or the procedures in such a hearing. Moreover, Plaintiffs have expressly dropped

28  their claims based on family separation from this suit. ECF 26 ¶ 3.

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1  does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A

2  plaintiff must do more than merely allege imminent harm sufficient to establish standing; a

3  plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive

4  relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Plaintiffs do not

5  allege that they are being denied bond hearings—indeed all named Plaintiffs received bond

6  hearings, half within two business days of becoming eligible for one. ECF 36 at 4-5. They do not

7  identify any class members currently languishing in detention for an unreasonable time because of

8  delays in receiving bond hearings or the procedures at bond hearings. The lack of any identified

9  plaintiff in need of emergency relief, coupled with the delay in requesting emergent relief until

10  months after this suit was filed on June 25, 2018, ECF 1, undermines any contention of imminent

11  irreparable harm. *See Oakland Trib., Inc. v. Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)

12  ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and

13  irreparable harm."); *GTE Corp. v. Williams*, 731 F.2d 676, 678-79 (10th Cir. 1984).

14       Finally, Plaintiffs' declarations criticizing the procedure available at bond hearings fail to

15  indicate that the absence of their desired procedures is causing the detention of any plaintiffs such

16  that the Court must intervene immediately. As the Ninth Circuit has observed, "the basic function

17  of a preliminary injunction is to preserve the status quo ante litem pending a determination of the

18  action on the merits." *Oakland Tribune*, 762 F.2d at 1377 (internal quotation omitted). As in

19  *Oakland Tribune*, "[i]t is undisputed that the [bond hearing] provisions," including absence of any

20  statutory or regulatory deadline for conducting bond hearings under *Matter of X-K-*, "which

21  plaintiff[s] seek[] to enjoin have been in effect for a number of years. Where no new harm is

22  imminent, and where no compelling reason is apparent, the [Court is] not required to issue a

23  preliminary injunction against a practice which has continued unchallenged for several years." *Id.*

24  Plaintiffs do not identify anyone in their purported class even facing imminent detention as a result

25  of the procedures they challenge. They thus present no compelling reason to alter the existing

26  procedural landscape before the Court has had a chance to address it on the merits.

27  **III.   The proposed injunction is not in the public interest.**

28       The balance-of-equities factors "merge" because the Government is the opposing party,

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1   and the Government's interest *is* the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

2   Here, this factor weighs strongly in Defendants' favor. "The government's interest in efficient

3   administration of the immigration laws at the border," such as involved in the detention and vetting

4   of aliens for credible fear at issue here, "is weighty." *Plasencia*, 459 U.S. at 34. And, as Plaintiffs

5   admit, the "general public" has an "interest in the efficient allocation of the government's fiscal

6   resources." ECF 45 at 24 (quoting *Hernandez*, 872 F.3d at 996). Accomplishing such "efficient

7   allocation" requires prioritizing immigration courts' finite resources to ensure the greatest

8   coverage of the most compelling needs. Defendants already schedule bond hearings as promptly

9   as possible in light of docket space, attorney availability, and procedural considerations (such as

10  time to properly notice the bond hearing and schedule interpreters). ECF 68 at 6. Hearing time

11  must be shared between bond, master calendar, and merits hearings, *see id.* at 6-7, and in some

12  cases it may not be possible to schedule new bond hearings without displacing hearings for older

13  detained cases already in the queue. *Id.* at 7. The same rationale applies to the agency's calculation

14  that IJs should generally rule orally and not devote time to creating extensive written bond hearing

15  records unless they would be necessary for an appeal. *See* Immigration Court Practice Manual, §

16  9.3(e)(vii). Were this Court to substitute its judgment in docket prioritization for that of the

17  immigration courts, which is what Plaintiffs ask it to do by demanding that their bond hearings

18  occur within their arbitrary deadline, it would be undermining the agency's attempt to efficiently

19  allocate its resources to address cases in a way that is fair to all aliens in immigration proceedings

20  and ensures that the most compelling needs are prioritized. Thus, the interest of a fair, efficient

21  immigration adjudication system as a whole, and the government's interest in being able to allocate

22  resources most efficiently within that system, weigh in favor of denying the injunction.

23      Plaintiffs provide no reasons or evidence showing why the governmental and public

24  interest supports the injunction other than to reiterate their arguments that the absence of the

25  procedures they request violates their constitutional rights. *See* ECF 45 at 23-24. These arguments

26  fail to address the balancing of equities at issue in this prong of the preliminary injunction standard,

27  *see Winter*, 555 U.S. at 24. Moreover, the existing practice is not illegal or unconstitutional for the

28  reasons explained. The motion for preliminary injunction should be denied.

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

Dated: October 17, 2018                    Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General
                                           Civil Division

                                           WILLIAM C. PEACHEY
                                           Director, District Court Section
                                           Office of Immigration Litigation

                                           EREZ REUVENI
                                           Assistant Director

                                           */s/ Joseph A. Darrow*
                                           JOSEPH A. DARROW
                                           Trial Attorney

                                           */s/ Sarah Stevens Wilson*
                                           SARAH STEVENS WILSON
                                           Assistant United States Attorney

                                           LAUREN BINGHAM
                                           FRANCESCA  GENOVA
                                           Trial Attorneys

DEFENDANTS' OPP TO PI
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(205) 244-2140

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Sarah Stevens Wilson*
United States Department of Justice

Defendants' Motion to Dismiss
(Case No. 2:18-cv-928  MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044

-26-