The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,
            Plaintiffs-Petitioners,
   v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

            Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM DEADLINES**

NOTE ON MOTION CALENDAR:
October 26, 2018

### I.     **INTRODUCTION**

This Court should deny Defendants' motion to hold this case in abeyance and relieve them of all deadlines. That motion is based on what Defendants assume will be the latest of the Attorney General's series of efforts to deter asylum seekers from seeking refuge in the United States. Under the guise of the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), Defendant Sessions has self-certified the question of whether the Board of Immigration Appeals' decision in *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005)—which Plaintiffs and putative bond hearing (BH) class members have cited to support their eligibility for bond hearings—"should be overruled." *Matter of M-G-G-*, 27 I&N Dec. 469 (A.G. 2018); *Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018). Defendants mistakenly state that Plaintiffs "concede" that their bond claims depend on *Matter of X-K-*, and that Plaintiffs "implicitly concede" that Defendant Sessions' future decision in *Matter of M-S-* will resolve all issues "with respect to the bond hearing class." Dkt. 83 at 1.[1] While Plaintiffs have cited to *Matter of X-K-* as evidencing the availability of bond hearings, the Due Process Clause of the Fifth Amendment as well as the regulatory basis underlying the decision in *Matter of X-K-* long have provided the foundational basis for those hearings. The Court's decision in *Jennings* does not change that fact, and any contrary conclusion by Defendant Sessions would warrant review by this Court.

This Court should deny Defendants' motion. First, as discussed in Plaintiffs' preliminary injunction motion and herein, proposed BH class members face substantial, irreparable harm from the existing delay and lack of adequate procedural protections in those hearings. Staying proceedings at this junction would further exacerbate that harm. Second, as Defendants readily admit, when Defendant Sessions will issue a decision in *Matter of M-S-* is entirely speculative. Recent certification decisions suggest that Defendant Sessions likely will not issue a decision for

---

[1]     Defendants do not, and could not, suggest that *Matter of M-S-* implicates Plaintiffs' claims on behalf of the credible fear class. Indeed, Defendants ignore those claims in the motion.

months. Furthermore, that decision ultimately may not change bond practices because serious constitutional concerns would result from the elimination of bond hearings. If and when Defendant Sessions issues a decision in *Matter of M-S-*, this Court may address that decision as needed, including with respect to the pending motions for class certification and preliminary injunctive relief. This Court retains broad discretion to modify the class definitions as needed throughout the course of the litigation. Similarly, where appropriate, Defendants may move to modify any preliminary injunctive relief that this Court has provided.

## II. BACKGROUND

### A. Defendants' Anti-Asylum Seeker Policies and Actions

Plaintiffs seek to protect the rights of individuals seeking asylum in the United States, challenging Defendants' systemic actions to impede their ability to seek protection, even after having been found by an asylum officer to have a credible fear of return to their country of origin. Because it is important to place Defendants' pending motion in context, Plaintiffs provide a brief overview of Defendants' recent anti-asylum seeker policies and actions. On October 12, 2017, Defendant Sessions delivered the following remarks to Defendant Executive Office for Immigration Review (EOIR):

> [I]n 2009, the previous Administration began to allow most [noncitizens] who passed an initial credible fear review to be released from custody into the United States pending a full hearing. These changes—and case law that has expanded the concept of asylum well beyond Congressional intent—created even more incentives for illegal [noncitizens] to come here and claim a fear of return. . . . The system is being abused to the detriment of the rule of law, sound public policy, public safety, and of just claims. . . . Saying a few simple words is now transforming a straightforward arrest and immediate return into a probable release and a hearing—if the [noncitizen] shows for the hearing.

Jefferson B. Sessions III, Att'y Gen., Attorney General Jeff Sessions Delivers Remarks to the Executive Office for Immigration Review (Oct. 12, 2017), https://tinyurl.com/y9n3alru.

