The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

                Plaintiffs-Petitioners,

    v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,

                Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR:
October 26, 2018

# ARGUMENT

## I. The Court Has Jurisdiction to Enter a Preliminary Injunction.

Defendants first claim that Plaintiffs lack the requisite injury to assert standing. Dkt. 82 at 5-7. However, Plaintiffs face irreparable harm, *see infra* § III, and the cases Defendants cite do not address the situation here, where key exceptions to the mootness doctrine apply. *See* Dkt. 69 at 21-22. Where plaintiffs' claims are inherently transitory, or defendants selectively end unlawful conduct towards named plaintiffs after a lawsuit commences, courts may grant injunctive relief where proposed class members, rather than named plaintiffs, face ongoing or imminent irreparable harm. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 986 (9th Cir. 2017) (affirming injunctive relief concerning bond determination practices where named plaintiffs had been released from custody); *Ms. L. v. ICE*, 310 F. Supp. 3d 1133, 1146-47 (S.D. Cal. 2018) (enjoining government policy of separating immigrant parents and children apprehended at the border where named plaintiffs already had been reunited with their children); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (enjoining detention policy and finding irreparable harm although defendants previously released named plaintiffs from custody).[1]

Furthermore, 8 U.S.C. § 1252(a)(2)(A)(i), (e), and (f)(1) do not deprive the Court of jurisdiction. *See* Dkt. 82 at 7. The Court's inquiry must "begin with the strong presumption that Congress intends judicial review of administrative action," and it may only refrain from review where "clear and convincing evidence" demonstrates Congress intended to restrict such review. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670-71 (1986) (quotations omitted). But Defendants provide no authority suggesting that § 1252(a)(2)(A)(i) and (e), which address judicial review over claims "arising from or relating to the implementation or operation of an *order of removal* pursuant to [ 8 U.S.C. §1225(b)(1)]" (emphasis added), encompass *detention*

---

[1] Defendants also mischaracterize Plaintiffs' evidence of irreparable harm. They do not rely upon "speculation that . . . unfavorable circumstances might occur," Dkt. 82 at 6, but rather on admitted policies and over a dozen declarations from practitioners attesting to ongoing policies and practices on the timing of and procedures used in bond hearings. *See generally* Dkt. 46-56, 58-60; *see also infra* § III; Dkt. 56 ¶13 (discussing proposed class member who remained detained after a delayed bond hearing in which the burden of proof was placed on her).

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 1 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

claims raised by class members, none of whom have been ordered removed, let alone pursuant to § 1225(b)(1). *See Innovation Law Lab v. Nielsen*, No. 3:18-cv-01098-SI, 2018 U.S. Dist. LEXIS 127870 at *14 (D. Or. Jul. 31, 2018) (holding that individuals with positive credible fear determinations "are no longer subject to the provisions of § 1225(b)(1)" and that "§ 1252(a)(2)(A) and § 1252(e) are thus inapplicable"). Otherwise the Supreme Court would not have had jurisdiction to determine whether certain persons subject to § 1225(b) are entitled to bond hearings after six months. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Similarly, because Plaintiffs are not seeking an injunction "against the operation of" either 8 U.S.C. §§ 1225(b) or 1226(a)—instead, they request that the statute be operated in a constitutional manner—§ 1252(f)(1) does not apply. *See* Dkt. 69 at 23-24. Moreover, they fall under the exception provided in § 1252(f)(1) as they are all "individual[s] against whom proceedings . . . have been initiated." Notably, "[t]he fact that the statute speaks in terms of an action brought by 'any individual' . . . does not indicate that the usual Rule providing for class actions is not controlling . . . ." *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979).

