UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, et al.,

                                    Plaintiffs,

        v.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,

                                    Defendants.

CASE NO. C18-928 MJP

ORDER ON MOTION TO DISMISS

The above-entitled Court, having received and reviewed:

1.  Defendants' Motion to Dismiss (Dkt. No. 36),

2.  Plaintiffs' Opposition to Defendants' Motion to Dismiss (Dkt. No. 69),

3.  Defendants' Reply in Support of Motion to Dismiss (Dkt. No. 76),

all attached declarations and exhibits, and relevant portions of the record, and having heard oral

argument on the motion, rules as follows:

        IT IS ORDERED that the motion is PARTIALLY GRANTED and PARTIALLY

DENIED; Plaintiffs' claims relating to violations of the Administrative Procedures Act are

DISMISSED with prejudice (except as to the claims of the Bond Hearing class for certain procedural safeguards); the motion to dismiss the remainder of Plaintiffs' claims is DENIED.

## Background

Plaintiffs bring this action against U.S. Immigration and Customs Enforcement ("ICE"), the U.S. Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), U.S. Citizenship and Immigration Services ("USCIS"), the Executive Office for Immigration Review ("EOIR"), and various government officials in their official capacities (collectively, the "government") challenging the legality of (1) "the government's policy or practice of excessively prolonging the detention of asylum seekers placed in expedited removal proceedings by failing to promptly provide them their credible fear interview and determination," and (2) "the government's related policy or practice of excessively prolonging the detention of asylum seekers by failing to promptly conduct the bond hearings required by federal law after an asylum seeker's positive completion of their credible fear interview." (See Dkt. No. 26.)

## I.   Statutory / Regulatory Scheme

The statutes at issue in this litigation are 8 U.S.C. §§ 1225, 1226, and 1252.  In general, these statutes provide as follows:

If an immigration officer determines that an alien arriving in the U.S. is "inadmissible" (as defined in § 1182), the alien is subject to removal without further hearing unless the alien indicates an intention to apply for asylum or a fear of persecution.  8 U.S.C. § 1225(b)(1)(A)(i). An alien indicating an intention to apply for asylum or a fear of persecution is referred for an interview to determine whether he or she has a credible fear of persecution or torture if returned to their home country (a "credible fear interview").  Id., § 1225(b)(1)(A)(ii).  Any alien subject to

1    this process "shall be detained pending a final determination of credible fear of persecution."

2    Id., § 1225(b)(1)(B)(iii)(IV).

3        An asylum officer conducts the credible fear interview.  If the officer determines that the

4    alien has a credible fear of persecution, "the alien shall be detained for further consideration of

5    the application for asylum."  Id., § 1225(b)(1)(B)(i), (ii).  Aliens awaiting either a credible fear

6    interview or "further consideration of the application for asylum" are included in the category of

7    aliens "pending a decision on whether the alien is to be removed" and are detained pursuant to §

8    1226(a).  Aliens awaiting further consideration of an application for asylum may be eligible for a

9    custody determination by DHS and then a bond hearing before an immigration judge ("IJ").  8

10   C.F.R. § 1003.19(h)(2).[1]

11       Every alien detained pursuant to § 1226(a) is individually considered for release on bond

12   by an ICE officer and served with a custody determination form.  Id., § 236.1(c)(8).  If bond is

13   denied or the detainee believes bond is set too high, he or she may request a "redetermination" of

14   the custody decision by an IJ.  Id., §§ 236.1(d)(1), 1003.19, 1236.1(d)(1).  At the bond hearing

15   the alien has the burden of proving that he or she is not a flight risk or a danger to the

16   community.

17       The IJ's decision may be appealed to the Board of Immigration Appeals ("BIA").  Id., §

18   236.1(d)(3)(i), 1236.1(d)(3)(i).  The bond hearings are not usually recorded, but upon appeal, the

19   IJ will prepare a written memorandum outlining the grounds for the decision.

20   **II.    The Named Plaintiffs**

21       The named plaintiffs in this action are persons seeking asylum in the United States:

22

23

24   _____
     [1] The statutes contain no time periods within which either the credible fear interview or bond hearing must be held.

