1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    YOLANY PADILLA, et al.,                          CASE NO. C18-928 MJP

11                              Plaintiffs,            ORDER GRANTING
                                                       CERTIFICATION OF THE
12                    v.                               CLASSES

13    US IMMIGRATION AND CUSTOMS
      ENFORCEMENT, et al.,
14
                                Defendants.
15

16

17         The above-entitled Court, having received and reviewed

18         1.  Plaintiffs' Amended Motion for Class Certification (Dkt. No. 37),

19         2.  Defendants' Opposition to Plaintiffs' Amended Motion for Class Certification (Dkt.

20             No. 68),

21         3.  Plaintiffs' Reply in Support of Amended Motion for Class Certification (Dkt. No.

22             72),

23    all attached declarations and exhibits, and relevant portions of the record, rules as follows:

24

ORDER GRANTING CERTIFICATION OF THE CLASSES - 1

IT IS ORDERED that the motion is GRANTED, and the following classes are certified in this matter:

(1) **Credible Fear Interview Class**: All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who are not provided a credible fear determination within ten days of *the later of* (1) requesting asylum or expressing a fear of persecution to a DHS official *or* (2) the conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview.

(2) **Bond Hearing Class**: All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing.

IT IS FURTHER ORDERED that Plaintiffs Padilla, Guzman, Orantes and Vasquez are designated as representatives of the Credible Fear Interview Class; Plaintiffs Orantes and Vasquez as representatives of the Bond Hearing Class; and Plaintiffs' counsel as class counsel.

## Background

Plaintiffs are the named representatives of a putative class seeking declaratory relief related to Defendants United States Immigration and Customs Enforcement ("ICE"), United States Department of Homeland Security ("DHS"), United States Customs and Border Protection ("CBP") and United States Citizenship and Immigration Services ("USCIS")'s policies and practices with respect to the processing of asylum and credible fear claims and the setting of bond for detained immigrants pending resolution of those claims.  Their complaint was originally filed on June 25, 2018 (Dkt. No. 1) and has been amended twice to date.  (Dkt. Nos. 8, 26.)[1]

---

[1] The complaint in this case was initially filed on June 25, 2018.  (Dkt. No. 1.)  Since then, it has been twice amended.  (Dkt. Nos. 8, 26.)  The operative complaint is now the Second Amended Complaint.  (Dkt. No. 26 ("SAC").)  Hereinafter, all references to the complaint refer to the SAC.

### A.  The Named Plaintiffs

**Yolany Padilla**: Shortly after her apprehension for illegal entry into the United States in May 2018, Ms. Padilla expressed a fear of being removed to her native Honduras.  (SAC at ¶ 40.)  Six weeks later, she was interviewed by an asylum officer and one day later, found to have a credible fear.  Two days later, she was granted a bond hearing, was awarded bond, and was released in late July 2018. (<u>Id.</u> at ¶ 66, 115.)

**Ibis Guzman**: Ms. Guzman is also from Honduras and underwent a similar process to Ms. Padilla.  She was represented at her bond hearing but was denied bond.  (<u>Id.</u> at ¶¶ 32, 99.) She reserved appeal, but was released in late July 2018.  (<u>Id.</u> at ¶ 119.)

**Bianca Orantes**: Shortly after her apprehension for illegal entry into the United States, Ms. Orantes expressed a fear of returning to her native El Salvador.  (<u>Id.</u> at ¶ 44.)  About five weeks later, she was interviewed by an asylum officer and, one day later found to have a credible fear.  (<u>Id.</u> at ¶ 102.)  She was granted a bond hearing 11 days after her credible fear determination, was denied bond, reserved appeal, but was released in late July 2018.  (<u>Id.</u> at ¶¶ 121, 123.)

**Baltazar Vasquez**: Shortly after his apprehension for illegal entry into the United States, Mr. Vasquez expressed a fear of returning to his native El Salvador.  (<u>Id.</u> at ¶ 46.)  About eight weeks later, he was interviewed by an asylum officer and found to have a credible fear.  Three weeks later, he was granted a bond hearing, stipulated to an $8,000 bond, waived appeal, and was released.  (<u>Id.</u> at ¶¶ 108, 125.)

