*The Honorable Marsha J. Pechman*

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

YOLANY PADILLA, IBIS GUZMAN, BLANCA
ORANTES, BALTAZAR VASQUEZ,

No. 2:18-cv-928  MJP

12

Plaintiffs-Petitioners,

13

v.

14

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR");
THOMAS HOMAN, Acting Director of ICE; KIRSTJEN
NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,
Acting Commissioner of CBP; L. FRANCIS CISSNA,
Director of USCIS; MARC J. MOORE, Seattle Field Office
Director, ICE, JEFFERSON BEAUREGARD
SESSIONS III, United States Attorney General; LOWELL
CLARK, warden of the Northwest Detention Center in
Tacoma, Washington;  CHARLES INGRAM, warden of the
Federal Detention Center in SeaTac, Washington;  DAVID
SHINN, warden of the Federal Correctional Institution in
Victorville, California; JAMES JANECKA, warden of the
Adelanto Detention Facility,

**DEFENDANTS'
MOTION
TO VACATE THE
COURT'S PRELIMINARY
INJUNCTION ORDER
(DKT. 110)**

15

16

17

18

N‌OTE O‌N M‌OTION
C‌ALENDAR: M‌AY 15, 2019.

19

20

21

22

23

24

25

Defendants-Respondents.

26

27

28

i

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

    **A.**    **Plaintiffs' Motion for a Preliminary Injunction.** .......................................... 1

    **B.**    *Matter of M-S-.* ................................................................................................ 4

LEGAL STANDARD......................................................................................................... 6

ARGUMENT ................................................................................................................... 7

  I.  Vacatur of the Order is Required. ........................................................................ 7

    **A.**    **The Claim Pled in the Amended Complaint on Behalf of the Bond Hearing Class is No Longer Viable.** ...................................................................... 7

    **B.**    **Vacatur Is Also Necessary to Account for Jurisdictional Limitations Delineated in 8 U.S.C. § 1252.** ................................................................ 13

  II.  *Matter of M-S-* is a Correct Application of Unambiguous Law and, In Any Event, is Entitled to Deference. ............................................................................... 15

CONCLUSION................................................................................................................ 18

CERTIFICATE OF SERVICE ........................................................................................ 20

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 54(b), defendants move to vacate the Order entered by this Court on April 5, 2019 granting plaintiffs' motion for a preliminary injunction ("Order").  *See* Dkt. 110.  The predicate for the Order was that "detained asylum seekers who are determined by Defendant U.S. Immigration and Customs Enforcement ('ICE') to have a credible fear of persecution" possess an entitlement "to request release from custody during the pendency of the asylum process" via a bond hearing under *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005).  Dkt. 110 at 2.  Since the issuance of the Order, however, the legal landscape has dramatically changed.  Specifically, as defendants previously noted, *see* Dkt. 83 at 1-2, the Attorney General undertook review of the validity of *Matter of X-K-* in light of the holding in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), that "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin."  *Id.* at 845.  On April 16 of this year the Attorney General concluded that given *Jennings*, "*Matter of X-K-* was wrongly decided" and "is therefore overruled."  *Matter of M-S-*, 27 I&N Dec. 509, 510, 519 (A.G. 2019).  That ruling compels vacatur of the Order, as *Matter of M-S-* abrogates the very entitlement that the Order rests upon.  Indeed, this Court observed that once a decision in *Matter of M-S-* was rendered, it would "address that decision as needed," Dkt. 101 at 3, and plaintiffs themselves averred that "[p]roposed class members are eligible for bond hearings unless and until [*Matter of X-K-*] is vacated."  Dkt. 45 at 4 n.2; *see also* Dkt. 84 at 2 ("If and when [the Attorney General] issues a decision in *Matter of M-S-*, this Court may address that decision as needed, including with respect to the pending motion[] for … preliminary injunctive relief.").  Because the Order's statutory and constitutional analysis is premised on an incorrect understanding of the applicable baseline statutory entitlements, the injunction must be vacated.

**BACKGROUND**

**A.  Plaintiffs' Motion for a Preliminary Injunction.**

The amended Complaint filed in this action brings claims on behalf of two now-certified classes, *see* Dkt. 102 at 1-2, only one of which is relevant to the instant motion: those plaintiffs who entered the United States between Ports of Entry, were initially subjected to expedited

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

removal proceedings, and were determined to have an initial credible fear of persecution ("Bond Hearing Class").  *See id.* at 2; Dkt. 26, ¶ 5.

The statutory framework underpinning the claims pled by the Bond Hearing Class is largely enshrined in section 235 of the Immigration and Nationality Act ("INA").[1]  *See* 8 U.S.C. § 1225. Importantly, in no case governed by section 235 is a bond hearing permitted.  Subsection (b) of INA section 235 is subdivided into two subsections, the first—which is relevant here—governing expedited removal, *see* 8 U.S.C. § 1225(b)(1), and a second subsection not at issue here that provides for full removal proceedings in certain circumstances, *see* 8 U.S.C. § 1225(b)(2).  All members of the Bond Hearing Class are governed by Section 1225(b)(1); they were placed in expedited removal proceedings as aliens who crossed the border illegally between Ports of Entry and were encountered within 14 days of entry without inspection and within 100 air miles of a U.S. international land border.  *See* Dkt. 102 at 2; Dkt. 83 at 2.  Once found to have a "credible fear of persecution or torture," the Bond Hearing Class members were referred from expedited to full removal proceedings.  8 C.F.R. § 208.30(f).  The statutory provision governing the detention of the Bond Hearing Class, 8 U.S.C. § 1225(b)(1)(B)(ii), provides that if an Immigration Officer "determines at the time of the interview that an alien has a credible fear of persecution … the alien shall be detained for further consideration of the application for asylum."  Against this statutory backdrop, the amended Complaint[2] alleges "Federal law requires that if an asylum seeker enters the United States at a location other than a designated 'Port of Entry' and is determined to have a credible fear of persecution in his or her credible fear interview, that asylum seeker is entitled to an individualized bond hearing before an immigration judge …. This bond hearing must comport with constitutional requirements." Dkt. 26, ¶ 5.  This claim was based not on a statutory provision, but upon the Board of Immigration Appeals ("BIA") decision in *Matter of X-K-*, which found that the INA "provide[s] no specific guidance regarding the custody jurisdiction over" aliens found to have a "credible fear"—like members of the Bond Hearing Class—and proceeded to conclude that

---

[1] A comprehensive assessment of the statutory scheme is set forth in defendants' motion to dismiss.  *See* Dkt. 36 at 1-3.

[2] "The complaint in this case was initially filed on June 25, 2018.  (Dkt. No. 1).  Since then, it has been twice amended. (Dkt Nos. 8, 26)."  Dkt. 102 at 2 n.1.

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

such aliens would be entitled to seek a bond hearing.  23 I&N Dec. at 734, 736.

On September 20 of last year, plaintiffs moved for a preliminary injunction on behalf of the Bond Hearing Class, contending that "[u]nder the … INA, detained asylum seekers who entered the country without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), and who USCIS determines to have a credible fear of persecution, are eligible to seek release from incarceration while they pursue their claims.  *See Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005)."  Dkt. 45 at 3-4.  Plaintiffs noted that *Matter of X-K-* was likely to undergo "reconsider[ation]," but nonetheless argued that "[p]roposed class members are eligible for bond hearings unless and until the decision is vacated."  *Id.* at 4 n.2.  The crux of the motion was that defendants' alleged practice of "delaying Plaintiffs' bond hearings weeks, if not months, after a hearing request" ran afoul of the Due Process Clause of the Constitution.  *Id.* at 4-5.  The Bond Hearing Class accordingly requested an Order compelling defendants to: (1) conduct bond hearings within seven days of a hearing request; (2) place the burden of proof on the Department of Homeland Security ("DHS") in bond hearings; (3) produce a recording or verbatim transcript; and (4) produce a contemporaneous written decision with particularized determinations.  *Id.* at 2.

While the preliminary injunction motion was pending, defendants moved to "hold this case in abeyance … pending the Attorney General's forthcoming decision in *Matter of M-S-*."  Dkt. 83 at 1.  Defendants noted that "the Attorney General's forthcoming decision likely impacts any determination by this Court concerning whether Plaintiffs are entitled to bond hearings within seven days as a constitutional or statutory matter."  *Id.* at 6.  In denying the motion, this Court observed that a significant period of time had already passed and "[i]f Attorney General Barr issues a decision in *Matter of M-S-*, the Court will address that decision as needed."  Dkt. 101 at 3.

