The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

               Plaintiffs-Petitioners,

     v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

              Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' MOTION FOR LEAVE
TO FILE THIRD AMENDED
COMPLAINT**

NOTED ON MOTION CALENDAR:
May 17, 2019

PLS.' MOT. FOR LEAVE TO AMEND COMPL.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## I.   INTRODUCTION

Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez seek leave to file this Third Amended Complaint under Federal Rule of Civil Procedure 15 to address a change in the law with respect to Plaintiffs Orantes and Vasquez and members of the certified Bond Hearing Class that they represent. The Attorney General's April 16, 2019, decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019) violates Plaintiffs' basic constitutional rights and threatens to upend the protections this Court afforded to members of the Bond Hearing Class through its April 5, 2019, Order. Dkt. 110. Through *Matter of M-S-*, Defendants seek to eliminate bond hearings all together. The Amended Complaint addresses this new development by (1) clarifying and adding allegations regarding Defendants' recent actions to eliminate bond hearings for Plaintiffs and members of the Bond Hearing Class; (2) incorporating the class definitions as certified by this Court; and (3) adding causes of action and claims to remedy Defendants' unconstitutional action to eliminate bond hearings for members of the Bond Hearing Class.[1]

This Court should grant Plaintiffs' motion. The Federal Rules require that district courts liberally grant leave to amend a complaint. Plaintiffs seek such leave in direct response to Attorney General Barr's decision, which threatens to render meaningless the preliminary injunctive relief this Court ordered. Moreover, Defendants acknowledge that amendment in light of *Matter of M-S-* is appropriate. *See* Dkt. 114 at 12-13. Granting leave to amend ensures that this Court can protect the integrity of its previously-issued preliminary injunction order and address Defendants' unilateral attempt to strip away the critical constitutional protections that order affords: a prompt bond hearing that (1) requires the government to bear the burden of proof, (2) is recorded or transcribed, and (3) culminates in a written decision with individualized findings.

---

[1] Plaintiffs have included with this motion both a proposed final version of the Third Amended Complaint and a redline version pursuant to L.R. 15.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## II.    BACKGROUND

Plaintiffs filed a second amended complaint with Defendants' consent on August 22, 2018. Dkts. 25-26. Plaintiffs alleged, inter alia, that Defendants violated their right to timely credible fear interviews and their constitutionally protected interests in "having a bond hearing that is fair and comports with due process" and in "not being imprisoned in federal detention for an unreasonable time awaiting their bond hearing." Dkt. 26 ¶ 148; *id.* ¶¶ 146-165. As to their bond hearing claims, Plaintiffs sought relief on behalf of a class of:

> All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

*Id.* ¶ 137 (hereinafter, the Bond Hearing Class). Subsequently, the parties fully briefed Plaintiffs' motions for class certification and preliminary injunction and Defendants' motion to dismiss. *See* Dkts. 36, 37, 45.

On September 18, 2018, former Attorney General Sessions self-certified the question of whether the Board of Immigration Appeals' decision in *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005)—which recognized that individuals like members of the Bond Hearing Class are entitled to bond hearings before an immigration judge—"should be overruled." *Matter of M-G-G-*, 27 I. & N. Dec. 469 (A.G. 2018); *Matter of M-S-*, 27 I. & N. Dec. 476 (A.G. 2018).[2] Defendants moved to extend all deadlines and place this case in abeyance in light of former Attorney General Sessions' action. *See* Dkt. 83; *see also* Dkt. 86 at 4 (arguing that "Plaintiffs would need to amend their complaint (on behalf of a plaintiff with standing) if they sought to challenge the determination . . . that the INA [does] not permit bond hearings" for Bond Hearing Class members). However, the Court denied the motion, noting that "[i]f Attorney General Barr

---

[2] Former Attorney General Sessions subsequently remanded *Matter of M-G-G-* without a substantive decision and certified the same question to himself in *Matter of M-S-*. *See Matter of M-G-G-*, 27 I. & N. Dec. 475 (2018); *Matter of M-S-*, 27 I. & N. Dec. 476.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   issues a decision in Matter of M-S-, the Court will address that decision as needed" and that class

2   members would face "at least a 'fair possibility' of harm" were proceedings in this case stayed.

3   Dkt. 101 at 3.

4           Neither former Attorney General Sessions, nor his successors, former Acting Attorney

5   General Whitaker and Defendant Barr, immediately ruled upon *Matter of M-S-*. In the

6   intervening months, the Court denied in part Defendants' motion to dismiss and granted

7   Plaintiffs' motion for class certification. *See* Dkts. 91, 102. On April 5, 2019, this Court also

8   ruled on Plaintiffs' motion for a preliminary injunction for Bond Hearing Class members. Dkt.

9   110. The Court ordered that, within 30 days, Defendants must "[c]onduct bond hearings within

10  seven days of a bond hearing request by a class member, and release any class member whose

11  detention time exceeds that limit" and apply enumerated procedural protections during and after

12  those bond hearings. *Id*. at 19.

13          Eleven days after this Court granted the motion for preliminary injunction, Defendant

14  Barr issued *Matter of M-S-*, 27 I. & N. Dec. 509 (2019). In that decision, Defendant Barr

15  overruled *Matter of X-K-* and held that *all* noncitizens "transferred from expedited to full

16  proceedings after establishing a credible fear are ineligible for bond." *Id.* at 518-19. Defendant

17  Barr delayed implementation of the decision for 90 days. *Id.* at 519 n.8. On April 26, 2019,

18  Defendants moved to vacate this Court's preliminary injunction order, arguing, inter alia, that

19  Plaintiffs must amend their complaint in order to proceed with their bond hearing claims in this

20  case. Dkt. 114 at 12-13.

21          While the Second Amended Complaint asserts a constitutionally protected right to a bond

22  hearing, Plaintiffs now seek leave to amend their complaint to squarely confront Defendants'

23  most recent action seeking to impose protracted detention on detained individuals seeking

24  protection from persecution or torture.

25  **III.    ARGUMENT**

26          Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so

27  requires." Fed. R. Civ. P. 15(a)(2). "Courts may decline to grant leave to amend only if there is

PLS.' MOT. FOR LEAVE TO AMEND COMPL. - 3

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011); *Poling v. Morgan*, 829 F.2d 882, 886-87 (9th Cir. 1987). The Ninth Circuit has repeatedly held that the policy of granting leave to amend is "'to be applied with extreme liberality.'" *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)); *accord Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) ("The standard for granting leave to amend is generous.").

        a.   Amendment Is Appropriate in Light of Defendant Barr's Unilateral Change in Law

Ninth Circuit decisions uniformly grant motions for leave to amend following a change in the law. Those decisions underscore why granting Plaintiffs leave to amend is appropriate in this case. For example, in *Sonoma County*, the Ninth Circuit reversed a district court's denial of leave to amend "where the controlling precedents changed midway through the litigation." 708 F.3d at 1118. Similarly, in *Moss v. U.S. Secret Service*, the Ninth Circuit concluded that the "Plaintiffs deserve[d] a chance to supplement their complaint" where an intervening Supreme Court case brought about a "significant change, with broad-reaching implications." 572 F.3d 962, 972 (9th Cir. 2009).

The same is true here. Defendant Barr's decision eliminating bond hearings fundamentally alters the legal landscape for the bond hearing claims of Plaintiffs Orantes and Vasquez and members of the Bond Hearing Class. Moreover, the decision attempts to unilaterally dispose of the protections provided in this Court's order requiring that bond hearings take place promptly and with procedural safeguards. Specifically, *Matter of M-S-* purports to authorize the elimination of bond hearings provided for in this Court's order granting a

preliminary injunction. Defendant Barr's decision, which is set to take effect on July 15, 2019, affects the Bond Hearing Class's claims in significant ways, as no individual who was initially subject to expedited removal under 8 U.S.C. § 1225(b) and passed a credible fear interview will now receive a bond hearing—much less one with adequate procedural protections. Indeed, Defendants already have sought to vacate the injunctive relief this Court granted to the Bond Hearing Class in its entirety based on the *Matter of M-S-* decision. *See* Dkt. 114 at 1 ("*Matter of M-S-* abrogates the very entitlement that the [Court's preliminary injunction] Order rests upon.").

Plaintiffs' proposed Third Amended Complaint—and its addition of new claims addressing *Matter of M-S-* and clarifying the Bond Hearing Class members' right to a bond hearing—thus seeks to preserve the Bond Hearing Class's claims and this Court's existing preliminary injunction order. The amended complaint also makes clear its request that the Court address the constitutional and statutory questions that Defendant Barr's actions in *Matter of M-S-*. *See Sonoma Cty.*, 708 F.3d at 1119. As set forth in the Third Amended Complaint and Plaintiffs' forthcoming cross-motion to modify the Court's preliminary injunction order, due process requires Defendants to continue to provide bond hearings for individuals who (1) enter the United States without inspection, (2) establish a credible fear for persecution or torture, and (3) are then transferred to removal proceedings before an immigration judge. In addition, *Matter of M-S-* purports to unilaterally alter existing regulations that the former Immigration and Naturalization Service passed through notice and comment rulemaking under the Administrative Procedure Act (APA), 5 U.S.C. § 553. Under these circumstances—where Defendants have changed the governing law despite serious constitutional and procedural concerns—justice requires granting Plaintiffs leave to amend. Fed. R. Civ. P. 15(a)(2).

b. Other Factors Do Not Prevent Plaintiffs from Amending Their Complaint

None of the established grounds for denying leave to amend apply in this case. First, the denial grounds for repeated failure to cure deficiencies or futility are inapplicable. Plaintiffs do not seek leave to amend to cure any previously-raised deficiency in their complaint; rather, they seek to address a change in law unilaterally issued by Defendant Barr since their Second

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

Amended Complaint was filed. Notably, this Court repeatedly recognized the validity of Plaintiffs' claims prior to the issuance of *Matter of M-S-* when the Court (1) denied Defendants' motion to dismiss as to Plaintiffs' constitutional claims and the bond hearing procedures APA claims, and (2) granted Plaintiffs' motions for class certification and preliminary injunction.[3] *See* Dkts. 91, 102, 110. Thus, those grounds for denying leave do not apply in this case.

Second, Plaintiffs have not exhibited any delay, let alone undue delay in requesting leave to amend the complaint. Indeed, Defendant Barr issued his decision in *Matter of M-S-* only about two weeks ago. Given Plaintiffs' prompt response, there is no question that they exhibited the diligence necessary to avoid this potential bar to amending. *Cf. Morongo Band of Mission Indians v. Rose*, 893 F.3d 1074, 1079 (9th Cir. 1990) (two years' delay in filing motion for leave to file amended complaint was merely a "factor" that was "relevant" to denying leave to amend, but was "not alone enough to support denial" of leave). Moreover, Plaintiffs have submitted this order within the time period proscribed by this Court's order establishing a May 22, 2019, deadline for parties to file amended pleadings. *See* Dkt. 108.

Finally, Defendants will not suffer prejudice if the Court grants Plaintiffs leave to amend. While "the consideration of prejudice to the opposing party . . . carries the greatest weight" when assessing a motion for leave to amend, it is the noncitizens seeking protection—not Defendants—who face grave prejudice here. Defendants have purported to unilaterally "change[] [the law] midway through the litigation," *Sonoma Cty.*, 708 F.3d at 1118, in a way that violates the Bond Hearing Class's rights and threatens to eliminate the relief the Court has preliminarily granted them.

Plaintiffs' past allegations and Defendants' prior arguments should also leave little doubt that Defendants will not suffer prejudice if the Court grants Plaintiffs' motion for leave to amend. In their second amended complaint, Plaintiffs clearly articulated a Fifth Amendment Due

---

[3] While the Court dismissed Plaintiffs' APA claims related to the timing of bond hearings and credible fear interviews, *see* Dkt. 91 at 12, 17, Plaintiffs do not seek leave to amend in order to modify those claims.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  Process claim that the Bond Hearing Class possesses a constitutional right to a timely and fair

2  bond hearing. Dkt. 26 at 25-26. As noted, Defendants' motion to vacate the preliminary

3  injunction argues that *Matter of M-S-* requires Plaintiffs to amend their complaint. *See* Dkt. 114

4  at 12-13. As such, Defendants demonstrated that they understood the Attorney General's actions

5  would cause Plaintiffs to take the action now presented to this Court—further underscoring that

6  Defendants will not face prejudice from Plaintiff's Third Amended Complaint.

7  **IV.     CONCLUSION**

8           For the reasons stated above, Plaintiffs respectfully request that this Court grant their

9  motion for leave to amend.

10 RESPECTFULLY SUBMITTED this 2nd day of May, 2019.

11 *s/ Matt Adams*
12 Matt Adams, WSBA No. 28287
   Email:  matt@nwirp.org
13
   *s/ Leila Kang*
14 Leila Kang, WSBA No. 48048
   Email:  leila@nwirp.org
15
   *s/ Aaron Korthuis*
16 Aaron Korthuis, WSBA No. 53974
17 Email: aaron@nwirp.org

18 NORTHWEST IMMIGRANT RIGHTS
19 PROJECT
   615 Second Avenue, Suite 400
20 Seattle, WA  98104
   Telephone: (206) 957-8611
21 Facsimile: (206) 587-4025

22 Emily Chiang
23 WSBA No 50517
   ACLU OF WASHINGTON
24 901 5th Ave #630
   Seattle, WA 98164
25 (206) 624-2184
   echiang@aclu-wa.org
26

    *s/ Trina Realmuto*
    Trina Realmuto*
    Email: trealmuto@immcouncil.org

    *s/ Kristin Macleod-Ball*
    Kristin Macleod-Ball*
    Email: kmacleod-ball@immcouncil.org

    AMERICAN IMMIGRATION COUNCIL
    1318 Beacon Street, Suite 18
    Brookline, MA 02446
    (857) 305-3600

    Judy Rabinovitz**
    Michael Tan**
    Anand Balakrishnan**

    ACLU IMMIGRANTS' RIGHTS PROJECT
    125 Broad Street, 18th floor
    New York, NY 10004
    (212) 549-2618
    jrabinovitz@aclu.org
    mtan@aclu.org
    abalakrishnan@aclu.org

27 *Admitted *pro hac vice*      **Application for admission *pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2019, I electronically filed the foregoing, the attached

exhibits, and proposed order, with the Clerk of the Court using the CM/ECF system, which will

send notification of such filing to those attorneys of record registered on the CM/ECF system.

All other parties shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 2nd of May, 2019.

<div style="margin-left:40%">

s/ Leila Kang

Leila Kang
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8608
Facsimile: (206) 587-4025

</div>

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA;  IBIS GUZMAN; BLANCA
ORANTES; BALTAZAR VASQUEZ;

                          Plaintiffs-Petitioners,

        v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR");
MATTHEW ALBENCE, Acting Deputy Director of ICE;
KEVIN K. McALEENAN, Acting Secretary of DHS; JOHN
SANDERS, Acting Commissioner of CBP; L. FRANCIS
CISSNA, Director of USCIS; ELIZABETH GODFREY,
Acting Director of Seattle Field Office, ICE; WILLIAM
BARR, United States Attorney General; LOWELL CLARK,
warden of the Northwest Detention Center in Tacoma,
Washington;  CHARLES INGRAM, warden of the Federal
Detention Center in SeaTac, Washington;  DAVID SHINN,
warden of the Federal Correctional Institute in Victorville,
California; JAMES JANECKA, warden of the Adelanto
Detention Facility;

                          Defendants-Respondents.

No. 2:18-cv-928 MJP

**[PROPOSED] THIRD
AMENDED COMPLAINT:
CLASS ACTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

# I.   **INTRODUCTION**

1.      Plaintiffs filed this lawsuit on behalf of themselves and other detained individuals seeking protection from persecution and torture, challenging the United States' government's punitive policies and practices seeking to unlawfully deter and obstruct them from applying for protection.

2.      This lawsuit initially included challenges to the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum, withholding and protection under the Convention Against Torture ("CAT"). Plaintiffs did not pursue those claims after a federal court in the Southern District of California issued a nationwide preliminary injunction Order against forcibly separating families. *Ms. L v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018); *see also* Dkt. 26.

3.      In their Second Amended Complaint, Plaintiffs reaffirmed that they sought relief on behalf of themselves and members of two proposed classes: (1) the Credible Fear Interview Class, challenging delayed credible fear determinations, and (2) the Bond Hearing Class, challenging delayed bond hearings that do not comport with constitutional requirements. *Id.*

4.      On March 6, 2019, this Court granted Plaintiffs' Motion for Class Certification and certified both the Credible Fear Interview Class and Bond Hearing Class. Dkt. 102 at 2. On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction, ordering that Defendant Executive Office for Immigration Review conduct bond hearings within seven days of request by a Bond Hearing Class members, place the burden of proof at those hearings on Defendant Department of Homeland Security, record the hearings, produce a recording or verbatim transcript upon appeal, and produce a written decision with particularized determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

5.      Thereafter, on April 16, 2019, Defendant Attorney General Barr issued *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2018). In this decision, Defendant Barr reversed and vacated *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), holding that the Immigration and Nationality Act

1   (INA) does not permit bond hearings for individuals who enter the United States without

2   inspection, establish a credible fear for persecution or torture, and are then referred for removal

3   proceedings before an immigration judge.

4        6.     Defendants have therefore now adopted a policy that not only denies Plaintiffs

5   and class members the procedural protections they seek, but prevents them from obtaining bond

6   hearings *at all*. Plaintiffs file this Third Amended Complaint to more squarely address this new

7   and even more extreme policy.

8        7.     Defendants exacerbate the harm those fleeing persecution have already suffered

9   by needlessly depriving them of their liberty without adequate review. Plaintiffs seek this Court's

10  intervention to ensure both that Defendants do not interfere with their right to apply for

11  protection by delaying Plaintiffs' credible fear interviews and by subjecting them to lengthy

12  detention without prompt bond hearings that comport with the Due Process Clause.

13  ## II.    JURISDICTION

14       8.     This case arises under the Fifth Amendment of the United States Constitution and

15  the Administrative Procedure Act ("APA"). This Court has jurisdiction under 28 U.S.C. § 1331

16  (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2

17  of the United States Constitution ("Suspension Clause"). Defendants have waived sovereign

18  immunity pursuant to 5 U.S.C. § 702.

19       9.     Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes  were in custody for

20  purposes of habeas jurisdiction when this action was filed on June 25, 2018. Moreover, Plaintiffs

21  remain in custody as they are in ongoing removal proceedings and subject to re-detention.

