The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

              Plaintiffs-Petitioners,

    v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

           Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO VACATE THE COURT'S PRELIMINARY INJUNCTION ORDER**

NOTED ON MOTION CALENDAR:
May 15, 2019

ORAL ARGUMENT REQUESTED

1

### **INTRODUCTION**

2      Last month, this Court issued a preliminary injunction order requiring the government to

3 provide Plaintiffs a prompt bond hearing that comports with due process. *See* Dkt. 110. Two

4 weeks later, the Attorney General issued *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019),

5 holding that members of the Bond Hearing Class have no statutory right to a bond hearing. 27 I.

6 & N. Dec. at 509-10. If *Matter of M-S-* is permitted to go into effect, for the first time in nearly

7 half a century, asylum seekers who are present in the United States after having effected an entry

8 will be locked up pending their removal proceedings—for months and potentially even years—

9 without ever receiving a bond hearing on whether their detention is justified, much less a hearing

10 that provides due process. Defendants now seek to vacate the preliminary injunction based on

11 this change in law. *See* Dkt. 114. Plaintiffs oppose Defendants' motion on two grounds.

12      First, this Court should hold Defendants' motion in abeyance. Defendants' motion to

13 vacate rests on the legality of *Matter of M-S-*, a decision that is fundamentally incompatible with

14 due process, including the due process analysis contained in this Court's preliminary injunction

15 ruling. However, Defendants have argued that Plaintiffs' current complaint does not encompass a

16 challenge to *Matter of M-S-* and thus is not properly before the Court. Dkt. 114 at 12-13.

17 Although the Second Amended Complaint already asserts a constitutionally protected right to a

18 bond hearing, Plaintiffs, out of an abundance of caution, recently sought leave to file a Third

19 Amended Complaint. Dkt. 116. Assuming leave to amend is granted, Plaintiffs will immediately

20 file a motion to modify the preliminary injunction to expressly provide for a right to a bond

21 hearing and to enjoin *Matter of M-S-* as unconstitutional and contrary to law. This Court should

22 thus wait to consider the motion to vacate until it has first considered the legality of *Matter of M-*

23 *S-* in the context of Plaintiffs' Third Amended Complaint and forthcoming motion to modify the

24 injunction.

25      Deferring adjudication of the motion to vacate will not cause Defendants any prejudice,

26 as the Attorney General specifically provided that *Matter of M-S-* would not take effect until July

27

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

16, 2019. *See* 27 I. & N. Dec. at 519 n.8 (staying effective date of decision for 90 days because decision would have "an immediate and significant impact on . . . detention operations"). Thus, even if *Matter of M-S-* were ultimately allowed to take effect, members of the Bond Hearing Class would remain entitled to bond hearings until such date. And as long as they are entitled to bond hearings, those hearings must comport with the due process requirements set forth in this Court's preliminary injunction. This means there is ample time to fully brief the legality of *Matter of M-S-*'s elimination of bond hearings pursuant to the Third Amended Complaint prior to deciding this motion. Thus, the Court should defer ruling on Defendants' motion to vacate.

However, should this Court decide to proceed otherwise, it should deny the motion to vacate and clarify that, despite *Matter of M-S-*'s holding, Plaintiffs have a *constitutional* right to a bond hearing that comports with due process. Although the preliminary injunction predates *Matter of M-S-*, this Court already has recognized that Plaintiffs have a fundamental right to liberty from arbitrary detention. *See* Dkt. 110 at 6-7. When it comes to civil detention, the most basic check against such unlawful detention is an individualized custody hearing before a neutral adjudicator to decide if the person's imprisonment is justified—the exact right that *Matter of M-S-* seeks to eliminate. Thus, this Court should deny the motion to vacate and clarify that Plaintiffs have a due process right to a bond hearing before an immigration judge. Moreover, this Court already concluded that the balance of hardships clearly weighs in favor of Plaintiffs. The irreparable injury to Bond Hearing Class members from failing to provide them with timely and constitutionally adequate bond hearings, as well as the public interest in compliance with the Constitution, clearly outweigh any burden to the government caused by the remedies the preliminary injunction requires. *See* Dkt. 110 at 15-18.

This Court should also deny Defendants' procedural and jurisdictional arguments for vacatur of the preliminary injunction. First, while Plaintiffs have already taken steps to amend the existing complaint, such action is *not* strictly required to support the injunction, as

Defendants assert. *See* Dkt. 114 at 12. In their Second Amended Complaint, Plaintiffs alleged

that they have a constitutional right to "a bond hearing that is fair and comports with due

process." Dkt. 26 ¶ 148. Thus, Plaintiffs have sufficiently pleaded a due process claim to a bond

hearing. Second, Defendants are wrong to suggest that Plaintiffs' claims are moot. *See* Dkt. 114

at 12-13. Even though the named Plaintiffs have been released from detention, they continue to

have live claims because they face unlawful re-detention as a result of *Matter of M-S*, and their

detention claims are "capable of repetition, yet evading review." Dkt. 102 at 8 (quoting *Rivera v.

Holder*, 307 F.R.D. 539, 548 (W.D. Wash. 2015)). Third, Defendants wrongly assert that a new

class certification process would be necessary in order for the preliminary injunction to include a

requirement for bond hearings. *See* Dkt. 114 at 12-13. The Bond Hearing Class as certified is

entirely adequate to address the claims for bond hearings. Finally, the Court should reject

Defendants' arguments for vacatur under 8 U.S.C. § 1252(f)(1) & (e)(3). Those provisions do not

bar this Court from issuing classwide injunctive relief on Plaintiffs' constitutional challenge to

unlawful detention.

