***The Honorable Marsha J. Pechman***

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ,<br>Plaintiffs-Petitioners,<br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); THOMAS HOMAN, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; MARC J. MOORE, Seattle Field Office Director, ICE, JEFFERSON BEAUREGARD SESSIONS III, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington; CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington; DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility,<br><br>Defendants-Respondents. | No. 2:18-cv-928 MJP<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO VACATE THE COURT'S PRELIMINARY INJUNCTION ORDER (DKT. 110)**<br><br>NOTE ON MOTION CALENDAR: MAY 15, 2019. |





Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 1

I. Holding the Motion to Vacate in Abeyance is Procedurally Improper. ................................ 1

II. Both Plaintiffs' Previous Complaint and the Order Depended upon the Validity of *Matter of X-K-*. ........................................................................................................ 3

III. This Court Should Refrain From Deciding Issues Pertaining to Claims That Are Not Yet Part of the Case. ........................................................................................................ 6

CONCLUSION ........................................................................................................ 11

CERTIFICATE OF SERVICE ........................................................................................ 13

ii

DEFENDANTS' REPLY-MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

## INTRODUCTION

Both parties agree that the preliminary injunction this Court entered on April 5, *see* Dkt. 110 ("Order") cannot stand in its current form. Plaintiffs themselves have confirmed as much, having moved to amend their Complaint, *see* Dkt. 116, seeking to obviate the claim upon which injunctive relief was granted, and indicating their intention to "immediately file a motion to modify the preliminary injunction." Dkt. 126 at 1, 5-6, 23. Those two actions should be dispositive, and this Court should immediately vacate the now-unsupported injunction. Importantly, such an action will cause no prejudice to Plaintiffs, because the parties have agreed to postpone the implementation of any injunction until July 1, *see* Dkt. 127 at 1, which gives the parties plenty of time to brief an appropriate motion to seek injunctive relief based on Plaintiffs' new claims challenging *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019).

But even though the preliminary injunction is predicated on a claim that has become "non-existent," and a legal nullity, *Valadez-Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011), Plaintiffs nonetheless maintain that the underlying injunction should remain in place even while they simultaneously agree that it needs to be "modif[ied]." Dkt. 126 at 1, 5-6, 23. That position lacks any legal support and defies common sense. Indeed, although Plaintiffs forecast their ability to demonstrate a "likelihood of success," Dkt. 126 at 6, 15, on a new motion for a preliminary injunction, they do not even specify which of the claims added to account for *Matter of M-S-*, *see* Dkt. 116-1 at 20-24, warrant injunctive relief. This Court should not accept at face value Plaintiffs' naked assertions that injunctive relief is automatic on any of these new claims. Instead, the proper path forward is clear: (1) vacate the Order; and (2) if Plaintiffs believe an injunction is warranted based on their new claims, they can file a new preliminary injunction motion. Accordingly, Defendants' motion to vacate should be granted.

## ARGUMENT

### I. Holding the Motion to Vacate in Abeyance is Procedurally Improper.

Citing their forthcoming motion to modify the injunction, Plaintiffs ask this Court to hold "the motion to vacate in abeyance." Dkt. 126 at 6-7. This proposition is bereft of any legal support, which is unsurprising, as it is procedurally improper. It is axiomatic that if a district court seeks

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

to alter a previously-entered injunction based on "intervening events" but "believes that there should still be a temporary injunction," "the old one should be *vacated* and a new one entered." *Tepos-Perez v. INS*, 449 F.2d 1290, 1291 (9th Cir. 1971) (emphasis added); *see also Cooper v. City of Tucson*, 649 F. App'x 624, 626-27 (9th Cir. 2016) ("In light of the [changed circumstances] …. we vacate the preliminary injunction …. [H]owever, we remand to the district court to determine whether a revised preliminary injunction is appropriate."). In other words, because the claim that supported the Order has been rendered obsolete by the Third Amended Complaint and because Plaintiffs have conceded the need to modify the Order, the Order is without basis in law and must be promptly vacated. There is no legal justification to keep the Order in place simply because Plaintiffs claim that they will, in a future motion, show a "likelihood of success" on unspecified claims. Dkt. 126 at 6. Unsubstantiated averments cannot substitute for Plaintiffs actually discharging their burden to demonstrate that a new injunction is warranted. A preliminary injunction is "an extraordinary remedy never awarded as of right," *Winter v. NRDC*, 555 U.S. 7, 24 (2008), and the burden is squarely on the "plaintiff" to make a "clear showing" of "entitle[ment] to such relief." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011). It follows that Plaintiffs cannot short-circuit this process based on a conjectural, future legal showing.

