1

The Honorable Marsha J. Pechman

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

YOLANY PADILLA;  IBIS GUZMAN; BLANCA
ORANTES; BALTAZAR VASQUEZ;

10

No. 2:18-cv-928 MJP

11

Plaintiffs-Petitioners,

12

v.

**THIRD AMENDED
COMPLAINT:
CLASS ACTION FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

13

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR");
MATTHEW ALBENCE, Acting Deputy Director of ICE;
KEVIN K. McALEENAN, Acting Secretary of DHS;
JOHN P. SANDERS, Acting Commissioner of CBP; L.
FRANCIS CISSNA, Director of USCIS; ELIZABETH
GODFREY, Acting Director of Seattle Field Office, ICE;
WILLIAM BARR, United States Attorney General;
LOWELL CLARK, warden of the Northwest Detention
Center in Tacoma, Washington;  CHARLES INGRAM,
warden of the Federal Detention Center in SeaTac,
Washington;  DAVID SHINN, warden of the Federal
Correctional Institute in Victorville, California; JAMES
JANECKA, warden of the Adelanto Detention Facility;

14

15

16

17

18

19

20

21

22

23

Defendants-Respondents.

24

25

26

# I.   **<u>INTRODUCTION</u>**

1.      Plaintiffs filed this lawsuit on behalf of themselves and other detained individuals seeking protection from persecution and torture, challenging the United States' government's punitive policies and practices seeking to unlawfully deter and obstruct them from applying for protection.

2.      This lawsuit initially included challenges to the legality of the government's zero-tolerance practice of forcibly ripping children away from parents seeking asylum, withholding and protection under the Convention Against Torture ("CAT"). Plaintiffs did not pursue those claims after a federal court in the Southern District of California issued a nationwide preliminary injunction Order against forcibly separating families. *Ms. L v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018); *see also* Dkt. 26.

3.      In their Second Amended Complaint, Plaintiffs reaffirmed that they sought relief on behalf of themselves and members of two proposed classes: (1) the Credible Fear Interview Class, challenging delayed credible fear determinations, and (2) the Bond Hearing Class, challenging delayed bond hearings that do not comport with constitutional requirements. *Id.*

4.      On March 6, 2019, this Court granted Plaintiffs' Motion for Class Certification and certified both the Credible Fear Interview Class and Bond Hearing Class. Dkt. 102 at 2. On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction, ordering that Defendant Executive Office for Immigration Review conduct bond hearings within seven days of request by a Bond Hearing Class members, place the burden of proof at those hearings on Defendant Department of Homeland Security, record the hearings, produce a recording or verbatim transcript upon appeal, and produce a written decision with particularized determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

5.      Thereafter, on April 16, 2019, Defendant Attorney General Barr issued *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2018). In this decision, Defendant Barr reversed and vacated *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), holding that the Immigration and Nationality Act

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

(INA) does not permit bond hearings for individuals who enter the United States without inspection, establish a credible fear for persecution or torture, and are then referred for removal proceedings before an immigration judge.

6.      Defendants have therefore now adopted a policy that not only denies Plaintiffs and class members the procedural protections they seek, but prevents them from obtaining bond hearings *at all*. Plaintiffs file this Third Amended Complaint to more squarely address this new and even more extreme policy.

7.      Defendants exacerbate the harm those fleeing persecution have already suffered by needlessly depriving them of their liberty without adequate review. Plaintiffs seek this Court's intervention to ensure both that Defendants do not interfere with their right to apply for protection by delaying Plaintiffs' credible fear interviews and by subjecting them to lengthy detention without prompt bond hearings that comport with the Due Process Clause.

## II.      JURISDICTION

8.      This case arises under the Fifth Amendment of the United States Constitution and the Administrative Procedure Act ("APA"). This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States Constitution ("Suspension Clause"). Defendants have waived sovereign immunity pursuant to 5 U.S.C. § 702.

9.      Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes  were in custody for purposes of habeas jurisdiction when this action was filed on June 25, 2018. Moreover, Plaintiffs remain in custody as they are in ongoing removal proceedings and subject to re-detention.

10.      Plaintiffs Guzman, Orantes, and Vasquez were in custody for purposes of habeas jurisdiction when the First Amended Complaint was electronically submitted on July 15, 2018.

## III.      VENUE

11.      Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of the relevant facts occurred within this District. Those facts include Defendants' detention of

THIRD AMENDED COMPL. - 2
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1  Plaintiffs Padilla, Guzman, and Orantes in this District; Defendants' failure in this District to

2  promptly conduct credible fear interviews and determinations for Plaintiffs and class members'

3  claims for protection in the United States; and Defendants' failure in this District to promptly

4  conduct bond hearings that comport with due process and the Administrative Procedure Act.

### IV.  **PARTIES**

6  12.  Plaintiff Yolany Padilla is citizen of Honduras seeking asylum, withholding, and

7  protection under CAT for herself and her 6-year-old son (J.A.) in the United States.

8  13.  Plaintiff Ibis Guzman is a citizen of Honduras seeking asylum, withholding, and

9  protection under CAT for herself and her 5-year-old son (R.G.) in the United States.

10  14.  Plaintiff Blanca Orantes is a citizen of El Salvador seeking asylum, withholding,

11  and protection under CAT for herself and her 8-year-old son (A.M.) in the United States.

