## DECLARATION OF ALLEN S. KELLER

I, Allen S. Keller, declare as follows:

I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

### I.   Qualifications

1. I am currently an Associate Professor of Medicine at New York University (NYU) School of Medicine, where I am also cofounder and Director of the Bellevue/NYU Program for Survivors of Torture (PSOT) and the NYU Center for Health and Human Rights (CHHR).

2. I am a graduate of NYU School of Medicine (1988), completing my residency and chief residency in Primary Care Internal Medicine at Bellevue Hospital/NYU Medical Center. I hold an undergraduate degree from the University of Pennsylvania (1981).

3. I have a long history working with refugee and other vulnerable populations. From 1985 to 1986, I worked as a medical volunteer in refugee camps on the Thai-Cambodian border. And from 1992 to 1993, I worked with the United Nations in Cambodia, developing one of the world's first human rights education curriculums for health professionals. Since founding PSOT in 1995, we have provided comprehensive interdisciplinary healthcare to nearly 4,000 men, women, and children from over 90 countries who endured torture and other human rights abuses.

4. Over my career, I have conducted more than 300 evaluations of asylum seekers, including evaluation of their physical, psychological and social health including most recently in February 2018. Approximately one-third of the individuals were being held in U.S. immigration detention facilities. Given my depth of expertise with this population, in 1997, I helped develop a training module on best practices for interviewing trauma/torture survivors at the request of the

U.S. Citizenship and Immigration Services (then-the Immigration and Naturalization Service), which is still used to teach all new Asylum Officers.

5. Since 1993, I have served as member of the Advisory Board for Physicians for Human Rights, which hosts a network of medical professionals, many of whom I have mentored and trained, who offer pro bono evaluations of individuals seeking asylum in the United States. From 2009 to 2016, I participated in the U.S. Department of Homeland Security Immigration and Customs Enforcement (ICE)-NGO working group as Co-Chair of the Immigration Detention Health Advisory Group.

6. I have conducted extensive research examining the impact of detention on the physical and mental health of asylum seekers and other immigrants in the United States. In 2003, I authored the first systematic and comprehensive study examining the health status of detained asylum seekers, *From Persecution to Prison: The Health Consequences of Detention for Asylum Seekers*.[1] For this study, we interviewed 70 detained asylum seekers, men and women, at various stages in the asylum application process in ICE detention facilities in New York, New Jersey and Pennsylvania. The following year, in 2004, I was appointed to the Congressionally mandated U.S. Commission on International Religious Freedom (USCIRF) study on asylum procedures, which examined all aspects of the process including detention.[2] More recently, in 2017, I authored a piece for Human Rights Watch on medical care for immigrants in detention, *Systemic Indifference: Dangerous & Substandard Medical Care in US Immigration Detention*,[3] and a second study on the mental health status of Central American migrant families, *Pre-Migration*

---

[1] *Available at* https://s3.amazonaws.com/PHR_Reports/persecution-to-prison-US-2003.pdf.
[2] *Report on Asylum Seekers in Expedited Removal*, *available at* http://www.uscirf.gov/reports-briefs/special-reports/report-asylum-seekers-in-expedited-removal.
[3] *Available at* https://www.hrw.org/report/2017/05/08/systemic-indifference/dangerous-substandard-medical-care-us-immigration-detention.

*Trauma Exposure and Mental Health Functioning among Central American Migrants Arriving at the US Border.*[4] I am at present conducting ongoing research evaluating health impacts of holding cells operated by border patrol and healthcare in family detention facilities.

7. Attached to this declaration as Exhibit A is a copy of my curriculum vitae with a full list of my publications, affiliations, presentations, and awards for my contributions to the field.

**II.     Opinions**

8. The below opinions describing the harmful impact that detention has on the health and well-being of asylum seekers are based on nearly three decades of research findings, clinical practice experience, and other expertise recounted above.

9. Detention substantially contributes to psychological distress in asylum seekers, both exacerbating pre-existing symptoms and fostering development of new symptoms. An individual who experienced trauma but was asymptomatic on entry to the United States, for example, may develop symptoms of Posttraumatic Stress Disorder (PTSD), depression, anxiety or other trauma-related mental health conditions following some period of detention. This is due in large part to the additive nature of trauma; most asylum seekers have experienced some traumatic event precipitating their flight to the United States and many have experienced additional trauma on their journey to seek protection. Thus, the subsequent trauma of detention retraumatizes them and aggravates their health status.

10. Key contributing factors to the detrimental impacts of detention on the mental health of asylum seekers include the prison environment that criminalizes and demeans them. The prison-like conditions of detention exacerbate the physical manifestations of trauma that negatively impacts their mental health. For example, being denied access to outdoor space or being subject

---

[4] *Available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5224987/.

to physical or verbal abuse at the hands of security personnel may trigger memories in an asylum seeker of being beaten or otherwise violated in their home country. In addition, the uncertainty about the length of detention and the threat of segregation (i.e., placement in solitary confinement, which is common in immigration detention) are significant stressors. Moreover, the transfer and deportation of individuals in the middle of the night is particularly retraumatizing, as many asylum seekers have had loved ones disappeared in this manner in their home countries and this therefore provokes disturbing memories of persecution. The location of facilities in remote areas away from family members and legal support resources also enhances feelings of isolation and helplessness among asylum seekers.

