*The Honorable Marsha J. Pechman*

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ, | No. 2:18-cv-928 MJP |
| Plaintiffs-Petitioners, | |
| v. | **DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); MATTHEW ALBENCE, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; ELIZABETH GODFREY, Acting Seattle Field Office Director, ICE, WILLIAM BARR, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington; CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington; DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility; | NOTE ON MOTION CALENDAR: JUNE 21, 2019 |
| Defendants-Respondents. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT
(Case No. 2:18-cv-00928-MJP)

i

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

I.      Procedural History. ................................................................................................... 2

II.     Legal Standard. ......................................................................................................... 4

ARGUMENT

I.      The Named Plaintiffs Lack Standing to Bring The Bond Hearing Class Claims. .................. 4

II.     Count I Should Be Dismissed For Failure to State a Claim. ................................................. 7

III.    Count II Should Be Dismissed For Failure to State a Claim. .............................................. 13

IV.     Count III Should Be Dismissed for Failure to State a Claim. ............................................. 15

V.      Count IV Should Be Dismissed for Failure to State a Claim. ............................................. 16

VI.     Count V Should Be Dismissed. ........................................................................................ 18

VII.    Count VI Should Be Dismissed for Failure to State a Claim. ............................................ 21

VIII.   Counts V and VI Must Be Dismissed Pursuant to Section 1252(a)(2)(A)(iv). .............. 22

IX.     The Class Claims for Injunctive Relief are Barred by Section 1252(f)(1). ....................... 23

X.      Conclusion ...................................................................................................................... 24

CERTIFICATE OF SERVICE ........................................................................................... 26

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

**INTRODUCTION**

The Attorney General's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019) changed the legal landscape of this case by confirming what the Supreme Court's decision in *Jennings v. Rodriguez* made plain: 8 U.S.C. § 1225(b)(1)(B)(ii) mandates that the members of the certified Bond Hearing class *shall* be detained for removal proceedings and are eligible for release only through parole—a discretionary decision of the Secretary of Homeland Security, rather than a bond determination by an immigration judge. 138 S. Ct. 830 (2018). Rather than adapt to this fundamental legal change that precludes bond hearings, the very same Plaintiffs continue to seek the very same relief—albeit now based upon a litany of new, novel, and legally-unsound challenges to *Matter of M-S-*. Plaintiffs have now added claims that (1) section § 1225(b)(1)(B)(ii)—which requires detention during the pendency of removal proceedings subject to discretionary parole—is unconstitutional as applied to anyone who illegally enters the United States (Count I); (2) the Attorney General's decision in *Matter of M-S-* violates section 1225(b)(1), even though both provide for mandatory detention, subject to discretionary parole, in these circumstances (Count II); and (3) *Matter of M-S-* should have been issued in notice and comment rulemaking even though it, like every Board of Immigration Appeals (BIA) decision, was properly issued to resolve an agency adjudication. Plaintiffs' claims, new and old, should be dismissed in their entirety.

Firstly, the named Plaintiffs, by virtue of being released on bond prior to *Matter of M-S-*, have never been subject to detention under 8 U.S.C. § 1225(b)(1)(B)(ii), and any concern that they might in the future be subject to the provision is purely speculative. Plaintiffs have also failed to state a claim for relief as to any of the counts in the Third Amended Complaint (TAC). Plaintiff's claims are inconsistent with centuries of Supreme Court precedent defining the government's legitimate interest in immigration detention during removal proceedings, the statutory text which requires detention for these aliens subject to discretionary parole, the Attorney General's authority to interpret the law, and the Secretary of Homeland Security's fundamental discretionary authority over parole decisions. Accordingly, the TAC should be dismissed pursuant to Federal Rule of Civil

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Procedure 12(b)(1) and (6). Finally, the Court lacks jurisdiction over the claims brought by the credible fear interview class under section § 1252(a)(2)(A), and to order classwide injunctive relief consistent with section § 1252(f)(1).

## I.  Procedural History.

On February 28, 2018, the Supreme Court decided *Jennings*, holding that "§§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings and not just until the moment those proceedings begin," 138 S. Ct. at 845. The Court also recognized that parole was available for "urgent humanitarian reasons or significant public benefit," 8 U.S.C. 1182(d)(5)(A), and that the existence of that "express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released," and, accordingly, those detention provisions could not be interpreted to provide for bond hearings before an immigration judge. *Id*.

After *Jennings* was decided, on September 18, 2018, the Attorney General announced his intention to review whether a BIA decision, *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), which permitted bond hearings for individuals subject to section 1225(b)(1), survived the Supreme Court's holding *Jennings*. *Matter of M-G-G-,* 27 I. & N. Dec. 469 (A.G. 2018).[1] The review was conducted in a bond adjudication administrative appeal pursuant to the Attorney General's authority to review such determinations. 8 U.S.C. § 1103(g)(2).

In the face of this pending review, Plaintiffs continued to seek certification of a class encompassing individuals eligible for bond hearings solely on the basis of *Matter of X-K-*. This Court granted class certification on March 6, 2019, and certified two nationwide classes, the Credible Fear Interview Class, and the Bond Hearing Class, which are defined as follows:

(1) **Credible Fear Interview Class**: All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who are not provided a credible fear determination within ten days of *the later of* (1) requesting asylum or expressing a fear of persecution to a DHS official *or* (2) the

---

[1] *Matter of M-G-G-* later became moot, and the Attorney General subsequently referred *Matter of M-S-* to himself. *Matter of M-S-*, 27 I&N Dec. 476 (A.G. 2018).

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview.

(2) **Bond Hearing Class**: All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing.

ECF 102 at 2 (emphasis in original). Plaintiffs then moved for a preliminary injunction on their bond hearing claims. Defendants requested a stay of proceedings, on the basis that the Attorney General's forthcoming decision would impact the litigation, and a stay would conserve the resources of the Court and the parties. This Court denied the stay, finding that it could address the Attorney General's decision in *Matter of M-S-* "as needed." ECF 101. On April 5, 2019, the Court granted Plaintiffs' motion, requiring Defendants to:

1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit;
2. Place the burden of proof on Defendant [DHS] in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions;
3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and
4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

ECF 110 at 19.

After the Court ruled on the motion for a preliminary injunction, the Attorney General decided *Matter of M-S-*, finding that "*Matter of X-K-* was wrongly decided," *Matter of M-S-*, 27 I. & N. Dec. at 510. Thus, because Plaintiffs no longer have a statutory or regulatory entitlement to a bond hearing at all, let alone within seven days, Defendants moved to vacate the preliminary injunction. ECF 114. In an attempt to salvage their case and attendant injunction, Plaintiffs filed the TAC, and moved to modify the injunction. ECF 131. Those motions are presently pending.

