*The Honorable Marsha J. Pechman*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ, <div align="right">Plaintiffs-Petitioners,</div> <br> v. <br><br> U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); THOMAS HOMAN, Acting Director of ICE; KIRSTJEN NIELSEN, Secretary of DHS; KEVIN K. McALEENAN, Acting Commissioner of CBP; L. FRANCIS CISSNA, Director of USCIS; MARC J. MOORE, Seattle Field Office Director, ICE, WILLIAM P. BARR, United States Attorney General; LOWELL CLARK, warden of the Northwest Detention Center in Tacoma, Washington;  CHARLES INGRAM, warden of the Federal Detention Center in SeaTac, Washington;  DAVID SHINN, warden of the Federal Correctional Institute in Victorville, California; JAMES JANECKA, warden of the Adelanto Detention Facility, <br><br> <div align="right">Defendants-Respondents.</div> | No. 2:18-cv-928  MJP <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR MODIFICATION OF THE EXISTING PRELIMINARY INJUNCTION** <br><br> NOTE ON MOTION CALENDAR: JUNE 14, 2019. |

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD.................................................................................................. 5

ARGUMENT.............................................................................................................. 6

I.      Section 1252(f)(1) Strips this Court of Jurisdiction to Grant Plaintiffs' Motion. ............ 6

II.     Plaintiffs Lack Standing to Obtain Injunctive Relief ..................................................... 10

III.    Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits.................... 11

     A.      Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their Due
     Process Claim.......................................................................................................... 12

     B.      Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their
     APA Claim............................................................................................................... 17

IV.     The Remaining Injunctive Factors Militate Against Granting Plaintiffs' Motion ........ 22

CONCLUSION.......................................................................................................... 24

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

**INTRODUCTION**

In an attempt to resuscitate the injunction this Court entered on April 5 ("Order"), Plaintiffs again ask this Court to grant the ultimate and extraordinary relief they seek—bond hearings that occur within seven days of a hearing request and that comply with a slew of additional unprecedented procedural requirements—and additionally demand that *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), be enjoined, without making any effort to justify the requirements imposed by the Order in the wake of *Matter of M-S-*. But the thin reed upon which the Order was based, a regulatory entitlement to bond hearings under *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), has been severed. The new claims Plaintiffs assert in their Third Amended Complaint ("TAC") to account for this development, which steadfastly cling to the same demand for relief asserted in previous iterations of the TAC, cannot support the imposition of another preliminary injunction.

As a threshold matter, 8 U.S.C. § 1252(f)(1) forecloses Plaintiffs from obtaining injunctive relief, as that provision precludes courts from granting classwide injunctive relief that enjoins the operation of §§ 1221-1231 of the Immigration and Nationality Act (INA). Plaintiffs' motion steers headlong into this prohibition by repeatedly demanding that this Court halt the implementation of *Matter of M-S-*, without ever suggesting that *Matter of M-S-* adduces an incorrect statutory interpretation. Because *Matter of M-S-* is exclusively devoted to delineating the proper interpretation of 8 U.S.C. § 1225(b)(1)(B)(ii), the requested injunctive relief would render that statutory subsection a dead letter, running afoul of section 1252(f)(1). In addition, because the named Plaintiffs have already been released on bond and do not face the prospect of re-detention, they lack standing to bring any of the claims Plaintiffs rely on to justify the injunction.

Plaintiffs have also fallen far short of demonstrating the requisite likelihood of success on the merits. There is not a single decision—Supreme Court or Ninth Circuit—that sanctions the viability of claims brought by unadmitted aliens in the immigration context challenging *one week* of detention under the Due Process Clause. Plaintiffs' claim under the Administrative Procedure Act (APA) fares no better, as *Matter of M-S-* is an adjudication issued pursuant to the Attorney General's authority to interpret immigration law, *see* 8 U.S.C. § 1103(a)(1), not a rule, and is thus exempt from notice and comment.

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1        The remaining injunctive factors also favor denying Plaintiffs' motion.  Plaintiffs will not

2   suffer irreparable harm in the absence of preliminary relief, as the named Plaintiffs have already

3   secured both bond hearings and release, while the remaining class members have numerous other

4   mechanisms at their disposal to challenge the length of their detention.  And the public interest is

5   not served by awarding Plaintiffs injunctive relief, as granting Plaintiffs' motion would have the

6   dissonant effect of rewarding individuals that surreptitiously and illegally enter the United States,

7   undermining the uniform and efficient administration of immigration law and transgressing plain

8   statutory text and Supreme Court precedent.  Accordingly, Plaintiffs' motion should be denied.

9                                    **BACKGROUND**

10       The TAC asserts claims on behalf of two now-certified classes, *see* Dkt. 102 at 1-2, only

11  one of which is relevant to the instant motion: those Plaintiffs who entered the United States

12  between Ports of Entry, were subjected to expedited removal proceedings, and were determined to

13  have an initial credible fear of persecution ("Bond Hearing Class").  *See id.* at 2; Dkt. 130, ¶¶ 99-

14  100.  The statutory framework underpinning the claims pled by the Bond Hearing Class is largely

15  enshrined in section 235 of the INA.[1]  *See* 8 U.S.C. § 1225.  Subsection (b) of INA section 235 is

16  subdivided into two subsections, the first—which is germane here—governing expedited removal,

17  *see* § 1225(b)(1), and a second subsection that provides for detention during full removal

18  proceedings in certain circumstances, *see* § 1225(b)(2).  All members of the Bond Hearing Class

19  are governed by section 1225(b)(1); they were placed in expedited removal proceedings as aliens

20  who crossed the border illegally between Ports of Entry and were encountered within 14 days of

21  entry without inspection and within 100 air miles of a U.S. international land border.  *See* Dkt. 102

22  at 2; Dkt. 83 at 2.  Once found to have a "credible fear of persecution or torture," the Bond Hearing

23  Class members were referred to full removal proceedings, *see* 8 C.F.R. § 208.30(f), and subject to

24  8 U.S.C. § 1225(b)(1)(B)(ii), which provides that if an Immigration Officer "determines at the

25  time of the interview that an alien has a credible fear of persecution … the alien shall be detained

26  for further consideration of the application for asylum."  Importantly, neither section 1225 nor any

---

27  [1] A comprehensive assessment of the statutory scheme is set forth in Defendants' motion to dismiss.  *See* Dkt. 36 at
28  1-3.

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

of the INA's implementing regulations affirmatively create any right to or procedure for a bond hearing. *See Matter of M-S-*, 27 I. & N. Dec. at 518-19.

It is undisputed that members of the Bond Hearing Class were detained solely pursuant to section 1225, not section 1226, which provides for detention based "[o]n a warrant." 8 U.S.C. § 1226(a). No such warrants were issued because, as asylum seekers "seeking entry into the United States," "§ 1225(b)" applies to the Bond Hearing Class as "aliens claiming a credible fear of persecution." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Once found to have a credible fear, Bond Hearing Class members were accordingly detained pending "full consideration of the[ir] asylum claim[s]" in a removal proceeding. 8 C.F.R. § 208.30(f).

