Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

               Plaintiffs-Petitioners,

        v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

              Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR MODIFICATION OF THE EXISTING PRELIMINARY INJUNCTION**

Noted on Motion Calendar:
June 14, 2019

Oral Arguments:
June 28, 2019, at 9:00 a.m.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ.
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................................ 1

   I.  Plaintiffs Seek a Prohibitory, Not a Mandatory, Injunction that Appropriately
      Resembles the Final Relief Sought by Bond Hearing Class Members................................ 1

   II.  Section 1252(f)(1) Does Not Bar This Court from Ordering Classwide
       Injunctive Relief................................................................................................................ 2

   III. Plaintiffs' Claims Are Not Moot...................................................................................... 5

   IV. Plaintiffs Are Likely to Succeed on the Merits................................................................ 7

       A.  Plaintiffs Are Likely to Succeed on Their Due Process Claim.............................. 7

       B.  Plaintiffs Are Likely to Succeed on Their APA Claim......................................... 10

   V.  Plaintiffs Face Irreparable Harm, and Public Interest and the Balance of Equities
      Favor Modifying the Preliminary Injunction. ................................................................. 11

CONCLUSION........................................................................................................................... 12

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - i
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

## ARGUMENT

**I. Plaintiffs Seek a Prohibitory, Not a Mandatory, Injunction that Appropriately Resembles the Final Relief Sought by Bond Hearing Class Members.**

Defendants first contend that Plaintiffs request a mandatory injunction, as opposed to a prohibitory one, thus requiring Plaintiffs to show that they will experience "extreme or very serious damage" absent an injunction. Dkt. 139 at 6 (citation omitted). However, Plaintiffs' requested modification of the injunction seeks merely to preserve the status quo by ensuring that class members will continue to receive the bond hearings Defendants seek to eliminate. As the Ninth Circuit has explained, "'[a] mandatory injunction orders a responsible party to take action' while '[a] prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (second alteration in original) (citation omitted). Because the basis for that request is the Due Process Clause, the injunction would be "a classic form of prohibitory injunction" that seeks only to "prevent[] future constitutional violations." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017). Regardless, binding case law leaves no doubt that an injunction is appropriate here, whether prohibitory or mandatory. Even if the requested injunction were mandatory, "preliminary injunctions are standard in cases alleging unconstitutional detention," and typically satisfy the mandatory injunction standard because "unlawful detention certainly constitutes 'extreme or very serious' damage." *Id.* at 999. This case is no different from *Hernandez*, as Plaintiffs face extreme and serious damage resulting from unlawful detention, *see* Dkt. 110 at 15-17, and because due process requires that Plaintiffs be given an opportunity to test the government's reason for continuing to hold them.

In addition, Defendants assert that "Plaintiffs' motion merits more scrutiny than usual" because "it seeks the ultimate relief demanded in the [Third Amended Complaint] at this preliminary stage." Dkt. 139 at 6. Defendants rely on language quoted out of context from *Arce v. Douglas*, 793 F.3d 968, 976 (9th Cir. 2015), to aver that "a final judgment" is inappropriate here. *See* Dkt. 139 at 6. But *Arce* held only that a final judgment was inappropriate because the

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 1
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

district court had sua sponte granted summary judgment to Defendants based on briefing on a preliminary injunction motion, without giving notice to the parties. 793 F.3d at 976.

It is well-settled that "[a] preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *see also De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). Courts routinely grant preliminary injunctions that provide relief similar or identical to relief sought by way of a final judgment, just as this Court did in its initial order granting preliminary injunctive relief. *Compare* Dkt. 110 at 2 *with* Dkt. 26 at 31-32 ¶¶ K-N. *See also, e.g.*, *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013) (affirming preliminary injunction granting class members bond hearings in which the government bears the burden of proof); *Preap v. Johnson*, 831 F.3d 1193, 1207 (9th Cir. 2016) (affirming preliminary injunction granting bond hearings to class members), *vacated on other grounds sub nom. Preap v. McAleenan*, 922 F.3d 1013 (9th Cir. 2019); *Nw. Immigrant Rights Project v. Sessions*, No. C17-716 RAJ, 2017 WL 3189032, at *2, *7 (W.D. Wash. July 27, 2017) (granting preliminary relief enjoining the enforcement of a regulation, as sought in the complaint). Moreover, the prospect of a future summary judgment is not a valid ground for denying a preliminary injunction motion that establishes all relevant factors, particularly where this Court already has held that class members would suffer irreparable harm in the absence of preliminary relief. *See* Dkt. 110 at 15-17.

**II.  Section 1252(f)(1) Does Not Bar This Court from Ordering Classwide Injunctive Relief.**

Section 1252(f)(1) does not limit this Court from granting classwide injunctive relief on Plaintiffs' due process claim. As the Ninth Circuit explained in *Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018), 8 U.S.C. § 1252(f)(1) does not apply here for two reasons.[1] *First*, "[a]ll of

---

[1] In *Marin*, the Ninth Circuit specifically held that § 1252(f)(1) did not strip the Court of jurisdiction over the plaintiffs' detention claims, but remanded for the district court to "decide in the first instance whether § 1252(f)(1) precludes classwide injunctive relief . . . ." 909 F.3d at 256 & n.1. The Ninth Circuit's holding relies on reasoning that compels the same result as to the district court's power to enter injunctive relief.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 2
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    the individuals in the . . . class are 'individual[s] against whom [removal] proceedings . . . have

2    been initiated.'" *Marin*, 909 F.3d at 956 (first alteration in original) (quoting § 1252(f)(1)).

3    Section 1252(f)(1) provides that only persons already targeted for removal—as opposed to those

4    who are not yet in removal proceedings—can seek injunctive relief.

5            Congress adopted § 1252(f)(1) after a period in which organizations and classes of

6    individuals not in removal proceedings repeatedly brought preemptive challenges to immigration

7    statutes. *See, e.g.*, *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) (class action brought by,

8    *inter alia*, organizations and classes of individuals, many of whom were not in removal

9    proceedings). Section 1252(f)(1) eliminates such challenges. By contrast, all of the Plaintiffs

10   here satisfy § 1252(f)(1)'s exception clause because all are "individual [noncitizens] against

11   whom [removal] proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1).

