Honorable Marsha J. Pechman

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

YOLANY PADILLA, *et al.*,

Plaintiffs-Petitioners,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

Defendants-Respondents.

11

12

13

14

15

16

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS THIRD AMENDMEND
COMPLAINT**

Noted on Motion Calendar:
June 21, 2019

ORAL ARGUMENT REQUESTED

17

18

19

20

21

22

23

24

25

26

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

   I.   The Bond Hearing Class Claims Are Not Moot. ................................................ 3

   II.  Bond Hearing Class Has Stated a Due Process Claim to a Prompt Bond Hearing. ........... 5

      A.  Plaintiffs Have Due Process Rights. ...................................................... 5

      B.  Plaintiffs Have a Due Process Right to a Bond Hearing. ........................................ 7

         1.  Substantive Due Process Requires a Bond Hearing. ....................................... 8

         2.  Procedural Due Process Requires an Individualized Bond Hearing. ................. 9

         3.  Defendants' Other Due Process Arguments Lack Merit. .............................. 10

      C.  Due Process Also Requires That the Hearing Be Promptly Afforded. ...................... 11

   III. Plaintiffs Have Stated a Statutory Claim to a Bond Hearing. ........................................... 13

      A.  Plaintiffs Have Stated a Claim to a Bond Hearing under Section 1226(a). ............... 13

      B.  Plaintiffs Have Stated a Claim to a Bond Hearing under Section 1182(d)(5). ........... 15

   IV. Plaintiffs Have Stated a Claim Under the APA. ................................................... 17

   V.  Plaintiffs Are Entitled to Prompt Credible Fear Interviews. ............................................ 19

      A.  Plaintiffs Have a Due Process Right to a Prompt Credible Fear Interview. .............. 19

      B.  The Administrative Procedure Act (APA) Entitles Plaintiffs to a Prompt CFI. ......... 20

      C.  8 U.S.C. § 1252(a)(2)(A)(iv) Does Not Bar Plaintiffs' Prompt CFI Claims. ............. 21

   VI. Section 1252(f)(1) Does Not Bar Classwide Injunctive Relief. ...................................... 22

CONCLUSION ................................................................................................. 24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**INTRODUCTION**

This Court already has rejected nearly all the arguments Defendants advance in their motion to dismiss, Dkt. 136, including their Rule 12(b)(1) and (6) claims that Plaintiffs and class members do not possess procedural due process rights to prompt credible fear interviews and subsequent bond hearings with procedural protections. Dkt. 91 (order denying motion to dismiss second amended complaint); Dkt. 100 (order denying motion to reconsider). As such, all that remains before this Court to decide on this motion is whether Defendants can eliminate bond hearings and in so doing, avoid giving effect to this Court's prior order affording preliminary injunctive relief to ensure expeditious bond hearings with procedural safeguards. Because Plaintiffs have a constitutional and statutory right to bond hearings, they have stated claims upon which this Court can grant relief. The Court should deny Defendants' motion.

**BACKGROUND**

Plaintiffs' Second Amended Complaint, filed on August 22, 2018, alleged that Defendants violate Plaintiffs' rights to timely credible fear interviews and to prompt bond hearings with the necessary procedural protections. Dkt. 26 ¶¶ 128, 137, 146-165. On September 18, 2018, former Attorney General Sessions self-certified the question of whether the Board of Immigration Appeals (BIA) decision in *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005)—which recognized that individuals like Plaintiffs are entitled to bond hearings before an immigration judge—"should be overruled." *Matter of M-G-G-*, 27 I. & N. Dec. 469 (A.G. 2018); *see also Matter of M-S-*, 27 I. & N. Dec. 476 (A.G. 2018) (certifying the same issue on October 12, 2018). Neither former Attorney General Sessions nor his successors immediately ruled upon the case.

In the intervening months, this Court denied in part Defendants' motion to dismiss, permitting Plaintiffs' to proceed with their constitutional claims and Administrative Procedure Act (APA) claim regarding procedural rights in bond hearings. *See* Dkt. 91. The Court subsequently certified two nationwide classes. Dkt. 102 at 2. On April 5, 2019, the Court granted

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 1
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Plaintiffs' motion for a preliminary injunction for the Bond Hearing Class, recognizing that class members have "[a] constitutional right to press their due process claims, including their right to be free from indeterminate civil detention, and their right to have the bond hearing conducted in conformity with due process." Dkt. 110 at 7.

Eleven days after this Court ordered preliminary injunctive relief, Defendant Barr issued a decision in *Matter of M-S-*. That decision overruled *Matter of X-K-* and interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to hold that *all* noncitizens "transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond," but delayed implementation of the order for 90 days, until July 15, 2019. 27 I. & N. Dec. at 519 & n.8. Subsequently, Defendants filed a motion to vacate the preliminary injunction based upon *Matter of M-S-*. *See* Dkt. 114.

On May 5, 2019, Plaintiffs filed a Third Amended Complaint, Dkt 130, which Defendants now seek to dismiss, Dkt. 136. Plaintiffs also filed a motion to modify the existing preliminary injunction to address *Matter of M-S-*. Dkt. 131. The Court granted the parties' stipulated motion to stay the enforcement of the preliminary injunction until July 1, 2019, allowing the parties time to complete briefing on their respective motions. Dkt. 129.

## ARGUMENT

To prevail on their facial jurisdictional challenges, Defendants must demonstrate that Plaintiffs' allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). As for the factual challenge, this Court may grant Defendants' motion only if "there is no genuine dispute as to any material fact" regarding the jurisdictional issues. Fed. R. Civ. P. 56(a); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014). As for Defendants' motion under Rule 12(b)(6), Plaintiffs need only show that the "complaint . . . contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Bain v. California Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (citation omitted). In conducting the Rule 12(b)(6) inquiry, the Court "presumes that the facts alleged by the plaintiff are true . . . . [and] draw[s] all reasonable inferences from the

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 2
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

complaint in [the plaintiff's] favor." *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013) (internal quotation marks omitted).

## I.  The Bond Hearing Class Claims Are Not Moot.

The Bond Hearing Class claims are not moot for two reasons. First, although Plaintiffs Vasquez and Padilla were released on bonds set by an immigration judge (IJ), they continue to "have a concrete interest" in this case, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks and citation omitted), because they face re-detention without a constitutionally adequate bond hearing as a result of *Matter of M-S-*. *See* Dkt. 130 ¶¶ 67, 97, 117-29. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172 (citation omitted). Moreover, as this Court has already recognized, Plaintiffs' challenges to detention pending removal proceedings are "inherently transitory" and therefore subject to the "capable of repetition yet evading review" exception to mootness. Dkt. 102 at 8 (citing *Rivera v. Holder*, 307 F.R.D. 539, 548 (W.D. Wash. 2015)).

