*The Honorable Marsha J. Pechman*

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

YOLANY PADILLA, IBIS GUZMAN, BLANCA
ORANTES, BALTAZAR VASQUEZ,

                        Plaintiffs-Petitioners,

   v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND
IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR");
MATTHEW ALBENCE, Acting Director of ICE;
KIRSTJEN NIELSEN, Acting Secretary of DHS; KEVIN
K. McALEENAN, Acting Commissioner of CBP; L.
FRANCIS CISSNA, Director of USCIS; ELIZABETH
GODFREY, Acting Seattle Field Office Director, ICE;
WILLIAM BARR, United States Attorney General;
LOWELL CLARK, warden of the Northwest Detention
Center in Tacoma, Washington; CHARLES INGRAM,
warden of the Federal Detention Center in SeaTac,
Washington; DAVID SHINN, warden of the Federal
Correctional Institute in Victorville, California; JAMES
JANECKA, warden of the Adelanto Detention Facility;

                      Defendants-Respondents.

No. 2:18-cv-928 MJP

**DEFENDANTS' REPLY IN
SUPPORT OF MOTION
TO DISMISS THIRD
AMENDED COMPLAINT**

NOTE ON MOTION
CALENDAR: JUNE 21, 2019

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# TABLE OF CONTENTS

I.   The Named Plaintiffs Lack Standing to Bring The Bond Hearing Class Claims................... 1

II.   Count I Should Be Dismissed For Failure to State a Claim. .................................................. 3

III.   Count II Should Be Dismissed For Failure to State a Claim. .............................................. 6

IV.   Count III Should Be Dismissed for Failure to State a Claim................................................ 9

V.   Count IV Should Be Dismissed for Failure to State a Claim. ............................................... 9

VI.   The Remaining Claims Should Be Dismissed. .................................................................. 10

VII.   The Class Claims for Injunctive Relief are Barred by Section 1252(f)(1). ...................... 11

VIII.   Conclusion......................................................................................................................... 12

CERTIFICATE OF SERVICE ................................................................................................... 14

ii

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

In an effort to salvage an injunction entered on a different constitutional claim, Plaintiffs' Third Amended Complaint (TAC) introduces three new claims. These claims should be dismissed. First, named Plaintiffs lack standing to bring these new claims challenging *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2018), and the constitutionality of 8 U.S.C. § 1225(b)(1)(B)(ii) as they were not subject to detention pursuant to that provision and any risk that they may be subject to it is purely speculative. Their claims also fail to state claims for relief. Plaintiffs cannot make a cognizable claim that 8 U.S.C. § 1226(a) governs the Bond Hearing class's detention, and applying the proper statute, Plaintiffs cannot plead a constitutional entitlement to a bond hearing within seven days. No court has ever concluded that section 1225(b)(1)(B)(ii) is unconstitutional as applied to any individual after only seven days. Their other claims similarly fail to state claims as they lack legal support and are not amenable to classwide resolution. Their claims are also barred by 8 U.S.C. §§ 1252(a)(2)(A) and 1252(f)(1), as they are requests to review "procedures and policies adopted . . . to implement the provisions of section 1225(b)(1)," and improper requests for classwide injunctive relief.

## I.        The Named Plaintiffs Lack Standing to Bring The Bond Hearing Class Claims.

Perhaps in an effort to avoid their burden of showing actual and particularized harm, Plaintiffs incorrectly treat Defendants' arguments for dismissal of the claims on behalf of the Bond Hearing (BH) class (Counts I, II, III, IV, and VI) as based on mootness. Defendants did not argue that their claims were moot, but rather that the BH class claims must be dismissed because Plaintiffs lack standing to bring these claims. Without any injury—actual or imminent—Plaintiffs lack standing and their claims on behalf of the BH class must be dismissed. Named Plaintiffs and the BH class cannot allege any injury to bring claims that *Matter of M-S-* is unconstitutional (Count I), violates the INA (Count II), parole hearings before an IJ are required (Count III), *Matter of M-S-* violates notice and comment rulemaking (Count IV) and that *Matter of M-S-* violates the APA (Count VI), for the simple reason that each of them are—and will remain—completely unaffected by the Attorney General's decision in *Matter of M-S-*.

