UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND<br>CUSTOMS ENFORCEMENT, et al.,<br><br>Defendants. | CASE NO. C18-928 MJP<br><br>ORDER ON MOTIONS RE:<br>PRELIMINARY INJUNCTION |

The above-entitled Court, having received and reviewed:

1. Defendants' Motion to Vacate the Court's Preliminary Injunction Order (Dkt. No. 114), Plaintiffs' Response in Opposition (Dkt. No. 126), and Defendants' Reply in Support (Dkt. No. 128);

2. Plaintiffs' Motion for Modification of the Existing Preliminary Injunction (Dkt. No. 131), Defendants' Response in Opposition (Dkt. No. 139), and Plaintiffs' Reply in Support (Dkt. No. 140);

all attached declarations and exhibits; and relevant portions of the record, and having heard oral argument on the motions, rules as follows:

IT IS ORDERED that the injunction entered by this Court on April 5, 2019 is MODIFIED as follows:

**PART A**: The Court AFFIRMS its previously-entered injunctive relief requiring Defendant Executive Office for Immigration Review to:

1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit;
2. Place the burden of proof on Defendant Department of Homeland Security in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions;
3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and
4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

**PART B**: The Court MODIFIES the injunction to find that the statutory prohibition at Immigration and Nationality Act § 235(b)(1)(B)(ii) against releasing on bond persons found to have a credible fear of persecution if returned to their country and awaiting a determination of their asylum application violates the U.S. Constitution; the Bond Hearing Class is constitutionally entitled to a bond hearing (under the conditions enumerated above) pending resolution of their asylum applications.

IT IS FURTHER ORDERED that the injunction as modified will go into effect 14 days from the date of this order.

**Summary**

On March 16, 2019, this Court certified a Bond Hearing Class consisting of immigrants who have entered the United States without inspection, requested asylum, and who the Government has determined have a credible fear of persecution if they return home. The Court ruled, if the members of this class are given a bond hearing, it must comply with the Due Process Clause. An injunction ordering the Defendants to do so has already issued.

The first decision was based, not only on the Court's analysis of the constitutional due process owed to these class members, but also on 50 years of statutory and case law supporting the right of persons detained for non-criminal reasons to be released upon posting bond. Shortly after that injunction was issued, the Attorney General published a decision announcing that immigrants in removal proceedings awaiting the determination of their application for asylum must be detained for the duration of that process, subject to release only under a highly-limited "parole" system adjudicated solely by immigration officials. In the wake of that decision, the Government moved to vacate the previously-entered injunction.

It is the finding of this Court that it is unconstitutional to deny these class members a bond hearing while they await a final determination of their asylum request.

**Procedural Background**

On April 5, 2019, this Court entered an Order Granting Preliminary Injunction (Dkt. No. 110) requiring Defendant Executive Office for Immigration Review to:

1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit;

2. Place the burden of proof on Defendant Department of Homeland Security in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions;

3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and

4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

Compliance with the injunction was to be effected no later than May 5, 2019. Id. at 2.

On April 16, 2019, the Attorney General ("AG") issued a decision in Matter of M-S (27 I. & N. Dec. 509 (A.G. 2019)) overruling a 2005 Board of Immigration Appeals ("BIA") determination in Matter of X-K (23 I. & N. Dec. 731 (BIA 2005) which had been cited in the preliminary injunction order. On the basis of the AG's ruling, the parties (1) agreed to stay the enforcement of the preliminary injunction until May 31, 2019 (Dkt. No. 113) and (2) filed the cross-motions which are the subject of this order. Additionally, Plaintiffs filed a Third Amended Complaint ("TAC") incorporating challenges to the AG's decision in Matter of M-S (Dkt. No. 130), and Defendants moved to dismiss it. (Dkt. No. 136.)

In Matter of M-S, the AG determined that aliens who are originally placed in expedited removal proceedings and then transferred to full removal proceedings after establishing a credible fear do not become eligible for bond upon transfer and that Matter of X-K, in which the BIA had ruled that such aliens were entitled to bond hearings under § 1225(b) of the Immigration and Nationality Act ("INA"), "was wrongly decided." 27 I. & N. Dec. at 510. The AG found that aliens classified as "entering without inspection" ("EWI") were subject to mandatory detention without bond following a successful credible fear determination and could be released

only upon being paroled for "urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). Id. at 516.

