1

2

3

4

5

6

The Honorable Marsha J. Pechman

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

YOLANY PADILLA; IBIS GUZMAN; BLANCA
ORANTES; and BALTAZAR VASQUEZ;

11

Plaintiffs-Petitioners,

12

v.

13

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
("ICE"); U.S. DEPARTMENT OF HOMELAND

14

SECURITY ("DHS"); U.S. CUSTOMS AND BORDER
PROTECTION ("CBP"); U.S. CITIZENSHIP AND

15

IMMIGRATION SERVICES ("USCIS"); EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW ("EOIR"); TAE

16

D. JOHNSON, Acting Director of ICE; ALEJANDRO
MAYORKAS, Secretary of DHS; TROY A. MILLER,

17

Acting Commissioner of CBP; UR JADDOU, Director of
USCIS; ELIZABETH GODFREY, Acting Director of

18

Seattle Field Office, ICE; MERRICK GARLAND, United
States Attorney General; BRUCE SCOTT, warden of the

19

Northwest Detention Center in Tacoma, Washington;
JAMES JANECKA, warden of the Adelanto Detention

20

Facility;

21

Defendants-Respondents.

22

No. 2:18-cv-928 MJP

**FOURTH AMENDED
COMPLAINT: CLASS
ACTION FOR
DECLARATORY RELIEF
AND WRIT OF HABEAS
CORPUS**

23

24

25

26

FOURTH AM. COMPL.
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

## I.   **INTRODUCTION**

2      1.      Plaintiffs filed this lawsuit on behalf of themselves and other detained individuals

3  seeking protection from persecution and torture, challenging the United States' government's

4  punitive policies and practices seeking to unlawfully deter and obstruct them from applying for

5  protection.

6      2.      This lawsuit initially included challenges to the legality of the government's zero-

7  tolerance practice of forcibly ripping children away from parents seeking asylum, withholding

8  and protection under the Convention Against Torture ("CAT"). Plaintiffs did not pursue those

9  claims after a federal court in the Southern District of California issued a nationwide preliminary

10  injunction order against forcibly separating families. *Ms. L v. Immigr. & Customs Enf't*, 310 F.

11  Supp. 3d 1133 (S.D. Cal. 2018); *see also* Dkt. 26.

12      3.      In their Second Amended Complaint, Plaintiffs reaffirmed that they sought relief

13  on behalf of themselves and members of two proposed classes: (1) the Credible Fear Interview

14  Class, challenging delayed credible fear determinations, and (2) the Bond Hearing Class,

15  challenging delayed bond hearings that do not comport with constitutional requirements. Dkt. 26.

16      4.      On March 6, 2019, this Court granted Plaintiffs' Motion for Class Certification

17  and certified both the Credible Fear Interview Class and the Bond Hearing Class. Dkt. 102 at 2.

18  On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction, ordering that

19  Defendant Executive Office for Immigration Review conduct bond hearings within seven days of

20  request by a Bond Hearing Class members, place the burden of proof at those hearings on

21  Defendant Department of Homeland Security, record the hearings, produce a recording or

22  verbatim transcript upon appeal, and produce a written decision with particularized

23  determinations of individualized findings at the conclusion of each bond hearing. Dkt. 110 at 19.

24      5.      Thereafter, on April 16, 2019, then-Defendant Attorney General Barr issued

25  *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2018). In this decision, former Defendant Barr

26  reversed and vacated *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), holding that the

FOURTH AM. COMPL. - 1
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    Immigration and Nationality Act ("INA") does not permit bond hearings for individuals who

2    enter the United States without inspection, establish a credible fear for persecution or torture, and

3    are then referred for removal proceedings before an immigration judge.

4         6.    Pursuant to the new decision, Defendants adopted a policy that not only denies

5    Plaintiffs and class members the procedural protections they seek, but prevents them from

6    obtaining bond hearings *at all*. Plaintiffs filed a Third Amended Complaint to squarely address

7    this new and even more extreme policy.

8         7.    Following the Third Amended Complaint, this Court issued a new preliminary

9    injunction, which it divided into two parts. Dkt. 149. Part A reaffirmed the prior injunction

10   providing certain procedural protections for bond hearings, while Part B enjoined Defendants'

11   new *Matter of M-S-* policy depriving all Bond Hearing class members of bond hearings. *Id.* at

12   19–20.

13        8.    On appeal, the Ninth Circuit affirmed Part B of the injunction, but vacated and

14   remanded for further consideration of the protections ordered in Part A of the injunction. *Padilla*

15   *v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1152 (9th Cir. 2020). Defendants filed a petition for

16   writ of certiorari challenging the Ninth Circuit's decision. Petition for Writ of Certiorari, *Immigr.*

17   *& Customs Enf't v. Padilla*, 141 S. Ct. 1041 (2021) (No. 20-234). After the Ninth Circuit's

18   decision, two new Supreme Court decisions—*Department of Homeland Security v.*

19   *Thuraissigiam*, 140 S. Ct. 1959 (2020) and *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057

20   (2022)—addressed issues relevant to this case. The first case, *Thuraissigiam*, addressed whether

21   a noncitizen who had entered the country without inspection and sought asylum could raise a due

22   process challenge to his expedited removal proceeding through a habeas petition. The second

23   case, *Aleman Gonzalez*, considered the impact of 8 U.S.C. § 1252(f)(1) on injunctive relief that

24   challenges the government's operation of certain parts of the INA, including the detention

25   authorities at issue in this case.

26

FOURTH AM. COMPL. - 2
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

9.      Following the *Thuraissigiam* decision, the Supreme Court granted certiorari, vacated the Ninth Circuit's decision, and remanded this case for further consideration. 141 S. Ct. 1041 (2021). While the case was on remand to the Ninth Circuit, the Supreme Court issued its decision in *Aleman Gonzalez*. The Ninth Circuit subsequently remanded the case to this Court with instructions to vacate the preliminary injunction and for further consideration in light of *Aleman Gonzalez* and *Thuraissigiam*. Dkt. 182.