Defendant Sessions reiterated these themes multiple times over the past year. In another

speech to Defendant EOIR in June 2018, he expressed disapproval of the credible fear process, claiming that "[s]aying a few simple words—claiming a fear of return—is now transforming a straightforward arrest for illegal reentry and immediate return to a prolonged legal process where [a noncitizen] may be released from custody into the United States and possibly never show up for an immigration hearing." Jefferson B. Sessions III, Att'y Gen., Attorney General Sessions Delivers Remarks to the Executive Office for Immigration Review Legal Training Program (June 11, 2018), https://tinyurl.com/yasya8v3. Similarly, he criticized "the previous Administration" for "releas[ing] most [noncitizens] apprehended at the border who requested asylum into the United States with a document asking them to show up for a hearing at some later date." Jefferson B. Sessons III, Att'y Gen., Attorney General Sessions Addresses Recent Criticisms of Zero Tolerance By Church Leaders (June 14, 2018), https://tinyurl.com/y9t2nay9. In September 2018, speaking to a new class of immigration judges, Defendant Sessions repeated that "[s]aying a few simple words—claiming a fear of return—has transformed a straightforward arrest for illegal entry and immediate return to too often a prolonged legal process, where [a noncitizen] may be released from custody into the United States and possibly never show up for an immigration hearing." Jefferson B. Sessions III, Att'y Gen., Attorney General Sessions Delivers Remarks to the Largest Class of Immigration Judges in History for the Executive Office for Immigration Review (EOIR) (Sept. 10, 2018), https://tinyurl.com/y7jrxl2v ("September 10 Speech"). And even more pointedly, he opined that allowing release on bond for individuals who pass credible fear interviews creates "[p]owerful incentives . . . to come here illegally and claim a fear of return." *Id.*

Earlier this year, in April 2018, Defendant Sessions announced the "Zero-Tolerance Policy," pursuant to which the government would criminally prosecute all noncitizens who crossed the southern border, including asylum seekers, and would separate parents from their children. Defendant Sessions warned individuals crossing the southern border, including asylum

seekers, that they would "not be rewarded" and would "be met with the full prosecutorial powers of the Department of Justice." Press Release, U.S. Dep't of Justice, Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (Apr. 6, 2018), https://tinyurl.com/y96nsut6; *see also* September 10 Speech (describing the "deterrent effect" of the Zero Tolerance Policy against asylum seekers who "abuse[]" the immigration system "to the detriment of the rule of law, sound public policy, and public safety").

Subsequently, after sustained public outcry against the ensuing separation of thousands of parents and children, President Trump issued an Executive Order directing an end to the practice in the future, although doing nothing to reunite the thousands of children already separated from their parents. *See* Exec. Order No. 13841, 83 Fed. Reg. 29435, Affording Congress an Opportunity to Address Family Separation (Jun. 20, 2018). Moreover, the Executive Order re-committed Defendants to keep asylum seekers detained while they present their claims to immigration courts. *Id*. § 3(a) (directing DHS to "maintain custody of [noncitizen] families during the pendency of any . . . immigration proceedings involving their members").

Defendants also made it more difficult for asylum seekers to qualify for asylum and prevail on the merits of their claims. Defendants Sessions certified a case to himself and issued a nationwide, precedential decision that restricted the circumstances under which an asylum seeker can demonstrate membership in a protected group. *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018). That decision is binding on Defendant EOIR. In implementing the decision, Defendant USCIS directed USCIS asylum officers to broadly reject categories of asylum claims related to, for example, domestic violence and gang violence. As part of that directive, Defendants emphasized the discretionary nature of asylum and urged consideration of whether asylum seekers who have entered without inspection and/or did not pursue refugee status in their countries of origin when determining whether to exercise such discretion, even in credible fear interviews. *See* USCIS, PM-602-0162, Guidance for Processing Reasonable Fear, Credible Fear,

Asylum, and Refugee Claims in Accordance with *Matter of A-B-* (Jul. 11, 2018); *see also Matter of A-B-*, 27 I&N at 345 n.12.

B.     **Defendant Sessions' Certification Decisions**

Just as Defendants' anti-asylum seeker policies and actions may inform this Court's review of the pending motion, so too should Defendant Sessions' use of the certification authority pursuant to 8 C.F.R. § 1003.1(h)(1)(i). Since January 2018, Defendant Sessions referred the following eight matters to himself:

- *Matter of Castro-Tum* (referred Jan. 4, 2018): Defendant Sessions certified the case of a pro se respondent, and identified seven far-reaching questions related to administrative closure. 27 I&N Dec. 187, 187 (A.G. 2018). Defendant Sessions issued a decision on May 17, 2018 that limited the ability of IJs to administratively close cases. 27 I&N Dec. 271 (A.G. 2018).