## II. Plaintiffs Have Shown That They Are Likely to Succeed on Their Bond Claims.

### A. Plaintiffs Are Likely to Succeed on Their Bond Hearing Delay Claims.

#### 1. Plaintiffs are constitutionally entitled to bond hearings within seven days.

The parties agree that *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), governs Plaintiffs' due process claims on bond hearings. Dkt. 45 at 7-8; Dkt. 82 at 8. Application of the test favors Plaintiffs. Defendants' primary argument is almost exclusively predicated on the first *Mathews* factor, the private interest at stake. Defendants claim that Plaintiffs have no cognizable interest in freedom from detention and that Defendants may imprison them as long as it takes to resolve their immigration case, reasoning that class members have a status that is "legally equal" to someone who is "standing at the border." Dkt. 82 at 8-9. Defendants are wrong. Plaintiffs—individuals who have entered the country without inspection—have a cognizable liberty interest. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

- 2 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

[noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to . . . due process of law."); *see also* Dkt. 45 at 7-8. In *Mezei*, the government excluded a lawful permanent resident at a port of entry as a national security threat and then detained him because no country would accept him. 345 U.S. at 208-09. In contrast, this case involves individuals who *have* entered the United States with recognized bona fide asylum claims, who have not been ordered removed, who are not national security threats, and who seek release only if an immigration judge (IJ) finds them to be entitled to it. Defendants also cite *Landon v. Plasencia*, but that case undermines their argument as the Court held that even in the context of admissions, what process is due turns on the interests at stake, not whether an individual is apprehended at a port of entry while seeking admission. 459 U.S. 21, 34 (1982). If such individuals have due process rights concerning admission, they likewise have such rights against protracted imprisonment.

Due process "protect[s] every person within the nation's borders . . . ." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 781 (9th Cir. 2014) (en banc) (citing *Mathews v. Diaz*, 426 U.S. 67, 77 (1976)); *see also United States v. Raya-Vaca*, 771 F.3d 1195, 1202-03 (9th Cir. 2014). Defendants claim that *Raya-Vaca* is "not the law," relying on cases addressing admission into the country and that pre-date that decision. Dkt. 82 at 10 n.2. Defendants' fallback assertion, that *Raya-Vaca* is limited to criminal cases, also fails. The case on which they rely, *Pena v. Lynch*, 815 F.3d 452, 455-56 (9th Cir. 2016), addressed constitutional interests related to jurisdiction to collaterally review an expedited removal order, not those related to freedom from detention.[2]

Even acknowledging that a noncitizen "seeking initial admission" may have fewer "rights regarding [an] application [for admission]," *Plasencia*, 459 U.S. at 32, class members here have entered the country, passed credible fear screenings, and asserted rights *against* detention, not *to* admission. Plaintiffs seek preliminary injunctive relief only for class members

---

[2] Defendants' citation to *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007) (en banc) also is inapposite as the petitioner was not challenging his detention and the Court held that he had a due process right to collateral review of a final removal order.

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 3 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

referred for full removal proceedings. Unlike people denied entry at initial screenings, class members here have a right to remain in the country while their cases are adjudicated.

Defendants further suggest that *Jennings* abrogates *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), and prevents Plaintiffs from receiving bond hearings. *See* Dkt. 82 at 2-3, 8. But even assuming that *Jennings* implicates Plaintiffs' statutory right to a bond hearing, *but see* Dkt. 84 at 12, the Supreme Court did not address the due process rights of the class member in that case, let alone this one. Instead, the Court remanded the case for consideration of the constitutional claims. 138 S. Ct. at 851. Moreover, unlike in *Jennings*, class members here are neither subject to detention under 8 U.S.C. § 1226(c) nor are they "arriving aliens," as defined in 8 C.F.R. § 1001.1(q); rather, they have effectuated an entry into the country.

Defendants simply do not address the second *Mathews* factor, the risk of erroneous deprivation. But the failure to provide prompt and adequate bond hearings not only risks, but guarantees, unnecessarily prolonging the detention of bona fide asylum seekers. As to the third *Mathews* factor, Defendants allege an interest "in maintaining control over [their] own dockets" would be burdened by affording prompt bond hearings. Dkt. 89 at 10 (citing Dkts. 66 and 67).[3] That Defendant EOIR cannot allocate resources and prioritize bond hearings does not relieve Defendants of their obligation to act expeditiously or to safeguard Plaintiffs' constitutional rights. *See* Dkt. 72 at 2-3.