- **Yolany Padilla**: Shortly after her apprehension for illegal entry into the United States on May 16, 2018, Ms. Padilla expressed a fear of being removed to her native Honduras. (Dkt. No. 26, Second Amended Complaint ("SAC") at ¶ 40.) Six weeks after her entry, she was interviewed by an asylum officer and was found to have a credible fear, at which point she became eligible for a bond hearing. She was granted a bond hearing two days after her credible fear determination. (Id. at ¶ 66.) Ms. Padilla was awarded bond and was released on July 6, 2018, after this lawsuit was filed. (Id. at ¶¶ 66, 115.)

- **Ibis Guzman**: Ms. Guzman is also from Honduras and underwent a similar process to Ms. Padilla, but was denied bond. (Id. at ¶¶ 32, 99.) She reserved appeal, but was released by ICE in late July 2018. (Id. at ¶ 119.)

- **Bianca Orantes**: Shortly after her apprehension for illegal entry into the United States, Ms. Orantes expressed a fear of returning to her native El Salvador. (Id. at ¶ 44.) About five weeks following her entry, she was interviewed by an asylum officer and found to have a credible fear. (Id. at ¶ 102.) She was granted a bond hearing eleven days after her credible fear determination but was denied bond. Ms. Orantes reserved appeal, but was released on July 24, 2018. (Id. at ¶¶ 121, 123.)

- **Baltazar Vasquez**: Shortly after his apprehension for illegal entry into the United States, Mr. Vasquez expressed a fear of returning to his native El Salvador. (Id. at ¶ 46.) About eight weeks after his entry, he was interviewed by an asylum officer and found to have a credible fear. (Id. at ¶ 108.) He was granted a bond hearing three weeks after his credible fear determination. Mr. Vasquez stipulated to an $8,000 bond, waived appeal of the bond order, and was released. (Id. at ¶ 125.)

Plaintiffs seek injunctive and declaratory relief and seek to certify the following classes:

- **Credible Fear Interview Class**: "All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official." (Id. at 30.)

- **Bond Hearing Class**: "All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing." (Id. at 31.)

Plaintiffs filed their complaint on June 25, 2018 (Dkt. No. 1) and their SAC (Dkt. No. 26) on August 22, 2018. The SAC focuses on the following claims:

- **Count I (Violation of Due Process)**: Both the Credible Fear Interview and Bond Hearing classes claim violations of their due process rights springing from their detention

for "an unreasonable time" awaiting their credible fear interview and, post-credible fear determination, their bond hearing.  They seek as remedies (1) a ten-day deadline for the credible fear interview and (2) a bond hearing within seven days of request, where the government bears the burden of proof and where detainees are provided a verbatim transcript of the hearing.

- **Count II (Administrative Procedure Act)**: Both classes allege that their credible fear interviews and bond hearings are being "unreasonably delayed" and held without "appropriate procedural safeguards" in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

- **Count III (Violation of Asylum Statute)**: The government asserts, and Plaintiffs conceded at oral argument, that Plaintiffs have abandoned this claim by virtue of their failure to contest the government's arguments for dismissal.

The government now moves to dismiss each of these claims.  (Dkt. No. 36.)

## Discussion

### I.    Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998).

Dismissal is appropriate where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  As a result, a complaint must contain "more than labels

1  and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

2  Twombly, 550 U.S. at 555.

3  **II.    Credible Fear Interview Claims**

4    **A.  Jurisdiction**

5      The government first claims that this Court lacks jurisdiction over Plaintiffs' claims

6  challenging the timing of the credible fear interviews under 8 U.S.C. § 1252(a)(2)(A).  To be

7  clear, the legislation is replete with subsections limiting judicial review of the government's

8  actions under the statute.  See 8 U.S.C. § 1252(a)(2)(iv), § 1252(b)(9), § 1252(e)(1), §

9  1252(e)(3). However, the Court finds that judicial review of the government's policies and

10  practices under this statutory scheme is permissible based upon a line of cases which have

11  wound through the Ninth Circuit and the U.S. Supreme Court, culminating in Rodriguez v.

12  Marin, __ F.3d __, 2018 WL 6164602 (9th Cir. Nov. 19, 2018).

13      The Rodriguez line of cases concerns a group of aliens who assert, on due process

14  grounds, that the statutory scheme embodied in §§ 1225 and 1226 does not authorize

15  "prolonged" detention without a bond hearing where the government would bear the burden of

16  proving, by clear and convincing evidence, that continued detention is justified.  Jennings v.