### B.  The Class Claims

Plaintiffs seek certification of two classes: A Credible Fear Interview Class and a Bond Hearing Class (collectively, the "Classes"), and assert the following remaining claims:

1    **Count I (Violation of Due Process)**: Both Classes claim they were detained for "an

2    unreasonable time" while awaiting their credible fear interview and bond hearings.  They seek to

3    impose (1) a ten-day deadline for the credible fear interview, running from the date on which the

4    non-citizen expresses a fear of returning to his or her country; and (2) a seven-day deadline for

5    the bond hearing, running from the date of a positive credible fear determination.  In addition,

6    they seek procedural changes to the bond hearing including (1) that the government bear the

7    burden of proof; (2) that they be provided a recording or verbatim transcript of the hearing; and

8    (3) that the bond adjudicator issue written findings after every hearing.

9        **Count II (Administrative Procedure Act)**:  The Bond Hearing Class claims that

10   the procedural deficiencies they allege in the bond hearing process are an unconstitutional part

11   of a "final agency action" in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2)

12   ("APA").[2]

13                             **Discussion**

14       Preliminarily, Defendants again argue that the restrictions in the immigration statutes at

15   issue deprive this Court of jurisdiction. These arguments are identical to those which the Court

16   has previously rejected.  (See Dkt. No. 91 at 6-8; Dkt. No. 100.)  The Court will not repeat its

17   reasoning here, but will repeat its finding that it has jurisdiction to hear Plaintiffs' claims.

18   **I.    Legal Standard**

19       Plaintiffs seek class certification under Federal Rules of Civil Procedure 23(a) and

20   23(b)(2).  Rule 23(a) provides that a class may be certified only if: (1) the class is so numerous

21

22   _____

[2] Count II also claims that credible fear interviews and bond hearings were being "unreasonably
23   delayed" in violation of the APA, § 706(1).  However, those claims were dismissed by the Court
under Fed. R. Civ. P. 12(b)(6).  (See Dkt. No. 91 at 11-12, 16-17.)  Count III (Violation of
24   Asylum Statute) has been abandoned.  (Id. at 18.)

1   that joinder of all members is impracticable; (2) there are questions of law or fact common to the

2   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

3   of the class; and (4) the representative parties will fairly and adequately protect the interests of

4   the class.  Rule 23(b)(2) provides that a class may be maintained if "the party opposing the class

5   has acted or refused to act on grounds that apply generally to the class, so that . . . declaratory

6   relief is appropriate respecting the class as a whole."  A class may be certified under Rule

7   23(b)(2) where the challenged conduct is "such that it can be enjoined or declared unlawful only

8   as to all of the class members or as to none of them."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S.

9   338, 360 (2011).

10   **II.   Class Certification**

11   **A.  Numerosity**

12   Defendants do not challenge this element, and the Court finds that the requirement for

13   numerosity has been satisfied.

14   **B.  Commonality**

15   Plaintiffs contend that, despite the differing factual circumstances among the class

16   members, all have suffered the same injury, and that injury is capable of class-wide resolution.

17   <u>Wal-Mart</u>, 564 U.S. at 350.  Regarding the timing of credible fear interviews and bond hearings,

18   the alleged injury is the failure to hold the interviews and hearings in a constitutionally timely

19   manner (<u>i.e.</u>, ten days and seven days, respectively, according to the complaint).  Regarding the

20   bond hearings, the alleged injury is the claimed procedural deficiencies (<u>i.e.</u>, that the burden of

21   proof is placed on the detainee; that no verbatim record and no written findings are provided

22   unless the ruling is appealed).  The uniform resolution which is applicable to all members of the

23   class is a declaratory judgment that these practices are unconstitutional.