After briefing on the preliminary injunction motion concluded, this Court issued the Order on April 5 of this year, granting the motion in its entirety.  *See* Dkt. 110 at 2.  The Order began with the regulatory entitlement that the Bond Hearing Class possessed under *Matter of X-K-*.  *See id.* ("[D]etained asylum seekers who are determined … to have a credible fear of persecution are entitled to request release from custody during the pendency of the asylum process.").  In assessing

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

the Bond Hearing Class's likelihood of success on the merits of their claim and carrying out the "balancing test" mandated by application of the Due Process Clause, *id.* at 6, this Court rejected defendants' argument that *Jennings* strongly implied that the Bond Hearing Class no longer had any private interests to vindicate: "This is an oversimplified and inaccurate reading of [*Jennings*], which concerns 8 U.S.C. § 1225(b)(1), and quotes its language that '[a]ny alien … shall be detained pending a final determination of credible fear of persecution and, *if found not to have such a fear*, until removed.' The members of the Bond Hearing Class have been found 'to have such a fear' and that finding removes them from the detention requirements referenced in *Jennings*." *Id.* at 7 (emphasis in original). This Court went on to conclude that the remainder of the calculus under the Due Process Clause pointed to the conclusion that the Bond Hearing Class was likely to succeed on the merits, *see id.* at 7-15, and that the remaining preliminary injunction factors also favored granting plaintiffs' motion. *See id.* at 15-18. As a result, this Court issued the following directive: "within 30 days of this Order," defendants must:

> 1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit; 2. Place the burden of proof on Defendant [DHS] in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions; 3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and 4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

*Id.* at 19.

### B. *Matter of M-S-*.[3]

Following the issuance of the Order, the Attorney General decided *Matter of M-S-*, finding that "*Matter of X-K-* was wrongly decided," *Matter of M-S-*, 27 I&N Dec. at 510, based largely on the recent Supreme Court decision in *Jennings*, which concluded last year that section 1225(b) was not susceptible to a statutory interpretation under which bond hearings could be permitted. *See Jennings*, 138 S. Ct. at 851.

The "question presented" in *Matter of M-S-* was "whether aliens who are originally placed

---

[3] A copy of the decision in *Matter of M-S-* is attached to this motion.

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

in expedited [removal] proceedings and then transferred to full [removal] proceedings after establishing a credible fear become eligible for bond upon transfer." 27 I&N Dec. at 515.  The Attorney General answered the question resoundingly in the negative.  *See id.* ("I conclude that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States.").  The starting point for the decision in *Matter of M-S-* was the statutory text: "Section 235(b)(1)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he 'shall be detained for further consideration of the application for asylum.'"  *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).  The Attorney General rejected the argument that the word "for" in this phrase simply applied to the lead up to full removal proceedings: "[T]hat latter definition makes little sense in light of the surrounding provisions of the [INA].  If section 235(b)(1)(B)(ii) governed detention only 'in preparation for' … full proceedings, then another provision, [8 U.S.C. § 1226], would govern detention during those proceedings.  [8 U.S.C. § 1226], however, permits detention only on an arrest warrant issued by the Secretary.  The result would be that if an alien were placed in expedited proceedings, DHS could detain him without a warrant, but, if the alien were then transferred to full proceedings, DHS would need to issue an arrest warrant to continue detention.  That simply cannot be what the Act requires."  *Id.* at 515-16 (internal citations omitted). This reasoning followed directly from the Supreme Court's analysis in *Jennings*: "If respondents' interpretation of § 1225(b) were correct, then the Government could detain an alien without a warrant at the border, but once removal proceedings began, the Attorney General would have to issue an arrest warrant in order to continue detaining the alien.  To put it lightly, that makes little sense."  138 S. Ct. at 845.  The Attorney General accordingly concluded that 8 U.S.C. § 1226, which confers discretion upon DHS to release aliens on bond once they are arrested pursuant to a warrant, applies to a "different class[] of aliens" than 8 U.S.C. § 1225, and because the latter provides for mandatory detention, the two provisions "can be reconciled only if they apply to different classes of aliens."  *Matter of M-S-*, 27 I&N Dec. at 516.

 "The conclusion that section 235 requires detention does not mean that every transferred alien must be detained from the moment of apprehension until the completion of removal proceedings," as the INA explicitly enumerates an exception to detention: parole for "urgent

humanitarian reasons or significant public benefit." *Matter of M-S-*, 27 I&N Dec. at 516 (citing 8 U.S.C. § 1182(d)(5)(A)). The presence of this "express exception" countenanced the conclusion that the INA "cannot be read to contain an implicit exception for bond" because "'[t]hat express exception to detention implies that there are no *other* circumstances under which aliens detained under [§ 1225(b)] may be released.'" *Matter of M-S-*, 27 I&N Dec. at 517 (quoting *Jennings*, 138 S. Ct. at 844) (emphasis in original). The Supreme Court in *Jennings* accordingly concluded that, "[i]n sum, §§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings and not just until the moment those proceedings begin," 138 S. Ct. at 845, the same holding the Attorney General reached: "For those reasons, the [*Jennings*] Court held, as I do here, that the [INA] renders aliens transferred from expedited to full proceedings after establishing a credible fear ineligible for bond." *Matter of M-S-*, 27 I&N Dec. at 517-18. The Attorney General further concluded that his interpretation of section 235 of the INA comported with the Act's "implementing regulations." *Id.* at 518.

"In conclusion, the statutory text, the implementing regulations, and the Supreme Court's decision in [*Jennings*] all le[d] to the same conclusion: that all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." *Matter of M-S-*, 27 I&N Dec. at 518-19. "*Matter of X-K-* is therefore overruled." *Id.* at 519. The "effective date" of *Matter of M-S-* was set to be "90 days" from April 16 "so that DHS may conduct the necessary operational planning for additional detention and parole decisions." *Id.* n.8.

## LEGAL STANDARD

It is well-settled that district courts possess discretionary authority to "modify or revoke an injunction as changed circumstances may indicate." *Lapin v. Shulton, Inc.*, 333 F.2d 169, 170 (9th Cir. 1964). "[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance, have changed." *Sys. Fed. No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961); *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004) (Beezer, J., concurring) ("The proposition that a court has the authority to alter the effect of an injunction in light of changes in the law or the circumstances is well established."); *Language Line Servs., Inc. v. Language Servs.*

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

*Assocs., Inc.*, No. CV 10-02605 RS, 2013 WL 12173920, at *1 (N.D. Cal. June 25, 2013) ("Preliminary injunctions are ambulatory remedies and the issuing court has continuing jurisdiction to modify or revoke an injunction as changed circumstances may dictate." (internal quotations omitted)).  This conclusion follows directly from the text of Federal Rule of Civil Procedure 54(b), which states that "any order or other decision … that … does not end the action … may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Thus, "the court cannot be required to disregard significant changes in law or facts if it is satisfied that what it [has done] has been turned through changing circumstances into an instrument of wrong," *Wright*, 364 U.S. at 647 (internal quotation omitted), a principle that plaintiffs also recognize.  *See* Dkt. 84 at 9 ("[T]his Court has ample authority … to modify any class definition or order granting preliminary injunctive relief.").

In particular, "an intervening change of controlling law" is a "major ground[] justifying" the grant of a motion made under Rule 54(b).  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see also Matthews v. NCAA*, 179 F. Supp. 2d 1209, 1222 (E.D. Wash. 2001) ("These intervening developments in the law warrant this Court's reconsideration of its prior holding.").[4]

## ARGUMENT

## I.    Vacatur of the Order is Required.

### A.    The Claim Pled in the Amended Complaint on Behalf of the Bond Hearing Class is No Longer Viable.

Simply put, the claim pled in the amended Complaint that resulted in an award of preliminary injunctive relief to the Bond Hearing Class is no longer cognizable in the wake of the outcome reached in *Matter of M-S-*.  As noted, the amended Complaint alleged an entitlement to a bond hearing that the Bond Hearing Class members were not allegedly receiving in accordance with the constitution.  *See* Dkt. 26, ¶ 5 ("Federal law *requires* that if an asylum seeker enters the United States at a location other than a designated 'Port of Entry' and is determined to have a

---

[4] Because the instant motion is based exclusively upon "circumstances that occurred after the court granted the preliminary injunction" and refrains from "relitig[ating] the issues underlying the original preliminary injunction order," it should be treated as a "motion to vacate … an injunction."  *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124-25 (9th Cir. 2005).