22       10.     Plaintiffs Guzman, Orantes, and Vasquez were in custody for purposes of habeas

23  jurisdiction when the First Amended Complaint was electronically submitted on July 15, 2018.

24  ## III.    VENUE

25       11.     Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of

26  the relevant facts occurred within this District. Those facts include Defendants' detention of

[PROPOSED] THIRD AMENDED COMPL. - 2
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    Plaintiffs Padilla, Guzman, and Orantes in this District; Defendants' failure in this District to

2    promptly conduct credible fear interviews and determinations for Plaintiffs and class members'

3    claims for protection in the United States; and Defendants' failure in this District to promptly

4    conduct bond hearings that comport with due process and the Administrative Procedure Act.

5                            IV.    **PARTIES**

6        12.    Plaintiff Yolany Padilla is citizen of Honduras seeking asylum, withholding, and

7    protection under CAT for herself and her 6-year-old son (J.A.) in the United States.

8        13.    Plaintiff Ibis Guzman is a citizen of Honduras seeking asylum, withholding, and

9    protection under CAT for herself and her 5-year-old son (R.G.) in the United States.

10       14.    Plaintiff Blanca Orantes is a citizen of El Salvador seeking asylum, withholding,

11   and protection under CAT for herself and her 8-year-old son (A.M.) in the United States.

12       15.    Plaintiff Baltazar Vasquez is citizen of El Salvador seeking asylum, withholding,

13   and protection under CAT in the United States.

14       16.    Defendant U.S. Department of Homeland Security ("DHS") is the federal

15   government agency responsible for enforcing U.S. immigration law. Its component agencies

16   include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border

17   Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").

18       17.    Defendant ICE carries out removal orders and oversees immigration detention.

19   ICE's responsibilities include determining whether individuals seeking protection will be

20   released and referring cases for a credible fear interview and subsequent proceedings before the

21   immigration court. ICE's local field office in Tukwila, Washington, is responsible for

22   determining whether individuals detained in Washington will be released, and when their cases

23   will be submitted for credible fear interviews and subsequent proceedings before the immigration

24   court.

25       18.    Defendant CBP conducts the initial processing and detention of individuals

26   seeking protection at or near the U.S. border. CBP's responsibilities include determining whether

[PROPOSED] THIRD AMENDED COMPL. - 3
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    individuals seeking protection will be released and when their cases will be submitted for a

2    credible fear interview.

3         19.    Defendant USCIS, through its asylum officers, interviews and screens individuals

4    seeking protection to determine whether to refer their protection claim to the immigration court

5    to adjudicate any application for asylum, withholding of removal, or protection under CAT.

6         20.    Defendant Executive Office for Immigration Review ("EOIR") is a federal

7    government agency within the Department of Justice that includes the immigration courts and

8    the Board of Immigration Appeals ("BIA"). It is responsible for conducting removal

9    proceedings, including adjudicating applications for asylum, withholding, and protection under

10   CAT, and for conducting individual bond hearings for persons in immigration custody.

11        21.    Defendant Matthew Albence is sued in his official capacity as the Acting Deputy

12   Director of ICE , and is a legal custodian of class members.

13        22.    Defendant Elizabeth Godfrey is sued in her official capacity as the ICE Seattle

14   Field Office Director, and is, or was, a legal custodian of the named plaintiffs.

15        23.    Defendant Kevin K. McAleenan is sued in his official capacity as the Acting

16   Secretary of DHS. In this capacity, he directs DHS, ICE, CBP, and USCIS. As a result,

17   Defendant McAleenan is responsible for the administration of immigration laws pursuant to

18   8 U.S.C. § 1103 and is, or was, a legal custodian of the named plaintiffs.

19        24.    Defendant John Sanders is sued in his official capacity as the Acting

20   Commissioner of CBP.

21        25.    Defendant L. Francis Cissna is sued in his official capacity as the Director of

22   USCIS.

23        26.    Defendant William Barr is sued in his official capacity as the United States

24   Attorney General. In this capacity, he directs agencies within the United States Department of

25   Justice, including EOIR. Defendant Barr is responsible for the administration of immigration

26   laws pursuant to 8 U.S.C. § 1103 and oversees Defendant EOIR.

[PROPOSED] THIRD AMENDED COMPL. - 4
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

27.     Defendant Steven Langford is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

28.     Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

29.     Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institution in Victorville, California.

30.     Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.     FACTS

### Legal Background

31.     In 1996, Congress created an expedited removal system and "credible fear" process. 8 U.S.C. § 1225 *et seq.* As enacted by Congress, the expedited removal system involves a streamlined removal process for individuals apprehended at or near the border. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (permitting certain persons who are seeking admission at the border of the United States to be expeditiously removed without a full hearing); 8 U.S.C. § 1225(b)(1)(A)(iii) (authorizing the Attorney General to apply expedited removal to certain inadmissible noncitizens located within the United States); 69 Fed. Reg. 48,877 (Aug. 11, 2004) (providing that the Attorney General will apply expedited removal to persons within the United States who are apprehended within 100 miles of the border and who are unable to demonstrate that they have been continuously physically present in the United States for the preceding 14-day period).

32.     Critically, however, Congress included safeguards in the statute to ensure that those seeking protection from persecution or torture are not returned to their countries of origin. Recognizing the high stakes involved in short-circuiting the formal removal process and the constitutional constraints under which it operates, Congress created specific procedures with detailed requirements for handling claims for protection.

[PROPOSED] THIRD AMENDED COMPL. - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

33.     The expedited removal process begins with an inspection by an immigration officer, who determines the individual's admissibility to the United States. If the individual indicates either an intention to apply for asylum or any fear of return to their country of origin, the officer must refer the individual for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. § 235.3(b)(4).

34.     If an asylum officer determines that an applicant satisfies the credible fear standard—meaning there is a "significant possibility" she is eligible for asylum, 8 U.S.C. § 1225(b)(1)(B)(v)—the applicant is taken out of the expedited removal system altogether and placed into standard removal proceedings under 8 U.S.C. § 1229a.

35.     During § 1229a removal proceedings, the applicant has the opportunity to develop a full record before an immigration judge ("IJ"), apply for asylum, withholding of removal, protection under CAT, and any other relief that may be available, and appeal an adverse decision to the BIA and court of appeals. 8 C.F.R. §§ 208.30(f), 1003.43(f) and 1208.30; *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

36.     Until the asylum officer makes the credible fear determination, an applicant in expedited removal proceedings is subject to mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(4)(ii).

37.     Defendants have a policy or practice of delaying the provision of credible fear interviews to asylum seekers who express a fear of return, and thus unnecessarily prolonging their mandatory detention.

38.     Until recently, BIA case law recognized that noncitizens who were apprehended after entering without inspection and placed in removal proceedings after passing their credible fear interviews are entitled to bond hearings. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (issued April 16, 2019, but effective date stayed until July 15, 2019), (interpreting bond regulations at 8 C.F.R. §§ 1003.19(h)(2) and 1236.1).

[PROPOSED] THIRD AMENDED COMPL. - 6
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

39.     Defendants' policy and practice, however, has been both to deny timely bond hearings and to require the noncitizens, rather than the government, to bear the burden of proving at these bond hearings that continued detention is not warranted. These bond hearings have also lacked procedural safeguards such as a verbatim transcript or audio recording, and a contemporaneous written decision explaining the IJ's findings.

40.     Traditionally, those asylum seekers in § 1229a removal proceedings who are not deemed "arriving"—that is, those who were apprehended near the border *after* entering without inspection, as opposed to asylum seekers who are detained at a port of entry—become entitled to an individualized bond hearing before an IJ to assess their eligibility for release from incarceration once they have been found to have a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1225(b)(1)(B)(iii)(IV); 8 C.F.R. §§ 208.30(f), 1236.1(d).

41.     In 2005, Defendant EOIR reaffirmed the availability of bond hearings for this group of asylum seekers. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019). *See also* 8 C.F.R. § 1003.19(h)(2).

42.     At the bond hearing, an IJ determines whether to release the individual on bond or conditional parole pending resolution of her immigration case. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 1236.1(d)(1), 1003.19. In doing so, the IJ evaluates whether they pose a danger to the community and the likelihood that they will appear at future proceedings. *See Matter of Adeniji*, 22 I&N Dec. 1102, 1112 (BIA 1999).

43.     The detained individual has the right to appeal an IJ's denial of bond to the BIA, 8 C.F.R. § 1003.19(f), or to seek another bond hearing before an immigration judge if they can establish a material change in circumstances since the prior bond decision, 8 C.F.R. § 1003.19(e).

44.     Defendant EOIR places the burden of proving eligibility for release on the detained noncitizen seeking bond, not the government. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

[PROPOSED] THIRD AMENDED COMPL. - 7
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

45.     Immigration courts do not require recordings of bond proceedings and do not provide transcriptions of the hearing, or even the oral decisions issued in the hearings. Immigration courts also do not issue written decisions unless the individual has filed an administrative appeal of the bond decision. *See, e.g.*, Imm. Court Practice Manual § 9.3(e)(iii), (e)(vii); BIA Practice Manual §§ 4.2(f)(ii), 7.3(b)(ii).

46.     When an IJ denies release on bond or other conditions, she does not make specific, particularized findings, and instead simply checks a box on a template order.

47.     On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction and ordered that Defendant EOIR implement key procedural safeguards. In particular, the Court required EOIR to conduct bond hearings within seven days of request by Bond Hearing Class members, place the burden of proof at those hearings on Defendant DHS, record the hearings, produce a recording or verbatim transcript upon appeal, and produce a written decision with particularized determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

### The Attorney General's Decision in *Matter of M-S-*

48.     On October 12, 2018—approximately two months after Plaintiffs filed their amended complaint raising the bond hearing class claims, and around six months before this Court issued its preliminary injunction—former Attorney General Sessions referred to himself a pro se case seeking to review whether "*Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) . . . should be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." *Matter of M-G-G-*, 27 I&N Dec. 469, 469 (A.G. 2018); *see also  Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018).

49.     On November 7, 2018, former Defendant Sessions resigned as Attorney General.

50.     Subsequently, on February 14, 2019, Attorney General Barr was confirmed by the Senate.

51.     On April 16, 2019, Defendant Barr issued *Matter of M-S-*, 27 I. & N Dec. 509 (A.G. 2018). In this decision, Defendant Barr reversed and vacated *Matter of X-K-*, 23 I&N Dec.

[PROPOSED] THIRD AMENDED COMPL. - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

731 (BIA 2005), holding the Immigration and Nationality Act (INA) does not permit bond hearings for individuals who enter the United States without inspection, establish a credible fear for persecution or torture, and are then referred for full removal hearings before the immigration court.

52.     Although existing regulations provide for bond hearings except in limited circumstances not applicable here, Defendant Barr did not formally rescind or modify the regulations or engage in the required rulemaking process.

53.     Defendant Barr stayed the effective date of his decision for 90 days so that DHS may conduct the "necessary operational planning for additional detention and parole decisions" that will result from the elimination of IJ bond hearings. *Matter of M-S-*, 27 I&N Dec. at 519 n.8.

54.     Under *Matter of M-S- ,* asylum seekers will be restricted to requesting release from ICE—the jailing authority—through the parole process. 27 I&N Dec. at 516-17 (citing 8 U.S.C. § 1182(d)(5)). In contrast to a bond hearing before an immigration judge, the parole process consists merely of a custody review conducted by low-level ICE detention officers. *See* 8 C.F.R. § 212.5. It includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See id*. Instead, ICE officers make parole decisions—that can result in months or years of additional incarceration—by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation.

55.     In *Matter of M-S-*, Defendant Barr also ordered that the noncitizen in that case, who had previously been released on bond, "must be detained until his removal proceedings conclude" unless DHS chooses to grant him parole. *Matter of M-S-*, 27 I&N Dec. at 519.

56.     Pursuant to *Matter of M-S-*, Defendants will initiate a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection, even after being found to have a credible fear of persecution or torture and even after their cases are transferred for full hearings before the immigration court.

[PROPOSED] THIRD AMENDED COMPL. - 9
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**Plaintiff Yolany Padilla**

57.     Yolany Padilla is a citizen of Honduras seeking asylum in the United States for herself and her 6-year-old son J.A.

58.     On or about May 18, 2018, Ms. Padilla and J.A. entered the United States. As they were making their way to a nearby port of entry, they were arrested by a Border Patrol agent for entering without inspection.

59.     When they arrived at the port of entry, an officer there announced to her and the rest of the group that the adults and children were going to be separated. The children old enough to understand the officer began to cry. J.A. clutched his mother's shirt and said, "No, mommy, I don't want to go." Ms. Padilla reassured her son that any separation would be short, and that everything would be okay. She was able to stay with her son until they were transferred later that day to a holding facility known as a *hielera,* or freezer, because of the freezing temperatures of the rooms. Ms. Padilla and J.A. were then forcibly separated without explanation.

60.     While detained in the *hielera*, Ms. Padilla informed the immigration officers that she and her son were afraid to return to Honduras.

61.     About three days later, Ms. Padilla was transferred to another facility in Laredo, Texas. The officers in that facility took her son's birth certificate from her. When she asked for it back, she was told that the immigration authorities had it.

62.     About twelve days later, Ms. Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

63.     For many weeks after J.A. was forcibly taken from her, Ms. Padilla received no information regarding his whereabouts despite repeated inquiries. Around a month into her detention, the Honduran consul visited Ms. Padilla at the detention center, and she explained that she had no news of her 6-year-old son. Soon thereafter, she was given a piece of paper stating that J.A. was in a place called Cayuga Center in New York, thousands of miles away.

[PROPOSED] THIRD AMENDED COMPL. - 10
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

64.     On July 2, 2018, more than six weeks after being apprehended and detained, Ms. Padilla was given a credible fear interview. The asylum officer issued a positive credible fear determination, and she was placed in removal proceedings.

65.     On July 6, 2018, Ms. Padilla attended her bond hearing before the immigration judge. During the bond hearing, the immigration judge placed the burden of proof on Ms. Padilla to demonstrate that she is neither a danger nor flight risk. To her knowledge, there is no verbatim transcript or recording of her bond hearing. The immigration judge set a bond amount of $8,000.

66.     Ms. Padilla was released on July 6, 2018, after posting bond.

67.     Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

**Plaintiff Ibis Guzman**

68.     Ibis Guzman is a citizen of Honduras seeking asylum in the United States for herself and her 5-year-old son R.G.

69.     On or about May 16, 2018, Ms. Guzman and R.G. entered the United States. When they were apprehended by Border Patrol agents for entering without inspection, Ms. Guzman informed them that she and R.G. are seeking asylum.

70.     After initial questioning, an officer came and forcibly took R.G. from Ms. Guzman, falsely informing her she would be able to see him again in three days. After those three days, Ms. Guzman was transferred to another CBP facility, where officers told her they did not know anything about her son's whereabouts.

71.     Ms. Guzman was then transferred to a facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her child and without any means to contact him. She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ms. Guzman was transferred to the Federal Detention Center in SeaTac, Washington. After being held there for about another week, she was finally

[PROPOSED] THIRD AMENDED COMPL. - 11
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   informed her child had been placed with Baptist Child and Family Services in San Antonio,

2   Texas, thousands of miles from where she was being held.

3       73.     On June 20, 2018, Ms. Guzman was transferred to the Northwest Detention

4   Center in Tacoma, Washington.

5       74.     On June 27, 2018, over a month after being apprehended and detained, Ms.

6   Guzman attended a credible fear interview. The asylum officer determined that she has a credible

7   fear, and she was placed in removal proceedings.

8       75.     On July 3, 2018, Ms. Guzman attended a bond hearing before immigration judge.

9   At the bond hearing, the immigration judge placed the burden of proof on Ms. Guzman to

10  demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration

11  judge issued an order denying her release on bond pending the adjudication of her asylum claim

12  on the merits. The immigration judge did not make specific, particularized findings for the basis

13  of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order.

14  To her knowledge, there is no verbatim transcript or recording of her bond hearing.

15      76.     Ms. Guzman was not released until on or about July 31, 2018, after the

16  government was ordered to comply with the preliminary injunction in *Ms. L v. ICE.*

17                          **Plaintiff Blanca Orantes**

18      77.     Blanca Orantes is a citizen of El Salvador seeking asylum in the United States for

19  herself and her 8-year-old son A.M.

20      78.     On or about May 21, 2018, Ms. Orantes and A.M. entered the United States. They

21  immediately walked to a CBP station to request asylum, and were subsequently arrested for

22  entering without inspection. Ms. Orantes informed a Border Patrol agent that she and A.M. are

23  seeking asylum.

24

25

26

[PROPOSED] THIRD AMENDED COMPL. - 12
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

79.     Ms. Orantes and her son were transported to a CBP facility. Before entering the building, the officers led Ms. Orantes into a *hielera* with other adults, and her son into another part of the station with other children.

80.     Ms. Orantes was later interviewed by an immigration officer. At that time, another officer brought A.M. to her and told her to "say goodbye" to him because they were being separated. A.M. began crying and pleading Ms. Orantes not to leave, but was forcibly taken away from Ms. Orantes.

81.     On or around May 24, 2018, Ms. Orantes was taken to court, where she pled guilty to improper entry under 8 U.S.C. § 1325 and was sentenced to time served. She was then returned to her cell.

82.     About nine days after this, Ms. Orantes was transported to the Federal Detention Center in SeaTac, Washington.

83.     Ms. Orantes was not provided any information about her child until June 9, 2018, when an ICE officer handed her a slip of paper advising that her son was being held at Children's Home of Kingston, in Kingston, New York.

84.     On June 20, 2018, Ms. Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, still thousands of miles away from her son.

85.     On June 27, 2018, around five weeks after being apprehended, Ms. Orantes was given a credible fear interview. The following day, June 28, 2018, the asylum officer determined that Ms. Orantes established a credible fear, and she was placed in removal proceedings.

86.     Ms. Orantes requested a bond hearing upon being provided the positive credible fear determination.

87.     On July 16, 2018, Ms. Orantes was given a bond hearing before the immigration court. At the bond hearing, the immigration judge placed the burden of proof on Ms. Orantes to demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  judge issued an order denying her release on bond pending the adjudication of her asylum claim

2  on the merits.

3        88.     In denying Ms. Orantes's request for a bond, the immigration judge did not make

4  specific, particularized findings for the basis of the denial, and even failed to check the box

5  indicating why she was denied bond on the template order.

6        89.     She was released from custody on or about July 23, 2018, after the federal

7  government was forced to comply with the preliminary injunction in *Ms. L. v. ICE*, and

8  thereafter reunited her with her child.