## BACKGROUND

Plaintiffs' Second Amended Complaint, filed on August 22, 2018, alleged that

Defendants violated their right to timely credible fear interviews and their constitutional right to

a prompt "bond hearing that is fair and comports with due process." Dkt. 26 ¶ 148; *id.* ¶¶ 146-

165; *see also id.* ¶ 5 ("Federal law requires that if an asylum seeker enters the United States at a

location other than a designated "Port Of Entry" and is determined to have a credible fear of

persecution . . . , that asylum seeker is entitled to an individualized bond hearing" that "must

comport with constitutional requirements."). The Second Amended Complaint does not cite

*Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005). As to their bond claims, Plaintiffs sought relief

on behalf of a class of:

> All detained asylum seekers who entered the United States without inspection,
> who were initially subject to expedited removal proceedings under 8 U.S.C.
> §1225(b), who were determined to have a credible fear of persecution, but who

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

are not provided a bond hearing with a verbatim transcript or recording of the
hearing within 7 days of requesting a bond hearing.

Dkt. 26 ¶ 137 (hereinafter, the "Bond Hearing Class").

On September 18, 2018, former Attorney General Sessions self-certified the question of
whether the Board of Immigration Appeals' ("BIA") decision in *Matter of X-K-*—which
recognized that individuals like members of the Bond Hearing Class are entitled to bond hearings
before an immigration judge—"should be overruled." *Matter of M-G-G-*, 27 I. & N. Dec. 469
(A.G. 2018); *Matter of M-S-*, 27 I. & N. Dec. 476 (A.G. 2018). Defendants moved to extend all
deadlines and place this case in abeyance in light of former Attorney General Sessions' action.
*See* Dkt. 83. The Court denied the motion, noting that "[i]f Attorney General Barr issues a
decision in Matter of M-S-, the Court will address that decision as needed" and that class
members would face "at least a 'fair possibility' of harm" were proceedings in this case stayed.
Dkt. 101 at 3.

Neither former Attorney General Sessions nor his successors immediately ruled upon
*Matter of M-S-*. In the intervening months, the Court denied in part Defendants' motion to
dismiss, finding that "Plaintiffs have adequately plead[ed] that they were within the borders of
this country without permission when detained, and thus enjoy inherent constitutional due
process protections which they are entitled to vindicate through the legal process." Dkt. 91 at 10.
The Court subsequently denied Defendants' motion to reconsider and granted Plaintiffs' motion
for class certification. *See* Dkts. 100, 102.

On April 5, 2019, the Court granted Plaintiffs' motion for a preliminary injunction for the
Bond Hearing Class. Dkt. 110. The Court found that members of the Bond Hearing Class have
"[a] constitutional right to press their due process claims, including their right to be free from
indeterminate civil detention, and their right to have the bond hearing conducted in conformity
with due process." *Id*. at 7; *see also id*. at 10 ("[I]t is the prolongation of Plaintiffs' detention that
is at the heart of the interest which they seek to protect."). The Court determined that the
"Constitution does not require" Plaintiffs to "endure such a no-win scenario" of being forced to

decide between "indeterminate detention" with an "inequitable burden of proof and procedural deficiencies" and "be[ing] deported back to a homeland where they have already been found to have a credible fear of injury or death." *Id*. at 9. The Court ordered that, within thirty days, the government must either provide members of the Bond Hearing Class with a bond hearing before an immigration judge within seven days of their request, or release them from detention. *Id*. at 14, 19. In addition, the court ordered that (1) the government must bear the burden of justifying continued detention in those hearings, (2) the government must record the bond hearings and produce either the recording or verbatim transcript on appeal, and that (3) immigration judges must produce a written decision with particularized determinations at the conclusion of the hearing. *Id*. at 19.

Eleven days after this Court ordered preliminary injunctive relief, Defendant Barr issued *Matter of M-S-*. That decision overruled *Matter of X-K-* and interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to hold that *all* noncitizens "transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." 27 I. & N. Dec. at 519. However, Defendant Barr delayed implementation of the decision for 90 days in light of the decision's "significant impact . . . on detention operations." *Id.* at 519 n.8. On April 22, 2019, the parties filed a stipulated motion proposing a briefing schedule for Defendants' motion, agreeing to stay the enforcement of the preliminary injunction until May 31, 2019, "[i]n order to resolve the impact of [*Matter of M-S-*] on the preliminary injunction as expeditiously as possible." Dkt. 111. Accordingly, on April 26, 2019, Defendants moved to vacate this Court's preliminary injunction order, arguing, *inter alia*, that Plaintiffs must amend their complaint in order to proceed with their bond hearing claims in this case. Dkt. 114 at 12-13.

On May 2, 2019, Plaintiffs sought leave to file a Third Amended Complaint to squarely confront *Matter of M-S-*. Dkt. 116. If the Court grants Plaintiffs' leave to amend, Plaintiffs will promptly file a motion to modify this Court's preliminary injunction order to ask the Court to enjoin *Matter of M-S-* on constitutional and statutory grounds.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

**LEGAL STANDARD**

District courts retain inherent authority to modify a preliminary injunction order based on changed circumstances, including a change in law. *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961) ("[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen."); *see also Hawaii v. Trump*, 871 F.3d 646, 654 (9th Cir. 2017) ("The district court has the power to supervise compliance with an injunction and to 'modify a preliminary injunction in consideration of new facts.'"). "A party seeking modification . . . of an injunction bears the burden of establishing that a significant change in facts or law warrants revision . . . ." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