In lieu of satisfying the preliminary injunction standard, Plaintiffs suggest that Defendants can be held to a defunct preliminary injunction based on Plaintiffs' belief that doing so is judicially expedient and that Defendants will not suffer prejudice. These considerations are neither appropriate nor meritorious. First, Plaintiffs' "judicial economy" contention, Dkt. 126 at 6-7, presumes that this Court is likely to grant Plaintiffs' forthcoming motion, and glosses over the fact that the claims and underlying reasoning animating a new injunction, if entered, will differ from the Order and require a completely new analysis of the law and the injunctive factors. *See* Dkt. 114 at 7-15. Thus, even if there was a judicial economy exception that countenanced keeping the Order in place contrary to settled legal principles—which there is not—it would be inapplicable. Second, Plaintiffs claim that "deferring adjudication would not prejudice Defendants" because "*Matter of M-S-* will not take effect until July 16, 2019." Dkt. 126 at 7. As an initial matter, if

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

considerations of prejudice are weighed, it is prejudice to Plaintiffs that is lacking given that the parties have agreed to allow time for additional briefing prior to any injunction coming into force. *See* Dkt. 127 at 1. Plaintiffs conveniently omit, moreover, that the Order does not simply mandate that Defendants hold bond hearings. It imposes a series of onerous new procedures, including holding bond hearings "within seven days of a bond hearing request." Dkt. 110 at 19. Defendants are already undergoing significant administrative work to comply with the Order, which, absent vacatur, entails radically overhauling the system for scheduling and administering bond hearings as part of their efforts to hold bond hearings within just seven days of bond hearing requests made by a nationwide class based on an Order that Plaintiffs themselves agree must be modified. This is the paradigmatic example of prejudice.

At the same time, delaying action on this motion produces no tangible benefits for Plaintiffs, because the parties have stipulated to staying the compliance date with the Order until July 1, which provides Plaintiffs sufficient time to seek interim relief on their new claims. *See* Dkt. 127 at 1. Such an illogical outcome, one that threatens to inflict substantial harm on Defendants but serves no purpose for Plaintiffs, only underscores the need for immediate vacatur of the Order.

## II. Both Plaintiffs' Previous Complaint and the Order Depended upon the Validity of *Matter of X-K-*.

Plaintiffs disingenuously attempt to minimize the importance of *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), remaining good law with respect to both their previous Complaint and the Order. *See* Dkt. 126 at 7-11. Even a cursory glance at the pleadings and the Order belies this position.

First, Plaintiffs argue that they "did not specify in detail the constitutional and statutory underpinnings to Class members' right to a bond hearing when they filed the Second Amended Complaint." Dkt. 126 at 8. But this misses the point: the parties litigated Plaintiffs' motion for a preliminary injunction, including the constitutional claims, based on the assumption that *Matter of X-K-* provided for bond hearings, and all of the pleadings and the Order relied on that assumption. Indeed, Plaintiffs' preliminary injunction motion cites *Matter of X-K-* to contend that "detained

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

asylum seekers who entered the country without inspection … are eligible to seek release from incarceration" and recognizes that "[p]roposed class members are eligible for bond hearings *unless and until the decision is vacated*." Dkt. 45 at 3-4 n.2 (emphasis added). For relief on new claims to now be appropriate, Plaintiffs would need to show, and this Court would need to find, a likelihood of success that 8 U.S.C. § 1225(b)(1)(B)(ii) either does not require detention, even though it states "the alien shall be detained," or is unconstitutional as applied to the Bond Hearing Class because it does not allow bond hearings "within seven days of a bond hearing request." Dkt. 110 at 19. The original Complaint, preliminary injunction motion, and this Court's Order do not analyze either of these claims, and therefore cannot stand on the current record.