12  15.  Plaintiff Baltazar Vasquez is citizen of El Salvador seeking asylum, withholding,

13  and protection under CAT in the United States.

14  16.  Defendant U.S. Department of Homeland Security ("DHS") is the federal

15  government agency responsible for enforcing U.S. immigration law. Its component agencies

16  include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border

17  Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").

18  17.  Defendant ICE carries out removal orders and oversees immigration detention.

19  ICE's responsibilities include determining whether individuals seeking protection will be

20  released and referring cases for a credible fear interview and subsequent proceedings before the

21  immigration court. ICE's local field office in Tukwila, Washington, is responsible for

22  determining whether individuals detained in Washington will be released, and when their cases

23  will be submitted for credible fear interviews and subsequent proceedings before the immigration

24  court.

25  18.  Defendant CBP conducts the initial processing and detention of individuals

26  seeking protection at or near the U.S. border. CBP's responsibilities include determining whether

THIRD AMENDED COMPL. - 3
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   individuals seeking protection will be released and when their cases will be submitted for a

2   credible fear interview.

3       19.     Defendant USCIS, through its asylum officers, interviews and screens individuals

4   seeking protection to determine whether to refer their protection claim to the immigration court

5   to adjudicate any application for asylum, withholding of removal, or protection under CAT.

6       20.     Defendant Executive Office for Immigration Review ("EOIR") is a federal

7   government agency within the Department of Justice that includes the immigration courts and

8   the Board of Immigration Appeals ("BIA"). It is responsible for conducting removal

9   proceedings, including adjudicating applications for asylum, withholding, and protection under

10  CAT, and for conducting individual bond hearings for persons in immigration custody.

11      21.     Defendant Matthew Albence is sued in his official capacity as the Acting Deputy

12  Director of ICE , and is a legal custodian of class members.

13      22.     Defendant Elizabeth Godfrey is sued in her official capacity as the ICE Seattle

14  Field Office Director, and is, or was, a legal custodian of the named plaintiffs.

15      23.     Defendant Kevin K. McAleenan is sued in his official capacity as the Acting

16  Secretary of DHS. In this capacity, he directs DHS, ICE, CBP, and USCIS. As a result,

17  Defendant McAleenan is responsible for the administration of immigration laws pursuant to

18  8 U.S.C. § 1103 and is, or was, a legal custodian of the named plaintiffs.

19      24.     Defendant John Sanders is sued in his official capacity as the Acting

20  Commissioner of CBP.

21      25.     Defendant L. Francis Cissna is sued in his official capacity as the Director of

22  USCIS.

23      26.     Defendant William Barr is sued in his official capacity as the United States

24  Attorney General. In this capacity, he directs agencies within the United States Department of

25  Justice, including EOIR. Defendant Barr is responsible for the administration of immigration

26  laws pursuant to 8 U.S.C. § 1103 and oversees Defendant EOIR.

27.     Defendant Steven Langford is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

28.     Defendant Charles Ingram is sued in his official capacity as the warden of the Federal Detention Center in SeaTac, Washington.

29.     Defendant David Shinn is sued in his official capacity as the warden of the Federal Correctional Institute in Victorville, California.

30.     Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.     FACTS

### Legal Background

31.     In 1996, Congress created an expedited removal system and "credible fear" process. 8 U.S.C. § 1225 *et seq*. As enacted by Congress, the expedited removal system involves a streamlined removal process for individuals apprehended at or near the border. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (permitting certain persons who are seeking admission at the border of the United States to be expeditiously removed without a full hearing); 8 U.S.C. § 1225(b)(1)(A)(iii) (authorizing the Attorney General to apply expedited removal to certain inadmissible noncitizens located within the United States); 69 Fed. Reg. 48,877 (Aug. 11, 2004) (providing that the Attorney General will apply expedited removal to persons within the United States who are apprehended within 100 miles of the border and who are unable to demonstrate that they have been continuously physically present in the United States for the preceding 14-day period).

32.     Critically, however, Congress included safeguards in the statute to ensure that those seeking protection from persecution or torture are not returned to their countries of origin. Recognizing the high stakes involved in short-circuiting the formal removal process and the constitutional constraints under which it operates, Congress created specific procedures with detailed requirements for handling claims for protection.

THIRD AMENDED COMPL. - 5
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

33.     The expedited removal process begins with an inspection by an immigration officer, who determines the individual's admissibility to the United States. If the individual indicates either an intention to apply for asylum or any fear of return to their country of origin, the officer must refer the individual for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. § 235.3(b)(4).

34.     If an asylum officer determines that an applicant satisfies the credible fear standard—meaning there is a "significant possibility" she is eligible for asylum, 8 U.S.C. § 1225(b)(1)(B)(v)—the applicant is taken out of the expedited removal system altogether and placed into standard removal proceedings under 8 U.S.C. § 1229a.

35.     During § 1229a removal proceedings, the applicant has the opportunity to develop a full record before an immigration judge ("IJ"), apply for asylum, withholding of removal, protection under CAT, and any other relief that may be available, and appeal an adverse decision to the BIA and court of appeals. 8 C.F.R. §§ 208.30(f), 1003.43(f) and 1208.30; *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

36.     Until the asylum officer makes the credible fear determination, an applicant in expedited removal proceedings is subject to mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(4)(ii).