11. The mental health of detained asylum seekers is extremely poor and worsens the longer individuals remain in detention. For some asylum seekers, detention may be traumatizing from the first day spent in confinement. For others, they may experience a period of time after escaping their persecutors and surviving a perilous journey where their symptoms may subside; however, within days or weeks of confinement, asylum seekers abandon hope and often begin to experience exacerbation of symptoms of psychological distress.

12. Detention prevents access to appropriate care for such mental health issues. Despite the high level of psychological symptoms observed in detained asylum seekers, in my experience and research findings, mental health services in immigration detention are either unavailable or inadequate. Even if asylum seekers were able to access quality, sustained counseling in detention, the treatments would not be totally effective at facilitating recovery from mental distress and/or mental disorders such as PTSD. Moreover, detention itself exacerbates trauma in ways that treatment alone, absent release, cannot address. Just as it is not possible to effectively treat a patient for a burn while continuing to burn her, it is not possible to effectively treat a

patient for trauma while continuing to traumatize her. Detention, like other forms of trauma experienced by asylum seekers, can even be the source of chronic suffering that persists after a detainee is released. Those released fare significantly better than their detained counterparts in terms of improved mental health and abatement of symptoms over time.

13. In addition to worsening psychological health, physical health of asylum seekers frequently worsens in detention. Those physical health conditions are deeply interconnected with the above-described mental health issues. Many detained asylum seekers experience serious health problems—such as musculoskeletal pain, headaches and gastrointestinal issues—that are real physical symptoms that arise from psychological disorders such as PTSD or depression; this exhibition of symptoms is known as "somatization." Asylum seekers may also manifest physical health issues resulting from their physical persecution or torture in their home countries, for example, chronic tearing and eye pain after being subjected to tear gas or chronic pain following a gunshot wound.

14. Detention prevents access to appropriate care for such physical issues. Despite the myriad and commonly known physical health conditions experienced by asylum seekers, medical care tailored to the needs of this population is severely lacking in immigration detention. This is especially the case in facilities such as county jails, which are often used for immigration detention. Those jails are not set up to offer care for individuals who have gone through such experiences of trauma and torture and who are in situations of long-term confinement.

15. Detention also exacerbates existing mental and physical health issues discussed above. The circumstances of detention worsen symptoms of trauma and severely impede the ability of asylum seekers to recover from their physical and mental conditions. This, in turn, makes it extremely difficult for them to prepare their claims for protection. Furthermore, detention entails

a breakdown in social structures that makes it immensely challenging for detained individuals to forge connections and develop trusting relationships. This is particularly harmful for asylum seekers who must form trusting relationships with the lawyers who will advance their claims for relief. Such trust is necessary for individuals to fully disclose past histories of persecution and torture. Without such a relationship, an asylum seeker is hard-pressed to construct a plausible, coherent, and corroborated claim for the adjudicator.

16. The trauma of imprisonment pushes some asylum seekers to their limit. Many individuals report suicidal thoughts and some have actually attempted suicide in detention. Other asylum seekers—even those with well documented claims of persecution—will give up their right to pursue protection in the United States and face possible death in their home country to avoid spending even one more day confined. This does not reflect a lack of extreme fear of return among the asylum seekers I have encountered, but rather, the sheer desperation and deterioration of their mental and physical health caused by detention.

17. I reserve the right to amend or supplement this declaration as appropriate upon receipt of additional information or documents.

### III.   Compensation

18. I have received no compensation for my services from or on behalf of the Plaintiffs in this case.

### IV.   Conclusion

19. It is my professional opinion that detention severely harms the physical and mental health of asylum seekers already subject to considerable physical and emotional trauma. Not only are these effects detrimental in their own right, but they also impair an asylum seeker's ability to secure the relief to which they may be entitled.

I declare under penalty of perjury under the laws of the United States and the District of Columbia that the foregoing is true and correct.

Executed this Ninth Day of November, 2018, at New York.

Signed:

*[signature]*

Allen S. Keller, M.D.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Lauren C. Bingham | lauren.c.bingham@usdoj.gov |
| | ecf.oil-dcs@usdoj.gov |
| | crystal.greene@usdoj.gov |
| Joseph A. Darrow | joseph.a.darrow@usdoj.gov |
| Archith Ramkumar | archith.ramkumar@usdoj.gov |
| | ar4kc@virginia.edu |
| Sarah S. Wilson | Sarah.Wilson2@usdoj.gov |
| | Daniel.C.Meyer@usdoj.gov |

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

Dated: May 28, 2019.

*s/ Leila Kang*
Leila Kang
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8608
leila@nwirp.org

CERTIFICATE OF SERVICE
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611