The TAC asserts the following claims:
- Count I – 8 U.S.C. § 1225(b)(1)(B)(ii) is unconstitutional as applied to anyone who illegally enters the United States;
- Count II – Section 1225(b)(1)(B)(ii) does not apply to Plaintiffs and they are entitled a bond hearing under 8 U.S.C. § 1226(a);

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

- Count III – 8 U.S.C. § 1182(d)(5) requires an individualized parole hearing before an immigration judge;
- Count IV – *Matter of M-S-* could not be issued without notice and comment rulemaking;
- Count V – the failure to provide credible fear determinations in all cases within 10 days violates the Due Process Clause;
- Count VI – the failure to provide credible fear determinations and bond hearings within 10 and 7 days, respectively, constitutes unreasonable delay under the Administrative Procedure Act (APA) and pre-*Matter of M-S-* bond procedures violate the Due Process Clause.

## II.    Legal Standard.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge jurisdictional allegations two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction, or (2) a "factual" attack that contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *see also Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1). In a facial attack, the court resolves the motion as it would under Rule 12(b)(6), accepting all reasonable inferences in the plaintiff's favor and determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Id.* at 1122. In a factual attack, the court applies the same evidentiary standard as it would in the context of a motion for summary judgment. *Id.* Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A complaint may also be dismissed under Rule 12(b)(6) if it fails to allege a cognizable legal theory or fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

## I.    The Named Plaintiffs Lack Standing to Bring The Bond Hearing Class Claims.

Plaintiffs' claims on behalf of the BH class (Counts I, II, III, IV, and VI), must be dismissed

4

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   because Plaintiffs lack standing to bring these claims on behalf of themselves and the BH class.

2   Plaintiffs allege that Ms. Padilla and Mr. Vasquez, the Bond Hearing Class representatives, face

3   "the prospect of being re-detained without a bond hearing," TAC, ¶¶ 67, 97, and further contend

4   that "[p]ursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face

5   the prospect of being re-detained without a bond hearing." TAC, ¶ 126. But these unsupported

6   allegations are nothing but speculation, and fall far short of demonstrating Article III standing.

7        In order to demonstrate standing to seek declaratory or injunctive relief, as Plaintiffs seek

8   here, Plaintiffs must have an injury in fact, which is "concrete and particularized" and "actual or

9   imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

10  (1992). The alleged injury must be "actual or imminent" and "[a]lthough imminence is concededly

11  a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the

12  alleged injury is not too speculative for Article III purposes—that the injury is *certainly*

13  *impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).

14       Plaintiffs are unable to demonstrate standing here because ICE Enforcement and Removal

15  Operations (ERO) "does not intend to re-detain aliens who, after having established credible fear,

16  have an ICE custody release determination or an Immigration Court final bond determination."

17  *See* Declaration (Decl.) of Russell Hott, Acting Deputy Assistant Director, Office of Enforcement

18  and Removal Operations (ERO) Headquarters, attached hereto as Exhibit 1. *Matter of M-S-* is set

19  to go into effect on July 15, 2019, and aliens will be receiving bond hearings until that time. *See*

20  *Matter of M-S-*, 27 I. & N. Dec. at 519 n.8 (delaying implementation date for 90 days). And as the

21  Hott declaration demonstrates, all completed ICE custody determinations and immigration court

22  bond orders issued prior to that time will continue to be honored. *See* Hott Decl. ¶ 6. As Plaintiffs'

23  only allegation of harm from *Matter of M-S-* is their fear of being re-detained, they cannot

24  articulate any injury sufficient to support standing. Going claim by claim, it is clear that these

25  named Plaintiffs—and the Bond Hearing class—cannot allege any injury to bring claims that

26  *Matter of M-S-* is unconstitutional (Count I) and violates the INA (Count II), that parole hearings

27  before an IJ are required (Count III), that *Matter of M-S-* violates notice and comment rulemaking

28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

(Count IV) and that *Matter of M-S-* violates the APA (Count VI), for the simple reason that each of them are completely unaffected by the Attorney General's decision in *Matter of M-S-*. Each of the named Plaintiffs received a bond hearing, and was released, bond hearings will continue until July 15, 2019, and ERO does not intend to re-detain anyone previously released on bond solely pursuant to *Matter of M-S-*. Thus, there is simply no argument that Plaintiffs and the bond hearing class they represent face any possibility of re-detention, even once *Matter of M-S-* goes into effect. Accordingly, they lack standing to bring these claims.

Because Plaintiffs lack standing to bring their claims on behalf of the bond hearing class, they also are not adequate class representatives—they have nothing to gain from this litigation, and cannot therefore stand in for those who would be subject to *Matter of M-S-* in the future consistent with due process principles. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (adequacy requirement for class action certification serves to protect the due process rights of absent class members who will be bound by the judgment). Moreover, this is no longer a circumstance where it is appropriate to apply the "inherently transitory," ECF 110 at 5, principle: here, plaintiffs were *never* subject to the rules they are now challenging, so their claims are not transitory as they never existed at the time of their detention, there is no claim to be repeated, and therefore no claim that is "capable of *repetition*, yet evading review." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1088 (9th Cir. 2011); *see also Stevens v. Harper*, 213 F.R.D. 358, 368–69 (E.D. Cal. 2002) ("In the absence of specific factual allegations connecting the named plaintiffs' individual claims to particular CYA policies and procedures, the complaint's class allegations provide no additional insight into whether the named plaintiffs face a sufficient individual likelihood of future injury to pursue equitable relief."). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26, 117 S. Ct. 2231, 2250–51, 138 L. Ed. 2d 689 (1997). Here that is simply not the case since no representative has been injured by the *Matter of M-S-* decision. Instead, Plaintiffs must find new plaintiffs who would be subject to *Matter of M-S-* in the future. Simply put, in order to bring their new claims (putting aside the

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

jurisdictional hurdles and their failure to state a claim), there must be a Plaintiff who has or will be impacted by the Attorney General's decision in *Matter of M-S-*, and thus actually faces some "actual or imminent" injury in order to have standing. *Clapper*, 568 U.S. at 409. Because Plaintiffs lack standing to bring these claims, Counts I-IV and VI must be dismissed.

## II.     Count I Should Be Dismissed For Failure to State a Claim.

Count I, on its face, alleges that *Matter of M-S-* violates Plaintiffs' due process rights, but because *Matter of M-S-* does nothing more than interpret a statutory provision, this claim reduces to one asserting that the mandatory detention statute *Matter of M-S-* applies, 8 U.S.C. § 1225(b)(1)(B)(ii), is unconstitutional because it violates their due process rights.