On September 20 of last year, Plaintiffs moved for a preliminary injunction on behalf of the Bond Hearing Class, contending that "[u]nder the … INA, detained asylum seekers who entered the country without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), and who USCIS determines to have a credible fear of persecution, are eligible to seek release from incarceration while they pursue their claims. *See Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005)." Dkt. 45 at 3-4. Plaintiffs conceded that *Matter of X-K-* was likely to undergo "reconsider[ation]," but nonetheless argued that "[p]roposed class members are eligible for bond hearings unless and until the decision is vacated." *Id.* at 4 n.2. The Bond Hearing Class accordingly requested an Order compelling Defendants to (1) conduct bond hearings within seven days of a hearing request; (2) place the burden of proof on the Department of Homeland Security (DHS) in bond hearings; (3) produce a recording or verbatim transcript; and (4) produce a contemporaneous written decision with particularized determinations. *Id.* at 2.

After briefing on the preliminary injunction motion concluded, this Court issued the Order. *See* Dkt. 110 at 2. The Order began with the regulatory entitlement that the Bond Hearing Class possessed under *Matter of X-K-*. *See id.* ("[D]etained asylum seekers who are determined … to have a credible fear of persecution are entitled to request release from custody during the pendency of the asylum process."). This Court went on to conclude that the calculus under the Due Process Clause pointed to the conclusion that the Bond Hearing Class was likely to succeed on the merits, *see id.* at 7-15, and that the remaining preliminary injunction factors also favored Plaintiffs. *See*

*id.* at 15-18.  As a result, this Court issued the following directive: "within 30 days of this Order," Defendants must:

> 1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit; 2. Place the burden of proof on Defendant [DHS] in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions; 3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and 4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

*Id.* at 19.

Following the issuance of the Order, the Attorney General decided *Matter of M-S-*, finding that "*Matter of X-K-* was wrongly decided," *Matter of M-S-*, 27 I. & N. Dec. at 510, based largely on the recent Supreme Court decision in *Jennings*, which concluded last year that section 1225(b) was not susceptible to a statutory interpretation under which bond hearings could be permitted. *See* 138 S. Ct. at 851.

The "question presented" in *Matter of M-S-* was "whether aliens who are originally placed in expedited [removal] proceedings and then transferred to full [removal] proceedings after establishing a credible fear," like members of the Bond Hearing class, "become eligible for bond upon transfer."  27 I. & N. Dec. at 515.  The Attorney General answered the question in the negative.  *See id.* ("I conclude that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States.").  The driving force behind the decision in *Matter of M-S-* was the statutory text: "Section 235(b)(1)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he 'shall be detained for further consideration of the application for asylum.'"  *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).  The Attorney General rejected the argument that the word "for" simply applied to the lead up to full removal proceedings because such an interpretation ran afoul "of the statutory scheme as a whole."  *Jennings*, 138 S. Ct. at 845; *see also id.* ("If respondents' interpretation of § 1225(b) were correct, then the Government could detain an alien without a warrant at the border, but once removal proceedings began, the Attorney General would have to issue an arrest warrant in order to continue detaining

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1   the alien.  To put it lightly, that makes little sense.").

2        The Attorney General further noted that the INA explicitly enumerates an exception to

3   detention: parole for "urgent humanitarian reasons or significant public benefit.  *Matter of M-S-*,

4   27 I. & N. Dec. at 516 (citing 8 U.S.C. § 1182(d)(5)(A)).  "'That express exception to detention'

5   "implies that there are no *other* circumstances under which aliens detained under [§ 1225(b)] may

6   be released.'"  *Matter of M-S-*, 27 I. & N. Dec. at 517 (quoting *Jennings*, 138 S. Ct. at 844)

7   (emphasis in original)).  *Jennings* accordingly concluded that, "[i]n sum, §§ 1225(b)(1) and (b)(2)

8   mandate detention of aliens throughout the completion of applicable proceedings and not just until

9   the moment those proceedings begin," 138 S. Ct. at 845, the same holding the Attorney General

10  reached: "For those reasons, the [*Jennings*] Court held, as I do here, that the [INA] renders aliens

11  transferred from expedited to full proceedings after establishing a credible fear ineligible for

12  bond."  *Matter of M-S-*, 27 I. & N. Dec. at 517-18.  "*Matter of X-K-* is therefore overruled."  *Id.* at

13  519.  The "effective date" of *Matter of M-S-* was set for July 15 of this year, "so that DHS may

14  conduct the necessary operational planning for additional detention and parole decisions."  *Id.* n.8.

15        Thereafter, Plaintiffs filed the TAC, which asserts six causes of action, *see* TAC, ¶¶ 117-

16  159, and filed the present motion, which explicitly asks this Court "to enjoin the Attorney

17  General's recent decision in *Matter of M-S-*."  Dkt. 131 at 1.  "No other modification of the [Order]

18  is sought," *id.*, which is to say, Plaintiffs seek to keep all other aspects of the Order intact, including

19  the mandate that bond hearings be held within seven days of a hearing request.  Although Plaintiffs

20  do not elucidate the particular claims that form the basis for their motion, they appear to be moving

21  for injunctive relief based upon Count I, which alleges that *Matter of M-S-* violates "the Fifth

22  Amendment's Due Process Clause," TAC, ¶ 129, and Count IV, which alleges that "*Matter of*

23  *M-S-* is unlawful agency action." *Id.*, ¶ 146. *See* Dkt. 131 at 6 ("*Matter of M-S-* Violates Plaintiffs'

24  Rights to Due Process."); *id.* at 15 ("*Matter of M-S-* violates the APA.").

25                                    **LEGAL STANDARD**

26        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

27  *v. NRDC*, 555 U.S. 7, 24 (2008).  The standard for granting a preliminary injunction is well-settled:

28  "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  The burden is squarely on the plaintiff to make a "clear showing" of an entitlement to preliminary relief.  *Id.* at 22.  Critically, Plaintiffs' burden is even more exacting in this case because the Bond Hearing Class seeks a "mandatory injunction," which, rather than preserving the status quo, "orders a responsible party to take action."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  "[M]andatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases[.]."  *Id.*; *see also Trevino v. Quigley*, No. C18-0487JLR, 2018 WL 3608399, at *3 (W.D. Wash. July 27, 2018) ("In cases where the movant seeks to alter the status quo, [a] preliminary injunction is disfavored, and a higher level of scrutiny must apply." (internal quotation omitted)); *Citizens of the Ebey's Reserve for a Healthy, Safe & Peaceful Env. v. U.S. Dep't of the Navy*, 122 F. Supp. 3d 1068, 1077 (W.D. Wash. 2015) (same).  An additional reason that Plaintiffs' motion merits more scrutiny than usual is that it seeks the ultimate relief demanded in the TAC at this preliminary stage.  "[I]t is generally inappropriate for a court to issue such a final judgment on the merits of a claim at the preliminary injunction stage."  *Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015).