12           Defendants seize upon dicta in *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*),

13   525 U.S. 471 (1999), to argue the statutory reference to "an individual alien" bars all forms of

14   classwide injunctive relief. Dkt. 139 at 6 (citing *AADC*, 525 U.S. at 482; *Jennings*, 138 S. Ct. at

15   851). The Supreme Court has previously rejected the government's reliance on dicta in *AADC*.

16   *Compare AADC*, 525 U.S. at 487 (asserting habeas review unavailable once 1996 immigration

17   laws take effect) *with INS v. St. Cyr*, 533 U.S. 289, 314 (2001) (holding habeas remains available

18   under those laws). It should be similarly rejected here.  *AADC* did not address § 1252(f)(1)'s

19   exception clause. And the Ninth Circuit did not hold in *Marin* that *AADC* "likely forecloses"

20   Plaintiffs' claims for injunctive relief, as Defendants claim. Dkt. 139 at 6-7. Instead, *Marin*

21   simply noted that "*even if*" *AADC* forecloses injunctive relief, declaratory relief remains

22   available. 909 F.3d. at 256 (emphasis added).

23           Courts decline to construe references to "any individual" or "any plaintiff" as eliminating

24   judicial authority under Rule 23. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("The

25   fact that the statute speaks in terms of an action brought by 'any individual' . . . does not indicate

26   that the usual Rule providing for class actions is not controlling . . . ."). Defendants note *Califano*

27   involved a different statute, Dkt. 139 at 9, but its holding did not turn on the statute at issue.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 3
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*Califano* held the use of the word "individual" did not constitute an "express limitation of class relief" that clearly abrogated the generally applicable federal rules authorizing class actions in civil litigation. *Id*. at 699. It invoked not just one particular statutory regime, but observed that "a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs" and "class relief has never been thought . . . unavailable under them." *Id*. at 700 (citing examples). Finally, Defendants are wrong to assert that *Marin*'s construction of § 1252(f)(1) render the term "individual" superfluous. Dkt. 139 at 7 (citing *Hamama v. Adducci*, 912 F.3d 869, 877-78 (6th Cir. 2018)). Congress used the word "individual" to stop *organizational* plaintiffs from pursuing injunctions on behalf of people not in removal proceedings.

Second, § 1252(f)(1) does not bar relief "because it lacks a clear statement repealing the court's habeas jurisdiction." *Marin*, 909 F.3d at 256. Plaintiffs invoke the Court's habeas corpus authority. Dkt. 130 ¶ 8. Courts will not read a statute to restrict their power to grant habeas relief unless Congress explicitly revokes authority under the general federal habeas statute—28 U.S.C. § 2241—by name. *See St. Cyr*, 533 U.S. at 314. Section 1252(f)(1) does not expressly revoke authority to grant relief in habeas cases; it is silent on the subject.

Defendants claim that *St. Cyr*'s clear statement rule applies only to statutes that eliminate habeas jurisdiction, and not statutes that eliminate habeas relief. Dkt. 139 at 9-10. But the clear statement rule applies even when a statute does not foreclose all judicial review. *See Liu v. INS*, 293 F.3d 36, 37 (2d Cir. 2002) (requiring clear statement to limit habeas authority even where the petitioner could raise the same legal issues on a petition for review); *Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir. 2001) (same). Because Congress did not explicitly extend § 1252(f)(1)'s limitation to habeas actions, it left untouched this Court's inherent authority to issue classwide preliminary injunctive relief as a habeas court. *See Munaf v. Geren*, 553 U.S. 674, 690-91 (2008) (recognizing a habeas court's authority to grant preliminary injunctive relief).[2]

_____

[2] The Sixth Circuit in *Hamama* acknowledged that "there is nothing [in § 1252(f)(1)] barring a class from seeking a traditional writ of habeas corpus." 912 F.3d at 879. Such writs include orders of conditional release that direct the government to provide procedures to protect the interests at issue. *See, e.g.*, *Chin Yow v. United States*, 208 U.S. 8, 13 (1908) (awarding habeas relief and requiring a hearing in federal court to determine whether individual's administrative hearing violated due process).

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 4
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Finally, Defendants are wrong that § 1252(f)(1) bars Plaintiffs' claim under the Administrative Procedure Act (APA). *See* Dkt. 139 at 8. That claim in no way seeks to "enjoin or restrain" any provision of the Immigration and Nationality Act (INA); instead, it seeks to enforce the independent requirements of *the APA*, which obligates agencies to amend or repeal their rules through notice-and-comment rulemaking. *See* 5 U.S.C. §§ 551(5), 553(b)-(d). Plaintiffs' claim in no way prevents Defendants from implementing the detention statute as they see fit, so long as they satisfy the APA's procedural requirements.

## III. Plaintiffs' Claims Are Not Moot.

The Bond Hearing class claims are not moot. *First*, although Plaintiffs Vasquez and Padilla were released on bonds set by an immigration judge (IJ), they continue to "have a concrete interest" in this case, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted), because they face re-detention without a constitutionally adequate bond hearing as a result of *Matter of M-S-. See* Dkt. 130 ¶¶ 67, 97, 117-29. Moreover, as this Court recognized, Plaintiffs' challenges to detention pending removal proceedings are "inherently transitory" and therefore "capable of repetition yet evading review." Dkt. 102 at 8 (citation omitted).

By statute and regulation, Defendants may revoke an IJ's bond order at any time based on "changed circumstances." *See* 8 U.S.C. § 1226(b); 8 C.F.R. § 1236.1(c)(9); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). Here Defendants have argued that *Matter of M-S-* is a changed circumstance that eliminates Plaintiffs' eligibility for a bond hearing, thus rendering Plaintiffs' bond orders void *ab initio*. *E.g.*, Dkt. 114 at 10. If and when Defendants revoke their bonds, Plaintiffs will be detained without *any* bond hearing—much less a prompt bond hearing that comports with due process. Thus, Plaintiffs claims are not moot.