Defendants may revoke an IJ's bond order at any time based on changed circumstances. *See* 8 U.S.C. § 1226(b); 8 C.F.R. § 1236.1(c)(9). Defendants claim that *Matter of M-S-* is a changed circumstance that eliminates Plaintiffs' eligibility for a bond hearing, *see, e.g.*, Dkt. 114 at 10, rendering their bond orders void *ab initio*. If and when their bonds are revoked, Plaintiffs will be detained without any bond hearing—much less a prompt bond hearing that comports with due process. Thus, Plaintiffs continue to have a concrete stake in the outcome of this litigation, and their claims are not moot. For the same reason, Plaintiffs remain adequate class representatives. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

Nonetheless, citing a declaration by Russell Holt, Acting Deputy Assistant Director of Enforcement and Removal Operations for Immigration and Customs Enforcement (ICE), Defendants assert that Plaintiffs' claims are moot because ICE does not intend to re-detain individuals like Plaintiffs, who received bond hearings pursuant to *Matter of X-K-*. *See* Dkt. 136 at 5. Significantly, however, Mr. Holt states only that ICE does not intend to re-detain such

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 3
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    individuals "*[a]t this time*," Dkt. 137 ¶ 6 (emphasis added). Defendants omit that qualifier when

2    discussing Mr. Holt's statement in their brief.

3          This vague and noncommittal assertion does meet Defendants' "formidable burden" to

4    show that its voluntary cessation makes it "*absolutely clear* the allegedly wrongful behavior

5    could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC),*

6    *Inc.*, 528 U.S. 167, 189-90 (2000) (emphasis added). Mr. Holt's statement "does not suggest that

7    it is binding . . . , nor would [such a statement] typically create legal obligations." *Porter v.*

8    *Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007). Courts have repeatedly declined to find detention

9    claims moot where, as here, the government maintains it retains discretion to return an individual

10    to custody. *See, e.g.*, *Abdi v. Duke*, 280 F. Supp. 3d 373, 395 (W.D.N.Y. 2017) (case not moot

11    because ICE's stated intent not to re-detain noncitizen "at this time" "[left] open the possibility

12    that Respondents could, on a whim, change course and decide to re-detain"); *Centeno-Ortiz v.*

13    *Culley*, No. 11-cv-1970-IEG, 2012 WL 170123, at *4-5 (S.D. Cal. Jan. 19, 2012) (same, where

14    government "refuse[d] to disclaim its authority to detain Petitioner" and instead reserved

15    discretion to re-detain if "required by law"); *see also Clark v. Martinez*, 543 U.S. 371**,** 376 n.3

16    (2005) (same, where former detainee's release was "subject to the Secretary's discretionary

17    authority to terminate"). *Compare Pircin–Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991)

18    (case moot where there was no reasonable likelihood of re-detention because the specified

19    conditions for re-detention were outside the government's control). Defendants argue that

20    *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), shows Plaintiffs lack a concrete

21    injury for standing, *see* Dkt. 136 at 5, but *Clapper* does not address the voluntary cessation

22    exception to mootness.

23          Nor is the risk of Plaintiffs' re-detention speculative, as Defendants claim. *See* Dkt. 136

24    at 5. *Matter of M-S-* itself makes this clear. 27 I. & N. Dec. at 519 (reversing bond order and

25    ordering the respondent re-detained unless the Department of Homeland Security (DHS) grants

26    parole). Defendants have recently subjected other noncitizens to re-detention based on similar

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 4
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

changes in law. *See, e.g.*, *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2151877, at *1, *3 (N.D. Cal. May 10, 2018) (granting temporary restraining order to prevent re-detention where the BIA vacated a bond granted prior to *Jennings*); *see also id.* at *3 (citing evidence that "following *Jennings*, other non-citizens have been re-detained"). Thus Plaintiffs continue to face re-detention and may challenge *Matter of M-S-*.

Second, even assuming that Plaintiffs' release on bond mooted their individual detention claims, the certified Bond Hearing Class can pursue Plaintiffs' due process claim to a constitutionally adequate bond hearing. *See* Dkt. 102 at 2, 4; *see also* Dkt. 26 ¶¶ 5-7, 148 (alleging Plaintiffs' have right to "a bond hearing that is fair and comports with due process"). As the Ninth Circuit has explained:

> [I]f the district court has certified a class, mooting the putative class representative's claim will not moot the class action. That is so because upon certification the class "acquire[s] a legal status separate from the interest asserted by [the class representative]," so that an Article III controversy now exists "between a named defendant and a member of the [certified] class . . . ."

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011) (quoting *Sosna v. Iowa*, 419 U.S. 393, 399, 402 (1975)). Here, there is no question that if *Matter of M-S-* takes effect on July 15, it will immediately deprive future class members of their right to a bond hearing. Thus, the Bond Hearing Class maintains live detention claims. Moreover, current class members who have been released on bond will be subject to re-detention, should Defendants change their minds on this issue. Thus, this Court should reject Defendants' mootness arguments.

## II. Bond Hearing Class Has Stated a Due Process Claim to a Prompt Bond Hearing.

### A. Plaintiffs Have Due Process Rights.

Defendants once again assert that, because Plaintiffs have only been in the United States for a brief period after entering the country, they lack due process rights. Dkt. 136 at 7-8. This Court has already rejected this argument. *See* Dkt. 91 at 9-10; Dkt. 110 at 6-7. Defendants ignore the long-established principle that individuals who have entered the country have due process rights: "once [a noncitizen] enters the country, the legal circumstance changes, for the Due

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 5
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   Process Clause applies to all 'persons' within the United States, including [noncitizens], whether

2   their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S.

3   678, 693 (2001); *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (due process protects every

4   person within the United States, "[e]ven one whose presence in this country is unlawful,

5   involuntary, or transitory"); Dkt. 131 at 6-7 (citing additional cases). *Thuraissigiam v. U.S. Dep't

6   of Homeland Sec.*, 917 F.3d 1097, 1111 n.15 (9th Cir. 2018) ("[P]resence matters to due

7   process.").

8          This principle applies regardless of how long individuals have been present or the nature

9   of their entry. Indeed, the Ninth Circuit has routinely applied this rule to noncitizens who only

10  recently entered. *See, e.g.*, *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1153, 1160-62 (9th Cir.

11  2004) (due process for noncitizen apprehended same day as unlawful entry); *Jie Lin v. Ashcroft*,

12  377 F.3d 1014 (9th Cir. 2004) (requiring due process for child found alone in international

13  airport); *Padilla-Agustin v. INS*, 21 F.3d 970, 972, 974-77 (9th Cir. 1994) (requiring due process

14  for noncitizen apprehended shortly after crossing border), *abrogated on other grounds by Stone

15  v. INS*, 514 U.S. 386 (1995); Dkt. 131 at 7 (citing additional cases).

16         Defendants cite language from a hodgepodge of cases to try to undermine this long-

17  established rule, *see* Dkt. 136 at 7-8, but those cases are distinguishable. Each involved

18  noncitizens who, unlike Plaintiffs, had not effected an entry into the United States. To the

19  contrary, those cases reaffirm that the Due Process Clause protects all those who have entered,

20  even those who have entered illegally. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S.