In an attempt to allege an injury, Plaintiffs allege that an IJ's bond order may be revoked

1

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

any time based on changed circumstances. *See* Opp. at 3. They cite to *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2151877 (N.D. Cal. May 10, 2018), in support of this argument. But this case actually bolsters Defendants' position, as there the BIA took action to reverse the alien's bond order, which paved the way for redetention. Plaintiffs have not alleged this has or will occur here. Furthermore, *Meza* demonstrates that the legal analysis of named Plaintiffs' claims would be distinct from the analysis of the class's claims: there, the court focused on the specific issues raised by retroactive application of the holding in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), and such issues would be unique to named Plaintiffs and not representative of the class. Plaintiffs also assert that aliens in other, unrelated, litigation have been redetained, and thus courts have declined to find other cases moot after an alien's release. This argument ignores the evidence in *this* case that Defendants do not intend to redetain Plaintiffs or other aliens with final bond orders after *Matter of M-S-* goes into effect. *See* Hott Decl., ECF 136-1, attesting that at this time, ICE does not intend to redetain anyone who received a final bond prior to the implementation of *Matter of M-S-*. In addressing this declaration, Plaintiffs assert that it does not meet the standard of voluntary cessation, an exception to the mootness doctrine. But again, Defendants are not arguing that this case is moot, and thus Plaintiffs' argument makes little sense—it still does not identify any injury (past or imminent) that relates to the harm alleged in the TAC deriving from *Matter of M-S-*, a decision and application of the immigration laws that has *never* been employed against the named Plaintiffs. Plaintiffs received bond hearings (albeit not as quickly as they would have preferred), they have been released, they were never subjected to *Matter of M-S-* or its interpretation of the INA, and ICE does not intend to redetain them. Thus, Named Plaintiffs have no injury sufficient for constitutional standing principles. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Plaintiffs also completely fail to address the argument that they are not adequate class representatives and cannot stand in for those who would be subject to *Matter of M-S-* in the future consistent with due process. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (adequacy requirement serves to protect the due process rights of absent class members who will be bound). Instead, Plaintiffs confusingly argue that even if their individual detention claims

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1  are moot, the certified class can pursue their claims. But this is no longer a circumstance where it

2  is appropriate to apply the inherently transitory principle, as this Court previously did. Named

3  Plaintiffs were *never* subject to what they are now challenging, so their claims are not transitory

4  as they never existed, there is no claim to be repeated, and therefore no claim that is "capable of

5  *repetition*, yet evading review." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1088 (9th Cir. 2011).

6        In the face of the evidence put forward by Defendants that they do not intend to redetain

7  individuals like Plaintiffs who have a final bond order that was rendered prior to the

8  implementation of *Matter of M-S-*, Plaintiffs have failed to put forth anything other than

9  unsupported speculation of potential future redetention. Their claims must therefore be dismissed.

10   **II.    Count I Should Be Dismissed For Failure to State a Claim.**

11        Plaintiffs never directly confront that in pursuing Count I, they are asking this Court to find

12  that the mandatory detention statute *Matter of M-S-* applies, 8 U.S.C. § 1225(b)(1)(B)(ii), is

13  unconstitutional. In arguing against dismissal of this Count, Plaintiffs focus on asserting that by

14  virtue of their illegal entry into the United States they have due process rights. Defendants' position

15  is that the BH class, who entered the United States unlawfully without inspection for a brief period

16  of time before apprehension, and have never been admitted, are assimilated to the status of arriving

17  aliens and as such, are entitled only to the process that Congress has provided. This position is

18  well established. *See, e.g.*, *Alvarez–Garcia v. Ashcroft*, 378 F.3d 1094, 1097–98 (9th Cir. 2004)

19  ("As an excludable alien, Alvarez-Garcia, though she currently stands on United States soil, is

20  classified as 'one who has never entered' the country.") Indeed, aliens who present for inspection

21  at ports of entry are on U.S. soil, so the distinction Plaintiffs place all their weight on is that they

22  violated U.S. law by crossing the border illegally (and are entitled to a due process interest in

23  release even where the law says otherwise), whereas aliens arriving at a port of entry have

24  complied with U.S. law (but are not entitled to a due process interest in release). Even taking

25  Plaintiffs' counterintuitive and erroneous argument at face value, if this Court finds that by virtue

26  of their brief, unlawful presence in the United States that they are entitled to some additional due

27  process rights, this Court must analyze *what* process they are entitled to—they are not

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1   automatically entitled to bond hearings within seven days if this Court finds that the statute

2   requiring their detention is unconstitutional.