## Discussion

District courts possess the discretionary authority to "modify or revoke an injunction as changed circumstances may indicate." Lapin v. Shulton, Inc., 333 F.2d 169, 170 (9th Cir. 1964). "[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance, have changed." Sys. Fed. No. 91 v. Wright, 364 U.S. 642, 647 (1961).

The Court is unquestionably facing "changed circumstances" as a result of the AG's decision in M-S. While much of the analysis underlying the issuance of the initial preliminary injunction in this matter concerned Plaintiffs' constitutional rights in the context of their situation, there is no question that analysis sprang from an understanding (as a result of the ruling in X-K) that the class members were entitled to a bond hearing under the INA.

This order will undertake a fresh analysis of Plaintiffs' claims and their request for modified injunctive relief in light of those changed circumstances, but first must examine a series of threshold issues which the Government has raised as bars to continued injunctive relief.

I. **Threshold issues**

   A. Standing and mootness

The Government argues that the claims of the bond hearing class were premised on the ruling in X-K (i.e., that they were eligible for a bond hearing that they were not receiving in a timely manner and with the appropriate amount of due process) and thus have been "mooted" by the M-S determination that the statute does not entitle them to a bond hearing. The claims of the bond hearing class survive the ruling in M-S: nowhere in the Second (and now, the Third)

Amended Complaint do Plaintiffs cite X-K as the basis for the relief they seek – their claims are premised on the fundamental unconstitutionality of the Government's claimed right to detain them indefinitely (*see* Dkt. No. 26 at ¶¶ 13, 151-52; Dkt. No. 130 at ¶¶ 8, 117-29) and allegations that the ruling in M-S and the policies and practices of Defendants violate the APA. (Dkt. No. 130, ¶¶ 142-146, 152-159.)

That the named Plaintiffs (Vasquez and Orantes) are not currently being detained is also cited as grounds for challenging their standing and their ability to serve as class representatives. This is not a sound argument for two reasons: First, the INA gives Defendants the right to revoke a bond order at any time on the basis of "changed circumstances." 8 U.S.C. § 1226(b). The Government submits a declaration from the Deputy Assistant Director of ICE's Office of Enforcement and Removal Operations (ERO) which states that "[a]t this time, ERO does not intend to re-detain aliens who, after having established credible fear, have an ICE custody release determination or an Immigration Court final bond determination pursuant to INA § 236 issued prior to July 15, 2019." (Dkt. No. 137, Decl. of Hott at ¶ 6.) The Court is not persuaded that the conditional "at this time" language divests Plaintiffs of standing – the Government's unwillingness to unconditionally assert that Plaintiffs will not be re-detained means that the specter of re-detention looms and these Plaintiffs and many members of their class face the real and imminent threat of bondless and indefinite detention absent the relief they seek.[1]

Second, as this Court has already ruled, the claims of the bond hearing class continue to be "inherently transitory" and thus the named Plaintiffs are permitted to represent the interests of class members whose claims may both come ripe and/or expire during the course of the

---

[1] The Court notes, along these lines, that as a result of the decision in M-S the respondent, who was initially ordered released on bond, was ordered "detained until his removal proceedings conclude." 27 I. & N. at 510.

ORDER ON MOTIONS RE: PRELIMINARY INJUNCTION - 6

litigation.  (*See* Dkt. No. 102 at 8, Dkt. No. 110 at 5); Sosna v. Iowa, 419 U.S. 393, 402 (1975).  Additionally, now that the class is certified to pursue its due process claims, that class "'acquire[s] a legal status separate from the interest asserted by [the class representative],' so that an Article III controversy now exists 'between a named defendant and a member of the [certified] class.'"  Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1090 (9th Cir. 2011)(*quoting* Sosna at 399; alterations in original).