10.     As a result of these developments, class members continue to face lengthy detention without independent review or timely procedures to guarantee that their deprivation of liberty serves a valid purpose, like preventing flight risk. To the contrary, Defendants exacerbate the harm those fleeing persecution have already suffered by needlessly depriving them of their liberty without adequate review.

11.     Plaintiffs seek this Court's intervention to ensure both that Defendants do not interfere with their right to apply for protection by delaying Plaintiffs' credible fear interviews and by subjecting them to lengthy detention without prompt bond hearings that comport with the Due Process Clause.

## II.      JURISDICTION

12.     This case arises under the Fifth Amendment of the United States Constitution and the Administrative Procedure Act ("APA"). This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Article I, § 9, clause 2 of the United States Constitution ("Suspension Clause"). Defendants have waived sovereign immunity pursuant to 5 U.S.C. § 702.

13.     Plaintiffs Yolany Padilla, Ibis Guzman, and Blanca Orantes were in custody for purposes of habeas jurisdiction when this action was filed on June 25, 2018. Moreover, Plaintiffs remain in constructive custody as they are in ongoing removal proceedings and subject to re-detention.

FOURTH AM. COMPL. - 3
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1    14.    Plaintiffs Guzman, Orantes, and Vasquez were in custody for purposes of habeas

2    jurisdiction when the First Amended Complaint was electronically submitted on July 15, 2018.

3                                    III.    **VENUE**

4    15.    Venue lies in this District under 28 U.S.C. § 1391 because a substantial portion of

5    the relevant facts occurred within this District. Those facts include Defendants' detention of

6    Plaintiffs Padilla, Guzman, and Orantes in this District; Defendants' failure in this District to

7    promptly conduct credible fear interviews and determinations for Plaintiffs and class members'

8    claims for protection in the United States; and Defendants' failure in this District to promptly

9    conduct bond hearings that comport with due process and the Administrative Procedure Act.

10                                   IV.    **PARTIES**

11    16.    Plaintiff Yolany Padilla is citizen of Honduras seeking asylum, withholding, and

12    protection under CAT for herself and her eleven-year-old son (J.A.) in the United States.

13    17.    Plaintiff Ibis Guzman is a citizen of Honduras seeking asylum, withholding, and

14    protection under CAT for herself and her ten-year-old son (R.G.) in the United States.

15    18.    Plaintiff Blanca Orantes is a citizen of El Salvador seeking asylum, withholding,

16    and protection under CAT for herself and her thirteen-year-old son (A.M.) in the United States.

17    19.    Plaintiff Baltazar Vasquez is citizen of El Salvador seeking asylum, withholding,

18    and protection under CAT in the United States.

19    20.    Defendant U.S. Department of Homeland Security ("DHS") is the federal

20    government agency responsible for enforcing U.S. immigration law. Its component agencies

21    include U.S. Immigration and Customs Enforcement ("ICE"); U.S. Customs and Border

22    Protection ("CBP"); and U.S. Citizenship and Immigration Services ("USCIS").

23    21.    Defendant ICE carries out removal orders and oversees immigration detention.

24    ICE's responsibilities include determining whether individuals seeking protection will be

25    released and referring cases for a credible fear interview and subsequent proceedings before the

26    immigration court. ICE's local field office in Tukwila, Washington, is responsible for

FOURTH AM. COMPL. - 4
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

determining whether individuals detained in Washington will be released, and when their cases will be submitted for credible fear interviews and subsequent proceedings before the immigration court.

22.     Defendant CBP conducts the initial processing and detention of individuals seeking protection at or near the U.S. border. CBP's responsibilities include determining whether individuals seeking protection will be released and when their cases will be submitted for a credible fear interview.

23.     Defendant USCIS, through its asylum officers, interviews and screens individuals seeking protection to determine whether to refer their protection claim to the immigration court to adjudicate any application for asylum, withholding of removal, or protection under CAT.

24.     Defendant Executive Office for Immigration Review ("EOIR") is a federal government agency within the Department of Justice that includes the immigration courts and the Board of Immigration Appeals ("BIA"). It is responsible for conducting removal proceedings, including adjudicating applications for asylum, withholding, and protection under CAT, and for conducting individual bond hearings for persons in immigration custody.

25.     Defendant Tae D. Johnson is sued in his official capacity as the Acting Director of ICE, and is a legal custodian of the named plaintiffs and class members.

26.     Defendant Elizabeth Godfrey is sued in her official capacity as the ICE Seattle Field Office Director, and is, or was, a legal custodian of the named plaintiffs.

27.     Defendant Alejandro Mayorkas is sued in his official capacity as the Secretary of DHS. In this capacity, he directs DHS, ICE, CBP, and USCIS. As a result, Defendant Mayorkas is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103 and is, or was, a legal custodian of the named plaintiffs and class members.

28.     Defendant Troy A. Miller is sued in his official capacity as the Acting Commissioner of CBP.

29.     Defendant Ur Jaddou is sued in her official capacity as the Director of USCIS.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

30.     Defendant Merrick Garland is sued in his official capacity as the United States Attorney General. In this capacity, he directs agencies within the United States Department of Justice, including EOIR. Defendant Garland is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103 and oversees Defendant EOIR.

31.     Defendant Bruce Scott is sued in his official capacity as the warden of the Northwest Detention Center in Tacoma, Washington.

32.     Defendant James Janecka is sued in his official capacity as the warden of the Adelanto Detention Facility in Adelanto, California.