- *Matter of E-F-H-L-* (decided Mar. 5, 2018): Two months later, in *Matter of E-F-H-L-*. 27 I&N Dec. 226, 226 (A.G. 2018), Defendant Sessions vacated a precedent decision previously issued by the Board that held that "a respondent applying for asylum and withholding of removal [is] ordinarily entitled to a full evidentiary hearing." *Id.*

- *Matter of A-B-* (referred Mar. 7, 2018): In this case, Defendant Sessions certified to himself the following question for review: "Whether, and under what circumstances, being a victim of private criminal activity constitutes a cognizable 'particular social group' for purposes of an application for asylum or withholding of removal." 27 I&N Dec. 227, 227 (A.G. 2018). Defendant Sessions issued a decision on June 11, 2018, that limited the circumstances under which an asylum seeker can demonstrate membership in a protected group. 27 I&N Dec. 316 (A.G. 2018).

- *Matter of L-A-B-R-* (referred Mar. 22, 2018): Defendant Sessions referred three consolidated cases to himself "for review of issues relating to when there is 'good cause' to grant a continuance for a collateral matter to be adjudicated." 27 I&N Dec. 245, 245 (A.G. 2018). He issued a decision restricting the definition of "good cause" on August 16, 2018. 27 I&N Dec. 405 (A.G. 2018).

- *Matter of S-O-G- & F-D-B-* (decided Sept. 18, 2018): Defendant Sessions self-referred this case without notifying the public. On September 18, 2018, he held that IJs may dismiss or terminate removal proceedings only under circumstances expressly identified in the regulations. 27 I&N Dec. 462 (A.G. 2018).

- *Matter of M-G-G-* (referred Sept. 18, 2018): In referring to himself yet another pro se case, Defendant Sessions' sought to review whether "*Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) . . . should be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." 27 I&N Dec. 469, 469 (A.G. 2018). On October 12, 2018, he stated he would not review the case because the noncitizen seeking release from custody had been deported. *Matter of M-G-G-*, 27 I&N Dec. 475 (A.G. 2018).

- *Matter of M-S-* (referred Oct. 12, 2018): On the same day Defendant Sessions stated he would not review *Matter of M-G-G-*, he certified the same question to himself in a separate case. 27 I&N Dec. 476 (A.G. 2018).

- *Matter of Negusie* (referred Oct. 18, 2018): In his latest certification order, Defendant Sessions stayed the Board's precedent decision in *Matter of Negusie*, 27 I&N Dec. 347 (BIA 2018), which held that duress is an available defense from being barred from asylum or withholding of removal based on the persecution of others, and asked for further briefing on that issue. 27 I&N Dec. 481 (A.G. 2018).

To date, 4 of 8 of Defendant Sessions' certification decisions and 4 of 7 of the certified questions implicate asylum seekers. None of the certifications contain contact information for the individual, his/her counsel, nor any case-related information that may inform briefing, and *at least* three of the certified cases are known to involve pro se individuals. Although there is little case law addressing the referral authority itself—including its validity, scope, and the process required—the Third Circuit has criticized at least one decision where the Attorney General took an "unusual" approach in matters of referral and adjudication. *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 470 n.11 (3d Cir. 2009); *see also* Laura S. Trice, *Adjudication by Fiat: The Need for Procedural Safeguards in Attorney General Review of Board of Immigration Appeals Decisions*, 85 N.Y.U. L. Rev. 1766 (2010).

In his speech to the new class of IJs, delivered just over a month ago, Defendant Sessions confirmed that he will continue to rapidly employ the regulatory certification authority to make nationwide law:

> [E]arlier this year, I issued a decision that restores sound principles of asylum and long standing principles of immigration law. . . . But it isn't the only thing we have done to provide clarity to the process. I have also issued decisions on other topics—in one case, clarifying that immigration judges and the Board lack the authority to "administratively close" cases under the law; in another, clarifying the "good

cause" standard for a continuance for collateral matters in immigration court; and, vacating a mooted Board decision that injected confusion as to the requirement to hold a merits hearing in certain cases. And there will be more still to come.