Defendants further fault Plaintiffs for not identifying "a single case" entitling them to bond hearings within seven days, Dkt. 82 at 7, while ignoring Plaintiffs' citations to cases mandating expeditious bond hearings and similar requirements in other detention contexts. *See* Dkt. 45 at 4, 9-10; Dkt. 69 at 16-17; *see also Saravia v. Sessions*, – F.3d –, No. 18-15114, 2018 U.S. App. LEXIS 27779 (9th Cir. Oct. 1, 2018) (affirming injunctive relief); *Martinez v. Decker*, No. 18-CV-6527-JMF, 2018 U.S. Dist. LEXIS 178577 at *15 (S.D.N.Y. Oct. 17, 2018) (ordering

---

[3] Defendants claim that the ability to schedule bond hearings expeditiously varies by court but provide two declarations identifying nearly identical considerations at the Tacoma and Adelanto courts. *See* Dkt. 72 at 2 n.1.

bond hearing within 7 days). Defendants cite a few cases where courts ordered bond hearings within 21 to 30 days. Dkt. 82 at 10-11. Unlike in those cases, an asylum officer has recognized proposed class members' bona fide protection claims, and Plaintiffs have addressed and demonstrated that detention beyond 7 days irreparably harms them. Dkt. 45 at 20-23; *infra* § III.

### 2. Plaintiffs are entitled to prompt bond hearings under the APA.

To oppose Plaintiffs' APA claim, Defendants largely rehash their contention that Plaintiffs are not entitled to bond hearings. Dkt. 82 at 11-13. Due process as well as currently binding BIA caselaw interpreting the immigration statute and regulations require Defendants to provide Plaintiffs with initial bond hearings *See supra* § II.A.1; Dkt. 84 at 10-12.

Under the factors laid out in *Telecommunications Research Action Center v. F.C.C.,* 750 F.2d 70, 80 (D.C. Cir. 1984), Defendants have unreasonably delayed Plaintiffs' initial bond hearings. *See* Dkt. 45 at 17-19. Defendants' contentions to the contrary are unavailing. They argue that their current practice of providing no time limit for holding initial bond hearings comports with a rule of reason but rely on an unsupported allegation regarding immigration courts' "primary obligation" and mischaracterize an irrelevant case as a "competing legal requirement[]." *See* Dkt. 82 at 12 (citing *Rodriguez v. Holder*, No. 07-3239, 2013 U.S. Dist. LEXIS 135479 (C.D. Cal. Aug. 6, 2013), which provides notice to individuals subject to detention over six months with 7 days' notice before an automatic hearing—unlike initial bond hearings, which occur by request). Defendants claim that requiring timely bond hearings would necessitate disruption of previously scheduled merits hearings, but do not explain why immigration courts cannot plan for prompt bond hearings in the future. Nor do Defendants meaningfully engage with Plaintiffs' account of the serious health, welfare and liberty interests at stake. *See* Dkt. 45 at 18. Instead, they suggest that requesting parole or filing a procedural motion are adequate alternatives—but a discretionary request to DHS, rather than to an impartial

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

- 5 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

adjudicator applying clear standards, is an insufficient alternative.[4]

## B. Plaintiffs Are Likely to Succeed on Their Deficient Bond Procedures Claims.

Defendants incorrectly allege class members are "categorically ineligible" for the relief they seek because they have not yet been harmed by the deficient bond procedures they challenge. Dkt. 82 at 14. But Plaintiffs need not show they have already been harmed where such injury is imminent. *See*, *e.g.*, *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1057-58 (9th Cir. 2009). Defendants acknowledge that they place the burden of proof on the detained noncitizen in bond hearings and do not require the other procedural protections at issue here. Dkt. 82 at 13, 17, 18.[5] Plaintiffs do not challenge the individual *outcomes* of their bond hearings, as Defendants' suggest, *see* Dkt. 82 at 14, but rather the sufficiency of the hearing procedures. Placing the burden on the noncitizen by definition affects IJ determinations as to bond eligibility because it creates a presumption *against* release. The remaining procedural deficiencies affect the agency's ultimate decision regarding release because they impede the ability to challenge an IJ's decision on appeal. *Cf. Hernandez*, 872 F.3d at 993-94 (reasoning that, although consideration of financial circumstances "does not *guarantee* . . . release[] on a bond," it will make "IJs and ICE . . . less likely to impose an excessive bond").

*Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), does not undermine class members' bond claims. *See* Dkt. 82 at 14. Mr. Prieto-Romero alleged he had been harmed by bearing the burden of proof, but the court found no prejudice because the IJ granted a bond. 534 F.3d at 1066-67. Here, Plaintiff Orantes was *denied* bond, and Plaintiff Vasquez was only released on bond because DHS *agreed* to an amount—not because the IJ found Mr. Vasquez had met his burden. Moreover, unlike Mr. Prieto-Romero, Plaintiffs seek to represent a class.

---

[4] Moreover, neither bond hearings nor parole are not mentioned in 8 U.S.C. § 1225(b), and, in immigration court, "[m]otions to advance are disfavored." Immigration Court Practice Manual § 5.10(b) (2018).
[5] Defendants allege that they recorded the bond hearings for the two plaintiffs whose hearings occurred after bond claims were raised in the amended complaint. Dkt. 82 at 15. They make no similar claims for the other two named Plaintiffs. That they have the capacity to record custody hearings demonstrates that it would not impose an undue burden to require Defendants to record all bond hearings, just as they record all removal hearings before IJs.

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 6 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Defendants also allege that Plaintiffs failed to exhaust their claims by filing appeals to the BIA. Dkt. 82 at 14-15. Exhaustion is not required; this case presents purely legal questions that, once decided, will not arise again. *See Hernandez*, 872 F.3d at 988-89. Forcing detained, mostly pro se noncitizens to individually raise these issues before the BIA is thus "inadequate" and "not efficacious," especially where doing so would be futile. *Id.* at 988 (quotation omitted); *see also* Dkt. 72 at 8-9. Here, the BIA imposed the burden of proof pursuant to its controlling precedent. *See* Dkt. 45 at 12. Moreover, any remedy that the BIA might offer on appeal as to recordings and individualized findings, *see* Dkt. 82 at 15, would not address their interference with the right to appeal in the first place. Similarly, remanding "to cure defects in the record", *id.*, would require the person to suffer several additional months in detention. And for those few who are able to litigate an appeal, such an exercise would result in lengthy delays, intensifying the irreparable harm they face. *Hernandez*, 872 F.3d at 988; Dkt. 45 at 20-23.

While Defendants allege Plaintiffs' bond hearing experiences do not "support a claim that the class is harmed by the existing procedures," Dkt. 82 at 15, Plaintiffs already have demonstrated their fitness to represent the class. *See* Dkt. 37 at 17-20; Dkt. 72 at 5-10. What is more, the IJ *denied* Plaintiff Orantes' bond request, finding she had been unable to meet her burden. She later obtained release from detention only due to litigation in *Ms. L.*, and Defendants' practices continued to harm her in the interim. *See* Dkt. 72 at 9. Plaintiff Vasquez's stipulation also occurred within the context of these deficient procedures. *See* Dkt. 72 at 9-10. Defendants do not meaningfully deny the existence of the challenged practices. At best, they allege that some class members may be fortuitous enough to have hearings recorded. Dkt. 82 at 15. But any such variations do not defeat Plaintiffs' clear showing that Defendants' widespread *practices* violate procedural due process. Indeed, courts routinely adjudicate such class-wide claims in the immigration context despite minor individual variations. *See, e.g.*, *Hernandez*, 872 F.3d at 993-94; *Mendez Rojas v. Johnson*, 305 F. Supp. 3d 1176, 1187 (W.D. Wash. 2018) ("Defendants admit that they have no policy requiring *uniform* provision of such notice.")

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 7 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

(emphasis added).