17  Rodriguez, 138 S.Ct. 830, 839 (2018).  While the Supreme Court would not countenance the

18  Ninth Circuit's use of "constitutional avoidance" to impose certain bond hearing procedural

19  requirements not contained in the statutes, it nevertheless had no difficulty in concluding that the

20  restrictive judicial review language of the statute "does not deprive us of jurisdiction."  Id. at

21  840.

22      Like the Plaintiffs in this case, the Rodriguez petitioners "[were] not asking for review of

23  an order of removal. . . [were] not challenging the decision to detain them in the first place or to

24

1    seek removal; and . . . [were] not even challenging any part of the process by which their

2    removability will be determined." Id. at 841.  In the face of such a challenge, the Supreme Court

3    found no jurisdictional bar, as the statutory restrictions on judicial review cannot preclude a

4    challenge to the overall constitutionality of the legislation or whether it is being applied in a

5    constitutional fashion.  Id. at 840.  The Ninth Circuit followed suit on remand.  See Rodriguez,

6    2018 WL 6164602.  In light of what it identified as "vital constitutional issues," the Ninth Circuit

7    was moved to remark that

8            We have grave doubts that any statute that allows for arbitrary prolonged
             detention without any process is constitutional or that those who founded our
9            democracy precisely to protect against the government's arbitrary deprivation of
             liberty would have thought so.  Arbitrary civil detention is not a feature of our
10           American government.

11   Id. at *3.

12           While Plaintiffs' factual circumstances and the relief which they seek are not on all fours

13   with the petitioners in Rodriguez, the Court sees no difference between the two cases in terms of

14   the constitutional issue ("arbitrary prolonged detention") at stake.  While the outcome of the

15   litigation is not certain at this point, the Court's jurisdiction to consider the claims of the

16   Credible Fear Interview class "contesting the constitutionality of the entire statutory scheme

17   under the Fifth Amendment," Jennings, 138 S.Ct. at 841, is not in question.

18           The Court recognizes that the existence of Fifth Amendment issues does not, by itself,

19   confer jurisdiction upon it to hear Plaintiffs' claims.  However, Plaintiffs here seek habeas relief

20   for their alleged injuries and "[i]t is now clear that 'federal district court has habeas jurisdiction

21   under 28 U.S.C. §2241 to review'" complaints by detained aliens "for constitutional claims and

22   legal error.  Although [the immigration statutory scheme] restricts jurisdiction in the federal

23   courts in some respects, it does not limit habeas jurisdiction over constitutional claims or

24

1    questions of law." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)(citing V. Singh

2    v. Holder, 638 F.3d 1196, 1200, 1202 (9th Cir. 2011)).

3            **B.  Constitutional Rights**

4            In addition to challenging jurisdiction, the government also asserts that, as "non-admitted

5    aliens," the members of the Credible Fear Interview class have no constitutional right to enter the

6    United States or have the determination of their admissibility subject to any procedural

7    safeguards other than those Congress has seen fit to provide.  The issue of whether and to what

8    extent Plaintiffs have any due process rights is dependent on how their status is characterized;

9    simply put, are they "excludable aliens" with little or no due process rights, or are they aliens

10   who are in the country illegally, but nevertheless *in the country* such that their presence entitles

11   them to certain constitutional protections?

12           There is a string of cases stretching from the 1950s to the present concerning what are

13   known as "excludable aliens" – defined as "those who seek admission but have not been granted

14   entry into the United States." Garcia-Mir v. Smith, 766 F.2d 1478, 1484 (11th Cir. 1985).  As

15   the Ninth Circuit has stated:

16           The Supreme Court has consistently recognized that 'our immigration laws have
             long made a distinction between those aliens who have come to our shores
17           seeking admission . . . and those who are within the United States after an entry,
             irrespective of its legality.  In the latter instance, the Court has recognized
18           additional rights and privileges not extended to those in the former category who
             are merely 'on the threshold of initial entry.'  [ ] In Mezei, the Supreme Court
19           noted that 'aliens who have once passed through our gates, even illegally, may be
             expelled only after proceedings conforming to traditional standards of fairness
20           encompassed in due process of law.'  An excludable alien, however, has no
             procedural due process rights regarding his admission or exclusion and thus
21           'stands on a different footing: 'Whatever the procedure authorized by Congress is,
             it is due process as far as an alien denied entry is concerned.' . . . However, once
22           an alien gains admission to our country and begins to develop the ties that go with
             permanent residence, his constitutional status changes accordingly.
23
     Barrera-Echavarria v. Rison, 44 F.3d 1441, 1448-49 (9th Cir. 1995) (citations omitted).
24

1        This principle has given rise to the "entry fiction," a legal concept which holds that

2 "excludable aliens," "[e]ven if physically present in this country, . . . are legally detained at the

3 border" and treated as if they have *not* entered the country.  Garcia-Mir, supra at 1484.