24

1    Regarding the timing of interviews and hearings, Defendants respond that the individual

2    circumstances of the class members and varying reasons for delays in their interviews and

3    hearings render this matter incapable of a uniform procedural resolution.  For example, because

4    some of the class members have not entered at a recognized point of entry ("POE"), they are

5    subject to criminal prosecution, which may affect the timing of credible fear interviews and/or

6    bond hearings.  This argument is addressed in detail in Section II.C, *infra*, with respect to

7    typicality and adequacy of the class representatives.  The Court will confine itself here to a

8    finding that the criminal prosecutions faced by some class members will not suffice to defeat

9    commonality.

10    Regarding the procedural protections available at bond hearings, Defendants claim that

11    the balancing test in Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976) (which weighs the

12    private interest affected by the government action, the risk of erroneous deprivation of the

13    private interest, and the government interest in the action) requires an "individualized

14    assessment," and that imposing a strict and uniform timetable on credible fear interviews and

15    bond hearings would be inconsistent with "the flexibility inherent in due process."  Mathews

16    contains no holding to this effect, nor does it hold that a classwide deprivation of due process

17    cannot be addressed by a uniform solution.

18    Defendants further contend that due process violations in the immigration context must

19    be subjected to a "harmless error" analysis.  See, e.g., Prieto-Romero v. Clark, 534 F.3d 1053,

20    1066 (9th Cir. 2008); Singh v. Holder, 638 F.3d 1196, 1210 (9th Cir. 2011).  While this does

21    appear to be the state of the law regarding individual litigants, neither of these cases were class

22    action suits analyzing the commonality of class claims.  The fact that certain members of the

23    Classes may not have ultimately been harmed by the allegedly unconstitutional practices of the

24

1    government does not mean that these practices are constitutional.  Furthermore, a finding that

2    any or all of these practices are unconstitutional means, *ipso facto*, that they have the potential to

3    harm anyone who is subjected to them.  The purpose of classwide declaratory relief is to avert

4    any such likelihood and it is self-defeating to wait until after the fact of the bond hearing to

5    decide whether the practice is unconstitutional *and* harmful to a particular class member.

6        As Plaintiffs point out, "courts regularly resolve procedural due process claims on a

7    class-wide basis when addressing the constitutionality of immigration agencies' policies and

8    practices."  See, e.g., Hernandez v. Sessions, 872 F.2d 976, 993-94 (9th Cir. 2017); Walters v.

9    Reno, 145 F.3d 1032, 1047 (9th Cir. 1998); Rojas v. Johnson, 305 F. Supp. 3d 1176, 1194-1200

10   (W.D.Wash. 2018).

11       The Court finds that the requirement for commonality has been satisfied.

12   **C.  Typicality and Adequacy**[3]

13       Defendants attack the named Plaintiffs' typicality and adequacy on multiple fronts, and

14   the Court will address each in turn:

15           **1.  The Named Plaintiffs' Injury**

16       Defendants contend that the named plaintiffs have received their credible fear

17   determinations and bond hearings and have all been released from custody such that they are no

18   longer facing any injury.  The Court finds that these events do not defeat adequacy or typicality.

19       First, there is precedent for certifying a class where some of the proposed class members

20   have received some of the sought-after protections but others have not.  See Walters, 145 F.3d at

21   1037; Rojas v. Johnson, C16-1024RSM, 2017 WL 1397749, at *5-6 (W.D. Wash. Jan. 10, 2017).

22

23   ─────────────────────

[3] While typicality and adequacy are separate inquiries, they are in some ways overlapping and

24   the briefing tends to conflate the two factors.  Accordingly, the Court will address them together.

Second, the resolution of the named Plaintiffs' injuries occurred *after* the filing of the litigation, and courts are traditionally reluctant to permit government agencies "to avoid nationwide litigation that challenges the constitutionality of its general practices simply by pointing to minor variations in procedure . . . designed to avoid the precise constitutional inadequacies" which are at issue.  Walters, 145 F.3d at 1046.