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

credible fear of persecution … that asylum seeker is *entitled* to an individualized bond hearing …. This bond hearing must comport with constitutional requirements." (emphases added)).  The claim, in other words, consisted of two different components; first, that the pertinent regulations, *i.e.* "[f]ederal law," *id.*, mandated that the Bond Hearing Class receive a bond hearing; and second, that the bond hearing was not occurring expeditiously enough, which, in turn, violated the constitution.  *See id.*  The entire premise of this claim, however, has been eroded.  The Attorney General's *Matter of M-S-* decision unambiguously held—based on *Jennings*—that federal law, far from requiring bond hearings for members of the Bond Hearing Class, compels the opposite conclusion, namely that individuals similarly situated to the Bond Hearing Class "shall be detained for further consideration of the application for asylum" and are "ineligible for bond."  27 I&N Dec. at 515.  This follows directly from the holding in *Jennings* that "§§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings."  138 S. Ct. at 845.

This Court's Order bolsters the conclusion that the claim brought by the Bond Hearing Class that prompted the grant of injunctive relief depended upon *Matter of X-K-* remaining good law.  The analysis in the Order begins with the baseline entitlement under *Matter of X-K-* and the consequences that flow from that entitlement.  *See* Dkt. 110 at 2 ("[D]etained asylum seekers who are determined by … [ICE] to have a credible fear of persecution are entitled to request release from custody during the pendency of the asylum process …. the asylum seekers may request review of the DHS determination before an immigration judge ('IJ') by means of a bond hearing." (citing *Matter of X-K-*, 23 I&N Dec. at 731)).[5]  Post *Matter of M-S-*, however, that baseline simply no longer exists.

This Court further utilized *Matter of X-K-* to distinguish the reasoning employed by the Supreme Court in *Jennings* as inapposite: "[t]he members of the Bond Hearing Class have been found 'to have such a fear' and that finding removes them from the detention requirements referenced in *Jennings*."  Dkt. 110 at 7.  In other words, this Court found it persuasive that the language in 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) setting forth mandatory detention for individuals for

---

[5] U.S. Citizenship and Immigration Services ("USCIS"), rather than ICE, is the component of DHS that is charged with making credible fear determinations.

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

whom a negative credible fear finding is made, *see Jennings*, 138 S. Ct. at 844-45, did not apply to members of the Bond Hearing Class, who had been found to have a credible fear of persecution or torture and were thus entitled to a bond hearing under *Matter of X-K-*.  Importantly, this same reasoning—contrasting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), on the one hand, with individuals for whom a credible fear finding is made, on the other hand—is what the BIA relied upon in *Matter of X-K-*.  23 I&N Dec. at 734; *see also Matter of M-S-*, 27 I&N Dec. at 513.  Yet, *Matter of M-S-* makes clear that 8 U.S.C. § 1225(b)(1)(B)(ii)—which applies to individuals who have established a credible fear of persecution or torture, like members of the Bond Hearing Class—and 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), the provision that this Court deemed distinguishable, impose identical, mandatory detention requirements that do not encompass the right to a bond hearing.  *See Matter of M-S-*, 27 I&N Dec. at 515 ("The text of the Act … provides that, if an alien in expedited proceedings establishes a credible fear, he shall be detained for further consideration of the application for asylum." (internal quotation omitted)); *see also* 8 U.S.C. § 1225(b)(1)(B)(ii) (stating that aliens with a credible fear of persecution "shall be detained for further consideration of the application for asylum"); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (stating that aliens found not to have a credible fear of persecution "shall be detained … until removed").  Indeed, this conclusion was the central holding in *Jennings*.  138 S. Ct. at 845 ("In sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin.").  Thus, from a detention perspective, members of the Bond Hearing Class now stand on equal footing with individuals found not to have a credible fear of persecution, which, at a minimum, necessitates reconsidering the effect of *Jennings* on the Bond Hearing Class's motion for a preliminary injunction, given the express holding in *Matter of M-S-* that members of the Bond Hearing Class are clearly subject to "the detention requirements referenced in *Jennings*."  Dkt. 110 at 7.

In their opposition to defendants' motion to stay proceedings pending a decision in *Matter of M-S-*, the Bond Hearing Class intimated that *Matter of M-S-* would have no impact on this case because "the Due Process Clause of the Fifth Amendment … [has] long provided the foundational basis for those [bond] hearings."  Dkt. 84 at 1; *see also id.* at 12 (referencing "fundamental

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

constitutional principles concerning due process").   That position suffers from a plethora of substantive and procedural deficiencies.   From a substantive perspective, the Bond Hearing Class is incorrect in arguing that simply because the bulk of their claim addressed constitutional considerations implicated by the timing of bond hearings that *Matter of M-S-* has no impact on the constitutional dimensions of that claim.   To the contrary, the gravamen of that constitutional claim, were it allowed to continue in this case, has changed significantly.   Prior to the issuance of *Matter of M-S-*, the constitutional claim brought by the Bond Hearing Class was that 8 U.S.C. § 1225 entitled them to a bond hearing pursuant to *Matter of X-K-*, and not receiving that bond hearing quickly enough constituted a transgression of the Due Process Clause.   *See* Dkt. 26, ¶ 5; Dkt. 110 at 2-3.

Now, however, *Matter of M-S-* confirms that as a matter of statutory interpretation, members of the Bond Hearing Class are not entitled to a bond hearing under 8 U.S.C. § 1225. Therefore, any constitutional claim raised by the Bond Hearing Class must necessarily be that 8 U.S.C. § 1225 is unconstitutional because it does not provide what plaintiffs perceive as the constitutional minimum in accordance with the Due Process Clause.   *See* Dkt. 84 at 9 ("[R]egardless, [defendants'] actions continue to violate proposed class members' constitutional rights with respect to bond hearings."); *see also id.* at 1, 12.   That claim suffers from a threshold deficiency that for unadmitted aliens like members of the Bond Hearing Class, "[w]hatever the procedure authorized by Congress is, it is due process."   *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (internal quotation omitted).   Moreover, such a claim imposes a far higher burden on plaintiffs, requires a substantially different analysis than the claim on which the Bond Hearing Class was awarded preliminary injunctive relief, would also require different plaintiffs who are subjected to prolonged detention as well as a different complaint and, indeed, would duplicate the claims currently being litigated in *Jennings* itself.   *See* 138 S. Ct. at 839 ("*Rodriguez* and the other respondents argued that …. [a]bsent such a bond-hearing requirement … those three provisions [of the INA] would violate the Due Process Clause of the Fifth Amendment.").   Each of these considerations requires reassessing whether the Bond Hearing Class can demonstrate a likelihood of success on the merits.

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1        The salient reason any claim brought by the Bond Hearing Class would need to challenge

2 the constitutionality of 8 U.S.C. § 1225 is that *Jennings* unequivocally held that the canon of

3 constitutional avoidance is inapplicable to that very statute: "[t]he canon of constitutional

4 avoidance comes into play only when, after the application of ordinary textual analysis, the statute

5 is found to be susceptible of more than one construction …. The Court of Appeals misapplied the

6 canon in this case because its interpretations of the three provisions at issue here are implausible

7 …. Spotting a constitutional issue does not give a court the authority to rewrite a statute as it

8 pleases." *Jennings*, 138 S. Ct. at 842-43 (internal quotation omitted).  As a result, the Bond

9 Hearing Class would need to show that as interpreted by the Supreme Court in *Jennings*, 8 U.S.C.

10 § 1225's mandatory detention requirements are unconstitutional, a showing that would be difficult

11 to say the least.  To start, courts "do not impute to Congress an intent to pass legislation that is

12 inconsistent with the Constitution," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73

13 (1994), and "[i]t is well-established that acts of Congress enjoy a strong presumption of

14 constitutionality." *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000); *see also Perez v.*

15 *Marshall*, 946 F. Supp. 1521, 1531 (S.D. Cal. 1996) ("A party challenging the constitutionality of

16 a statute bears a heavy burden of proof.  The Act comes to the courts with a presumption of

17 constitutionality, and the burden is on the [plaintiff] to establish the Act violates the Constitution."

18 (internal citation omitted)).   Unsurprisingly, "a decision to declare an Act of Congress

19 unconstitutional is the gravest and most delicate duty that [a] [c]ourt is called on to perform," *Rust*

20 *v. Sullivan*, 500 U.S. 173, 191 (1991), which is precisely why courts adhere to the canon of

21 constitutional avoidance, "out of respect for Congress, which we assume legislates in the light of

22 constitutional limitations." *Id.* (internal quotation omitted).  Because any constitutional claim the

23 Bond Hearing Class purports to bring after *Matter of M-S-* based on the Due Process Clause

24 imposes an exacting burden to demonstrate that 8 U.S.C. § 1225 is unconstitutional, that, by itself,

25 casts serious doubt on whether the Bond Hearing Class can show a "likelihood of success on the

26 merits." Dkt. 110 at 6.