9                          **Plaintiff Baltazar Vasquez**

10       90.     Plaintiff Baltazar Vasquez is a citizen of El Salvador seeking asylum in the

11  United States.

12       91.     On or about June 1, 2018, Mr. Vasquez entered the United States. He was arrested

13  by a Border Patrol agent for entering without inspection, and informed the agent that he was

14  afraid to return to El Salvador and wanted to seek asylum.

15       92.     Mr. Vasquez was first transported by officers to a federal holding center near San

16  Diego, California. Around nine days later, he was transferred to a Federal Detention Center in

17  Victorville, California.

18       93.      On or about July 20, 2018, Mr. Vasquez was transferred to another detention

19  center in Adelanto, California.

20       94.     On or about July 31, 2018, nearly two months after he was first apprehended, Mr.

21  Vasquez was given a credible fear interview. The asylum officer determined he had a credible

22  fear, and he was placed in removal proceedings.

23       95.     Mr. Vasquez requested a bond hearing upon being provided the positive credible

24  fear determination.

25       96.     On August 20, 2018, Mr. Vasquez was given a bond hearing before the

26  immigration court. At the bond hearing, Mr. Vasquez had the burden to prove that he is neither a

[PROPOSED] THIRD AMENDED COMPL. - 14
Case No. 2:18-cv-928 MJP

danger or flight risk, but ultimately, DHS agreed to stipulate to a bond amount of 8,000 dollars. The immigration judge approved this agreement but also required Mr. Vasquez to wear an ankle monitor.

97.     Pursuant to *Matter of M-S-*, Mr. Vasquez now faces the prospect of being re-detained without a bond hearing.

## VI.     CLASS ALLEGATIONS

98.     Plaintiffs brought this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the classes, the classes are so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the classes, Plaintiffs will fairly and adequately protect the interests of the respective classes, and Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

99.     Plaintiffs sought to represent the following nationwide classes:

a.  **Credible Fear Interview Class ("CFI Class"):** All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

b.  **Bond Hearing Class ("BH Class"):** All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

provided a bond hearing with a verbatim transcript or recording of the
hearing within 7 days of requesting a bond hearing.

100.    On March 6, 2019, the district court certified the following nationwide classes:

    **a.  Credible Fear Interview Class:** All detained asylum seekers in the
United States subject to expedited removal proceedings under 8 U.S.C. §
1225(b) who are not provided a credible fear determination within ten
days of the later of (1) requesting asylum or expressing a fear of
persecution to a DHS official or (2) the conclusion of any criminal
proceeding related to the circumstances of their entry, absent a request by
the asylum seeker for a delayed credible fear interview.

    **b.  Bond Hearing Class:** All detained asylum seekers who entered the United
States without inspection, were initially subject to expedited removal
proceedings under 8 U.S.C. § 1225(b), were determined to have a credible
fear of persecution, but are not provided a bond hearing with a verbatim
transcript or recording of the hearing within seven days of requesting a
bond hearing.

101.    The certified classes currently are represented by counsel from the Northwest
Immigrant Rights Project and the American Immigration Council. Counsel have extensive
experience litigating class action lawsuits and other complex cases in federal court, including
civil rights lawsuits on behalf of noncitizens.

**Credible Fear Interview Class ("CFI Class")**

102.    All named Plaintiffs represent the certified CFI Class.

103.    The CFI Class meets the numerosity requirement of Federal Rule of Civil
Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable.
Plaintiffs are not aware of the precise number of potential class members, but upon information
and belief, there are thousands of individuals seeking protection who are subject to expedited

[PROPOSED] THIRD AMENDED COMPL. - 16
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

removal proceedings and not provided a credible fear interview within ten days of expressing a

fear of return or desire to apply for asylum. Defendants are uniquely positioned to identify all

class members.

104.    The CFI Class meets the commonality requirement of Federal Rule of Civil

Procedure 23(a)(2). By definition, members of the CFI Class are subject to a common practice

by Defendants: their failure to provide timely credible fear interviews. This lawsuit raises a

question of law common to members of the CFI Class, namely whether Defendants' delay in

providing credible fear interviews constitutes agency action unlawfully withheld or unreasonably

delayed under the APA, the INA, and the Due Process Clause.

105.    The CFI Class meets the typicality requirement of Federal Rule of Civil

Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of

the class. All named Plaintiffs were not provided credible fear interviews within 10 days of being

apprehended and expressing a fear of return to their countries of origin.

106.    The CFI Class meets the adequacy requirements of Federal Rule of Civil

Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the

class—namely, an order that Defendants promptly provide credible fear interviews. In defending

their own rights, the named Plaintiffs will defend the rights of all class members fairly and

adequately.

107.    The members of the class are readily ascertainable through Defendants' records.

108.    The CFI Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants

have acted on grounds generally applicable to the class by unreasonably delaying putative class

members' credible fear interviews. Injunctive and declaratory relief is thus appropriate with

respect to the class as a whole.

### Bond Hearing Class ("BH Class")

109.    Plaintiffs Orantes and Vasquez represent the certified Bond Hearing Class.

[PROPOSED] THIRD AMENDED COMPL. - 17
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

110.     The BH Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential class members, but upon information and belief, there are thousands of individuals seeking protection who entered without inspection, were referred to standard removal proceedings after a positive credible fear determination, and were not provided bond hearings either within seven days of requesting the hearing, or whose bond hearings were not recorded or transcribed. Defendants are uniquely positioned to identify all class members.

111.     The BH Class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). Members of the BH Class are subject to common policies and practices by Defendants: their failure to provide timely bond hearings; their placement of the burden of proof on the detained on the detained individual during bond hearings; their failure to provide a verbatim transcript or recording of the bond hearing; their failure to provide a contemporaneous written decision with particularized findings; and finally, due to *Matter of M-S-*, all class members will be denied bond hearings.

112.     This lawsuit raises questions of law common to members of the BH Class: whether Defendants' failure to provide bond hearings violates class members' right to due process, right to a parole hearing under 8 U.S.C. § 1182(d)(5), and the rulemaking requirements of the Administrative Procedure Act; whether Defendants' failure to provide timely bond hearings constitutes agency action unlawfully withheld or unreasonably delayed under the APA, that is contrary to law under the APA; whether due process requires Defendants to provide bond hearings to putative class members within seven days of a request, and whether due process and the APA requires Defendants to place the burden of proof on the government to justify continue detention, and to provide adequate procedural safeguards during the bond hearings provided to putative class members.

[PROPOSED] THIRD AMENDED COMPL. - 18
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

113.    The BH Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Plaintiffs Orantes and Vasquez were not provided bond hearings within seven days of requesting a hearing. At the bond hearing, all class representatives were assigned the burden to prove that they are eligible for release under bond. All class representatives were denied a contemporaneous written decision with particularized findings. Defendants are not required to record or provide verbatim transcripts of the hearings and did not advise Plaintiffs Orantes and Vasquez that recordings had been made until filing their First Amended Complaint, Dkt. 8. Finally, in *Matter of M-S-*, Defendant Barr has announced that, as of July 15, 2019, future Bond Hearing Class members will be deprived of *any* bond hearing.

114.    The BH Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class: an order requiring Defendants to provide bond hearings within seven days of request, to place the burden of proof on the government during these bond hearings, to provide a verbatim transcript or recording of the hearing, and to provide a contemporaneous written decision with particularized findings at the end of the hearing. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

115.    The members of the class are readily ascertainable through Defendants' records.

116.    The BH Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unreasonably delaying putative class members' bond hearings. Putative class members received an untimely bond hearing in which they had to bear the burden of proof. Defendants generally do not record or provide verbatim transcripts of putative class members' bond hearings, nor issue contemporaneous written decisions with particularized findings. Moreover, after July 15, 2019, class members will not receive any bond hearings. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

[PROPOSED] THIRD AMENDED COMPL. - 19
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

# VII.   CAUSES OF ACTION

## COUNT I
### (Violation of Fifth Amendment Right to Due Process—Right to Timely Bond Hearing with Procedural Safeguards)

117.   All of the foregoing allegations are repeated and realleged as though fully set forth herein.

118.  The Due Process Clause of the Fifth Amendment provides that "no person . . . shall be deprived of . . . liberty . . . without due process of law." U.S. Const., amend. V.

119.  Named Plaintiffs and all BH Class members were apprehended on U.S. soil after entry and are thus "persons" to whom the Due Process Clause applies.

120.  The Due Process Clause permits civil immigration detention only where such detention is reasonably related to the government's interests in preventing flight or protecting the community from danger and is accompanied by adequate procedures to ensure that detention serves those goals.

121.  Both substantive and procedural due process therefore require an individualized assessment of BH Class members' flight risk or danger to the community in a custody hearing before a neutral decision maker.

122.  The Due Process Clause guarantees that such individualized custody hearings be provided in a timely manner to afford Plaintiffs and BH Class members an opportunity to challenge whether their continued detention is necessary to ensure their future appearance or to avoid danger to the community. Federal courts have consistently held that due process requires an expeditious opportunity to receive that individualized assessment. Defendants' interests in prolonging this civil detention do not outweigh the liberty interests of Plaintiffs and BH Class members.

123.  The Due Process Clause requires that Plaintiffs and BH Class members receive adequate procedural protections to assert their liberty interest. The Due Process Clause requires

[PROPOSED] THIRD AMENDED COMPL. - 20
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

the government to bear the burden of proof in the custodial hearing of demonstrating that the continued detention of Plaintiffs and BH Class members is justified. Defendants' interests do not outweigh the liberty interests for Plaintiffs and BH Class members.

124.   The Due Process Clause requires that the government provide either a transcript or recording of the hearing and specific, particularized findings of the bond hearing to provide a meaningful opportunity for Plaintiffs and BH Class members to evaluate and appeal the IJ's custody determination. Defendants' interests in issuing decisions without these procedural protections do not outweigh the liberty interests for Plaintiffs and BH Class members.

125.   Pursuant to *Matter of M-S-*, Defendants deprive Plaintiffs and BH Class members the right to any custodial hearing before a neutral arbiter to make an individualized determination of whether they present a danger to the community or a flight risk.

126.   Pursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face the prospect of being re-detained without a bond hearing.

127.   Prior to *Matter of M-S-*, Defendants recognized that BH Class members are entitled to a bond hearing. Defendants have regularly delayed these hearings for several weeks after the credible fear determinations.

128.   Defendants have also failed to provide the other bond hearing procedures required by due process, placing the burden of proof on Plaintiffs and BH Class members and refusing to provide them with a recording or verbatim transcript of the hearing as well as a written decision with particularized findings of the bond hearing.

129.   As a result, by failing to provide prompt bond hearings with adequate procedural safeguards, Defendants violate the Fifth Amendment's Due Process Clause.

<div align="center">

**COUNT II**
**(Violation of Immigration & Nationality Act—Failure to Provide**
**an Individualized Custodial Hearing)**

</div>

130.   All of the foregoing allegations are repeated and realleged as though fully set forth herein.

[PROPOSED] THIRD AMENDED COMPL. - 21
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

131.  8 U.S.C. § 1225(b)(1)(A) distinguishes BH class members, who are detained after entering the country, from those who are charged as arriving and seeking admission at a port of entry. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) provides that the Attorney General "may" place BH Class members in expedited removal proceedings, but unlike those who are charged as arriving, does not require that they be subject to mandatory detention.

132.  Under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), asylum seekers are subject to mandatory detention only while "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."

133.  Plaintiffs and all BH Class members entered without inspection and were placed in expedited removal proceedings under to 8 U.S.C. § 1225(b). All of them established a credible fear of persecution or torture and were thereafter transferred for full hearings before the immigration court.

134.  As such, under the Immigration and Nationality Act, Plaintiffs are entitled to seek a custody hearing where the Attorney General may grant bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d); 8 C.F.R. § 1003.19(h)(2).

135.  Defendant Barr's decision in *Matter of M-S-* denies Plaintiffs and BH Class members their statutory right to an individualized custody hearing.

## COUNT III
**(Violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5), and Violation of Fifth Amendment Right to Due Process—Failure to Provide an Individualized Parole Hearing)**

136.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

137.    The Immigration and Nationality Act ("INA")provides that the Attorney General "may . . . in his discretion parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A). Under the INA and implementing regulations,

[PROPOSED] THIRD AMENDED COMPL. - 22
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

immigration detention of an asylum seeker must be based on an individualized determination that the asylum seeker constitutes a flight risk or a danger to the community. *See id.*; *see also* 8 C.F.R. § 212.5(b)(5).

138.    Pursuant to implementing regulations, parole reviews are conducted solely by U.S. Immigration and Customs Enforcement ("ICE")—the jailing authority. *See id*.

139.    However, the INA requires an individualized parole hearing before an immigration judge to decide if the asylum seeker constitutes a flight risk or danger to the community.

140.    Defendants' policy and practice of denying Plaintiffs and those similarly situated parole hearings before an immigration judge violates the INA.

141.    To the extent the statute denies parole hearings before an immigration judge, the statute violates due process.

<u>**COUNT IV**</u>
**(Violation of Administrative Procedure Act—Failure to Follow
Notice & Comment Rulemaking)**

142.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

143.  Regulations that currently govern Defendants DHS and EOIR provide that Plaintiffs and BH Class members may seek review of ICE's custody decision before an IJ. *See* 8 C.F.R. §§ 1003.19(h)(2), 1236.1(d).

144.  *Matter of M-S-* is a final agency action that purports to alter those regulations by adjudication, without engaging in notice and comment rulemaking.

145.  The Administrative Procedure Act requires Defendants to engage in notice and comment rulemaking before undertaking the changes that *Matter of M-S-* purports to make to BH Class Members' rights to a bond hearing. *See* 5 U.S.C. §§ 551(5), 553(b) & (c).

146.  As a result, *Matter of M-S-* is unlawful agency action that this Court should set aside because that decision was issued "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## COUNT V
### (Violation of Fifth Amendment Right to Due Process—Delays for Credible Fear Interviews)

147.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

148.  The Due Process Clause guarantees timely and adequate procedures to test Defendants' rationale for detaining asylum seekers.

149.  Defendants' practice of delaying individuals seeking protection credible fear interviews beyond 10 days prevents Plaintiffs Padilla, Guzman, Orantes, and Vasquez, and the CFI Class from demonstrating that they have a "significant possibility" of obtaining protection and a lawful status in the United States. 8 U.S.C. § 1225(b)(1)(B)(v). That practice thus further lengthens their time in detention without the opportunity to appear before a neutral decision maker to receive an individualized custodial assessment.

150.  Defendants' interests do not outweigh the significant risks that delayed credible fear interviews pose in wrongfully prolonging Plaintiffs Padilla, Guzman, Orantes, and Vasquez , and CFI Class members' detention, nor do they outweigh their protected due process interests in timely demonstrating their right to protection in the United States.

151.  Defendants' practice of delaying credible fear interviews therefore violates the CFI Class's right to due process.

## COUNT VI
### (Administrative Procedure Act—Delay of Credible Fear Interviews and Bond Hearings and Denial of Procedural Protections)

152.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

[PROPOSED] THIRD AMENDED COMPL. - 24
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

153.  The Administrative Procedure Act ("APA") imposes on federal agencies the duty to conclude matters presented to them within a "reasonable time." 5 U.S.C. §555(b).

154.  The APA also permits the CFI and BH Classes to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and prohibits final agency action that is arbitrary and capricious, that violates the Constitution, or that is otherwise not in accordance with law, *id.* § 706(2)(A)-(B).

155.  Both credible fear interviews and bond hearings are "discrete agency actions" that Defendants are "required to take," and therefore constitute agency action that a court may compel. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

156.  Defendants' failure to expeditiously conduct a credible fear interview after detaining Plaintiffs and members of the CFI Class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1).

157.  Defendants' failure to promptly conduct a bond hearing for plaintiffs and members of the BH Class within 7 days of a request also constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See id.*

158.  Defendants' policies regarding (1) the burden of proof in bond proceedings, (2) the lack of recordings and transcripts, (3) the failure to provide specific, particularized findings constitute final agency action.

159.  The lack of these procedural protections is contrary to law and violates the constitutional right to due process of noncitizens seeking protection. *See* 5 U.S.C. § 706(2).

## VIII.   **PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment against Defendants granting the following relief on behalf of the Credible Fear Interview Class and the Bond Hearing Class:

A.  Declare that Defendants have an obligation to provide Credible Fear Interview Class members with a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution or torture to any DHS official.

[PROPOSED] THIRD AMENDED COMPL. - 25
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

B. Preliminarily and permanently enjoin Defendants from not providing Credible Fear Interview Class members their credible fear determination within 10 days of requesting asylum or expressing a fear of persecution or torture to any DHS official.

C. Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing before an immigration judge.

D. Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members a bond hearing before an immigration judge.

E. Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their claims for protection.

F. Declare that Defendant DHS must bear the burden of proof to show continued detention is necessary in civil immigration proceedings.

G. Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing with adequate procedural safeguards, including providing a verbatim transcript or recording of their bond hearing upon appeal.

H. Declare that in bond hearings immigration judges must make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

I. Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members their bond hearing within 7 days of the class members' request.

J. Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members bond hearings where Defendant DHS bears the burden of proof to show continued detention is necessary.

K. Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members their bond hearing with a verbatim transcript or recording of their

[PROPOSED] THIRD AMENDED COMPL. - 26
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

bond hearing.

L.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing

Class members specific, particularized written findings contemporaneously issued by

the immigration judge as to the basis for denying release from detention, including

findings identifying the basis for finding that the individual is a flight risk or a danger

to the community.

M.  Order Defendants to pay reasonable attorneys' fees and costs.

N.  Order all other relief that is just and proper.

Dated this 2nd day of May, 2019.

<u>s/ Matt Adams</u>
Matt Adams, WSBA No. 28287
Email:  matt@nwirp.org

Leila Kang, WSBA No. 48048
Email:  leila@nwirp.org

Aaron Korthuis, WSBA No. 53974
Email: aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
*Attorneys for Plaintiffs-Petitioners*


Emily Chiang
WSBA No. 50517
ACLU OF WASHINGTON
901 5th Ave #630
Seattle, WA 98164
(206) 624-2184
echiang@aclu-wa.org

Trina Realmuto*
Kristin Macleod-Ball*

AMERICAN IMMIGRATION COUNCIL
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600
trealmuto@immcouncil.org
kmacleod-ball@immcouncil.org


Judy Rabinovitz**
Michael Tan**
Anand Balakrishnan**

ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org
mtan@aclu.org
abalakrishnan@aclu.org


*Admitted *pro hac vice*
**Applications for *pro hac vice* admissions
forthcoming

[PROPOSED] THIRD AMENDED COMPL. - 27
Case No. 2:18-cv-928 MJP

The Honorable Marsha J. Pechman

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

YOLANY PADILLA;  IBIS GUZMAN; BLANCA
ORANTES; BALTAZAR VASQUEZ;

11

Plaintiffs-Petitioners,

12

v.