**ARGUMENT**

**I.     This Court Should Hold Defendants' Motion to Vacate in Abeyance.**

This Court should hold Defendants' motion to vacate in abeyance to allow the Court to consider it in conjunction with Plaintiffs' Third Amended Complaint and Plaintiffs' forthcoming motion for modification of the injunction to enjoin *Matter of M-S-* and provide for bond hearings. The proposed Third Amended Complaint, among other things, challenges the Attorney General's decision as violating the Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act. *See* Dkt. 116-1, ¶¶ 117-146. Should the Court grant Plaintiffs' motion for leave to file the Third Amended Complaint, Plaintiffs will promptly file a motion to modify the preliminary injunction to expressly provide for a right to a bond hearing and to enjoin *Matter of M-S-* as unconstitutional and contrary to law. Plaintiffs are able to demonstrate a likelihood of success on this claim, as the elimination of bond hearings is incompatible with the reasoning this Court adopted in its preliminary injunction ruling. *See* Dkt. 110 at 7, 15 (recognizing Plaintiffs' likelihood of success on their claim that Defendants violated their constitutional "right to have the bond hearings conducted in conformity with due process").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

Thus, judicial economy would be served by deferring a ruling on Defendants' motion to vacate. Moreover, deferring adjudication would not prejudice Defendants, as *Matter of M-S-* will not take effect until July 16, 2019. 27 I. & N. Dec. at 519 n.8. As long as Plaintiffs are entitled to bond hearings, the injunction requires that those hearings be timely and include the other due process safeguards specified by the Court's Order. In addition, this Court already held that the irreparable harm to Plaintiffs and Bond Hearing Class members from depriving them of constitutionally-adequate bond hearings, along with the balance of equities, decisively outweigh any burden to Defendants. *See* Dkt. 110 at 15-18; *see also id.* at 18 (weighing the equities and concluding that "[t]his is not a close call"). Thus, this Court should defer ruling on Defendants' motion.

## II.     In the Alternative, this Court Should Deny Defendants' Motion to Vacate and Hold that Plaintiffs Have a Constitutional Right to a Bond Hearing.

Should the Court decline to hold Defendants' motion to vacate in abeyance, it should nonetheless deny the motion and affirm the existing preliminary injunction. The Second Amended Complaint already alleges a due process right to a bond hearing. Moreover, *Matter of M-S-* is contrary to the reasoning of the Court's preliminary injunction ruling. Looking to long-established substantive and procedural due process principles, that decision recognized that the Bond Hearing Class has a due process right to a prompt and fair bond hearing. Accordingly, Defendants' motion to vacate should be rejected.

### A.     The Existing Complaint Alleges a Due Process Right to a Bond Hearing.

Contrary to Defendants' assertions, *see* Dkt. 114 at 12, the existing complaint adequately alleges a due process right to a bond hearing. The Second Amended Complaint states:

> Federal law requires that if an asylum seeker enters the United States at a location other than a designated 'Port of Entry' and is determined to have a credible fear of persecution . . . , that asylum seeker is entitled to an individualized bond hearing before an immigration judge . . . . This bond hearing must comport with constitutional requirements." Dkt. 26 ¶ 5.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

> The Bill of Rights prohibits the federal government from depriving any person of their liberty without due process of law (U.S. Constitution, 5th Amendment). Dkt. 26 ¶ 6.
>
> Asylum seekers who cross the United States border . . . . have a constitutionally protected liberty interest in . . . not being imprisoned without the opportunity for a prompt bond hearing that comports with constitutional requirements. Dkt. 26 ¶ 7.
>
> The named plaintiffs and proposed class members have a constitutionally protected liberty interest in . . . (2) not being imprisoned in federal detention for an unreasonable time awaiting their bond hearing, and (3) having a bond hearing that is fair and comports with due process. Dkt. 26 ¶ 148.

Defendants erroneously contend that the bond hearing claim "depends upon a regulatory entitlement to a bond hearing." Dkt. 114 at 12. But Plaintiffs' allegations ground the claim in constitutionally protected liberty interests and due process protections. Plaintiffs did not specify in detail the constitutional and statutory underpinnings to Class members' right to a bond hearing when they filed the Second Amended Complaint as it was undisputed at that time that Bond Hearing Class members were entitled to such a hearing. However, Federal Rule of Civil Procedure 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). "Accordingly, a complaint that plausibly states a factual basis for the claim, so as to give notice to the opponent, may not be dismissed for failure to indicate the statute on which the claim is based." 2 James Wm. Moore et al., *Moore's Federal Practice* § 8.04[3] (Matthew Bender 3d Ed. 2019); *cf. Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam) ("[N]o heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."). Likewise, Plaintiffs need not have expressly invoked the Due Process Clause in order to have adequately pleaded a constitutional right to a bond hearing.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

**B.      The Preliminary Injunction Relies on Constitutional Holdings that Supersede the Reasoning in *Matter of M-S-*.**

Defendants' attempt to eliminate bond hearings through *Matter of M-S-* is flatly inconsistent with the reasoning of this Court's preliminary injunction ruling, which rests entirely on Constitutional due process. *See* Dkt. 110 at 6-15. Moreover, the case law underpinning this Court's preliminary injunction ruling makes clear that the bedrock due process requirement for detention is a hearing before a neutral adjudicator on whether a person's imprisonment is justified—the very right *M-S-* seeks to eliminate. *See infra* Section II.C.

Defendants entirely ignore this Court's explicit reliance on Plaintiffs' *constitutional* right to bond hearings. This Court acknowledged that, because Plaintiffs have all entered the country, they are entitled to due process protections under longstanding Supreme Court and Ninth Circuit precedent. *See* Dkt. 91 at 9-10; Dkt. 110 at 6-7 (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014)); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce [a noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (due process protects every person within the United States, "[e]ven one whose presence in this country is unlawful, involuntary, or transitory"). This Court further held that Plaintiffs have a protected constitutional interest in liberty: "[a] constitutional right to press their due process claims, including their right to be free from indeterminate civil detention, and their right to have the bond hearings conducted in conformity with due process." Dkt. 110 at 7. Indeed, only after making that finding did the Court proceed to the procedural protections required at a bond hearing: "The Court *further* finds that the fundamental liberty interest implicated by the Bond Hearing Class's prolonged and indeterminate detention extends to the procedural remedies which they are seeking as well . . . ." *Id.* (emphasis added).