Plaintiffs do not refute that these core claims were missing from their Complaint, their preliminary injunction motion, and the Order. Instead, Plaintiffs' only argument is that they adequately pled a "constitutional right to a bond hearing," Dkt. 126 at 8, which suffices to keep the Order intact. That is wrong. A constitutional claim based upon the implementation of a regulatory entitlement (under *Matter of X-K-*) is fundamentally different from a constitutional claim that a statute is unconstitutional, with the latter requiring a far more exacting showing, and directly implicating the basic immigration principle that aliens seeking entry to the country are entitled to only the process provided by Congress, and no more. *See* Dkt. 114 at 11; *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).

Next, Plaintiffs try to rewrite the Order by arguing that "the Court's order did not hold that *Matter of X-K-* provided the *sole* right to a bond hearing, but instead merely evidenced the agency's current position." Dkt. 126 at 10 (emphasis in original). But that is simply not what the Order says. Instead, the first sentence of the Order in the "Background" section is: "Under the Immigration and Nationality Act ('INA'), detained asylum seekers who are determined by [USCIS] to have a credible fear of persecution are entitled to request release from custody during the pendency of the asylum process. *See Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005)." Dkt. 110 at 2. No other source of that "entitle[ment]," *id.*, was identified, which makes sense because the exclusive basis for ordering bond hearings was a regulatory interpretation by *Matter of X-K-*. Tellingly, although Plaintiffs portray *Matter of X-K-* as simply representing the "agency's

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

position," Dkt. 126 at 10, they do not identify a single other legal predicate for the bond hearings they sought, underscoring that when this Court noted that it would address *Matter of M-S-* "as needed," *id.* (citing Dkt. 101 at 3), and when Plaintiffs said that class members were eligible for bond hearings "*unless and until* [*Matter of X-K-*] *is vacated*," Dkt. 45 at 4 n.2 (emphasis added), there was a meeting of the minds that this was not merely an agency position, but the applicable baseline governing the claims being litigated with respect to the timing of bond hearings. *See* Dkt. 114 at 8.

Finally, Plaintiffs dispute the impact of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), on the Order. Dkt. 126 at 10. Again, Plaintiffs fail to address the narrow question presented by Defendants' motion to vacate, which is whether the statutory analysis in the Order can withstand the change in law that *Matter of M-S-* implemented based upon the clear ruling in *Jennings* that Section 1225(b) could not be interpreted to permit release on bond. *See* 27 I&N Dec. at 517-18. That narrow question is easy to answer: the change in law and reformulation of Plaintiffs' claims requires vacating the Order.

Even looking beyond that narrow question, that larger question must be answered in the negative, because this Court's reasoning that 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)—which is inapplicable to Plaintiffs, *see* Dkt. 110 at 7—must be somehow construed differently than 8 U.S.C. § 1225(b)(1)(B)(ii)—which explicitly applies to Plaintiffs—cannot be reconciled with either *Jennings* or *Matter of M-S-*. *See* Dkt. 114 at 8-9; *Matter of M-S-*, 27 I&N Dec. at 515-16. Notably, Plaintiffs do not take issue with any aspect of the statutory interpretation in *Matter of M-S-*, nor do they dispute that the decision commands deference from this Court. *See* Dkt. 114 at 15-18. Instead, Plaintiffs make two irrelevant and erroneous arguments. First, Plaintiffs contend that "*Jennings* did not address the unique claims of those who entered without inspection and who make up the Bond Hearing Class." Dkt. 126 at 10. But for purposes of mandatory detention, the statute does not treat arriving aliens differently from aliens who enter without inspection. "An alien present in the United States who has not been admitted or who arrives in the United States (*whether or not at a designated port of arrival*) … shall be deemed for purposes of this chapter an applicant for admission," 8 U.S.C. § 1225(a)(1) (emphasis added). In turn, 8 U.S.C. §

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1225(b)(1)(A)(ii) prescribes that all asylum applicants who express a credible fear of persecution, irrespective of how they entered, are subject to a credible fear interview, and if found to have a credible fear, "detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). And, in any event, *Matter of M-S-* addressed a plaintiff who, like Plaintiffs, entered between Ports of Entry, *see* 27 I&N Dec. at 514, yet found that the interpretive principles elucidated in *Jennings* straightforwardly compelled, as a matter of statutory interpretation, detention without a bond hearing after the credible fear finding. *See id.* at 517-18; *see also* Dkt. 114 at 15-17. The same is true here.