37.     Defendants have a policy or practice of delaying the provision of credible fear interviews to asylum seekers who express a fear of return, and thus unnecessarily prolonging their mandatory detention.

38.     Until recently, BIA case law recognized that noncitizens who were apprehended after entering without inspection and placed in removal proceedings after passing their credible fear interviews are entitled to bond hearings. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019) (issued April 16, 2019, but effective date stayed until July 15, 2019), (interpreting bond regulations at 8 C.F.R. §§ 1003.19(h)(2) and 1236.1).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

39.     Defendants' policy and practice, however, has been both to deny timely bond hearings and to require the noncitizens, rather than the government, to bear the burden of proving at these bond hearings that continued detention is not warranted. These bond hearings have also lacked procedural safeguards such as a verbatim transcript or audio recording, and a contemporaneous written decision explaining the IJ's findings.

40.     Traditionally, those asylum seekers in § 1229a removal proceedings who are not deemed "arriving"—that is, those who were apprehended near the border *after* entering without inspection, as opposed to asylum seekers who are detained at a port of entry—become entitled to an individualized bond hearing before an IJ to assess their eligibility for release from incarceration once they have been found to have a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1225(b)(1)(B)(iii)(IV); 8 C.F.R. §§ 208.30(f), 1236.1(d).

41.     In 2005, Defendant EOIR reaffirmed the availability of bond hearings for this group of asylum seekers. *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), *reversed and vacated by Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019). *See also* 8 C.F.R. § 1003.19(h)(2).

42.     At the bond hearing, an IJ determines whether to release the individual on bond or conditional parole pending resolution of her immigration case. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 1236.1(d)(1), 1003.19. In doing so, the IJ evaluates whether they pose a danger to the community and the likelihood that they will appear at future proceedings. *See Matter of Adeniji*, 22 I&N Dec. 1102, 1112 (BIA 1999).

43.     The detained individual has the right to appeal an IJ's denial of bond to the BIA, 8 C.F.R. § 1003.19(f), or to seek another bond hearing before an immigration judge if they can establish a material change in circumstances since the prior bond decision, 8 C.F.R. § 1003.19(e).

44.     Defendant EOIR places the burden of proving eligibility for release on the detained noncitizen seeking bond, not the government. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

THIRD AMENDED COMPL. - 7
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

45.     Immigration courts do not require recordings of bond proceedings and do not provide transcriptions of the hearing, or even the oral decisions issued in the hearings. Immigration courts also do not issue written decisions unless the individual has filed an administrative appeal of the bond decision. *See, e.g.*, Imm. Court Practice Manual § 9.3(e)(iii), (e)(vii); BIA Practice Manual §§ 4.2(f)(ii), 7.3(b)(ii).

46.     When an IJ denies release on bond or other conditions, she does not make specific, particularized findings, and instead simply checks a box on a template order.

47.     On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction and ordered that Defendant EOIR implement key procedural safeguards. In particular, the Court required EOIR to conduct bond hearings within seven days of request by Bond Hearing Class members, place the burden of proof at those hearings on Defendant DHS, record the hearings, produce a recording or verbatim transcript upon appeal, and produce a written decision with particularized determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

### The Attorney General's Decision in *Matter of M-S-*

48.     On October 12, 2018—approximately two months after Plaintiffs filed their amended complaint raising the bond hearing class claims, and around six months before this Court issued its preliminary injunction—former Attorney General Sessions referred to himself a pro se case seeking to review whether "*Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) . . . should be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." *Matter of M-G-G-*, 27 I&N Dec. 469, 469 (A.G. 2018); *see also  Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018).

49.     On November 7, 2018, former Defendant Sessions resigned as Attorney General.

50.     Subsequently, on February 14, 2019, Attorney General Barr was confirmed by the Senate.

51.     On April 16, 2019, Defendant Barr issued *Matter of M-S-*, 27 I. & N Dec. 509 (A.G. 2018). In this decision, Defendant Barr reversed and vacated *Matter of X-K-*, 23 I&N Dec.

THIRD AMENDED COMPL. - 8
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

731 (BIA 2005), holding the Immigration and Nationality Act (INA) does not permit bond hearings for individuals who enter the United States without inspection, establish a credible fear for persecution or torture, and are then referred for full removal hearings before the immigration court.

52.     Although existing regulations provide for bond hearings except in limited circumstances not applicable here, Defendant Barr did not formally rescind or modify the regulations or engage in the required rulemaking process.

53.     Defendant Barr stayed the effective date of his decision for 90 days so that DHS may conduct the "necessary operational planning for additional detention and parole decisions" that will result from the elimination of IJ bond hearings. *Matter of M-S-*, 27 I&N Dec. at 519 n.8.

54.     Under *Matter of M-S- ,* asylum seekers will be restricted to requesting release from ICE—the jailing authority—through the parole process. 27 I&N Dec. at 516-17 (citing 8 U.S.C. § 1182(d)(5)). In contrast to a bond hearing before an immigration judge, the parole process consists merely of a custody review conducted by low-level ICE detention officers. *See* 8 C.F.R. § 212.5. It includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See id*. Instead, ICE officers make parole decisions—that can result in months or years of additional incarceration—by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation.