The burden on plaintiffs to make out such a claim is substantial; courts "do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994), and "[i]t is well-established that acts of Congress enjoy a strong presumption of constitutionality." *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000); *see also Perez v. Marshall*, 946 F. Supp. 1521, 1531 (S.D. Cal. 1996) ("A party challenging the constitutionality of a statute bears a heavy burden of proof. The Act comes to the courts with a presumption of constitutionality, and the burden is on the [plaintiff] to establish the Act violates the Constitution.").

Plaintiffs cannot succeed in making this weighty showing, because as unadmitted aliens who have only been in the United States for a brief period of time, they have only due process rights granted by statute. The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). And "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plascencia*, 459 U.S. 21, 32 (1982). Because what Plaintiffs seek is release into the United States after their apprehension, they lack constitutional rights regarding their attempts to secure admission, via a bond hearing. *See Castro v. DHS*, 835 F.3d 422, 445 (2016). As aliens who surreptitiously entered the country and who are

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

assimilated to those the threshold of initial entry, their due process rights are limited to only those procedures provided by Congress. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Barrera v. Rison*, 44 F.3d 1441, 1449-50 (9th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 976 (1995). Aliens only "receive constitutional protections when they have come within the territory of the United States and developed *substantial connections* with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added). Plaintiffs, as aliens who entered the country unlawfully for only a brief period of time, have not developed those substantial connections, which would entitle them to further process such as a bond hearing, as a constitutional matter. *Jennings* itself recognized this very point: "the Court of Appeals has already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter." *Jennings*, 138 S. Ct. at 852 (citing *Mezei*, 345 U.S. 206 and *Plasencia*, 459 U.S. at 21, 34).

Plaintiffs cannot escape this result through the doctrine of constitutional avoidance; as *Jennings* instructs "[e]ven if courts were permitted to fashion 6-month time limits out of silence, they certainly may not transmute existing statutory language into its polar opposite. The constitutional-avoidance canon does not countenance such textual alchemy." *Jennings*, 138 S. Ct. at 846. Here, Plaintiffs are asking for a bond hearing, which the Supreme Court in *Jennings* and the Attorney General in *Matter of M-S-* have confirmed that the statute simply does not provide for. Thus, in order for this Court to grant Plaintiffs relief on this claim, it must strike down a duly enacted act of Congress.

Furthermore, Plaintiffs do not merely claim that absent a bond hearing, section 1225(b)(1)(B)(ii) is unconstitutional. Count I does not merely demand a bond hearing; it demands a "timely" bond hearing in a "prompt" manner, TAC, ¶ 129, and with certain procedural requirements, including that the government must bear the burden of proof, and must provide "either a transcript or a recording of the hearing and specific, particularized findings of the bond hearing." TAC, ¶ 123-24. Specifically, the BH class is defined, in part, as individuals "not provided a bond hearing … within seven days of requesting a bond hearing," TAC, ¶ 100. However, despite

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    Plaintiffs' desire for a rigid and inflexible time limit, the Supreme Court reaffirmed in *Jennings*

2    that "[d]ue process is flexible and it calls for such procedural protections as the particular situation

3    demands." 138 S. Ct. at 852. The Supreme Court has "repeatedly stressed" that due process is a

4    flexible concept that requires an individualized assessment of numerous factors including "the

5    private interest that will be affected by the official action; second, the risk of an erroneous

6    deprivation of such interest through the procedures used, and the probable value, if any, of

7    additional or substitute procedural safeguards; and finally, the Government's interest, including

8    the function involved and the fiscal and administrative burden that the additional or substitute

9    procedural requirement would entail." *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976). Such

10   inquiries are not suitable to class consideration based on defining the class by those who have not

11   been given a hearing within seven days. Because such a seven-day requirement, which is necessary

12   to redress the alleged injury suffered by the BH class, is wholly unsupported by any legal

13   precedent, this claim should be dismissed. *See* TAC, ¶ 114 ("The representative Plaintiffs seek the

14   same relief as the other members of the class: an order requiring Defendants to provide bond

15   hearings within seven days of request.").

16           The starting point for the analysis of this requirement is *Zadvydas v. Davis*, in which the

17   Supreme Court held that the indefinite detention of resident aliens ordered subsequently removed

18   was unlawful. 533 U.S. 678 (2001). Critically, the opinion is circumscribed to that factual scenario;

19   the Court specifically notes that "[a]liens who have not yet gained initial admission to this country

20   would present a very different question." *Id*. at 682. In *Zadvydas*, the Supreme Court articulated a

21   *six-month period* of presumptively reasonable detention for those who had developed extensive

22   ties to the United States: "We do have reason to believe … that Congress previously doubted the

23   constitutionality of detention for more than six months. Consequently, for the sake of uniform

24   administration in the federal courts, we recognize that period …. This 6-month presumption, of

25   course, does not mean that every alien not removed must be released after six months. To the

26   contrary, an alien may be held in confinement until it has been determined that there is no

27   significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701.

28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Two years after *Zadvydas*, in *Demore v. Kim*, the Supreme Court emphasized that in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens." 538 U.S. 510, 521 (2003) (quoting *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976)). The Supreme Court accordingly found that a "brief" six-month detention of an alien—who had extensive ties to the United States—during the pendency of his removal proceedings was fully justified and did not violate the Due Process Clause. *Id.* at 513. "Detention during removal proceedings is a constitutionally permissible part of [the] process." *Id.* at 520. From *Zadvydas* and *Demore*, two relevant principles can be gleaned: (1) constitutional concerns, even with respect to those who have developed extensive ties to the United States by residing here, do not even become implicated until six months of detention, and even then, detention can still continue past that point, something the Supreme Court explicitly stated, 533 U.S. at 701; and (2) the due process analysis must account for the immigration context and the fact that the detention is being applied to aliens, not citizens, who are always able to end their own detention by returning to their country of nationality.

*Demore* made additional points that underscore why dismissal is warranted for a class claim premised on detention being unconstitutional in every case after seven days for aliens with no ties to the United States. First, the result in *Zadvydas* was compelled, in large measure, because the "aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable. The Court thus held that the detention there did not serve its purported immigration purpose." 538 U.S. at 527 (internal citation omitted). That scenario is not presented here, as Plaintiffs will either be removed or granted asylum (or other protection or relief from removal), but ensuring Plaintiffs' presence for their immigration proceedings clearly serves critical immigration purposes. *See Demore*, 538 U.S. at 512 ("the detention [of aliens subject to section 1226(c)] necessarily serves the purpose of preventing the aliens from fleeing prior to or during such proceedings.")