## ARGUMENT

### I.  Section 1252(f)(1) Strips this Court of Jurisdiction to Grant Plaintiffs' Motion.

8 U.S.C. § 1252(f)(1), titled "Limit on Injunctive Relief," proscribes courts from "enjoin[ing] or restrain[ing] the operation of the provisions of" 8 U.S.C. §§ 1221-1231, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such party have been initiated."  This proviso thus unambiguously bars courts from "granting classwide injunctive relief against the operation of §§ 1221-123[2]," which is precisely what the Bond Hearing Class seeks.  *Jennings*, 138 S. Ct. at 851; *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("By its plain terms … that provision is nothing more or less than a limit on injunctive relief.  It prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-1231.");  *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (observing that *Reno* likely "forecloses the argument that § 1252(f)(1) allows classwide injunctive

1    relief"). Although Plaintiffs contend that the statute does not specifically prohibit classwide relief,

2    *see* Dkt. 126 at 20, that alternative construction "does violence to the text of the statute" "by

3    reading out the word 'individual' before 'alien' in the last sentence of the statute." *Hamama v.*

4    *Adduci*, 912 F.3d 869, 877 (6th Cir. 2018); *see also id.* at 878 ("By giving no meaning to the word

5    'individual,' Petitioners are arguing for a version of the statute that Congress simply did not

6    write.").

7        Plaintiffs make no effort to hide the fact that they are seeking an injunction enjoining the

8    operation of section 1225(b)(1)(B)(ii) as written. Although they frame their relief as seeking to

9    "enjoin *Matter of M-S-*" in its entirety, Dkt. 131 at 1-2; *id.* at 21, *Matter of M-S-* does nothing more

10   than interpret the plain text of section 1225(b)(1)(B)(ii) and apply it to the Respondent in that case.

11   *See* 27 I.& N. Dec. at 515 ("The text of the Act mandates that conclusion.   [Section

12   1225](b)(1)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he

13   shall be detained for further consideration of the application for asylum." (internal quotation

14   omitted)); *id.* at 516 ("I read section [1225](b)(1)(B)(ii) to mandate detention (i) for the purpose

15   of ensuring additional review of an asylum claim, and (ii) for so long as that review is ongoing.  In

16   other words, section [1225](b)(1)(B)(ii) requires detention until removal proceedings conclude.");

17   *id.* at 518-19 ("[T]he statutory text … lead[s] to the same conclusion: that all aliens transferred

18   from expedited to full proceedings after establishing a credible fear are ineligible for bond.").

19   Taken together, then, any injunction that prevents *Matter of M-S-* from going into effect also, by

20   extension, "enjoin[s] … the operation of" section 1225(b)(1)(B)(ii), 8 U.S.C. § 1252(f)(1), because

21   to grant the relief Plaintiffs seek, the court must interpret section 1225(b)(1)(B)(ii) to require

22   something other than what its plain text requires: that they "shall be detained." *See Jennings*, 138

23   S. Ct. at 844 ("The plain meaning of [section 1225(b)(1)(B)(ii)] is that detention must continue

24   until immigration officers have finished "consider[ing]" the application for asylum").  Plaintiffs

25   cannot shroud the true nature of their desired relief by only mentioning *Matter of M-S-* as the target

26   of their injunction.  Because *Matter of M-S-* is centered around the proper interpretation of section

27   1225(b)(1)(B)(ii), any classwide injunction that "halt[s] the implementation of *Matter of M-S-*,"

28

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Dkt. 131 at 21, prevents section 1225(b)(1)(B)(ii) from being operative as written, which places Plaintiffs' request for injunctive relief squarely within the sweep of section 1252(f)(1).

Plaintiffs cannot sidestep the clear application of section 1252(f)(1) by relying on this Court's previous decision that found section 1252(f)(1) inapposite. That is because in construing Plaintiffs' claims, this Court found that "Plaintiffs are not asking the Court to 'enjoin or restrain *the operation of the provisions*' of any statute, but instead seek an injunction against actions and policies that *violate* those statutes and associated constitutional provisions." Dkt. 91 at 19 (second emphasis added). The claims that form the predicate for Plaintiffs' present request for injunctive relief no longer possess the attribute that this Court relied on to deem section 1252(f)(1) inapplicable. Instead, the claims in the TAC effectively allege that section 1225(b)(1)(B)(ii) is unconstitutional as written because it "violates Plaintiffs' . . . due process rights," Dkt. 131 at 6, and further contend that the plain language of section 1225(b)(1)(B)(ii) should not be given legal effect because *Matter of M-S-* allegedly "violates the rulemaking requirements of the APA." Dkt. 131 at 15. Neither of those claims have a statutory basis in the INA, and although Count IV is styled as an APA claim, that heading does not obscure the true relief sought in Count IV, namely an Order construing section 1225(b)(1)(B)(ii) in a manner contrary to the plain text of the statute by enjoining *Matter of M-S-*. As such, neither claim can be shielded from the application of section 1252(f)(1), something the Supreme Court recognized in *Jennings*. *See* 138 S. Ct. at 851 ("The Court of Appeals held that this provision did not affect its jurisdiction over respondents' *statutory* claims because those claims did not 'seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes.' This reasoning does not seem to apply to an order granting relief on constitutional grounds." (emphasis in original) (internal citations omitted)). And Plaintiffs' demand for the inclusion of additional bond hearing procedures similarly "create[s] out of thin air a requirement for bond hearings that does not exist in the statute," which similarly places those claims firmly within the grasp of section 1252(f)(1). *Hamama*, 912 F.3d at 879-80.

In their opposition to Defendants' motion to vacate, Plaintiffs made a number of additional arguments as to why their claims are excepted from the ambit of section 1252(f)(1). Each is

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1   unavailing.   First, Plaintiffs argued that "by its terms, § 1252(f)(1) does not bar classwide

2   injunctive relief on behalf of individuals in removal proceedings." Dkt. 126 at 19.  That position

3   is emphatically foreclosed by Supreme Court precedent, which has held that, to the contrary, that

4   is *exactly* what section 1252(f)(1) does.  *See Jennings*, 138 S. Ct. at 851 ("Section 1252(f)(1) thus

5   prohibits federal courts from granting classwide injunctive relief against the operation of [§§ 1221-

6   1232]." (internal quotation omitted)).  Plaintiffs resort to invoking *Califano v. Yamasaki*, 442 U.S.

7   682, 700 (1979), Dkt. 126 at 20, a case involving an "entirely different statute" and the use of the

8   word "individual" in a completely different context.  *Hamama*, 912 F.3d at 878; *see also id.*

9   ("[A]lthough the rule laid out in *Yamasaki* may be true as a general rule, it does not stop the Court

10   from looking at a particular statute that uses the word 'individual' and determining that, even if

11   the use of 'individual' does not bar class actions, it does bar them in the particular statute at issue.