Defendants state that, "[a]t this time," ICE does not intend to re-detain individuals like Plaintiffs, who have been released on bond except in certain circumstances. *See* Dkt. 139 at 10-11; Dkt. 137 ¶ 6. This vague and noncommittal assertion does not moot Plaintiffs' claims. Defendants "bear[] the formidable burden" of convincing the Court that the government's voluntary cessation of challenged conduct makes it "*absolutely clear* the allegedly wrongful

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF EXISTING PRELIM. INJ. - 5
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 190 (2000) (emphasis added). Courts have repeatedly found that the government does not meet this "heavy burden," *id*. at 189 (citation omitted), where it maintains discretion to take an individual back into custody. *See, e.g*., *Abdi v. Duke*, 280 F. Supp. 3d 373, 395 (W.D.N.Y. 2017) (case not moot where ICE's declaration only "aver[red] that Respondents do not intend to re-detain Abdi 'at this time'"); *Centeno-Ortiz v. Culley*, No. 11-cv-1970-IEG, 2012 WL 170123, at *4-*5 (S.D. Cal., Jan. 19, 2012) (case not moot where government "refuse[d] to disclaim its authority to detain Petitioner"); *Franco-Gonzalez v. Holder,* No. 10-cv-2211–DMG, at *10-*11 (C.D. Cal. Oct. 18, 2010) (Att. 1) (same); *Clark v. Martinez*, 543 U.S. 371**,** 376 n.3 (2005) (case not moot where former detainee's release was "subject to the Secretary's discretionary authority to terminate"); *see also Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) (case not moot where the government had offered "no assurance that Diouf will not be redetained").[3] *Compare Pircin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (case moot where the conditions for re-detention were outside the government's control).

Second, even assuming that the named Plaintiffs release mooted their individual claims, this Court has certified the Bond Hearing Class to pursue its due process right to a constitutionally adequate bond hearing. *See* Dkt. 102 at 2, 4; Dkt. 26 ¶¶ 5-7, 148. Thus, independent of the named Plaintiffs, the certified class maintains lives claims. *See Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1090 (9th Cir. 2011) ("[U]pon certification the class 'acquire[s] a legal status separate from the interest asserted by [the class representative],' so that an Article III controversy now exists 'between a named defendant and a member of the [certified] class.'" (alterations in original) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975))). Should *Matter of M-S-* be allowed to go into effect on July 15th, it will immediately

---

[3] Defendants argue that *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), shows Plaintiffs lack a concrete injury for standing, *see* Dkt. 139 at 10, but *Clapper* does not address the voluntary cessation exception to mootness.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 6
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

deprive future class members' of their right to a bond hearing, in addition to subjecting released class members to potential re-detention.

**IV. Plaintiffs Are Likely to Succeed on the Merits.**

    **A.  Plaintiffs Are Likely to Succeed on Their Due Process Claim.**

      Plaintiffs are likely to succeed on their due process claim to a bond hearing.[4] Defendants again assert that Plaintiffs lack due process rights because they have only been in the United States for a brief period after entering the country. Dkt. 139 at 12-13. But this Court has already rejected this argument twice. *See* Dkt. 91 at 9-10 (citing *United States v. Raya-Vaca*, 771 F.3d 1195, 1202 (9th Cir. 2014), and *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); Dkt. 110 at 6-7.

      Defendants incorrectly cite cases in an attempt to undermine the long-established rule that individuals who have effectuated entry possess due process rights. For example, Defendants cite *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), and *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc), *see* Dkt. 139 at 12, but those cases involved noncitizens who—unlike Plaintiffs—had not effected an entry into the U.S. Indeed, both *Mezei* and *Barrera-Echavarria* reaffirm that the Due Process Clause protects all those who have entered: "[noncitizens] who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Mezei*, 345 U.S. at 212; *see also Barrera*, 44 F.3d at 1448-49 (same); Dkt. 91 at 8-9 (distinguishing *Mezei* and *Barrera-Echavarria*). Nor did *Jennings* cast doubt on this principle, as Defendants claim. *See* Dkt. 139 at 13. Instead, *Jennings* simply noted—without deciding the issue—that noncitizens arriving at ports of entry, and not individuals who have entered the United States, may lack a due process right to a bond hearing. *See Jennings*, 138 S. Ct. at 852 (citing, *inter alia*, *Rodriguez v. Robbins*, 804 F.3d 1060, 1082 (9th Cir. 2015)). Defendants also invoke the government's plenary power over admission by citing *Kleindienst v.*

---

[4] Defendants seek to relitigate this Court's prior ruling that due process requires a prompt bond hearing, where the government bears the burden of proof. *Compare* Dkt. 139 at 13, 15-16 *with* Dkt. 110 at 5-15. This Court should reject Defendants' arguments for the reasons set forth in its preliminary injunction order.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 7
Case No. 2:18 cv 00928-MJP

1  *Mandel*, 408 U.S. 753, 766 (1972), *see* Dkt. 139 at 12, but this case concerns procedures

2  governing Plaintiffs' *detention*, not their admission.

3        Even further afield is the government's reliance on *Landon v. Plasencia*, 459 U.S. 21, 32

4  (1982), *see* Dkt. 139 at 12, where the Court *expanded* the due process rights of arriving

5  noncitizens who could show a substantial connection to the country. Defendants also cite *United*

6  *States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), relying on language quoted completely

7  out of context. Dkt. 139 at 13. *Verdugo* could not be more distinct*:* it involved whether the

8  Warrant Clause of the Fourth Amendment applied *in Mexico*. *See* 494 U.S. at 262.[5]

9        Nor do Defendants explain why this Court should ignore longstanding due process case

10 law requiring an individualized hearing over civil detention. *See* Dkt. 131 at 8-9. Instead,

11 Defendants mischaracterize Plaintiffs' position and governing precedent. First, Defendants argue

12 that this Court should apply a presumption of constitutionality to the INA's detention provisions.