21  206, 212 (1953); *Barrera v. Rison*, 44 F.3d 1441, 1448-49 (9th Cir. 1995); Dkt. 91 at 8-9

22  (distinguishing *Mezei* and *Barrera*). Nor did *Jennings* cast doubt on this principle, as Defendants

23  claim. *See* Dkt. 136 at 8. *Jennings* simply noted—without deciding the issue—that noncitizens

24  arriving at ports of entry may lack a due process right to a bond hearing. *See* 138 S. Ct. at 852.

25         Defendants also invoke *Castro v. U.S. Department of Homeland Security*, 835 F.3d 422

26  (3d Cir. 2016). But the Ninth Circuit has rejected *Castro* as contrary to Supreme Court and Ninth

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 6
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Circuit law. *Thuraissigiam*, 917 F.3d at 1112 n.15 ("[W]e disagree with . . . *Castro*'s conclusion that a person [who has entered the United States] lacks all procedural due process rights.").

Defendants' reliance on *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), is also misplaced, as there, the Court *expanded* the due process rights of arriving noncitizens at ports of entry who could show a substantial connection to the country. *See* Dkt. 136 at 7. Defendants also rely on language quoted completely out of context from *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990). Dkt. 136 at 8. Yet *Verdugo* involved whether the Warrant Clause of the Fourth Amendment applied *in Mexico* and has no application here. *See* 494 U.S. at 262-63.

Finally, contrary to Defendants' assertions, Plaintiffs challenge the lack of procedures relating to their detention, not their admission. *See* Dkt. 136 at 7-8. Mere release from detention does not constitute an "admission" under the immigration laws. *Cf. Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007) (holding that an individual released from detention on "conditional parole" is not "paroled into the United States" for immigration purposes). For similar reasons, the government's reliance on the political branches' plenary power over immigration is unavailing. The plenary power cases primarily concern the power to expel or exclude noncitizens—not the power to imprison them. Thus, those cases are inapplicable here, as the power to subject people to arbitrary detention is not within the government's "plenary" power. In any event, "[the plenary] power is subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695.

**B.  Plaintiffs Have a Due Process Right to a Bond Hearing.**

Plaintiffs have stated a due process claim for a bond hearing upon which relief can be granted. *See* Dkt. 130 ¶¶ 117-29. As demonstrated below, Plaintiffs are entitled to a bond hearing on both substantive and procedural due process grounds. Defendants argue that this Court should apply a presumption of constitutionality to the detention provisions of the Immigration and Nationality Act (INA). *See* Dkt. 136 at 7. However, such a presumption is at odds with the federal courts' traditional exercise of *de novo* habeas corpus review to determine if detention is

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 7
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  "in violation of the Constitution." 28 U.S.C. § 2241(c)(3). Indeed, courts carry out "the historic

2  purpose of the writ, namely, to relieve detention by executive authorities without judicial trial."

3  *Zadvydas*, 533 U.S. at 699 (internal quotation marks omitted).

       1.  <u>Substantive Due Process Requires a Bond Hearing.</u>

5       "Freedom from imprisonment—from government custody, detention, or other forms of

6  physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Id.* at

7  690. The Supreme Court in *Zadvydas* affirmed the due process requirement that immigration

8  detention, like all civil detention, is justified only "where a special justification . . . outweighs the

9  'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting

10  *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)); *see also United States v. Salerno*, 481 U.S. 739,

11  747 (1987) (substantive due process prohibits detention that is "excessive in relation to [the

12  government's] regulatory goal"). The only legitimate justifications for immigration detention are

13  to effectuate removal and to protect against danger and flight risk during that process. *Zadvydas*,

14  533 U.S. at 690-91. Immigration detention violates due process unless it is reasonably related to

15  these legitimate purposes. *See id.* at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 990 (9th

16  Cir. 2017). Moreover, detention must be accompanied by adequate procedural safeguards to

17  ensure that these purposes are served. *See Zadvydas*, 533 U.S. at 690-92; *Hernandez*, 872 F.3d at

18  990.

19       As a consequence of Defendants' elimination of bond hearings in *Matter of M-S-*, the

20  only procedure available to Plaintiffs to challenge their detention is a discretionary parole

21  determination made by a DHS officer. Dkt. 130 ¶ 54. However, with only one exception—

22  *Demore v. Kim*, 538 U.S. 510 (2003), a case which is clearly distinguishable—the Supreme

23  Court has never upheld civil detention as constitutional without an individualized hearing before

24  a neutral decision maker, to ensure continued detention is justified. *See, e.g.*, *Salerno*, 481 U.S. at

25  750; *Hendricks*, 521 U.S. at 357-58; *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Schall v.

26  Martin*, 467 U.S. 253, 277, 279-81 (1984); *see also* Dkt. 131 at 9.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 8
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Although the Supreme Court upheld immigration detention without a hearing in *Demore*, that case is clearly distinguishable. First, the statute at issue in *Demore* imposed mandatory detention on certain noncitizens that Congress determined to pose a categorical bail risk because they had committed specific crimes. *See* 8 U.S.C. § 1226(c). The Court emphasized that this "narrow detention policy," 538 U.S. at 526, was reasonably related to the government's purpose of effectuating removal and protecting public safety, *id.* at 527-28. By contrast, the detention statute here applies broadly to individuals with no criminal records and with *bona fide* claims to protection in the United States. *Cf. Zadvydas*, 533 U.S. at 691 (doubting constitutionality of detention statute that "does not apply narrowly to 'a small segment of particularly dangerous individuals,' . . . but broadly to [noncitizens] ordered removed for many and various reasons" (citation omitted)).

Second, the *Demore* Court placed great reliance on the voluminous record before Congress. That evidence showed that the "criminal aliens" targeted by the mandatory detention statute posed a heightened categorical risk of flight and danger to the community. *See* 538 U.S. at 518-21 (citing studies and congressional findings). In contrast, Congress made no such findings regarding the population at issue here—that is, individuals who DHS has determined to have a credible fear of persecution or torture.

Third, the *Demore* Court strongly emphasized what it understood to be the brief period of time that mandatory detention typically lasts. *See id.* at 530 (noting that detention under § 1226(c) lasted "roughly a month and half in the vast majority of cases . . . and about five months in the minority of cases in which the [noncitizen] chooses to appeal"). In contrast, class members here may spend months or years in detention while their claims are adjudicated. Dkt. 130 ¶ 54.

2. Procedural Due Process Requires an Individualized Bond Hearing.

For many of the same reasons, procedural due process likewise requires individualized bond hearings before an IJ. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, Plaintiffs

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 9
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

have a profound interest in preventing their arbitrary detention. *See Zadvydas*, 533 U.S. at 690; *see also Hernandez*, 872 F.3d at 993; Dkt. 110 at 6; *supra* Section II.B.1.