3      In examining what process Plaintiffs are due, this Court must look to how the Supreme

4   Court has analyzed similar immigration cases. The starting point is *Zadvydas v. Davis*, in which

5   the Supreme Court held that the *indefinite* detention of resident aliens ordered removed was

6   unlawful. 533 U.S. 678 (2001). The Court limited its holding to this context, specifically noting

7   that "[a]liens who have not yet gained initial admission to this country"—in other words, plaintiffs

8   here—"would present a very different question" given that they would have less of an

9   entitlement—if any at all—to release into the country. *Id*. at 682. In *Zadvydas*, the Supreme Court

10  articulated a *six-month period* of presumptively reasonable detention for those who had developed

11  extensive ties to the United States. *Id*. at 701. Two years after *Zadvydas*, in *Demore v. Kim*, the

12  Supreme Court emphasized that in the immigration context, "Congress regularly makes rules that

13  would be unacceptable if applied to citizens." 538 U.S. 510, 521 (2003) (quoting *Matthews v. Diaz*,

14  426 U.S. 67, 79-80 (1976)). The Supreme Court accordingly found that a "brief" six-month

15  detention of an alien, who had extensive ties to the United States, during the pendency of removal

16  proceedings was fully justified and did not violate the Due Process Clause. *Id*. at 513. "Detention

17  during removal proceedings is a constitutionally permissible part of [the] process." *Id*. at 520.

18     Plaintiffs' attempts to distinguish *Demore* are meritless. Plaintiffs assert that with the

19  exception of *Demore*, "the Supreme Court has never upheld civil detention as constitutional

20  without an individualized hearing before a neutral decision maker, to ensure continued detention

21  is justified." Opp. at 8. This minimizes the critical reality that the Supreme Court *did* uphold

22  detention in *Demore* and that it is a binding holding of the Supreme Court. Moreover, this

23  contention is not true—the Supreme Court also upheld civil detention without an individualized

24  hearing in *Zadvydas*. *Zadvydas* did not impose a bond hearing requirement, instead, it held that

25  due process concerns would arise only *after six months had passed* such that aliens may have a

26  viable claim to release on a theory that their removal was not significantly likely. Such claims are

27  raised through habeas, not in a bond hearing. Plaintiffs again try to analogize this case—which

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

involves Congress's categorical judgment that aliens who are recent entrants and lack ties to the United States, like Plaintiffs, be detained for the pendency of their removal proceedings—with cases arising in other civil commitment contexts. Those cases are inconsistent with how the Supreme Court has treated immigration detention and are inapposite. *See, e.g.*, *Demore*, 538 U.S. 510, *Jennings*, 138 S. Ct. 830. Plaintiffs also argue that the Supreme Court placed great weight on the brief period of detention for most aliens in *Demore*, but fail to grapple with relevant Supreme Court and Ninth Circuit precedent that explains that constitutional concerns only become implicated after detention has become *prolonged*, which happens only after at least six months of detention have elapsed. Plaintiffs also argue that they "do not assert a due process right to *release* from detention on the theory that their detention is no longer in service of their removal. Instead, they argue that due process requires a basic *hearing* to ensure that their continuing imprisonment is justified." Opp. at 11 (emphasis in original). But this cannot be squared with *Demore* or *Zadvydas*, and is a distinction without a difference, as the desired end result of the hearing is release during the pendency of their removal proceeding. Plaintiffs are not entitled to additional process if they do not have an underlying interest in release—the very interest the additional process is designed to vindicate.