### B.  8 U.S.C. § 1252(f)(1)

In an earlier order denying Defendants' first motion to dismiss this matter, this Court declined to be bound by 8 U.S.C. § 1252(f)(1), which states that "no court . . . shall have jurisdiction or authority to enjoin or restrain the operation of the provisions" of the INA "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."  The Court held that "Plaintiffs are not asking the Court to enjoin or restrain the operation of the provisions of any statute, but instead seek an injunction against actions and policies that violate those statutes."  (Dkt. No. 91 at 19.)  That holding was unquestionably grounded in the Matter of X-K, which held that Plaintiffs are entitled to a bond hearing under the INA.  With the AG's determination that X-K "was wrongly decided," the parties (and the Court) are required to address the impact of § 1252(f)(1).

The Government's position is straightforward: the effect of this provision is to ban classwide injunctive relief on any issue touching on the enforcement of the INA.  Since it is now "settled" (from the Government's perspective) that the INA excludes Plaintiffs from bond hearings pending final adjudication of their asylum application, it can be argued that an injunction which orders bond hearings for Plaintiffs as a class "enjoin[s] or restrain[s] the operation" of the statute "other than with respect to the application of such provisions to an

individual alien." There is support for this position in the Supreme Court's <u>Jennings v. Rodriguez</u> opinion: "Section 1252(f)(1) thus 'prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221-123[2].'" 130 S.Ct. at 851; *quoting* <u>Reno v. AAADC</u>, 525 U.S. 471, 481 (1999).

Plaintiffs respond by citing to <u>Califano v. Yamasaki</u>, 442 U.S. 682 (1979), where the Supreme Court found (in regard to a different statutory scheme) that language authorizing a suit by "[any] individual" did not foreclose the availability of classwide relief. The <u>Califano</u> Court ruled that "[w]here the district court has jurisdiction over the claim of each individual member of the class, [FRCP] 23 provides a procedure by which the court may exercise that jurisdiction over the various individual claims in a single proceeding;" i.e., a class action. <u>Id.</u> at 700.

Upon remand from the <u>Jennings</u> Court, the Ninth Circuit appears to be in agreement that <u>Califano</u> is applicable to a § 1252(f)(1) analysis.

> [W]e have jurisdiction under 8 U.S.C. § 1252(f)(1)… All of the individuals in the putative class are 'individuals against whom proceedings under such part have been initiated' and are pursuing habeas claims, albeit as a class, which nowhere appears affected by § 1252(f)(1).

<u>Rodriguez v. Marin</u>, 909 F.3d 252, 256-57 (9th Cir. 2018). The same is true here as regards the Bond Hearing Class. Additionally, "it is especially significant that § 1252(f)(1) is silent as to a prohibition on class actions when another subsection in the same provision expressly prohibits class actions." <u>Arroyo v. U.S. Dept. of Homeland Security</u>, No. 8:19-cv-00815-JGB-SHK at *10 (C.D. Cal. June 20, 2019)(citing 8 U.S.C. § 1252(e)(1)(B). "Congress's failure to prohibit class actions for plaintiff already in removal proceedings is meaningful and intentional." <u>Id.</u>

And there are further grounds upon which to base the Court's authority to grant injunctive relief to this class. Plaintiffs' TAC invokes the Court's habeas jurisdiction (Dkt. No. 130 at ¶ 8), and their briefing cites the Supreme Court's holding in <u>INS v. St. Cyr</u>, 533 U.S. 289,

310-14 (2001) that federal courts will not read a statute to restrict their power to grant habeas relief unless Congress specifically and explicitly revokes the authority granted under the federal habeas statute (28 U.S.C. § 2241) by name.  This approach is endorsed by the Ninth Circuit: in Rodriguez v. Marin, the Court similarly found that "Section 1252(f)(1) also does not bar the habeas class action because it lacks a clear statement repealing the court's habeas jurisdiction." 909 F.3d 252, 256 (9th Cir. 2018).