## V.     FACTS

### Legal Background

33.     In 1996, Congress created an expedited removal system and "credible fear" process. 8 U.S.C. § 1225. As enacted by Congress, the expedited removal system involves a streamlined removal process for individuals apprehended at or near the border. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (permitting certain persons who are seeking admission at the border of the United States to be expeditiously removed without a full hearing); 8 U.S.C. § 1225(b)(1)(A)(iii) (authorizing the Attorney General to apply expedited removal to certain inadmissible noncitizens located within the United States); 69 Fed. Reg. 48,877 (Aug. 11, 2004) (providing that the Attorney General will apply expedited removal to persons within the United States who are apprehended within 100 miles of the border and who are unable to demonstrate that they have been continuously physically present in the United States for the preceding 14-day period).

34.     Critically, however, Congress included safeguards in the statute to ensure that those seeking protection from persecution or torture are not returned to their countries of origin. Recognizing the high stakes involved in short-circuiting the formal removal process and the constitutional constraints under which it operates, Congress created specific procedures with detailed requirements for handling claims for protection.

FOURTH AM. COMPL. - 6
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

35.     The expedited removal process begins with an inspection by an immigration officer, who determines the individual's admissibility to the United States. If the individual indicates either an intention to apply for asylum or any fear of return to their country of origin, the officer must refer the individual for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii), (B); 8 C.F.R. § 235.3(b)(4).

36.     If an asylum officer determines that an applicant satisfies the credible fear standard—meaning there is a "significant possibility" she is eligible for asylum, 8 U.S.C. § 1225(b)(1)(B)(v)—the applicant is taken out of the expedited removal system altogether and placed into standard removal proceedings under 8 U.S.C. § 1229a.

37.     During § 1229a removal proceedings, the applicant has the opportunity to develop a full record before an immigration judge ("IJ"), apply for asylum, withholding of removal, protection under CAT, and any other relief that may be available, and appeal an adverse decision to the BIA and court of appeals. 8 C.F.R. §§ 208.30(f), 1003.1(b)(9), 1208.30; *see also* 8 U.S.C. § 1225(b)(1)(B)(ii).

38.     In some cases, pursuant to new federal regulations, an individual is not immediately referred to removal proceedings. Instead, an asylum officer makes the initial determination on whether to grant asylum. *See* 8 C.F.R. §§ 208.2(a)(1)(ii), 208.9, 208.14(b). If the individual is not granted asylum, the noncitizen is referred to removal proceedings where they may renew their application for asylum. *Id.* §§ 208.14(c)(1), 1208.14(c)(1), 1240.17.

39.     Until the asylum officer makes the credible fear determination, an applicant in expedited removal proceedings is subject to mandatory detention. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); 8 C.F.R. § 235.3(b)(4)(ii).

40.     Defendants have a policy or practice of delaying the provision of credible fear interviews to asylum seekers who express a fear of return, and thus unnecessarily prolonging their mandatory detention.

FOURTH AM. COMPL. - 7
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

41.     Until 2019, BIA case law recognized that noncitizens who were apprehended after entering without inspection and placed in removal proceedings after passing their credible fear interviews are entitled to bond hearings. *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), *rev'd and vacated by Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019).

42.     Prior to *Matter of M-S-*, Defendants' policy and practice was to deny timely bond hearings and to require the noncitizens, rather than the government, to bear the burden of proving at these bond hearings that continued detention is not warranted. Those bond hearings also lacked procedural safeguards such as a verbatim transcript or audio recording, and a contemporaneous written decision explaining the IJ's findings.

43.     Traditionally, those asylum seekers in § 1229a removal proceedings who are not deemed "arriving"—that is, those who were apprehended near the border *after* entering without inspection, as opposed to asylum seekers who are detained at a port of entry—became entitled to an individualized bond hearing before an IJ to assess their eligibility for release from incarceration once they were found to have a credible fear. *See* 8 U.S.C. §§ 1225(b)(1)(A)(iii), 1225(b)(1)(B)(iii)(IV); 8 C.F.R. §§ 208.30(f), 1236.1(d).

44.     In 2005, Defendant EOIR reaffirmed the availability of bond hearings for this group of asylum seekers. *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), *rev'd and vacated by Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019); *see also* 8 C.F.R. § 1003.19(h)(2).

45.     At the bond hearing, an IJ determined whether to release the individual on bond or conditional parole pending resolution of her immigration case. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 1236.1(d)(1), 1003.19. In doing so, the IJ evaluated whether the applicant posed a danger to the community and the likelihood that the applicant would appear at future proceedings. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (BIA 1999).

46.     The detained individual had the right to appeal an IJ's denial of bond to the BIA, 8 C.F.R. § 1003.19(f), or to seek another bond hearing before an immigration judge if they could

FOURTH AM. COMPL. - 8
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1   establish a material change in circumstances since the prior bond decision, 8 C.F.R. §

2   1003.19(e).

3       47.   Defendant EOIR placed the burden of proving eligibility for release on the

4   detained noncitizen seeking bond, not the government. *Matter of Guerra*, 24 I. & N. Dec. 37, 40

5   (BIA 2006).

6       48.   Immigration courts also did not require recordings of bond proceedings and did

7   not provide transcriptions of the hearings, or even the oral decisions issued in the hearings.

8   Immigration courts also did not issue written decisions unless the individual has filed an

9   administrative appeal of the bond decision. *See, e.g.*, Imm. Court Practice Manual § 9.3(e)(iii),

10  (e)(vii); BIA Practice Manual §§ 4.2(f)(ii), 7.3(b)(ii).

11      49.   When an IJ denied release on bond or other conditions, the IJ did not make

12  specific, particularized findings, and instead simply checked a box on a template order.