September 10 Speech. Defendant Sessions' frequent use of the certification process to target asylum seekers, combined with his statements and actions, *see supra* Section II.A, are incompatible with the due process requirement that an impartial adjudicator decide each case on its own merits. *Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002) (citation omitted) (remanding where IJ's statements showed that he had "already judged" the respondent's claim).[2]

### III.   ARGUMENT

When deciding a stay motion, this Court must balance the "competing interests [that] will be affected by the granting or refusal to grant a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). In balancing those competing interests, the Court considers "the balance of hardships between the parties" and the "prospect of narrowing the factual and legal issues." *Id.* at 1112. Here, as detailed in Plaintiffs' preliminary injunction motion, Dkt. 45, proposed class members face irreparable harm from the delay and lack of adequate protections in bond proceedings. Moreover, Defendant Sessions may take months to reach a decision on the merits of *Matter of M-S-*, and may ultimately not change the agency's position in *Matter of X-K-*. Because these factors outweigh the government's interest in staying proceedings, the Court should deny Defendants' motion.

**A. Staying Proceedings Would Irreparably Harm Putative Class Members**

A stay in this case would cause serious, irrevocable harm to proposed class members. Dkt. 45 at 20-23. Defendants claim that the Plaintiffs will not face injury because they have been released from immigration custody and because the proposed class will continue to receive bond

---

[2]   Moreover, the Department of Justice is seeking to expand the scope of Defendants Sessions' regulatory authority, including by authorizing certification of "certain immigration judge decisions regardless of whether those decisions have been appealed to the BIA." Office of Management and Budget, Office of Information and Regulatory Affairs, View Rule, RIN 1125-AA86 (Fall 2018), https://tinyurl.com/y8344hsr.

hearings in the meantime. Dkt. 83 at 8-9. However, as Defendants well know, Plaintiffs challenge Defendants' practices aimed at deterring asylum seekers by prolonging their detention through delaying bond hearings, and by eliminating critical procedural protections in those hearings. Dkt. 45 at 21-22. If this case were stayed, proposed class members would continue to suffer a restraint on their physical liberty without sufficient due process, in violation of their constitutional rights.

The proposed class is comprised of asylum seekers who fled their countries of origin due to persecution, and who experience "further trauma, depression, and other medical and mental health problems" because of Defendants' policies. *Id.* at 21 (citing several declarations from immigration practitioners and Plaintiffs). Moreover, protracted detention makes it difficult for proposed class members to find an attorney, communicate with others to assist in case preparation, and to compile evidence necessary to support their applications for asylum and other protection. *Id.* at 22-23. Given the stakes in proposed class members' asylum cases—return to likely persecution, torture, or death if they do not succeed—the harm that Defendants' policies inflict on the proposed class members is exceptionally severe and irreparable. *Id.*; *cf. Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (finding stay of deportation warranted where petitioner was likely to face extortion and "savage beatings" if removed).

In addition, absent action by this Court, putative BH class members will continue to face delayed access to bond hearings, causing some proposed class members to give up their cases—despite the fact that they already have demonstrated a bona fide asylum claim to an asylum officer. Dkt. 45 at 23. Finally, many proposed class members remain separated from family during the continued detention they face because of Defendants' policies. *See* Dkt. 45 at 23; *see also Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (identifying "separated families" as relevant factor for irreparable harm analysis). Indeed, the named Plaintiffs themselves faced these same injuries during their detention, underscoring the gravity of the continued injury that

putative BH class members face absent prompt action by this Court. *See* Dkt. Nos. 57, 61. As a result, the harm factor strongly favors denying Defendants' motion to hold this case in abeyance.