### 1. The government must bear the burden of proof at bond hearings.

Defendants argue that *Jennings* forecloses placing the burden of proof on the government. *See* Dkt. 82 at 18. This argument is meritless. The *Jennings* Court expressly refrained from addressing the separate constitutional challenge presented in that case. *See Jennings*, 138 S. Ct. at 851. As such, *Jennings* is not controlling. Defendants' reliance on the dissent's statement that "bail proceedings should take place in accordance with the customary rules of procedure and burden of proof rather than the special rules that the Ninth Circuit imposed" is unavailing. *Id*. at 876. The customary procedures referred to, as now embodied in the Bail Reform Act, impose the burden on the government to justify detention. *Id.* at 864; *see*, *e.g.*, *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

In every context where the Supreme Court has considered the constitutionality of civil detention or comparably severe deprivations of individual liberty, the government has borne the burden of proof. In civil detention cases, the Court has struck down schemes placing the burden on the detainee. *See* Dkt. 45 at 12-13; *see also, e.g.*, *Zadvydas v. Davis,* 533 U.S. 678, 692 (2001) (finding post-final-order custody review procedures deficient because, *inter alia*, detainees bore the burden of proof); *United States v. Salerno*, 481 U.S. 739, 741 (1987) (upholding detention where government bore burden); *Kansas v. Hendricks*, 521 U.S. 346, 364 (1997) (same).

Defendants attempt to minimize the liberty at stake by claiming that the noncitizen can forego an asylum claim and accept deportation. Dkt. 82 at 20. Forcing Plaintiffs to make the Hobson's choice between arbitrary loss of liberty or return to a country to face persecution does not satisfy due process. The Supreme Court also has expressly rejected Defendants' arguments that plenary power shields their actions from review. *Zadvydas*, 533 U.S. at 695-96. As in the civil commitment and pretrial detention contexts, the government must bear the burden of proof where it seeks to deprive proposed class members of physical liberty. *See* Dkt. 45 at 10-13. Even with respect to the statutory claims, *Jennings* did not address the burden of proof issue presented

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 8 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

here. The Court examined whether 8 U.S.C. § 1226(a) required *subsequent* bond hearings every six months after the initial bond hearing, and whether the statute required additional procedures at those subsequent hearings. *Jennings*, 138 S. Ct. at 847.

Defendants argue that noncitizens "detained under section 1225(b) should be entitled to no more than the normal procedures due to [noncitizens] detained under section 1226(a)." Dkt. 82 at 19. But other courts have recognized that bond hearings under § 1226(a) require the government to bear the burden of proof. *See Martinez*, 2018 U.S. Dist. LEXIS 178577 at *13-14 (citing cases and concluding that "due process requires the Government to bear the burden of proving that detention is justified at a bond hearing under Section 1226(a)").

Congress placed the burden of proof, first, only on those convicted of aggravated felonies, 8 U.S.C. § 1252(a)(2)(B) (1992), and then subsequently, only on individuals who are otherwise subject to mandatory detention, 8 U.S.C. § 1226(c)(2). For all others, the standard presumption remained that the government bore the burden of proof. *See Matter of Ellis*, 20 I&N Dec. 641, 642 (BIA 1993). Congress repeatedly amended the statute without altering the placement of the burden for other noncitizens, against the backdrop of binding agency precedent interpreting the statute so as to require the government to bear the burden of proof in bond hearings. The choice not to alter this established procedure provides "convincing support for the conclusion that Congress accepted and ratified" the agency's understanding that the government must bear the burden of proof in justifying continued civil detention. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2520 (2015); *see also Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 244 n.11 (2009).

Defendants assert that it "makes sense" for noncitizens to bear the burden. Dkt. 82 at 19. However, class members generally are pro se, poor, non-English speaking, detained asylum seekers. *Cf. Santosky v. Kramer*, 455 U.S. 745, 762-63 (1982) (placing heightened burden on government in parental termination hearing because, *inter alia*, the parents were "often poor, uneducated, or members of minority groups"). In contrast, the government appears at such

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 9 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

hearings with counsel well versed in immigration law and court procedures.