4        However, there is also Supreme Court precedent that "once an individual has entered the

5 country, he is entitled to the protection of the *Due Process Clause*."  United States v. Raya-Vaca,

6 771 F.3d 1195, 1202 (9th Cir. 2014)(emphasis in original).  This concept is reflected in the line

7 of cases following Zadvydas v. Davis, 533 U.S. 678 (2001), where the Supreme Court

8 differentiated between aliens "seeking entry" into the United States and those already within our

9 borders:

10       The distinction between an alien who has effected an entry into the United States
        and one who has never entered runs throughout immigration law. . . . [O]nce an
11       alien enters the country, [his/her] legal circumstance changes, for the Due Process
        Clause applies to all "persons" within the United States, including aliens, whether
12       their presence here is lawful, unlawful, temporary, or permanent.

13 Zadvydas, 533 U.S. at 693.

14        The government argues that Plaintiffs are "excludable" aliens with no inherent due

15 process rights; Plaintiffs naturally argue that they are "Raya-Vaca aliens," detained after crossing

16 over the border of this country and therefore entitled to a wider array of constitutional

17 protections.  The factual allegations regarding the entry circumstances of each Plaintiff are as

18 follows:

19

20     • Ms. Padilla "crossed the U.S.-Mexico border" and was arrested as she was "making her
       way to the closest Port of Entry."  (SAC, ¶ 40.)
21
     • Ms. Guzman "crossed the U.S.-Mexico border" and was arrested by a CBP agent. (Id. at
22       ¶ 42.)

23     • Ms. Orantes "crossed the U.S.-Mexico border . . . immediately walked to the CBP
       station to request asylum," and was arrested.  (Id. at ¶ 44.)

24

- Mr. Vasquez "crossed the U.S.-Mexico border" and was arrested by a CBP agent.  Id. at ¶ 46.)

Faced with a motion to dismiss, this Court must accept all well-plead allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff.  Wyler, 135 F.3d at 661.  Under this standard, the Court concludes that Plaintiffs have adequately plead that they were within the borders of this country without permission when detained, and thus enjoy inherent constitutional due process protections which they are entitled to vindicate through the legal process.  The Court will not dismiss Plaintiffs' claims on the grounds that they do not have a right to the constitutional protections they seek.  Defendants' motion in this regard is DENIED.

## C.  Credible Fear Claims Under the APA

The scope of review under the APA is described at 5 U.S.C. § 706, which states:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions and determine the meaning or applicability of the terms of an agency action.  The review court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

    (A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B)    contrary to constitutional right, privilege, or immunity

    (C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D)    without observance of procedure required by law;

    (E)    unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Plaintiffs bring their claims under § 706(1) and § 706(2)(A) and (B).

1

            **1.  Unreasonable Delay (§ 706(1))**

2            The Court questions whether the issue of "unreasonable delay" is amenable to resolution

3  by class action lawsuit, as, absent a statutory deadline, the factors which go into a decision of

4  when to schedule an interview are highly specific and will require individualized factual

5  inquiries to determine their "reasonableness."  See Diop v. ICE/Homeland Sec., 656 F.3d 221,

6  233 (3rd Cir. 2011) ("[The determination of the point at which a delay becomes 'unreasonable']

7  will necessarily be a fact-dependent inquiry that will vary depending on individual

8  circumstances. We decline to establish a universal point at which [it] will always be considered

9  unreasonable."); see also Sopo v. U.S. Att'y Gen., 825 F.3d 1199, 1215 (11th Cir. 2016), vacated

10  on unrelated grounds, 890 F.3d 952 (11th Cir. 2018)[2] ("'[R]easonableness, by its very nature is a

11  fact-dependent inquiry requiring an assessment of all the circumstances of any given case.' A

12  bright-line approach strips away the essence of a reasonableness standard.").  Aside from arguing

13  that there is no Ninth Circuit authority discouraging determinations of "reasonableness" on a

14  class-wide basis, Plaintiffs have no response to the rationale enunciated by the Third and

15  Eleventh Circuits in finding that "reasonableness" in this context is not amenable to class-wide

16  resolution.