Third, Plaintiffs' ultimate release is not a factor in a case where the nature of the class's common circumstance—immigration detention—renders their claims "inherently transitory":

> [W]here a plaintiff's claim becomes moot while she seeks to certify a class, her
> action will not be rendered moot if her claims are "inherently transitory" (such
> that the trial court could not have ruled on the motion for class certification before
> her claim expired), as similarly-situated class members would have the same
> complaint. The theory behind this rule is that such claims are "capable of
> repetition, yet evading review."

Rivera v. Holder, 307 F.R.D. 539, 548 (W.D. Wash. 2015) (citing Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1090-91 (9th Cir. 2011) (describing how this "relation back" doctrine applies in class actions)).  Claims which would otherwise "evade review" are permitted to "relate back" to the filing of the complaint for purposes of the certification analysis.  Sosna v. Iowa, 419 U.S., 393, 402 n.11 (1975).

Finally, Plaintiffs' claims are aimed at Defendants' *policies and practices*.  If those policies and practices are ultimately determined to be unconstitutional or otherwise violative of federal law, the fact that not all class members will have been injured by those practices (due to the "inherently transitory" nature of their claims) should not affect their ability to have those practices declared unconstitutional as to all who find themselves in similar circumstances.

### 2.   The Timing and Effect of Criminal Proceedings

Defendants argue that the named Plaintiffs are atypical, having been subject to—in addition to the normal immigration procedures—criminal prosecution (based upon their entry into the country at some place other than a POE).  Tellingly, Defendants fail to provide any explanation as to *how* a criminal prosecution might impact the timing of the credible fear interview and bond hearing or change the due process analysis.  In the case of at least Ms. Orantes, her credible fear interview occurred *weeks* after her criminal proceedings were concluded.  Nor do the immigration regulations regarding the right to a credible fear interview and bond hearing contain any provision about criminal prosecution impacting the timing of those procedures.  See 8 C.F.R. § 208.31(b).  The allegedly unconstitutional delays of which the named Plaintiffs complain remain the same for them as the other class members.

In response, Plaintiffs explain:

[J]ust as Plaintiffs do not seek to impose deadlines where delays are at the request of the applicant, they do not seek to require CFIs prior to a district court's disposition of a pending criminal charge.

(Dkt. No. 72 at 9.)  Based upon this representation, the Court will revise the Credible Fear Interview Class's proposed class definition, such that the requested ten-day deadline will be run from the disposition of any pending criminal proceedings.  In other words, the Credible Fear Interview Class will include "all detained asylum seekers . . . who are not provided a credible fear determination within ten days of *the later of* (1) requesting asylum or expressing a fear of persecution to a DHS official *or* (2) the conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview."

ORDER GRANTING CERTIFICATION OF THE CLASSES - 9

### 3. The Geographical Location, Circumstances of Entry, and Challenges to Bond Determinations

Defendants' arguments that the named Plaintiffs are located in different geographical regions, entered the country under different circumstances, and faced different outcomes at their bond hearings, fare no better.

First, Defendants follow the same "indefinite detention" policy across the country, regardless of their location or the circumstances of their entry. Further, these factors do not seem to affect the uniformity of treatment received by the putative class members: Plaintiffs have submitted affidavits from immigration attorneys across the country describing similar delays and procedural deficiencies in credible fear interviews and bond hearings. (Dkt. Nos. 39-44.)

Second, Defendants contend that Ms. Orantes and Mr. Vasquez are neither typical nor adequate to represent the bond hearing class because neither appealed their bond determination. The Court fails to see how this renders them atypical or inadequate, as they were still subject to the same allegedly improper circumstances (i.e., delayed bond hearings, alleged procedural deficiencies) as the class they seek to represent. Additionally, where a defendant's policies are immutable, a futile effort at administrative exhaustion is not required. American-Arab Anti-Discrimination Comm. v. Reno, 70 F.3d 1045, 1058 (9th Cir. 1995). In any event, according to the complaint, Ms. Orantes and Mr. Vazquez *did* intend to appeal their bond denials and only abandoned these efforts when they were released.