27        This is especially true because the claim brought by the Bond Hearing Class does not

28 simply request a bond hearing at some point in time, but rather demands a bond hearing "within

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

seven days of a hearing request." Dkt. 45 at 2, 17; Dkt. 110 at 19.  As a matter of pure constitutional law, divorced entirely from the statutory language of 8 U.S.C. § 1225, such a request is unlikely to succeed, if not completely unfounded.   Indeed, the Ninth Circuit, in the decision that was subsequently reversed by *Jennings*, found that the right to a bond hearing only attached after six *months* of detention.  *See Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015), *rev'd by Jennings*, 138 S. Ct. at 836 ("[T]he [Supreme] Court … recognized six months as a presumptively reasonable period of detention." (internal quotation omitted)); *id.* at 1078 ("[W]e have defined detention as 'prolonged' when it has lasted six months and is expected to continue more than minimally beyond six months.  *At that point*, we have explained, the private interests at stake are profound, and the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." (emphasis added) (internal citation and quotation omitted)); *see also* Dkt. 83 at 6.  It follows, *a fortiori*, that if a six-month period of detention is presumptively reasonable, and the Bond Hearing Class's claim after *Matter of M-S-* is grounded entirely in the Constitution, that the demand for a bond hearing within seven days of a hearing request—which is currently one of the components of the Order, *see* Dkt. 110 at 19—must be reevaluated.

From a procedural perspective, meanwhile, the Bond Hearing Class cannot change its claim on the fly in response to *Matter of M-S-*.  It is undisputed that as currently pled, the claim depends upon a regulatory entitlement to a bond hearing.  *See* Dkt. 26, ¶ 5.  If the Bond Hearing Class now takes the position that the failure of 8 U.S.C. § 1225 to permit bond hearings renders the statute unconstitutional, the Class members must amend their Complaint accordingly, which is currently devoid of any mention of such a claim.  Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Bond Hearing Class would need to seek and obtain leave to amend the Complaint, and revise the claim that they believe merits injunctive relief after *Matter of M-S-*.  *See, e.g.*, *Williams v. Prudential Ins. Co.*, No. C 08-04170, 2010 WL 431968, at *3 (N.D. Cal. Feb. 2, 2010) (noting that a "sufficient change in circumstances … justif[ied] amendment [of the Complaint] at this time").  Such an amendment would also require a new class certification process.  The class certified here is defined directly with regard to an entitlement to a bond hearing that does not exist after *Jennings* and *Matter of M-S-*.  Only after amending the Complaint and identifying new class

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

representatives as needed could the Bond Hearing Class even move for an injunction.  The Bond Hearing Class cannot, however, simply end-run that procedure based on a desire to preserve the status quo.

In addition, the Complaint not only needs to be amended based on the nature of the claim the Bond Hearing Class seeks to obtain relief on, but also to include proper plaintiffs to bring that claim.  It is unclear, at best, which of the current plaintiffs could bring a claim that 8 U.S.C. § 1225 is unconstitutional because it *does not provide for a bond hearing* at all.  Prior to the issuance of *Matter of M-S-*, the named plaintiffs were subjected to an entirely different system of obtaining release that no longer has any vitality.  Going forward, any constitutional claim should not be focused on the speed of obtaining a bond hearing, but rather on the only "circumstance[] under which aliens detained under § 1225(b) may be released": parole.  *Jennings*, 138 S. Ct. at 844.  And this Court would also need to address overlap between this case and *Jennings*; in particular, a nationwide class could not properly continue to be certified because it would likely include, at a minimum, *Jennings* class members.  *See id.* at 860 (Breyer, J., dissenting) ("[A]ll members of the first group, the asylum seekers, have been found (by an immigration official) to have a 'credible fear of persecution' in their home country should the United States deny them admittance." (emphasis omitted)).

In sum, because *Matter of M-S-* drastically alters the legal basis upon which this Court granted injunctive relief since *Matter of X-K-* has been "vacated," Dkt. 45 at 4 n.2, this Court should revisit and vacate the Order.

**B.     Vacatur Is Also Necessary to Account for Jurisdictional Limitations Delineated in 8 U.S.C. § 1252.**

A second and independent reason to vacate the Order is that in view of *Matter of M-S-*, this Court must account for two potential bars on injunctive relief outlined in 8 U.S.C. § 1252: 8 U.S.C. § 1252(f)(1) and 8 U.S.C. § 1252(e)(3).

In pertinent part, 8 U.S.C. § 1252(f)(1) provides that "no court … shall have jurisdiction or authority to enjoin or restrain the operation of the provisions" of the INA "other than with respect to the application of such provisions to an individual alien against whom proceedings under

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

such part have been initiated."  Though unaddressed in the Order, this Court, in adjudicating defendants' motion to dismiss, found that 8 U.S.C. § 1252(f)(1) did not pose an obstacle to the Bond Hearing Class obtaining injunctive relief because "Plaintiffs are not asking the Court to enjoin or restrain the operation of the provisions of any statute, but instead seek an injunction against actions and policies that violate those statutes."  Dkt. 91 at 19 (emphasis and internal quotation omitted).  Since *Matter of M-S-* has obviated the alleged statutory violation, though, any claim the Bond Hearing Class seeks to nonetheless bring based on the Due Process Clause fits squarely within the ambit of 8 U.S.C. § 1252(f)(1) under this Court's application of it.  The Supreme Court recognized this very point in *Jennings* when it overruled the ruling below that a statutory violation occurred: "[T]he Court of Appeals should first decide whether it continues to have jurisdiction despite 8 U.S.C. § 1252(f)(1) …. The Court of Appeals held that this provision did not affect its jurisdiction over respondents' *statutory* claims because those claims did not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct … not authorized by the statutes.  This reasoning does not seem to apply to an order granting relief on constitutional grounds."  *Jennings*, 138 S. Ct. at 851 (emphasis in original) (internal quotation omitted).  This Court must likewise examine whether § 1252(f)(1) imposes a jurisdictional barrier to granting injunctive relief given the holding in *Matter of M-S-* and its impact on any claims the Bond Hearing Class could bring.

The same is true of § 1252(e)(3), entitled "Challenges on Validity of the System."  That proviso provides that "[j]udicial review of determinations under section 1225(b) … and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—whether such section, or any regulation issued to implement such section, is constitutional."  8 U.S.C. § 1252(e)(3)(A)(i).  To the extent the Bond Hearing Class attempts to assert it can challenge the validity of the changes in detention rules that result from *Matter of M-S-*, such a challenge must be brought only in the District Court for the District of Columbia.  *See Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 427 (3d Cir. 2016) ("Section 1252(e) … provides jurisdiction to the District Court for the District of Columbia to review …. challenges to the constitutionality of any provision of the

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

expedited removal statute."); *Shunaula v. Holder*, 732 F.3d 143, 146-47 (2d Cir. 2013) ("§ 1252(e)(3) provides for review of constitutional challenges to the validity of the expedited removal system …. such a [systemic] challenge can be brought only in the United States District Court for the District of Columbia."). And not only would venue for any systemic challenge to the constitutionality of 8 U.S.C. § 1225 be proper only in the District Court for the District of Columbia, but such a claim could also not be brought as a class action. Section 1252(e)(1)(B) proscribes "certify[ing] a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under a subsequent paragraph of this subsection."

Because neither § 1252(f)(1) nor § 1252(e)(3) is currently addressed in the Order, and because *Matter of M-S-* renders both provisions germane in assessing any constitutional claim brought by the Bond Hearing Class, this is yet another reason to vacate the Order.

## II.   *Matter of M-S-* is a Correct Application of Unambiguous Law and, In Any Event, is Entitled to Deference.

Any effort by plaintiffs to turn this motion into litigation over the validity of *Matter of M-S-* should be rejected. Plaintiffs pled their claim based on the background rule set by *Matter of X-K-* and this Court's injunction likewise rested on the existing administrative ruling that permitted bond hearings but did not address timing for them. A new complaint, claim, and plaintiffs would be needed to assert that statutory or constitutional law required a bond hearing in these circumstances.

In any event, *Matter of M-S-* is a correct interpretation of a clear statutory provision making detention mandatory in these circumstances, and follows necessarily from the Supreme Court's *Jennings* decision. And that interpretation was made by the official—the Attorney General—who Congress expressly charged with making such legal interpretations. *See* 8 U.S.C. § 1103(a)(1). Accordingly, *Matter of M-S-* is correct and, moreover, is entitled to deference.

*Matter of M-S-* reflects a straightforward interpretation of a clear statutory provision that precludes bond hearings and which is not susceptible to any other reading given the holding in *Jennings*. In particular, 8 U.S.C. § 1225(b)(1)(B)(ii) provides that aliens who establish a credible fear "shall be detained for further consideration of the application for asylum," and the only way to construe that language is as the Supreme Court did in *Jennings*: mandating detention "for the

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1    purpose of ensuring additional review of an asylum claim" for "so long as that review is ongoing."