13

14

15

16

17

18

19

20

21

22

23

24

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF
HOMELAND SECURITY ("DHS"); U.S. CUSTOMS
AND BORDER PROTECTION ("CBP"); U.S.
CITIZENSHIP AND IMMIGRATION SERVICES
("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW ("EOIR"); ~~THOMAS HOMAN~~MATTHEW
ALBENCE, Acting ~~Deputy~~ Director of ICE; ~~KIRSTJEN
NIELSEN, Secretary of DHS;~~ KEVIN K. McALEENAN,
Acting ~~Secretary of DHS; JOHN SANDERS, Acting~~
Commissioner of CBP; L. FRANCIS CISSNA, Director of
USCIS; ~~MARC J. MOORE,~~ELIZABETH GODFREY,
Acting Director of Seattle Field Office ~~Director~~, ICE;
~~JEFFERSON BEAUREGARD SESSIONS III~~WILLIAM
BARR, United States Attorney General; LOWELL
CLARK, warden of the Northwest Detention Center in
Tacoma, Washington;  CHARLES INGRAM, warden of
the Federal Detention Center in SeaTac, Washington;
DAVID SHINN, warden of the Federal Correctional
Institute in Victorville, California; JAMES JANECKA,
warden of the Adelanto Detention Facility;

No. 2:18-cv-928 -MJP

~~SECOND~~[PROPOSED]
THIRD AMENDED
COMPLAINT:
CLASS ACTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF

25

Defendants-Respondents.

26

[PROPOSED] THIRD AMENDED COMPL.
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## I.   __INTRODUCTION__

1.      Plaintiffs filed this lawsuit on behalf of themselves and other detained individuals seeking protection from persecution and torture, challenging the United States' government's punitive policies and practices seeking to unlawfully deter and obstruct them from applying for protection. This lawsuit initially challenged the legality of the following three parts of the federal government's zero-tolerance policy with respect to persons fleeing for safety and asylum in the United States: (1) family separations, (2) credible fear interviews and determinations, and (3) the related bond hearings.

A.      __Family Separations__

2.      This lawsuit initially included previously challenged challenges to the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum, withholding and protection under the Convention Against Torture ("CAT"). The day after plaintiffs filed this suit in the Western District of Washington, however, Plaintiffs did not pursue those claims after a federal court in the Southern District of California issued a nationwide preliminary injunction Order against this forcible separationforcibly separating families. *Ms. L v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018); *see also* Dkt. 26.(*Ms. L v. ICE*, S.D.Cal. case no. 18cv0428 DMS (MDD), docket no. 83).

3.      With thisIn their Second Amended Complaint, Pplaintiffs reaffirmed that they sought relief on behalf of themselves and members of two proposed classes: (1) the Credible Fear Interview Class, challenging delayed credible fear determinations, and (2) the Bond Hearing Class, challenging delayed bond hearings that do not comport with constitutional requirements. *Id.*confirm that they will not further pursue those claims in this case.

4.      On March 6, 2019, this Court granted Plaintiffs' Motion for Class Certification and certified both the Credible Fear Interview Class and Bond Hearing Class. Dkt. 102 at 2. On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction, ordering that Defendant Executive Office for Immigration Review conduct bond hearings within seven days of

1    request by a Bond Hearing Class members, place the burden of proof at those hearings on

2    Defendant Department of Homeland Security, record the hearings, produce a recording or

3    verbatim transcript upon appeal, and produce a written decision with particularized

4    determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

5         5.      Thereafter, on April 16, 2019, Defendant Attorney General Barr issued *Matter of*

6    *M-S-*, 27 I&N Dec. 509 (A.G. 2018). In this decision, Defendant Barr reversed and vacated

7    *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), holding that the Immigration and Nationality Act

8    (INA) does not permit bond hearings for individuals who enter the United States without

9    inspection, establish a credible fear for persecution or torture, and are then referred for removal

10   proceedings before an immigration judge.

11        6.      Defendants have therefore now adopted a policy that not only denies Plaintiffs

12   and class members the procedural protections they seek, but prevents them from obtaining bond

13   hearings *at all*. Plaintiffs file this Third Amended Complaint to more squarely address this new

14   and even more extreme policy.

15        3.7.    Defendants exacerbate the harm those fleeing persecution have already suffered

16   by needlessly depriving them of their liberty without adequate review. Plaintiffs seek this Court's

17   intervention to ensure both that Defendants do not interfere with their right to apply for

18   protection by delaying Plaintiffs' credible fear interviews and by subjecting them to lengthy

19   detention without prompt bond hearings that comport with the Due Process Clause.

20   B.     Credible Fear Interviews & Determinations

21        4.      This lawsuit challenges the legality of the government's policy or practice of

22   excessively prolonging the detention of asylum seekers placed in expedited removal proceedings

23   by failing to promptly provide them their credible fear interview and determination.  Federal law

24   requires that persons who have asked for asylum or expressed a fear of persecution must be

25   scheduled for a "credible fear interview" with a DHS official to determine whether that person

26   should be allowed to proceed with applying for asylum because he or she has a credible fear of

[PROPOSED] THIRD AMENDED COMPL. - 2
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

persecution.  If the interviewer determines the asylum seeker does have a credible fear of

persecution, the government assigns the case to the federal immigration court for hearings to

adjudicate the merits of that person's asylum claim.  If the interviewer determines the asylum

seeker does not have a credible fear of persecution, the asylum seeker can appeal that

determination to a federal immigration judge.  But in either case, the federal government detains

the asylum seeker until it determines that she or he has a credible fear of persecution.  The *Ms. L*

*v. ICE* Order did not address the federal government's lengthy delays in conducting these

statutorily required credible fear interviews and or determinations.

**C.     Bond Hearings**

5.     This lawsuit also challenges the legality of the government's related policy or

practice of excessively prolonging the detention of asylum seekers by failing to promptly

conduct the bond hearings required by federal law after an asylum seeker's positive completion

of their credible fear interview.  Federal law requires that if an asylum seeker enters the United

States at a location other than a designated "Port Of Entry" and is determined to have a credible

fear of persecution in his or her credible fear interview, that asylum seeker is entitled to an

individualized bond hearing before an immigration judge to determine reasonable conditions for

that person's release from federal detention while he or she awaits the many months it takes to

adjudicate his or her asylum claim (e.g., a reasonable bond amount or parole without posting a

monetary bond).  This bond hearing must comport with constitutional requirements.  Yet the

government does not establish any timeline for setting this hearing, and as a matter of practice,

does not even audio record or provide a transcript of this hearing for appeal or appellate review

(unlike other hearings in removal proceedings before the immigration judge). The government

also places the burden on asylum seekers to demonstrate in the bond hearing that they should not

continue to be detained throughout the lengthy immigration proceedings.  When an immigration

judge denies bond, the immigration judge routinely fails to make specific findings but instead

simply checks a box on a template order. The *Ms. L v. ICE* Order did not address the federal

[PROPOSED] THIRD AMENDED COMPL. - 3
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    government's failure to conduct prompt bond hearings that comport with constitutional

2    requirements.

3    **D.     United States Constitution**

4           6.      The Bill of Rights prohibits the federal government from depriving any person of

5    their liberty without due process of law (U.S. Constitution, 5th Amendment).

6           7.      Asylum seekers who cross the United States border are persons.  They

7    accordingly have a constitutionally protected liberty interest in (1) not being imprisoned for an

8    unreasonable time awaiting their credible fear interview and determination and (2) not being

9    imprisoned without the opportunity for a prompt bond hearing that comports with constitutional

10   requirements.  And especially with respect to the federal government's avowed policy or practice

11   to deter criminal violations of federal immigration laws, asylum seekers also have a

12   constitutionally protected interest in (3) not being subjected to prolonged imprisonment for

13   deterrence or penalty reasons unrelated to adjudicating the merits of their individual asylum

14   claim.

15          8.      With this Second Amended Complaint, plaintiffs specify with more particularity

16   how defendants' implementation of the federal government's policies and practices with respect

17   to persons fleeing for safety and seeking asylum in the United States violates the United States

18   Constitution.

19   **E.     Federal Law**

20          9.      Federal law prohibits final agency action that is arbitrary, capricious, unlawfully

21   withheld, or unreasonably delayed (e.g., Administrative Procedures Act, 5 U.S.C. §706).  Federal

22   law also grants persons fleeing persecution the right to apply for safety and asylum in the United

23   States (e.g., 8 U.S.C. §§ 1225 & 1158; 8 C.F.R. §§ 235.3, 208.30, & 1003.42).

24          10.     Federal law accordingly prohibits federal agencies from arbitrarily or capriciously

25   depriving an asylum seeker of their child, their prompt credible fear interview and determination,

26   or their prompt bond hearing.  Federal law prohibits federal agencies from unlawfully

[PROPOSED] THIRD AMENDED COMPL. - 4
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  withholding or unreasonably delaying an asylum seeker's reunification with their child, an

2  asylum seeker's credible fear interview and determination, or an asylum seeker's bond hearing.

3  And federal law prohibits federal agencies from impeding or seeking to deter an asylum seeker's

4  legal right to apply for asylum.

5       11.   With this Second Amended Complaint, plaintiffs specify with more particularity

6  how defendants' implementation of the federal government's policies and practices with respect

7  to persons fleeing for safety and asylum in the United States violates federal law.

8  **F.**    **Requested Relief**

9       12.   With respect to (1) credible fear interviews and determinations and (2) the related

10  bond hearings, plaintiffs request injunctive relief requiring defendants to cease their policies and

11  practices implementing the federal government's policy or practice in violation of the United

12  States Constitution and federal law.  Plaintiffs request declaratory relief to terminate the parties'

13  disagreement with respect to whether (and how) defendants' implementation of the federal

14  government's policies or practices with respect to persons fleeing for safety and asylum in the

15  United States violates the United States Constitution and federal law.  Lastly, plaintiffs request

16  whatever additional relief this Court finds warranted, just, or equitable.

17  **II.**    **JURISDICTION**

18       13.8.   This case arises under the Fifth Amendment of the United States Constitution, and

19  the Administrate ProceduresAdministrative Procedure Act ("APA"), and federal asylum statutes.

20  "). This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction);

21  28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States

22  Constitution ("Suspension Clause").  Defendants have waived sovereign immunity pursuant to 5

23  U.S.C. § 702.

24       14.   The original plaintiffs in this case were allPlaintiffs Yolany Padilla, Ibis Guzman,

25  and Blanca Orantes  were in custody for purposes of habeas jurisdiction when this action was

26  filed on June 25, 2018.

[PROPOSED] THIRD AMENDED COMPL. - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

~~15.~~9.   ~~After this action was filed, plaintiffs Padilla, Orantes, and Guzman were~~ ~~eventually released from~~ Moreover, Plaintiffs remain in custody as they are in ongoing removal proceedings and subject to re-detention ~~after they were eventually provided a credible fear interview and individualized bond hearings before an immigration judge.  At the time this Second Amended Complaint is electronically filed on August 22, 2018, plaintiff Vasquez is still in custody for purposes of habeas jurisdiction.  .~~

7

8

9

10

11

~~16.~~10.   ~~At~~Plaintiffs Guzman, Orantes, and Vasquez were in custody for purposes of habeas jurisdiction when the ~~time this Second~~First Amended Complaint ~~is~~was electronically ~~filed~~submitted on ~~August 22~~July 15, 2018~~, all the children that the federal government took away from plaintiffs have been returned to their mothers after approximately two months of being separated.~~.

12

### III.   VENUE

13

14

15

16

17

18

19

20

21

~~17.~~11.   Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of the relevant facts occurred within this District. ~~ ~~Those facts include ~~defendants'~~Defendants' detention of ~~plaintiffs~~Plaintiffs Padilla, Guzman, and Orantes in this District ~~while forcibly separated from their children,~~; Defendants' failure in this District to promptly conduct ~~a~~credible fear ~~interview~~interviews and ~~determination~~determinations for ~~their asylum~~Plaintiffs and class members' claims~~, and~~ for protection in the United States; and Defendants' failure in this District to promptly conduct bond hearings that comport with ~~constitutional requirements to set reasonable conditions for release pending adjudication of their asylum claims~~due process and the Administrative Procedure Act.

22

### IV.   PARTIES

23

24

25

~~18.~~12.   Plaintiff Yolany Padilla is ~~a human being~~citizen of Honduras seeking asylum, withholding, and protection under CAT for herself and her 6~~-~~-year~~-~~old son (J.A~~.~~).) in the United States. ~~ She is a citizen of Honduras.~~

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

19.13.  Plaintiff Ibis Guzman is a ~~human being~~citizen of Honduras seeking asylum, withholding, and protection under CAT for herself and her 5-~~-~~year-~~-~~old son (R.G.) in the United States. ~~She is a citizen of Honduras.~~

20.14.  Plaintiff Blanca Orantes is a ~~human being~~citizen of El Salvador seeking asylum, withholding, and protection under CAT for herself and her 8-~~-~~year-~~-~~old son (A.M.) in the United States. ~~She is a citizen of El Salvador.~~

21.15.  Plaintiff Baltazar Vasquez is a ~~human being~~citizen of El Salvador seeking asylum, withholding, and protection under CAT in the United States. ~~He is a citizen of El Salvador.~~

~~22.1.    Defendant U.S. Immigration and Customs Enforcement ("ICE") is the federal government agency that carries out removal orders and oversees immigration detention.  ICE is part of DHS.  ICE's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings on the merits before the immigration court.  ICE's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.~~

16.    Defendant U.S. Department of Homeland Security ("DHS") is the federal government agency responsible for enforcing U.S. immigration law. Its component agencies include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").~~that enforces immigration laws of the United States.  DHS's responsibilities include determining whether an asylum seeker will be released and how soon his or her case will be submitted for a credible fear interview and subsequent proceedings before the immigration court.  DHS's local field office in Tukwila, Washington, is responsible for determining whether plaintiffs detained in Washington will be released, and how soon their cases will be submitted for credible fear interview and subsequent proceedings before the immigration court.~~

[PROPOSED] THIRD AMENDED COMPL. - 7
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  ~~23.~~17.  Defendant ~~U.S. Immigration and Customs Enforcement ("ICE")~~ ICE ~~is the federal~~

2  ~~government agency that~~ carries out removal orders and oversees immigration detention. ~~ICE is~~

3  ~~part of DHS.~~ ICE's responsibilities include determining whether individuals seeking protection

4  ~~an asylum seeker~~ will be released and ~~how soon his or her case will be submitted~~referring cases

5  for a credible fear interview and subsequent proceedings ~~on the merits~~before the immigration

6  court.~~.~~ ICE's local field office in Tukwila, Washington, is responsible for determining whether

7  individuals detained in Washington will be released, and ~~how soon~~when their cases will be

8  submitted for credible fear interviews and subsequent proceedings before the immigration court.

9  ~~24.~~18.  Defendant ~~U.S. Customs and Border Protection ("CBP")~~ ~~is the federal~~

10  ~~government agency that~~ conducts the initial processing and detention of individuals seeking

11  protection at or near ~~asylum seekers crossing~~ the U.S. border. ~~CBP is part of DHS.~~ CBP's

12  responsibilities include determining whether individuals seeking protection ~~an asylum seeker~~

13  will be released and ~~how soon his or her~~when their cases will be submitted for a credible fear

14  interview ~~and determination~~.

15  ~~25.~~19.  Defendant ~~U.S. Citizenship and Immigration Services ("USCIS") is the federal~~

16  ~~government agency that~~, through its asylum officers, interviews and screens individuals seeking

17  protection~~asylum seekers~~ to determine whether to refer their protection claim~~they should be~~

18  ~~assigned~~ to the immigration court to adjudicate any application for asylum, withholding of

19  removal, or protection under CAT.~~the immigration court to be allowed to proceed with applying~~

20  ~~for asylum because they have a credible fear of persecution.  USCIS is a part of DHS.~~

21  ~~26.~~20.  Defendant Executive Office for Immigration Review ("EOIR") is ~~the~~a federal

22  government agency within the Department of Justice that includes the immigration courts and

23  the Board of Immigration Appeals ("BIA"). It is responsible for conducting removal

24  proceedings, including adjudicating applications for asylum, withholding, and protection under

25  CAT, ~~plaintiffs' asylum claims in removal proceedings~~ and for conducting individual bond

26

[PROPOSED] THIRD AMENDED COMPL. - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  hearings for persons in ~~removal proceedings.  EOIR is a part of the Department of~~
2  ~~Justice~~immigration custody.

3      ~~27.~~21.   Defendant ~~Thomas Homan~~Matthew Albence is sued in his official capacity as the
4  Acting Deputy Director of ICE, and is a legal custodian of ~~plaintiff Vasquez and putative~~ class
5  members.

6      ~~28.~~22.   Defendant ~~Marc J. Moore~~Elizabeth Godfrey is sued in ~~his~~ her official capacity as
7  the ICE Seattle Field Office Director, and is, or was, a legal custodian of ~~detained~~ the named
8  plaintiffs.

9      ~~29.~~23.   Defendant Kevin K. McAleenan~~Kirstjen Nielsen,~~ is sued in ~~her official~~his official
10  capacity as the Acting Secretary of DHS.  In this capacity, ~~s~~he directs DHS, ICE, CBP, and
11  USCIS.~~.~~ As a result, ~~defendant~~ Defendant McAleenan~~Nielsen has responsibility~~is responsible for
12  the administration of immigration laws pursuant to 8 U.S.C. §_1103 and is, or was, a legal
13  custodian of ~~detained plaintiffs~~the named plaintiffs.

14      ~~30.~~24.   Defendant ~~Kevin K. McAleenan~~John Sanders is sued in his official capacity as
15  the Acting Commissioner of CBP.

16      ~~31.~~25.   Defendant L. Francis Cissna is sued in his official capacity as the Director of
17  USCIS.

18      ~~32.~~26.   Defendant ~~Jefferson Beauregard Sessions III~~ William Barr is sued in his official
19  capacity as the United States Attorney General.  In this capacity, he directs agencies within the
20  United States Department of Justice, including EOIR.  Defendant ~~Sessions~~ Barr ~~has~~ is
21  ~~responsibility~~ responsible for the administration of immigration laws pursuant to 8 U.S.C. §1103
22  ~~and~~, oversees ~~defendant~~ Defendant EOIR~~, and is empowered to grant asylum or other relief,~~
23  ~~including custody determinations made for persons in removal proceedings~~.