Defendants argue that the preliminary injunction *presumed* the existence of bond hearings pursuant to *Matter of X-K-* and thus should be vacated in light of *Matter of M-S-*. *See*

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

Dkt. 114 at 8-9. But Defendants misunderstand this Court's reference to *Matter of X-K-*. At the time the Court issued the preliminary injunction, the agency's official position, as reflected in *Matter of X-K-*, was that Bond Hearing Class members had a right to a bond hearing. Thus, this Court cited to the precedent as acknowledging that Bond Hearing Class members "are entitled to request release from custody during the pendency of the asylum process." Dkt. 110 at 2 (citing *Matter of X-K*, 23 I. & N. Dec. 731 (BIA 2005)). However, the Court's order did not hold that *Matter of X-K-* provided the *sole* right to a bond hearing, but instead merely evidenced the agency's current position. Indeed, the Court had previously explained that "[i]f Attorney General Barr issues a decision in Matter of M-S-, the Court will address that decision as needed." Dkt. 101 at 3. Thus, while recognizing that it may need to address the agency's future changes in policy and practice, this Court's order was not predicated on the agency's position regarding class members' right to bond hearings.

Defendants also point to the Supreme Court's language in *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018), indicating that 8 U.S.C. § 1225(b)(1)(B)(ii) imposes mandatory detention. *See* Dkt. 114 at 9. But *Jennings*, which was decided before this Court issued its preliminary injunction, does not impact its reasoning for two reasons. First, *Jennings* did not address claims brought by the class of asylum seekers at issue here. The class certified in *Jennings* included only individuals who were classified as "arriving" pursuant to 8 U.S.C. § 1225(b), who argued primarily that they were entitled to bond hearings after they had faced six months of prolonged detention. *Rodriguez v. Hayes* (*Rodriguez I*), 591 F.3d 1105 (9th Cir. 2010) (reversing district court's denial of class certification for arriving noncitizens detained six months under 8 U.S.C. § 1225(b)); *Rodriguez v. Holder*, CV 07-03239 TJH (RNBx), 2011 WL 13294658 (C.D. Cal. Mar. 8, 2011) (granting class certification on remand). *Jennings* did not address the unique claims of those who entered without inspection and who make up the Bond Hearing Class. Second, the Court in *Jennings* explicitly declined to address any *constitutional* challenges to detention and remanded the case to the lower courts to decide those questions in the first instance. 138 S. Ct. at

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

851. Thus, *Jennings*' discussion of *the statute* is irrelevant to the *constitutional* argument for a bond hearing that Plaintiffs advance here. Likewise, the Attorney General in *Matter of M-S-* declined to address whether the denial of bond hearings to individuals like Plaintiffs "poses a constitutional problem." 27 I. & N. Dec. at 509 n.1.

### C.   Due Process Requires an Individualized Hearing Before Neutral Decision-maker on Flight Risk and Danger to the Community.

Despite *Matter of M-S-*'s statutory holding, both the substantive and procedural due process authorities that underpin this Court's preliminary injunction ruling require a bond hearing on constitutional grounds. As this Court found, "[i]t has long been recognized that immigration detainees have a constitutionally-protected interest in their freedom." Dkt. 110 at 6. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690; *see also* Dkt. 110 at 6 (recognizing that Plaintiffs' interest "is at the core of the liberty protected by the Due Process Clause") (quoting *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017)). Thus, immigration detention, like all civil detention, is justified only where "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). Immigration detention violates due process unless it is reasonably related to the government's goals of effectuating removal and protecting against danger and flight risk during the removal process. *Id.*; *see also Hernandez*, 872 F.3d at 990. Moreover, detention must be accompanied by adequate procedural safeguards to ensure that those purposes are actually being served. *Zadvydas*, 533 U.S. at 690-92; *see also Hernandez*, 872 F.3d at 990.

Defendants' elimination of bond hearings means that the only procedure available to individuals to seek release is a discretionary parole determination made by a DHS officer. *See infra* p. 13-14. However, with only one exception—*Demore v. Kim*, 538 U.S. 510 (2003), a case which is clearly distinguishable, *see infra* p. 12-13—the Supreme Court has never upheld civil

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

detention as constitutional without an individualized hearing before a neutral decision-maker to ensure that the person's imprisonment is actually serving the government's goals. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 750 (1987) (upholding pretrial detention where Congress provided "a full-blown adversary hearing" on dangerousness, where the government bears the burden of proof by clear and convincing evidence); *Schall v. Martin*, 467 U.S. 253, 277, 280-81 (1984) (upholding detention pending a juvenile delinquency determination where the government proves dangerousness in a formal adversarial hearing with notice and counsel); *Hendricks*, 521 U.S. at 357-58 (upholding civil commitment when there are "proper procedures and evidentiary standards," including an individualized hearing on dangerousness); *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) (noting individual's entitlement to "constitutionally adequate procedures to establish the grounds for his confinement"). This Court relied on several of these cases in recognizing that the Constitution entitles Plaintiffs to a prompt and fair bond hearing. *See* Dkt. 110 at 11 (citing *Salerno*, *Hendricks*, and *Foucha*). Similarly, this Court has recognized that "[t]he Constitution does not require" that Plaintiffs "accept their indeterminate detention" or "give up their asylum claim and allow themselves to be deported back to a homeland where they have already been found to have a credible fear of injury or death." Dkt. 110 at 9.