Plaintiffs also protest that "the [Supreme] Court in *Jennings* explicitly declined to address any *constitutional* challenges to detention and remanded the case to the lower courts to decide those questions in the first instance." Dkt. 126 at 10 (emphasis in original). Defendants do not dispute that point, nor do they contend that Plaintiffs are categorically foreclosed from raising any constitutional claims. Instead, Defendants take the largely unrebutted position that *Matter of M-S-* necessarily requires this Court to reconsider the statutory and constitutional analysis in the Order, which in turn compels vacatur of the Order. *See* Dkt. 114 at 8-9. Whether Plaintiffs' new constitutional claims justify injunctive relief is a question far outside the scope of this motion, and one that can only be addressed after vacating the Order and considering a new motion for a preliminary injunction that is based on the claims in the Third Amended Complaint.

## III. This Court Should Refrain From Deciding Issues Pertaining to Claims That Are Not Yet Part of the Case.

The remainder of Plaintiffs' opposition to the motion to vacate attempts to litigate a variety of merits issues that are immaterial to resolution of the motion to vacate and whether the specific reasoning underlying the Order cannot be sustained given *Matter of M-S-*. *See* Dkt. 126 at 11-23. By itself, this demonstrates the presence of new legal issues that must be examined before new preliminary injunctive relief can be ordered. Now that the parties have stipulated to the Third Amended Complaint, *see* Dkt. 127 at 1, as well as a schedule to allow resolution of these issues before Plaintiffs will face any prejudice, *see id.*, these issues should only be considered in conjunction with the parties' forthcoming motions after the Order is vacated.

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Even if the Court were to examine these arguments now, it is clear that they involve radically different considerations than the ones this Court addressed in issuing the Order.

**A.** First, there has been no consideration by this Court, or argument by the parties, of whether the Due Process Clause requires that a bond hearing be held within seven days of a bond hearing request when the operative statute requires detention. Indeed, in the *Jennings* litigation, the Ninth Circuit "recognized six months as a presumptively reasonable period of detention," and noted that protections under the Due Process Clause attached when detention "has lasted six months and is expected to continue more than minimally beyond six months." *Rodriguez v. Robbins*, 804 F.3d 1060, 1077-78 (9th Cir. 2015), *rev'd by Jennings*, 138 S. Ct. at 852. And Supreme Court cases have expressly reinforced the proposition that the Due Process Clause is not even implicated until the length of detention has reached six months. *See Demore v. Kim*, 538 U.S. 510, 521 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). In light of these precedents, it would be extraordinary to allow an injunction to remain in force that requires bond hearings within seven days.

Plaintiffs' only response to this wealth of authority is to return to their argument that in *Jennings*, the plaintiffs did not "enter[] the United States without inspection." Dkt. 126 at 15. But many of the plaintiffs in *Jennings* resided in the United States, as did the plaintiffs in *Zadvydas* and *Demore*, where the Supreme Court upheld detention schemes allowing for detention of six months or longer. Because no apposite case supports Plaintiffs' demand to end detention after one week, Plaintiffs' free-floating contention about what "due process requires," Dkt. 126 at 11, is incorrect and, in any event, cannot support keeping the Order in place. Instead, if Plaintiffs want to seek preliminary relief on this basis, they must move for relief under the federal rules based on the Third Amended Complaint.

**B.** Second, Plaintiffs must demonstrate standing and the propriety of class certification with respect to the new claims in the Third Amended Complaint. *See* Dkt. 114 at 12-13. Plaintiffs argue that they possess standing and no new class certification process is necessary. *See* Dkt. 126 at 16-18. Yet again, Plaintiffs conflate merits arguments for dismissal, which are not at issue now, and the implications of *Matter of M-S-*, which are. Regarding the latter, Plaintiffs have failed to

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

show that this Court does not need to reassess both standing and class certification in the wake of the Third Amended Complaint. That need for reassessment means that the current classwide injunction must be vacated.

Indeed, Plaintiffs concede that standing must now be based on an entirely new theory—the perceived "specter of re-detention" that Plaintiffs purportedly face after having been released on bond. Dkt. 126 at 16. That theory has not been fully briefed by the parties, and cannot form the basis for leaving the Order in effect. It is also entirely speculative, and is the sort of issue that may be resolved as part of the implementation of *Matter of M-S-* when the decision goes into effect in July. *See* Dkt. 114-1 at 12 n.8. It is inappropriate to leave an injunction in place based on a speculative theory that has not been briefed or addressed by this Court.