55.     In *Matter of M-S-*, Defendant Barr also ordered that the noncitizen in that case, who had previously been released on bond, "must be detained until his removal proceedings conclude" unless DHS chooses to grant him parole. *Matter of M-S-*, 27 I&N Dec. at 519.

56.     Pursuant to *Matter of M-S-*, Defendants will initiate a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection, even after being found to have a credible fear of persecution or torture and even after their cases are transferred for full hearings before the immigration court.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**Plaintiff Yolany Padilla**

57.     Yolany Padilla is a citizen of Honduras seeking asylum in the United States for herself and her 6-year-old son J.A.

58.     On or about May 18, 2018, Ms. Padilla and J.A. entered the United States. As they were making their way to a nearby port of entry, they were arrested by a Border Patrol agent for entering without inspection.

59.     When they arrived at the port of entry, an officer there announced to her and the rest of the group that the adults and children were going to be separated. The children old enough to understand the officer began to cry. J.A. clutched his mother's shirt and said, "No, mommy, I don't want to go." Ms. Padilla reassured her son that any separation would be short, and that everything would be okay. She was able to stay with her son until they were transferred later that day to a holding facility known as a *hielera,* or freezer, because of the freezing temperatures of the rooms. Ms. Padilla and J.A. were then forcibly separated without explanation.

60.     While detained in the *hielera*, Ms. Padilla informed the immigration officers that she and her son were afraid to return to Honduras.

61.     About three days later, Ms. Padilla was transferred to another facility in Laredo, Texas. The officers in that facility took her son's birth certificate from her. When she asked for it back, she was told that the immigration authorities had it.

62.     About twelve days later, Ms. Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

63.     For many weeks after J.A. was forcibly taken from her, Ms. Padilla received no information regarding his whereabouts despite repeated inquiries. Around a month into her detention, the Honduran consul visited Ms. Padilla at the detention center, and she explained that she had no news of her 6-year-old son. Soon thereafter, she was given a piece of paper stating that J.A. was in a place called Cayuga Center in New York, thousands of miles away.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

64.     On July 2, 2018, more than six weeks after being apprehended and detained, Ms. Padilla was given a credible fear interview. The asylum officer issued a positive credible fear determination, and she was placed in removal proceedings.

65.     On July 6, 2018, Ms. Padilla attended her bond hearing before the immigration judge. During the bond hearing, the immigration judge placed the burden of proof on Ms. Padilla to demonstrate that she is neither a danger nor flight risk. To her knowledge, there is no verbatim transcript or recording of her bond hearing. The immigration judge set a bond amount of $8,000.

66.     Ms. Padilla was released on July 6, 2018, after posting bond.

67.     Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

**Plaintiff Ibis Guzman**

68.     Ibis Guzman is a citizen of Honduras seeking asylum in the United States for herself and her 5-year-old son R.G.

69.     On or about May 16, 2018, Ms. Guzman and R.G. entered the United States. When they were apprehended by Border Patrol agents for entering without inspection, Ms. Guzman informed them that she and R.G. are seeking asylum.

70.     After initial questioning, an officer came and forcibly took R.G. from Ms. Guzman, falsely informing her she would be able to see him again in three days. After those three days, Ms. Guzman was transferred to another CBP facility, where officers told her they did not know anything about her son's whereabouts.

71.     Ms. Guzman was then transferred to a facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her child and without any means to contact him. She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

72.     About two weeks later, Ms. Guzman was transferred to the Federal Detention Center in SeaTac, Washington. After being held there for about another week, she was finally

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

informed her child had been placed with Baptist Child and Family Services in San Antonio, Texas, thousands of miles from where she was being held.

73.    On June 20, 2018, Ms. Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

74.    On June 27, 2018, over a month after being apprehended and detained, Ms. Guzman attended a credible fear interview. The asylum officer determined that she has a credible fear, and she was placed in removal proceedings.

75.    On July 3, 2018, Ms. Guzman attended a bond hearing before immigration judge. At the bond hearing, the immigration judge placed the burden of proof on Ms. Guzman to demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration judge issued an order denying her release on bond pending the adjudication of her asylum claim on the merits. The immigration judge did not make specific, particularized findings for the basis of the denial. The immigration judge circled the preprinted words "Flight Risk" on a form order. To her knowledge, there is no verbatim transcript or recording of her bond hearing.

76.    Ms. Guzman was not released until on or about July 31, 2018, after the government was ordered to comply with the preliminary injunction in *Ms. L v. ICE.*

### Plaintiff Blanca Orantes

77.    Blanca Orantes is a citizen of El Salvador seeking asylum in the United States for herself and her 8-year-old son A.M.

78.    On or about May 21, 2018, Ms. Orantes and A.M. entered the United States. They immediately walked to a CBP station to request asylum, and were subsequently arrested for entering without inspection. Ms. Orantes informed a Border Patrol agent that she and A.M. are seeking asylum.

79.    Ms. Orantes and her son were transported to a CBP facility. Before entering the building, the officers led Ms. Orantes into a *hielera* with other adults, and her son into another part of the station with other children.