Second, the post-removal statute in *Zadvydas* had "no definite termination point," *id.* at 528, and indeed, *Zadvydas* distinguished the statute at issue, section 1231, from statutes involving

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   "detention pending a determination of removability," which has a definite termination point. 533

2   U.S. at 697. Section 1225 is just such a statute involving a definite termination point, as all of the

3   Plaintiffs are entitled to procedures that, one way or another, will resolve their immigration status

4   and end their detention. Third, *Zadvydas* did not impose a bond hearing requirement, instead, it

5   held that due process concerns would arise after six months had passed such that aliens may have

6   a viable claim to release on a theory that their removal was not significantly likely.

7       Even if the Court were to conclude that the BH class is entitled to more process than the

8   statute provides, by virtue of their brief presence in the United States, their entitlements would still

9   fall short of the relief sought in the TAC and is unsuitable to class-wide resolution. Consistent with

10  *Demore* and *Zadvydas*, the Ninth Circuit, both before and in the wake of *Jennings* has held, at

11  *most*, that constitutional concerns are implicated only after *six months* of detention. *See Rodriguez*

12  *v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("The district court should also reassess and reconsider

13  both the clear and convincing evidence standard and the six-month bond hearing requirement.");

14  *Rodriguez v. Robbins*, 804 F.3d 1060, 1069-70 (9th Cir. 2016) (*rev'd*, 138 S. Ct. at 836) ("*When*

15  detention crosses the six-month threshold and release or removal is not imminent, the private

16  interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the

17  absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the

18  government by requiring hearings before an immigration judge at *this stage of the proceedings* is

19  therefore a reasonable one." (emphasis added)). Indeed, the question remaining in *Jennings* after

20  remand is now essentially the same claim that Plaintiffs pursue in Count I, namely, whether

21  extended detention under section 1225(b) is unconstitutional. But Plaintiffs in this case claim that

22  it reaches such a threshold in merely a week whereas the certified *Rodriguez* class—which includes

23  many overlapping class members—assert that the statute is unconstitutional only after six months

24  have passed. It follows that Plaintiffs' claim for a bond hearing within seven days is implausible,

25  inconsistent with the claim many of their own class members are making in another previously-

26  filed case, without any legal basis, and must be dismissed, as seven days is a far cry from the six-

27  month threshold that precedent dictates must be reached for constitutional concerns to even

28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

become applicable.

In its Order Granting Preliminary Injunction, this Court relied on cases "[e]lsewhere in the civil commitment context," ECF 110 at 13, to justify the seven-day limit. But these cases simply cannot be squared with longstanding Supreme Court precedent which holds expressly that immigration detention works differently, is properly justified by the legitimate interest in holding aliens during the pendency of removal proceedings, and can always be terminated by the alien by returning to his or her country of nationality. *See, e.g.*, *Demore*, 538 U.S. 510, *Jennings*, 138 S. Ct. 830. Those principles apply with even more strength at the border, where in addition to the legitimacy of detention, the United States may also detain pending a decision on whether the alien is entitled to be in the United States. *See, e.g.*, *Mezei*, 345 U.S. 206. Thus, *Doe v. Gallinot*, 657 F.2d 1017 (9th Cir. 1982) is clearly inapplicable, as that case involved a citizen and arose in the mental health confinement context, not in the immigration context. In *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195 (N.D. Cal. 2017), involved individuals that, as the district court held, "should *not be detained*," because they were unaccompanied alien minors placed "with a parent or other sponsor in the community." Because the statute governing this procedure is entirely different from processing "other immigrants" like plaintiffs "caught crossing the border," *Saravia* is likewise inapt, because the plaintiffs here, per the plain text of the statute, should be detained. Furthermore, cases involving unaccompanied children simply present different concerns than unadmitted aliens. Finally, *Nguti v. Sessions*, 259 F. Supp. 3d 6 (W.D.N.Y. 2017) (in which the district court caveated that the decision predated *Jennings* and was thus likely to have little probative value, *id.* at 7), involved discretionary detention under section 1226, *id.* at 12-13, which renders that case irrelevant. If anything, *Nguti* reaffirms that Plaintiffs' request for a bond hearing within seven days is baseless, as the need for a prompt bond hearing in that case was only triggered *after* six months of detention had passed.

Because Plaintiffs cannot meet their heavy burden to show that section 1225(b)(1)(B)(ii) is unconstitutional, and the relief they request is completely unsupported and cannot be justified under the Due Process Clause, this claim must be dismissed.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

### III.   Count II Should Be Dismissed For Failure to State a Claim.

Plaintiffs allege, in Count II, that "*Matter of M-S-* denies Plaintiffs and BH Class members their statutory right to an individualized custody hearing." TAC, ¶ 135. This is not correct.

Plaintiffs' claim cannot be squared with the plain text of 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that aliens found to have a "credible fear of persecution," like members of the Bond Hearing Class, "shall be detained for further consideration of the application for asylum." As Defendants have thoroughly demonstrated, that unequivocal language provides for mandatory detention and does not encompass any implied right to a bond hearing. *See Matter of M-S-*, 27 I. & N. Dec. at 515-16 ("Section 235(b)(1)(B)(ii) [of the INA] provides that, if an alien in expedited proceedings establishes a credible fear, he 'shall be detained for further consideration of the application for asylum.'"); *Jennings*, 138 S. Ct. at 845 ("§§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings"); *see also* <u>Innovation Law Lab v. McAleenan</u>, No. 19-15716, 2019 WL 2005745, at *1 (9th Cir. May 7, 2019) ("If the applicant passed a credible fear screening, DHS would either detain or parole the individual until her asylum claim could be heard before an immigration judge."). Tellingly, the TAC does not even mention 8 U.S.C. § 1225(b)(1)(B)(ii), which speaks volumes, and underscores the claim's insufficiency.