12   And that is exactly what the [Supreme] Court found in *Reno*.").  Plaintiffs never suggest—nor

13   could they—that the statute at issue in *Califano* involved a general *prohibition* on injunctive relief

14   with a narrow carve-out for cases involving an "individual alien." 8 U.S.C. § 1252(f)(1).

15      Next, Plaintiffs contend that applying section 1252(f)(1) as written would unlawfully

16   deprive "federal courts of equitable authority in cases founded upon habeas jurisdiction." Dkt.

17   126 at 21.  But Plaintiffs elide the distinction between statutes that eliminate habeas actions, and

18   statutes that place limits on the manner in which relief can be sought, like section 1252(f)(1).  The

19   latter scenario, at issue here, presents no constitutional concerns.  Limiting the availability of

20   classwide injunctive relief does not suspend the writ of habeas corpus because the traditional writs

21   of habeas corpus remain readily available and "individual alien[s]" remain free to bring habeas

22   cases.  8 U.S.C. § 1252(f)(1).  Indeed, there is no common law tradition of class action habeas

23   relief, meaning there can be no Suspension Clause problem where Congress does not permit that

24   sort of relief in habeas cases.  *See Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984) ("[w]e have

25   never decided" whether Federal Rule of Civil Procedure 23 "is applicable to petitions for habeas

26   corpus relief").  Plaintiffs furthermore misapply the rule in *I.N.S. v. St. Cyr*, 533 U.S. 289, 298

27   (2011), which only requires a "clear statement of congressional intent to repeal habeas

28   jurisdiction." *See* Dkt. 126 at 20.  That prerequisite has no application where, as here, the statute

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

does not repeal habeas jurisdiction, but instead merely defines the form of remedy available by precluding classwide injunctions.  *See Hamama*, 912 F.3d at 879 ("[T]here is nothing in § 1252(f)(1) that suspends the writ of habeas corpus.  It is true that habeas is barred as to *injunctive relief* for *class actions*, but there is nothing barring a class from seeking a traditional writ of habeas corpus … or an individual from seeking habeas relief, whether injunctive or otherwise." (emphasis in original)).

Finally, Plaintiffs maintain that notwithstanding the proper construction of section 1252(f)(1), they may still seek "classwide declaratory relief."  Dkt. 126 at 21.  This assertion has no bearing on whether Plaintiffs are entitled to preliminary injunctive relief—the only question at issue in this motion.  Moreover, since there is no analog to a preliminary injunction in the context of declaratory relief, whether Plaintiffs' claims for declaratory relief can proceed is entirely beside the point of their motion seeking a modified *preliminary injunction*.  *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("[P]rior to final judgment there is no established declaratory remedy comparable to a preliminary injunction.").

## II.     Plaintiffs Lack Standing to Obtain Injunctive Relief.

Plaintiffs allege that Ms. Padilla and Mr. Vasquez face "the prospect of being re-detained without a bond hearing," TAC, ¶¶ 67, 97, and further contend that "[p]ursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face the prospect of being re-detained without a bond hearing." *Id.*, ¶ 126.  These unsupported allegations are purely speculative and cannot demonstrate Article III standing.

In order to demonstrate standing to seek injunctive relief, Plaintiffs must have an injury in fact, which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The alleged injury must be "actual or imminent" and "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original).  Plaintiffs are unable to demonstrate standing here because, "[a]t this time," ICE Enforcement and Removal Operations (ERO) "does

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1  not intend to re-detain aliens who, after having established credible fear, have an ICE custody

2  release determination or an Immigration Court final bond determination." *See* Dkt. 137 ¶ 6. *Matter*

3  *of M-S-* is set to become effective on July 15, 2019, and aliens previously eligible for a bond

4  hearing under *Matter of X-K-* will be receiving bond hearings until that time.  *See* 27 I & N Dec.

5  at 519 n.8.  All completed ICE custody determinations and immigration court bond orders issued

6  prior to that time will continue to be honored. *See* Dkt. 137 ¶ 6.  While that policy is in effect,

7  Plaintiffs' claim of a potential future injury is entirely speculative, and their fear of being re-

8  detained is entirely unfounded.

9       This is no longer a circumstance where it is appropriate to apply the "inherently transitory,"

10  Dkt. 110 at 5, principle.  Here, the named Plaintiffs were *never* subject to *Matter of M-S-*, so their

11  claims are not transitory as they never existed at the time of their detention, and there is therefore

12  no claim that is "capable of *repetition*, yet evading review." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d

13  1081, 1088 (9th Cir. 2011) (emphasis added); *see also Stevens v. Harper*, 213 F.R.D. 358, 368–69

14  (E.D. Cal. 2002) ("In the absence of specific factual allegations connecting the named plaintiffs'

15  individual claims to particular CYA policies and procedures, the complaint's class allegations

16  provide no additional insight into whether the named plaintiffs face a sufficient individual

17  likelihood of future injury to pursue equitable relief."). Plaintiffs' lack of standing is an additional

18  reason they are not entitled to injunctive relief.

19  **III.    Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits.**

20       Plaintiffs portray their motion as a request for a "prohibitory injunction" requiring

21  Defendants to "continue to provide individualized bond hearings," Dkt. 131 at 6, glossing over

22  the fact that the relief they seek is not merely bond hearings, but bond hearings that comport with

23  a plethora of additional rigorous procedural requisites imposed through Court order.  It is thus

24  undeniable that Plaintiffs seek, through their motion, to order Defendants to "take action" not

25  required by statute, *Marlyn*, 571 F.3d at 879, a fact confirmed by Plaintiffs' explicit request for

26  this Court to keep every aspect of the "existing [O]rder" in place.  Dkt. 131 at 1.  The fact that

27  Plaintiffs are simply trying to add an additional component to the injunction—enjoining *Matter*

28  *of M-S*—does not change this conclusion and, as seen below, Plaintiffs have not made the

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

necessary showing to justify their requested mandatory injunction.

## A. Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their Due Process Claim.

Count I, on its face, alleges that *Matter of M-S-* violates Plaintiffs' due process rights. Because *Matter of M-S-* simply interprets 8 U.S.C. § 1225(b)(1)(B)(ii) in accordance with *Jennings*, *see* 27 I. & N. Dec. at 517-18, *Jennings*, 138 S. Ct. at 844-45, however, this claim reduces to asserting that the mandatory detention statute *Matter of M-S-* applies, 8 U.S.C. § 1225(b)(1)(B)(ii), is unconstitutional because it violates Plaintiffs' due process rights. But Plaintiffs have not shown the plausibility of such a claim, let alone a likelihood of success on the merits.

The burden on Plaintiffs is even more stringent now that they are seeking to enjoin section 1225(b)(1)(B)(ii) because courts "do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994), and "[i]t is well-established that acts of Congress enjoy a strong presumption of constitutionality." *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000); *see also Perez v. Marshall*, 946 F. Supp. 1521, 1531 (S.D. Cal. 1996). Plaintiffs cannot succeed in making this weighty showing, because as unadmitted aliens who have only been in the United States for a brief period of time, they have only the due process rights granted to them by statute with respect to their interest in entering the United States. The Supreme Court has long recognized that Congress exercises "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972). And "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). As aliens who surreptitiously and illegally entered the country and who are assimilated to those at the threshold of initial entry, Plaintiffs' due process rights are limited to only those procedures provided by Congress. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Barrera v. Rison*, 44 F.3d 1441, 1449-50 (9th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 976 (1995); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1142 n.11 (9th Cir. 2013) ("[A]n alien

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

who entered the United States without inspection [is] thus clearly … subject to the doctrine described in *Mezei* and *Barrera*.").