13 *See* Dkt. 139 at 12 (citations omitted). However, doing so would be at odds with the federal

14 courts' traditional exercise of *de novo* habeas corpus review of executive detention. The habeas

15 corpus statute grants federal courts authority to determine if detention is "in violation of the

16 Constitution." 28 U.S.C. § 2241(c)(3). In doing so, courts carry out "the historic purpose of the

17 writ, namely, to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533

18 U.S. at 690 (internal quotation marks and citation omitted).

19       Second, Defendants argue that because this case concerns immigration detention, this

20 Court should ignore the Supreme Court precedent holding that due process requires an

21 individualized hearing over civil detention. *See* Dkt. 139 at 15-16; *see also* Dkt. 131 at 9 (citing

22 cases). But the Supreme Court, Ninth Circuit, and this Court all routinely look to the civil

---

24 [5] Defendants cite a footnote in *Rodriguez v. Robbins*, 715 F.3d 1127, 1142 n.11 (9th Cir. 2013), stating that *Mezei*
25 applies to an individual who had entered the country without inspection. *See* Dkt. 139 at 12-13. This footnote
incorrectly relies on *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094 (9th Cir. 2004), where the petitioner had been
26 apprehended at an airport and thus had *not* effected an entry. *See Alvarez-Garcia*, 378 F.3d at 1095, 1097-98. In any
event, the panel in *Rodriguez* had no authority to overturn longstanding Supreme Court and Ninth Circuit case law
27 recognizing that individuals who have entered the country have due process rights. *See Miller v. Gammie*, 335 F.3d
889, 890 (9th Cir. 2003) (en banc).

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 8
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  detention cases to determine the due process limits on immigration detention. *See, e.g.*,

2  *Zadvydas*, 533 U.S. at 690-91; *Rodriguez*, 804 F.3d at 1075; Dkt. 110 at 6, 11.

3         Third, Defendants assert that the Supreme Court in *Zadvydas* and *Demore v. Kim*, 538

4  U.S. 510 (2003), and the Ninth Circuit in *Rodriguez* affirmed the constitutionality of Plaintiffs'

5  detention without a bond hearing for at least six months. Dkt. 139 at 14-15. This is incorrect.

6  None of the cases addressed the constitutional issue presented here: whether it violates the Due

7  Process Clause to detain Plaintiffs—all individuals who have entered the United States and been

8  found to have *bona fide* asylum claims—without a bond hearing for any period of time. Nor did

9  the Supreme Court and Ninth Circuit somehow hold that constitutional concerns only arise after

10  the six-month mark, as Defendants claim. *See* Dkt. 139 at 15. Indeed, the cases affirm that due

11  process requires immigration detention to be reasonably related to a valid government purpose

12  and accompanied by adequate procedures to ensure those goals are being served. *See Zadvydas*,

13  533 U.S. at 690; *Demore*, 538 U.S. at 526-27; *Rodriguez*, 804 F.3d at 1074-75.

14         Fourth, Defendants argue that, as in *Demore*, detention without a bond hearing is

15  constitutional because it serves the government's valid purpose of ensuring Plaintiffs' presence

16  at removal proceedings. *See* Dkt. 139 at 14-15. But *Demore* is distinguishable for the reasons set

17  forth in Plaintiffs' motion. *See* Dkt. at 131 at 10-11.

18         Fifth, Defendants argue that *Zadvydas* does not apply because, unlike in *Zadvydas*, where

19  the petitioners were subject to indefinite detention because the government could not execute

20  their deportation orders, Plaintiffs' detention has a "definite termination point"—i.e., the

21  conclusion of their removal cases—and Plaintiffs largely can be deported if they are ultimately

22  ordered removed. *See* Dkt. 139 at 14-15. But that is beside the point. In contrast to the petitioners

23  in *Zadvydas*, Plaintiffs do not assert a due process right to *release* from detention on the theory

24  that their detention is no longer in service of their removal. Instead, they argue that due process

25  requires a *hearing* to ensure that their imprisonment pending removal proceedings is justified.

26         Finally, Defendants do not dispute Plaintiffs' evidence demonstrating the deficiencies of

27  the parole process, but argue that evidence is irrelevant. Dkt. 139 at 17. Defendants

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 9
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

fundamentally misunderstand Plaintiffs' argument. Under the familiar framework set out by *Mathews v. Eldridge*, 424 U.S. 319 (1976), the inadequacy of the parole process, "as applied to the generality of cases," *id.* at 344, demonstrates its high risk of "erroneous deprivation" *id.* at 335, and the value of maintaining bond hearings before an IJ. The parole process is not a constitutionally sufficient substitute for bond hearings.

### B. Plaintiffs Are Likely to Succeed on Their APA Claim.

Plaintiffs are also likely to succeed on their APA claim. Defendants assert that that the Attorney General's decision to eliminate bond hearings in *Matter of M-S-* was a permissible act of policymaking through adjudication, and thus exempt from notice-and-comment. Dkt. 139 at 17-18.  But Plaintiffs argue that the existing regulations, 8 C.F.R. §§ 1236.1(d), 1003.19(h)(2)(i), themselves provide Plaintiffs with a bond hearing. *See* Dkt. 131 at 15-18. An agency, of course, has discretion to "elect between rulemaking and ad hoc adjudication to carry out its mandate." *Yang v. INS*, 79 F.3d 932, 936 (9th Cir. 1996). However, once an agency has promulgated a regulation, the agency is bound by that regulation. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (agency must comply with its own regulations when the rights of individuals are at stake). If Defendants wish to *amend or rescind* that regulation, they must do so through rulemaking proceedings and not ad hoc adjudication. *See* 5 U.S.C. § 551(5); *see also Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015) (the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"). None of the cases Defendants cite*, see* Dkt. 139 at 20, address Plaintiffs' central argument; for example, in *Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007), the agency was allowed to announce a new principle in adjudicative proceedings because it was not foreclosed by the statute and the agency had not previously promulgated a relevant rule.

The agency cannot rewrite the regulations without complying with the required rulemaking procedures. *Matter of M-S-* effectively modifies the regulations to exclude an additional class of individuals from the IJ's custody jurisdiction: noncitizens who are in regular removal proceedings after entering the United States without inspection and having been initially

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 10
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

placed in expedited removal. 27 I&N Dec. at 518-19. But as noted above, the only legal process to substantively amend a rule is through notice-and-comment rulemaking.