Second, the parole process creates an unacceptable risk of the erroneous deprivation of Plaintiffs' liberty. The parole process consists merely of a custody review conducted by low-level ICE detention officers. *See* 8 C.F.R. § 212.5(a). It includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See generally id.* § 212.5(a)-(d). Instead, ICE officers make parole decisions by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation. *See, e.g.*, *Abdi*, 280 F. Supp. 3d at 404-05; *Damus v. Nielsen*, 313 F. Supp. 3d 317, 324-25, 341 (D.D.C. 2018).

Finally, the government lacks any countervailing interest in denying Plaintiffs' bond hearings, as it has no legitimate interest in detaining individuals who pose no flight risk or danger to the community. *See* Dkt. 110 at 15 (quoting *Hernandez*, 872 F.3d at 994). The only other possible factor, administrative cost, is negligible, as the government has provided bond hearings to asylum seekers pursuant to *Matter of X-K-* for more than a decade, and more generally to noncitizens who have entered the United States for nearly the past 50 years. Dkt. 131 at 2-3. In addition, the government itself has an interest in maintaining bond hearings and ensuring accurate custody determinations. *See, e.g.*, *Matter of X-K-*, 23 I. & N. Dec. at 736.

### 3.   Defendants' Other Due Process Arguments Lack Merit.

Defendants other arguments as to why Plaintiffs have no due process right to a bond hearing should be rejected. First, Defendants assert that the Supreme Court and Ninth Circuit cases have affirmed that due process permits Defendants to detain Plaintiffs for at least six months without a bond hearing. Dkt. 136 at 9-11 (citing *Zadvydas*, *Demore*, and *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)). But none of the cited cases addressed the constitutional issue presented here: whether it violates the Due Process Clause to detain Plaintiffs—individuals who have entered the United States and been found to have *bona fide* asylum claims—without a

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 10
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

bond hearing for *any* period of time. Nor did the Supreme Court and Ninth Circuit hold that constitutional concerns only arise at the six-month mark, as Defendants claim. *See* Dkt. 136 at 11. Instead, the cases affirm that due process requires immigration detention to be reasonably related to a valid government purpose and accompanied by adequate procedures to ensure those goals are served. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 527; *Rodriguez*, 804 F.3d at 1076-77.

Second, Defendants argue that, as in *Demore*, detention without a bond hearing is constitutional because it serves the government's valid purpose of ensuring Plaintiffs' presence at removal proceedings. *See* Dkt. 136 at 9-10. But *Demore* is clearly distinguishable for the reasons set forth above. *See supra* p. 9.

Third, Defendants argue that *Zadvydas* does not apply because unlike in *Zadvydas*, where the petitioners were subject to indefinite detention because the government could not execute their deportation orders, Plaintiffs' detention has a "definite termination point." *See* Dkt. 136 at 10-11. According to Defendants, that termination point is the conclusion of Plaintiffs' removal cases, at which point class members will be released or removed. *Id.* But in contrast to the petitioners in *Zadvydas*, Plaintiffs do not assert a due process right to *release* from detention on the theory that their detention is no longer in service of their removal. Instead, they argue that due process requires a basic *hearing* to ensure that their continuing imprisonment is justified.

Finally, Defendants assert that Plaintiffs can "end their own detention" by acquiescing in deportation. Dkt. 136 at 10. This argument is absurd. DHS has determined that Plaintiffs have a credible fear of persecution, which gives them the right to remain in the United States while they seek protection. Plaintiffs should not be required to voluntarily end their detention by returning to the countries from which they fled persecution, torture, or even death. *See* Dkt. 110 at 9 ("The Constitution does not require these Plaintiffs to endure such a no-win scenario.").

**C. Due Process Also Requires That the Hearing Be Promptly Afforded.**

The Due Process Clause not only requires an individualized hearing, but also dictates that

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 11
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   Plaintiffs receive prompt hearings—as this Court has already made clear. Dkt. 91 at 13-14; Dkt.

2   110 at 7, 13-14, 19.  Defendants contend that due process is "a flexible concept," Dkt. 136 at 9,

3   and thus cannot require a seven-day deadline, *id.* at 8-12. However, agency guidance and case

4   law from the immigration and civil detention contexts support Plaintiffs' request.

5        First, agency regulations and case law from the immigration context have repeatedly

6   stated that bond hearings must be conducted in an expedited fashion, in recognition of Plaintiffs'

7   liberty interests. *See* Dkt. 91 at 13-14; Dkt. 110 at 13-14 (relying in part on agency case law and

8   guidance to deny Defendants' motion to dismiss and issue preliminary injunction imposing

9   deadline for bond hearings). Similarly, as this Court has observed, "further guidance is found in

10  the Congressional mandate" to review credible fear determinations quickly. Dkt. 110 at 13; *see*

11  *also* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). *Saravia v. Sessions*, 905 F.3d 1137 (9th Cir. 2018),

12  further demonstrates that Plaintiffs have stated a claim for a prompt hearing. In that case, the

13  Ninth Circuit affirmed a district court's decision to impose a seven-day deadline to hold hearings

14  for immigrant minors that DHS re-arrests following their previous release. 905 F.3d at 1143.

15  Defendants seek to distinguish that decision, asserting the class members in *Saravia* are

16  differently situated from Plaintiffs and not subject to mandatory detention. Dkt. 136 at 12. Their

17  arguments fail to acknowledge that Plaintiffs have *bona fide* claims for asylum and if they

18  prevail, to eventually become lawful permanent residents—strengthening their interests in

19  obtaining a prompt hearing. *See* 8 U.S.C. §§ 1158(a)(1), 1159(b). Additionally, there is no

20  question that they are entitled to due process rights that protect their liberty interests. *See supra*

21  Section II.A. The *Saravia* timeline is therefore appropriate for Plaintiffs.

22       Second, pre-trial and civil detention cases support Plaintiffs' claim. *See, e.g.*, *Cty. of*

23  *Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir.

24  1981). Defendants attempt to distinguish *Gallinot* by pointing out that it involved a citizen and

25  the mental health context, Dkt. 136 at 12, but once again, Plaintiffs have demonstrated they are

26  entitled to due process regarding their liberty. *Supra* Section II.A-B; *see also* Dkt. 110 at 13

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 12
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

(relying, inter alia, on *Gallinot* to require Defendants to provide prompt bond hearings).

This Court has also rejected Defendants' argument that Plaintiffs' request for a prompt hearing is "not suitable to class consideration" because due process inquiries are "flexible." Dkt. 136 at 9; *see also* Dkt. 102 at 6. But Defendants' apparent alternative—that class members should each seek individual relief—"border[s] on the cynical," Dkt. 102 at 12, as "[t]he bare existence of optional habeas corpus review does not, of itself, alleviate due process concerns," *Gallinot*, 657 F.2d at 1023. To the contrary, the "protection [of habeas corpus] is illusory when a large segment of the protected class cannot realistically be expected to set the proceedings into motion in the first place." *Id.* In addition, each of the civil detention cases cited above demonstrate that courts—including the Supreme Court—have long been willing to impose deadlines for custody hearings to protect liberty rights in the civil or pre-trial detention context.