The Ninth Circuit has confirmed that section 1252(b)(1)(B)(ii) can be constitutionally applied to unadmitted aliens for a period of months, (*Rodriguez v. Robbins*, 804 F.3d 1060, 1069-70 (9th Cir. 2015) (*rev'd*, 138 S. Ct. at 836)), or even years (*Barrera v. Rison*, 44 F.3d 1441, 1448-50 (9th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 976 (1995). Even if the Court were to conclude that the statute were unconstitutional after the passage of time and the BH class is entitled to more process than the statute provides, by virtue of their brief, illegal presence in the United States, their entitlements would still fall short of the relief sought in the TAC. There is no entitlement to a bond hearing within seven days—consistent with *Demore* and *Zadvydas*, the Ninth Circuit, both before and in the wake of *Jennings* has held, at *most*, that constitutional concerns are implicated only after *six months* of detention. *See Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). *Robbins*, 804 F.3d at 1069-70. And despite Plaintiffs' desire for a rigid and inflexible time limit and elevated

5

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

procedural protections, the Supreme Court has "repeatedly stressed" that due process is a flexible concept that requires an individualized assessment of numerous factors including, first "the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Because a seven-day requirement, which is necessary to redress the alleged injury suffered by the BH class, is wholly unsupported by any legal precedent, this claim should be dismissed. *See* TAC, ¶. *Jennings* itself recognized this point "the Court of Appeals has already acknowledged that some members of the certified class" and here the Court was talking about aliens subject to detention under section 1225(b), "may not be entitled to bond hearings as a constitutional matter." *Jennings*, 138 S. Ct. at 852 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) and *Landon v. Plascensia*, 459 U.S. 21, 34 (1982)).

Plaintiffs assert that this Court should not assume that section 1225 comes to this Court with a presumption of constitutionality, and instead should exercise *de novo* habeas review to determine if detention is unconstitutional. But they do not acknowledge that courts evaluating detention in habeas are evaluating the constitutionality of an *individual's* detention, not the constitutionality of a statute. "It is well-established that acts of Congress enjoy a strong presumption of constitutionality." *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000). Because Plaintiffs cannot meet their heavy burden to show that section 1225(b)(1)(B)(ii) is unconstitutional, and the relief they request is completely unsupported and cannot be justified under the Due Process Clause, this claim must be dismissed.

### III.    Count II Should Be Dismissed For Failure to State a Claim.

Plaintiffs raise a number of arguments in support of their contention that the INA requires bond hearings. First, they argue that they have a right to a bond hearing under section 1226(a). In support of this claim, they assert that *Jennings* did not address claims brought "by the class of

6

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

asylum seekers at issues here." Opp. at 14. At the time *Jennings* was decided, aliens like the plaintiff class were receiving bond hearings pursuant to *Matter of X-K-,* 23 I. & N. Dec. 731 (BIA 2005). But as the Attorney General later explained, that case was "wrongly decided," and that based upon the statutory text, "all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." *Matter of M-S-,* 27 I. & N. Dec. at 518-19.

Plaintiffs also assert that reading section 1225(b)(1)(B)(ii), which governs Plaintiffs' detention, to require mandatory detention throughout their asylum proceedings creates tension with section 1225(b)(1)(B)(iii)(IV), which provides for mandatory detention for asylum seekers who are *not* found to have a credible fear of persecution or torture. But section 1225(a)(1) places both of these classes of aliens on equal footing as applicants for admission: "[a]n alien present in the United States who has not been admitted or who arrives in the United States (*whether or not a designated port of arrival*) . . . shall be deemed for purposes of this chapter an applicant for admission." (emphasis added). Indeed, section 1225(b)(2) works the same way—aliens who are not put in expedited removal at all also "shall be detained for a [removal] proceeding." Thus, there is no tension with section 1225(b)(1)(B)(iii)(IV), as it is not the statute that governs detention of the BH Class. Section 1225(b)(1)(B)(ii) and section 1225(b)(1)(B)(iii)(IV) are complementary; they provide for the same detention of applicants for admission who seek asylum and who are found to have a positive or a negative credible fear finding: mandatory detention pending the completion of removal proceedings. *See Jennings*, 138 S. Ct. at 845.