The Government argues that the St. Cyr "clear statement" rule is inapplicable where (1) individual habeas relief is still available and (2) there is no blanket ban on habeas *jurisdiction* (i.e., the Court still has its power to grant habeas relief, just not habeas *injunctive* relief).  But the Second and Third Circuits have held that the clear statement rule applies even when a statute does not bar all judicial review.  Liu v. INS, 293 F.3d 36, 37 (2nd Cir. 2002)(clear statement still required even where petitioner has other means – e.g., a petition for review – to raise the same issues); *cf.* Chmakov v. Blackman, 266 F.3d 210, 215 (3rd Cir. 2001).  As the Government has noted, there is Sixth Circuit precedent specifically on this point:

> [T]here is nothing in § 1252(f)(1) that suspends the writ of habeas corpus. It is true that habeas is barred as to *injunctive relief* for *class actions*, but there is nothing barring a class from seeking a traditional writ of habeas corpus (which is distinct from injunctive relief

Hamama v. Homan, 912 F.3d 869, 879 (6th Cir. 2018)(emphasis in original).  But this Court is not compelled to follow the dictates of the Sixth Circuit (and, per the remand in Rodriguez v. Marin, the Ninth Circuit still considers the issue of classwide injunctive relief to be an open question).  There is nothing in St. Cyr and nothing in applicable Ninth Circuit jurisprudence to indicate that, absent a specific restriction, this Court is not authorized to exercise the full panoply of its habeas powers, including its equitable powers to enjoin conduct found unconstitutional.

On that basis, § 1252(f)(1) does not operate to bar the classwide injunctive relief sought by Plaintiffs.

### C. § 1252(e)(3)

The Government also challenges the Court's jurisdiction. 8 U.S.C. § 1252(e)(3) ("Challenges on Validity of the System") provides that

> [j]udicial review of determinations under section 1225(b) . . . and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of (i) whether such section, or any regulation issued to implement such section, is constitutional.

The Government contends that Plaintiffs' TAC represents the kind of "systemic challenge to the constitutionality of 8 U.S.C. § 1225" which, pursuant to the mandate above, may only properly be brought in the District of Columbia. (Dkt. No. 114, Defendants' Motion to Vacate at 17.)

This is not a persuasive position. Section 1252(e)(3) is included as part of a statute that is addressed to "Judicial review of orders under section 235(b)(1)" (which in turn is concerned with "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled"). As such, § 1252(e)(3) is addressed to challenges to the removal *process* itself, not to detentions attendant upon that process. The Court is guided by the reasoning of the Supreme Court in Jennings, which noted (in finding jurisdiction to consider challenges to the detention process under §1225):

> For present purposes, it is enough to note that respondents are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined.

1  130 S.Ct. at 841.  It is these types of claims to which § 1252(e)(3) is addressed; Plaintiffs'
2  challenge to the constitutionality of their detention is not subject to the strictures of that
3  provision.

4  The Court's decision in this regard is further buttressed by the complete absence of any
5  mention of § 1252(e)(3) as a bar to jurisdiction in either Jennings or Rodriguez v. Marin.  In a
6  case involving plaintiffs challenging their detention under § 1225(b), neither the Government,
7  the Supreme Court nor the Ninth Circuit saw fit to raise § 1252(e)(3) as an impediment to
8  consideration of the merits of the claims.  This Court will follow suit and move on to a
9  consideration of the merits of Plaintiffs' request to modify the present injunction in this matter.

**II. The Preliminary Injunction**

Neither side disputes that the injunction previously entered in this matter cannot remain in effect in its current form.  The Court retains an inherent authority to modify an existing injunction on the basis of changed circumstance (including a change in the law).  Sys. Fed. No. 91 v. Wright, 364 U.S. 642, 647 (1961).  Defendants argue that the modification requested here necessitates a finding that this is a "mandatory" injunction – one which "orders a responsible party to take action" (Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009)) – and thus is subject to a higher standard of proof.  The Court disagrees.  Even in its modified form, this remains a "prohibitory" injunction, one intended to preserve the status quo (which, at this point, is represented both by the original preliminary injunction and by the 50 years preceding this litigation during which EWI aliens have been considered entitled to bond hearings to test the necessity of their detention) and seeking only to "prevent[] future constitutional violations."  Hernandez v. Sessions, 872 F.3d 976, 998 (9th Cir. 2017).