13      50.   On April 5, 2019, this Court granted Plaintiffs' Motion for Preliminary Injunction

14  and ordered that Defendant EOIR implement key procedural safeguards. In particular, the Court

15  required EOIR to conduct bond hearings within seven days of request by Bond Hearing Class

16  members, place the burden of proof at those hearings on Defendant DHS, record the hearings,

17  produce a recording or verbatim transcript upon appeal, and produce a written decision with

18  particularized determinations of individualized findings at the conclusion of each bond hearing.

19  Dkt. 110 at 19.

20  **The Attorney General's Decision in *Matter of M-S-***

21      51.   On October 12, 2018—approximately two months after Plaintiffs filed their

22  amended complaint raising the bond hearing class claims, and around six months before this

23  Court issued its preliminary injunction—former Attorney General Sessions referred to himself a

24  pro se case, seeking to review whether "*Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005) . . . should

25  be overruled in light of *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)." *Matter of M-G-G-*, 27 I.

26  & N. Dec. 469, 469 (A.G. 2018); *see also Matter of M-S-*, 27 I. & N. Dec. 476 (A.G. 2018).

FOURTH AM. COMPL. - 9
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

52.     On November 7, 2018, former Defendant Sessions resigned as Attorney General.

53.     Subsequently, on February 14, 2019, former Attorney General Barr was confirmed by the Senate.

54.     On April 16, 2019, former Defendant Barr issued *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2018). In this decision, former Defendant Barr reversed and vacated *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), holding the INA does not permit bond hearings for individuals who enter the United States without inspection, establish a credible fear for persecution or torture, and are then referred for full removal hearings before the immigration court.

55.     Although existing regulations provide for bond hearings except in limited circumstances not applicable here, former Defendant Barr did not formally rescind or modify the regulations or engage in the required rulemaking process.

56.     Under *Matter of M-S-*, noncitizens who establish a credible fear of persecution or torture are restricted to requesting release from ICE—the jailing authority—through the parole process. 27 I. & N. Dec. at 516–17 (citing 8 U.S.C. § 1182(d)(5)).

57.     In contrast to a bond hearing before an immigration judge, the parole process consists merely of a custody review conducted by low-level ICE detention officers. *See* 8 C.F.R. § 212.5.

58.     The parole process includes no hearing before a neutral decision maker, no record of any kind, and no possibility for appeal. *See id*.

59.     Instead, ICE officers make parole decisions—that can result in months or years of additional incarceration—by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation.

60.     In *Matter of M-S-*, former Defendant Barr also ordered that the noncitizen in that case, who had previously been released on bond, "must be detained until his removal proceedings conclude" unless DHS chooses to grant him parole. *Matter of M-S-*, 27 I. & N. Dec. at 519.

FOURTH AM. COMPL. - 10
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

61.     Pursuant to *Matter of M-S-*, Defendants have a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection, even after being found to have a credible fear of persecution or torture and even after their cases are transferred for full hearings before the immigration court.

### Plaintiff Yolany Padilla

62.     Yolany Padilla is a citizen of Honduras seeking asylum in the United States for herself and her eleven-year-old son J.A.

63.     On or about May 18, 2018, Ms. Padilla and J.A. entered the United States. As they were making their way to a nearby port of entry, they were arrested by a Border Patrol agent for entering without inspection.

64.     When they arrived at the port of entry, an officer there announced to her and the rest of the group that the adults and children were going to be separated. The children old enough to understand the officer began to cry. J.A. clutched his mother's shirt and said, "No, mommy, I don't want to go." Ms. Padilla reassured her son that any separation would be short, and that everything would be okay. She was able to stay with her son until they were transferred later that day to a holding facility known as a *hielera,* or freezer, because of the freezing temperatures of the rooms. Ms. Padilla and J.A. were then forcibly separated without explanation.

65.     While detained in the *hielera*, Ms. Padilla informed the immigration officers that she and her son were afraid to return to Honduras.

66.     About three days later, Ms. Padilla was transferred to another facility in Laredo, Texas. The officers in that facility took her son's birth certificate from her. When she asked for it back, she was told that the immigration authorities had it.

67.     About twelve days later, Ms. Padilla was transferred to the Federal Detention Center in SeaTac, Washington.

68.     For many weeks after J.A. was forcibly taken from her, Ms. Padilla received no information regarding his whereabouts despite repeated inquiries. Around a month into her

FOURTH AM. COMPL. - 11
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

detention, the Honduran consul visited Ms. Padilla at the detention center, and she explained that she had no news of J.A., who was then six years old. Soon thereafter, she was given a piece of paper stating that J.A. was in a place called Cayuga Center in New York, thousands of miles away.

69.     On July 2, 2018, more than six weeks after being apprehended and detained, Ms. Padilla was given a credible fear interview. The asylum officer issued a positive credible fear determination, and she was placed in removal proceedings.

70.     On July 6, 2018, Ms. Padilla attended her bond hearing before the immigration judge. During the bond hearing, the immigration judge placed the burden of proof on Ms. Padilla to demonstrate that she is neither a danger nor flight risk. To her knowledge, there is no verbatim transcript or recording of her bond hearing. The immigration judge set a bond amount of $8,000.

71.     Ms. Padilla was released on July 6, 2018, after posting bond.

72.     Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

**Plaintiff Ibis Guzman**

73.     Ibis Guzman is a citizen of Honduras seeking asylum in the United States for herself and her ten-year-old son R.G.

74.     On or about May 16, 2018, Ms. Guzman and R.G., then five years old, entered the United States. When they were apprehended by Border Patrol agents for entering without inspection, Ms. Guzman informed them that she and R.G. were seeking asylum.

75.     After initial questioning, an officer came and forcibly took R.G. from Ms. Guzman, falsely informing her she would be able to see him again in three days. After those three days, Ms. Guzman was transferred to another CBP facility, where officers told her they did not know anything about her son's whereabouts.