**B.      Other Factors Also Support Denying Defendants' Motion to Delay This Case**

Additional considerations also weigh in favor of deciding the pending motions for class certification, preliminary injunctive relief, and Defendants' motion to dismiss, rather than waiting for the Attorney General to issue a decision instead. First, although Defendants "anticipate that any stay . . . would be brief," no timeline exists for the Attorney General's decision. Dkt. 83 at 9. As recent self-certifications demonstrate, the decision could take months to resolve. For example, Defendant Sessions certified *Matter of Castro-Tum* the case to himself on January 4, 2018, but the case was pending for five months until May 17, 2018. *See* 27 I&N Dec. 187 (A.G. 2018); 27 I&N Dec. 271 (A.G. 2018). Similarly, Defendant Sessions certified *Matter of L-A-B-R-* to himself on March 22, 2018, but did not reach a decision until nearly five months later, on August 16, 2018. *See* 27 I&N Dec. 245 (A.G. 2018); 27 I&N Dec. 405 (A.G. 2018).

Plaintiffs have moved for class certification and preliminary injunctive relief seeking to alleviate immediate, ongoing, irreparable harm for putative class members. Defendants may seek to alter how the agency interprets the statutory authority for proposed class members' bond hearings, but, regardless, their actions continue to violate proposed class members' constitutional rights with respect to bond hearings. Even if Defendant Sessions ultimately abrogates the agency's position regarding the availability of such hearings, this Court has ample authority, where appropriate, to modify any class definition or order granting preliminary injunctive relief. *See, e.g.*, *Armstrong v. Davis*, 275 F.3d 849, 871 n.28 (9th Cir. 2001) ("[Rule 23] provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court."), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005); *A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary

injunction in consideration of new facts."). Defendants ask this Court to pause this case for an indefinite period to await a decision that may not even change the agency's position. If and when Defendant Sessions modifies *Matter of X-K-*, this Court then may address the propriety of the action. In the meantime, there is no reason to delay ruling on the pending motions, all of which will be fully briefed by October 26, 2018.

Second, any decision by Defendant Sessions reversing *Matter of X-K-* almost certainly would require ignoring fundamental principles of liberty and due process as well as revising longstanding regulations governing immigration court jurisdiction and proceedings. *See* 23 I&N Dec. at 734-36. Defendants attempt to obscure that fact by stating that *Matter of X-K-* was decided in part because of "ambiguity in the statute and applicable regulations." Dkt. 83 at 4. That conclusion does not find support in *Matter of X-K-*, the statute, or applicable regulations. Defendant Sessions points to the Supreme Court's decision in *Jennings v. Rodriguez* to question the ongoing validity of *Matter of X-K-*. *See Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018). However, in *Jennings*, the Court expressly declined to address any of the constitutional issues presented in that case. *See Jennings*, 138 S. Ct. at 851 (holding that because the Court of Appeals "had no occasion to consider respondents' constitutional arguments on their merits. . . . we do not reach those arguments. Instead, we remand the case to the Court of Appeals to consider them in the first instance.").

Serious constitutional considerations underlie and support *Matter of X-K-* and its reading of the current regulations. Individuals who have entered the United States long have been accorded more due process rights than those who have merely applied for admission. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Here, proposed class members seeking adequate and timely bond hearings have all entered the country before being detained, and have all passed a credible fear interview, demonstrating that they have a "significant possibility" of obtaining asylum, 8 C.F.R. § 208.30(e)(2)—and a route to permanent residency, and ultimately citizenship, *see* 8 U.S.C. § 1159(b). These additional concerns suggest

that even were Defendant Sessions to attempt to modify the agency's position from *Matter of X-K-*, the result would run afoul of constitutional requirements.

Indeed, as the Supreme Court and the Ninth Circuit have repeatedly affirmed, "once a[] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to *all* 'persons' within the United States, including [noncitizens], whether their presence here is lawful, *unlawful*, *temporary*, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (emphases added); *see also Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (due process protects "every person within the nation's borders . . . '[e]ven one whose presence in this country is unlawful, involuntary, or transitory'") (quoting *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)); *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1108 (9th Cir. 2001) ("[O]nce a[] [noncitizen] has 'entered' U.S. territory, legally or illegally, he or she has constitutional rights, including Fifth Amendment rights."). Those due process rights apply regardless of when and how an individual entered the United States. *See, e.g.*, *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1153, 1160-62 (9th Cir. 2004) (finding that noncitizen apprehended the same day as his unlawful entry is entitled to due process); *Rios-Berrios v. INS*, 776 F.2d 859, 860, 862-63 (9th Cir. 1985) (same).