### 2. A verbatim record or a contemporaneous written decision is required.

Defendants do not argue that providing a contemporaneous recording of bond hearings would burden the government.[6] Nor can they, for immigration courts already must be "equipped with recording devices and routinely record merits hearings." *Singh v. Holder*, 638 F.3d 1196, 1209 (9th Cir. 2016). Thus, the Ninth Circuit held that "due process requires a contemporaneous record" of certain bond hearings and that "a transcript or adequate substitute is important for providing meaningful appellate review." *Id.* at 1208, 1209. At minimum, the government must provide contemporaneous recordings of bond hearings or an equivalent substitute.

Defendants' reliance on decisions issued before *Mathews* is inapposite. *See* Dkt. 82 at 16. Moreover, Defendants misstate the holding in *United States v. Carrillo*, where the court affirmed that a criminal defendant *does* "[have] a right to a record on appeal which includes a complete transcript of the proceedings at trial," but did not reverse the conviction because the defendant failed to show prejudice. 902 F.2d 1405, 1409-10 (9th Cir. 1990). Defendants also fail to demonstrate any "[a]lternative methods of reporting trial proceedings" are available. *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971) (quotation omitted). Instead, they argue that the BIA appeal process provides "less intrusive ways" to inform detainees of the basis of their bond decisions, such as remanding the case to the IJ after an appeal has already been taken to require a "more thorough bond decision." Dkt. 82 at 17. A meaningful right to appeal requires a contemporaneous written decision containing individualized findings.

Lastly, Plaintiffs need not provide examples of bond appeals that were dismissed for insufficiency, or cases in which the IJ decision was not received in time to file an appellate brief. Dkt. 82 at 17. Plaintiffs suffer the loss of a meaningful right to appeal before any of these events occur, since they are deprived of the information they need to determine the IJ's errors. *See* Dkt.

---

[6] Defendants' reliance on *Mezei* to contend that class members do not have a liberty interest in certain bond procedures, but that argument is incorrect for the same reasons explained earlier. *See supra* § II.A.1.

| PLS.' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION | - 10 - | NORTHWEST IMMIGRANT RIGHTS PROJECT<br>615 Second Avenue, Suite 400<br>Seattle, WA 98104<br>Tel. (206) 957-8611 |

45 at 13-15. Notably, Defendants do not dispute that a post-hoc written decision, prepared *after* either party decides to appeal, may be deficient or inaccurate. The assertion that written bond orders are "unnecessary" is based on Defendant EOIR's general assessment of available resources, rather than a "considered judgment." Dkt. 82 at 17. Requiring IJs to provide written findings contemporaneously is a manageable administrative task because IJs already are required to provide parties with the basis for bond decisions "orally or in writing." 8 C.F.R. § 1003.19(f).

### III.   Putative Class Members Face Irreparable Harm Absent Injunctive Relief.

Plaintiffs face several forms of irreparable harm that only an injunction can remedy, including deprivation of physical liberty, exacerbated trauma, difficulties in preparing their removal cases, significant barriers to challenging adverse bond decisions, and separation from families. Dkt. 45 at 21-23. Defendants respond that "the injury Plaintiffs allege is not cognizably irreparable," contending that (1) Plaintiffs do not allege any unreasonable period of delay, and that (2) Plaintiffs' claims should be brought using other legal mechanisms. Dkt. 82 at 21-22.

Those assertions are simply not true and are misplaced. First, putative class members suffer harms that courts long have recognized as grounds for granting injunctive relief. Dkt. 45 at 20-21 (citing cases). With respect to the harm from delayed bond hearings, Plaintiffs do not "allege . . . a possible difference in terms of days," Dkt. 82 at 21; instead, they have provided substantial evidence that delays regularly number many weeks, *see, e.g*, Dkt. 39 ¶ 4; Dkt. 40 ¶ 4; Dkt. 41 ¶ 3; Dkt. 42 ¶ 5; Dkt. 53 ¶ 6; Dkt. 54 ¶ 5. Defendants refer to their typical scheduling practices at two immigration courts, Dkt. 82 at 21, but do not refute Plaintiffs' evidence that significant delays regularly occur. Nor can Defendants seriously assert that 8 U.S.C. § 1252(b)(9), which channels judicial review of removal orders to courts of appeals, bars Plaintiffs' bond claims. *See Jennings*, 138 S. Ct. at 839-41 & n.3; *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Defendants' suggestion that Plaintiffs should administratively exhaust their claims is also inapplicable. *See* Dkt. 69 at 22-23 & n.6; Dkt. 72 at 8-9.