17           The government also contends that Plaintiffs fail to state a claim for relief under § 706(1)

18  because they have no "live" claims (i.e., they all have been provided with credible fear

19  interviews and released from detention).  But "inherently transitory" claims such as those

20  presented by Plaintiffs will not be defeated by such a defense as long as any member of the class

21  still has standing to bring the claim.  Sosna v. Iowa, 419 U.S. 393, 402 (1975) ("The controversy

22

23  ———————————————
[2] The case was vacated by stipulation when appellant's removal rendered his appeal moot; its holdings are still valid
24  legal precedent.

may exist, however, between a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.").

Nevertheless, the Court is persuaded that the reasonableness or unreasonableness of delay is not suitable to resolution by means of class action. Accordingly, Defendants' motion to dismiss Plaintiffs' 706(1) claim is GRANTED.

### 2. No Final Agency Action (§ 706(2))

Unless an agency's actions are made reviewable by statute, they are only reviewable if they are a "final agency action." 5 U.S.C. § 704. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 61-62 (2004); Navajo Nation v. Dept. of the Interior, 876 F.3d 1144, 1171 (9th Cir. 2017). Whether an agency action is "final" is determined by two factors: (1) whether it "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) whether the action is "one by which 'rights or obligations have been determined,'" or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1977).

The government contends that there is no "final agency action" at issue in this lawsuit, thus no cause of action under the APA. Plaintiffs make the following arguments:

First, Plaintiffs contend that the credible fear interview marks the culmination of a decision-making process (i.e., because once the interview is concluded, the matter is transferred from DHS to EOIR). While this may be the case, Plaintiffs are not seeking a review of the outcome of a credible fear interview but are instead challenging the *timing* of the interview itself. *When* the interview is held does not mark the culmination of any decision-making process.

Second, Plaintiffs contend that the credible fear interview is a process by which rights are determined and from which legal consequences flow. Again, this is correct with regard to the interview itself (as the decision following the interview will determine whether the applicant will

1    be able to apply for relief from the immigration court or be subject to expedited removal), but

2    inapplicable to the question of *when* the interview is conducted.

3            Defendants' motion to dismiss the claim of the Credible Fear Interview class under the

4    APA is GRANTED.

5    **III.    Bond Hearing Claims**

6            Plaintiffs' claims regarding the bond hearings fall into two categories: (1) the demand for

7    a hearing within seven days of request and (2) the demand for greater procedural rights (i.e.,

8    verbatim transcripts or recordings of every hearing, written findings, and that the burden of proof

9    be shifted to the government).  (SAC at ¶¶ 148, 151-152, 163-165.)

10           A.  Constitutional Claims

11           As an initial matter, the Court is not persuaded by the government's arguments that the

12   Bond Hearing class has failed to state a claim for relief on constitutional grounds.  After

13   reviewing the regulations surrounding the bond hearing process, the government simply asserts

14   that it provides "ample process" and that, in the absence of a statutory deadline,

15               leaving scheduling determinations to the immigrations courts appropriately
16               balances the immigration courts' interest in docket management while allowing
                 them the flexibility to adapt to fluctuations in cases and to make prioritization
17               decisions.  Given these considerations, and the fact-specific inquiry required for
                 Plaintiffs' due process (and related APA challenges), they cannot state a claim for
18               an unbending seven-day bond hearing rule.

19   (Dkt. No. 36 at 15.)   This argument is made without analysis or case citation.

20           To the contrary, a plethora of district court and Board of Immigration Appeals cases

21   affirm the requirement of a "prompt" or "expeditious" bond hearing for immigrants seeking

22   entry.  See, e.g., Matter of Chirinos, 16 I&N Dec. 276, 277 (BIA 1977); Matter of Valles-Perez,

23   21 I& Dec. 769, 772 (BIA 1997); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1177 (N.D. Cal.