### 4. The Named Plaintiffs' Participation in Litigation

Lastly, Defendants argue that there is a lack of evidence of the named Plaintiffs' "interest, willingness, and understanding of the need to participate" in their litigation, based upon the absence of declarations affirming so much. As far as the Court is aware, there is no requirement that a named plaintiff submit a declaration specifically affirming their interest,

1    willingness, and understanding of the need to participate.  Further, Ms. Orantes submitted a

2    declaration in connection with the pending request for a preliminary injunction.  (See Dkt. No.

3    57.)  The physiological, psychological, and emotional hardships she relates in those declarations

4    leave little doubt as to her interest in the case and willingness to pursue it.  Defendants' request

5    for additional time to depose the named Plaintiffs on these topics is rejected as both unnecessary

6    and unduly time-consuming.

7          The Court finds that the requirements for typicality and adequacy have been satisfied.

8          **D.  Classwide Relief is Appropriate**

9          For the reasons discussed in Section II.B, *supra*, concerning the commonality

10   requirement, the Court finds that Defendants' conduct is applicable to all class members, such

11   that declaratory relief, if granted, will be appropriate for everyone in both the Credible Fear

12   Interview and the Bond Hearing Classes.

13         **E.  Nationwide Certification is Appropriate**

14         Defendants ask that, should the Court certify the requested classes, it not do so on a

15   nationwide basis.  Their grounds for this request are (1) "intercircuit comity," (2) the foreclosure

16   of similar litigation in other districts with the accompanying opportunity to address "unique local

17   issues", and (3) the risk that nationwide certification would foreclose class members—who will

18   not be able to opt out—from seeking "speedier individual relief."

19         The Court is not persuaded.  As Plaintiffs point out, the proposed class representatives

20   were transferred all over the country before landing in the Western District of Washington.  That

21   Defendants routinely transfer detained immigrants throughout the country prior to adjudicating

22   their cases is a fact capable of judicial notice, and the Court fails to see the logic of confining the

23   outcome of this matter to a single district.

24

1    Further, the Court's analysis of the "commonality" and "typicality" factors addresses the

2    validity of "unique local issues"—Plaintiffs are seeking a uniform nationwide resolution because

3    there is no provision in the applicable regulations (or the Constitution) that permits Defendants to

4    deny due process based upon "local issues," however "unique" they may be.  In any event,

5    Defendants cite no other similar litigation elsewhere in the country, and the Court is aware of

6    none.

7    Finally, the Court finds Defendants' concern that class members be afforded the

8    opportunity to seek "speedier individual recovery" to border on the cynical.  It is again a fact

9    eligible for judicial notice that the overwhelming majority of these class members are not

10   sufficiently resourced to pursue litigation on their own.

11   The Supreme Court has recognized that nationwide certification is committed to the

12   discretion of the district court and is appropriate in some circumstances.  Califano v. Yamasaki,

13   442 U.S. 682, 702-03 (1979).  The Court finds that this is manifestly one of those circumstances,

14   and rejects Defendants' request to limit the scope of the class certification.

15                                     **Conclusion**

16   Plaintiffs have established numerosity, commonality, typicality and adequacy, and have

17   further demonstrated that "declaratory relief is available to the class as a whole" and that the

18   challenged conduct is "such that it can be enjoined or declared unlawful only as to all of the class

19   members or as to none of them."  Wal-Mart, 564 U.S. at 360.  The Court therefore certifies a

20   Credible Fear Interview Class and a Bond Hearing Class as defined *supra*; designates named

21   Plaintiffs Padilla, Guzman, Orantes and Vasquez as Credible Fear Interview Class

22   representatives and Plaintiffs Orantes and Vasquez as Bond Hearing Class representatives; and

23   appoints Plaintiffs' counsel as class counsel.

24

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated March 6, 2019.

3

4

                                    Marsha J. Pechman
5                                   United States Senior District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24