2    *Matter of M-S-*, 27 I&N Dec. at 516.  In other words, "[r]ead most naturally, §§ 1225(b)(1) and

3    (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded

4    …. Once those proceedings end, detention under § 1225(b) must end as well.  Until that point,

5    however, nothing in the statutory text imposes any limit on the length of detention.  And neither

6    § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings*, 138 S.

7    Ct. at 842.   Instead, the exclusive exception to mandatory detention is parole for urgent

8    humanitarian reasons or significant public benefit.  *See Matter of M-S-*, 27 I&N Dec. at 517; *see*

9    *also Jennings*, 138 S. Ct. at 844 ("That express exception to detention implies that there are no

10   *other* circumstances under which aliens detained under § 1225(b) may be released." (emphasis in

11   original)).  It is little wonder, then, that the Attorney General correctly concluded that in *Jennings*,

12   the "Supreme Court recently interpreted the Act in the exact same way." *Matter of M-S-*, 27 I&N

13   Dec. at 517.

14          Nor is the conclusion in *Matter of M-S-* disturbed by 8 U.S.C. § 1226(a), which states that

15   the Attorney General "may release the alien on—bond." 8 U.S.C. § 1226(a)(2)(A).  The optional

16   language in 8 U.S.C. § 1226(a) does not override the mandatory detention that 8 U.S.C. § 1225

17   provides; instead 8 U.S.C. § 1225 "under which detention is mandatory" and 8 U.S.C. § 1226(a)

18   "under which detention is permissive" "can be reconciled only if they apply to different classes of

19   aliens." *Matter of M-S-*, 27 I&N Dec. at 516.  That is why Section 1225 speaks in terms of those

20   populations that "shall be detained." 8 U.S.C. § 1225(b)(1)(B)(ii).  Further, 8 U.S.C. § 1226

21   "authorizes detention only [o]n a warrant issued by the Attorney General leading to the alien's

22   arrest." *Jennings*, 138 S. Ct. at 845 (internal quotation omitted).  But in the case of arriving aliens,

23   no arrest warrant is issued.  *See id.*  Accordingly, if the permissive language in 8 U.S.C. § 1226(a)

24   was interpreted as governing the detention requirements of 8 U.S.C. § 1225, the anomalous result

25   that would ensue is that "the Government could detain an alien without a warrant at the border,

26   but once removal proceedings began, the Attorney General would have to issue an arrest warrant

27   in order to continue detaining the alien.  To put it lightly, that makes little sense." *Jennings*, 138

28   S. Ct. at 845; *Matter of M-S-*, 27 I&N Dec. at 515-16 ("The result would be that, if an alien were

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

placed in expedited proceedings, DHS could detain him without a warrant, but, if the alien were then transferred to full proceedings, DHS would need to issue an arrest warrant to continue detention.  That simply cannot be what the Act requires.").

Finally, the Attorney General rightly concluded that his interpretation was consistent with all applicable implementing regulations.  8 C.F.R. § 208.30(f) provides that for those aliens who are found to have a credible fear of persecution or torture, they are transferred to full removal proceedings and parole may be considered "only in accordance with" 8 U.S.C. § 1182(d)(5).  The regulation, in other words, is fully consistent with both *Jennings* and *Matter of M-S-* in that it: (1) identifies parole as the only set of circumstances under which detained aliens may be released; and (2) "makes no mention of bond."  *Matter of M-S-*, 27 I&N Dec. at 518.  Likewise, the fact that 8 C.F.R. § 1003.19 makes certain categories of aliens ineligible for bond does not mean that those categories that are omitted are automatically entitled to a bond hearing; the regulation "does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond."  *Matter of M-S-*, 27 I&N Dec. at 518.

The plain statutory text of 8 U.S.C. § 1225 and *Jennings* both forcefully support the decision in *Matter of M-S-*.  And an additional reason this Court must adhere to *Matter of M-S-* is that the decision commands substantial deference.  The Attorney General possesses statutory authority to review "administrative determinations in immigration proceedings," 8 U.S.C. § 1103(g)(2).  Any resulting decisions "with respect to all questions of law shall be controlling," 8 U.S.C. § 1103(a)(1).  Accordingly, courts must "afford the Attorney General's interpretation deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)."  *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 947 (9th Cir. 2007); *see also I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) ("It is clear that principles of *Chevron* deference are applicable to this statutory scheme.  The INA provides that … the determination and ruling by the Attorney General with respect to all questions of law shall be controlling." (internal quotation omitted)).  *Chevron* countenances a two-step inquiry: first, assessing "whether the statute is silent or ambiguous," and, if it is, whether the "Attorney General's interpretation is based on a permissible construction of the statute."  *Miguel-Miguel*, 500 F.3d at 947-48 (internal quotation omitted).

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

As an initial matter, the statute is not "silent or ambiguous" here, *id*.  Instead, it states clearly that detention "of aliens throughout the completion of applicable proceedings" is required and no bond hearing is available.  *Jennings*, 138 S. Ct. at 845.  No aspect of the statutory text in 8 U.S.C. § 1225 even mentions bond, and the principles of interpretation in *Matter of M-S-* therefore dovetail with both the analysis and result reached in *Jennings*.  *See Matter of M-S-*, 27 I&N Dec. at 517.  But even assuming, *arguendo*, that the statute was ambiguous—which it is not—applying the requisite level of deference, *Matter of M-S-* and its interpretation of 8 U.S.C. § 1225 is decisive.  *See Miguel-Miguel*, 500 F.3d at 948-49 ("[T]he statute's text does not plainly foreclose the Attorney General's [interpretation] …. Under *Chevron*, we therefore defer to that construction."); *Metrophones Telecommunications, Inc. v. Global Crossing Telecommunications, Inc.*, 423 F.3d 1056, 1065 (9th Cir. 2005) ("If we owe *Chevron* deference to the … interpretation of [the statute], then our own prior, contrary interpretation of the statute can trump the agency's construction *only* if our decision held that its 'construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.'" (emphasis in original) (quoting *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)); *see also Karingithi v. Whitaker*, 913 F.3d 1158, 1161 (9th Cir. 2019).[6]

Thus, if this Court were to reach the validity of *Matter of M-S-*, the reasoning espoused in *Matter of M-S-*, relying heavily on *Jennings*, mandate abiding by the decision reached by the Attorney General.

## CONCLUSION

For the foregoing reasons, this Court should vacate its previous Order granting plaintiffs' motion for a preliminary injunction.

---

[6] In the preliminary injunction motion, the Bond Hearing Class makes the unsubstantiated assertion that "this Court need not defer to any such vacatur" of *Matter of X-K-*. Dkt. 45 at 4 n.2.  That assertion simply cannot be squared with the *Chevron* deference that is clearly applicable and must be accorded to *Matter of M-S-*.

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Dated: April 26, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

LAUREN C. BINGHAM
Trial Attorney

*/s/Archith Ramkumar*
ARCHITH RAMKUMAR
NY Bar # 5269949
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 598-8060
Archith.Ramkumar@usdoj.gov

SARAH STEVENS WILSON
Assistant United States Attorney

19

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 26, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Archith Ramkumar*
Trial Attorney
United States Department of Justice

DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

-20-

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Exhibit A: *Matter of M-S-*
In Support of Motion to Vacate

*Padilla v. ICE*, 2:18-CV-928-MJP

# Matter of M-S-, Respondent

*Decided by Attorney General April 16, 2019*

U.S. Department of Justice
Office of the Attorney General

(1)  Matter of X-K-, 23 I&N Dec. 731 (BIA 2005), was wrongly decided and is overruled.

(2)  An alien who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond.  Such an alien must be detained until his removal proceedings conclude, unless he is granted parole.