24      ~~33.~~27.   Defendant ~~Lowell Clark~~Steven Langford is sued in his official capacity as the
25  warden of the Northwest Detention Center in Tacoma, Washington.

26

[PROPOSED] THIRD AMENDED COMPL. - 9
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

34.28.  Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

35.29.  Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

36.30.  Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.    FACTS

### Legal Background

31.    In 1996, Congress created an expedited removal system and "credible fear" process. 8 U.S.C. § 1225 *et seq.* As enacted by Congress, the expedited removal system involves a streamlined removal process for individuals apprehended at or near the border. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (permitting certain persons who are seeking admission at the border of the United States to be expeditiously removed without a full hearing); 8 U.S.C. § 1225(b)(1)(A)(iii) (authorizing the Attorney General to apply expedited removal to certain inadmissible noncitizens located within the United States); 69 Fed. Reg. 48,877 (Aug. 11, 2004) (providing that the Attorney General will apply expedited removal to persons within the United States who are apprehended within 100 miles of the border and who are unable to demonstrate that they have been continuously physically present in the United States for the preceding 14-day period).

32.    Critically, however, Congress included safeguards in the statute to ensure that those seeking protection from persecution or torture are not returned to their countries of origin. Recognizing the high stakes involved in short-circuiting the formal removal process and the constitutional constraints under which it operates, Congress created specific procedures with detailed requirements for handling claims for protection.

33.    The expedited removal process begins with an inspection by an immigration officer, who determines the individual's admissibility to the United States. If the individual indicates either an intention to apply for asylum or any fear of return to their country of origin,

[PROPOSED] THIRD AMENDED COMPL. - 10
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

the officer must refer the individual for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. § 235.3(b)(4).

34.     If an asylum officer determines that an applicant satisfies the credible fear standard—meaning there is a "significant possibility" she is eligible for asylum, 8 U.S.C. § 1225(b)(1)(B)(v)—the applicant is taken out of the expedited removal system altogether and placed into standard removal proceedings under 8 U.S.C. § 1229a.

35.     During § 1229a removal proceedings, the applicant has the opportunity to develop a full record before an immigration judge ("IJ"), apply for asylum, withholding of removal, protection under CAT, and any other relief that may be available, and appeal an adverse decision to the BIA and court of appeals. 8 C.F.R. §§ 208.30(f), 1003.43(f) and 1208.30; *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

36.     Until the asylum officer makes the credible fear determination, an applicant in expedited removal proceedings is subject to mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(4)(ii).

37.     Defendants have a policy or practice of delaying the provision of credible fear interviews to asylum seekers who express a fear of return, and thus unnecessarily prolonging their mandatory detention.

38.     Until recently, BIA case law recognized that noncitizens who were apprehended after entering without inspection and placed in removal proceedings after passing their credible fear interviews are entitled to bond hearings. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (issued April 16, 2019, but effective date stayed until July 15, 2019), (interpreting bond regulations at 8 C.F.R. §§ 1003.19(h)(2) and 1236.1).

39.     Defendants' policy and practice, however, has been both to deny timely bond hearings and to require the noncitizens, rather than the government, to bear the burden of proving at these bond hearings that continued detention is not warranted. These bond hearings have also

[PROPOSED] THIRD AMENDED COMPL. - 11
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

lacked procedural safeguards such as a verbatim transcript or audio recording, and a contemporaneous written decision explaining the IJ's findings.

40.     Traditionally, those asylum seekers in § 1229a removal proceedings who are not deemed "arriving"—that is, those who were apprehended near the border *after* entering without inspection, as opposed to asylum seekers who are detained at a port of entry—become entitled to an individualized bond hearing before an IJ to assess their eligibility for release from incarceration once they have been found to have a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1225(b)(1)(B)(iii)(IV); 8 C.F.R. §§ 208.30(f), 1236.1(d).

41.     In 2005, Defendant EOIR reaffirmed the availability of bond hearings for this group of asylum seekers. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019). *See also* 8 C.F.R. § 1003.19(h)(2).

42.     At the bond hearing, an IJ determines whether to release the individual on bond or conditional parole pending resolution of her immigration case. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 1236.1(d)(1), 1003.19. In doing so, the IJ evaluates whether they pose a danger to the community and the likelihood that they will appear at future proceedings. *See Matter of Adeniji*, 22 I&N Dec. 1102, 1112 (BIA 1999).

43.     The detained individual has the right to appeal an IJ's denial of bond to the BIA, 8 C.F.R. § 1003.19(f), or to seek another bond hearing before an immigration judge if they can establish a material change in circumstances since the prior bond decision, 8 C.F.R. § 1003.19(e).

44.     Defendant EOIR places the burden of proving eligibility for release on the detained noncitizen seeking bond, not the government. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

45.     Immigration courts do not require recordings of bond proceedings and do not provide transcriptions of the hearing, or even the oral decisions issued in the hearings. Immigration courts also do not issue written decisions unless the individual has filed an

[PROPOSED] THIRD AMENDED COMPL. - 12
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    administrative appeal of the bond decision. *See, e.g.*, Imm. Court Practice Manual § 9.3(e)(iii),
2    (e)(vii); BIA Practice Manual §§ 4.2(f)(ii), 7.3(b)(ii).

3         46.     When an IJ denies release on bond or other conditions, she does not make
4    specific, particularized findings, and instead simply checks a box on a template order.

5         47.     On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction
6    and ordered that Defendant EOIR implement key procedural safeguards. In particular, the Court
7    required EOIR to conduct bond hearings within seven days of request by Bond Hearing Class
8    members, place the burden of proof at those hearings on Defendant DHS, record the hearings,
9    produce a recording or verbatim transcript upon appeal, and produce a written decision with
10   particularized determinations of individualized findings at the conclusion of each bond hearing.
11   Dkt. 110 at 19.

12                    **The Attorney General's Decision in *Matter of M-S-***

13        48.     On October 12, 2018—approximately two months after Plaintiffs filed their
14   amended complaint raising the bond hearing class claims, and around six months before this
15   Court issued its preliminary injunction—former Attorney General Sessions referred to himself a
16   pro se case seeking to review whether "*Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) . . . should
17   be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." *Matter of M-G-G-*, 27
18   I&N Dec. 469, 469 (A.G. 2018); *see also  Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018).

19        49.     On November 7, 2018, former Defendant Sessions resigned as Attorney General.

20        50.     Subsequently, on February 14, 2019, Attorney General Barr was confirmed by the
21   Senate.

22        51.     On April 16, 2019, Defendant Barr issued *Matter of M-S-*, 27 I. & N Dec. 509
23   (A.G. 2018). In this decision, Defendant Barr reversed and vacated *Matter of X-K-*, 23 I&N Dec.
24   731 (BIA 2005), holding the Immigration and Nationality Act (INA) does not permit bond
25   hearings for individuals who enter the United States without inspection, establish a credible fear

26

[PROPOSED] THIRD AMENDED COMPL. - 13
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

for persecution or torture, and are then referred for full removal hearings before the immigration court.

52.     Although existing regulations provide for bond hearings except in limited circumstances not applicable here, Defendant Barr did not formally rescind or modify the regulations or engage in the required rulemaking process.

53.     Defendant Barr stayed the effective date of his decision for 90 days so that DHS may conduct the "necessary operational planning for additional detention and parole decisions" that will result from the elimination of IJ bond hearings. *Matter of M-S-*, 27 I&N Dec. at 519 n.8.

54.     Under *Matter of M-S-* , asylum seekers will be restricted to requesting release from ICE—the jailing authority—through the parole process. 27 I&N Dec. at 516-17 (citing 8 U.S.C. § 1182(d)(5)). In contrast to a bond hearing before an immigration judge, the parole process consists merely of a custody review conducted by low-level ICE detention officers. *See* 8 C.F.R. § 212.5. It includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See id*. Instead, ICE officers make parole decisions—that can result in months or years of additional incarceration—by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation.

55.     In *Matter of M-S-*, Defendant Barr also ordered that the noncitizen in that case, who had previously been released on bond, "must be detained until his removal proceedings conclude" unless DHS chooses to grant him parole. *Matter of M-S-*, 27 I&N Dec. at 519.

56.     Pursuant to *Matter of M-S-*, Defendants will initiate a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection, even after being found to have a credible fear of persecution or torture and even after their cases are transferred for full hearings before the immigration court.

[PROPOSED] THIRD AMENDED COMPL. - 14
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    ~~G.        Seeking Asylum~~

2

3           ~~37.      Federal law allows a person to seek asylum in the United States.~~

4           ~~38.      Plaintiffs are persons seeking asylum in the United States.~~

**Plaintiff Yolany Padilla**

5

6    ~~39.~~57.  ~~Plaintiff~~ Yolany Padilla is a citizen of Honduras seeking asylum in the United

7    States for herself and her 6-year-old son J.A. ~~are asylum seekers who fled physical danger and~~

8    ~~persecution in Honduras.~~

9           58.     On or about May 18, 2018, Ms. Padilla and J.A. entered the United States. As

10   they were making their way to a nearby port of entry, they were arrested by a Border Patrol agent

11   for entering without inspection. ~~plaintiff Yolany Padilla and her 6-year-old son J.A crossed the~~

12   ~~U.S.-Mexico border.  They were arrested by a CBP agent as they were making their way to the~~

13   ~~closest Port Of Entry.  She informed the CBP agent that they were seeking asylum.~~

14          59.     When ~~plaintiff~~ **Yolany Padilla** ~~and her 6-year-old son J.A were taken into~~

15   ~~custody,~~ When they arrived at the port of entry, an officer there ~~a federal agent promptly~~

16   announced ~~that Yolany Padilla's~~to her and the rest of the group that the adults and children were

17   going to be separated. The children old enough to understand the officer began to cry.  ~~son would~~

18   ~~be taken away from her.  Her 6-year-old son~~ J.A. clutched his mother's shirt and said, "No,

19   mommy, I don't want to go." ~~She~~ Ms. Padilla reassured her son that any separation would be

20   short, and that everything would be okay. She was able to stay with her son ~~as~~until they were

21   transferred later that day to a holding facility ~~to one of the federal detention buildings that~~

22   ~~detainees commonly refer to~~known as ~~"the~~a *hielera*, or freezer, ~~"~~ ("the freezer")  because of

23   ~~its~~the freezing ~~cold~~ temperatures of the rooms. ~~Once they arrived, Yolany Padilla's 6-year-old~~

24   ~~son was~~Ms. Padilla and J.A. were then forcibly ~~taken away from her~~separated without

25   explanation.

26          60.     While detained in the *hielera*, Ms. Padilla informed the immigration officers that

     she and her son were afraid to return to Honduras.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

61.    About three days later, ~~Yolany~~ Ms. Padilla was ~~then~~ transferred to another ~~federal~~ facility in Laredo, Texas ~~about three days later~~.  The ~~federal~~ officers in that facility took her son's birth certificate from her. ~~-~~When she asked for it back, she was told that the immigration authorities had it.  ~~No one has returned her son's birth certificate to her.~~

62.    About twelve days later, ~~Yolany~~Ms. Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

63.    For many weeks after J.A. was forcibly taken from her, ~~Despite repeated inquiries into her son's whereabouts, Yolany~~ Ms. Padilla ~~was not provided any~~received no information ~~about her son~~regarding his whereabouts despite repeated inquiries. ~~until about~~Around a month into her detention, ~~when~~the Honduran consul visited Ms. Padilla at the detention center, and she explained she had no news of her 6-year-old son.  Soon thereafter, she was given a piece of paper stating that J.A. was ~~saying her son had been put~~in a place called "Cayuga Center" in New York, thousands of miles away.  ~~That piece of paper also had a phone number, but she was not able to call her son that day because she did not have money to make a long distance phone call.~~

64.    On July 2, 2018, more than six weeks after being apprehended and detained, Ms. Padilla was given a credible fear interview. The asylum officer issued a positive credible fear determination, and she was placed in removal proceedings.

65.    On July 6, 2018, Ms. Padilla attended her bond hearing before the immigration judge. During the bond hearing, the immigration judge placed the burden of proof on Ms. Padilla to demonstrate that she is neither a danger nor flight risk. To her knowledge, there is no verbatim transcript or recording of her bond hearing. The immigration judge set a bond amount of $8,000.

66.    Ms. Padilla was released on July 6, 2018, after posting bond.

67.    Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

~~40.~~    **Plaintiff Ibis Guzman**

~~41.~~68.  ~~Plaintiff~~Ibis Guzman is a citizen of Honduras seeking asylum in the United States for herself and her 5-year-old son R.G. ~~are asylum seekers who fled physical danger and persecution in Honduras.~~

69.     On or about May 16, 2018, ~~plaintiff Ibis~~Ms. Guzman and ~~her 5-year-old son~~R.G. ~~crossed the U.S.-Mexico border~~entered the United States. When t~~T~~hey were ~~arrested~~ apprehended by ~~a CBP~~Border Patrol agent~~s~~ for entering without inspection, Ms. Guzman~~.  She~~ informed ~~the CBP agent~~them that ~~they were~~she and R.G. are seeking asylum.

70.     After initial questioning, an officer came and ~~One CBP agent questioned Ibis Guzman, and another CBP agent~~ forcibly took ~~her son~~R.G. from Ms. Guzman, falsely informing her ~~away stating~~she would ~~see her son again in three days~~be able to see him again in three days~~.~~, After those three days, ~~Ibis~~Ms. Guzman was transferred to ~~a different~~another CBP facility, where officers ~~in Texas.  When she asked the federal agents there about the reunification with her son that the CBP agent had promised, they~~, told her they did not know anything about her son's whereabouts.

71.     ~~Ibis~~Ms. Guzman was then transferred to ~~another federal~~a facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her ~~5-year-old son~~ child and without any means to contact him.  She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ms. Guzman was transferred to the Federal Detention Center in SeaTac, Washington. After being held there for about another week, she was finally informed her child had been placed with Baptist Child and Family Services in San Antonio, Texas, thousands of miles from where she was being held.

73.     On June 20, 2018, Ms. Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

74.     On June 27, 2018, over a month after being apprehended and detained, Ms. Guzman attended a credible fear interview. The asylum officer determined that she has a credible fear, and she was placed in removal proceedings.

75.     On July 3, 2018, Ms. Guzman attended a bond hearing before immigration judge. At the bond hearing, the immigration judge placed the burden of proof on Ms. Guzman to demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration judge issued an order denying her release on bond pending the adjudication of her asylum claim on the merits. The immigration judge did not make specific, particularized findings for the basis of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order. To her knowledge, there is no verbatim transcript or recording of her bond hearing.

76.     Ms. Guzman was not released until on or about July 31, 2018, after the government was ordered to comply with the preliminary injunction in *Ms. L v. ICE.*

### 42.   **Plaintiff Blanca Orantes**

43.77.  Plaintiff Blanca Orantes is a citizen of El Salvador seeking asylum in the United States for herself and her 8-year-old son A.M. are asylum seekers who fled physical danger and persecution in El Salvador.

78.     On or about May 21, 2018, plaintiff BlancaMs. Orantes and her 8-year-old son A.M. crossed the U.S.-Mexico borderentered the United States. They immediately walked to the a CBP station to request asylum, and were subsequently arrested by a CBP agentfor entering without inspection. SheMs. Orantes informed the CBP a Border Patrol agent that they wereshe and A.M. are seeking asylum.

79.     CBP transported plaintiff Blanca Ms. Orantes and her 8-year-old son A.M. son were transported to a federal detention facility in TexasCBP facility. Before entering the building, CBPthe officers agents led BlancaMs. Orantes into a *hielera* with other adults, one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer")

[PROPOSED] THIRD AMENDED COMPL. - 18
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   because of its cold temperatures, and took her 8-year-old son into another part of that detention

2   facility the station with other children.

3        80.     While a CBP agent was later interviewing Blanca Ms. Orantes was later

4   interviewed by an immigration officer. At that time, another agent officer brought her 8-year-old

5   son A.M. to her and told her to "say goodbye" to him because they were being separated.  Her

6   8-year-old son A.M. began crying and pleading for his mom Ms. Orantes not to leave him, but

7   was forcibly taken away from Ms. Orantes.

8        81.     On or around May 24, 2018, Blanca Ms. Orantes was handcuffed and taken to

9   court, where .  She she pled guilty to improper entry under 8 U.S.C. § 1325 and was sentenced to

10  time served. -She was then returned to her cell.

11       82.     About nine days later after this, Blanca Ms. Orantes was transported to the

12  Federal Detention Center in SeaTac, Washington.

13       83.     The federal government did Ms. Orantes was not provided Blanca Orantes any

14  information about her 8-year-old son child until June 9, 2018, when an ICE officer handed her a

15  slip of paper saying advising that her son was being held at place called "Children's Home of

16  Kingston," in Kingston, New York.

17       84.     On June 20, 2018, Ms. Blanca Orantes was transferred to the Northwest Detention

18  Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by

19  telephone still thousands of miles away from her son.

20       85.     On June 27, 2018, around five weeks after being apprehended, Ms. Orantes was

21  given a credible fear interview. The following day, June 28, 2018, the asylum officer determined

22  that Ms. Orantes established a credible fear, and she was placed in removal proceedings.

23       86.     Ms. Orantes requested a bond hearing upon being provided the positive credible

24  fear determination.

25       87.     On July 16, 2018, Ms. Orantes was given a bond hearing before the immigration

26  court. At the bond hearing, the immigration judge placed the burden of proof on Ms. Orantes to

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration

2  judge issued an order denying her release on bond pending the adjudication of her asylum claim

3  on the merits.

4     88.    In denying Ms. Orantes's request for a bond, the immigration judge did not make

5  specific, particularized findings for the basis of the denial, and even failed to check the box

6  indicating why she was denied bond on the template order.

7     89.    She was released from custody on or about July 23, 2018, after the federal

8  government was forced to comply with the preliminary injunction in *Ms. L. v. ICE*, and

9  thereafter reunited her with her child.

10                        ~~44.~~   **Plaintiff Baltazar Vasquez**

11  ~~45.~~90.  Plaintiff Baltazar Vasquez is a citizen of El Salvador seeking asylum in the

12  United States~~an asylum seeker who fled physical danger and persecution in El Salvador~~.

13     91.    On or about June 1, 2018, ~~Baltazar~~ Mr. Vasquez ~~crossed the U.S. Mexico~~

14  ~~border~~entered the United States.  He was arrested by a ~~CBP agent~~Border Patrol agent for

15  entering without inspection, and informed the ~~CBP~~ agent that he was afraid to return to El

16  Salvador and wanted to ~~seek~~ing asylum.

17     92.    Mr. Vasquez was first transported by officers to a federal holding center near San

18  Diego, California. Around nine days later, he was transferred to a Federal Detention Center in

19  Victorville, California.

20     93.    On or about July 20, 2018, Mr. Vasquez was transferred to another detention

21  center in Adelanto, California.