Although the Supreme Court upheld immigration detention without a hearing in *Demore v. Kim*, that case is clearly distinguishable. First, the statute at issue in *Demore* imposed mandatory detention on a subset of noncitizens who had committed an enumerated list of crimes, based on Congress's determination that they posed a categorical bail risk. *See* 8 U.S.C. § 1226(c). The Court emphasized that this "narrow detention policy" was reasonably related to the government's purpose of effectuating removal and protecting public safety. *Demore*, 538 U.S. at 526-28. By contrast, the detention statute here applies broadly to individuals with no criminal records whatsoever and who all have been found to have *bona fide* claims to protection in the United States. *Cf. Zadvydas*, 533 U.S. at 691 (holding that the government's indefinite detention policy raised due process concerns because the detention statute did "not apply narrowly to 'a

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

small segment of particularly dangerous individuals,' . . . but broadly to [noncitizens] ordered removed for many and various reasons, including tourist visa violations" (quoting *Hendricks*, 521 U.S. at 368)).

Second, the Court in *Demore* also placed great reliance on the voluminous record before Congress, which showed that the population of "criminal aliens" targeted by the mandatory detention statute posed a heightened categorical risk of flight and danger to the community. 538 U.S. at 518-21 (citing studies and congressional findings regarding the "wholesale failure by the INS to deal with increasing rates of criminal activity by [noncitizens]"). In contrast, Congress made no such findings regarding the population at issue here—individuals who have all been screened by DHS and found to have a credible fear of persecution or torture.

The procedural due process analysis adopted by the Court also requires individualized bond hearings before an immigration judge. *See* Dkt. 110 at 6-15 (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976)). This analysis makes clear that Defendants' new policy violates Plaintiffs' due process rights. First, Plaintiffs have a profound interest in preventing their arbitrary detention. *See* Dkt. 110 at 6; *see also Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 993; *supra* Section II.B. Second, the elimination of bond hearings creates an unacceptable risk of the erroneous deprivation of Plaintiffs' liberty. *Cf.* Dkt. 110 at 12 ("The risk of deprivation occasioned by the indeterminate prolonged civil detention of this class seems almost too obvious to state."). Absent an order from this Court, as of July 16, 2019, class members will only be able to seek release via a parole request. *See Matter of M-S-*, 27 I. & N. Dec. at 510. In contrast to a bond hearing before an immigration judge, the parole process consists merely of a custody review conducted by low-level detention officers of U.S. Immigration and Customs Enforcement ("ICE"), the arresting agency. *See* 8 C.F.R. § 212.5(a). It includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See generally id.* § 212.5. Instead, ICE officers make parole decisions—that could result in months or years of additional

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

incarceration—by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation. *See, e.g.*, *Abdi v. Duke*, 280 F. Supp. 3d 373, 404 (W.D.N.Y. 2017); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324-25, 341 (D.D.C. 2018). As the Supreme Court recognized in *Zadvydas*, "the Constitution may well preclude granting an administrative body the unreviewable authority to make determinations implicating fundamental rights." 533 U.S. at 692 (internal quotation marks and citation omitted); *see also Morrissey v. Brewer*, 408 U.S. 471, 486 (1972) (requiring a neutral decision-maker for parole revocation hearings); *St. John v. McElroy*, 917 F. Supp. 243, 251 (S.D.N.Y. 1996) (due process is not satisfied by parole reviews, but requires an "impartial decisionmaker" to review detention since, "[d]ue to political and community pressure, the INS, an executive agency, has every incentive to continue to detain [certain noncitizens]"). Moreover, as several courts have found, ICE is no longer providing individualized reviews of flight risk and danger, but instead using the parole process to rubberstamp arbitrary detention. *See Damus*, 313 F. Supp. 3d at 339-42; *Abdi*, 280 F. Supp. 3d at 404-08; *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 145-49 (D.D.C. 2018). In contrast, bond hearings have provided a critical check on arbitrary detention. For example, even without the procedural safeguards required by the preliminary injunction, nearly half of all detained individuals who seek a bond hearing before an immigration judge are found to pose no flight risk or danger to the community and granted release on bond. *See* Transactional Records Access Clearinghouse, Three-fold Difference in Immigration Bond Amounts by Court Location (Jul. 2, 2018), http://trac.syr.edu/immigration/reports/519/ (showing that 47.1% of immigration court bond decisions in the first 8 months of FY2018 granted release on bond).

Finally, the government lacks any countervailing interest in denying Plaintiffs' bond hearings. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured . . . ." *Hernandez*, 872 F.3d at 994. Thus, administrative

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

cost is the only possible factor that could weigh against providing bond hearings. *See id*. Yet the government has provided bond hearings to asylum seekers pursuant to *Matter of X-K-* for more than a decade, and more generally to noncitizens who have entered the U.S. for the past 50 years. The government cannot seriously argue that providing the hearings it has provided for decades imposes excessive burdens on the agency. This is particularly true given that the government already has determined that Plaintiffs have *bona fide* claims to persecution or torture, which gives them the right to remain in the United States while their applications for protection are considered in immigration proceedings. *See* H.R. Rep. No. 104-469, pt.1, at 158 (1996) ("If the [noncitizen] meets this [credible fear] threshold, the [noncitizen] is permitted to remain in the United States to receive a full adjudication of the asylum claim . . . .").

Defendants also assert that Plaintiffs could not be entitled to bond hearings within 7 days of a request, because the Ninth Circuit has addressed only the right to bond hearings after six months of detention for certain noncitizens. *See* Dkt. 114 at 12 (citing *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings*, 138 S. Ct. at 852). But, in *Rodriguez*, the Ninth Circuit simply did not address a constitutional claim like the one Plaintiffs present here. *See Rodriguez*, 804 F.3d at 1074 (reviewing claims based on statutory interpretation). Nor did the court speak to the rights of individuals who, like Plaintiffs, entered the United States without inspection and then passed credible fear interviews. *See id.* at 1081-82 (describing § 1225(b) subclass).