The class certification process raises similar concerns, and requires an independent assessment of the new claims in the Third Amended Complaint. "To determine whether questions of law or fact common to the class predominate, the court must analyze each claim separately." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 609 (S.D. Cal. 2015); *see also* Fed. R. Civ. P. 23(a)(2). It is therefore of no moment whether the current class definition "remains appropriate for addressing *Matter of M-S-*," Dkt. 126 at 18, because this Court must proceed on a claim-by-claim basis to determine whether class certification remains appropriate and, if so, what the class definition is. That requires ascertaining whether the "current named Plaintiffs" are adequate class representatives, *id.*, which simply cannot be determined without undertaking a claim-by-claim analysis, something Plaintiffs make no effort to do in their opposition.

In the motion to vacate, Defendants further noted that this Court would have to consider whether a "nationwide class" could continue based on the new claims Plaintiffs propose to bring because of likely overlap with "*Jennings* class members." Dkt. 114 at 13. Plaintiffs respond by pointing to the perceived factual difference that they seek an immediate hearing, as opposed to a "bond hearing after six months of imprisonment." Dkt. 126 at 18. But the relevant subclass in *Jennings* was certified based on the class representatives adequately representing the class, and it is inconsistent with that determination to then certify a second identical class to seek relief not sought in *Jennings* based on an identical legal claim—that the Due Process Clause requires aliens

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

detained under § 1225(b) to have the right to a bond hearing. Indeed, one of the *Jennings* subclasses also contains "asylum seekers" who "have been found (by an immigration official) to have a credible fear of persecution in their home country should the United States deny them admittance." 138 S. Ct. at 860 (Breyer, J., dissenting). This very likely constitutes a "single, significant question of law or fact" that this Court must consider in determining whether or not a nationwide class continues to be appropriate. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis omitted).

**C.** Third, *Matter of M-S-* dramatically changes the manner in which the INA's jurisdictional bars apply to this case. Addressing those bars requires a new request for relief and an assessment of how the bars apply to that request, and the instant injunction cannot stand given that the Order's analysis of the bars was based on the existence of regulatory bond hearings under *Matter of X-K-*.

First, 8 U.S.C. § 1252(f)(1) prohibits classwide injunctive relief against the operation of various INA provisions, including Section 1225. This Court found the provision inapplicable because "Plaintiffs are not asking the Court to enjoin or restrain the operation of the provisions of any statute, but instead seek an injunction against actions and policies that violate those statutes." Dkt. 91 at 19 (emphasis omitted). That theory is no longer valid—*Matter of M-S-* (and *Jennings*) establish that bond hearings are not permitted by 8 U.S.C. § 1225. It is therefore essential for Plaintiffs to explain how they will obtain classwide relief in the face of this bar, as the Supreme Court explicitly required in *Jennings*. *See id.*, 138 S. Ct. at 851 ("The Court of Appeals held that this provision did not affect its jurisdiction over respondents' statutory claims because those claims did not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct … not authorized by the statutes. This reasoning does not seem to apply to an order granting relief on constitutional grounds." (emphasis and internal quotation omitted)).

Ignoring this aspect of *Jennings* completely, Plaintiffs maintain that section 1252(f)(1) "does not bar classwide injunctive relief." Dkt. 126 at 20. They are wrong; that is exactly what the provision does. *See Jennings*, 138 S. Ct. at 851 ("Section 1252(f)(1) thus prohibits federal courts from granting classwide injunctive relief."); *Reno v. Am. Arab Anti-Discrimination Comm.*,

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

525 U.S. 471, 481 (1999) ("By its plain terms, and even by its title, that provision is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231."); *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (noting that *Reno* likely "forecloses the argument that § 1252(f)(1) allows classwide injunctive relief"). Rather than grappling with these clear holdings, Plaintiffs rely on a Supreme Court case involving a completely different statute, *see* Dkt. 126 at 20 (citing *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)), that, among other things, involved the construction of a general judicial review provision, rather than an explicit prohibition on injunctive relief with a narrow carve-out for claims brought by "an individual alien." 8 U.S.C. § 1252(f)(1). *See Hamama v. Adduci*, 912 F.3d 869, 878 (6th Cir. 2018) ("*Yamasaki* was about an entirely different statute. And although the rule laid out in *Yamasaki* may be true as a general rule, it does not stop the Court from looking at a particular statute that uses the word 'individual' and determining that, even if the use of 'individual' does not always bar class actions, it does bar them in the particular statute at issue. And that is exactly what the [Supreme] Court found in *Reno*.").