THIRD AMENDED COMPL. - 12
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

80.     Ms. Orantes was later interviewed by an immigration officer. At that time, another officer brought A.M. to her and told her to "say goodbye" to him because they were being separated. A.M. began crying and pleading Ms. Orantes not to leave, but was forcibly taken away from Ms. Orantes.

81.     On or around May 24, 2018, Ms. Orantes was taken to court, where she pled guilty to improper entry under 8 U.S.C. § 1325 and was sentenced to time served. She was then returned to her cell.

82.     About nine days after this, Ms. Orantes was transported to the Federal Detention Center in SeaTac, Washington.

83.     Ms. Orantes was not provided any information about her child until June 9, 2018, when an ICE officer handed her a slip of paper advising that her son was being held at Children's Home of Kingston, in Kingston, New York.

84.     On June 20, 2018, Ms. Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, still thousands of miles away from her son.

85.     On June 27, 2018, around five weeks after being apprehended, Ms. Orantes was given a credible fear interview. The following day, June 28, 2018, the asylum officer determined that Ms. Orantes established a credible fear, and she was placed in removal proceedings.

86.     Ms. Orantes requested a bond hearing upon being provided the positive credible fear determination.

87.     On July 16, 2018, Ms. Orantes was given a bond hearing before the immigration court. At the bond hearing, the immigration judge placed the burden of proof on Ms. Orantes to demonstrate that she qualified for a bond. At the conclusion of that bond hearing, an immigration judge issued an order denying her release on bond pending the adjudication of her asylum claim on the merits.

88.     In denying Ms. Orantes's request for a bond, the immigration judge did not make specific, particularized findings for the basis of the denial, and even failed to check the box

THIRD AMENDED COMPL. - 13
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    indicating why she was denied bond on the template order.

2        89.     She was released from custody on or about July 23, 2018, after the federal

3    government was forced to comply with the preliminary injunction in *Ms. L. v. ICE*, and

4    thereafter reunited her with her child.

5                            **Plaintiff Baltazar Vasquez**

6        90.     Plaintiff Baltazar Vasquez is a citizen of El Salvador seeking asylum in the

7    United States.

8        91.     On or about June 1, 2018, Mr. Vasquez entered the United States. He was arrested

9    by a Border Patrol agent for entering without inspection, and informed the agent that he was

10   afraid to return to El Salvador and wanted to seek asylum.

11       92.     Mr. Vasquez was first transported by officers to a federal holding center near San

12   Diego, California. Around nine days later, he was transferred to a Federal Detention Center in

13   Victorville, California.

14       93.      On or about July 20, 2018, Mr. Vasquez was transferred to another detention

15   center in Adelanto, California.

16       94.     On or about July 31, 2018, nearly two months after he was first apprehended, Mr.

17   Vasquez was given a credible fear interview. The asylum officer determined he had a credible

18   fear, and he was placed in removal proceedings.

19       95.     Mr. Vasquez requested a bond hearing upon being provided the positive credible

20   fear determination.

21       96.     On August 20, 2018, Mr. Vasquez was given a bond hearing before the

22   immigration court. At the bond hearing, Mr. Vasquez had the burden to prove that he is neither a

23   danger or flight risk, but ultimately, DHS agreed to stipulate to a bond amount of 8,000 dollars.

24   The immigration judge approved this agreement but also required Mr. Vasquez to wear an ankle

25   monitor.

26

THIRD AMENDED COMPL. - 14
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

97.     Pursuant to *Matter of M-S-*, Mr. Vasquez now faces the prospect of being re-detained without a bond hearing.

## VI.     CLASS ALLEGATIONS

98.     Plaintiffs brought this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the classes, the classes are so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the classes, Plaintiffs will fairly and adequately protect the interests of the respective classes, and Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

99.     Plaintiffs sought to represent the following nationwide classes:

a.  **Credible Fear Interview Class ("CFI Class"):** All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. §1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

b.  **Bond Hearing Class ("BH Class"):** All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. §1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

100.    On March 6, 2019, the district court certified the following nationwide classes:

a.  **Credible Fear Interview Class:** All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b)

THIRD AMENDED COMPL. - 15
Case No. 2:18-cv-928 MJP

who are not provided a credible fear determination within ten days of the later of (1) requesting asylum or expressing a fear of persecution to a DHS official or (2) the conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview.

b. **Bond Hearing Class:** All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing.

101.    The certified classes currently are represented by counsel from the Northwest Immigrant Rights Project and the American Immigration Council. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

### Credible Fear Interview Class ("CFI Class")

102.    All named Plaintiffs represent the certified CFI Class.

103.    The CFI Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential class members, but upon information and belief, there are thousands of individuals seeking protection who are subject to expedited removal proceedings and not provided a credible fear interview within ten days of expressing a fear of return or desire to apply for asylum. Defendants are uniquely positioned to identify all class members.

104.    The CFI Class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). By definition, members of the CFI Class are subject to a common practice

THIRD AMENDED COMPL. - 16
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

by Defendants: their failure to provide timely credible fear interviews. This lawsuit raises a question of law common to members of the CFI Class, namely whether Defendants' delay in providing credible fear interviews constitutes agency action unlawfully withheld or unreasonably delayed under the APA, the INA, and the Due Process Clause.