Plaintiffs attempt to mix and match a hodgepodge of other subparts of section 1225 to imply a statutory right to a bond hearing. That effort fails to address the plain statutory text requiring detention or cure the legal implausibility of Count II. First, Plaintiffs allege that "8 U.S.C. § 1225(b)(1)(A) distinguishes" Bond Hearing class members. But the plain text of the statute belies that assertion. First, 8 U.S.C. § 1225(a)(1) places all aliens on equal footing as applicants for admission: "[a]n alien present in the United States who has not been admitted or who arrives in the United States (*whether or not a designated port of arrival*) … shall be deemed for purposes of this chapter an applicant for admission." (emphasis added). 8 U.S.C. § 1225(b)(1)(A), consistent with 8 U.S.C. § 1225(a)(1), notes that if any alien is deemed inadmissible, that alien shall be removed "without further hearing or review unless the alien indicates … an intention to apply for asylum," in which case, "the officer shall refer the alien for an interview by an asylum officer

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   under subparagraph (B)." 8 U.S.C. § 1225(b)(1)(A)(i), (ii). At that point, if the interview yields a

2   positive credible fear determination, as it did with the Bond Hearing class, then 8 U.S.C. §

3   1225(b)(1)(B)(ii) applies and controls. Nothing in either 8 U.S.C. § 1225(b)(1)(A)(i) or 8 U.S.C. §

4   1225(b)(1)(A)(ii) distinguishes asylum applicants who arrive at ports of entry from ones who do

5   not for purposes of mandatory detention, nor is there any indication that either provision overrides

6   the application of section 1225(b)(1)(B)(ii).

7          Next, Plaintiffs point to section 1225(b)(1)(A)(iii)(I) as allowing the "Attorney General"

8   to place Bond Hearing Class members in expedited removal proceedings, but "not requir[ing] that

9   they be subject to mandatory detention." TAC, ¶ 131. This is nothing more than a *non-sequitur*.

10  Plaintiffs are correct that 8 U.S.C. § 1225(b)(1)(A)(iii)(I) confers discretion upon the Secretary of

11  the Department of Homeland Security[2] to apply expedited removal proceedings to particular

12  aliens, but that determination is made only in connection with "clauses (i) and (ii) of this

13  subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). And, as seen above, clauses (i) and (ii) of 8

14  U.S.C. § 1225(b)(1)(A) funnel all aliens found to have a credible fear to section 1225(b)(1)(B)(ii).

15  It is therefore immaterial that section 1225(b)(1)(A)(iii)(I) does not itself also govern detention,

16  because this provision only describes the universe of aliens eligible for expedited removal

17  proceedings and the detention provisions that govern those proceedings. Plaintiffs do not contest

18  that the Bond Hearing Class members were properly initially placed in expedited removal

19  proceedings, and section 1225(b)(1)(A)(iii)(I) is no longer relevant once, as here, proceedings have

20  begun.

21         Finally, Plaintiffs point to section 1225(b)(1)(B)(iii)(IV) which provides for mandatory

22  detention for those asylum seekers who are not found to have a credible fear of persecution or

23  torture. *See* TAC, ¶ 132. Short shrift can be given to this argument, though, because it is not the

24  statute that governs detention of the Bond Hearing Class; 8 U.S.C. § 1225(b)(1)(B)(ii) which

25  provides for mandatory detention when credible fear is found, is the statute that applies. In that

26  regard, 8 U.S.C. § 1225(b)(1)(B)(ii) and 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) are complementary;

27

28
---
[2] The parole statute refers to the Attorney General, but upon enactment of the Homeland Security Act, these functions are performed by the Secretary of DHS. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

they provide for the same detention treatment of asylum seekers who are found to have both a positive or a negative credible fear finding: mandatory detention pending the completion of removal proceedings. *See Jennings*, 138 S. Ct. at 845.

## IV.   Count III Should Be Dismissed for Failure to State a Claim.

Count III alleges that Plaintiffs are entitled to a process they have made up and that exists nowhere in the INA: a "parole hearing[] before an immigration judge" that essentially would be identical to the bond hearings that the statute expressly prohibits. TAC, ¶¶ 139-41. This claim lacks any basis in the INA and should be readily dispensed with—it is a procedure that does not exist, is not provided by the statute, would entirely circumvent the statutory requirement of detention, and cannot be squared with *Jennings'* rejection of atextual constitutional avoidance theories. *See Jennings*, 138 S. Ct. at 842. Indeed, *Jennings* made clear that the parole process expounded in 8 U.S.C. § 1182(d)(5)—which does not provide for a hearing before an immigration judge—is the exclusive mechanism by which an alien could seek release from detention under section 1225(b); "there are no *other* circumstances under which aliens detained under § 1225(b) may be released," a fact that significantly undermines Plaintiffs' contentions that they are entitled to a manufactured process they call "parole" bond hearings. 138 S. Ct. at 845. To be clear, every member of the Bond Hearing Class may request and be considered by DHS for discretionary parole under Section 1182(d)(5), but no part of that parole process includes a "hearing before an immigration judge."

8 U.S.C. § 1182(d)(5)(A), the sole basis for individual aliens to obtain parole, *see* TAC, ¶ 137, confers unfettered discretion on the Secretary of the Department of Homeland Security to, on a "case-by-case basis" parole individual aliens "for urgent humanitarian reasons or significant public benefit," but does not prescribe a particular parole process, and does not require or invoke any of the INA provisions that provide for the involvement of immigration courts and does not provide for a hearing before an immigration judge. The regulations governing the grant of parole also make no mention of a parole hearing, let alone one before an immigration judge. Instead they set standards to be applied by DHS in considering discretionary grants of parole. *See* 8 C.F.R. § 212.5(a) (parole regulation identifying DHS officials who may grant parole); *see also* 8 C.F.R. §

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

235.3(b)(4)(ii) (parole only appropriate in very limited circumstances prior to credible fear determination); 8 C.F.R. § 235.3(b)(2)(iii), (c).[3] Indeed, dismissal of Count III is consistent with the fact that parole determinations, which are fully subject to "the discretion of … the Secretary of Homeland Security" are not judicially reviewable, 8 U.S.C. 1252(a)(2)(B)(ii), a prohibition that extends to the procedures the agency elects to employ in carrying out discretionary determinations. *See Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 524 (1978) ("[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."); *Pankratz Lumber Co. v. F.E.R.C.*, 824 F.2d 774, 777 (9th Cir. 1987).

Because Plaintiffs can point to no textual basis in the statute for their demand for "parole hearings before an immigration judge," TAC, ¶ 141, Count III must be dismissed.