The inability of Plaintiffs to demonstrate a likelihood of success on the merits is exacerbated because even if Plaintiffs were not subject to the *Mezei* doctrine, they would lack a due process right to receive bond hearings within seven days of request.  Count I does not merely demand a bond hearing; it demands a "timely" bond hearing in a "prompt" manner, TAC, ¶¶ 122, 129, "within seven days" of a bond hearing request.  *Id.*, ¶ 100.  But both the Supreme Court and the Ninth Circuit have held that as to all categories of immigration detainees, constitutional concerns emerge, if at all, only once detention exceeds six months in duration.

As an initial mater, Plaintiffs' demand for an inflexible time limit governing bond hearings contravenes the well-settled principle that "[d]ue process is flexible and it calls for such procedural protections as the particular situation demands." *Jennings*, 138 S. Ct. at 852.  Aliens only "receive constitutional protections when they have come within the territory of the United States and developed *substantial connections* with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added).  Absent those substantial connections, Plaintiffs lack additional due process rights, something *Jennings* itself recognized in discussing those aliens in the same position as the class or recent entrants here who are subject to expedited removal: "the Court of Appeals has already acknowledged that some members of the certified class may not be entitled to bond hearings as a constitutional matter." 138 S. Ct. at 852 (citing *Mezei*, 345 U.S. 206 and *Plasencia*, 459 U.S. at 21, 34).  Any due process calculus must accordingly take account of the immigration context in which Plaintiffs' claim arises and the corresponding lack of "substantial connections" Plaintiffs have with the United States. *Verdugo-Urquidez*, 494 U.S. at 271.

The starting point for the analysis of this requirement is *Zadvydas v. Davis*, in which the Supreme Court held that the indefinite detention of lawful permanent residents with final orders of removal was unlawful. 533 U.S. 678 (2001).  In *Zadvydas*, the Supreme Court articulated a *six-month period* of presumptively reasonable detention for aliens with final orders of removal who had developed extensive ties to the United States: "Congress previously doubted the constitutionality of detention for more than six months.  Consequently, for the sake of uniform

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

administration in the federal courts, we recognize that period …. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.  Critically, the opinion is circumscribed to that factual scenario and explicitly notes that "[a]liens who have not yet gained initial admission to this country would present a very different question." *Id.* at 682.

Two years after *Zadvydas*, in *Demore v. Kim*, the Supreme Court emphasized that in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens."  538 U.S. 510, 521 (2003) (quoting *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976)). Plaintiffs portray *Demore* as an outlier, *see* Dkt. 131 at 9-10, but to the contrary, *Demore* and *Zadvydas*, which Plaintiffs substantially rely on, *see* Dkt. 131 at 7, 9-11, 13, 18, are entirely consistent with one another.  In *Demore*, the Supreme Court found that a "brief" six-month detention of a lawful permanent resident—who had extensive ties to the United States—during the pendency of his removal proceedings was fully justified and did not violate the Due Process Clause.  538 U.S. at 513, 531.  "Detention during removal proceedings is a constitutionally permissible part of [the] process." *Id.* at 520.  From *Zadvydas* and *Demore*, two relevant principles can be gleaned: (1) constitutional concerns, even with respect to those who have developed extensive ties to the United States by residing here, do not even become implicated until six months of detention, and even then, detention can still continue past that point, something the Supreme Court explicitly stated, 533 U.S. at 701; and (2) the due process analysis must account for the immigration context and the fact that the detention is being applied to aliens, not citizens.

*Demore* made additional points that buttress why Plaintiffs cannot show a likelihood of success on the merits.  First, the result in *Zadvydas* was compelled, in large measure, because the "aliens challenging their detention following final orders of deportation were ones for whom removal was no longer practically attainable. The Court thus held that the detention there did not serve its purported immigration purpose."  538 U.S. at 527 (internal citation omitted). That scenario is not presented here, as Plaintiffs will either be ordered removed or granted asylum (or other protection or relief from removal), but ensuring Plaintiffs' presence for their immigration

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

proceedings clearly serves critical immigration purposes. *See Demore*, 538 U.S. at 512. Second, the post-removal statute in *Zadvydas* had "no definite termination point," *id.* at 528, and indeed, *Zadvydas* distinguished the statute at issue, section 1231, from statutes involving "detention pending a determination of removability," which has a definite termination point. 533 U.S. at 697. Section 1225 is just such a statute involving a definite termination point.

Consistent with *Demore* and *Zadvydas*, the Ninth Circuit, both before and in the wake of *Jennings* has held, at *most*, that constitutional concerns are implicated only after *six months* of detention. *See Marin*, 909 F.3d at 256 ("The district court should also reassess and reconsider both the clear and convincing evidence standard and the six-month bond hearing requirement."); *Robbins*, 804 F.3d at 1069-70 ("*When* detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial. The burden imposed on the government by requiring hearings before an immigration judge at *this stage of the proceedings* is therefore a reasonable one." (emphasis added)). It follows that Plaintiffs' claim for a bond hearing within seven days is implausible, as seven days is nowhere near the six-month threshold where the Ninth Circuit has first identified the existence of substantial constitutional concerns.

In its previous Order granting Plaintiffs' initial preliminary injunction motion, this Court relied on cases "[e]lsewhere in the civil commitment context," Dkt. 110 at 13, to justify the seven-day limit as a matter of constitutional law. Plaintiffs invoke the same context in their motion. *See* Dkt. 131 at 8-9. Those cases, however, simply cannot be squared with longstanding Supreme Court precedent which expressly holds that immigration detention works differently and is properly justified by the legitimate interest in holding aliens during the pendency of removal proceedings. *See, e.g.*, *Demore*, 538 U.S. at 530, *Jennings*, 138 S. Ct. at 851. Thus, *Doe v. Gallinot*, 657 F.2d 1017, 1021 (9th Cir. 1982) is clearly inapplicable, as that case involved a citizen and arose in the mental health confinement context, not in the immigration context. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1195-96 (N.D. Cal. 2017), specifically distinguished the aliens at issue there—minor children who are accorded special protections under the INA—from

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

"noncitizen[s] caught crossing the border" like Plaintiffs because the pertinent statute in *Saravia* "require[d] the federal government to protect unaccompanied minors . . . rather than simply processing them as other immigrants caught crossing the border." Finally, *Nguti v. Sessions*, 259 F. Supp. 3d 6 (W.D.N.Y. 2017), involved discretionary detention under section 1226, *id.* at 12-13, which renders that case irrelevant. If anything, *Nguti* reaffirms that Plaintiffs' request for a bond hearing within seven days is baseless, as the need for a prompt bond hearing in that case was only triggered *after* six months of detention had passed. *See id.* at 12, 14.