As explained in Plaintiffs' motion, a rulemaking process would serve a useful purpose here: it would give the public the opportunity to propose, and the agency the opportunity to consider, alternative ways of implementing the parole authority to potentially ameliorate the constitutional problems presented by depriving Plaintiffs of a bond hearing. *See* Dkt. 131 at 17-18. This is true even though amicus briefs were presented to the Attorney General pending his consideration of *Matter of M-S-*, because the Attorney General was not required to consider the arguments those briefs presented. In notice-and-comment proceedings, the agency's failure to "respond to 'significant' comments" is subject to judicial review and, if arbitrary and capricious, rescission of the rule. *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992) (citation omitted).

## V. Plaintiffs Face Irreparable Harm, and Public Interest and the Balance of Equities Favor Modifying the Preliminary Injunction.

Defendants simply ignore the fact that, absent action by this Court, Plaintiffs and Bond Hearing Class members will not *ever* receive bond hearings, leaving them subject to prolonged detention while they pursue their credible asylum claims. Dkt. 139 at 23 (criticizing Plaintiffs for alleging irreparable harm that "stem[s] from detention of any length"). Regardless, the remaining factors favor granting Plaintiffs' motion to modify the preliminary injunction.

First, this Court already has recognized that, "Plaintiffs have succeeded in establishing irreparable harm from the complained-of practices," Dkt. 110 at 17, absent injunctive relief requiring bond hearings with procedural protections within seven days. Specifically, this Court has credited Plaintiffs' evidence of "the multiple layers of irreparable injury occasioned by Defendants' policies and practices," including violation of their constitutional rights, prolonged detention, difficulty pursuing the merits of their immigration proceedings, and in some cases, abandonment of meritorious claims. *Id.* at 15-17; *see also* Dkt. 131 at 18-21. Furthermore, this Court also rejected Defendants' claim that Plaintiffs could remedy the harm they face by

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 11
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

pursuing individual habeas petitions. Dkt. 110 at 17 (criticizing Defendants for "apparently missing the grim irony of Plaintiffs being forced to undergo a *further* delay in detention for an entirely separate legal proceeding").

Defendants' arguments to the contrary are unavailing. These harms stem from "waiting times of weeks and months prior to a bond hearing," Dkt. 110 at 17, and thus providing hearings with procedural protections within seven days is an appropriate remedy. *See also* Dkt. 133 ¶ 11 (noting that, for some asylum seekers, "detention may be traumatizing from the first day spent in confinement" and can exacerbate symptoms "within days or weeks"). Furthermore, the specific injunction Plaintiffs seek is not limited to a hearing within seven days. *See* Dkt. 131-1 (proposing order that would enjoin *Matter of M-S-* and obligate Defendant EOIR to "[c]ontinue to conduct bond hearings"). Nor does Defendants' inaccurate suggestion that Plaintiffs' claims are moot militate against the modification of the injunction. *See supra* Section III; Dkt. 85 at 12.

The balance of equities and public interest also continue to weigh heavily in Plaintiffs' favor. *See* Dkt. 110 at 17-18. Defendants suggest that modifying the injunction would force them to "radically overhaul their" bond hearing process. Dkt. 139 at 22. However, enjoining *Matter of M-S-* actually would maintain the status quo—and safeguard those bond hearings with appropriate due process protections. Instead, it is Defendants who seek to change bond procedures in a way that would have "an immediate and significant impact on [DHS's] detention operations." *Matter of M-S-*, 27 I. & N. Dec. at 519 n.8 (citation omitted). Nor would modifying the injunction run counter to the interest in uniformly administering the immigration laws, as Defendants claim. *See* Dkt. 139 at 23. The proposed modification would apply nationwide and maintain Defendants' own longstanding practice of providing different access to bond hearings based upon whether an individual has entered the United States.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiffs' motion for modification of the existing preliminary injunction.

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 12
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

RESPECTFULLY SUBMITTED this 14th day of June, 2019.

_s/ Matt Adams_
Matt Adams, WSBA No. 28287
Email: matt@nwirp.org

_s/ Leila Kang_
Leila Kang, WSBA No. 48048
Email: leila@nwirp.org

_s/ Aaron Korthuis_
Aaron Korthuis, WSBA No. 53974
Email: aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT
615 Second Avenue, Suite 400
Seattle, WA  98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

_s/ Trina Realmuto_
Trina Realmuto*
Email: trealmuto@immcouncil.org

_s/ Kristin Macleod-Ball_
Kristin Macleod-Ball*
Email: kmacleod-ball@immcouncil.org

AMERICAN IMMIGRATION COUNCIL
1318 Beacon Street, Suite 18
Brookline, MA 02446
Telephone: (857) 305-3600

_s/ Judy Rabinovitz_
Judy Rabinovitz*
Email: jrabinovitz@aclu.org

_s/ Michael Tan_
Michael Tan*
Email: mtan@aclu.org

_s/ Anand Balakrishnan_
Anand Balakrishnan*
Email: abalakrishnan@aclu.org

ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2618

_s/ Emily Chiang_
Emily Chiang, WSBA No. 50517
Email: echiang@aclu-wa.org

ACLU OF WASHINGTON FOUNDATION
901 5th Ave, Suite 630
Seattle, WA 98164
Telephone: 206-624-2184

*Admitted _pro hac vice_

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 13
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Lauren C. Bingham | lauren.c.bingham@usdoj.gov |
| | ecf.oil-dcs@usdoj.gov |
| | crystal.greene@usdoj.gov |
| | |
| Joseph A. Darrow | joseph.a.darrow@usdoj.gov |
| | |
| Archith Ramkumar | archith.ramkumar@usdoj.gov |
| | ar4kc@virginia.edu |
| | |
| Sarah S. Wilson | Sarah.Wilson2@usdoj.gov |
| | Daniel.C.Meyer@usdoj.gov |

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

Dated: June 14, 2019.

_s/ Leila Kang_____
Leila Kang
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8608
leila@nwirp.org

PLS.' REPLY IN SUPP. OF MOT. FOR MODIF. OF
EXISTING PRELIM. INJ. - 14
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE ANTONIO FRANCO-GONZALES, ET AL.,

               Petitioner,

      v.