Second, *Zadvydas* and *Demore* do not foreclose a "prompt" bond hearing. As noted above, Plaintiffs do not assert a due process right to *release*, but only that due process requires a basic *hearing* to ensure that their continuing imprisonment remains justified, as required by *Zadvydas*. And in *Demore* the Court permitted a "narrow [mandatory] detention policy," 538 U.S. at 526, only for the "brief" window of removal proceedings for certain noncitizens who have committed a statutorily enumerated crime, *id.* at 513. *See* 8 U.S.C. § 1226(c). In fact, available data suggests that alternatives to detention mitigate, and nearly eliminate, much of the government's interest in using detention to prevent flight risk. *See Hernandez*, 872 F.3d at 991 (citing data on high attendance rates for one of ICE's alternatives-to-detention programs).

**III. Plaintiffs Have Stated a Statutory Claim to a Bond Hearing.**

**A. Plaintiffs Have Stated a Claim to a Bond Hearing under Section 1226(a).**

Defendants' elimination of bond hearings also violates the INA. In *Matter of M-S-*, the Attorney General relied on the Supreme Court's language in *Jennings*, indicating that 8 U.S.C. § 1225(b)(1)(B)(ii) imposes mandatory detention throughout the proceedings. 27 I. & N. at 510 (quoting *Jennings*, 138 S. Ct. at 844-45). But *Jennings* did not address claims brought by the

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 13
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

class of asylum seekers at issue here, who were apprehended after they entered and were

subjected to expedited removal pursuant to § 1225(b)(1)(A)(iii). Rather, the class certified in

*Jennings* included only individuals who were classified as "arriving" pursuant to 8 U.S.C. §

1225(b). That class argued primarily that they were entitled to bond hearings after they had faced

six months of prolonged detention, since unlike the Plaintiffs here, the regulations excluded this

class from entitlement to bond hearings. 8 C.F.R. § 1003.19(h)(2)(i)(B); *see also* Brief for

Respondents at 2-3, *Jennings*, 138 S. Ct. 830 (No. 15-1204). Indeed, in *Jennings*, the government

acknowledged that noncitizens who entered without inspection and were later found to have a

credible fear of persecution were not part of the § 1225(b) subclass because such individuals

"were detained under regulations implementing Section 1226(a), not Section 1225(b)." Brief for

Petitioners at 18 n.5, *Jennings*, 138 S. Ct. 830 (No. 15-1204). Thus, in issuing the *Jennings*

decision, the Supreme Court did not purport to address the claims of the Bond Hearing class

members in this case.

Contrary to Defendants' argument, *see* Dkt. 136 at 14-15, reading § 1225(b)(1)(B)(ii) to

require mandatory detention for individuals who have entered without inspection (EWI)

throughout their asylum proceedings creates significant tension with § 1225(b)(1)(B)(iii)(IV),

which explicitly requires mandatory detention only "pending a final determination of credible

fear of persecution and, if found not to have such a fear, until removed."

Moreover, EWI asylum seekers can be and sometimes are placed directly into removal

proceedings under 8 U.S.C. § 1229a rather than passing through the credible fear process. Thus,

the Attorney General's interpretation creates arbitrary and capricious results, as an asylum

seeker's right to a bond hearing would hinge upon a DHS official's discretionary determination

on whether to place the asylum seeker directly into § 1229a proceedings or first pass her through

a credible fear screening process under § 1225(b). *Cf. Judulang v. Holder*, 565 U.S. 42, 55

(2011) ("A method for disfavoring deportable [noncitizens] that bears no relation to these

matters—that neither focuses on nor relates to [a noncitizen's] fitness to remain in the country—

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 14
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  is arbitrary and capricious."); *id.* at 75 ("[T]he outcome of the Board's comparable-grounds

2  analysis itself may rest on the happenstance of an immigration official's charging decision.").

3      Courts must read a statute to avoid serious constitutional problems when it is "fairly

4  possible" to do so. *Zadvydas*, 533 U.S. at 689; *see also Clark*, 543 U.S. at 381 (the constitutional

5  avoidance canon "is a tool for choosing between competing plausible interpretations of a

6  statutory text, resting on the reasonable presumption that Congress did not intend the alternative

7  which raises serious constitutional doubts"). In particular, courts have consistently "read

8  significant limitations into other immigration statutes in order to avoid their constitutional

9  invalidation." *Zadvydas*, 533 U.S. at 689. As explained above, the detention of Plaintiffs without

10 a prompt individualized hearing before a neutral adjudicator raises serious due process concerns.

11 *See supra*, Section II.A-C. Accordingly, the Court should interpret the statute to require bond

12 hearings for class members under § 1226(a). Dkt. 130 ¶ 134.

13    **B.  Plaintiffs Have Stated a Claim to a Bond Hearing under Section 1182(d)(5).**

14     Defendants' elimination of individualized custody hearings also violates the INA for a

15 second reason. Both *Jennings* and *Matter of M-S-* recognize that the INA allows Plaintiffs to

16 seek release on parole. *Jennings*, 138 S. Ct. at 844 (citing 8 U.S.C. § 1182(d)(5)(A)); *Matter of

17 M-S-*, 27 I. & N. Dec. at 516-17 (same). Implementing regulations for § 1182(d)(5) provide that

18 DHS must exercise its parole discretion on a "case-by-case basis" and that it may parole

19 individuals who "present neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b),

20 and "whose continued detention is not in the public interest," *id.* § 212.5(b)(5); *see also id.*

21 § 235.3(c). Although DHS and the former Immigration and Naturalization Service (INS) have

22 traditionally exercised the parole authority without IJ review, the parole statute itself is *silent* as

23 to the procedure for parole reviews.

24     As noted above, courts must construe a statute to avoid due process concerns where it is

25 "fairly possible" to do so, *Zadvydas*, 533 U.S. at 689, as is the case here. *See supra* Section II.A-

26 C. Thus, the parole statute can and should be read to provide an individualized hearing before an

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 15
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

IJ. Indeed, the government itself previously recognized that the statute can be construed to allow for IJ review of parole decisions. Memorandum from Paul W. Virtue, U.S. Dep't of Justice, INS, to INS officials, Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens, Legal Op. No. 98-10, 1998 WL 1806685, at *2 (Aug. 21, 1998) ("The statute itself does not forbid delegation of the parole authority to officials who are not Service officers.").