Plaintiffs also argue that the fact that DHS sometimes elects to place unadmitted asylum seekers directly into removal proceedings under section 1229a, rather than into expedited removal, creates an arbitrary and capricious result. But DHS has always had the discretion to make the determinations that lead to either expedited or section 1229a removal proceedings. *See Innovation Law Lab v. McAleenan*, 924 F.3d 503, 508 (9th Cir. 2019) ("Congress' creation of expedited removal did not impliedly preclude the use of § 1229a removal proceedings for those who could otherwise have been placed in the more streamlined expedited removal process."); *see also Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 523 (BIA 2011) ("DHS has discretion to put aliens in"

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

removal proceedings "even though they may also be" eligible for expedited removal). And even if an alien was placed into removal proceedings under section 1229a, they would still be subject to mandatory detention under section 1225(b)(2) or section 1225(b)(1)(B)(ii).

Plaintiffs also suggest that this Court should read the INA "to require bond hearings for class members under § 1226(a)" under the canon of constitutional avoidance and *Zadvydas*. Opp. at 15. But *Zadvydas* did not address detention under section 1225(b) and the Supreme Court has already held that section 1225(b) is not ambiguous, and therefore application of the canon of constitutional avoidance is inappropriate. *See Jennings*, 138 S. Ct. at 843 ("*Zadvydas* represents a notably generous application of the constitutional-avoidance canon."). The plain text of section 1225(b)(1)(B)(ii) provides that aliens found to have a "credible fear of persecution" "shall be detained for further consideration of the application for asylum." That unequivocal language provides for mandatory detention and does not encompass any implied right to a bond hearing. *See Matter of M-S-*, 27 I. & N. Dec. at 515-16 ("Section 235(b)(1)(B)(ii) [of the INA] provides that, if an alien in expedited proceedings establishes a credible fear, he 'shall be detained for further consideration of the application for asylum.'"); *Jennings*, 138 S. Ct. at 845 ("§§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings"); *see also Innovation Law Lab*, 924 F. 3d at 506. Lastly, Plaintiffs also cite to a twenty-year-old Memorandum to support their claims. Memorandum from Paul W. Virtue, U.S. Dep't of Justice, INS, to INS officials, Authority to Parole Applicants for Admission Who Are Not Also Arriving Aliens, Legal Op. No. 98-10, 1998 WL 1806685, at *2 (Aug. 21, 1998), but this memo pre-dates the Homeland Security Act of 2002 and the redistribution of the functions of the former INA. The BIA has recognized that "the Attorney General has no parole authority under section 212(d)(5)(A)." *See Matter of Castillo-Padilla*, 25 I. & N. Dec. 257, 261 (BIA 2010); *see also id*. at 263 (recognizing that the 1998 Virtue memo has been superseded in relevant part by a subsequent DHS Office of the General Counsel memo, Memorandum from Gus P. Coldebella to DHS officials (Sept. 28, 2007)).[1]

---

[1] This memorandum has been released through FOIA and is available at https://www.aila.org/infonet/dhs-ina-236-release-versus-ina-212d5-parole (last visited June 21, 2019).

8

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

**IV.     Count III Should Be Dismissed for Failure to State a Claim.**

In support of their claim that they are entitled to an individualized parole hearing before an IJ under the INA, Plaintiffs note that the statute is silent as to which procedures must be used and again argue that this Court should apply the canon of constitutional avoidance to read in a requirement that parole hearings be conducted before an IJ. While Plaintiffs are correct that *Jennings* did not interpret whether the parole process comports with due process, that is not Plaintiffs' claim. Instead, Plaintiffs' claim is that the *statute requires* a parole hearing before an IJ. This argument is undercut by the fact that *Jennings* made clear that the parole process in 8 U.S.C. § 1182(d)(5)—which does not provide for a hearing before an IJ—is the exclusive mechanism by which an alien could seek release from detention under section 1225(b); "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." 138 S. Ct. at 845. And although the statute is silent as to the specific procedures to be used in making parole decisions, 8 U.S.C. § 1182(d)(5)(A) confers *unfettered* discretion on the Secretary of the Department of Homeland Security to, on a "case-by-case basis" parole individual aliens "for urgent humanitarian reasons or significant public benefit." Nowhere does this statue—the exclusive mechanism for release under section 1225(b)—mention IJ hearings.