The Court analyzes the request for modification using traditional elements that must be established prior to the issuance of injunctive relief:

1. Likelihood of success on the merits
2. Irreparable harm in the absence of the injunction
3. A balance of equities which favors the moving party
4. The existence of a public interest which favors the injunction

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

*1. Likelihood of success on the merits*

Backed by the AG's findings that § 1225(b) mandates detention without bond for these Plaintiffs, the Government cites to the jurisprudential maxim that "acts of Congress enjoy a strong presumption of constitutionality." Schwenk v. Hartford, 204 F.3d 1187, 1204 (9th Cir. 2000). Giving that maxim its due does not abrogate the Court's authority under the habeas statute to determine if these Plaintiffs are "in custody in violation of the Constitution." 28 U.S.C. § 2241(c)(3).

The Court previously utilized the Mathews balancing test to determine Plaintiffs' likelihood of success on the merits and will do so again. The test examines and weighs:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

1            a.    Private interest

2        The Supreme Court has definitively established the immigrant detainees'

3 constitutionally-protected interest in freedom from unnecessary incarceration. <u>Zadvydas v.</u>

4 <u>Davis</u>, 533 U.S. 678, 690 (2001). The Ninth Circuit has recognized that, in the area of

5 non-criminal detention of immigrants, "the private interest at issue here is 'fundamental':

6 freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"

7 <u>Hernandez v. Sessions</u>, 872 F.3d 976, 993 (9th Cir. 2017) (quoting <u>Foucha v. Lousiana</u>, 504 U.S.

8 71, 80 (1992)). The Ninth Circuit described the fundamental nature of that interest as "beyond

9 dispute." <u>Id.</u>

10        The Government attempts to argue that Plaintiffs are essentially "excludable aliens,"

11 entitled only to the rights Congress sees fit to grant them. <u>Shaughnessy v. United States ex rel.</u>

12 <u>Mezei</u>, 345 U.S. 206, 212 (1982). The Court has already found that these Plaintiffs are not

13 "excludable" aliens with no inherent due process rights; nothing about the current posture of this

14 case has altered the validity of that analysis. (*See* Dkt. No. 110, Order Granting Preliminary

15 Injunction ("PI Order") at 6.) Plaintiffs are "non-arriving aliens" who, having been apprehended

16 within the territorial boundaries of this county, are entitled to due process protections. <u>United</u>

17 <u>States v. Raya-Vaca</u>, 771 F.3d 1995, 1202 (9th Cir. 2014). Among those protections is a

18 longstanding prohibition against indefinite civil detention with no opportunity to test its

19 necessity. The Ninth Circuit has expressed "grave doubts that any statute that allows for

20 arbitrary prolonged detention without any process is constitutional." <u>Rodriguez v. Marin</u>, 909

21 F.3d 252, 256. (9th Cir. 2018).

22        The Government points to cases like <u>Zadvydas</u> and <u>Demore v. Hyung Joon Kim</u> (538

23 U.S. 510 (2003)) – which upheld the reasonableness of six-month detention periods – to argue

24

that Plaintiffs are not likely to succeed on their request for a seven-day timeline on bond hearings.  But the length of time until hearing is not the issue currently before the Court[2] as it considers modification of the injunction already in place – the issue in this motion is whether or not it is constitutional to have no bond hearing <u>at all</u>.

Further, the Government's cases are distinguishable from the instant matter to the extent that longer periods of detention were found appropriate.  The aliens in <u>Zadvydas</u> were already adjudicated removable and simply awaiting deportation, which is not the case with Plaintiffs.  <u>Demore</u> concerned a detention policy narrowly tailored to a subset of noncitizens who had committed one of a specified list of crimes which made them risks upon release; Plaintiffs here are subject to indefinite detention without regard for their criminal history or the fact that they have been adjudged credibly fearful of returning to their homelands.  The <u>Demore</u> Court relied on a massive record of research and statistics demonstrating that the targeted subset of aliens were categorically risks of flight and dangers to the community.  538 U.S. at 518-21.  There is no similar evidence in the instant case.

The Court finds that Plaintiffs have established a constitutionally-protected interest in their liberty, a right to due process which includes a hearing before a neutral decisionmaker to assess the necessity of their detention, and a likelihood of success on the merits of that issue.