76.     Ms. Guzman was then transferred to a facility in Laredo, Texas, where she was detained without any knowledge of the whereabouts of her child and without any means to

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

contact him. She did not receive any information about him during this time, despite her repeated attempts to obtain such information.

77.     About two weeks later, Ms. Guzman was transferred to the Federal Detention Center in SeaTac, Washington. After being held there for about another week, she was finally informed her child had been placed with Baptist Child and Family Services in San Antonio, Texas, thousands of miles from where she was being held.

78.     On June 20, 2018, Ms. Guzman was transferred to the Northwest Detention Center in Tacoma, Washington.

79.     On June 27, 2018, over a month after being apprehended and detained, Ms. Guzman attended a credible fear interview. The asylum officer determined that she has a credible fear, and she was placed in removal proceedings.

80.     On July 3, 2018, Ms. Guzman attended a bond hearing before immigration judge.

81.     At the bond hearing, the immigration judge placed the burden of proof on Ms. Guzman to demonstrate that she qualified for a bond.

82.     At the conclusion of that bond hearing, an immigration judge issued an order denying her release on bond pending the adjudication of her asylum claim on the merits.

83.     The immigration judge did not make specific, particularized findings for the basis of the denial. Instead, the immigration judge circled the preprinted words "Flight Risk" on a form order to justify the decision.

84.     To the best of Ms. Guzman's knowledge, there is no verbatim transcript or recording of her bond hearing.

85.     Ms. Guzman was not released until on or about July 31, 2018, after the government was ordered to comply with the preliminary injunction in *Ms. L v. ICE.*

86.     Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

FOURTH AM. COMPL. - 13
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

**Plaintiff Blanca Orantes**

87.     Blanca Orantes is a citizen of El Salvador seeking asylum in the United States for herself and her thirteen-year-old son A.M.

88.     On or about May 21, 2018, Ms. Orantes and A.M., then eight years old, entered the United States. They immediately walked to a CBP station to request asylum, and were subsequently arrested for entering without inspection. Ms. Orantes informed a Border Patrol agent that she and A.M. were seeking asylum.

89.     Ms. Orantes and her son were transported to a CBP facility. Before entering the building, the officers led Ms. Orantes into a *hielera* with other adults, and her son into another part of the station with other children.

90.     Ms. Orantes was later interviewed by an immigration officer. At that time, another officer brought A.M. to her and told her to "say goodbye" to him because they were being separated. A.M. began crying and pleading with Ms. Orantes not to leave, but he was forcibly taken away from Ms. Orantes.

91.     On or around May 24, 2018, Ms. Orantes was taken to federal district court, where she pleaded guilty to improper entry under 8 U.S.C. § 1325 and was sentenced to time served. She was then returned to her cell.

92.     About nine days after this, Ms. Orantes was transported to the Federal Detention Center in SeaTac, Washington.

93.     Ms. Orantes was not provided any information about her child until June 9, 2018, when an ICE officer handed her a slip of paper advising that her son was being held at Children's Home of Kingston, in Kingston, New York.

94.     On June 20, 2018, Ms. Orantes was transferred to the Northwest Detention Center in Tacoma, Washington, still thousands of miles away from her son.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

95.     On June 27, 2018, around five weeks after being apprehended, Ms. Orantes was given a credible fear interview. The following day, June 28, 2018, the asylum officer determined that Ms. Orantes established a credible fear, and she was placed in removal proceedings.

96.     Ms. Orantes requested a bond hearing upon being provided the positive credible fear determination.

97.     On July 16, 2018, Ms. Orantes was given a bond hearing before the immigration court.

98.     At the bond hearing, the immigration judge placed the burden of proof on Ms. Orantes to demonstrate that she qualified for a bond.

99.     At the conclusion of that bond hearing, an immigration judge issued an order denying her release on bond pending the adjudication of her asylum claim on the merits.

100.    In denying Ms. Orantes's request for a bond, the immigration judge did not make specific, particularized findings for the basis of the denial.

101.    The immigration judge even failed to check the box indicating why Ms. Orantes was denied bond on the template order.

102.    Ms. Orantes was released from custody on or about July 23, 2018, after the federal government was forced to comply with the preliminary injunction in *Ms. L. v. ICE*. She was thereafter reunited her with her child.

103.    Pursuant to *Matter of M-S-*, Ms. Padilla now faces the prospect of being re-detained without a bond hearing.

**Plaintiff Baltazar Vasquez**

104.    Plaintiff Baltazar Vasquez is a citizen of El Salvador seeking asylum in the United States.

105.    On or about June 1, 2018, Mr. Vasquez entered the United States. He was arrested by a Border Patrol agent for entering without inspection, and informed the agent that he was afraid to return to El Salvador and wanted to seek asylum.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

106.     Mr. Vasquez was first transported by officers to a federal holding center near San Diego, California. Around nine days later, he was transferred to a Federal Detention Center in Victorville, California.

107.     On or about July 20, 2018, Mr. Vasquez was transferred to another detention center in Adelanto, California.

108.     On or about July 31, 2018, nearly two months after he was first apprehended, Mr. Vasquez was given a credible fear interview. The asylum officer determined he had a credible fear, and he was placed in removal proceedings.

109.     Mr. Vasquez requested a bond hearing upon being provided the positive credible fear determination.

110.     On August 20, 2018, Mr. Vasquez was given a bond hearing before the immigration court.

111.     At the bond hearing, Mr. Vasquez had the burden to prove that he is neither a danger or flight risk, but ultimately, DHS agreed to stipulate to a bond amount of 8,000 dollars. The immigration judge approved this agreement but also required Mr. Vasquez to wear an ankle monitor.