The relevant statutory and regulatory scheme, in turn, corresponds to these longstanding constitutional principles that distinguish between the due process rights of those who have effected an entry into the country, including an unlawful entry, and those who are deemed not to have effected an entry because they were taken into custody upon arrival at a port of entry. *See Mezei*, 345 U.S. at 212 ("[Noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). Sections 1225(b)(1) and (2) of Title 8 encompass expedited removal and credible fear procedures for two separate categories of noncitizens: first, those who are apprehended upon arriving at a port of entry and are deemed "arriving [noncitizens]," and second, those who are apprehended after entering without inspection and are

labeled as "certain other [noncitizens]." The statute states that once an "arriving [noncitizen]" or "certain other [noncitizen]" passes a credible fear interview, "the [noncitizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). They are then transferred to regular removal proceedings under 8 U.S.C. § 1229a to apply for asylum and any other immigration benefits for which they may qualify. *See* 8 C.F.R. § 208.30(f).

*Matter of X-K-* concluded that the regulations clearly—not ambiguously—treat "arriving [noncitizens]" and "certain other [noncitizens]" differently once in regular removal proceedings. Specifically, an IJ may review DHS's detention decision for "certain other [noncitizens]" under the regulations, while an IJ may not do so for an "arriving [noncitizen]." 23 I&N Dec. at 731, 734-35 (explaining that 8 C.F.R. § 1003.19 differentiates between these two classes of noncitizens by "specifically exclud[ing]" arriving noncitizens from IJ custody determinations). In other words, the regulations make clear that "certain other [noncitizens]" are not subject to the mandatory detention provision in 8 U.S.C. § 1225(b)(1)(B)(ii). As explained above, that distinction is rooted in fundamental constitutional principles concerning due process.

Given this clear constitutional and regulatory distinction—the result in *Matter of X-K-* should not—and cannot—change simply because the Attorney General certified a case to himself. Indeed, Defendant Sessions has little reason to think the Supreme Court has even addressed noncitizens in Plaintiffs' position, as the class before the Court in *Jennings* dealt only with *arriving* noncitizens—those who are not entitled to an initial custody hearing—and not "certain other [noncitizens]." *See Rodriguez v. Robbins*, 715 F.3d 1127, 1139-40 (9th Cir. 2013) (describing members of the *Jennings* § 1225(b) subclass as "applicants for admission," and not as individuals who have already entered the United States). Accordingly, Plaintiffs request that the Court adjudicate the pending motions seeking protection for proposed class members who continue to suffer deprivation of their constitutional rights.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion.

RESPECTFULLY SUBMITTED this 24th day of October, 2018.

*s/ Matt Adams*  
Matt Adams, WSBA No. 28287  
Email: matt@nwirp.org

*s/ Trina Realmuto*  
Trina Realmuto*  
Email: trealmuto@immcouncil.org

*s/ Glenda M. Aldana Madrid*  
Glenda M. Aldana Madrid, WSBA No. 46987  
Email: glenda@nwirp.org

*s/ Kristin Macleod-Ball*  
Kristin Macleod-Ball*  
Email: kmacleod-ball@immcouncil.org

*s/ Leila Kang*  
Leila Kang, WSBA No. 48048  
Email: leila@nwirp.org

American Immigration Council  
100 Summer Street, 23rd Floor  
Boston, MA 02110  
(857) 305-3600

*s/ Aaron Korthuis*  
Aaron Korthuis, WSBA No. 53974  
Email: aaron@nwirp.org

*Admitted *pro hac vice*

Northwest Immigrant Rights Project  
615 Second Avenue, Suite 400  
Seattle, WA  98104  
Telephone: (206) 957-8611  
Facsimile: (206) 587-4025

*Attorneys for Plaintiffs-Petitioners*

# CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 24th day of October, 2018.

*s/ Aaron Korthuis*
Aaron Korthuis, WSBA No. 53974
Email: aaron@nwirp.org
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 816-8611
Facsimile: (206) 587-4025