Defendants also argue that the irreparable harm Plaintiffs identify is speculative. Dkt. 82

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

- 11 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

at 22-23. Again, as Plaintiffs detailed, *see* Dkt. 45 at 5, putative class members face significant delays in bond hearings. Moreover, they face many other forms of concrete and irreparable injury due to Defendants' ongoing bond practices. Dkt. 45 at 21-23. Named Plaintiffs have described how hearing delays and continued detention caused mental trauma, difficulties in their removal or bond cases, and separation from family members. Dkt. 57, Orantes Decl. ¶¶ 13-15, 17; Dkt. 61, Vasquez Decl. ¶¶ 9, 12.

Defendants also argue that Plaintiffs have not identified anyone currently suffering the injuries regarding bond procedures. Dkt. 82 at 23. In a class action like this one—where Defendants can avoid review by mooting out named plaintiffs and where they possess the information about who is detained—plaintiffs need not identify some named individual within the class at every moment. *See supra* § I. Plaintiffs have provided voluminous evidence that establishes that many individuals continue to face the injuries described in the preliminary injunction motion. *See* Dkt. 46-61. Although Defendants claim that a "delay" in requesting a preliminary injunction undermines Plaintiffs' claims of imminent injury, Dkt. 82 at 23, Plaintiffs filed this motion a month after the second amended complaint and within two weeks of the motion for class certification. *See* Dkts. 26, 37, 45.

## IV.  The Public Interest Favors Plaintiffs

Defendants are wrong to claim that the public interest favors them because of an interest in controlling immigration court dockets. Dkt. 82 at 24. As Plaintiffs have explained, "it is always in the public interest to prevent the violations of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted); *see also* Dkt. 45 at 23-24. Defendants do not respond to this controlling case law, or explain why adjustments to bond hearing scheduling or procedures outweigh a serious violation of constitutional or statutory rights. Dkt. 82 at 24. Accordingly, this factor also favors Plaintiffs.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion.

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

- 12 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

RESPECTFULLY SUBMITTED this 26th day of October, 2018.

*s/ Matt Adams*  
Matt Adams, WSBA No. 28287  
Email:  matt@nwirp.org

*s/ Glenda M. Aldana Madrid*  
Glenda M. Aldana Madrid, WSBA No. 46987  
Email:  glenda@nwirp.org

*s/ Leila Kang*  
Leila Kang, WSBA No. 48048  
Email:  leila@nwirp.org

*s/ Aaron Korthuis*  
Aaron Korthuis, WSBA No. 53974  
Email:  aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS PROJECT  
615 Second Avenue, Suite 400  
Seattle, WA  98104  
Telephone: (206) 957-8611  
Facsimile: (206) 587-4025

*s/ Trina Realmuto*  
Trina Realmuto*  
Email: trealmuto@immcouncil.org

*s/ Kristin Macleod-Ball*  
Kristin Macleod-Ball*  
Email: kmacleod-ball@immcouncil.org

AMERICAN IMMIGRATION COUNCIL  
100 Summer Street, 23rd Floor  
Boston, MA 02110  
(857) 305-3600

*Admitted *pro hac vice*

*Attorneys for Plaintiffs-Petitioners*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2018, I electronically filed the foregoing, along with the supporting declarations and exhibits, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 26th day of October, 2018.

*/s/ Sydney Maltese*
Sydney Maltese
*paralegal to Matt Adams*
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
E-mail: sydney@nwirp.org

PLS.' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
- 14 -

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611