24

2017).  The Court is not required at this stage to determine the reasonableness of the precise time limit Plaintiffs seek to impose on the bond hearing process in order to find that they have rights to adjudicate, and will not dismiss their claims on this ground.

With respect to their other due process claims concerning the bond hearing procedure, Plaintiffs have provided no support for their assertion that the government should bear the burden of proof in the bond hearing, or that the Bond Hearing class members are entitled to a "presumption of release".  They simply state that "placing the burden of continued detention on DHS and restoring the presumption of release is consistent with Congressional intent."  (Dkt. No. 69 at 17.)  While Plaintiffs allude to briefing in their pending motion for a preliminary injunction which allegedly supports this position, the Court is not inclined to permit Plaintiffs to evade the page limitations by incorporating arguments from other motions by reference.  By contrast, the government presents several paragraphs laying out how and why the burden of proof shifted from the government to the applicant following the adoption of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA).  (Dkt. No. 36 at 16-17.)

The Supreme Court's 2018 opinion in Jennings provides further support for the government's position: Jennings overturned Ninth Circuit decision ordering the government to provide periodic bond hearings for detained immigrants at which the government bore the burden of proving by clear and convincing evidence that continued detention was necessary.  Jennings, 138 S.Ct at 836.   The Supreme Court observed in that opinion that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements."  Id. at 847.

1    With respect to Plaintiffs' demand for transcripts and/or recordings and a "particularized"

2  written finding in bond hearings, the government points out that while 8 U.S.C. § 1229a(b)(4)(C)

3  specifically requires a "complete record . . . of all testimony and evidence produced" in removal

4  hearings, there is no equivalent requirement in the statute for preliminary, non-removal hearings

5  including bond determinations.[3]

6    However, the due process requirements of the Constitution compel certain procedures

7  regardless of whether they are or are not included in a statute.  The Ninth Circuit has already

8  found a Fifth Amendment requirement for a contemporaneous record of a bond hearing in

9  similar circumstances:

10    [W]e agree that due process requires a contemporaneous record of [immigration
      bond] hearings and that the memorandum decision presently provided is
11    insufficient. We hold that, in lieu of providing a transcript, the immigration court
      may record [] hearings and make the audio recordings available for appeal upon
12    request. Although we determine that such audio recordings satisfy due process,
      and are feasible for the government to provide, we do not decide whether they are
13    the only constitutionally adequate alternative to transcripts.

14  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  As discussed in the preceding section

15  concerning the Credible Fear Interview class, Plaintiffs are entitled to certain constitutional

16  protections simply by virtue of their presence within this country.  At this stage, the Court does

17  not determine whether the particular remedies they seek are constitutionally supported, but will

18  allow Plaintiffs to move forward with their claims of constitutional due process violations in the

19  bond hearing procedure.

20

---

21  [3] The government goes on to claim that, because "[t]he Supreme Court has declined to impose a contemporaneous
    verbatim record requirement on *criminal* trials," the Court should not do so in immigration custody redetermination
22  hearings.  (Dkt. No. 36 at 18 (emphasis in original).)  The problem with this argument is that every case cited in
    support of this proposition says the *opposite*: that indigent defendants must be provided with "a record of sufficient
23  completeness" (Coppedge v. United States, 369 U.S. 438, 446 (1962) for an appeal or "a complete transcript of the
    proceedings at trial."  United States v. Carrillo, 902 F.2d 1405, 1409 (9th Cir. 1990).

24

1    Defendants' motion to dismiss the constitutional claims of the Bond Hearing Class is

2  DENIED.

3             **B. Administrative Procedures Act (APA)**

4                 **1. Unreasonable Delay (§ 706(1))**

5    As with the bond hearing claims, the government argues that the issue of "unreasonable

6  delay" is not amenable to resolution on a class-wide basis because there is no "uniform"

7  unreasonable delay, and the length of any delay necessarily requires an individualized inquiry.