## BEFORE THE ATTORNEY GENERAL

The Immigration and Nationality Act ("INA" or "Act") provides for several types of removal proceedings, including "full" proceedings conducted by immigration judges and "expedited" proceedings conducted by the front-line immigration enforcement officers of the Department of Homeland Security ("DHS").  *Lara-Aguilar v. Sessions*, 889 F.3d 134, 137-38 (4th Cir. 2018); INA §§ 235(b)(1), 240, 8 U.S.C. §§ 1225(b)(1), 1229a.  Generally, aliens placed in expedited proceedings must be detained until removed.  INA § 235(b)(1)(B)(iii)(IV).  But some aliens who start in expedited proceedings—namely, those who establish a credible fear of persecution or torture—are transferred to full proceedings.  *Id.* § 235(b)(1)(B)(ii); 8 C.F.R. § 208.30(f).  The question here is whether, under the Act, aliens transferred after establishing a credible fear are eligible for release on bond.[1]

In *Matter of X-K-*, the Board of Immigration Appeals ("Board") held that only some aliens transferred after establishing a credible fear are subject to mandatory detention.  23 I&N Dec. 731, 736 (BIA 2005).  Specifically, the

---

[1]  This opinion does not address whether detaining transferred aliens for the duration of their removal proceedings poses a constitutional problem, a question that Attorney General Sessions did not certify and that is the subject of ongoing litigation.  *See Rodriguez v. Hayes*, No. 2:07-cv-3239 (C.D. Cal.).  For the reasons stated in the Department of Justice's briefs in that case, aliens who have never been admitted into the United States do not have a presumptive constitutional entitlement to be released into the country.  *See* Resp'ts-Appellants' Suppl. Br. 28–40, *Rodriguez v. Marin*, Nos. 13-56706 and 13-56755 (9th Cir. Aug. 10, 2018); Resp'ts-Appellants' Suppl. Reply Br. 20–26, *Rodriguez v. Marin*, Nos. 13-56706 and 13-56755 (9th Cir. Aug. 30, 2018).

Board concluded that "arriving" aliens—such as those "attempting to come into the United States at a port-of-entry," *see* 8 C.F.R. § 1001.1(q)—must be detained, but all other transferred aliens are eligible for bond. 23 I&N Dec. at 736.

*Matter of X-K-* was wrongly decided. The Act provides that, if an alien in expedited proceedings establishes a credible fear, he "shall be detained for further consideration of the application for asylum." INA § 235(b)(1)(B)(ii). The Act further provides that such an alien may be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." *Id*. § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). There is no way to apply those provisions except as they were written—unless paroled, an alien must be detained until his asylum claim is adjudicated. The Supreme Court recently held exactly that, concluding that section 235(b)(1) "mandate[s] detention throughout the completion of [removal] proceedings" unless the alien is paroled. *Jennings v. Rodriguez*, 138 S. Ct. 830, 844–45 (2018). The Act's implementing regulations support that interpretation.

The respondent here was transferred from expedited to full proceedings after establishing a credible fear, and an immigration judge ordered his release on bond. Because the respondent is ineligible for bond under the Act, I reverse the immigration judge's decision. I order that, unless DHS paroles the respondent under section 212(d)(5)(A) of the Act, he must be detained until his removal proceedings conclude.

## I.

### A.

Under section 235 of the Act, all aliens "arriv[ing] in the United States" or "present in the United States [without having] been admitted" are considered "applicants for admission," who "shall be inspected by immigration officers." INA § 235(a)(1), (3). In most cases, those inspections yield one of three outcomes. First, if an alien is "clearly and beyond a doubt entitled to be admitted," he will be permitted to enter, or remain in, the country without further proceedings. *Id*. § 235(b)(2)(A). Second, if the alien is not clearly admissible, then, generally, he will be placed in "proceeding[s] under section 240" of the Act—that is, full removal proceedings. *Id*. Third, if the alien is inadmissible on one of two specified grounds and meets certain additional criteria, DHS may place him in either expedited or full proceedings. *Id*. § 235(b)(1)(A)(i); *see Matter of E-R-M- & L-R-M-,* 25 I&N Dec. 520, 524 (BIA 2011).

This case concerns aliens subject to expedited removal.  To qualify for expedited removal, an alien must either lack entry documentation or seek admission through fraud or misrepresentation.  INA § 235(b)(1)(A)(i) (referring to *id*. § 212(a)(6)(C), (a)(7)).[2]  In addition, the alien must either be "arriving in the United States" or within a class that the Secretary of Homeland Security ("Secretary") has designated for expedited removal.  *Id*.[3] The Secretary may designate "any or all aliens" who have "not been admitted or paroled into the United States" and also have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  *Id*. § 235(b)(1)(A)(iii).  To date, the Secretary (and previously the Attorney General) have designated only subsets of that class.  *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924 (Nov. 13, 2002); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877 (Aug. 11, 2004) ("2004 Designation").  The designated group at issue here encompasses aliens who (i) "are physically present in the U.S. without having been admitted or paroled," (ii) "are encountered by an immigration officer within 100 air miles of any U.S. international land border," and (iii) cannot establish "that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter."  2004 Designation, 69 Fed. Reg. at 48,880.

For an alien originally placed in expedited proceedings, the removal process varies depending upon whether the alien indicates either "an intention to apply for asylum" or "a fear of persecution or torture."  8 C.F.R. §§ 235.3(b)(4), 1235.3(b)(4)(1); *see* INA § 235(b)(1)(A)(ii).  If the alien does not so indicate, the inspecting officer "shall order the alien removed from the United States without further hearing or review."  INA § 235(b)(1)(A)(i).  If the alien does so indicate, however, the officer "shall refer the alien for an interview by an asylum officer."  *Id*. § 235(b)(1)(A)(ii).  That officer assesses

---

[2]  Section 235(b)(1)(F) of the Act excepts from expedited removal any "native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry."  For many years, that provision applied to Cuban nationals, but that is no longer the case.  *See Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea*, 82 Fed. Reg. 4902, 4904 (Jan. 17, 2017) ("[T]he statutory provision categorically barring the use of expedited removal for certain aliens who arrive by aircraft at a U.S. port of entry no longer applies to Cuban nationals, as the United States and Cuba have reestablished full diplomatic relations.").

[3]  Although the Act refers to the "Attorney General," Congress has since authorized the Secretary to exercise that power.  *See* 6 U.S.C. § 202(3); 8 C.F.R. § 235.3(b)(1)(ii) (2002).

whether the alien has a "credible fear of persecution or torture," 8 C.F.R. § 208.30(d)—in other words, whether there is a "significant possibility" that the alien is eligible for "asylum under section 208 of the Act," "withholding of removal under section 241(b)(3) of the Act," or withholding or deferral of removal under the Convention Against Torture ("CAT"), [4] 8 C.F.R. § 208.30(e)(2)–(3).  If the alien does not establish a credible fear, the asylum officer "shall order the alien removed from the United States without further hearing or review." INA § 235(b)(1)(B)(iii)(I).  But if the alien does establish such a fear, he is entitled to "further consideration of the application for asylum." *Id.* § 235(b)(1)(B)(ii). [5]  By regulation, that "further consideration" takes the form of full removal proceedings under section 240 of the Act. 8 C.F.R. §§ 208.30(f), 1208.30(g)(2)(iv)(B).  Thus, if an alien originally placed in expedited removal establishes a credible fear, he receives a full hearing before an immigration judge.

Section 235 of the Act expressly provides for the detention of aliens originally placed in expedited removal.  Such aliens "shall be detained pending a final determination of credible fear." INA § 235(b)(1)(B)(iii)(IV). Aliens found not to have a credible fear "shall be detained . . . until removed." *Id.*  Aliens found to have such a fear, however, "shall be detained for further consideration of the application for asylum." *Id.* § 235(b)(1)(B)(ii).  Like all aliens applying for admission, however, aliens detained for further consideration of an asylum claim may generally be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." *Id.* § 212(d)(5)(A).  Accordingly, the Act's implementing regulations assume that aliens in expedited proceedings will be detained, but provide that, if an alien establishes a credible fear, "[p]arole . . . may be considered . . . in accordance with section 212(d)(5) of the Act and [8 C.F.R.] § 212.5." 8 C.F.R. § 208.30(f).

Section 236 of the Act addresses, more generally, the detention of aliens in removal proceedings.  Once an alien has been arrested pursuant to an immigration warrant, DHS "may continue to detain the arrested alien" or "may release the alien on" "bond of at least $1,500" or "conditional parole." INA § 236(a)(1)–(2), 8 U.S.C. § 1226(a)(1)–(2).  DHS and Department of

---

[4] Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85.

[5] Under DHS and Department of Justice regulations, "[a]n asylum application shall be deemed to constitute at the same time an application for [statutory] withholding of removal" and CAT relief.  8 C.F.R. §§ 208.3(b), 1208.3(b); *see also id.* §§ 208.16, 1208.16.  This opinion employs the regulations' definition of "application for asylum."  Relatedly, as used in this opinion, the term "asylum claim" encompasses a claim for asylum, statutory withholding of removal, or CAT relief.

Justice regulations provide that, when reviewing an "initial custody determination" made by DHS, an "immigration judge is authorized to exercise the authority in section 236 of the Act . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in [8 C.F.R.] § 1003.19." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).  Section 1003.19, in turn, expressly limits the availability of bond for certain enumerated classes of aliens.  *Id.* § 1003.19(h)(2)(i).   One of those classes is "[a]rriving aliens," *id.* § 1003.19(h)(2)(i)(B), which includes aliens "attempting to come into the United States at a port-of-entry," *id.* § 1001.1(q).  But section 1003.19 does not mention the classes of aliens that have been designated for expedited removal.