22     94.    On or about July 31, 2018, nearly two months after he was first apprehended, Mr.

23  Vasquez was given a credible fear interview. The asylum officer determined he had a credible

24  fear, and he was placed in removal proceedings.

25     95.    Mr. Vasquez requested a bond hearing upon being provided the positive credible

26  fear determination.

[PROPOSED] THIRD AMENDED COMPL. - 20
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

96.     On August 20, 2018, Mr. Vasquez was given a bond hearing before the immigration court. At the bond hearing, Mr. Vasquez had the burden to prove that he is neither a danger or flight risk, but ultimately, DHS agreed to stipulate to a bond amount of 8,000 dollars. The immigration judge approved this agreement but also required Mr. Vasquez to wear an ankle monitor.

46.97.  Pursuant to *Matter of M-S-*, Mr. Vasquez now faces the prospect of being re-detained without a bond hearing.

**H.     Defendants' Zero-Tolerance Policy or Practice**

47.     Defendant Sessions made an announcement about the federal government's "Zero-Tolerance Policy" on April 6, 2018, *See* https://www.justice.gov/opa/pr/attorney-general-announces-zero-tolerance-policy-criminal-illegal-entry.

48.     The federal government's zero-tolerance policy was designed to be a coordinated effort to deter asylum seekers entering the country and exercising their right to apply for asylum by criminally prosecuting them, forcibly separating them from their children, and imposing prolonged, uncertain imprisonment (euphemistically called "detention") on them.

49.     The federal government's zero-tolerance policy has been implemented against asylum seekers who enter the country without inspection requesting asylum.

50.     The federal government's zero-tolerance policy has also been implemented against asylum seekers who appear at a Port Of Entry to request asylum.

**I.     Promptly Taking Children Away From Parents Seeking Asylum**

51.     One part of the federal government's zero-tolerance policy or practice was to promptly take children away from parents seeking asylum in the United States.

52.     The federal government would send the parent and child to separate federal detention facilities – often in different states thousands of miles away from each other.

[PROPOSED] THIRD AMENDED COMPL. - 21
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

53.     A child's forced separation from a parent causes the child severe trauma.  This damage is even worse for children who are already traumatized from fleeing danger and persecution in their home country.  The cognitive and emotional damage caused by a child's forced separation from a parent can be permanent.

54.     A parent's forced separation from their child is also deeply damaging to the parent.  This damage is even worse for parents who are already traumatized from fleeing danger and persecution in their home country, are given little to no information regarding the well-being or whereabouts of their child, and fear they may never see their child again.

55.     The federal government promptly took children away from parents seeking asylum in the United States without any demonstration in a hearing that that parent is unfit or presents any danger to the child.

56.     The federal government promptly took children away from parents seeking asylum in the United States without any evidence or accusation that the parent seeking asylum is an unfit parent, or presents a danger to the child, or is not acting in the child's best interest, or is a threat to the child's safety, or abused the child, or neglected the child.

57.     The federal government promptly took children away from parents seeking asylum in the United States to penalize and deter persons from seeking asylum.

58.     The federal government promptly took children away from parents seeking asylum in the United States as part of its zero-tolerance policy against criminal violations of federal immigration laws.

59.     Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes are parents who sought asylum and were (1) detained in immigration custody by defendants in Washington State and (2) separated from a minor child by defendants without any demonstration in a hearing that that parent is unfit or presents a danger to the child.

60.     When plaintiff **Yolany Padilla** and her 6-year-old son J.A were taken into custody, a federal agent promptly announced that Yolany Padilla's son would be taken away

from her.  Her 6-year-old son clutched his mother's shirt and said, "No, mommy, I don't want to go."  She reassured her son that any separation would be short, and that everything would be okay.  She was able to stay with her son as they were transferred to one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.  Once they arrived, Yolany Padilla's 6-year-old son was forcibly taken away from her without explanation.

61.     Yolany Padilla's 6-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

62.     Yolany Padilla was then transferred to another federal facility in Laredo, Texas about three days later.  The federal officers in that facility took her son's birth certificate from her.  When she asked for it back, she was told the immigration authorities had it.  No one has returned her son's birth certificate to her.

63.     About twelve days later, Yolany Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

64.     Despite repeated inquiries into her son's whereabouts, Yolany Padilla was not provided any information about her son until about a month into her detention, when the Honduran consul visited the detention center and she explained she had no news of her son.  Soon thereafter she was given a piece of paper saying her son had been put in a place called "Cayuga Center" in New York.  That piece of paper also had a phone number, but she was not able to call her son that day because she did not have money to make a long distance phone call.

65.     The next day, someone gave Yolany Padilla the opportunity to call her son for about ten minutes.  Her 6-year-old son mostly cried quietly.

[PROPOSED] THIRD AMENDED COMPL. - 23
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

66.     Yolany Padilla was not released from federal imprisonment until July 6, 2018, after an immigration judge finally granted her a bond.

67.     Yolany Padilla's 6-year-old son was not released from federal imprisonment until July 14, 2018.  That was almost two months after the federal government forcibly took him away from his mom.

68.     CBP transported plaintiff **Ibis Guzman** and her 5-year-old son R.G. to one of the federal detention buildings in Texas that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures.   One CBP agent questioned Ibis Guzman, and another CBP agent forcibly took her son away stating she would see her son again in three days.

69.     Ibis Guzman's 5-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

70.     After three days, Ibis Guzman was transferred to a different CBP facility in Texas.  When she asked the federal agents there about the reunification with her son that the CBP agent had promised, they told her they did not know anything about her son's whereabouts.

71.     Ibis Guzman was then transferred to another federal facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her 5-year-old son and without any means to contact him.  She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ibis Guzman was transferred to the Federal Detention Center in SeaTac, Washington.

73.     Ibis Guzman was not provided any information about her 5-year-old son until about a week later, when she was told that her son had been given to a place called "Baptist Child and Family Services" in San Antonio, Texas.  But she was still not able to contact him.

[PROPOSED] THIRD AMENDED COMPL. - 24
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

74.   On June 20, 2018, Ibis Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

75.   Ibis Guzman was denied bond by the immigration judge at her bond hearing on July 3, 2018.

76.   She was not released until on or about July 31, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

77.   CBP transported plaintiff **Blanca Orantes** and her 8-year-old son A.M. to a federal detention facility in Texas.  CBP agents led Blanca Orantes into one of the federal detention buildings that detainees commonly refer to as "the hielera" ("the freezer") because of its cold temperatures, and took her 8-year-old son to another part of that detention facility.

78.   While a CBP agent was later interviewing Blanca Orantes, another agent brought her 8-year-old son to her and told her to "say goodbye" to him because they were being separated.  Her 8-year-old son began crying and pleading for his mom not to leave him.

79.   Blanca Orantes' 8-year-old son was taken away from her without any hearing, and without any accusation or evidence that she is in any way an unfit parent, or that she is in any way not acting in his best interest fleeing for safety in the United States, or that she is in any way a threat to his safety, or that she in any way abused him, or that she in any way neglected him.

80.   On or around May 24, 2018, Blanca Orantes was handcuffed and taken to court.  She pled guilty to improper entry under 8 U.S.C. §1325 and was sentenced to time served.  She was then returned to her cell.

81.   About nine days later, Blanca Orantes was transported to the Federal Detention Center in SeaTac, Washington.

[PROPOSED] THIRD AMENDED COMPL. - 25
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

82. The federal government did not provide Blanca Orantes any information about her 8-year-old son until June 9, 2018, when an ICE officer handed her a slip of paper saying her son was being held at place called "Children's Home of Kingston" in Kingston, New York.

83. On June 20, 2018, Blanca Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, where she was finally allowed to speak to her 8-year-old son by telephone.

84. Blanca Orantes was denied bond by the immigration judge at her bond hearing on July 16, 2018.

85. She was not released until on or about July 24, 2018, in order to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited with her child.

**J. Failing To Promptly Provide The Credible Fear Interview & Determination Required By Federal Law**

86. One part of the federal government's policy or practice is to keep asylum seekers in limbo in federal detention by delaying the threshold credible fear interview to which asylum seekers are entitled under federal law.

87. Detained asylum seekers who are subject to expedited removal are not permitted to move forward with their asylum claims until a credible fear determination has been made by a DHS official.

88. The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview in part to penalize and deter persons from seeking asylum.

89. The federal government keeps asylum seekers in limbo in federal detention by delaying their credible fear interview.

90. The federal government has not established any procedural timeframes for providing asylum seekers the credible fear interview and determinations required by federal law.

91. Plaintiffs Yolany Padilla, Ibis Guzman, Blanca Orantes, and Baltazar Vasquez are detained asylum seekers subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who

[PROPOSED] THIRD AMENDED COMPL. - 26
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  were not provided a credible fear interview and determination within 10 days of requesting

2  asylum or expressing a fear of persecution to a DHS official.

3  92.    When plaintiff **Yolany Padilla** first spoke with the CBP agent on or about

4  May 18, 2018, she told the CBP agent that she and her son were requesting asylum.

5  93.    Neither Yolany Padilla nor her son were provided a credible fear interview within

6  10 days of requesting asylum or expressing a fear of persecution to a DHS official.

7  94.    Neither Yolany Padilla nor her son were provided a credible fear interview as of

8  the date this lawsuit was originally filed on June 25, 2018.

9  95.    Instead, Yolany Padilla was not provided her credible fear interview until July 2,

10  2018.  That was more than a month after federal officials imprisoned her.  The DHS official

11  conducting her credible fear interview determined that Yolany Padilla does have a credible fear

12  of persecution, and therefore assigned her asylum claim to immigration court for adjudication on

13  the merits

14  96.    When plaintiff **Ibis Guzman** first spoke with the CBP agent on or about May 16,

15  2018, she told the CBP agent that she and her son were requesting asylum.

16  97.    Neither Ibis Guzman nor her son were provided a credible fear interview within

17  10 days of requesting asylum or expressing a fear of persecution to a DHS official.

18  98.    Neither Ibis Guzman nor her son were provided a credible fear interview as of the

19  date this lawsuit was originally filed on June 25, 2018.

20  99.    Instead, Ibis Guzman was not provided her credible fear interview until June 27,

21  2018.  That was more than a month after federal officials imprisoned her.  The DHS official

22  conducting her credible fear interview determined that Ibis Guzman does have a credible fear of

23  persecution, and therefore assigned her asylum claim to immigration court for adjudication on

24  the merits.

25  100.    When plaintiff **Blanca Orantes** first spoke with the CBP agent on or about

26  May 21, 2018, she told the CBP agent that she and her son were requesting asylum.

[PROPOSED] THIRD AMENDED COMPL. - 27
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1     101.    Neither Blanca Orantes nor her son were provided a credible fear interview within
2   10 days of requesting asylum or expressing a fear of persecution to a DHS official.
3     102.    Neither Blanca Orantes nor her son were provided a credible fear interview as of
4   the date this lawsuit was originally filed on June 25, 2018.
5     103.    Instead, Blanca Orantes was not provided her credible fear interview until
6   June 27, 2018.  That was more than a month after federal officials imprisoned her.  The DHS
7   official conducting her credible fear interview determined that Blanca Orantes does have a
8   credible fear of persecution, and therefore assigned her asylum claim to immigration court for
9   adjudication on the merits.
10    104.    When plaintiff **Baltazar Vasquez** first spoke with the CBP agent on or about
11  June 1, 2018, he told the CBP agent that he was requesting asylum.
12    105.    Baltazar Vasquez was not provided a credible fear interview within 10 days of
13  requesting asylum or expressing a fear of persecution to a DHS official.
14    106.    Baltazar Vasquez was not provided a credible fear interview as of the date this
15  lawsuit was originally filed on June 25, 2018.
16    107.    Baltazar Vasquez was not scheduled for a credible fear interview until after the
17  First Amended Complaint was electronically filed on July 15, 2018.
18    108.    Baltazar Vasquez was not provided his credible fear interview until July 31, 2018.
19  That was almost two months after federal officials imprisoned him. The DHS official conducting
20  his credible fear interview determined that Baltazar Vasquez does have a credible fear of
21  persecution, and therefore referred his case to an immigration court for adjudication of the merits
22  of his asylum claim.
23    109.    Baltazar Vasquez is currently imprisoned at the Adelanto Detention facility in
24  Adelanto, California.
25
26

[PROPOSED] THIRD AMENDED COMPL. - 28
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**K.     Failing To Promptly Provide The Bond Hearing Required By Federal Law**

110.    One part of the federal government's policy or practice is to prolong imprisonment without a proper bond hearing for asylum seekers who entered the United States without inspection.

111.    The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing in part to penalize and deter persons from seeking asylum.

112.    The federal government keeps asylum seekers in limbo in federal detention by delaying their bond hearing.

113.    The federal government has not established any procedural timeframes for timely providing the bond hearings required by federal law.  The federal government has not established basic procedural safeguards for bond hearings such as verbatim transcripts or audio recordings of bond hearings.  The absence of such basic safeguards impedes an imprisoned asylum seeker's ability to meaningful appeal the denial of bond in their individual case as not being based on evidence of legally relevant factors (i.e., being a flight risk or danger to the community) instead of legally irrelevant factors (e.g., the zero-tolerance policy's general goal of punishing and deterring asylum seekers).   Defendant EOIR maintains audio recordings of proceedings before an Immigration Judge other than bond hearings, and provides verbatim transcripts on appeals to the Board of Immigration Appeals.  But Defendant EOIR does not maintain audio recordings of an asylum seeker's bond hearing or provide verbatim transcripts for appeal of bond hearing determinations.  Indeed, when an immigration judge denies bond, they routinely do not make specific, particularized findings, and instead simply check a box on a template order.  Moreover, Defendants place the burden of proof on the noncitizen to demonstrate that they should not continue to be detained throughout their lengthy immigration proceedings.

114.    Plaintiff **Yolany Padilla** is an asylum seeker who originally entered the United States without inspection, was initially subject to expedited removal proceedings under

[PROPOSED] THIRD AMENDED COMPL. - 29
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  8 U.S.C. §1225(b) and detained, was determined to have a credible fear of persecution, but was

2  not provided a timely bond hearing with a verbatim transcript or audio recording.

3      115.    The federal government did not provide Yolany Padilla a bond hearing until after

4  she filed this lawsuit.  At the conclusion of that bond hearing, an order was issued allowing her

5  to be released from federal detention upon posting an $8,000 bond pending the adjudication of

6  her asylum claim on the merits.  To her knowledge, there is no verbatim transcript or recording

7  of her bond hearing.  At the bond hearing, the immigration judge placed the burden of proof on

8  Yolany Padilla to demonstrate that she qualified for a bond.

9      116.    Plaintiffs **Ibis Guzman** is a detained asylum seeker who originally entered the

10  United States without inspection, was initially subject to expedited removal proceedings under

11  8 U.S.C. §1225(b), was determined to have a credible fear of persecution, but was not provided a

12  timely bond hearing with a verbatim transcript or audio recording.

13      117.    The federal government did not provide Ibis Guzman a bond hearing until after

14  she filed this lawsuit.  At the bond hearing, the immigration judge placed the burden of proof on

15  Ibis Guzman to demonstrate that she qualified for a bond.  At the conclusion of that bond

16  hearing, an immigration judge issued an order denying her release on *any* bond amount pending

17  the adjudication of her asylum claim on the merits.

18      118.    The immigration judge did not make specific, particularized findings for the basis

19  of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order,

20  rendering her ineligible for bond even though a DHS official had already determined she has a

21  credible fear of persecution and even though the federal government has taken away her

22  6-year-old son.

23      119.    The immigration judge provided no written explanation for circling "Flight Risk"

24  or the factors and evidence considered in making that conclusion to deny bond.  Per defendant

25  EOIR's practice, there is no verbatim transcript or recording of her bond hearing.  She was not

26

[PROPOSED] THIRD AMENDED COMPL. - 30
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   released until on or about July 31, 2018, in order to comply with the preliminary injunction in

2   *Ms. L.*

3       120.   Plaintiff **Blanca Orantes** is a detained asylum seeker who originally entered the

4   United States without inspection, was initially subject to expedited removal proceedings under

5   8 U.S.C. §1225(b), was determined to have a credible fear of persecution once she was

6   eventually provided her credible fear interview and determination, but was not provided a bond

7   hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond

8   hearing.

9       121.   Blanca Orantes was not provided a bond hearing until July 16, 2018.  At the bond

10  hearing, the immigration judge placed the burden of proof on Blanca Orantes to demonstrate that

11  she qualified for a bond.  At the conclusion of that bond hearing, an immigration judge issued an

12  order denying her release on *any* bond amount pending the adjudication of her asylum claim on

13  the merits.

14      122.   The immigration judge did not make specific, particularized findings for the basis

15  of the denial, and even failed to check the box indicating why she was denied bond on the

16  template order. Per defendant EOIR's practice, there is no verbatim transcript or recording of her

17  bond hearing.  At the bond hearing the immigration judge placed the burden on Blanca Orantes

18  to demonstrate that she was qualified for a bond.

19      123.   She was not released until on or about July 23, 2018, after the federal government

20  was forced to comply with the preliminary injunction in *Ms. L.*, and thereafter reunited her with

21  her child.

22      124.   Plaintiff **Baltazar Vasquez** is a detained asylum seeker who originally entered

23  the United States without inspection, was initially subject to expedited removal proceedings

24  under 8 U.S.C. §1225(b), was determined to have a credible fear of persecution once he was

25  eventually provided his credible fear interview and determination, but was not provided a bond

26

[PROPOSED] THIRD AMENDED COMPL. - 31
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond
2   hearing.

3       125.    The federal government did not provide Baltazar Vasquez a bond hearing until
4   August 20, 2018.  At the bond hearing, the immigration judge placed the burden of proof on
5   Baltazar Vasquez to demonstrate that he qualified for a bond.  At the conclusion of that bond
6   hearing, an order was issued allowing him to be released from federal detention upon posting a
7   $9,000 bond pending the adjudication of his asylum claim on the merits.  There is no verbatim
8   transcript or recording of his bond hearing.