In sum, Plaintiffs are likely to succeed on the merits of their constitutional claim to a bond hearing. Plaintiffs remain entitled to *timely* bond hearings with procedural protections. The Court has already recognized their likelihood of success as to these claims where they are entitled to a bond hearing. Dkt. 110 at 15, 19. Since Plaintiffs remain entitled to bond hearings pursuant to their substantive and procedural due process rights, *see supra*, they remain entitled to prompt hearings that comport with due process requirements.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

III.    **The Court Should Reject Defendants' Procedural and Jurisdictional Arguments for Vacatur.**

    A.    **The Named Plaintiffs Continue to Have Live Claims Because They Face Re-detention Without a Bond Hearing, and Their Claims Are Capable of Repetition, Yet Evading Review.**

This Court should also reject Defendants' procedural and jurisdictional arguments for vacatur. Defendants' suggestion that the named Plaintiffs' detention claims are moot, *see* Dkt. 114 at 12-13, is incorrect for two reasons. First, although Plaintiff Vasquez and Plaintiff Padilla were released on bonds set by an immigration judge, they continue to "have a concrete interest" in this case. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks and citation omitted), because they now face re-detention without a constitutionally adequate bond hearing as a result of *Matter of M-S-*. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id*. Moreover, as this Court has already recognized, Plaintiffs' challenges to detention pending removal proceedings are "inherently transitory" and therefore subject to the "capable of repetition yet evading review" exception to mootness. *Padilla v. ICE*, No. C18-928 MJP, 2019 WL 1056466, at *4 (W.D. Wash. Mar. 6, 2019) (citing *Rivera v. Holder*, 307 F.R.D. 539, 548 (W.D. Wash. 2015)).

First, Plaintiffs face the specter of re-detention without an adequate bond hearing as a result of *Matter of M-S-*. By statute and regulation, Defendants may revoke an immigration judge's bond order at any time based on "changed circumstances." *See* 8 U.S.C. § 1226(b) (providing that "[t]he Attorney General at any time may revoke a bond or parole . . . and detain the alien"); 8 C.F.R. § 1236.1(c)(9) (same); *see also Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (recognizing that immigration judge's bond order should not be revoked "absent a change of circumstance"); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (explaining that the DHS has "incorporated [*Sugay*] into its practice"). Here Defendants argue that *Matter of M-S-* is a changed circumstance that eliminates Plaintiffs' eligibility for a bond hearing, *see* Dkt. 114 at 10, thus rendering Plaintiffs' bond orders void *ab initio*. Moreover, if and when Defendants revoke Plaintiffs' bonds, Plaintiffs will be detained without *any* bond

hearing—much less a prompt bond hearing that comports with due process. Thus, Plaintiffs'

have a concrete stake in the outcome of this litigation, and their claims are not moot.

Indeed, this is made clear by *Matter of M-S-* itself, which reversed the respondent's bond

order and ordered the respondent re-detained unless DHS grants parole. 27 I. & N. Dec. at 519.

Defendants have recently subjected other noncitizens to possible re-detention based on similar

changes in law. *See, e.g.*, *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2151877, at *1, *3

(N.D. Cal. May 10, 2018) (granting temporary restraining order to prevent re-detention where

the BIA vacated a bond granted pursuant to *Rodriguez*, 804 F.3d 1060, after the Supreme Court

reversed that decision in *Jennings*); *see also id*. at *3 (citing evidence that "following *Jennings*,

other non-citizens have been re-detained").

Second, Defendants' suggestion that Plaintiffs lack standing because they were not

subject to "prolonged" detention completely misconstrues Plaintiffs' claims. *See* Dkt. 114 at 10.

Plaintiffs argue that they have a constitutional right to a prompt bond hearing that comports with

due process as soon as they establish a credible fear of persecution. *See* Dkt. 26 ¶¶ 146-52. In no

way do their claims hinge on detention for prolonged periods of time.

**B.      A New Class Certification Process Is Not Warranted.**

Defendants suggest that vacatur of the preliminary injunction is appropriate—and a new

class certification process is needed—because (1) *Matter of M-S-* eliminated the statutory basis

for bond hearings, (2) "new class representatives are needed," and (3) the class overlaps with that

in *Jennings*. Dkt. 114 at 12-13. Those assertions are wrong for several reasons. First, Defendants

are incorrect in asserting that the certified class depends upon a regulatory entitlement to a bond

hearing. *Id.* The certified class perfectly encompasses Plaintiffs' claims, including those

presented in the proposed Third Amended Complaint, as to their entitlement to a bond hearing.

Neither the order granting class certification nor the class definition depends on a statutory

entitlement. Dkt. 102. Instead, the Bond Hearing Class is defined in part as those asylum seekers

who are "not provided a bond hearing . . . within seven days of requesting a bond hearing." *Id.* at

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

2. Thus, the class definition remains appropriate for addressing *Matter of M-S-*, as any individual denied a timely bond hearing falls within the class definition.

Second, new class representatives are unnecessary. As described *supra* Section III.A, current class members who received a bond hearing now face likely re-detention under *Matter of M-S-*. Moreover, as this Court noted in its order, Plaintiffs should not be required to wait for the imminent harm to occur before bringing their claim. Dkt. 110 at 8 (citing *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009)). Accordingly, the Bond Hearing Class is adequately represented by the current named Plaintiffs facing that harm. Moreover, Defendants' suggestion that new class representatives are necessary would simply permit Defendants to implement *Matter of M-S-* without any opportunity for review. Defendants presumably would object to any class representative who has not been denied a bond hearing on standing grounds, but Defendant Barr's own decision prohibits immigration judges from denying bond hearings for 90 days from the date he issued the decision. 27 I. & N. at 519 n.8.