Plaintiffs contend that interpreting section 1252(f)(1) according to its plain terms effectuates an unlawful suspension of the writ of habeas corpus and creates "serious constitutional problems" because Plaintiffs "invoke the Court's habeas corpus authority." Dkt. 126 at 20-21. Such issues obviously have not been considered by this Court and cannot support the continuing effect of the instant injunction. Moreover, the problems Plaintiffs refer to are entirely illusory. Limiting the availability of classwide injunctive relief does not suspend the writ of habeas corpus because traditional writs of habeas corpus remain readily available and "individual alien[s]" remain free to bring habeas cases. 8 U.S.C. § 1252(f)(1). Plaintiffs furthermore misapply the rule in *I.N.S. v. St. Cyr*, 533 U.S. 289, 298-99 (2001), Dkt. 126 at 20, which requires a "clear statement of congressional intent to repeal habeas jurisdiction" in order to find that a statute strips the courts of all "judicial review" of "habeas petitions." That prerequisite has no application where, as here, the statute does not repeal habeas jurisdiction, but instead merely defines the form of remedy available by precluding classwide injunctions. *See Hamama*, 912 F.3d at 879 ("[T]here is nothing in § 1252(f)(1) that suspends the writ of habeas corpus. It is true that habeas is barred as to

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

*injunctive relief* for *class actions*, but there is nothing barring a class from seeking a traditional writ of habeas corpus … or an individual from seeking habeas relief, whether injunctive or otherwise." (emphasis in original)). For similar reasons, section 1252(f)(1) presents no "Suspension Clause" problems, Dkt. 126 at 21. In sum, in view of the claims Plaintiffs propose to add to this case, this Court should reconsider the applicability of section 1252(f)(1).[1]

Likewise, this Court will need to consider how a new request for relief can be squared with section 1252(e)(3). Plaintiffs criticize Defendants for having "not previously raised" this challenge, Dkt. 126 at 21, but it is now an issue because Plaintiffs, in the Third Amended Complaint, challenge the constitutionality and statutory legality of detention for applicants for admission apprehended after crossing the border illegally under 8 U.S.C. § 1225(b)(1)(B)(ii) and its implementing regulations (8 C.F.R. § 235.3(c)), *see* Dkt. 116-1, ¶¶ 54-55, 117-46, which likely requires reviewing "section 1225(b) of this title and its implementation" and whether "such section[] or any regulation issued to implement such section" is lawful. 8 U.S.C. § 1252(e)(3)(A). Plaintiffs' other arguments, Dkt. 126 as 22-23, depend on the nature of the claims they will pursue in the Third Amended Complaint or their new request for interim relief, and provide no basis for keeping the current injunction in force that did not address in any way the Third Amended Complaint's new challenges to a new detention policy.

At this stage of the proceedings, it is unnecessary to determine whether sections 1252(f)(1) and 1252(e)(3) definitively do or do not apply. Instead, it suffices to note that the analysis in the Order regarding section 1252(f)(1) must change to account for the nature of the claims in the Third Amended Complaint, and must further assess the applicability of section 1252(e)(3) in light of the claims Plaintiffs propose to add.

## CONCLUSION

For the foregoing reasons, this Court should vacate its previous Order granting Plaintiffs' motion for a preliminary injunction.

---

[1] Plaintiffs also maintain that the bar in section 1252(f)(1) does not extend to "classwide declaratory relief." Dkt. 126 at 21. Even if correct, this argument means that the Order must be vacated because it is preliminary and it is not declaratory relief. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[P]rior to final judgment there is no established declaratory remedy comparable to a preliminary injunction.").

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Dated: May 15, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

LAUREN C. BINGHAM
Trial Attorney

*/s/Archith Ramkumar*
ARCHITH RAMKUMAR
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 598-8060
Archith.Ramkumar@usdoj.gov

SARAH STEVENS WILSON
Assistant United States Attorney

DEFENDANTS' REPLY-MOTION TO VACATE
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Archith Ramkumar*
Trial Attorney
United States Department of Justice

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060