105.    The CFI Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. All named Plaintiffs were not provided credible fear interviews within 10 days of being apprehended and expressing a fear of return to their countries of origin.

106.    The CFI Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that Defendants promptly provide credible fear interviews. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

107.    The members of the class are readily ascertainable through Defendants' records.

108.    The CFI Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unreasonably delaying putative class members' credible fear interviews. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

**Bond Hearing Class ("BH Class")**

109.    Plaintiffs Orantes and Vasquez represent the certified Bond Hearing Class.

110.    The BH Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential class members, but upon information and belief, there are thousands of individuals seeking protection who entered without inspection, were referred to standard removal proceedings after a positive credible fear determination, and were not provided bond hearings either within seven days of requesting the hearing, or whose

THIRD AMENDED COMPL. - 17
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

bond hearings were not recorded or transcribed. Defendants are uniquely positioned to identify all class members.

111.    The BH Class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). Members of the BH Class are subject to common policies and practices by Defendants: their failure to provide timely bond hearings; their placement of the burden of proof on the detained on the detained individual during bond hearings; their failure to provide a verbatim transcript or recording of the bond hearing; their failure to provide a contemporaneous written decision with particularized findings; and finally, due to *Matter of M-S-*, all class members will be denied bond hearings.

112.    This lawsuit raises questions of law common to members of the BH Class: whether Defendants' failure to provide bond hearings violates class members' right to due process, right to a parole hearing under 8 U.S.C. § 1182(d)(5), and the rulemaking requirements of the Administrative Procedure Act; whether Defendants' failure to provide timely bond hearings constitutes agency action unlawfully withheld or unreasonably delayed under the APA, that is contrary to law under the APA; whether due process requires Defendants to provide bond hearings to putative class members within seven days of a request, and whether due process and the APA requires Defendants to place the burden of proof on the government to justify continue detention, and to provide adequate procedural safeguards during the bond hearings provided to putative class members.

113.    The BH Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Plaintiffs Orantes and Vasquez were not provided bond hearings within seven days of requesting a hearing. At the bond hearing, all class representatives were assigned the burden to prove that they are eligible for release under bond. All class representatives were denied a contemporaneous written decision with particularized findings. Defendants are not required to record or provide verbatim transcripts of the hearings and did not advise Plaintiffs Orantes and Vasquez that

THIRD AMENDED COMPL. - 18
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

recordings had been made until filing their First Amended Complaint, Dkt. 8. Finally, in *Matter of M-S-*, Defendant Barr has announced that, as of July 15, 2019, future Bond Hearing Class members will be deprived of *any* bond hearing.

114.    The BH Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class: an order requiring Defendants to provide bond hearings within seven days of request, to place the burden of proof on the government during these bond hearings, to provide a verbatim transcript or recording of the hearing, and to provide a contemporaneous written decision with particularized findings at the end of the hearing. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

115.    The members of the class are readily ascertainable through Defendants' records.

116.    The BH Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unreasonably delaying putative class members' bond hearings. Putative class members received an untimely bond hearing in which they had to bear the burden of proof. Defendants generally do not record or provide verbatim transcripts of putative class members' bond hearings, nor issue contemporaneous written decisions with particularized findings. Moreover, after July 15, 2019, class members will not receive any bond hearings. Injunctive and declaratory relief is thus appropriate with respect to the class as a whole.

## VII.    CAUSES OF ACTION

### COUNT I
**(Violation of Fifth Amendment Right to Due Process—Right to Timely Bond Hearing with Procedural Safeguards)**

117.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

118.  The Due Process Clause of the Fifth Amendment provides that "no person . . . shall be deprived of . . . liberty . . . without due process of law." U.S. Const., amend. V.

THIRD AMENDED COMPL. - 19
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

119.  Named Plaintiffs and all BH Class members were apprehended on U.S. soil after entry and are thus "persons" to whom the Due Process Clause applies.

120.  The Due Process Clause permits civil immigration detention only where such detention is reasonably related to the government's interests in preventing flight or protecting the community from danger and is accompanied by adequate procedures to ensure that detention serves those goals.

121.  Both substantive and procedural due process therefore require an individualized assessment of BH Class members' flight risk or danger to the community in a custody hearing before a neutral decision maker.

122.  The Due Process Clause guarantees that such individualized custody hearings be provided in a timely manner to afford Plaintiffs and BH Class members an opportunity to challenge whether their continued detention is necessary to ensure their future appearance or to avoid danger to the community. Federal courts have consistently held that due process requires an expeditious opportunity to receive that individualized assessment. Defendants' interests in prolonging this civil detention do not outweigh the liberty interests of Plaintiffs and BH Class members.

123.  The Due Process Clause requires that Plaintiffs and BH Class members receive adequate procedural protections to assert their liberty interest. The Due Process Clause requires the government to bear the burden of proof in the custodial hearing of demonstrating that the continued detention of Plaintiffs and BH Class members is justified. Defendants' interests do not outweigh the liberty interests for Plaintiffs and BH Class members.

124.  The Due Process Clause requires that the government provide either a transcript or recording of the hearing and specific, particularized findings of the bond hearing to provide a meaningful opportunity for Plaintiffs and BH Class members to evaluate and appeal the IJ's custody determination. Defendants' interests in issuing decisions without these procedural protections do not outweigh the liberty interests for Plaintiffs and BH Class members.