## V.   Count IV Should Be Dismissed for Failure to State a Claim.

Count IV seeks to set aside *Matter of M-S-* as "unlawful agency action" for failing to undergo "notice and comment rulemaking." TAC, ¶¶ 144, 146. But *Matter of M-S-* is an adjudication, not a rule, and that difference is dispositive and necessitates dismissal of this claim. The Attorney General has authority to "review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out" his duties related to the immigration and naturalization of aliens. 8 U.S.C. § 1103(g)(2). Exercising that authority, the Attorney General vested the BIA with power to issue precedential decisions on the "proper interpretation and administration of the [INA] and its implementing regulations." 8 C.F.R. § 1003.1(d)(1), (h). The Attorney General retained final decision-making authority by providing that he may certify to himself cases arising from the BIA or the administrative immigration courts, so that he may review and issue decisions in those cases. *Id.* § 1003.1(g)-(h). Through this adjudicatory scheme, the

---

[3] Plaintiffs themselves appear to recognize this point, as, in their cross-motion to modify the injunction, they repeatedly assail the parole process. *See* ECF 131 at 11 ("In contrast to a bond hearing before an IJ, the parole process consists merely of a custody review conducted by a low-level Immigration and Customs Enforcement (ICE) detention officers. It includes *no* hearing before a neutral decision maker.") (emphasis added); *id.* at 13 ("[T]he parole process permits low-level ICE officers to authorize months or even years of incarceration by checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation.").

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Attorney General and the Board give statutory terms "concrete meaning through a process of case-by-case adjudication." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). And Congress has provided that, for all "laws relating to the immigration and naturalization of aliens," the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1).

The Ninth Circuit has explicitly exempted "adjudications" from the notice-and-comment prerequisite, unlike "agency rulemaking," which must be preceded by a "notice and comment period." *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1151 (9th Cir. 2008); *see also Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1187 (9th Cir. 2010) ("[N]o rule was promulgated as this was a case-by-case adjudication, and did not involve rulemaking of any kind."). "Two principal characteristics distinguish rulemaking from adjudication. First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals. Second, because adjudications involve concrete disputes, they have an immediate effect on specific individuals (those involved in the dispute). Rulemaking, in contrast, is prospective, and has a definitive effect on individuals only after the rule is subsequently applied." *Yesler Terrace Comm. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994).

The conclusion that *Matter of M-S-* is an adjudication is reinforced by applying the test articulated in *Cisneros*. *Matter of M-S-* "resolve[d] [a] dispute[]" involving a "specific individual[]" and a "specific case[]," 37 F.3d at 448, which is why the decision concluded by "revers[ing] the order granting bond to the respondent." 27 I. & N. Dec. at 519. This result further "involve[d] concrete disputes" and had an "immediate effect" on the respondent, the individual "involved in the dispute." *Cisneros*, 37 F.3d at 448. As in both *MacLean* and *Sebelius*, no notice-and-comment period was necessary for such an adjudication. *See MacLean*, 543 F.3d at 1151; *Sebelius*, 611 F.3d at 1188. It is worth noting that the rationale animating the notice-and-comment requirement—that the agency receives sufficient input before issuing a decision—is inapplicable here, as the Attorney General received amicus briefs from "[s]everal amici" adopting Plaintiffs'

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

interpretation of the INA. 27 I. & N. Dec. at 516.

The result here is further compelled by the Ninth Circuit decision in *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007), where the Ninth Circuit explained that an agency "is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." . The Ninth Circuit held that the "Attorney General may through an adjudicative decision [*Matter of Y-L-*] create a strong presumption that a drug trafficking offense resulting in a sentence of less than five years is a 'particularly serious crime.'" *Id.* at 942. As in this case, the plaintiff in *Miguel-Miguel* challenged the administrative decision rendered by the Attorney General as "invalid because it is a legislative rule under the APA and therefore the Attorney General could not issue it without first engaging in notice-and-comment rulemaking procedures." *Id.* at 950. The Ninth Circuit disagreed, holding "that *Matter of Y-L-* is an *adjudicative decision* and thus does not fit within the legislative/interpretive framework for rulemaking." *Id.* (emphasis in original). And, as an "adjudication," the administrative decision in *Miguel-Miguel* did not need to comport with notice-and-comment requirements. The same is true of *Matter of M-S-*. Although *Miguel-Miguel* left open the possibility of an agency "abus[ing] its discretion by announcing new rules through adjudication … such as when the rule operates retroactively and disturbs settled expectations," *id.*, that hypothetical scenario is inapt here and Plaintiffs do not claim that this is an improper retroactive rule. Instead, *Matter of M-S-* simply applies the statutory detention provision to the circumstances before it in a concrete dispute, and its forward-looking impact derives solely from the precedential effect of decisions of the Attorney General and the deference to which they are entitled under governing principles. *See* 8 U.S.C. § 1103(g); *Aguirre–Aguirre*, 526 U.S. 415 at 425. Accordingly, Count IV should be dismissed for failing to state a claim.

## VI.   Count V Should Be Dismissed.

**A**. Plaintiffs' claim for constitutional entitlement to their preferred timeline for conducting credible fear determinations must be dismissed for lack of jurisdiction. As Defendants previously argued in their first Motion to Dismiss, Plaintiffs cannot assert a Fifth Amendment due process

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    claim without identifying any appropriate waiver of sovereign immunity. *Cf. Chacity v. Tillerson,*

2    285 F. Supp. 3d 293, 301 (D.D.C. 2018) (discussing the difference between the claim,

3    jurisdictional statute, and a waiver of sovereign immunity). The United States is immune from suit

4    unless it has waived its immunity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United*

5    *States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "When the United States consents to be sued, the

6    terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United*

7    *States v. Mottaz*, 476 U.S 834, 841 (1986). Plaintiffs bear the burden of establishing the existence

8    of an unequivocal waiver of sovereign immunity. *See, e.g.*, *Baker v. United States*, 817 F.2d 560,

9    562 (9th Cir. 1987).

10          The Fifth Amendment does not itself confer jurisdiction on the Court to hear this claim.

11   *See Jaffee v. United States,* 592 F.2d 712, 717–18 (3d Cir. 1979) (the Constitution does not provide

12   a waiver of sovereign immunity), *cert. denied,* 441 U.S. 961 (1979); *Chen v. United States,* 854

13   F.2d 622, 625–26 (2d Cir.1988) (government's waiver of sovereign immunity under FTCA does

14   not extend to claims based on "direct violations of the Federal Constitution . . . or of federal statutes

15   or regulations standing alone"). To the extent that Plaintiffs rely on the APA as the waiver of

16   sovereign immunity for this Count, it is subsumed by Count VI (in which they challenge credible

17   fear interviews delays under the APA) and should be dismissed for the same reasons.

18          Plaintiffs' general invocation of 28 U.S.C. § 2241 is also not sufficient to support the claim.

19   Plaintiffs' claim for speedier credible fear determinations is not cognizable under section 2241,

20   which is limited to challenges to the *fact or duration* of detention. A claim relating to the timing

21   of the credible fear determination is simply not a challenge to either of those. *Alcala v. Rios*, 434

22   F. App'x 668, 669 (9th Cir. 2011) (affirming dismissal of habeas petition that did not challenge

23   fact of duration of detention); *see also* 28 U.S.C. § 2241(c)(3); 8 U.S.C. § 2243. Here, the cause

24   of the Credible Fear class's detention is their status as aliens apprehended after their illegal entry

25   (which they do not contest) and is not linked to the timing of the credible fear hearing. Count I,

26   therefore, should be dismissed for lack of jurisdiction.