Apart from the seven-day demand, Plaintiffs also assert that they are entitled to a litany of additional procedures in bond hearings. *See* TAC at 25-26. Yet Plaintiffs make no effort to justify any of these onerous procedures in their motion. As the movant bearing the burden of persuading this Court through a "clear showing" that injunctive relief is warranted, Plaintiffs' failure to specifically address each of these additional requirements, by itself, dooms their ability to obtain injunctive relief with respect to any of these demands. *Winter*, 555 U.S. at 22. Nonetheless, Defendants briefly address why each requirement Plaintiffs seek to add to bond hearings are wholly unsupported. First, the Supreme Court has consistently affirmed the constitutionality of detention pending removal proceedings, notwithstanding that the government has *never* borne the burden to justify that detention by clear-and-convincing evidence. *See Demore*, 538 U.S. at 531; *Reno v. Flores*, 507 U.S. 292, 296 (1993); *Carlson v. Landon*, 342 U.S. 524, 538 (1952). Second, Plaintiffs' averments that verbatim transcripts and particularized written findings are necessary in bond hearings reaches far beyond the limited procedural protections they enjoy as unadmitted aliens, and even outstrips the process that United States *citizens* enjoy in criminal proceedings, where the Supreme Court has held that the record need not be verbatim to be constitutionally adequate. *See Mayer v. City of Chicago*, 404 U.S. 189, 193-94 (1971); *Coppedge v. United States*, 369 U.S. 438, 446 (1962); *United States v. Carrillo*, 902 F.2d 1405, 1409 (9th Cir. 1990).

Plaintiffs expend substantial energy in outlining perceived inadequacies in the parole process, largely incorporating by reference cherry-picked findings from other cases. *See* Dkt. 131 at 11-14. This is nothing more than a red herring. Whether or not the parole process is "an adequate substitute for an individualized hearing," *id.* at 11, is immaterial to Plaintiffs' likelihood

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

of success on their claim that a lack of bond hearings within seven days complete with additional

procedures violates the Due Process Clause.  Indeed, none of the Plaintiffs in this case allege any

injury stemming from the parole process, buttressing the conclusion that Plaintiffs' criticisms of

"parole reviews … in practice," *id.* at 12, should be given no weight.  *See, e.g.*, *Alexandre v.*

*Decker*, No. 17CIV5706GBDKHP, 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019).

Moreover, Plaintiffs conveniently omit that the statutory text provides that the Secretary of DHS[2]

may parole aliens "*only on a case-by-case basis for urgent humanitarian reasons or significant*

*public benefit.*"  8 U.S.C. § 1182(d)(5)(A) (emphasis added).  And any alleged "blanket parole

denials," Dkt. 131 at 12, are not judicially reviewable as such decisions are made entirely at the

"discretion of the [Secretary]."  8 U.S.C. § 1252(a)(2)(B)(ii).  For similar reasons, Plaintiffs'

assertion that the "parole process creates an unacceptable risk of the erroneous deprivation of

Plaintiffs' liberty," Dkt. 131 at 13, is completely irrelevant, a fact bolstered by Plaintiffs' previous

motion for a preliminary injunction, which conducted the same analysis with respect to bond

hearings, not the parole process.  *See* Dkt. 45 at 8.  In particular, the premise that any deprivation

is "erroneous," Dkt. 131 at 13, cannot be properly evaluated without assessing whether any

Plaintiffs have met the statutory standards for obtaining a grant of parole, something Plaintiffs

make no effort to show.  Plaintiffs' argument addressing the parole process cannot justify

maintaining an injunction requiring bond hearings.  Accordingly, Plaintiffs have not demonstrated

a likelihood of success on their due process claim.

### B.  Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits of their APA Claim.

Plaintiffs next contend that *Matter of M-S-* "violates the rulemaking requirements of the

APA."  Dkt. 131 at 15.  But this claim is based on a false premise, as no such requirements attach

to adjudications like *Matter of M-S-*, and, for that matter, *Matter of X-K-*, which also was a

permissible agency adjudication that did not undergo notice and comment.  That crucial

distinction dooms Plaintiffs' attempts to demonstrate a likelihood of success on their APA claim.

---

[2] The parole statute refers to the Attorney General, but upon enactment of the Homeland Security Act, these functions were transferred to the Secretary of DHS. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

As a threshold matter, the Attorney General has authority to "review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out" his duties.   8 U.S.C. § 1103(g)(2).   Exercising that authority, the Attorney General vested the Board of Immigration Appeals (BIA) with power to issue precedential decisions on the "proper interpretation and administration of the [INA] and its implementing regulations," 8 C.F.R. §§ 1003.1(d)(1), (h), and retained final decision-making authority by providing that he may certify to himself cases arising from the BIA, so that he may review and issue decisions in those cases.   *Id.* §§ 1003.1(g)-(h). Through this adjudicatory scheme, the Attorney General and the BIA give statutory terms "concrete meaning through a process of case-by-case adjudication."   *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).   Congress has provided that the "determination[s] and ruling[s] by the Attorney General with respect to all questions of law" on these issues shall be controlling." 8 U.S.C. § 1103(a)(1).   The Attorney General's interpretations accordingly command "deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 947 (9th Cir. 2007).

In this case, the Attorney General elected to adduce the statutory interpretation of 8 U.S.C. 1225(b)(1)(B)(ii) through an adjudication, not a legislative rule, which he was clearly authorized to do.   *See Aguirre-Aguirre*, 526 U.S. at 425.   "[A]n agency is not precluded from announcing new principles in an adjudicative proceeding" as "the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."   *Miguel-Miguel*, 500 F.3d at 950.   That critical choice insulated *Matter of M-S-* from notice-and-comment obligations under the APA.   The Ninth Circuit has explicitly exempted "adjudications" from the notice-and-comment prerequisite, unlike "agency rulemaking," which must be preceded by a "notice and comment period."   *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1151 (9th Cir. 2008); *see also Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1187 (9th Cir. 2010) ("[T]his was a case-by-case adjudication, and did not involve rulemaking of any kind.").   "Two principal characteristics distinguish rulemaking from adjudication.   First, adjudications resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1   of unspecified individuals.  Second, because adjudications involve concrete disputes, they have an

2   immediate effect on specific individuals (those involved in the dispute).  Rulemaking, in contrast,

3   is prospective, and has a definitive effect on individuals only after the rule is subsequently

4   applied." *Yesler Terrace Comm. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994).