ERIC H. HOLDER, JR. ATTORNEY GENERAL, ET AL.,

               Respondents.

Case No. CV 10-02211 DMG (DTB)

**ORDER RE PLAINTIFF'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DECISION**

     This matter is before the Court on Plaintiff's Motion for Review of Magistrate Judge's Decision Denying *Ex Parte* Application to Amend Complaint. On October 18, 2010, the Court held a hearing. Having duly considered the respective positions of the parties, as presented in their briefs and at oral argument, the Court now renders its decision. For the reasons set forth below, Plaintiff's Motion is GRANTED.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

     On March 26, 2010, Plaintiff filed a Petition for Writ of *Habeas Corpus* (the "Petition") in this Court alleging: (1) violation of the Immigration and Nationality Act ("INA") (right to release); (2) violation of the Due Process Clause (the "Due Process Clause") of the 5th Amendment to the U.S. Constitution (prolonged detention); (3)

-1-

violation of the INA (right to a hearing); (4) violation of the Due Process Clause (right to a hearing); and (5) violation of Section 504 of the Rehabilitation Act and its implementing regulations. Plaintiff sought (1) an order requiring Petitioner's immediate release or, in the alternative, a hearing before an immigration judge and (2) declaratory judgment that Respondents' failure to release Petitioner or, in the alternative, to provide Petitioner with a hearing before an immigration judge, is unlawful. On March 31, 2010, Respondents released Petitioner from custody on his own recognizance, under conditions of supervision pursuant to section 236 of the INA, 8 U.S.C. § 1226.

On March 31, 2010, the Honorable David T. Bristow, United States Magistrate Judge, issued an Order to Show Cause why the Petition should not be granted. On June 3, 2010, Respondents filed a Return to Habeas Petition and Order to Show Cause ("Return"), asserting that the Petition should be dismissed as moot as a result of Petitioner's March 31, 2010 release. On August 2, 2010, Petitioner filed a Traverse and attempted to file a First Amended Class Action Complaint ("Amended Complaint"). The Amended Complaint sought to add new plaintiffs and new causes of action and sought certification on behalf of a class of plaintiffs whose situations are similar to Petitioner's former situation, *i.e.,* mentally disadvantaged immigrant detainees who are held in custody without counsel. (Am. Compl. ¶¶ 39-82, 96-137.)

On August 6, 2010, Magistrate Judge Bristow issued an Order (the "August 6 Order") concluding that the Return constituted a "responsive pleading" under Fed. R. Civ. P. 15(a) and therefore rejecting the Amended Complaint as untimely under Rule 15(a).[1]  [Doc. # 23.]  On August 11, 2010, Petitioner filed an Objection ("Objection") to the August 6 Order.

---

[1] Rule 15(a)(1) of the Federal Rules of Civil Procedure provide:
A party may amend its pleading once as a matter of course within:
  (A) 21 days after serving it, or
  (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

On August 16, 2010, Petitioner filed a Motion for Preliminary Injunction for putative plaintiff Ever Martinez-Rivas, whose final removal hearing was scheduled for September 16, 2010. On August 19, 2010, this Court denied the Motion for Preliminary Injunction because Martinez-Rivas had not yet been added as a plaintiff in this action. [Doc. # 30.]

On August 23, 2010, Petitioner filed an *Ex Parte* Application to file the Amended Complaint ("*Ex Parte* Application"). Respondents filed an Opposition to the *Ex Parte* Application on August 24, 2010 and Petitioner filed a Reply thereto on August 25, 2010. During the August 30, 2010 status conference, Magistrate Judge Bristow urged the parties to resolve their differences and set an expedited briefing schedule in the event the parties were unable to do so. On September 2, 2010, Respondents filed an Opposition to Petitioner's August 11, 2010 Objection.

Magistrate Judge Bristow issued a ruling on September 3, 2010 (the "September 3 Ruling") denying Petitioner's *Ex Parte* Application. [Doc. # 42.]

On September 14, 2010, Petitioner filed a Motion for Review of Magistrate Judge's Decision Denying *Ex Parte* Application to Amend Complaint. On September 27, 2010, Respondents filed an Opposition. On October 4, 2010, Petitioner filed a Reply. On October 12, 2010, Respondents filed an *Ex Parte* Application for Leave to File Surreply, which the Court granted on October 14, 2010. On October 14, 2010, Respondents filed a Surreply.

## II.

## <u>THE MAGISTRATE JUDGE'S RULING</u>

Pursuant to 28 U.S.C. § 636 and Central District of California General Order 05-07, this case was referred to Magistrate Judge Bristow.

In his September 3 Ruling, Magistrate Judge Bristow held that the Petition became moot upon Petitioner's March 31, 2010 release because Petitioner's release provided him all the relief to which he was entitled and all that he sought in his Petition. Magistrate Judge Bristow stated as follows:

The Court concurs with respondent that the Petition is moot. In the Petition, petitioner challenged his continued detention pursuant to 8 U.S.C. § 1226(c) and requested relief only in the form of release from custody under reasonable conditions or, alternatively, the opportunity to challenge his detention in a bond hearing before an immigration judge. (Pet. at 17-19.) Here, petitioner was released from custody on his own recognizance pursuant to 8 U.S.C. § 1226(a) on March 31, 2010. (Return at 6; Return Exh. A.) Petitioner's release from custody provided him all the relief to which he was entitled, and all that he sought. See Riley v. INS, 310 F.3d 1253, 1256-57 (10th Cir.2002) (claims challenging extended immigration detention mooted by release); Abdala v. INS, 488 F.3d 1061, 1064-65 (9th Cir. 2007), cert. denied, 552 U.S. 1267 (2008) (quoting Riley with approval for the proposition that "a petitioner's release from detention under an order of supervision 'moot[ed] his challenge to the legality of his extended detention'")

(September 3 Ruling at 3-4.)