Defendants incorrectly argue that *Jennings* forecloses Plaintiffs' interpretation of 8 U.S.C. § 1182(d)(5). *See* Dkt. 136 at 15. First, *Jennings* did not construe the parole statute or consider whether the parole process in place comports with due process. Moreover, the Court's statement that "there are no *other* circumstances" than parole that provide for release of noncitizens detained under § 1225(b), 138 S. Ct. at 844, did not address the *procedures* by which Defendants must administer the statutory parole standard. Second, Plaintiffs' interpretation is consistent with *Jennings*' explanation of the canon of constitutional avoidance. *Jennings* contrasted the mandatory language of § 1225(b)(2) ("shall be detained") with the discretionary language of § 1231(a)(6) ("may be detained"). *See id.* at 844-45. *Jennings* reaffirmed the Court's prior holding in *Zadvydas* that the term "'[m]ay' . . . 'suggests discretion' but not necessarily 'unlimited discretion.  In that respect the word 'may' is ambiguous.'" *Jennings*, 138 S. Ct. at 843 (quoting *Zadvydas*, 533 U.S. at 697).  Thus, the parole statute's use of the term "may" means that "*Zadvydas*'s reasoning may fairly be applied in this case." *Jennings*, 138 S. Ct. at 843.

Defendants also suggest that 8 U.S.C. § 1252(a)(2)(B)(ii) eliminates jurisdiction over Plaintiffs' claim. Dkt. 136 at 16. That section, entitled "Denials of discretionary relief," provides that no court has jurisdiction over a "decision or action . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). But that statute does not preclude "purely legal" challenges, "as they do not turn on discretionary judgement." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) (collecting cases). Plaintiffs' claim is such a pure legal challenge.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 16
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**IV. Plaintiffs Have Stated a Claim Under the APA.**

The APA expressly requires notice and an opportunity to comment prior to agency decisions to amend or repeal a rule. The statute defines "rule making" to mean "agency process for formulating, *amending, or repealing* a rule." 5 U.S.C. § 551(5) (emphasis added). The APA also requires that a notice of proposed rulemaking shall be published in the Federal Register; that there be at least a 30-day period between notice and effective date; and that interested persons be given an opportunity to participate. 5 U.S.C. § 553(b)-(d).

Defendants argue that that the Attorney General's decision to eliminate bond hearings in *Matter of M-S-* was a permissible act of policymaking through adjudication, and thus exempt from notice-and-comment. Dkt. 136 at 16-17. But the existing regulations, 8 C.F.R. §§ 1236.1(d) and 1003.19(h)(2)(i), themselves provide Plaintiffs with a bond hearing. An agency, of course, has discretion to "elect between rulemaking and ad hoc adjudication to carry out its mandate." *Yang v. I.N.S.*, 79 F.3d 932, 936 (9th Cir. 1996). However, once an agency has promulgated a regulation, the agency is bound by that regulation. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (agency must comply with its own regulations when the rights of individuals are at stake). Moreover, if Defendants wish to *amend* that regulation, it must do so through rulemaking proceedings, and not through ad hoc adjudication. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1206 (2015) (explaining that the APA "mandate[s] that agencies use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance"). For this reason, all the cases cited by Defendants, Dkt. 136 at 17-18, are inapposite, as none addresses Plaintiffs' argument that the agency has already bound itself to address the availability of bond hearings through rulemaking.

As the BIA explained in *Matter of X-K-*, the existing regulations entitle Plaintiffs to bond hearings. 23 I. & N. Dec. at 731-32, 734-35. Specifically, the regulations give IJs general authority to hold bond hearings for individuals in removal proceedings, at any time prior to the entry of a final order of removal, except for specifically excluded classes of noncitizens. *See* 8

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 17
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

C.F.R. § 1236.1(d). 8 C.F.R. § 1003.19(h)(2)(i), in turn, exempts specific classes of individuals from the IJ's general custody jurisdiction. Critically, that list does not include Plaintiffs—namely, persons who (1) entered without inspection, (2) were subjected to expedited removal, and (3) passed a credible fear screening.

The regulatory history reinforces the plain meaning of § 1003.19(h)(2)(i). Initially, the agency proposed *eliminating* IJ jurisdiction over bond hearings for EWIs. *See* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 444, 483 (Jan. 3, 1997) (providing that that "an immigration judge may not exercise authority" over bond for "inadmissible aliens in removal proceedings," which would include EWIs). However, the agency *deleted* that language from the final rule, thereby maintaining IJ bond jurisdiction over EWIs. *See* 8 C.F.R. § 1003.19(h)(2)(i); *see also* Margaret H. Taylor, *The 1996 Immigration Act: Detention and Related Issues*, 74 No. 5 Interpreter Releases 209, 215 (Feb. 3, 1997) (discussing regulatory history).

The government cannot waive its rulemaking obligations by claiming that the regulations were void *ab initio*. As the D.C. Circuit has explained:

> The . . . argument that notice and comment requirements do not apply to "defectively promulgated regulations" is untenable because it would permit an agency to circumvent the requirements of § 553 merely by confessing that the regulations were defective in some respect and asserting that modification or repeal without notice and comment was necessary to correct the situation.

*Consumer Energy Council v. Fed. Energy Regulatory Comm'n*, 673 F.2d 425, 447 n.79 (D.C. Cir. 1982); *see also Nat'l Treasury Emps. Union v. Cornelius*, 617 F. Supp. 365, 371 (D.D.C. 1985) ("It would significantly erode the usefulness of the APA if agencies were permitted unilaterally to repeal regulations dealing with the substantive rights of individuals under federal statutes, by declaring that the earlier regulations were just a mistake.").

Moreover, rulemaking here would serve a useful purpose. In deciding *Jennings*, the Supreme Court expressly declined to consider the due process implications of its ruling. *See* 138 S. Ct. at 851 (limiting its holding to statutory questions and remanding to court of appeals to address the constitutional issues "in the first instance"). A rulemaking process would thus give

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 18
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

the public the opportunity to propose, and the agency the opportunity to consider, alternative ways of implementing the INA to ameliorate the constitutional problems mandatory detention presents—for example, by construing the parole authority to require a hearing before an IJ. *Cf.* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56,967, 56,968 (Nov. 14, 2001) (amending the custody review process for individuals detained after receiving a final order of removal in light of constitutional concerns addressed in *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *id.* at 56,974 (construing statute to require hearing before immigration judge for certain noncitizens that DHS seeks to detain despite being unable to execute those noncitizens' removal orders). Defendants suggest that notice and comment rulemaking would serve no purposes here because amicus briefs were presented to the Attorney General pending his consideration of *Matter of M-S-*. Dkt. 136 at 17-18. However, there is no requirement that the Attorney General consider the arguments presented by amicus briefing. In contrast, in notice and comment proceedings, the AG's failure to "respond to 'significant' comments" is subject to judicial review and, if arbitrary and capricious, rescission of the rule. *Am. Mining Cong. v. EPA*, 965 F.2d 759, 771 (9th Cir. 1992).