Plaintiffs also argue that this claim should not be dismissed because it is a "purely legal" challenge and therefore not precluded by 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes judicial review over discretionary decisions. Notably, Plaintiffs do not cite a single case in support of this argument and do not rebut Defendants' argument that section 1252(a)(2)(B)(ii) extends to the procedures the agency elects to employ in carrying out discretionary determinations. *See Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 524 (1978). Because there is absolutely no support for their demand for parole hearings before an IJ, Count III must be dismissed.

**V.     Count IV Should Be Dismissed for Failure to State a Claim.**

Plaintiffs do not appear to contest that *Mater of M-S-* was an adjudication, but argue that Defendants were required to engage in notice-and-comment rulemaking because existing regulations provide Plaintiffs with bond hearings, and regulations cannot be repealed via

9

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

adjudication. The problem with Plaintiffs' argument is that the regulations that Plaintiffs cite do not provide aliens detained pursuant to section 1225(b), such as themselves, a bond hearing. 8 C.F.R. § 1236.1(d) provides that the "immigration judge is authorized to exercise the authority *in section 236 of the Act* … and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter." (emphasis added). 8 C.F.R. § 1003.19(h)(2)(i) excludes specific classes of aliens from bond. Because aliens like plaintiffs—who entered without inspection—do not appear in the list of excluded classes, they conclude that they are eligible for bond. But this disregards that 8 C.F.R. §§ 1003.19 and 1236.1(d), far from describing the complete universe of aliens ineligible for bond, only apply to aliens detained pursuant to section 1226. It bears emphasizing that Plaintiffs' entire argument hinges on their absence from a list of aliens that are *precluded* from obtaining bond hearings, rather than any affirmative textual grant of a bond hearing. In any event, this regulation only applies to detention under 8 U.S.C. § 1226, not § 1225. The same is true of the history of the regulation, to the extent such history is even probative. The Attorney General also specifically considered and rejected this argument in deciding *Matter of M-S-*, 27 I. & N. at 518 ("Section 1003.19(h)(2)(i) thus does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond.") Thus, Plaintiffs' claims that Defendants were required to undergo notice-and-comment rulemaking to "repeal" these regulations is incorrect, as the regulations remain in place and applicable to aliens detained pursuant to section 1226. Accordingly, this claim must be dismissed.

## VI.     The Remaining Claims Should Be Dismissed.

Defendants reassert their arguments that the government has not waived sovereign immunity over Count V and that habeas jurisdiction is not available to challenge the timing of a credible fear interview—which is not related to the fact or duration of one's detention—in order to preserve them for review.

Plaintiffs concede that this Court has already determined that Count VI must be dismissed consistent with the Court's order on Defendants' first motion to dismiss.

Defendants reassert their argument that Counts V and VI, asserted by the Credible Fear

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    class, are barred by 8 U.S.C. § 1252(a)(2)(A)(iv) in order to preserve them for review.

2    **VII.    The Class Claims for Injunctive Relief are Barred by Section 1252(f)(1).**

3           Plaintiffs argue that section 1252(f)(1) does not preclude this Court from issuing

4    *declaratory* relief. But Defendants' argument is that claims for classwide *injunctive* relief are

5    precluded by section 1252(f)(1). Section 1252(f)(1) proscribes the "authority" of any court to

6    "enjoin or restrain the operation" of relevant provisions of the INA, including section 1225, "other

7    than with respect to the application of such provisions to an *individual* alien against whom

8    proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added).

9           Plaintiffs' arguments that classwide injunctive relief is not precluded on either their

10   constitutional or statutory claims are unavailing. Plaintiffs argue that class members here are in

11   removal proceedings, and that the reference to an "individual" in section 1252(f)(1) does not bar

12   classwide relief. But their assertions run headlong into Supreme Court precedent, which held that

13   the plain language of the statutory text "prohibits federal courts from granting classwide injunctive

14   relief against the operation of §§ 1221-123[2]." *Jennings*, 138 S. Ct. at 850; *see also Reno v. Am.-*

15   *Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("By its plain terms . . . that provision

16   is nothing more or less than a limit on injunctive relief. It prohibits federal courts from granting

17   classwide injunctive relief against the operation of §§ 1221-1231."). Plaintiffs' arguments about

18   the word individual in the statute are also meritless. They invoke *Califano v. Yamasaki*, 442 U.S.