Plaintiffs have also asserted a cause of action under the Administrative Procedures Act ("APA"), alleging that the AG's decision in <u>Matter of M-S</u> represents a revision to an existing regulation in violation of the "notice and comment" requirement of the APA.  5 U.S.C. § 553(b)-(d).  Plaintiffs' legal theory is that the AG's finding that immigrants detained awaiting an asylum determination are not entitled to bond hearings under § 1225(b) represents

---

[2] To the extent it is, the Court has already ruled.  *See* PI Order at 13-14.

"rulemaking;" i.e., a change to an existing rule or regulation.  The APA requires, prior to amending or repealing an existing rule, notice of the proposed change in the Federal Register with a 30-day period prior to implementation of the revision or withdrawal and an opportunity for comment by interested persons.  Id.  The Court does not find a likelihood of success on the merits of Plaintiffs' APA claim as it regards this issue.

The rules which Plaintiffs contend are being repealed are 8 C.F.R. §§ 1236.1(d) and 1003.19(h)(2)(i). § 1236.1(d) ("Appeals from custody decisions") state:

> (1) Application to immigration judge. After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is *authorized to exercise the authority in section 236 of the Act*… to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

(Emphasis supplied.)  § 1003.19 is an adjunct regulation to § 1236.1, covering "[c]ustody and bond determinations made by the service pursuant to 8 C.F.R. part 1236."

These regulations concern the authority of immigration officials and judges under "section 236 of the Act," which is also known as § 1226 of the INA.  Plaintiffs' asylum applications are being processed (and they are being detained) pursuant to section 235 (or § 1225) of the Act, and the regulation which they allege is being revised or repealed in violation of the APA is inapplicable to them.  Under these circumstances, the Court cannot find that they have a likelihood of succeeding on the merits of that particular claim.

      b.  Risk of deprivation/value of procedural safeguards

Quoting from the Court's previous findings:

> The Hernandez court, conducting a similar Mathews analysis in the context of immigrant detention, described the [risk of deprivation of a bond hearing] as follows: "[T]here is a significant risk that the individual will be needlessly deprived of the fundamental right to liberty."  872 F.3d at 993.

(Dkt. No. 110, PI Order at 12.)  That risk remains as valid today as it was then.

The "value of the procedural safeguard" of a bond hearing is self-evident.  To begin with, immigration detention can be upheld only where "a special justification . . . outweighs the 'individuals' constitutionally protected interest in avoiding physical restraint.'"  Zadvydas, 553 U.S. at 690 (*quoting* Kansas v. Hendricks, 521 U.S. 346, 356 (1997)); *see also* United States v. Salerno, 481 U.S. 739 747 (1987).  The purposes of immigration detention are simple and straightforward: to facilitate removal (if removal is deemed justified), and to prevent flight and harm to the community.  Id. at 690-91; Hernandez, 872 F.3d at 990.  Detention that does not serve those legitimate ends violates due process; bond hearings are the most efficacious mean of insuring those purposes are being served.

        c.   The Government's interest

To demonstrate their interest, Defendants cite their commitment to "the efficient administration of the immigration laws at the border."  (Dkt. No. 139, Defendants' Response at 24.)  The Court has already indicated its disinclination to "exalt expense over fundamental rights to liberty" (PI Order at 15), quoting the Ninth Circuit in Hernandez:

> [T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured . . .

872 F.3d at 990.

ORDER ON MOTIONS RE: PRELIMINARY INJUNCTION - 16

The Court finds a private interest held by this class that is being affected by governmental action, a substantial risk of its erroneous deprivation under the AG's interpretation of the INA, and probable value in according Plaintiffs their right to a bond hearing, none of which are outweighed by the Government's interest in proceeding in accordance with the AG's dictates.  While the same cannot be said for Plaintiffs' APA claim, the Court finds that the class has demonstrated a likelihood of success on their constitutional challenge to the complete elimination of bond hearings for its members.