112.     Pursuant to *Matter of M-S-*, Mr. Vasquez now faces the prospect of being re-detained without a bond hearing.

## VI.     CLASS ALLEGATIONS

113.     Plaintiffs brought this action on behalf of themselves and all others who are similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). A class action is proper because this action involves questions of law and fact common to the classes, the classes are so numerous that joinder of all members is impractical, Plaintiffs' claims are typical of the claims of the classes, Plaintiffs will fairly and adequately protect the interests of the respective classes, and Defendants have acted on grounds that apply generally to the class, so that final declaratory relief is appropriate with respect to the class as a whole.

FOURTH AM. COMPL. - 16
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

114.    Plaintiffs sought to represent the following nationwide classes (Dkt. 37):

      a.    **Credible Fear Interview Class ("CFI Class"):** All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who are not provided a credible fear determination within 10 days of requesting asylum or expressing a fear of persecution to a DHS official, absent a request by the asylum seeker for a delayed credible fear interview.

      b.    **Bond Hearing Class ("BH Class"):** All detained asylum seekers who entered the United States without inspection, who were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), who were determined to have a credible fear of persecution, but who are not provided a bond hearing with a verbatim transcript or recording of the hearing within 7 days of requesting a bond hearing.

115.    On March 6, 2019, the district court certified the following nationwide classes (Dkts. 102, 158):

      a.    **Credible Fear Interview Class:** All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who are not provided a credible fear determination within ten days of the later of (1) requesting asylum or expressing a fear of persecution to a DHS official or (2) the conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview.

      b.    **Bond Hearing Class:** All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution or torture, but are not provided a bond hearing with a

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

verbatim transcript or recording of the hearing within seven days of requesting a bond hearing.

116.     The certified classes currently are represented by counsel from the Northwest Immigrant Rights Project, the National Immigration Litigation Alliance, the American Civil Liberties Union's Immigrants' Rights Project, and the American Immigration Council. Counsel have extensive experience litigating class action lawsuits and other complex cases in federal court, including civil rights lawsuits on behalf of noncitizens.

**Credible Fear Interview Class ("CFI Class")**

117.     All named Plaintiffs represent the certified CFI Class.

118.     The CFI Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential class members, but upon information and belief, there are thousands of individuals seeking protection who are subject to expedited removal proceedings and not provided a credible fear interview within ten days of expressing a fear of return or desire to apply for asylum. Defendants are uniquely positioned to identify all class members.

119.     The CFI Class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). By definition, members of the CFI Class are subject to a common practice by Defendants: their failure to provide timely credible fear interviews. This lawsuit raises a question of law common to members of the CFI Class, namely whether Defendants' delay in providing credible fear interviews constitutes agency action unlawfully withheld or unreasonably delayed under the APA and the Due Process Clause.

120.     The CFI Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. All named Plaintiffs were not provided credible fear interviews within 10 days of being apprehended and expressing a fear of return to their countries of origin.

FOURTH AM. COMPL. - 18
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

121.     The CFI Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class—namely, an order that Defendants' failure to promptly provide credible fear interviews is unlawful. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

122.     The members of the class are readily ascertainable through Defendants' records.

123.     The CFI Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unreasonably delaying putative class members' credible fear interviews. Declaratory relief is thus appropriate with respect to the class as a whole.

**Bond Hearing Class ("BH Class")**

124.     Plaintiffs Orantes and Vasquez represent the certified Bond Hearing Class.

125.     The BH Class meets the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1). The class is so numerous that joinder of all members is impracticable. Plaintiffs are not aware of the precise number of potential class members, but upon information and belief, there are thousands of individuals seeking protection who entered without inspection, were referred to standard removal proceedings after a positive credible fear determination, and were not provided bond hearings either within seven days of requesting the hearing, or whose bond hearings were not recorded or transcribed. Defendants are uniquely positioned to identify all class members.

126.     The BH Class meets the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). Members of the BH Class are subject to common policies and practices by Defendants: their failure to provide timely bond hearings; their placement of the burden of proof on the detained on the detained individual during bond hearings; their failure to provide a verbatim transcript or recording of the bond hearing; their failure to provide a contemporaneous

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

written decision with particularized findings; and finally, due to *Matter of M-S-*, all class members will be denied bond hearings.

127.    This lawsuit raises questions of law common to members of the BH Class: whether Defendants' failure to provide bond hearings violates class members' right to due process and the rulemaking requirements of the Administrative Procedure Act; whether Defendants' failure to provide timely bond hearings constitutes agency action unlawfully withheld or unreasonably delayed under the APA; whether due process requires Defendants to provide bond hearings to putative class members within seven days of a request, and whether due process and the APA requires Defendants to place the burden of proof on the government to justify continue detention, and to provide adequate procedural safeguards to putative class members.

128.    The BH Class meets the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), because the claims of the representative Plaintiffs are typical of the claims of the class. Plaintiffs Orantes and Vasquez were not provided bond hearings within seven days of requesting a hearing. At the bond hearing, all class representatives were assigned the burden to prove that they are eligible for release under bond. All class representatives were denied a contemporaneous written decision with particularized findings. Defendants are not required to record or provide verbatim transcripts of the hearings and did not advise Plaintiffs Orantes and Vasquez that recordings had been made until filing their First Amended Complaint, Dkt. 8. Finally, under *Matter of M-S-*, Bond Hearing Class members are now deprived of *any* bond hearing.

129.    The BH Class meets the adequacy requirements of Federal Rule of Civil Procedure 23(a)(4). The representative Plaintiffs seek the same relief as the other members of the class: an order declaring unlawful Defendants' failure to provide bond hearings within seven days of request, to place the burden of proof on the government during these bond hearings, to provide a verbatim transcript or recording of the hearing, and to provide a contemporaneous

FOURTH AM. COMPL. - 20
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

written decision with particularized findings at the end of the hearing. In defending their own rights, the named Plaintiffs will defend the rights of all class members fairly and adequately.