8    The government cites to a D.C. Circuit opinion for the holding that "whether the delay. . .

9  should be deemed 'unreasonable'. . . cannot be decided in the abstract, . . . but will depend in

10  large part, as we have said, upon the complexity of the task at hand, the significance (and

11  permanence) of the outcome, and the resources available to the agency."  Mashpee Wampanoag

12  Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Plaintiffs counter that they

13  are not requesting a decision "in the abstract," but rather a decision based on an analysis of the

14  factors set forth in Telecomms. Res. & Action v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC").[4]

15  Those factors, which courts consider in determining whether an agency's delay is "so egregious

16  as to warrant mandamus," include:

17       (1) the time agencies take to make decisions must be governed by a "rule of
         reason;" (2) where Congress has provided a timetable or other indication of the
18       speed with which it expects the agency to proceed in the enabling statute, that
         statutory scheme may supply content for this rule of reason; (3) delays that might
19       be reasonable in the sphere of economic regulation are less tolerable when human
         health and welfare are at stake; (4) the court should consider the effect of
20       expediting delayed action on agency activities of a higher or competing priority;
         (5) the court should also take into account the nature and extent of the interests
21       prejudiced by the delay; and (6) the court need not find any impropriety lurking
         behind agency lassitude in order to hold that agency action is unreasonably
22       delayed.

23  ――――――――――――――――――
    [4] Once again, Plaintiffs refer the Court to their motion for a preliminary injunction motion for analysis of these
24  factors, and once again, the Court will not consider argument from other pleadings incorporated by reference.

Id. at 80 (internal quotations omitted).   Because any analysis of these factors, as well as analysis of the "reasonableness" of delay, will necessarily require individualized inquiry, the Court finds the § 706(1) claim incapable of class-wide resolution.

While Plaintiffs do cite to other cases where a TRAC analysis has been employed in the class action context, these cases are distinguishable from this matter in that both involved an agency's failure to meet regulatory deadlines.  See Roshandel v. Chertoff, Case No. C07-1739MJP, 2008 WL 1969646(W.D. Wash. May 5, 2008); Rosario v. USCIS, Case No. C15-813JLR, 2017 WL 3034447 at *9-10 (W.D. Wash. July 18, 2017)[5].

In the instant case, the absence of any firm regulatory or statutory deadline will require the Court to engage in individualized, fact-dependent inquiries of "reasonableness," and such necessity requires a finding that the Bond Hearing class has failed here to adequately state a claim upon which relief can be granted.  Defendants' motion to dismiss this portion of the Bond Hearing class' claim is GRANTED.

### 2.  No Final Agency Action (§ 706(2))

To state a claim under the APA with respect to their bond hearing claims, Plaintiffs must establish the existence of a "final agency action" which "marks the 'consummation' of the agency's decisionmaking process" and either determines "rights or obligations" or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1977).

With respect to the Bond Hearing class' attempt to impose a deadline on the bond hearings via the APA, the Court's analysis tracks that of the identical request made by the

---

[5] "'[A court] need not undertake TRAC's six-factor balancing inquiry' where a regulation imposes a firm deadline[]. Accordingly, the court rejects Defendants' argument that the individualized TRAC inquiry undermines commonality." Id. at *10.

1    Credible Fear Interview class.  The *timing* of the bond hearing does not represent a "final agency

2    action" and Plaintiffs cannot adequately state a claim for this particular relief under that statute.

3    The same cannot be said of the Bond Hearing Class' claim that failure to accord them

4    certain procedural safeguards violates the APA.  While the government argues that there is no

5    "policy" with respect to either the timing of the bond hearing or the procedural rights accorded to

6    bond applicants, and therefore no determination of rights or obligations and no "final agency

7    action," the Court disagrees, and concludes that its practice of placing the burden of proof on

8    detainees[6] and not providing either a verbatim record nor particularized written findings for each

9    hearing constitute a "policy" for purposes of this claim.[7]  The procedural defects alleged by the

10   Bond Hearing class are part and parcel of the bond hearing, which is indisputably a "final agency

11   action" from which legal consequences flow.  If Plaintiffs can establish that these alleged defects

12   violate their constitutional rights, they are entitled to relief under the APA.

13   Defendants' motion to dismiss the claim of the Bond Hearing class under § 706(2) of the

14   APA will be GRANTED IN PART (with respect to the timing of the bond hearing) and DENIED

15   IN PART (with respect to the procedural rights which Plaintiffs seek to impose via this cause of

16   action).