B.

Against that statutory and regulatory backdrop, the Board held in *Matter of X-K-* that, except for arriving aliens, all aliens transferred from expedited to full proceedings after establishing a credible fear are eligible for bond. 23 I&N at 736.  The Board assumed that the respondent there was covered by the Secretary's 2004 Designation and had been placed in expedited removal.  *Id.* at 733 & n.3.  After the respondent established a credible fear, DHS had transferred him to full proceedings for further consideration of his asylum claim, and determined that the respondent would be detained for the duration of those proceedings.   The respondent appealed that custody determination to an immigration judge, who ordered that the respondent be released on bond.  On appeal, DHS argued that aliens originally placed in expedited proceedings were not eligible for bond, even if they were later transferred to full proceedings.

The Board rejected DHS's argument.  The Board observed that, with respect to aliens in expedited removal, "[t]he Act provides for . . . mandatory detention . . . '*pending* a final determination of credible fear.'"  *Id.* at 734 (quoting INA § 235(b)(1)(B)(iii)(IV)) (emphasis in original).  But with respect to detention *after* a credible-fear finding, the Board concluded that "[t]he Act is silent" and "provide[s] no specific guidance."  *Id.*  In reaching that conclusion, the Board did not mention section 235(b)(1)(B)(ii) of the Act, which expressly provides that an alien found to have a credible fear "shall be detained for further consideration of the application for asylum."

The Board then turned to the Act's implementing regulations.  Those regulations, the Board noted, impose a "requirement that aliens who had initially been screened for expedited removal" and then had a "positive credible fear determination" be "placed in full section 240 removal

513

proceedings." 23 I&N Dec. at 734 (citing, *inter alia*, 8 C.F.R. § 1208.30(f) (2004)). The Board reasoned that immigration judges may "exercise the general custody authority of section 236 of the Act," including the authority to grant bond, "over aliens in section 240 removal proceedings." *Id.* (citing, *inter alia*, 8 C.F.R. § 1236.1(c)(11), (d)). The only exceptions are for "specified classes of aliens . . . specifically excluded from the custody jurisdiction of Immigration Judges by 8 C.F.R. § 1003.19(h)(2)(i)(B)." *Id.* at 735. That regulation expressly excludes "arriving aliens," but does not mention aliens who have been designated for expedited removal. *Id.* Drawing a negative inference from the regulation, the Board concluded that arriving aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond, but that all other aliens so transferred are eligible. *Id.*

## C.

The respondent here is a citizen of India. He traveled to Mexico and crossed illegally into the United States. He was apprehended within hours about 50 miles north of the border. DHS placed him in expedited removal proceedings.

After the respondent claimed a fear of persecution in India, DHS referred him for an asylum interview. The asylum officer determined that the respondent lacked a credible fear, but, at the respondent's request, DHS reconsidered and reversed its determination. DHS then transferred the respondent to full proceedings. Upon his transfer, DHS issued the respondent a Notice to Appear (DHS Form I-862) and a Notice of Custody Determination (DHS Form I-286), the latter of which informed the respondent that, "pending a final administrative determination in your case, you will be . . . [d]etained by the Department of Homeland Security."

The respondent requested that an immigration judge review that custody determination. Without mentioning section 235(b)(1)(B)(ii), the immigration judge held that the respondent "is not subject to mandatory detention." *Matter of M-S-*, Order on Motion for Custody Redetermination at 2 (Immig. Ct. July 18, 2018). The immigration judge ordered that the respondent be released if he could produce a valid Indian passport and post a bond of $17,500. *Id.* at 3. The respondent appealed to the Board, arguing that his bond should be reduced.

While that appeal was pending, the respondent again requested immigration-judge review of his custody, as permitted by regulation. *See* 8 C.F.R. § 1003.19(e). The respondent argued that, because the Indian consulate had denied his request for a replacement passport, he should not be required to produce one. A different immigration judge agreed, but increased

the respondent's bond to $27,000.  *Matter of M-S-*, Order on Motion for Custody Redetermination at 2 (Immig. Ct. Sept. 17, 2018).  The respondent posted that amount and was released on September 27, 2018.  The Board, apparently unaware of that development, decided the respondent's appeal the next day, affirming the first immigration judge's bond order.  *Matter of M-S-*, slip. op. at 1 (BIA Sept. 28, 2018).  Neither the respondent nor DHS appealed the second immigration judge's order. [6]   The respondent's case remains pending.

## II.

The question presented is whether aliens who are originally placed in expedited proceedings and then transferred to full proceedings after establishing a credible fear become eligible for bond upon transfer.  I conclude that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States.

The text of the Act mandates that conclusion.  Section 235(b)(1)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he "shall be detained for further consideration of the application for asylum."  "The word 'shall' generally imposes a nondiscretionary duty."  *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).  And the word "for" often means "with the object or purpose of" or "throughout."   6 Oxford English Dictionary 23, 26 (2d ed. 1989).   Granted, "for" can also mean "in preparation for or anticipation of."  *Id.* at 24.  But that latter definition makes little sense in light of surrounding provisions of the Act.  *See, e.g., Rodriguez*, 138 S. Ct. at 844–45 (recognizing that defining "for" to mean "until the start of" "makes [no] sense in the context of the statutory scheme as a whole" (emphasis in original)).  If section 235(b)(1)(B)(ii) governed detention only "in preparation for"—that is, until the beginning of—full proceedings, then another provision, section 236, would govern detention during those proceedings.   Section 236, however, permits detention only on an arrest warrant issued by the Secretary.  INA § 236(a).  The result would be that, if an alien were placed in expedited proceedings, DHS could detain him

---

[6]  All three decisions below—both bond orders and the Board's decision—pose the same threshold, legal question: whether the respondent became eligible for bond after establishing a credible fear and being transferred to full proceedings.  I certified this case to answer that question, and I have authority to answer it by reviewing either the Board's decision or the second bond order.  *See* 8 U.S.C. § 1103(g)(2) (authorizing the Attorney General to "review such administrative determinations in immigration proceedings . . . as [he] determines to be necessary for carrying out" the Act).  My decision therefore has the effect of reversing the second bond order.

without a warrant, but, if the alien were then transferred to full proceedings, DHS would need to issue an arrest warrant to continue detention. That simply cannot be what the Act requires. Instead, I read section 235(b)(1)(B)(ii) to mandate detention (i) for the purpose of ensuring additional review of an asylum claim, and (ii) for so long as that review is ongoing. In other words, section 235(b)(1)(B)(ii) requires detention until removal proceedings conclude.

Several amici would read section 236 of the Act to render transferred aliens eligible for bond. That section provides that, once an alien is arrested pursuant to an immigration warrant, DHS "may continue to detain the arrested alien" or "may release [him] on" "bond of at least $1,500" or "conditional parole," unless he has committed certain crimes. INA § 236(a)(1)–(2), (c). The amici therefore read section 236 to render all non-criminal aliens eligible for bond. Yet section 235 (under which detention is mandatory) and section 236(a) (under which detention is permissive) can be reconciled only if they apply to different classes of aliens. *See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1081 (9th Cir. 2015) (concluding that "permissive and mandatory [provisions] are in harmony, as they apply to different situations"). For purposes of the respondent's case, I need not identify the full universe of aliens covered by section 236(a). It suffices to find that section 236(a) provides an independent ground for detention that does not limit DHS's separate authority to detain aliens originally placed in expedited removal, who, after the credible-fear stage, "shall be detained" either for further adjudication of their asylum claims or for removal. *See* INA § 235(b)(1)(B)(ii) (an alien placed in expedited removal who demonstrates a credible fear "shall be detained for further consideration of the application for asylum"); *id.* § 235(b)(1)(B)(iii)(IV) (an alien placed in expedited removal who does not demonstrate a credible fear "shall be detained . . . until removed"). I do not read section 236(a) to authorize granting bond to aliens originally placed in expedited proceedings, even if they are later transferred to full proceedings after establishing a credible fear.

The conclusion that section 235 requires detention does not mean that every transferred alien must be detained from the moment of apprehension until the completion of removal proceedings. Section 212(d)(5)(A) of the Act separately provides that "any alien applying for admission" may be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit." Aliens with "serious medical conditions," for example, are generally eligible for parole. 8 C.F.R. § 212.5(b)(1). An alien's term of parole expires "when the purposes of such parole . . . have been served," at which point the alien must "return or be returned to . . . custody."

INA § 212(d)(5)(A).  This provision grants the Secretary the discretion to parole aliens under its terms.