9                          VI.    **CLASS ALLEGATIONS**

10      126.    The named plaintiffs are asylum seekers who filed this suit on behalf of
11  themselves and their family members being detained in federal detention.

12      127.    The named plaintiffs also bring this suit as a class action under Fed.R.Civ.P. 23(b)
13  on behalf of the other similarly situated persons specified in the two classes of asylum seekers
14  specified in Part VI of this Second Amended Complaint.

15      98.    Plaintiffs brought this action on behalf of themselves and all others who are
16  similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class action
17  is proper because this action involves questions of law and fact common to the classes, the
18  classes are so numerous that joinder of all members is impractical, Plaintiffs' claims are typical
19  of the claims of the classes, Plaintiffs will fairly and adequately protect the interests of the
20  respective classes, and Defendants have acted on grounds that apply generally to the class, so
21  that final injunctive relief or corresponding declaratory relief is appropriate with respect to the
22  class as a whole.

23      99.    Plaintiffs sought to represent the following nationwide classes:

24      **a.  Credible Fear Interview Class ("CFI Class"):** All detained asylum seekers
25          in the United States subject to expedited removal proceedings under 8 U.S.C.
26          §1225(b) who are not provided a credible fear determination within 10 days of

1      requesting asylum or expressing a fear of persecution to a DHS official,

2      absent a request by the asylum seeker for a delayed credible fear interview.

3          **b.  Bond Hearing Class ("BH Class"):** All detained asylum seekers who entered

4      the United States without inspection, who were initially subject to expedited

5      removal proceedings under 8 U.S.C. §1225(b), who were determined to have

6      a credible fear of persecution, but who are not provided a bond hearing with a

7      verbatim transcript or recording of the hearing within 7 days of requesting a

8      bond hearing.

9      100.   On March 6, 2019, the district court certified the following nationwide classes:

10         **a.  Credible Fear Interview Class:** All detained asylum seekers in the United

11     States subject to expedited removal proceedings under 8 U.S.C. § 1225(b)

12     who are not provided a credible fear determination within ten days of the later

13     of (1) requesting asylum or expressing a fear of persecution to a DHS official

14     or (2) the conclusion of any criminal proceeding related to the circumstances

15     of their entry, absent a request by the asylum seeker for a delayed credible

16     fear interview.

17         **b.  Bond Hearing Class:** All detained asylum seekers who entered the United

18     States without inspection, were initially subject to expedited removal

19     proceedings under 8 U.S.C. § 1225(b), were determined to have a credible

20     fear of persecution, but are not provided a bond hearing with a verbatim

21     transcript or recording of the hearing within seven days of requesting a bond

22     hearing.

23     ~~128.~~101.   The certified classes currently are represented by counsel from the

24     Northwest Immigrant Rights Project and the American Immigration Council. Counsel have

25     extensive experience litigating class action lawsuits and other complex cases in federal court,

26     including civil rights lawsuits on behalf of noncitizens.

[PROPOSED] THIRD AMENDED COMPL. - 33
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

A.    **"Credible Fear Interview Class"**

**Credible Fear Interview Class ("CFI Class")**

129.    With respect to plaintiffs' claims concerning defendants' failure to promptly provide asylum seekers a credible fear interview and determination, plaintiffs seek to represent the following class (the "**credible fear interview class**"):

All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

130.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **credible fear interview class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

102.    All named Plaintiffs represent the certified CFI Class.

103.    The CFI Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs~~The **credible fear interview class** satisfies Rule 23(a)(2).  There~~ are not aware of the precise number of potential class~~questions of law or fact common to this class.  Given the definition of this class, its~~ members, but upon information and belief, there are thousands of individuals seeking protection who are ~~all share the same common factual situation of being a detained asylum seeker~~ subject to ~~defendants' practice of failing to provide a credible fear interview and determination within 10 days of their expressing a fear of persecution or a request for asylum to a DHS official, despite the fact they have been placed in~~ expedited removal proceedings and not provided~~under 8 USC § 1225(b), which requires immediate action.  The members of this class share common questions of law governing whether defendants' practice of failing to provide class members~~ a credible fear interview ~~and determination~~ within ten ~~10~~ days of ~~their~~ expressing a fear of return~~persecution~~ or desire to apply~~a request~~ for asylum. Defendants

are uniquely positioned to identify all class members.a DHS official is legal under the Fifth
Amendment, APA, or federal asylum statutes.

104.     The CFI Class meets the commonality requirement of Federal Rule of Civil
Procedure 23(a)(2). By definition, members of the CFI Class are subject to a common practice
by Defendants: their failure to provide timely credible fear interviews. This lawsuit raises a
question of law common to members of the CFI Class, namely whether Defendants' delay in
providing credible fear interviews constitutes agency action unlawfully withheld or unreasonably
delayed under the APA, the INA, and the Due Process Clause.

105.     The CFI Class meets the typicality requirement of Federal Rule of Civil
Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of
the class. All named Plaintiffs were not provided credible fear interviews within 10 days of being
apprehended and expressing a fear of return to their countries of origin.

106.     The CFI Class meets the adequacy requirements of Federal Rule of Civil
Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the
class—namely, an order that Defendants promptly provide credible fear interviews. In defending
their own rights, the named Plaintiffs will defend the rights of all class members fairly and
adequately.

The **credible fear interview class** satisfies Rule 23(a)(3).  Plaintiffs' claims
concerning the legality of defendants' practice of failing to provide a credible fear interview and
determination within 10 days of their expressing a fear of persecution or a request for asylum to
a DHS official are typical of the claims of class members.  As noted in the prior paragraph, the
definition of this class dictates that plaintiffs share with the other class members the same
common factual situation and the same common questions of law under the Fifth Amendment,
APA, and federal asylum statutes.

The **credible fear interview class** satisfies Rule 23(a)(4).  Plaintiffs will fairly
and adequately protect the interests of that class.  They are represented by counsel from the

1    Northwest Immigrant Rights Project and the American Immigration Council, who have extensive

2    experience litigating class action lawsuits and other complex cases in federal court, including

3    civil rights lawsuits on behalf of noncitizens.

4            The **credible fear interview class** satisfies Rule 23(b)(1).  Requiring separate

5    actions by the members of this class would create the risk of inconsistent or varying

6    adjudications with respect to individual class members that would establish incompatible

7    standards of conduct for defendants.  Requiring separate actions by the members of this class

8    would create the risk of adjudications with respect to individual class members that, as a

9    practical matter, would be dispositive of the interests of the other class members not parties to

10   the individual adjudications, or would at least substantially impair or impede their ability to

11   protect their interests.

12   107.    The members of the**credible fear interview** class are readily ascertainable

13   through Defendants' records.

14   131.108.    The CFI Class also satisfies Federal Rule of Civil Procedure -23(b)(2).

15   Defendants have acted or refused to act on grounds that apply generally applicable to the class by

16   unreasonably delaying putative class members' credible fear interviews. Injunctive andto this

17   class. Final injunctive relief or corresponding declaratory relief is thus appropriate with respect

18   to the class as a whole., especially as it involves uniform, federal immigration law and plaintiffs

19   are transferred across the country by defendants.  Moreover, requiring separate actions by the

20   members of this class would create the risk of inconsistent or varying adjudications with respect

21   to individual class members that would establish incompatible standards of conduct for

22   defendants.

23   132.    The **credible fear interview class** satisfies Rule 23(b)(3).  Questions of law or

24   fact common to members of this class predominate over questions affecting only individual

25   members.  A class action is superior to other available methods for fairly and efficiently

26   adjudicating the legality of defendants' practice of failing to provide a credible fear interview

[PROPOSED] THIRD AMENDED COMPL. - 36
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

and determination within 10 days of a person's expressing a fear of persecution or requesting asylum.

**B.      "Bond Hearing Class"**

**Bond Hearing Class ("BH Class")**

133.    With respect to plaintiffs' claims concerning defendants' failure to promptly conduct a bond hearing to set reasonable conditions for the asylum seeker's release pending the lengthy proceedings to adjudicate his or her asylum claim, and to provide a bond hearing that comports with the requirements of due process, plaintiffs seek to represent the following class (the "**bond hearing class**"):

All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

134.    Plaintiffs allege the following on information and belief:  At least several hundred asylum seekers currently fit within the **bond hearing class**.  Defendants should know the precise number since the members of this class should be readily ascertainable through defendants' records.

135. 109.    Plaintiffs Orantes and Vasquez represent the certified Bond Hearing Class.

110.    The **bond hearing class** satisfies Rule BH Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1).  This The class is so numerous that joinder of all class members is impracticable. The **bond hearing class** satisfies Rule 23(a)(2). There Plaintiffs are questions not aware of law or fact common to this class.  Given the definition precise number of this potential class, its members all share the same common factual situation, but upon information and belief, there are thousands of being asylum seekers individuals seeking protection who entered the United States without inspection, were initially subject referred to expedited standard removal proceedings, were found to have a after a

[PROPOSED] THIRD AMENDED COMPL. - 37
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

positive credible fear ~~of persecution, but were then subject to defendants' practice of failing to~~

~~provide a bond hearing with a transcript or recording of the hearing within 7 days of their~~

~~requesting a bond hearing.  Moreover, defendant EOIR placed the burden on class members to~~

~~demonstrate in~~ determination, and were not provided bond hearings ~~that plaintiffs are eligible for~~

~~release, and defendants EOIR failed to make any specific, particularized findings of fact when~~

~~denying release. The members of this class share common questions of law governing whether~~

~~defendants' practice of failing to provide a bond hearing with a transcript or recording of the~~

~~proceeding within 7 days of their requesting a bond hearing, Defendant EOIR's practice of~~

~~placing the burden of proof on the detained asylum seeker to demonstrate their eligibility for~~

~~release, and Defendant EOIR's failure to make specific, particularized findings when denying~~

~~release, is legal under the Fifth Amendment, APA, or federal asylum statutes.~~  either within

seven days of requesting the hearing, or whose bond hearings were not recorded or transcribed.

Defendants are uniquely positioned to identify all class members.

~~The **bond hearing class**~~ satisfies Rule 23(a)(3).  ~~Plaintiffs' claims concerning the~~

~~legality of defendants' practice of failing to provide a bond hearing with a transcript or recording~~

~~of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, Defendant~~

~~EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate~~

~~they are eligible for release , and Defendant EOIR's failure to make specific findings when~~

~~denying release, are typical of the claims of class members.  As noted in the prior paragraph, the~~

~~definition of this class dictates that plaintiffs share with the other class members the same~~

~~common factual situation and the same common questions of law under the Fifth Amendment,~~

~~APA, and federal asylum statutes.~~

~~The **bond hearing class**~~ satisfies Rule 23(a)(4).  ~~Plaintiffs will fairly and~~

~~adequately protect the interests of that class.  They are represented by counsel from the~~

~~Northwest Immigrant Rights Project and the American Immigration Council, who have extensive~~

1  ~~experience litigating class action lawsuits and other complex cases in federal court, including~~
2  ~~civil rights lawsuits on behalf of noncitizens.~~

3  ~~The **bond hearing class** satisfies Rule 23(b)(1).  Requiring separate actions by~~
4  ~~the members of this class would create the risk of inconsistent or varying adjudications with~~
5  ~~respect to individual class members that would establish incompatible standards of conduct for~~
6  ~~defendants.  Requiring separate actions by the members of this class would create the risk of~~
7  ~~adjudications with respect to individual class members that, as a practical matter, would be~~
8  ~~dispositive of the interests of the other class members not parties to the individual adjudications,~~
9  ~~or would at least substantially impair or impede their ability to protect their interests.~~

10  111.    ~~The **bond hearing class** satisfies~~ The BH Class meets the commonality
11  requirement of Federal Rule of Civil Procedure 23(a)(2). Members of the BH Class are subject to
12  common policies and practices by Defendants: their failure to provide timely bond hearings;
13  their placement of the burden of proof on the detained on the detained individual during bond
14  hearings; their failure to provide a verbatim transcript or recording of the bond hearing; their
15  failure to provide a contemporaneous written decision with particularized findings; and finally,
16  due to *Matter of M-S-*, all class members will be denied bond hearings.

17  112.    This lawsuit raises questions of law common to members of the BH Class:
18  whether Defendants' failure to provide bond hearings violates class members' right to due
19  process, right to a parole hearing under 8 U.S.C. § 1182(d)(5), and the rulemaking requirements
20  of the Administrative Procedure Act; whether Defendants' failure to provide timely bond
21  hearings constitutes agency action unlawfully withheld or unreasonably delayed under the APA,
22  that is contrary to law under the APA; whether due process requires Defendants to provide bond
23  hearings to putative class members within seven days of a request, and whether due process and
24  the APA requires Defendants to place the burden of proof on the government to justify continue
25  detention, and to provide adequate procedural safeguards during the bond hearings provided to
26  putative class members.

[PROPOSED] THIRD AMENDED COMPL. - 39
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

113.    The BH Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Plaintiffs Orantes and Vasquez were not provided bond hearings within seven days of requesting a hearing. At the bond hearing, all class representatives were assigned the burden to prove that they are eligible for release under bond. All class representatives were denied a contemporaneous written decision with particularized findings. Defendants are not required to record or provide verbatim transcripts of the hearings and did not advise Plaintiffs Orantes and Vasquez that recordings had been made until filing their First Amended Complaint, Dkt. 8. Finally, in *Matter of M-S-*, Defendant Barr has announced that, as of July 15, 2019, future Bond Hearing Class members will be deprived of *any* bond hearing.

114.    The BH Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class: an order requiring Defendants to provide bond hearings within seven days of request, to place the burden of proof on the government during these bond hearings, to provide a verbatim transcript or recording of the hearing, and to provide a contemporaneous written decision with particularized findings at the end of the hearing. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

115.    The members of the class are readily ascertainable through Defendants' records.

~~136.~~116.        The BH Class also satisfies Federal Rule~~-~~ of Civil Procedure 23(b)(2). Defendants have acted ~~or refused to act on grounds that apply generally to this~~on grounds generally applicable to the class by unreasonably delaying putative class members' bond hearings. Putative class members received an untimely bond hearing in which they had to bear the burden of proof. Defendants generally do not record or provide verbatim transcripts of putative class members' bond hearings, nor issue contemporaneous written decisions with particularized findings. Moreover, after July 15, 2019, class~~. Final injunctive relief or corresponding~~ members will not receive any bond hearings. Injunctive and declaratory relief is

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

thus appropriate with respect to the class as a whole especially as it involves uniform, federal immigration law and plaintiffs are transferred across the country by defendants.  Moreover, requiring separate actions by the members of this class would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.  The **bond hearing class** satisfies Rule 23(b)(3).  Questions of law or fact common to members of this class predominate over questions affecting only individual members.  A class action is superior to other available methods for fairly and efficiently adjudicating the legality of defendants' practice of failing to provide a bond hearing with a transcript or recording of the proceeding within 7 days of an asylum seeker's requesting a bond hearing, defendant EOIR's practice of placing the burden of proof on the detained asylum seeker to demonstrate they are eligible for release, and Defendant EOIR's failure to make specific, particularized findings when denying release.

## VII.    CAUSES OF ACTION

### COUNT I
**(Violation of Fifth Amendment Right to Due Process—Right to Timely Bond Hearing with Procedural Safeguards)**

137.117.    All of the foregoing allegations are repeated and re-allegedrealleged as though fully set forth herein.

118.    The Due Process Clause of the Fifth Amendment provides that "no person . . . shall be deprived of . . . liberty . . . without due process of law." U.S. Const., amend. V. applies to all "persons" on United States soil and thus applies to Mss. Guzman, Orantes, Mr. Vasquez and all proposed class members.

138.119.    Named Plaintiffs and all BH Class members were apprehended on U.S. soil after entry and are thus "persons" to whom the Due Process Clause applies.

139.    The named plaintiffs and proposed class members have a constitutionally protected liberty interest in (1) not being imprisoned in federal detention for an unreasonable time awaiting their credible fear interview and determination, (2) not being imprisoned in federal

[PROPOSED] THIRD AMENDED COMPL. - 41
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  detention for an unreasonable time awaiting their bond hearing, and (3) having a bond

2  hearingprovides that is fair and comports with due process.

3      140.  The federal government's imprisoning plaintiffs and members of the Credible Fear

4  Interview Class in federal detention for an unreasonable time awaiting their credible fear

5  interview and determination violates their substantive due process rights.  The government's

6  prolonging these asylum seekers' federal detention by delaying their credible fear interview and

7  determination more than 10 days does not further a legitimate purpose.  The government's

8  prolonging these asylum seekers' federal detention by delaying their credible fear interview and

9  determination more than 10 days does not further a compelling governmental interest.

10  Defendants' prolonging their federal detention by delaying their credible fear interview and

11  determination more than 10 days is a violation of the constitutional substantive due process

12  rights of plaintiffs and their children as well as of members of the Credible Fear Interview Class.

13      141.    The federal government's imprisoning plaintiffs and members of the Credible

14  Fear Class in federal detention for an unreasonable time awaiting their credible fear interview

15  and determination violates their procedural due process rights.  That ongoing imprisonment

16  awaiting a credible fear interview and determination is contrary to the law governing expedited

17  removal proceedings and is imposed without any hearing.  Defendants' imprisoning plaintiffs

18  and members of the Credible Fear Interview Class in federal detention for an unreasonable time

19  awaiting their credible fear interview and determination is a violation of the constitutional due

20  process rights of plaintiffs and their children as well as of members of the Credible Fear

21  Interview Class.

22      142.    The federal government's imprisoning plaintiffs and members of the Bond

23  Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess

24  their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim

25  violates substantive due process.  The government's prolonging these asylum seekers' federal

26  detention by delaying their bond hearing more than 7 days does not further a legitimate purpose.