Third, the certified class in *Jennings* does not prohibit continued certification here. *Jennings* concerns a distinct challenge where plaintiffs are not contesting initial periods of detention without a bond hearing, but arguing that the detention statutes must be read to afford a bond hearing after six months of imprisonment. *See* 138 S. Ct. at 851. In contrast, this case concerns whether asylum seekers who have entered the country are constitutionally entitled to an *immediate* hearing before a neutral decision maker to determine if their detention is justified. Finally, nationwide certification remains appropriate for reasons Plaintiffs stated in their reply to Defendants' opposition to class certification, Dkt. 73 at 10-12, and this Court's decision granting certification, Dkt. 102 at 11-12 (finding nationwide certification appropriate in light of routine transfers of individuals in detention throughout the country, absence of "unique local issues," and class members' inability "to pursue litigation on their own").

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

**C.       Sections 1252(f)(1) and (e)(3) Do Not Prohibit this Court from Granting Injunctive Relief.**

**1.       Section 1252(f)(1) Does Not Bar Classwide Injunctive Relief on Plaintiffs' Due Process Claim.**

Defendants suggest that 8 U.S.C. § 1252(f)(1) warrants vacatur of the preliminary injunction because it bars classwide injunctive relief on constitutional grounds. Dkt. 114 at 13-14. Defendants' are wrong for two reasons. First, by its terms, § 1252(f)(1) does not bar classwide injunctive relief on behalf of individuals in removal proceedings. Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter . . . other than with respect to the application of such provisions to *an individual [noncitizen] against whom proceedings under such part have been initiated*." 8 U.S.C. § 1252(f)(1) (emphases added). The last clause preserves authority over claims by noncitizens who have been placed in removal proceedings. *Am. Immigration Lawyers Ass'n  v. Reno*, 199 F.3d 1352, 1359-60 (D.C. Cir. 2000) ("Congress meant to allow litigation challenging the new system by, and only by, *[noncitizens] against whom the new procedures had been applied*.") (emphasis added). Here all class members have been detained only *after* removal proceedings have begun.

Congress adopted § 1252(f)(1) after a period in which organizations and classes of individuals who were *not* in removal proceedings repeatedly brought preemptive challenges to the enforcement of certain immigration statutes. *E.g.*, *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 47-53 (1993) (class actions brought by, *inter alia*, immigrant rights' organizations and class of individuals, many of whom were not in removal proceedings); *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 487-88 (1991) (same by, *inter alia*, refugee services organizations and class of individuals, only some of whom were in proceedings); *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1029 (5th Cir. Unit B 1982) (class of, *inter alia*, individuals who applied for asylum but were not in proceedings). Section 1252(f)(1) now serves as a standing limitation: only natural persons *already* targeted for removal can seek injunctive relief. Plaintiffs here, unlike in *CSS*,

*McNary*, and *Haitian Refugee Center*, satisfy that requirement because all are "individual [noncitizens] against whom [removal] proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1).

Although § 1252(f)(1) includes a reference to "an individual [noncitizen]," that language does not bar classwide injunctive relief. Courts decline to construe references in the singular to "any individual" or "any plaintiff" as eliminating judicial authority under Rule 23. *E.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("The fact that the statute speaks in terms of an action brought by 'any individual' . . . does not indicate that the usual Rule providing for class actions is not controlling . . . . Indeed, a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them."). Moreover, "traditional equitable powers can be curtailed only by an unmistakable legislative command." *Rodriguez I*, 591 F.3d at 1120. It is not a "necessary and inescapable inference from the language of Section 1252(f)" that it bars the class from pursuing injunctive relief. *Id*. (internal quotation marks and citation omitted).

Second, § 1252(f)(1) cannot prohibit injunctive relief here because it does not apply to habeas cases. Plaintiffs invoke the Court's habeas corpus authority under 28 U.S.C. § 2241. Dkt. 26 ¶¶ 13-14. Under *INS v. St. Cyr*, federal courts will not read a statute to restrict their power to grant habeas relief unless Congress explicitly revokes authority under the general federal habeas statute—28 U.S.C. § 2241—by name. 533 U.S. 289, 310-14 (2001) (holding statutes lacked sufficiently clear statement to eliminate habeas review); *Demore*, 538 U.S. at 517 (same as to statute concerning review of detention decisions).

Section 1252(f)(1) does not expressly revoke authority to grant injunctive relief in habeas corpus cases; it is silent on the subject. The silence is telling because Congress was aware of the possibility of class habeas actions when it enacted § 1252(f)(1). Courts had repeatedly permitted habeas class actions before 1996. *E.g.*, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 393, 404 (1980) (holding proposed class representative could appeal denial of nationwide certification of

class habeas); *Nguyen Da Yen v. Kissinger*, 528 F.2d 1194, 1202 (9th Cir. 1975) ("[W]e see no reason here why the complaint may not be treated as a joint or class application for a writ of habeas corpus[.]").

Finally, restricting federal courts' power to resolve habeas cases "as law and justice require," 28 U.S.C. § 2243, would raise serious constitutional problems. Congress gave federal courts authority to entertain habeas cases, including the power to order the release of federal prisoners, in 1789. *See St. Cyr*, 533 U.S. at 305. Under the Suspension Clause, "the habeas court must have the power to order the conditional release of an individual unlawfully detained." *Boumediene v. Bush*, 128 S. Ct. 2229, 2266 (2008). For this reason as well, § 1252(f) cannot be construed as depriving federal courts of equitable authority in cases founded upon habeas jurisdiction.

Moreover, with respect to this Court's jurisdiction, as this Court has already held—and the Supreme Court recently affirmed—Plaintiffs may seek classwide declaratory relief. *See* Dkt. 91 at 19-20; *see also Nielsen v. Preap*, 139 S.Ct. 954, 962 (2019) (discussing § 1252(f)(1) and holding that "the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief").