THIRD AMENDED COMPL. - 20
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

125.  Pursuant to *Matter of M-S-*, Defendants deprive Plaintiffs and BH Class members the right to any custodial hearing before a neutral arbiter to make an individualized determination of whether they present a danger to the community or a flight risk.

126.  Pursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face the prospect of being re-detained without a bond hearing.

127.  Prior to *Matter of M-S-*, Defendants recognized that BH Class members are entitled to a bond hearing. Defendants have regularly delayed these hearings for several weeks after the credible fear determinations.

128.  Defendants have also failed to provide the other bond hearing procedures required by due process, placing the burden of proof on Plaintiffs and BH Class members and refusing to provide them with a recording or verbatim transcript of the hearing as well as a written decision with particularized findings of the bond hearing.

129.  As a result, by failing to provide prompt bond hearings with adequate procedural safeguards, Defendants violate the Fifth Amendment's Due Process Clause.

## COUNT II
### (Violation of Immigration & Nationality Act—Failure to Provide an Individualized Custodial Hearing)

130.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

131.  8 U.S.C. § 1225(b)(1)(A) distinguishes BH class members, who are detained after entering the country, from those who are charged as arriving and seeking admission at a port of entry. 8 U.S.C. § 1225(b)(1)(A)(iii)(I) provides that the Attorney General "may" place BH Class members in expedited removal proceedings, but unlike those who are charged as arriving, does not require that they be subject to mandatory detention.

132.  Under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), asylum seekers are subject to mandatory detention only while "pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."

THIRD AMENDED COMPL. - 21
Case No. 2:18-cv-928 MJP

133.  Plaintiffs and all BH Class members entered without inspection and were placed in expedited removal proceedings under to 8 U.S.C. § 1225(b). All of them established a credible fear of persecution or torture and were thereafter transferred for full hearings before the immigration court.

134.  As such, under the Immigration and Nationality Act, Plaintiffs are entitled to seek a custody hearing where the Attorney General may grant bond or conditional parole. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d); 8 C.F.R. § 1003.19(h)(2).

135.  Defendant Barr's decision in *Matter of M-S-* denies Plaintiffs and BH Class members their statutory right to an individualized custody hearing.

## COUNT III
### (Violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5), and Violation of Fifth Amendment Right to Due Process—Failure to Provide an Individualized Parole Hearing)

136.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

137.  The Immigration and Nationality Act ("INA")provides that the Attorney General "may . . . in his discretion parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States . . . ." 8 U.S.C. § 1182(d)(5)(A). Under the INA and implementing regulations, immigration detention of an asylum seeker must be based on an individualized determination that the asylum seeker constitutes a flight risk or a danger to the community. *See id.*; *see also* 8 C.F.R. § 212.5(b)(5).

138.  Pursuant to implementing regulations, parole reviews are conducted solely by U.S. Immigration and Customs Enforcement ("ICE")—the jailing authority. *See id*.

139.  However, the INA requires an individualized parole hearing before an immigration judge to decide if the asylum seeker constitutes a flight risk or danger to the community.

THIRD AMENDED COMPL. - 22
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

140.    Defendants' policy and practice of denying Plaintiffs and those similarly situated parole hearings before an immigration judge violates the INA.

141.    To the extent the statute denies parole hearings before an immigration judge, the statute violates due process.

### COUNT IV
**(Violation of Administrative Procedure Act—Failure to Follow
Notice & Comment Rulemaking)**

142.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

143.  Regulations that currently govern Defendants DHS and EOIR provide that Plaintiffs and BH Class members may seek review of ICE's custody decision before an IJ. *See* 8 C.F.R. §§ 1003.19(h)(2), 1236.1(d).

144.  *Matter of M-S-* is a final agency action that purports to alter those regulations by adjudication, without engaging in notice and comment rulemaking.

145.  The Administrative Procedure Act requires Defendants to engage in notice and comment rulemaking before undertaking the changes that *Matter of M-S-* purports to make to BH Class Members' rights to a bond hearing. *See* 5 U.S.C. §§ 551(5), 553(b) & (c).

146.  As a result, *Matter of M-S-* is unlawful agency action that this Court should set aside because that decision was issued "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

### COUNT V
**(Violation of Fifth Amendment Right to Due Process—Delays of Credible Fear Interviews)**

147.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

148.  The Due Process Clause guarantees timely and adequate procedures to test Defendants' rationale for detaining asylum seekers.

THIRD AMENDED COMPL. - 23
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

149.  Defendants' practice of delaying individuals seeking protection credible fear interviews beyond 10 days prevents Plaintiffs Padilla, Guzman, Orantes, and Vasquez, and the CFI Class from demonstrating that they have a "significant possibility" of obtaining protection and a lawful status in the United States. 8 U.S.C. § 1225(b)(1)(B)(v). That practice thus further lengthens their time in detention without the opportunity to appear before a neutral decision maker to receive an individualized custodial assessment.

150.  Defendants' interests do not outweigh the significant risks that delayed credible fear interviews pose in wrongfully prolonging Plaintiffs Padilla, Guzman, Orantes, and Vasquez , and CFI Class members' detention, nor do they outweigh their protected due process interests in timely demonstrating their right to protection in the United States.