27          **B**. Even if there was jurisdiction for this claim, Plaintiffs cannot plead any constitutional

28

19

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

entitlement to credible fear determinations within ten days of indicating an intention to apply for asylum because they lack any constitutional right to enter or gain admission to the United States at all under settled constitutional principles. The constitutional (as well as the overlapping claim under 5 U.S.C. § 706(2)) should therefore be dismissed under Rule 12(b)(6). As discussed above, Plaintiffs are non-admitted aliens who were apprehended shortly after illegally crossing the border, and represent a class that includes aliens who never entered the United States. "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon*, 459 U.S. at 32. Plaintiffs' claims for speedier credible fear interviews and determinations are requests for particular procedures relating to their applications for admission. They therefore lack a constitutional right to demand expedited procedures for such determinations. *See id.* They do not allege any previous substantial voluntary connections to the United States that would lead to greater rights, *see Verdugo-Urquidez*, 494 U.S. at 271, but rather are aliens seeking initial admission to the United States and are properly treated as at the threshold of initial entry. *See Castro*, 835 F.3d at 445; *Kwai Fun Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004) ("[A]n alien seeking admission has not 'entered' the United States, even if [he] is in fact physically present."). Because Plaintiffs have no constitutional rights regarding their attempts to gain admission (including asylum) to the country, and specifically no rights to other procedures than those provided by Congress for doing so, they lack any constitutional due process right to a credible fear hearing within ten days, which the statute does not provide for. *See* 8 U.S.C. § 1225(b)(1)(B).

Even if their illegal entry conferred upon them some modicum of additional due process rights, those rights would not include the right to a credible fear determination within ten days. This proposed requirement does not appear in the statute or implementing regulations, and there is no constitutional reason why a ten-day deadline is required compared to a different length of time. Even if Plaintiffs do have some additional rights by virtue of their unlawful entry, without substantial ties to the Country, their rights are at the lowest ebb of the sliding scale of due process. *See. Diaz*, 426 U.S. at 78–79 (observing that "aliens [are] a heterogeneous multitude of persons

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

with a wide-ranging variety of ties to this country.").

Accordingly, this Count should be dismissed.

## VII.    Count VI Should Be Dismissed for Failure to State a Claim.

In this Count, Plaintiffs re-allege several different APA claims. They allege that 1) Defendants have unreasonably delayed their credible fear interviews and determinations, 2) Defendants have unreasonably delayed their bond hearings, and 3) Defendants policies in bond hearings are final agency actions that are contrary to law. TAC ¶¶ 155-59. This Court has already addressed and dismissed the claims for administrative delay both classes because "unreasonable delay" is "not suitable to resolution by means of class action." ECF 91 at 11-12. As this Court rightly observed, "the absence of any firm regulatory or statutory deadline will require the Court to engage in individualized, fact-dependent inquiries of 'reasonableness,' and such necessity requires a finding that the Bond Hearing class has failed here to adequately state a claim upon which relief can be granted," ECF 91 at 17. Nothing has changed in this claim that would affect the Court's rationale. In fact, the Bond Hearing class's APA claim must now be dismissed for the separate reasons that Plaintiffs are not entitled to a bond hearing at all, and thus, there is no agency action that has been unreasonably delayed this Court could even compel. *See supra* Part III (discussing the lack of entitlement to a bond hearing within 7 days as a constitutional matter).

To the extent Plaintiffs allege entitlement to a bond hearing with certain procedural safeguards under the APA, that claim is indistinguishable from Count I, which claims entitlement to a bond hearing with their preferred procedures under the Due Process Clause, and should be dismissed for the same reason—Plaintiffs are not entitled to bond hearings under the statute, attendant regulations, or the Due Process Clause, let alone a bond hearing with their preferred procedures.[4] *See* TAC, ¶¶ 157-59.

---

[4] Even if there could be such a claim, the named Plaintiffs' challenge to the procedures of bond hearings are not subject to judicial review under 5 U.S.C. § 706(a)(2) because there has been no final agency action. Immigration judges prepare a Bond Memorandum as part of a record of the bond proceedings if the bond decision is appealed to the Board of Immigration Appeals. *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999); Immigration Court Practice Manual, § 9.3(e)(iv). EOIR's manual provides that bond hearings are not generally recorded, but does not prohibit such a practice. *See* Immigration Court Practice Manual, § 9.3(e)(iii); *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977). Moreover, if an IJ believes prejudice might result from informal procedures, he should adopt more formal

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   Accordingly, this Count must be dismissed.

2 **VIII. Counts V and VI Must Be Dismissed Pursuant to Section 1252(a)(2)(A)(iv).**

3   Counts V and VI, asserted by the Credible Fear class, challenge an alleged "policy or

4 practice of delaying the provision of credible fear interviews to asylum seekers who express a fear

5 of return … thus unnecessarily prolonging their mandatory detention." TAC, ¶ 37; *see also id.*, ¶

6 151 ("Defendants' practice of delaying credible fear interviews therefore violates the CFI Class's

7 right to due process."). To the extent this claim differs from the claims of the Bond Hearing class

8 seeking release, judicial review of these allegations runs afoul of the proscription elucidated in 8

9 U.S.C. § 1252(a)(2)(A)(iv), which states that "no court shall have jurisdiction to review …

10 procedures and policies adopted by the Attorney General to implement the provisions of section

11 1225(b)(1)." Because the Credible Fear class has characterized its claims as challenging an

12 asserted "policy" of "delaying …credible fear interviews," TAC, ¶ 37, and because members of

13 the Credible Fear class are unadmitted aliens who have been "refer[red] … for an interview by an

14 asylum officer" under 8 U.S.C. 1225(b)(1)(A)(ii), the plain language of 8 U.S.C. §

15 1252(a)(2)(A)(iv) insulates any such policy or practice from judicial review.