5   The conclusion that *Matter of M-S-* is an adjudication is reinforced by applying the test

6   articulated in *Cisneros*.   *Matter of M-S-* "resolve[d] [a] dispute[]" involving a "specific

7   individual[]" and a "specific case[]," 37 F.3d at 448, which is why the decision concluded by

8   "revers[ing] the order granting bond to the respondent." 27 I. & N. Dec. at 519.  This result further

9   "involve[d] concrete disputes" and had an "immediate effect" on the respondent, the individual

10  "involved in the dispute." *Cisneros*, 37 F.3d at 448.  As in both *MacLean* and *Sebelius*, no notice-

11  and-comment period was necessary for such an adjudication.  *See MacLean*, 543 F.3d at 1151;

12  *Sebelius*, 611 F.3d at 1188.   Additionally, it is worth noting that although Plaintiffs posit

13  "rulemaking here would serve a useful purpose," Dkt. 131 at 17—an assertion that has no bearing

14  on whether or not notice-and-comment rulemaking was mandatory—the Attorney General

15  received significant input from the "public," *id.* at 18, via amicus briefs from "[s]everal amici"

16  adopting Plaintiffs' interpretation of the INA.  *Matter of M-S-*, 27 I. & N. Dec. at 516.

17  The inability of Plaintiffs to demonstrate a likelihood of success on their APA claim is

18  further compelled by the Ninth Circuit's decision in *Miguel-Miguel*.  There, the Ninth Circuit held

19  that the "Attorney General may through an adjudicative decision [*Matter of Y-L-*] create a strong

20  presumption that a drug trafficking offense resulting in a sentence of less than five years is a

21  'particularly serious crime.'" 500 F.3d at 942.  As in this case, the plaintiff in *Miguel-Miguel*

22  challenged the administrative decision rendered by the Attorney General as "invalid because it is

23  a legislative rule under the APA and therefore the Attorney General could not issue it without first

24  engaging in notice-and-comment rulemaking procedures."  *Id.* at 950.   The Ninth Circuit

25  disagreed, holding "that *Matter of Y-L-* is an *adjudicative decision* and thus does not fit within the

26  legislative/interpretive framework for rulemaking." *Id.* (emphasis in original).   And, as an

27  "adjudication," the administrative decision in *Miguel-Miguel* did not need to comport with notice-

28

19

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

and-comment requirements.  The same is true of *Matter of M-S-*.[3]

The fact that *Matter of M-S-* is an adjudication, not a legislative rule, suffices to find that Plaintiffs cannot discharge their merits burden on their APA claim.  But Plaintiffs cannot make the necessary showing for a second, independent reason: *Matter of M-S-* is fully consistent with all applicable regulations.  The crux of Plaintiffs' argument is that *Matter of M-S-* "effectively rewrite[s] the regulations without complying with the required rulemaking procedures."  Dkt. 131 at 17.  Plaintiffs are wrong.  The decision in *Matter of M-S-* is the only outcome that can be harmonized with the INA's implementing regulations.

As Plaintiffs themselves recognize, *see* Dkt. 131 at 15, the starting point in the analysis is 8 C.F.R. § 1236.1(d), which provides the "authority to hold bond hearings for individuals in removal proceedings."  Dkt. 131 at 15.  But Plaintiffs gloss over the fact that this regulation does not provide an all-encompassing right to a bond hearing; instead, an "immigration judge is authorized to exercise the authority *in section 236 of the Act* … and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter."  *Id.* (emphasis added) (quoting 8 C.F.R. § 1236.1(d)).  8 C.F.R. §§ 1003.19 and 1236.1(d), far from describing the complete universe of aliens ineligible for bond, only apply to aliens detained pursuant to 8 U.S.C. § 1226.  They do not, however, apply to aliens detained, as here, under 8 U.S.C. § 1225.  Because all aliens detained under 8 U.S.C. § 1225, including Bond Hearing Class members, are ineligible for bond pursuant to the express terms of the statute, *see Jennings*, 138 S. Ct. at 842, the only proper construction of 8 C.F.R. §§ 1003.19 and 1236.1(d) is that they address aliens ineligible for bond under the section 1226 scheme, and do not address those aliens statutorily ineligible for bond pursuant to section 1225.  The Attorney General made this very point.  *See Matter of M-S-*, 27 I. & N. Dec. at 518 ("[T]he Board did not discuss section 235's detention requirement at all and therefore overlooked the implications that provision has upon the

---

[3] *Miguel-Miguel* left open the possibility of an agency "abus[ing] its discretion by announcing new rules through adjudication … such as when the rule operates retroactively and disturbs settled expectations," *id.*, but that hypothetical scenario is inapt here and Plaintiffs do not claim that this is an improper retroactive rule. Instead, *Matter of M-S-* simply applies the statutory detention provision in a concrete dispute, and its forward-looking impact derives solely from the precedential effect of decisions of the Attorney General and the deference to which they are entitled under governing principles. *See* 8 U.S.C. § 1103(g); *Aguirre–Aguirre*, 526 U.S. at 425.

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

1    appropriate interpretation of section 236.").

2         For this reason, Plaintiffs' reliance on 8 C.F.R. § 1003.19(h)(2)(i), which "excludes

3    specific class of individuals" from being eligible for bond, Dkt. 131 at 15-16, is misplaced.  It

4    bears emphasizing that Plaintiffs' entire argument hinges on their absence from a list of aliens that

5    are *precluded* from obtaining bond hearings, rather than any affirmative textual grant of a right to

6    a bond hearing.  In any event, although Plaintiffs are not delineated in the list, that proves nothing

7    because this regulation only applies to detention under 8 U.S.C. § 1226, not 8 U.S.C. § 1225.  The

8    same is true of the history of the regulation, *see* Dkt. 131 at 16, to the extent such history is even

9    probative.  And although Plaintiffs assail the Attorney General's reliance on a "2004 Federal

10   Register Notice," *id.*, Plaintiffs do not even grapple with the Attorney General's analysis of the

11   Notice.  Specifically, the Attorney General underscored that immigration judge review "is

12   permitted only for bond and custody determinations pursuant to section 236," while aliens in

13   "expedited removal procedures … are covered by section 235, not section 236.  Thus, the Secretary

14   [in the 2004 Notice] concluded, even without adding the designated aliens to section 1003.19's list

15   of bond-ineligible classes, the designated aliens are not eligible for bond …. I agree with that

16   interpretation, which ensures that the regulation remains consistent with the statute." 27 I. & N.

17   Dec. at 518 (quoting 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004)).  Plaintiffs' position that 8

18   C.F.R. § 1003.19(h)(2)(i) categorically renders all "EWIs eligible for bond hearings," Dkt. 131 at

19   16, is thus flatly inconsistent with both the statutory and regulatory scheme.  And although the

20   Attorney General separately found that the parole regulations, which "make[] no mention of bond,"

21   also supported the outcome reached in *Matter of M-S-*, 27 I. & N. Dec. at 518, that analysis had

22   no impact on the subsequent repudiation of the "negative inference based upon 8 C.F.R. §

23   1003.19" that Plaintiffs, like the Board in *Matter of X-K-*, improperly rely on.  *Id.*[4]

24        Finally, Plaintiffs' argument that the "Attorney General's … reading of the regulations in

25   *Matter of M-S-* lacks merit," Dkt. 131 at 16, is not only incorrect, but fails to satisfy the stringent

26   standard applicable to Plaintiffs' claim since even if the statute were ambiguous, the Attorney

27
28

---

[4] The 1998 Parole Memorandum Plaintiffs' cite, *see* Dkt. 131 at 16, similarly only mentions bond in connection with section 236, not section 235.  *See* Paul W. Virtue, Memorandum on Authority to Parole Applications for Admission Who Are Not Also Arriving Aliens, Legal Op. No. 98-10 (INS), 1998 WL 1806685, at *2 (Aug. 21, 1998).