Magistrate Judge Bristow further held that because the Petition became moot before the addition of class allegations and certification of the class, Petitioner lacked standing to represent the claims of any putative class or to proceed with the case. The Magistrate Judge noted that "because Petitioner has been released and there is no reasonable expectation that he will be re-detained, petitioner's claim is unable of being repeated as to him." (September 3 Ruling at 5.) Magistrate Judge Bristow denied the *Ex Parte* Application without prejudice.

### III.

### STANDARD OF REVIEW

Where a district court considers objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's disposition will be set aside only if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(a); *see also United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001) ("[T]he magistrate judge's decision in . . . nondispositive matters is entitled to great deference by the district court.").

"When reviewing factual findings, the Supreme Court has held that a finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (*en banc*) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)) (internal quotation marks omitted). The Court is not entitled to overturn a factual finding simply because the court is convinced that it would have reached a different result. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In contrast, when reviewing the magistrate judge's legal conclusions, the Court applies the "contrary to law" standard and reviews such conclusions *de novo*. *See China Nat. Metal Products Import/Export Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1177 (C.D. Cal. 2001).

## IV.

## DISCUSSION

Petitioner argues that Magistrate Judge Bristow's September 3 Ruling is erroneous because (1) the Magistrate Judge failed to apply binding Ninth Circuit authority providing that a discretionary release from custody does not moot a *habeas* petition, (2) Respondents' conduct falls within the "voluntary cessation" exception to mootness, and (3) Petitioner is entitled to amend as of right under Fed. R. Civ. P. 15(a) because the Return does not constitute a "responsive pleading" and because requests for leave to amend should be granted with "extreme liberality."

**A.      Magistrate Judge Bristow Failed to Address the Ninth Circuit's Decision in *Rodriguez***

Petitioner first argues that the Petition is not moot because the relief he sought is incongruent with the relief he received.  Neither the parties nor Magistrate Judge Bristow appear to dispute that Petitioner challenged the legality of his detention pursuant to the mandatory detention provision of 8 U.S.C. § 1226(c), but that Petitioner's release was authorized pursuant to the government's discretionary authority under 8 U.S.C. § 1226(a).

As a general matter, a case is moot if there is no longer any "present controversy as to which effective relief can be granted." *Johnson v. Chavez*, __ F.3d __, 2010 WL 3928994, at * 3 (9th Cir. 2010).  "To maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'"  *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007).  In the context of *habeas* petitions, the Ninth Circuit has recognized that a petitioner's release from custody does not necessarily moot the petitioner's petition.  Nevertheless, in order to avoid a finding of mootness upon a petitioner's release, there must be some remaining "collateral consequence" redressable by the petition.  *Id.* at 1064.  In *Abdala*, the Ninth Circuit held that because the petitioner's petition challenged only the length of his detention, his petition ceased to present a live controversy as of the time of his deportation.   *Id.* at 1065.

Here, although the September 3 Ruling acknowledged the fact that Petitioner challenged his continued detention pursuant to 8 U.S.C. § 1226(c), but was released pursuant to 8 U.S.C. § 1226(a), Magistrate Judge Bristow summarily concluded that "Petitioner's release from custody provided him all the relief to which he was entitled, and all that he sought."  (September 3 Ruling at 3-4.)  Having carefully reviewed the Petition, this Court disagrees.

The Ninth Circuit explicitly recognized in *Rodriguez v. Hayes,* 578 F.3d 1032 (9th Cir. 2009), *as amended,* 591 F.3d 1105 (9th Cir. 2010), that a discretionary release does

not necessarily moot a *habeas* petition. As here, the *Rodriguez* petitioner challenged the length of his detention pending completion of removal proceedings and sought a hearing to determine whether his prolonged detention was justified. *Rodriguez*, 591 F.3d at 1112. Approximately two months after filing his petition, the petitioner was released under an order of supervision pursuant to 8 C.F.R. § 241.4. *Id.* In particular, the *Rodriguez* court stated:

> If Petitioner is successful in his petition he would be entitled to such a hearing where the government would need to meet its burden or offer him a nondiscretionary release until such time as it can make the requisite showing or has an independent statutory basis to detain him. This would place Petitioner in a far different situation from his current one, released pursuant to the government's independent determination but subject to revocation on the government's discretion without hearing before a neutral decision-maker and without burden of justification on the government.

*Rodriguez*, 591 F.3d at 1117; *see also Clark v. Martinez*, 543 U.S. 371, 376 n.3, 125 S. Ct. 716, 160 L.Ed.2d 734 (2005) (petitioner continued to have a personal stake in the outcome of his petition because his release on parole remained subject to the government's discretionary authority). Contrary to Respondents' position, neither *Rodriguez* nor *Clark* turned on whether the case was a class action. *Clark* was not a class action and, in *Rodriguez*, class certification had been denied as of the time of the petitioner's discretionary release.

Here, the Court finds that Petitioner's discretionary release pursuant to 8 U.S.C. § 1226(a) has similarly placed him in a "far different situation" from the one he sought by his Petition. Like the petitioner in *Rodriguez*, Petitioner's release has not been adjudicated by a neutral decision-maker, nor have Respondents met their burden of justifying his prolonged detention under Section 1226(c). Rather, Petitioner's release

was authorized by Respondents' independent determination and remains subject to Respondents' revocation at their discretion. In his Petition, Petitioner sought declaratory and injunctive relief challenging the length and nature of his detention or, alternatively, an individualized hearing to determine whether or not his detention pursuant to 8 U.S.C. § 1226(c) was authorized and justified under the statute, constitutional under the Due Process Clause, and appropriate and non-discriminatory under the Section 504 of the Rehabilitation Act. (Am. Compl. ¶¶ 22-46.) Petitioner sought a hearing that would have required Respondents to prove that his continued detention was justified, including that he presented a serious risk of flight or danger to the community to justify certain conditions of release. (Am. Compl. ¶ 34.)

In sum, the Court can find no principled basis upon which to distinguish this case from the *Rodriguez* case. Petitioner, like the petitioner in *Rodriguez*, was deprived of the opportunity to seek the relief that a nondiscretionary release and/or a hearing would have provided, *i.e.,* a finding that he is no longer vulnerable to Respondents' discretionary authority to re-detain Petitioner. Thus, the relief that Petitioner sought is incongruent with the relief that he received. The Court therefore finds that Petitioner continues to have a personal stake in these proceedings and that his Petition is not moot.