## V.  Plaintiffs Are Entitled to Prompt Credible Fear Interviews.

### A.  Plaintiffs Have a Due Process Right to a Prompt Credible Fear Interview.

Defendants have waived sovereign immunity over Plaintiffs' constitutional claim to a prompt Credible Fear Interview (CFI) under 5 U.S.C. § 702, in conjunction with jurisdiction under 28 U.S.C. § 1331. Dkt. 130 ¶ 8; *see also* Dkt. 69 at 7. Section 702's waiver is not limited to causes of action asserted under the APA. *See, e.g.*, *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 524-26 (9th Cir. 1989) (holding that Section 702 eliminated the sovereign immunity defense in suit asserting violation of constitutional rights). Moreover, the Court retains habeas jurisdiction over Plaintiffs' claims under 28 U.S.C. § 2241, which permits review of challenges to protracted detention during the credible fear process. *See* Dkt. 130 ¶¶ 8, 37, 64, 74, 85, 94, 147-51. Regardless of this Court's decision on Plaintiffs' bond hearing claims, the CFI

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 19
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

delays that Plaintiffs challenge will prolong the period they remain detained before they can seek release on parole. *See, e.g.*, *Damus*, 313 F. Supp. at 323-24 (describing parole process for individuals with positive credible fear determinations); *see also* Dkt. 69 at 10-12; Dkt. 98 at 6-9.

Notably, Defendants have previously raised this issue, *see* Dkt. 36 at 8-9, and this Court has rejected it, *see* Dkt. 91 at 7-8 (explaining that "'[i]t is now clear that [a] federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review' complaints by detained [noncitizens] 'for constitutional claims and legal error'" (first alteration in original) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011))). This Court also has already rejected Defendants' challenge to the merits of Plaintiffs' constitutional claim to a timely credible fear interview, including that Plaintiffs lack due process rights to the protections that they seek. *See id.* at 8-10.

Contrary to Defendants' assertions, *see* Dkt. 136 at 19-21, Plaintiffs enjoy due process protections, especially those who have "entered" the country albeit without inspection. *See, e.g.*, *United States v. Raya-Vaca*, 771 F.3d 1195, 1202-03 (9th Cir. 2014). Moreover, they simply ask that the process Congress implemented for presenting persecution claims be fairly implemented. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii); 1225(b)(1)(B)(i); *see also Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996). Furthermore, *all* members of the CFI Class, by virtue of their status as asylum seekers, are entitled to certain minimum due process protections. *See, e.g.*, *Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984); *cf. Angov v. Lynch,* 788 F.3d 893, 898 n.3 (9th Cir. 2015) (noting this is an "open question" in this circuit). Thus, Defendants may not unreasonably infringe upon Plaintiffs' due process rights by unreasonably delaying credible fear interviews and prolonging their detention. *See also* Dkt. 69 at 15 (distinguishing cases cited by Defendants).

**B.  The Administrative Procedure Act (APA) Entitles Plaintiffs to a Prompt CFI.**

This Court previously dismissed Plaintiffs' claim that the APA entitles them to prompt credible fear interviews. Dkt. 92 at 10-13. Plaintiffs include the claim in the TAC in order to preserve it for review.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 20
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**C.  8 U.S.C. § 1252(a)(2)(A)(iv) Does Not Bar Plaintiffs' Prompt CFI Claims.**

This Court already has held that 8 U.S.C. § 1252(a)(2)(A)(iv) does not bar Plaintiffs' credible fear claims, Dkt. 100 at 2, a challenge that Defendants now reiterate, *see* Dkt. 136 at 22-23. As Plaintiffs previously argued, the text of 8 U.S.C. § 1252(a)(2)(A)(iv) only bars challenges to "procedures and policies . . . *to implement* the provisions of section 1225(b)(1)" except as permitted by § 1252(e)(3) (emphasis added). *See* Dkt. 98 at 2-8. It therefore does not apply to Plaintiffs' claims, as Plaintiffs challenge precisely the opposite: the agency's *failure* to implement (or carry out) the process the statute's system of timely credible fear interviews for noncitizens in expedited removal. Thus, this case falls into a well-established line of decisions recognizing that the INA's jurisdiction-stripping provisions do not apply where DHS and its sub-agencies fail to comply with the governing statute or with their own policies implementing the statute. *See, e.g.*, *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1075 n.1 (D. Or. 2018) (finding that § 1252(a)(2)(A)(iv) does not bar review of lawsuit challenging "specific actions . . . that conflict with the very procedures and policies that Defendants . . . have adopted"); *cf.* Dkt. 98 at 5-6 (citing cases).[1]

Nor, as Defendants suggest, *see* Dkt. 136 at 22-23, do the limitations of § 1252(e) apply. In relevant part, § 1252(e) permits certain challenges otherwise barred by § 1252(a)(2)(A)(iv), but restricts such challenges to written policies and regulations implementing the expedited removal system and challenges to the validity of the system as a whole, brought in the District of Columbia within sixty days of first implementation. 8 U.S.C. § 1252(e)(3)(A)-(B). But applying that provision to challenges, like Plaintiffs', that address Defendants' failure to implement the statute would be absurd—because no statute, regulation or written procedure can trigger the statutory deadline for bringing a challenge to the *failure* to implement the required process. Any decision to the contrary would insulate Defendants' actions from review. *See also* Dkt. 69 at 6.

---

[1] The Court also maintains jurisdiction pursuant to the habeas statute, 28 U.S.C. § 2241, which affords Plaintiffs a basis to seek relief for their constitutional claim that the delay of their credible fear determinations prolongs their detention in violation of due process. *See supra* p. 20.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 21
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**VI. Section 1252(f)(1) Does Not Bar Classwide Injunctive Relief.**

Finally, § 1252(f)(1) does not limit this Court from granting classwide injunctive relief. As an initial matter, § 1252(f)(1) does not prohibit this Court from issuing classwide *declaratory* relief. *See Nielsen v. Preap* 139 S. Ct. 954, 962 (2019) (holding that "the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief"); *accord Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018); *Rodriguez v. Hayes*, 591 F.3d 1105, 1119-20 (9th Cir. 2010). Nor does § 1252(f)(1) bar injunctive relief on Plaintiffs' *statutory* claims, as both the Ninth Circuit and this Court have held. *See Hayes*, 591 F.3d at 1120; Dkt. 91 at 19 (same).

Furthermore, Defendants are incorrect that § 1252(f)(1) bars injunctive relief on Plaintiffs' constitutional claims. As the Ninth Circuit explained in *Marin*, § 1252(f)(1) does not apply here for two reasons. In that case, the court specifically held that § 1252(f)(1) did not strip jurisdiction over the plaintiffs' detention claims, but remanded for the district court to "decide in the first instance whether § 1252(f)(1) precludes classwide injunctive relief." 909 F.3d at 256 n.1. The Ninth Circuit's reasons for holding that § 1252(f)(1) did not strip jurisdiction over detention claims apply equally to any effect that § 1252(f)(1) has on remedial jurisdiction and compel the same result.