19   682 (1979), a case involving an "entirely different statute" and the use of the word "individual" in

20   a completely different context. *Hamama v. Adduci*, 912 F.3d 869, 878 (6th Cir. 2018).

21          Plaintiffs cannot sidestep the clear application of section 1252(f)(1) by relying on this

22   Court's previous decision that found section 1252(f)(1) inapplicable because this Court found that

23   "Plaintiffs are not asking the Court to 'enjoin or restrain *the operation of the provisions*' of any

24   statute, but instead seek an injunction against actions and policies that *violate* those statutes and

25   associated constitutional provisions." ECF 91 at 19 (second emphasis added). The claims no longer

26   possess the attribute that this Court relied on to deem section 1252(f)(1) inapplicable. Instead, the

27   claims in the TAC effectively allege that section 1225(b)(1)(B)(ii) is unconstitutional as written

28

11

DEFENDANTS' REPLY IN SUPPORT OF                        Department of Justice, Civil Division
MOTION TO DISMISS                                      Office of Immigration Litigation
THIRD AMENDED COMPLAINT                                P.O. Box 868 Ben Franklin Station
                                                       Washington, D.C. 20044
(Case No. 2:18-cv-00928-MJP)                           (202) 616-4458

because it violates their due process rights, and further contend that the plain language of section 1225(b)(1)(B)(ii) should not be given legal effect because *Matter of M-S-* violates the rulemaking requirements of the APA. Neither of those claims have a statutory basis in the INA, and although Count IV is styled as an APA claim, that heading does not obscure the true relief sought in Count IV, namely an Order construing section 1225(b)(1)(B)(ii) in a manner contrary to the plain text of the statute by enjoining *Matter of M-S-*. As such, neither claim can be shielded from of section 1252(f)(1), something the Supreme Court recognized in *Jennings*. *See* 138 S. Ct. at 851 ("The Court of Appeals held that this provision did not affect its jurisdiction over respondents' *statutory* claims because those claims did not 'seek to enjoin the operation of the immigration detention statutes, but to enjoin conduct . . . not authorized by the statutes.' This reasoning does not seem to apply to an order granting relief on constitutional grounds." (emphasis in original) (internal citations omitted)). And Plaintiffs' demand for the inclusion of additional bond hearing procedures similarly "create[s] out of thin air a requirement for bond hearings that does not exist in the statute," which places those claims within the grasp of section 1252(f)(1). *Hamama*, 912 F.3d at 879-80.

Plaintiffs' arguments concerning the clear statement rule are also incorrect, as section 1252(f)(1) did not repeal or limit the Court's jurisdiction to grant an individual habeas petition, and only restricted the ability to enter classwide injunctive relief. "[T]he habeas court must have the power to order the conditional release of an *individual* unlawfully detained." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Limiting the availability of classwide injunctive relief does not suspend the writ of habeas corpus because the traditional writs of habeas corpus remain readily available and "individual alien[s]" remain free to bring habeas cases. 8 U.S.C. § 1252(f)(1). Furthermore, there is no common law tradition of class action habeas relief, meaning there can be no Suspension Clause problem where Congress does not permit that sort of relief in habeas cases. *See Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984).

**VIII.   Conclusion**

For the foregoing reasons, the Third Amended Complaint should be dismissed.

12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

| | |
|---|---|
| 1 | Dated: June 22, 2019 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director

SARAH S. WILSON
Assistant United States Attorney

ARCHITH RAMKUMAR
Trial Attorney

*/s/Lauren C. Bingham*
LAUREN C. BINGHAM
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4458
Lauren.C.Bingham@usdoj.gov

13

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically filed Notices of Electronic Filing.

*/s/ Lauren Bingham*

Trial Attorney

United States Department of Justice

14

DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458