2. *Irreparable harm*

As the Court has previously found, "any deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez, id. at 995 (citation omitted).  All the harms attendant upon their prolonged detention cited in the original ruling on Plaintiffs' request for injunctive relief remain applicable here – substandard physical conditions, low standards of medical care, lack of access to attorneys and evidence as Plaintiffs prepare their cases, separation from their families, and re-traumatization of a population already found to have legitimate circumstances of victimization.

> Finally, there is the incalculable harm to those class members who, facing an uncertain length of time in custody and an arduous and obstacle-strewn road to establishing . . . []their right to asylum[], simply abandon their claim and accept deportation back to countries where, as it has already been established to the Government's satisfaction, they face persecution, torture, and possibly death.

PI Order at 17.

The Government's arguments to the contrary lack substance.  Defendants cite to the "speculative" nature of any possible harm cited by the named Plaintiffs – even if that were true (see the Court's findings *supra* regarding the Government's "at this time…" declaration),

1 Plaintiffs Orantes and Vasquez represent a class of persons who are currently in custody and for
2 whom detention without bond is not a theoretical concept. Defendants again cite to the bond
3 hearing class's access to individual habeas petitions to challenge their detention – the Court has
4 already commented on the "grim irony" of the members of this class being forced to endure
5 further delays while they contest the constitutionality of their detention.
6 The Court finds that Plaintiffs have succeeded in demonstrating "irreparable harm" in the
7 absence of injunctive relief.
8     3. *Equities/public interest*
9 When the Government is a party to the case, the public interest and balance of equities
10 factors "merge." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014). The
11 equities favoring Plaintiffs continue to be: The deprivation of their constitutional rights, the
12 physical/emotional/psychological damage engendered by their indefinite detention, the
13 separation from their families, and the negative impact on their ability to properly prepare their
14 cases.
15 On its side, the Government cites "the efficient administration of the immigration laws,"
16 which has been addressed *supra*. The words of the Ninth Circuit in Hernandez continue to ring
17 true:

> "Faced with such a conflict between financial concerns and preventable
> human suffering, we have little difficulty concluding that the balance of
> hardships tips decidedly in plaintiffs' favor."

872 F.3d at 996 (quoting Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Defendants also caution the Court against creating a "Jennings subset" – what they
characterize as an "exception" to the Jennings holding that detention is statutorily required under
§ 1225. But Jennings made no finding regarding the constitutionality of § 1225 and the case

does not stand for the proposition that indefinite mandatory detention while awaiting determination of an asylum application is constitutionally permissible. The Court sees nothing in the Supreme Court's ruling in Jennings that favors the Government's position in this litigation.

The Ninth Circuit has previously found that "it is always in the public interest to prevent the violation of a party's constitutional rights." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012). The Court finds that the balance of equities and the public interest favor granting injunctive relief to Plaintiffs.

## Conclusion

The Plaintiffs of the Bond Hearing Class have succeeded in establishing all the requisite elements for granting their request for modified injunctive relief: a change in circumstances, a continuing likelihood of success on the merits on at least one of their claims, irreparable harm if their relief is not granted, a balance of equities in their favor, and a benefit to the public interest if granted the relief they seek. Accordingly, the Court GRANTS the requested relief.

Anticipating that an appeal will swiftly follow the publication of this order, the Court divides the modified injunction into two parts to facilitate appellate review:

**PART A**: Affirming its previously-entered injunctive relief requiring Defendant Executive Office for Immigration Review to:

1. Conduct bond hearings within seven days of a bond hearing request by a class member, and release any class member whose detention time exceeds that limit;
2. Place the burden of proof on Defendant Department of Homeland Security in those bond hearings to demonstrate why the class member should not be released on bond, parole, or other conditions;

3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and

4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing.

**PART B**: Modifying the injunction to find that the statutory prohibition at Immigration and Nationality Act § 235(b)(1)(B)(ii) against releasing on bond persons found to have a credible fear and awaiting a determination of their asylum application violates the U.S. Constitution; the Bond Hearing Class is constitutionally entitled to a bond hearing before a neutral decisionmaker (under the conditions enumerated above) pending resolution of their asylum applications.

The preliminary injunction, as modified, will enter into effect 14 days from the date of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated: July 2, 2019.

Marsha J. Pechman
United States Senior District Judge