130.    The members of the class are readily ascertainable through Defendants' records.

131.    The BH Class also satisfies Federal Rule of Civil Procedure 23(b)(2). Defendants have acted on grounds generally applicable to the class by unreasonably delaying putative class members' bond hearings. Putative class members received an untimely bond hearing in which they had to bear the burden of proof. Defendants generally do not record or provide verbatim transcripts of putative class members' bond hearings, nor issue contemporaneous written decisions with particularized findings. Moreover, following the *Matter of M-S-* decision, and the vacatur of this Court's injunction preserving bond hearings, class members no longer receive any bond hearings. Declaratory relief is thus appropriate with respect to the class as a whole.

## VII.   CAUSES OF ACTION

### COUNT I
**(Violation of Fifth Amendment Right to Due Process—Right to Timely Bond Hearing with Procedural Safeguards)**

132.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

133.  The Due Process Clause of the Fifth Amendment provides that "no person . . . shall be deprived of . . . liberty . . . without due process of law." U.S. Const., amend. V.

134.  Named Plaintiffs and all BH Class members were apprehended on U.S. soil after entry and are thus "persons" to whom the Due Process Clause applies.

135.  The Due Process Clause permits civil immigration detention only where such detention is reasonably related to the government's interests in preventing flight or protecting the community from danger and is accompanied by adequate procedures to ensure that detention serves those goals.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

136.  Both substantive and procedural due process therefore require an individualized assessment of BH Class members' flight risk or danger to the community in a custody hearing before a neutral decision maker.

137.  The Due Process Clause guarantees that such individualized custody hearings be provided in a timely manner to afford Plaintiffs and BH Class members an opportunity to challenge whether their continued detention is necessary to ensure their future appearance or to avoid danger to the community. Federal courts have consistently held that due process requires an expeditious opportunity to receive that individualized assessment. Defendants' interests in prolonging this civil detention do not outweigh the liberty interests of Plaintiffs and BH Class members.

138.  The Due Process Clause requires that Plaintiffs and BH Class members receive adequate procedural protections to assert their liberty interest. The Due Process Clause requires the government to bear the burden of proof in the custodial hearing of demonstrating that the continued detention of Plaintiffs and BH Class members is justified. Defendants' interests do not outweigh the liberty interests for Plaintiffs and BH Class members.

139.  The Due Process Clause requires that the government provide either a transcript or recording of the hearing and specific, particularized findings of the bond hearing to provide a meaningful opportunity for Plaintiffs and BH Class members to evaluate and appeal the IJ's custody determination. Defendants' interests in issuing decisions without these procedural protections do not outweigh the liberty interests for Plaintiffs and BH Class members.

140.  Pursuant to *Matter of M-S-*, Defendants deprive Plaintiffs and BH Class members the right to any custodial hearing before a neutral arbiter to make an individualized determination of whether they present a danger to the community or a flight risk.

141.  Pursuant to *Matter of M-S-*, Plaintiffs and BH Class members who have been released face the prospect of being re-detained without a bond hearing.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

142.  Prior to *Matter of M-S-*, Defendants recognized that BH Class members are entitled to a bond hearing. Defendants regularly delayed those hearings for several weeks after the credible fear determinations.

143.  Defendants have also failed to provide the other bond hearing procedures required by due process, including by (1) placing the burden of proof on Plaintiffs and BH Class members (2) refusing to provide them with a recording or verbatim transcript of the hearing, and (3) not providing a written decision with particularized findings of the bond hearing.

144.  In sum, Defendants violate the Fifth Amendment's Due Process Clause by failing to provide prompt individualized custody hearings with adequate safeguards.

## COUNT II
### (Violation of the Administrative Procedure Act—Agency Action Contrary to Constitutional Right (Failure to Provide Bond Hearings))

145.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

146.  The Administrative Procedure Act empowers courts to "hold unlawful and set aside" agency action that is "not in accordance with law" or "contrary to constitutional right." 5 U.S.C. § 706(2)(A)–(B).

147.  *Matter of M-S-* is a final agency action subject to review under 5 U.S.C. § 701 *et seq*.

148.  For the reasons stated in Count I, *Matter of M-S-* and Defendants' policy of not providing bond hearings to class members is not in accordance with law and/or contrary to constitutional right.

149.  Accordingly, the Court should hold *Matter of M-S-* unlawful and/or contrary to constitutional right and set aside the decision under the APA.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## COUNT III
### (Violation of Administrative Procedure Act—Failure to Follow Notice & Comment Rulemaking)

150.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

151.  Regulations that govern Defendants DHS and EOIR provide that Plaintiffs and BH Class members may seek review of ICE's custody decision before an IJ. *See* 8 C.F.R. §§ 1003.19(h)(2), 1236.1(d).

152.  *Matter of M-S-* is a final agency action that purports to alter those regulations by adjudication, without engaging in notice and comment rulemaking.

153.  The Administrative Procedure Act requires Defendants to engage in notice and comment rulemaking before undertaking the changes that *Matter of M-S-* purports to make to BH Class Members' rights to a bond hearing. *See* 5 U.S.C. §§ 551(5), 553(b) & (c).

154.  As a result, *Matter of M-S-* is unlawful agency action. The Court should set aside the decision because it was issued "without observance of procedure required by law." *Id.* § 706(2)(D).

## COUNT IV
### (Violation of Fifth Amendment Right to Due Process—Delays of Credible Fear Interviews)

155.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

156.  The Due Process Clause guarantees timely and adequate procedures to test Defendants' rationale for detaining asylum seekers.

157.  Defendants' practice of delaying individuals seeking protection credible fear interviews beyond 10 days prevents Plaintiffs Padilla, Guzman, Orantes, and Vasquez, and the CFI Class from demonstrating that they have a "significant possibility" of obtaining protection and a lawful status in the United States. 8 U.S.C. § 1225(b)(1)(B)(v). That practice thus further

FOURTH AM. COMPL. - 24
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

lengthens their time in detention without the opportunity to appear before a neutral decision maker to receive an individualized custodial assessment.