17   **IV.   Asylum Statutes (§ 1225(b)(1), § 1158(a)(1), 8 C.F.R. §§ 235.3(b)(4), 208.30, 1003.42)**

18   Plaintiffs indicated at oral argument their intent to abandon this claim, therefore

19   Defendants' motion to dismiss this claim is GRANTED.

20

21   [6] The Court also is not persuaded by the government's claim that the burden of proof standards are set by statute, not
     by agency action.  In <u>Jennings</u>, the Supreme Court noted the *absence* of any requirement in § 1226(a) regarding the

22   burden of proof, and its rationale does not defeat Plaintiffs' claim.  138 S.Ct. at 847-48.

     [7] Plaintiffs cite BIA case law (<u>Chirinos</u>, <u>supra</u>), EOIR Operating Policies and Procedures Memorandum, and Ninth
23   Circuit precedent that "[a]gency action . . .  need not be in writing to be final and judicially reviewable."  <u>R.I.L-R v.
     Johnson</u>, 80 F. Supp. 3d 164, 184 (D.C. Cir. 2015) (citing <u>Venetian Casino Resort LLC v. EEOC</u>, 530 F.3d 925, 929

24   (D.C. Cir. 2008)).

1

**V.      Injunctive Relief**

2

The government points to § 1252(f)(1)'s "Limit on injunctive relief":

3

Regardless of the nature of the action or claim or of the identity of the party or
parties bringing the action, no court (other than the Supreme Court) shall have
jurisdiction or authority to enjoin or restrain the operation of the provisions of
chapter 4 of title II [*8 USCS §§ 1121* et seq.] . . . other than with respect to the
application of such provisions to an individual alien against whom proceedings
under such chapter have been initiated.

4

5

6

The government argues that this language bars the injunctive relief sought by Plaintiffs.  The

7

Court disagrees.  Plaintiffs are not asking the Court to "enjoin or restrain *the operation of the*

8

*provisions"* of any statute, but instead seek an injunction against actions and policies that violate

9

those statutes and associated constitutional protections.  There are a number of cases holding that

10

§ 1252(f) is does not bar class-wide relief in this situation.  See Rodriguez v. Hayes, 591 F.3d

11

1105, 1120 (9th Cir. 2010) ("Section 1252(f) prohibits only injunction of 'the operation of' the

12

detention statutes, not injunction of a violation of the statutes . . ."); see also Damus v. Nielsen,

13

313 F. Supp. 3d 317, 328 (D.D.C. 2018); Johnson, 80 F. Supp. 3d at 184; Abdi v. Duke, 280 F.

14

Supp. 3d 373, 409 (W.D.N.Y. 2017) ("Where, as here, the moving party does not seek to enjoin

15

the operation of §§ 1221-1231, and instead, seeks to enjoin violations of the statutory and

16

regulatory framework, the class-wide prohibition on injunctive relief is inapplicable.") (internal

17

quotation marks omitted).

18

The government does not argue that Plaintiffs are not entitled to class-wide declaratory

19

relief.

20

Defendants' request for dismissal of Plaintiffs claims for injunctive and declaratory relief

21

is DENIED.

22

23

24

ORDER ON MOTION TO DISMISS - 19

1

**Conclusion**

2       The Court has jurisdiction to hear Plaintiffs' lawsuit.  Both the proposed Credible Fear

3   Interview and Bond Hearing classes have succeeded in stating a claim under Count I for

4   constitutional relief from certain alleged violations by Defendants, and Defendants' motion will

5   be DENIED in that regard.  The Credible Fear Interview class has failed to state a claim under

6   the APA for which relief may be granted, and Defendants' motion to dismiss is GRANTED in

7   that regard.

8       The Bond Hearing class has failed to state a claim for which relief may be granted under

9   § 706(1) or § 706(2) of the APA concerning the timing of their bond hearings; Defendants'

10  motion to dismiss is GRANTED in that regard.  The Bond Hearing class has succeeded in stating

11  a claim for which relief may be granted under § 706(2) of the APA concerning the procedural

12  safeguards (i.e., burden of proof, provision of a verbatim transcript, written findings) to which

13  they allege they are entitled; Defendants' motion is DENIED in that regard.

14      It is the further finding of this Court that Plaintiffs are entitled to seek injunctive and

15  declaratory relief for the causes of action which they have successfully plead.  Defendants'

16  motion is DENIED in that regard as well.

17

18      The clerk is ordered to provide copies of this order to all counsel.

19      Dated December 11, 2018.

20

21      The Honorable Marsha J. Pechman
        United States Senior District Court Judge

22

23

24