In light of that express exception to mandatory detention, the Act cannot be read to contain an implicit exception for bond.  Under the negative-implication canon, "expressing one item of [an] associated group or series excludes another left unmentioned."  *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (alteration in original).  Section 212(d)(5)(A) expressly states that aliens applying for admission—which includes aliens originally placed in expedited proceedings—may be released on parole.  That suggests that those aliens may not be released on bond.  And that suggestion is particularly strong here given that the Act expressly provides that aliens in the separate class covered by section 236(a) are eligible for both "bond of at least $1,500" *and* "conditional parole."  INA § 236(a)(2)(A)–(B).  *See, e.g., Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("We have often noted that when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presume[s] that Congress intended a difference in meaning." (alteration in original) (internal quotation marks omitted)).

The Supreme Court recently interpreted the Act in the exact same way.  In *Jennings v. Rodriguez*, a class of aliens in removal proceedings—including aliens transferred from expedited to full proceedings after establishing a credible fear—argued that the Act did not permit their "prolonged detention in the absence of . . . individualized bond hearing[s]."  138 S. Ct. at 839 (internal quotation marks omitted).  The class acknowledged that section 235(b)(1)(B)(ii) provides that a transferred alien "shall be detained for further consideration of the application for asylum."  The class argued, however, that "the term 'for' . . . mandates detention only until the *start* of [full] proceedings."  *Id.* at 844 (emphasis in original).  Once those proceedings begin, the class continued, section 236 applies, under which transferred aliens are generally eligible for bond and thus entitled to bond hearings.  *Id.* at 845.  The Court rejected that argument as "incompatible with the rest of the statute."  *Id.*  If the class were right about when sections 235 and 236 apply, "then the Government could detain an alien without a warrant at the border, but once removal proceedings began, the [Secretary] would have to issue an arrest warrant in order to continue detaining the alien."  *Id.*  But "that makes little sense."  *Id.*  In evaluating whether transferred aliens are eligible for bond, the Court also considered section 212(d)(5)(A)'s parole exception.  "That express exception to detention," the Court reasoned, "implies that there are no *other* circumstances under which aliens detained under [section 235(b)] may be released."  *Id.* at 844 (emphasis in original).  For those reasons, the *Rodriguez* Court held, as I do here, that

the Act renders aliens transferred from expedited to full proceedings after establishing a credible fear ineligible for bond.

Although *Rodriguez* did not address the Act's implementing regulations, those regulations support the conclusion that transferred aliens are ineligible for bond.  First, 8 C.F.R. § 208.30(f) provides that, if an alien is either a "stowaway" or in expedited proceedings, and he establishes a credible fear, he must be transferred to, respectively, "proceedings under [8 C.F.R.] § 208.2(c)" or full removal proceedings.  In either case, after the transfer, "[p]arole of the alien may be considered only in accordance with section 212(d)(5) of the Act and [8 C.F.R.] § 212.5."  8 C.F.R. § 208.30(f).  The regulation makes no mention of bond.

In *Matter of X-K-*, the Board drew a negative inference based upon 8 C.F.R. § 1003.19's expressly rendering "arriving aliens" ineligible for bond but not addressing other categories of aliens who are subject to expedited removal.  23 I&N Dec. at 734–35.  But as explained above, the Board did not discuss section 235's detention requirement at all and therefore overlooked the implications that provision has upon the appropriate interpretation of section 236.  Section 1003.19(h)(2)(i) thus does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond.  The Secretary recognized that very point in designating the class at issue here.  The Secretary explained that, "[u]nder Department of Justice regulations, immigration judge review . . . is permitted only for bond and custody determinations pursuant to section 236."  69 Fed. Reg. at 48,879.  And "[a]liens subject to expedited removal procedures . . . (including those aliens who are referred after a positive credible fear determination . . . for proceedings under section 240 of the Act)" are covered by section 235, not section 236.  *Id*.  Thus, the Secretary concluded, even without adding the designated aliens to section 1003.19's list of bond-ineligible classes, the designated aliens "are not eligible for bond [or] for a bond redetermination hearing before an immigration judge."  *Id*.  I agree with that interpretation, which ensures that the regulation remains consistent with the statute. [7]

In conclusion, the statutory text, the implementing regulations, and the Supreme Court's decision in *Rodriguez* all lead to the same conclusion: that

---

[7]  In *Matter of X-K-*, the Board never suggested that, if an alien designated for expedited removal established a credible fear, then DHS could terminate his expedited proceedings and initiate full ones, thereby rendering him eligible for bond.  And for good reason:  DHS's authority under *Matter of E-R-M- & L-R-M-* expires once an asylum officer (or immigration judge) makes a final credible-fear determination, at which point the alien "shall be detained" either for further adjudication of his asylum claim or for removal.  INA § 235(b)(1)(B)(ii), (b)(1)(B)(iii)(IV).

Cite as 27 I&N Dec. 509 (A.G. 2019)                    Interim Decision #3950

all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond.  *Matter of X-K-* is therefore overruled.[8]

## III.

Here, despite the respondent being bond ineligible, the second immigration judge ordered DHS to release him on a bond of $27,000.  The respondent posted that bond in September 2018, and was released from custody.  I reverse the order granting bond to the respondent.  I order that, unless DHS paroles the respondent under section 212(d)(5)(A) of the Act, he must be detained until his removal proceedings conclude.

---

[8]  Because *Matter of X-K-* declared a sizable population of aliens to be eligible for bond, DHS indicates that my overruling that decision will have "an immediate and significant impact on [its] detention operations."  DHS Br. 23 n.16.  DHS accordingly requests that I delay the effective date of this decision "so that DHS may conduct necessary operational planning."  *Id.*  Federal circuit courts have discretion to delay the effective dates of their decisions, *see* Fed. R. App. P. 41(b), and I conclude that I have similar discretion.  I will delay the effective date of this decision for 90 days so that DHS may conduct the necessary operational planning for additional detention and parole decisions.

519

1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

3    YOLANY    PADILLA,    IBIS    GUZMAN,    BLANCA
     ORANTES, BALTAZAR VASQUEZ,

4                                   Plaintiffs-Petitioners,

5          v.

6    U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
     ("ICE");    U.S.    DEPARTMENT    OF    HOMELAND
7    SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
     PROTECTION  ("CBP");  U.S.  CITIZENSHIP  AND
8    IMMIGRATION  SERVICES  ("USCIS");  EXECUTIVE
     OFFICE  FOR  IMMIGRATION  REVIEW  ("EOIR");
9    THOMAS HOMAN, Acting Director of ICE; KIRSTJEN
     NIELSEN, Secretary of DHS; KEVIN K. McALEENAN,
10   Acting Commissioner of CBP; L. FRANCIS CISSNA,
     Director of USCIS; MARC J. MOORE, Seattle Field Office
11   Director,    ICE,    JEFFERSON    BEAUREGARD
     SESSIONS III, United States Attorney General; LOWELL
12   CLARK, warden of the Northwest Detention Center in
     Tacoma, Washington; CHARLES INGRAM, warden of the
13   Federal Detention Center in SeaTac, Washington; DAVID
     SHINN, warden of the Federal Correctional Institute in
14   Victorville, California; JAMES JANECKA, warden of the
     Adelanto Detention Facility;
15
16
17                                 Defendants-Respondents.

No. 2:18-cv-928  MJP

**[PROPOSED] ORDER
GRANTING DEFENDANTS'
MOTION TO VACATE**

18         The Court, having considered Defendants' Motion to Vacate the Court's Preliminary

19   Injunction Order (Dkt. 110), and any opposition filed by Plaintiffs, hereby **GRANTS** the Motion.

20   The Court's Order granting Plaintiffs' Motion for a Preliminary Injunction is **VACATED**.

21         DATED this ____ day of _____, 2019.

22

23                                   _____

24                                   THE HONORABLE MARSHA J. PECHMAN
                                     UNITED STATES DISTRICT JUDGE
25

26

[PROPOSED] ORDER GRANTING                         Department of Justice, Civil Division
DEFENDANTS' MOTION TO VACATE                        P.O. Box 868 Ben Franklin Station
(Case No. 2:18-cv-00928-MJP)                            Washington, D.C. 20044
                                                          (202) 598-8060

                                          1

1

Presented this 26th day of April, 2019, by:

2

*/s/Archith Ramkumar*
ARCHITH RAMKUMAR

3

NY Bar # 5269949

4

Trial Attorney
United States Department of Justice

5

Civil Division
Office of Immigration Litigation,

6

District Court Section
P.O. Box 868, Ben Franklin Station

7

Washington, DC 20044

8

Phone: (202) 598-8060
Archith.Ramkumar@usdoj.gov

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] ORDER GRANTING
DEFENDANTS' MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060