[PROPOSED] THIRD AMENDED COMPL. - 42
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

~~The government's prolonging these asylum seekers' federal detention by delaying their bond~~

~~hearing more than 7 days does not further a compelling governmental interest.  Moreover,~~

~~denying release for general deterrence or punishment goals unrelated to the specific factors of~~

~~whether the individual presents a flight risk or danger to the community unlawfully deprives~~

~~these asylum seekers of their constitutional right to liberty.  Defendants' prolonging plaintiffs'~~

~~and members of the Bond Hearing Class's federal detention by delaying their bond hearing more~~

~~than 7 days is a violation of the constitutional substantive process rights of plaintiffs and~~

~~members of the Bond Hearing Class.~~

~~143.    The federal government's imprisoning plaintiffs and members of the Bond~~

~~Hearing Class in federal detention for an unreasonable time awaiting a bond hearing to assess~~

~~their eligibility for release pending the lengthy proceedings to adjudicate their asylum claim~~

~~violates procedural due process.  That ongoing detention is imposed without providing a bond~~

~~hearing with a transcript or recording of the hearing and specific, particularized findings with~~

~~respect to any denial of release, denies plaintiffs and members of the Bond Hearing Class an~~

~~adequate record to file an administrative appeal or habeas petition.  Moreover, denying release~~

~~for general deterrence goals unrelated to the specific factors of whether the individual presents a~~

~~flight risk or danger to the community strips detained asylum seekers of a fair hearing. What is~~

~~more, placing the burden on the noncitizen to demonstrate their eligibility for release also~~

~~constitutes a violation of their due process rights. Defendants' prolonging plaintiffs' and~~

~~members of the Bond Hearing Class's federal detention by failing to provide a bond hearing~~

~~where the burden of proof is on the government and with a verbatim transcript or recording of~~

~~the hearing within 7 days of requesting a bond is a is a violation of the constitutional substantive~~

~~due process rights of plaintiffs and their children as well as of members of the Bond Hearing~~

~~Class.~~

<u>120.  The Due Process Clause permits civil immigration detention only where such</u>

<u>detention is reasonably related to the government's interests in preventing flight or protecting the</u>

community from danger and is accompanied by adequate procedures to ensure that detention serves those goals.

121.  Both substantive and procedural due process therefore require an individualized assessment of BH Class members' flight risk or danger to the community in a custody hearing before a neutral decision maker.

122.  The Due Process Clause guarantees that such individualized custody hearings be provided in a timely manner to afford Plaintiffs and BH Class members an opportunity to challenge whether their continued detention is necessary to ensure their future appearance or to avoid danger to the community. Federal courts have consistently held that due process requires an expeditious opportunity to receive that individualized assessment. Defendants' interests in prolonging this civil detention do not outweigh the liberty interests of Plaintiffs and BH Class members.

123.  The Due Process Clause requires that Plaintiffs and BH Class members receive adequate procedural protections to assert their liberty interest. The Due Process Clause requires the government to bear the burden of proof in the custodial hearing of demonstrating that the continued detention of Plaintiffs and BH Class members is justified. Defendants' interests do not outweigh the liberty interests for Plaintiffs and BH Class members.

124.  The Due Process Clause requires that the government provide either a transcript or recording of the hearing and specific, particularized findings of the bond hearing to provide a meaningful opportunity for Plaintiffs and BH Class members to evaluate and appeal the IJ's custody determination. Defendants' interests in issuing decisions without these procedural protections do not outweigh the liberty interests for Plaintiffs and BH Class members.

125.  Pursuant to *Matter of M-S-*, Defendants deprive Plaintiffs and BH Class members the right to any custodial hearing before a neutral arbiter to make an individualized determination of whether they present a danger to the community or a flight risk.

[PROPOSED] THIRD AMENDED COMPL. - 44
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

126.  Pursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face the prospect of being re-detained without a bond hearing.

127.  Prior to *Matter of M-S-*, Defendants recognized that BH Class members are entitled to a bond hearing. Defendants have regularly delayed these hearings for several weeks after the credible fear determinations.

128.  Defendants have also failed to provide the other bond hearing procedures required by due process, placing the burden of proof on Plaintiffs and BH Class members and refusing to provide them with a recording or verbatim transcript of the hearing as well as a written decision with particularized findings of the bond hearing.

129.  As a result, by failing to provide prompt bond hearings with adequate procedural safeguards, Defendants violate the Fifth Amendment's Due Process Clause.

## COUNT II

### ~~(Administrative Procedure Act)~~
### (Violation of Immigration & Nationality Act—Failure to Provide
### an Individualized Custodial Hearing)

~~144.~~130.      All of the foregoing allegations are repeated and ~~re-alleged~~realleged as though fully set forth herein.

131.  8 U.S.C. § 1225(b)(1)(A) distinguishes BH class members, who are detained after entering the country, from those who are charged as arriving and seeking admission at a port of entry. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) provides that the Attorney General "may" place BH Class members in expedited removal proceedings, but unlike those who are charged as arriving, does not require that they be subject to mandatory detention.

132.  Under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), asylum seekers are subject to mandatory detention only while "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."

133.  Plaintiffs and all BH Class members entered without inspection and were placed in expedited removal proceedings under to 8 U.S.C. § 1225(b). All of them established a credible

[PROPOSED] THIRD AMENDED COMPL. - 45
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

fear of persecution or torture and were thereafter transferred for full hearings before the immigration court.

134.  As such, under the Immigration and Nationality Act, Plaintiffs are entitled to seek a custody hearing where the Attorney General may grant bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d); 8 C.F.R. § 1003.19(h)(2).

~~145.~~135.  Defendant Barr's decision in *Matter of M-S-* denies Plaintiffs and BH Class members their statutory right to an individualized custody hearing.

### COUNT III
### (Violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5), and Violation of Fifth Amendment Right to Due Process—Failure to Provide an Individualized Parole Hearing)

136.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

137.  The Immigration and Nationality Act ("INA")provides that the Attorney General "may . . . in his discretion parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A). Under the INA and implementing regulations, immigration detention of an asylum seeker must be based on an individualized determination that the asylum seeker constitutes a flight risk or a danger to the community. *See id.*; *see also* 8 C.F.R. § 212.5(b)(5).

138.  Pursuant to implementing regulations, parole reviews are conducted solely by U.S. Immigration and Customs Enforcement ("ICE")—the jailing authority. *See id.*

139.  However, the INA requires an individualized parole hearing before an immigration judge to decide if the asylum seeker constitutes a flight risk or danger to the community.

140.  Defendants' policy and practice of denying Plaintiffs and those similarly situated parole hearings before an immigration judge violates the INA.

[PROPOSED] THIRD AMENDED COMPL. - 46
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

141.    To the extent the statute denies parole hearings before an immigration judge, the statute violates due process.

### COUNT IV
### (Violation of Administrative Procedure Act—Failure to Follow
### Notice & Comment Rulemaking)

142.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

143.  Regulations that currently govern Defendants DHS and EOIR provide that Plaintiffs and BH Class members may seek review of ICE's custody decision to detain plaintiffs and members of the before an IJ. *See* 8 C.F.R. §§ 1003.19(h)(2), 1236.1(d).

144.  *Matter of M-S-* is a final agency action that purports to alter those regulations by adjudication, without engaging in notice and comment rulemaking.

145.  The Administrative Procedure Act requires Defendants to engage in notice and comment rulemaking before undertaking the changes that *Matter of M-S-* purports to make to BH Class Members' rights to a bond hearing. *See* 5 U.S.C. §§ 551(5), 553(b) & (c).

146.  As a result, *Matter of M-S-* is unlawful agency action that this Court should set aside because that decision was issued "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

### COUNT V

### (Violation of Fifth Amendment Right to Due Process—Delays for Credible Fear Interview Class for an unreasonable time awaiting their Interviews)

147.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

148.  The Due Process Clause guarantees timely and adequate procedures to test Defendants' rationale for detaining asylum seekers.

149.  Defendants' practice of delaying individuals seeking protection credible fear interview, without a compelling justification and without a mechanism, protocol, or system to assure a prompt and fair interviews beyond 10 days prevents Plaintiffs Padilla, Guzman, Orantes,

[PROPOSED] THIRD AMENDED COMPL. - 47
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   and Vasquez, and the CFI Class from demonstrating that they have a "significant possibility" of

2   obtaining protection and a lawful status in the United States. 8 U.S.C. § 1225(b)(1)(B)(v). That

3   practice thus further lengthens their time in detention without the opportunity to appear before a

4   neutral decision maker to receive an individualized custodial assessment.

5   ~~146.~~150.   Defendants' interests do not outweigh the significant risks that delayed

6   credible fear ~~interview and determination, is a final agency action.  That action violates~~

7   ~~5 U.S.C. §§706(1) and (2)(A) and (B).~~ interviews pose in wrongfully prolonging Plaintiffs

8   Padilla, Guzman, Orantes, and Vasquez , and CFI Class members' detention, nor do they

9   outweigh their protected due process interests in timely demonstrating their right to protection in

10   the United States.

11   ~~147.   Defendants' decision to detain plaintiffs and members of the Bond Hearing Class~~

12   ~~for an unreasonable time awaiting a bond hearing to set reasonable conditions for their release~~

13   ~~pending the lengthy proceedings to adjudicate their asylum claim, without a compelling~~

14   ~~justification and without a mechanism, protocol, or system to assure a prompt and fair bond~~

15   ~~hearing, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).~~

16   ~~148.   Defendants' decision to deny plaintiffs and members of the Bond Hearing Class a~~

17   ~~bond hearing with adequate procedural protections, specifically a hearing where the burden of~~

18   ~~proof is on the government, a recording or transcript of the hearing available for any subsequent~~

19   ~~administrative appeal or habeas petition, and specific, particularized findings of any denial of~~

20   ~~release, is a final agency action.  That action violates 5 U.S.C. §§706(1) and (2)(A) and (B).~~

21   151.  ~~The~~ Defendants' practice of delaying credible fear interviews therefore violates the

22   CFI Class's right to due process.

## COUNT VI

### (Administrative Procedure Act—Delay of Credible Fear Interviews and Bond Hearings and Denial of Procedural Protections)
### ~~COUNT III~~
### ~~(Violation of Asylum Statute)~~

[PROPOSED] THIRD AMENDED COMPL. - 48
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

152.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

149.153.       The Administrative Procedure Act ("APA") imposes on federal agencies the duty to conclude matters presented to itthem within a "reasonable time." -5- U.S.C.- §555(b).

150.154.       The APA prohibitsalso permits the CFI and BH Classes to "compel agency action that is "unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1," 5 U.S.C. § 706(1), and prohibits final agency action that is arbitrary and capricious, that violates the Constitution, or that is otherwise not in accordance with law, id. § 706(2)(A)-(B).

151.   Defendant DHS and its sub-agencies are required to conduct an interview to assess whether an asylum seeker has a credible fear of persecution. This obligation is triggered when Defendants learn of an individual's fear of persecution. See 8 U.S.C. §1225(b)(1)(A)(ii). Asylum seekers are only permitted to raise their claims before an immigration judge after the asylum officer's credible fear determination. See 8 C.F.R. § 208.30(f), (g).

152.155.       Conducting a credible fear interview to determine whether a person seeking asylum has a Both credible fear of persecution is a interviews and bond hearings are "discrete, final agency actionactions" that DHS isDefendants are "required to take.," and therefore constitute agency action that a court may compel. Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).

153.156.       Defendants' failure to expeditiously conduct a credible fear interview after detaining plaintiffsPlaintiffs and members of the Credible Fear Interview classCFI Class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. See 5 U.S.C. § 706(1).

154.   If the asylum officer determines that an asylum seeker has a credible fear of persecution, the case is transferred to EOIR for adjudication of the asylum claim by an immigration judge.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

155.   An asylum seeker in the Bond Hearing Class is entitled to a bond hearing to assess eligibility for his or her release from DHS custody pending the lengthy proceedings to adjudicate his or her asylum claim.

156.   Defendant EOIR's Defendants' failure to promptly conduct a bond hearing for plaintiffs and members of the Bond Hearing BH Class within 7 days violates defendant's legal duty under the APA to conclude matters presented to it within a reasonable time.

157. Defendant EOIR's failure to conduct a bond hearing for plaintiffs and members of the Bond Hearing Class with appropriate procedural safeguards of a request also constitutes "an agency action unlawfully withheld or unreasonably delayed in violation of" under the APA. See id.

158.   Defendants' policies regarding (1) the burden of proof in bond proceedings, (2) the lack of recordings and transcripts, (3) the failure to provide specific, particularized findings constitute final agency action.

159.  The lack of these procedural protections is contrary to law and violates the constitutional right to due process of noncitizens seeking protection. See 5 U.S.C. § 706(2).

158.   All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

159.   The Immigration and Nationality Act grants noncitizens fleeing persecution the opportunity to apply for asylum in the United States.  8 U.S.C. §1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, & 1003.42; 8 U.S.C. §1158(a)(1).

160.   International law likewise recognizes the fundamental human right to asylum of persons fleeing for safety from persecution and torture.

161.   Noncitizens fleeing persecution have a private right of action to vindicate their right to apply for and receive asylum in the United States.

[PROPOSED] THIRD AMENDED COMPL. - 50
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    162.  Defendants' failure to promptly conduct a credible fear interview for plaintiffs

2  and members of the Credible Fear Interview Class violates the asylum statute because it

3  unlawfully infringes on their ability to pursue their asylum claims.

4    Defendants' failure to promptly conduct a bond hearing to assess eligibility for the

5  release of plaintiffs and members of the Bond Hearing Class violates the asylum statute because

6  it unlawfully infringes on their ability to pursue their asylum claims.

7          **VIII.   <u>PRAYER FOR RELIEF</u>**

8    Plaintiffs respectfully request that this Court enter judgment against Defendants granting

9  the following relief on behalf of the Credible Fear Interview Class and the Bond Hearing Class:

10    A.  Declare that Defendants have an obligation to provide Credible Fear Interview Class

11      members with a credible fear interview and determination within 10 days of

12      requesting asylum or expressing a fear of persecution or torture to any DHS official.

13    B.  Preliminarily and permanently enjoin Defendants from not providing Credible Fear

14      Interview Class members their credible fear determination within 10 days of

15      requesting asylum or expressing a fear of persecution or torture to any DHS official.

16    C.  Declare that Defendants have an obligation to provide Bond Hearing Class members

17      a bond hearing before an immigration judge.

18    D.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing

19      Class members a bond hearing before an immigration judge.

20    ~~A.~~E.  ~~D~~eclare that Defendants have an obligation to provide Bond Hearing Class

21      members a bond hearing within 7 days of their requesting a hearing to set reasonable

22      conditions for their release pending adjudication of their ~~asylum claim~~claims for

23      protection.

24    B.  Declare that defendants have an obligation to provide Bond Hearing Class members

25      (including plaintiffs) a bond hearing with adequate procedural safeguards, including a

26      verbatim transcript or recording of their bond hearing.

[PROPOSED] THIRD AMENDED COMPL. - 51
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1      C.F.    Declare that ~~defendant~~ Defendant DHS must bear the burden of proof to show

2      continued detention is necessary in civil immigration proceedings.

3      G.  Declare that Defendants have an obligation to provide Bond Hearing Class members

4      a bond hearing with adequate procedural safeguards, including providing a verbatim

5      transcript or recording of their bond hearing upon appeal.

6      ~~D.~~H.    Declare that in bond hearings immigration judges must make specific,

7      particularized written findings as to the basis for denying release from detention,

8      including findings identifying the basis for finding that the individual is a flight risk

9      or a danger to the community.

10     I.   Preliminarily and permanently enjoin ~~defendants~~Defendants from not providing Bond

11     Hearing Class members their bond hearing within 7 days of the class members'

12     request.

13     J.   Preliminarily and permanently enjoin Defendants from not providing Bond Hearing

14     Class members bond hearings where Defendant DHS bears the burden of proof to

15     show continued detention is necessary.

16     K.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing

17     Class members their bond hearing with a verbatim transcript or recording of their

18     bond hearing.

19     ~~E.~~L.    Preliminarily and permanently enjoin ~~defendants~~Defendants from not providing

20     Bond Hearing Class members specific, particularized written findings

21     contemporaneously issued by the immigration judge as to the basis for denying

22     release from detention, including findings identifying the basis for finding that the

23     individual is a flight risk or a danger to the community. ~~their bond hearing within~~

24     ~~7 days of the asylum seeker's request.~~

25

26

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    F.   Preliminarily and permanently enjoin defendants from not providing Bond Hearing

2         Class members bond hearings where defendant DHS bears the burden of proof to

3         show continued detention is necessary.

4    G.   N. Preliminarily and permanently enjoin defendants from not providing Bond

5         Hearing Class members where immigration judges make specific, particularized

6         written findings contemporaneously issued by the immigration judge as to the basis

7         for denying release from detention, including findings identifying the basis for

8         finding that the individual is a flight risk or a danger to the community.

9    H.M.   Order defendants Defendants to pay reasonable attorneys' fees and costs.

10   I.N.   Order all other relief that is just and proper.

11   Dated this 2nd day of May, 2019.

12   s/ Matt Adams_____          Trina Realmuto*
13   Matt Adams, WSBA No. 28287            Kristin Macleod-Ball*
     Email:  matt@nwirp.org               _____
14                                         AMERICAN IMMIGRATION COUNCIL
     Leila Kang, WSBA No. 48048            1318 Beacon Street, Suite 18
15   Email:  leila@nwirp.org               Brookline, MA 02446
                                           (857) 305-3600
16   Aaron Korthuis, WSBA No. 53974        trealmuto@immcouncil.org
17   Email: aaron@nwirp.org                kmacleod-ball@immcouncil.org

18   NORTHWEST IMMIGRANT RIGHTS
     PROJECT                               Judy Rabinovitz**
19   615 Second Avenue, Suite 400          Michael Tan**
20   Seattle, WA  98104                    Anand Balakrishnan**
     Telephone: (206) 957-8611
21   Facsimile: (206) 587-4025             ACLU IMMIGRANTS' RIGHTS PROJECT
     Attorneys for Plaintiffs-Petitioners  125 Broad Street, 18th floor
22                                         New York, NY 10004
                                           (212) 549-2618
23   Emily Chiang                          jrabinovitz@aclu.org
24   WSBA No. 50517                        mtan@aclu.org
     ACLU OF WASHINGTON                    abalakrishnan@aclu.org
25   901 5th Ave #630
     Seattle, WA 98164                     *Admitted pro hac vice
26   (206) 624-2184                        **Applications for pro hac vice admissions
     echiang@aclu-wa.org                   forthcoming

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

                  Plaintiffs-Petitioners,

    v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

               Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

    The Court, having reviewed Plaintiff's Motion for Leave to File Third Amended Complaint and the parties' briefing, hereby GRANTS the motion and ORDERS Plaintiffs to file and serve the amended complaint within 14 days of the entry of this order.

    DATED this _____ day of _____, 2019.

_____
HONORABLE MARSHA J. PECHMAN
U.S. DISTRICT JUDGE

[PROPOSED] ORDER GRANTING PLS.'
MOT. FOR LEAVE TO AMEND COMPL. - 1
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Presented this 2nd day of May, 2019, by:


*s/ Matt Adams*
Matt Adams, WSBA No. 28287
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
matt@nwirp.org

[PROPOSED] ORDER GRANTING PLS.'
MOT. FOR LEAVE TO AMEND COMPL. - 2
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611