## 2.   Section 1252(e)(3) Does Not Apply to Plaintiffs' Detention Claim.

Defendants' argument that 8 U.S.C. § 1252(e)(3)(A)(i) requires any challenge to "detention rules" be brought in the District Court for the District of Columbia is also meritless. *See* Dkt. 114 at 14-15. The Supreme Court has already held that federal courts have jurisdiction to review challenges to the detention provision at 8 U.S.C. § 1225(b)(1)(A)(ii). *See Jennings*, 138 S.Ct. at 839-42 (finding jurisdiction over, *inter alia*, a claim challenging the government's interpretation of 8 U.S.C. § 1225(b)(1)(A)(ii)). Tellingly, Defendants have not previously raised § 1252(e)(3) to challenge this Court's jurisdiction over Plaintiffs constitutional challenges to their detention although they have had a year to do so.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

The plain language of § 1252(e)(3) makes clear that it does not apply here. Section (e)(3) addresses judicial review of "challenges to the validity of the system" and provides that "[j]udicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia." Plaintiffs do not challenge "determinations under [the statute] and its implementation," but instead challenge their *detention* under § 1225(b)(1)(A)(ii). Indeed, any determinations referred to in (e)(3) have *already been made* as to Plaintiffs, as they have been determined to have a credible fear of persecution and are no longer in expedited removal proceedings, but rather transferred for full proceedings before an immigration judge. 8 C.F.R. § 208.30(f); *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1075 (D. Or. 2018) (holding that individuals with positive credible fear determinations "are no longer subject to the provisions of § 1225(b)(1)" and that § 1252(e) is "thus inapplicable").

As used consistently throughout § 1225(b), the term "determination" means certain decisions that result in the entry of an expedited order of removal. For example, an immigration officer must determine if an individual is subject to the expedited removal process—a determination of, *inter alia*, whether a noncitizen is an applicant for entry and is inadmissible on the two grounds enumerated in the statute. *See* 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer *determines* that [a noncitizen]" is subject to expedited removal, "the officer shall order the [noncitizen] removed . . . unless the [noncitizen] indicates . . . a fear of persecution" (emphasis added)).

An immigration officer must also refer certain noncitizens for credible fear hearings, and "determine" if they have a credible fear of persecution. *See id.* § 1225(b)(1)(A)(ii) (requiring referral of a noncitizen an immigration officer "*determines*" to be subject to expedited removal to an asylum officer if they express a fear of persecution); § 1225(b)(1)(A)(iii) (referring to "*determination* of inadmissibility under this subparagraph"); § 1225(b)(1)(B)(ii) (requiring further consideration of asylum application "[i]f the officer *determines* at the time of the

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

interview that [a noncitizen] has a credible fear of persecution"); § 1225(b)(1)(B)(iii)(II)

(requiring "written record of *determination*" that a noncitizen has not shown a credible fear);

§ 1225(b)(1)(B)(iii)(III) (providing for "review by an immigration judge of a *determination*" that

a non-citizen does not have a credible fear "no later than 7 days after the date of the

*determination*"); § 1225(b)(1)(B)(iii)(IV) (providing for detention "pending a final *determination*

of a credible fear of persecution") (all emphases added). These determinations are made "under

[the statute] and its implementation" through regulations and guidelines. 8 U.S.C. § 1252(e)(3);

*cf. Grace v. Whitaker*, 344 F. Supp. 3d 96, 115-16 (D.D.C. 2018) (reviewing, under

§ 1252(e)(3)(A), written policy guiding immigration officers' determination of whether

noncitizens had established a credible fear of persecution).

Section 1252(e)(3)'s title further confirms that the statute does not cover the detention

decisions challenged here. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508

U.S. 439, 458 (1993) (statutory titles "can aid in resolving an ambiguity in the legislation's text"

(internal quotation marks and citation omitted)). Subsection (e), of which (e)(3) is part, is entitled

"Judicial review of orders under section 1225(b)(1)." Plaintiffs are not challenging orders under

§ 1225(b)(1), nor could they be, as they have already been found to have a credible fear of

persecution and are not subject to expedited orders of removal.

## **CONCLUSION**

For the foregoing reasons, this Court should hold Defendants' motion to vacate in

abeyance pending adjudication of Plaintiffs' motion to file the Third Amended Complaint and

forthcoming motion to modify the preliminary injunction. In the alternative, this Court should

deny Defendants' motion to vacate and affirm the existing preliminary injunction on the grounds

that Plaintiffs and Bond Hearing Class Members' have a due process right to a bond hearing.

RESPECTFULLY SUBMITTED this 10th day of May, 2019.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite. 400
Seattle, WA 98104
Telephone (206) 957-8611

s/ Matt Adams
Matt Adams, WSBA No. 28287
Email: matt@nwirp.org

s/ Leila Kang
Leila Kang, WSBA No. 48048
Email: leila@nwirp.org

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974
Email: aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

s/ Trina Realmuto
Trina Realmuto*
Email: trealmuto@immcouncil.org

s/ Kristin Macleod-Ball
Kristin Macleod-Ball*
Email: kmacleod-ball@immcouncil.org

AMERICAN IMMIGRATION COUNCIL
1318 Beacon Street, Suite 18
Brookline, MA 02446
(857) 305-3600

s/ Judy Rabinovitz
Judy Rabinovitz*
Email: jrabinovitz@aclu.org

s/ Michael Tan
Michael Tan*
Email: mtan@aclu.org

s/ Anand Balakrishnan
Anand Balakrishnan*
Email: abalakrishnan@aclu.org

ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
(212) 549-2618

*Admitted pro hac vice

Attorneys for Plaintiffs-Petitioners

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 10th day of May, 2019.

*s/ Aaron Korthuis*
Aaron Korthuis
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 816-3872
Facsimile: (206) 587-4025
Email: aaron@nwirp.org