151.  Defendants' practice of delaying credible fear interviews therefore violates the CFI Class's right to due process.

## <u>COUNT VI</u>
### (Administrative Procedure Act—Delays of Credible Fear Interviews and Bond Hearings and Denial of Procedural Protections)

152.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

153.  The Administrative Procedure Act ("APA") imposes on federal agencies the duty to conclude matters presented to them within a "reasonable time." 5 U.S.C. §555(b).

154.  The APA also permits the CFI and BH Classes to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and prohibits final agency action that is arbitrary and capricious, that violates the Constitution, or that is otherwise not in accordance with law, *id.* § 706(2)(A)-(B).

155.  Both credible fear interviews and bond hearings are "discrete agency actions" that Defendants are "required to take," and therefore constitute agency action that a court may compel. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

156.  Defendants' failure to expeditiously conduct a credible fear interview after detaining Plaintiffs and members of the CFI Class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1).

157.  Defendants' failure to promptly conduct a bond hearing for plaintiffs and members of the BH Class within 7 days of a request also constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See id.*

158.  Defendants' policies regarding (1) the burden of proof in bond proceedings, (2) the lack of recordings and transcripts, (3) the failure to provide specific, particularized findings constitute final agency action.

159.  The lack of these procedural protections is contrary to law and violates the constitutional right to due process of noncitizens seeking protection. *See* 5 U.S.C. § 706(2).

## VIII.   <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request that this Court enter judgment against Defendants granting the following relief on behalf of the Credible Fear Interview Class and the Bond Hearing Class:

A.  Declare that Defendants have an obligation to provide Credible Fear Interview Class members with a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution or torture to any DHS official.

B.  Preliminarily and permanently enjoin Defendants from not providing Credible Fear Interview Class members their credible fear determination within 10 days of requesting asylum or expressing a fear of persecution or torture to any DHS official.

C.  Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing before an immigration judge.

D.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members a bond hearing before an immigration judge.

E.  Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing within 7 days of their requesting a hearing to set reasonable conditions

THIRD AMENDED COMPL. - 25
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

for their release pending adjudication of their claims for protection.

F.  Declare that Defendant DHS must bear the burden of proof to show continued detention is necessary in civil immigration proceedings.

G.  Declare that Defendants have an obligation to provide Bond Hearing Class members a bond hearing with adequate procedural safeguards, including providing a verbatim transcript or recording of their bond hearing upon appeal.

H.  Declare that in bond hearings immigration judges must make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

I.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members their bond hearing within 7 days of the class members' request.

J.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members bond hearings where Defendant DHS bears the burden of proof to show continued detention is necessary.

K.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members their bond hearing with a verbatim transcript or recording of their bond hearing.

L.  Preliminarily and permanently enjoin Defendants from not providing Bond Hearing Class members specific, particularized written findings contemporaneously issued by the immigration judge as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

M.  Order Defendants to pay reasonable attorneys' fees and costs.

N.  Order all other relief that is just and proper.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   Dated this 20th day of May, 2019.

2   *s/ Matt Adams*                                    *s/ Trina Realmuto*
    Matt Adams, WSBA No. 28287               Trina Realmuto*
3

4   *s/ Leila Kang*                                     *s/ Kristin Macleod-Ball*
    Leila Kang, WSBA No. 48048               Kristin Macleod-Ball*
5

6   *s/ Aaron Korthuis*                               AMERICAN IMMIGRATION COUNCIL
    Aaron Korthuis, WSBA No. 53974          1318 Beacon Street, Suite 18
7                                                               Brookline, MA 02446
    NORTHWEST IMMIGRANT RIGHTS         (857) 305-3600
8   PROJECT                                          trealmuto@immcouncil.org
    615 Second Avenue, Suite 400             kmacleod-ball@immcouncil.org
9   Seattle, WA  98104
    (206) 957-8611
10  matt@nwirp.org                               *s/ Judy Rabinovitz*
    leila@nwirp.org                                Judy Rabinovitz*
11  aaron@korthuis.org
12                                                          *s/ Michael Tan*
                                                         Michael Tan*
13  *s/ Emily Chiang*
    Emily Chiang, WSBA No. 50517           *s/ Anand Balakrishnan*
14  ACLU OF WASHINGTON                   Anand Balakrishnan*
15  901 5th Ave #630
    Seattle, WA 98164                           ACLU IMMIGRANTS' RIGHTS PROJECT
16  (206) 624-2184                               125 Broad Street, 18th floor
    echiang@aclu-wa.org                      New York, NY 10004
17                                                          (212) 549-2618
                                                         jrabinovitz@aclu.org
18                                                         mtan@aclu.org
                                                         abalakrishnan@aclu.org
19

20                                                         *Admitted *pro hac vice*

21

22

23

24

25

26

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 20, 2019, I had the foregoing electronically filed with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to those

attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served

in accordance with the Federal Rules of Civil Procedure.

DATED this 20th day of May, 2019.


<u>*s/ Matt Adams*</u>
Matt Adams
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, Washington  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025
Email: matt@nwirp.org

THIRD AMENDED COMPL. - 28
Case No. 2:18-cv-928 MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611