16   Although 8 U.S.C. § 1252(a)(2)(A)(iv) contains a limited carve-out for judicial review of

17 policies and procedures, that exception is inapposite to the claims brought by the Credible Fear

18 class. Specifically, 8 U.S.C. § 1252(a)(2)(A)(iv) sanctions the review of the aforementioned

19 policies and procedures "as provided in subsection (e)." 8 U.S.C. § 1252(a)(2)(A)(iv). Subsection

20 (e), in turn, allows challenges to policies or procedures, but only in the District of Columbia and

21 only for written policies. *See* 8 U.S.C. § 1252(e)(3)(A)(ii) ("Judicial review … shall be limited to

22 determinations of—whether such a regulation, or a written policy directive, written policy

23 guideline, or written procedure … is not consistent with applicable provisions of this subchapter

24 or is otherwise in violation of law."). Here, there is no written policy to provide credible fear

25 interviews only after a certain period of time, and review of this claim is therefore not within the

26

27

28

---

procedures, including recording the custody hearing. *See Matter of Khalifah*, 21 I. & N. Dec. 107, 112 (BIA 1995) ("It is well settled that there is no requirement in bond proceedings for a formal hearing and that informal procedures may be used *so long as no prejudice results*[.]") (emphasis added) (citation omitted)). Thus, there is no final policy governing Plaintiffs' challenge and therefore it is not subject to review under section 706(2).

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

ambit of the review permitted by subsection (e). *See Am. Immigration Lawyers Ass'n v. Reno*, 18 F. Supp. 2d 38, 58 (D.D.C. 1998) ("The Court concludes that, based on the clear language of the jurisdictional provision … this Court cannot review unwritten policies or practices, but rather must limit its review to a regulation, a written policy directive, written policy guideline, or written procedure."). The Credible Fear class does not ever allege that the policy of delaying credible fear interviews is memorialized in any manner according to the requirements of subsection (e). Accordingly, Counts V and VI should be dismissed pursuant to section 1252(a)(2)(A)(iv).

## IX.   The Class Claims for Injunctive Relief are Barred by Section 1252(f)(1).

The Class's claims for injunctive relief are precluded by section 1252(f)(1), which proscribes the "authority" of any court to "enjoin or restrain the operation" of relevant provisions of the INA, including section 1225, "other than with respect to the application of such provisions to an individual alien against whom proceedings … have been initiated." 8 U.S.C. § 1252(f)(1). The statutory text "thus prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-123[2]." *Jennings*, 138 S. Ct. at 85; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("By its plain terms … that provision is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231."); *Marin*, 909 F.3d at 256 (observing that *Reno* likely "forecloses the argument that § 1252(f)(1) allows classwide injunctive relief"). Any alternative construction "does violence to the text of the statute" "by reading out the word 'individual' before 'alien' in the last sentence of the statute." *Hamama v. Adduci*, 912 F.3d 869, 877 (6th Cir. 2018); *see also id.* at 878 ("By giving no meaning to the word 'individual,' Petitioners are arguing for a version of the statute that Congress simply did not write.").

The government's position is that *all* class-wide relief is precluded by this statute, as the Sixth Circuit recently held in *Hamama*. But even under this Court's narrower view, class-wide relief is unavailable on Plaintiff's claims, as the Supreme Court reasoned in *Jennings*. In this Court's prior ruling, this Court held that section 1252(f)(1) did not apply to the statutory claims it was addressing because "Plaintiffs are not asking the Court to enjoin or restrain the operation of

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

23

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

the provisions of any statute, but instead seek an injunction against actions and policies that violate those statutes and associated constitutional provisions." ECF 91 at 19 (emphasis and internal quotation marks omitted). It is undeniable, however, that the exclusive source of the statutory violation Plaintiffs alleged stemmed from the now-overruled and "wrongly decided" decision in *Matter of X-K-*. 27 I. & N. Dec. at 510; ECF 110 at 2; *see also* ECF 45 at 4 n.2 ("Proposed class members are eligible for bond hearings unless and until the decision is vacated."). Plaintiffs' standalone claims for constitutional relief that attack *Matter of M-S-* and, by extension, the plain text of section 1225, accordingly cannot evade the applicability of section 1252(f)(1). As the Supreme Court explained in *Jennings*, "[t]he Court of Appeals held that this provision did not affect its jurisdiction over respondents' *statutory* claims because those claims did not seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct … not authorized by the statutes" but "[t]his reasoning does not seem to apply to an order granting relief on constitutional grounds." 138 S. Ct. at 851 (emphasis in original).

Thus, even assuming that section 1252(f)(1) only applies to the extent Plaintiffs' claims are derived from the Constitution and seek to enjoin the operation of *Matter of M-S-*, and, by extension, 8 U.S.C. 1225(b)(1)(B)(ii), they cannot obtain injunctive relief under this reasoning in *Jennings*.

**X.   Conclusion**

For the foregoing reasons, the Third Amended Complaint should be dismissed in its entirety.

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Dated: June 3, 2019                    Respectfully submitted,

                                       JOSEPH H. HUNT
                                       Assistant Attorney General
                                       Civil Division

                                       WILLIAM C. PEACHEY
                                       Director
                                       Office of Immigration Litigation,
                                       District Court Section

                                       EREZ REUVENI
                                       Assistant Director

                                       SARAH S. WILSON
                                       Assistant United States Attorney

                                       */s/Archith Ramkumar*
                                       ARCHITH RAMKUMAR
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation,
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Phone: (202) 598-8060
                                       Archith.Ramkumar@usdoj.gov

                                       */s/Lauren C. Bingham*
                                       LAUREN C. BINGHAM
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division
                                       Office of Immigration Litigation,
                                       District Court Section
                                       P.O. Box 868, Ben Franklin Station
                                       Washington, DC 20044
                                       Phone: (202) 616-4458
                                       Lauren.C.Bingham@usdoj.gov

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1

2

# CERTIFICATE OF SERVICE

3

     I HEREBY CERTIFY that on June 3, 2019, I electronically filed the foregoing document

4

with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

5

served this day on all counsel of record via transmission of Notices of Electronic Filing generated

6

by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

7

to receive electronically filed Notices of Electronic Filing.

8

9

                 */s/ Lauren Bingham*

10

                 Trial Attorney

11

                 United States Department of Justice

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTESBALTAZAR VASQUEZ,<br><div align="right">Plaintiffs-Petitioners,</div><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); MATTHEW ALBENCE, Acting Director of ICE; KIRSTEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; ELIZABETH GODFREY, Acting Seattle Field Office Director, ICE, WILLIAM BARR, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington; CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington; DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility;<br><div align="right">Defendants-Respondents.</div> | No. 2:18-cv-928  MJP<br><br>**[PROPOSED]  ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

The Court, having considered Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint, and any opposition thereto, hereby **GRANTS** the motion to dismiss. Plaintiffs' Third Amended Complaint is **DISMISSED** and this case is **CLOSED**.

DATED this ____ day of _____, 2019.

_____
THE HONORABLE MARSHA J. PECHMAN
UNITED STATES DISTRICT JUDGE