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

General's interpretation would be entitled to *Chevron* deference.  Plaintiffs make no effort to show—nor could they—that "the Attorney General's interpretation is impermissible." *Miguel-Miguel*, 500 F.3d at 948.

## IV.   The Remaining Injunctive Factors Militate Against Granting Plaintiffs' Motion.

The third and fourth injunctive factors—the balance of equities and whether the proposed injunction is in the public interest—"merge" when the "government is a party." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  In assessing the balance of equities, this Court must weigh "the balance of hardships among the parties" and consider the various "interests at stake." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).  In this case, granting Plaintiffs' motion would inflict profound damage on the Government.

The public interest weighs squarely against granting Plaintiffs' motion because "the public interest favors the efficient administration of the immigration laws at the border." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019).  The proposed injunction would dramatically disrupt border operations at a time of unprecedented strain on the border system by forcing Defendants to radically overhaul their system for holding bond hearings in accordance with multiple new procedures and the arbitrary seven-day demand Plaintiffs have included in their prayer for relief.  In effect, this Court would be substituting its judgment for that of Defendants in deciding how to schedule bond hearings, which would prevent Defendants from efficiently allocating its resources to address cases in a way that is fair to all aliens, not just Bond Hearing Class members, and ensures that the most compelling needs are prioritized.  That result favors denying Plaintiffs' motion.

A second, and distinct reason that the public interest favors Defendants is that granting Plaintiffs' requested modification would erode the holding in *Jennings*.  *Jennings* made clear that detention pending further proceedings is the norm under section 1225 "throughout the completion of applicable proceedings." 138 S. Ct. at 845.  *Jennings* made no exception for individuals found to have a positive credible fear, and both Plaintiffs and this Court agree that individuals found *not* to have a credible fear can be detained pending the completion of applicable proceedings.  *See* Dkt. 110 at 7; Dkt. 126 at 23.  Granting Plaintiffs' motion would nonetheless create a different

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

detention rule that is completely atextual for individuals that illegally entered the United States and were subsequently found to have a positive credible fear. Such an exception is at odds with *Jennings*, and thus subverts "the strong interest in national uniformity in the administration of immigration laws." *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004).

The final injunctive factor is whether Plaintiffs have discharged their burden of showing that they are "likely to suffer irreparable harm in the absence of preliminary relief," as opposed to a mere "possibility" of irreparable harm. *Winter*, 555 U.S. at 20, 22. The evidence Plaintiffs proffer on this issue suggests that detention of *any* length constitutes irreparable harm. That position not only contravenes Supreme Court precedent, but it fails to demonstrate the required nexus between the specific injunction sought in this case and the alleged irreparable harm.

As an initial matter, the named Plaintiffs will suffer no irreparable harm absent a preliminary injunction, *see* Part II, *supra*, because the impact of an injunction on those already released on bond is entirely speculative. Though Plaintiffs allude to a series of past harms the named Plaintiffs suffered in detention, *see* Dkt. 131 at 20-21, such harms would not be addressed by the injunction they seek. The remaining class members have likewise not shown the necessity for preliminary relief to safeguard against irreparable harm. Plaintiffs expend substantial energy in outlining various detriments stemming from detention of any length, *see* Dkt. 131 at 18-19, but never explain or address how or why the preliminary injunction that they seek would specifically ameliorate any of those harms. That failing ensures that Plaintiffs have not met their burden of "demonstrating that the relief sought is necessary to prevent irreparable harm," because there is a clear disconnect between the specific injunction Plaintiffs seek and alleged harm stemming from detention of any length. *Dunn v. Fisher*, No. 1:10-cv-01099-SKO-PC, 2011 WL 489596, at *2 (E.D. Cal. Feb. 7, 2011). Although Plaintiffs contend "that the deprivation of constitutional rights unquestionably constitutes irreparable injury," Dkt. 131 at 18, because there is no support for the proposition that a deprivation of constitutional rights occurs after seven days of detention in the immigration context, *see* Part III.A, *supra*, that truism cannot substitute for Plaintiffs satisfying their burden on this issue.

The existence of alternative mechanisms to rectify any alleged harms that unnamed class

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

members are suffering further undermines Plaintiffs' efforts to show irreparable harm.  Individual class members remain free to challenge prolonged detention through the ordinary course of habeas litigation, and this is the proper way in any event to evaluate Plaintiffs' Due Process Clause claim, which depends on the individual circumstances presented.  Moreover, the only evidence Plaintiffs have submitted discusses harm suffered as a byproduct of detention in the abstract, which is not enough.  A preliminary injunction demands "immediate threatened injury as a prerequisite to preliminary injunctive relief."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 946 (9th Cir. 2014).  None of Plaintiffs' submissions demonstrate this with respect to either the named Plaintiffs—who were released—or any other class member.

Distilled to its essence, the declarations Plaintiffs have submitted in connection with this motion appear to cast the alleged irreparable injury as any amount of detention in connection with immigration proceedings, no matter the duration.  *See* Dkt. 133 ¶ 19 ("It is my professional opinion that detention severely harms the physical and mental health of asylum seekers already subject to considerable physical and emotional trauma."); Dkt. 134 ¶ 10 ("[I]mmigration detention is expensive and difficult to manage in comparison with alternatives to detention.").  This novel theory of irreparable injury is not only divorced from the specific preliminary relief Plaintiffs seek, it also flouts Supreme Court precedent explicitly holding that detention during immigration proceedings is lawful.  *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is …constitutionally permissible."); *Mezei*, 345 U.S. at 212.  The only preliminary relief that could adequately redress such an injury is an injunction that ended, on a wholesale basis, detention for all individuals in immigration proceedings.  Such a stark result would vitiate the ability of the Executive Branch to regulate immigration in any meaningful way, and reinforces that Plaintiffs' alleged irreparable harm is completely unsupported.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion to modify the existing injunction.

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

Dated: June 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

SARAH STEVENS WILSON
Assistant United States Attorney

*/s/Archith Ramkumar*
ARCHITH RAMKUMAR
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 598-8060
Archith.Ramkumar@usdoj.gov

*/s/Lauren C. Bingham*
LAUREN C. BINGHAM
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4458
Lauren.C.Bingham@usdoj.gov

JULIAN M. KURZ
Trial Attorney

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Archith Ramkumar*
Trial Attorney
United States Department of Justice

OPP'N TO PLFS' MOTION FOR MODIFICATION
(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 598-8060