## B. The Voluntary Cessation Doctrine Applies in this Case

Petitioner further contends that Respondents have failed to meet their burden of proving that the doctrine of voluntary cessation does not apply in this case. The Court agrees.

Under the "voluntary cessation" exception to mootness, "the mere cessation of illegal activity in response to pending litigation does not moot a case." *Rosemere Neighborhood Assoc. v. U.S. EPA*, 581 F.3d 1169, 1173 (9th Cir. 2009). Rather, a party claiming that its voluntary compliance with the law moots a case "bears a <u>formidable burden</u> of showing that it is <u>absolutely clear</u> the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental*

*Services (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (emphasis added); *see also Rosemere,* 581 F.3d at 1173.

Respondents argue that there is "absolutely no factual basis for any assertion that the [Department of Homeland Security] would or might act in the deceptive manner that the voluntary cessation doctrine was designed to prevent."[2] (Resp't Opp'n at 7.) In an effort to "alleviate any concerns" regarding Respondents' future re-detention of Petitioner, Respondents submit a declaration by Immigration and Customs Enforcement ("ICE") Assistant Field Office Director Jonathan H. Rust, the supervising officer for Petitioner's release, in which Mr. Rust states that ICE's Office of Detention and Removal Operations does not intend to recommend Petitioner's re-detention unless (1) Petitioner violates the terms of release,[3] (2) a final order of removal is issued against him, or (3) ICE is required by law to detain him. (Resp't Return, Ex. B, Declaration of Jonathan H. Rust ("Rust Decl.") ¶ 15.)

Notwithstanding Mr. Rust's Declaration, the Court finds that Respondents fail to meet their "formidable burden" of showing that it is "absolutely clear" that Petitioner would not be subjected to future unlawful detention. Mr. Rust's Declaration is

---

[2] Respondents also cite *Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) for the proposition that, for the voluntary cessation doctrine to apply, the voluntary cessation "must have arisen because of the litigation." Respondents do not argue, however, that the filing of the Petition in this case was not the catalyst for Petitioner's release. Indeed, the Court does not find it purely coincidental that, after detaining Petitioner for nearly five years, the government released him five days after he filed the Petition.

[3] Pursuant to the terms of his release, Petitioner must: (1) report for any hearing or interview as directed by the Department of Homeland Security or the Executive Office for Immigration Review; (2) surrender for removal from the United States if so ordered; (3) report to the Department of Homeland Security's Santa Ana Office pursuant to Phase I Pre-Order Supervision, which requires one face-to-face contact every two weeks, one unannounced on-site home visit every four weeks, and telephonic reporting; (4) not change his place of residence without first securing written permission from a Department of Homeland Security immigration officer; (5) not violate any local, State, or Federal laws or ordinances; (6) assist the Department of Homeland Security in obtaining any necessary travel documents; and (7) comply with all Intensive Supervision Appearance Program (ISAP) conditions, including electronic monitoring. (Return at 5 n.1.)

distinguishable from that presented for the Ninth Circuit's consideration in *Picrin-Peron v. Rison*, 930 F.2d 773 (9th Cir. 1991). In *Picrin-Peron*, the Ninth Circuit found that the voluntary cessation exception did not apply because the government submitted a declaration stating that "[a]bsent Picrin's reinvolvement with the criminal justice system, a change in the Cuban government enabling him to return to Cuba, or the willingness of a third country to accept him, he will be paroled for another year." *Id.* at 776. In the instant matter, however, Respondents specifically retain the authority and discretion to re-detain Petitioner if "ICE is required by law to re-detain him." (Rust Decl. ¶ 15.) Whereas the government retained no discretion in *Picrin-Peron* absent conduct by others out of its control, Respondents in this case provide for an exception that swallows their stated intent not to re-detain.

Indeed, it is precisely the nature of Petitioner's discretionary release that prevents this Court from finding that it is "absolutely clear" that Petitioner will not be unlawfully detained in the future.[4] The very fact that Petitioner was detained for nearly five years under the mandatory provision of 8 U.S.C. § 1226(c), but released, without explanation or concomitant change in policy, pursuant to Respondents' discretion under 8 U.S.C. § 1226(a), underscores the uncertainty of Petitioner's continued release status. As discussed *supra,* in releasing Petitioner pursuant to its discretionary authority under 8 U.S.C. § 1226(a), Respondents have not been required to justify why Petitioner's prolonged detention was authorized under 8 U.S.C. § 1226(c), constitutional under the Due Process Clause, appropriate and non-discriminatory under Section 504 of the Rehabilitation Act, or whether and why Petitioner presented a serious risk of flight or danger to the community such that release conditions had to be imposed. Respondents have neither offered an explanation for the sudden change in their position nor provided

---

[4] The parties appear to agree that the final resolution of Mr. Franco's removal case would definitively moot his Petition. (Pet'r Reply at 6 n.1.)

-10-

any guarantee against a turnabout in the future.  Under these circumstances, the Court finds that the voluntary cessation doctrine applies in this case.

### C.  Amendment of the Complaint is Not Futile

Respondents argue that Petitioner's proposed amended complaint is "clearly futile" because Petitioner's claims became moot upon his release.  Respondents do not, however, argue that Petitioner's request for leave to amend is in bad faith or that it would cause Respondents prejudice.  In light of the Court's ruling that the Petition is not moot as a matter of law, the Court also finds that the proposed Amended Complaint is not futile and leave to amend should have been granted.

### IV.

### CONCLUSION

In light of the foregoing,

(1)  Petitioner's Motion for Review of Magistrate Judge Bristow's September 3 Ruling is GRANTED;

(2)  Petitioner shall have 15 days from the date of this Order to file an amended complaint; and

(3)  Respondents shall have 15 days from the service of an amended complaint to file a responsive pleading.


IT IS SO ORDERED.


DATED:    October 18, 2010

_____
DOLLY M. GEE
United States District Judge

-11-