First, "[a]ll of the individuals in the . . . class are 'individual[s] against whom [removal] proceedings . . . have been initiated.'" *Marin*, 909 F.3d at 256 (second alteration in original) (quoting § 1252(f)(1)). Pursuant to § 1252(f)(1), only persons already targeted for removal can seek injunctive relief, as opposed to those individuals who are not yet in removal proceedings. *Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1360 (D.C. Cir. 2000) ("Congress meant to allow litigation challenging the new system by, and only by, *[noncitizens] against whom the new procedures had been applied*." (emphasis added)). Congress adopted § 1252(f)(1) after a period in which organizations and classes of individuals who were not in removal proceedings repeatedly brought preemptive challenges to the enforcement of certain immigration statutes. *E.g.*, *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) (class action brought by,

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 22
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*inter alia*, immigrant rights' organizations and class of individuals, many of whom were not in deportation proceedings); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 487-88 (1991) (same by, inter alia, refugee services organizations and class of individuals, only some of whom were in proceedings); *Haitian Refugee Ctr., Inc. v. Smith*, 676 F.2d 1023, 1029 (5th Cir. Unit B 1982) (class of, inter alia, individuals who applied for asylum but were not in proceedings). Section 1252(f)(1) eliminates such challenges. By contrast, the Plaintiffs here satisfy § 1252(f)(1)'s exception clause because all are "individual [noncitizens] against whom [removal] proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1).

Defendants seize upon *dicta* in *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), 525 U.S. 471 (1999), to argue the reference to "an individual alien" bars all forms of classwide injunctive relief. Dkt. 136 at 23 (citing *AADC*, 525 U.S. at 482; *Jennings*, 138 S. Ct. at 851). But *AADC* did not address § 1252(f)(1)'s exception clause. Nor did the Ninth Circuit in *Marin* hold that *Reno* "likely forecloses" Plaintiffs' claims for injunctive relief, as Defendants claim. Dkt. 136 at 23. Instead, *Marin* simply noted that "*even if*" *Reno* forecloses injunctive relief, declaratory relief remains available. 909 F.3d. at 256 (emphasis added). Moreover, courts decline to construe references to "any individual" or "any plaintiff" as eliminating judicial authority under Federal Rule of Civil Procedure 23. *See, e.g.*, *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("The fact that the statute speaks in terms of an action brought by 'any individual' . . . does not indicate that the usual Rule providing for class actions is not controlling . . . . Indeed, a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them."); *Brown v. Plata*, 563 U.S. 493, 531 (2011) (upholding classwide injunctive relief against a prison despite provision stating "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs") (citing 18 U.S.C. 3626(a)(1)(A)). Nor does *Marin*'s construction of § 1252(f)(1) render the term "individual" superfluous, as Defendants assert. Dkt. 136 at 23 (citing

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 23
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    *Hamama v. Adducci*, 912 F.3d 869, 877-78 (6th Cir. 2018)). Congress used "individual" to stop

2    organizational plaintiffs from pursuing injunctions on behalf of people not in removal

3    proceedings. *Supra* p. 23. *Marin*'s reading of the plain language thus effects Congress's intent.

4         *Second*, § 1252(f)(1) also does not bar relief here "because it lacks a clear statement

5    repealing the court's habeas jurisdiction." *Marin*, 909 F.3d at 256. Plaintiffs invoke the Court's

6    habeas corpus authority under 28 U.S.C. § 2241. Dkt. 130 ¶ 8. It is well established that courts

7    will not read a statute to restrict their power to grant habeas relief unless Congress explicitly

8    revokes authority under the general federal habeas statute—28 U.S.C. § 2241—by name. *INS v.*

9    *St. Cyr*, 533 U.S. 289, 314 (2001); *Demore*, 538 U.S. at 517. The same applies here, as §

10    1252(f)(1) does not expressly revoke authority to grant relief in habeas corpus cases; it is silent

11    on the subject. That inference is even stronger here, as after *St. Cyr*, Congress amended 8 U.S.C.

12    § 1252 to explicitly limit habeas jurisdiction in other portions of § 1252. *See*, *e.g.*, 8 U.S.C. §§

13    1252(a)(2)(B); 1252(b)(9).

14         Moreover, restricting federal courts' power to resolve habeas cases "as law and justice

15    require," 28 U.S.C. § 2243, would raise serious constitutional problems. Congress gave federal

16    courts authority to entertain habeas cases, including the power to order the release of federal

17    prisoners, in 1789. *See St. Cyr*, 533 U.S. at 305. In addition, under the Suspension Clause, "the

18    habeas court must have the power to order the conditional release of an individual unlawfully

19    detained." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Thus, § 1252(f) cannot be construed

20    to deprive federal courts of equitable authority in cases founded upon habeas jurisdiction.

**CONCLUSION**

22         For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

23

24    RESPECTFULLY SUBMITTED this 17th day of June, 2019.

25

26

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 24
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

*s/ Matt Adams*
Matt Adams, WSBA No. 28287
Email: matt@nwirp.org

*s/ Leila Kang*
Leila Kang, WSBA No. 48048
Email: leila@nwirp.org

*s/ Aaron Korthuis*
Aaron Korthuis, WSBA No. 53974
Email: aaron@nwirp.org

NORTHWEST IMMIGRANT RIGHTS
PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone: (206) 957-8611
Facsimile: (206) 587-4025

*s/ Trina Realmuto*
Trina Realmuto*
Email: trealmuto@immcouncil.org

*s/ Kristin Macleod-Ball*
Kristin Macleod-Ball*
Email: kmacleod-ball@immcouncil.org

AMERICAN IMMIGRATION COUNCIL
1318 Beacon Street, Suite 18
Brookline, MA 02446
Telephone: (857) 305-3600

*s/ Judy Rabinovitz*
Judy Rabinovitz*
Email: jrabinovitz@aclu.org

*s/ Michael Tan*
Michael Tan*
Email: mtan@aclu.org

*s/ Anand Balakrishnan*
Anand Balakrishnan*
Email: abalakrishnan@aclu.org

ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
Telephone: (212) 549-2618

*s/ Emily Chiang*
Emily Chiang, WSBA No. 50517
Email: echiang@aclu-wa.org

ACLU OF WASHINGTON FOUNDATION
901 5th Ave, Suite 630
Seattle, WA 98164
Telephone: 206-624-2184

*Admitted *pro hac vice*

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 25
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Lauren C. Bingham | lauren.c.bingham@usdoj.gov<br>ecf.oil-dcs@usdoj.gov<br>crystal.greene@usdoj.gov |
| Joseph A. Darrow | joseph.a.darrow@usdoj.gov |
| Archith Ramkumar | archith.ramkumar@usdoj.gov<br>ar4kc@virginia.edu |
| Sarah S. Wilson | Sarah.Wilson2@usdoj.gov<br>Daniel.C.Meyer@usdoj.gov |

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

Dated: June 17, 2019.

s/ Aaron Korthuis

Aaron Korthuis
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 816-3872
aaron@nwirp.org

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
THIRD AMENDED COMPLAINT – 26
Case No. 2:18 cv 00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611