158.  Defendants' interests do not outweigh the significant risks that delayed credible fear interviews pose in wrongfully prolonging Plaintiffs Padilla, Guzman, Orantes, and Vasquez , and CFI Class members' detention, nor do they outweigh their protected due process interests in timely demonstrating their right to protection in the United States.

159.  Defendants' practice of delaying credible fear interviews therefore violates the CFI Class's right to due process.

## COUNT V
### (Administrative Procedure Act—Delays of Credible Fear Interviews and Bond Hearings)

160.  All of the foregoing allegations are repeated and realleged as though fully set forth herein.

161.  The Administrative Procedure Act imposes on federal agencies the duty to conclude matters presented to them within a "reasonable time." 5 U.S.C. §555(b).

162.  The APA also permits the CFI and BH Classes to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1).

163.  Both credible fear interviews and bond hearings are "discrete agency actions" that Defendants are "required to take," and therefore constitute agency action that a court may compel. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

164.  Defendants' failure to expeditiously conduct a credible fear interview after detaining Plaintiffs and members of the CFI Class constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See* 5 U.S.C. § 706(1).

165.  Defendants' failure to promptly conduct a bond hearing for plaintiffs and members of the BH Class within 7 days of a request also constitutes "an agency action unlawfully withheld or unreasonably delayed" under the APA. *See id.*

FOURTH AM. COMPL. - 25
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## COUNT VI
### (Administrative Procedure Act—Agency Action Contrary to Constitutional Right (Denial of Procedural Protections))

166.    All of the foregoing allegations are repeated and realleged as though fully set forth herein.

167.    The Administrative Procedure Act empowers courts to "hold unlawful and set aside" agency action that is "not in accordance with law" or "contrary to constitutional right." 5 U.S.C. § 706(2)(A)–(B).

168.    Defendants' policies place the burden of proof on noncitizens, do not require immigration courts to record hearings or provide transcripts upon appeal, and do not require the immigration courts to provide a contemporaneous written decision with particularized findings.

169.    Defendants' policies regarding (1) the burden of proof, (2) the lack of recordings and transcripts, and (3) the failure to provide specific, particularized findings constitute final agency action.

170.    The lack of these procedural protections is contrary to law and violates the constitutional right to due process of noncitizens seeking protection. *See* 5 U.S.C. § 706(2).

171.    Accordingly, the Court should hold unlawful and/or contrary to constitutional right these policies and set them aside under the APA.

## <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request that this Court enter judgment against Defendants granting the following relief on behalf of the Credible Fear Interview Class and the Bond Hearing Class:

A.  Declare that Defendants have an obligation to provide Credible Fear Interview Class members with a credible fear interview and determination within 10 days of requesting asylum or expressing a fear of persecution or torture to any DHS official.

B.  Declare that Defendants have an obligation to provide Bond Hearing Class members an individualized custody hearing before an immigration judge.

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

C.  Declare that Defendants have an obligation to provide Bond Hearing Class members an individualized custody hearing within 7 days of their requesting a hearing to set reasonable conditions for their release pending adjudication of their claims for protection.

D.  Hold unlawful and set aside Defendants' policies (1) placing the burden of proof on noncitizens, (2) not requiring immigration courts to record hearings or provide transcripts upon appeal, and (3) not requiring the immigration courts to provide a contemporaneous written decision with particularized findings.

E.  Declare that Defendant DHS must bear the burden of proof to show continued detention is necessary in civil immigration proceedings.

F.  Declare that Defendants have an obligation to provide Bond Hearing Class members an individualized custody hearing with adequate procedural safeguards, including providing a verbatim transcript or recording of their bond hearing upon appeal.

G.  Declare that in individualized custody hearings immigration judges must make specific, particularized written findings as to the basis for denying release from detention, including findings identifying the basis for finding that the individual is a flight risk or a danger to the community.

H.  Order Defendants to pay reasonable attorneys' fees and costs.

I.  Order all other relief that is just and proper.

Dated this 11th day of January, 2023.

s/ Matt Adams
Matt Adams, WSBA No. 28287

s/ Trina Realmuto
Trina Realmuto*

s/ Aaron Korthuis
Aaron Korthuis, WSBA No. 53974

s/ Kristin Macleod-Ball
Kristin Macleod-Ball*

NORTHWEST IMMIGRANT RIGHTS PROJECT

NATIONAL IMMIGRATION LITIGATION ALLIANCE

FOURTH AM. COMPL. - 27
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org
aaron@nwirp.org

s/ Judy Rabinovitz
Judy Rabinovitz*

s/ Anand Balakrishnan
Anand Balakrishnan*

ACLU IMMIGRANTS' RIGHTS PROJECT
125 Broad Street, 18th floor
New York, NY 10004
(212) 549-2618
jrabinovitz@aclu.org
abalakrishnan@aclu.org

*Admitted pro hac vice
**Application to DC bar pending; practice
limited to federal courts

10 Griggs Terrace
Brookline, MA 02446
(617) 819-4447
trina@immigrationlitigation.org
kristin@mmigrationlitigation.org

s/ Emma Winger
Emma Winger*

AMERICAN IMMIGRATION COUNCIL
**1331 G Street NW, Suite 200
Washington, DC 20005
(202) 507-7512
ewinger@immcouncil.org

FOURTH AM. COMPL. - 28
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2023, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 11th day of January, 2023.

_s/ Aaron Korthuis_
Aaron Korthuis
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, Washington  98104
Telephone: (206) 816-3872
Facsimile: (206) 587-4025
Email: aaron@nwirp.org

FOURTH AM. COMPL. - 29
Case No. 2:18-cv-928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Telephone (206) 957-8611