*The Honorable Marsha J. Pechman*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ,<br><br>                Plaintiffs-Petitioners,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); U.S. DEPARTMENT OF HOMELAND SECURITY (DHS); U.S. CUSTOMS AND BORDER PROTECTION (CBP); U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); TAE D. JOHNSON, ACTING DIRECTOR OF ICE;[1] ALEJANDRO MAYORKAS, SECRETARY OF HOMELAND SECURITY; TROY A. MILLER, ACTING COMMISSIONER OF CBP; UR JADDOU, DIRECTOR OF USCIS; ELIZABETH GODFREY, SEATTLE FIELD DIRECTOR OFFICE, ICE; MERRICK B. GARLAND, ATTORNEY GENERAL OF THE UNITED STATES; BRUCE SCOTT, WARDEN OF THE NORTHWEST DETENTION CENTER IN TACOMA, WASHINGTON; JAMES JANECKA, WARDEN OF THE ADELANTO DETENTION FACILITY,<br><br>                Defendants-Respondents. | No. 2:18-cv-928 MJP<br><br>**DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>NOTE ON MOTION CALENDAR: APRIL 17, 2023 |

---

[1] Parties have been substituted pursuant to Fed. R. Civ. P. 25(d).

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL BACKGROUND ............................................................................................... 2

PROCEDURAL HISTORY.............................................................................................. 5

LEGAL STANDARD....................................................................................................... 7

ARGUMENT ................................................................................................................... 8

I. PLAINTIFFS' CLAIMS, ALL CHALLENGING THE GOVERNMENT'S
IMPLEMENTATION OF THE EXPEDITED REMOVAL STATUTE, SHOULD BE
DISMISSED PURSUANT TO 8 U.S.C. § 1252(A)(2)(A). .......................................... 8

II. ALL COUNTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. .......... 12

A. COUNTS I AND II (FAILURE TO PROVIDE BOND HEARINGS WITHIN SEVEN
DAYS VIOLATED DUE PROCESS AND IS CONTRARY TO CONSTITUTIONAL
RIGHTS UNDER THE APA) DO NOT STATE A CLAIM FOR RELIEF............................... 12

I. PLAINTIFFS LACK A SUFFICIENT INTEREST IN RELEASE DURING REMOVAL
PROCEEDINGS TO SUPPORT A DUE PROCESS CLAIM FOR BOND BEARINGS
AFTER ONLY SEVEN DAYS............................................................................................. 12

II. THE SUPREME COURT HAS REPEATEDLY AFFIRMED THE GOVERNMENT'S
AUTHORITY TO DETAIN NONCITIZENS WITHOUT BOND HEARINGS DURING
REMOVAL PROCEEDINGS. ............................................................................................ 15

B. COUNT III (LACK OF NOTICE-AND-COMMENT RULEMAKING VIOLATES
THE APA) DOES NOT STATE A CLAIM FOR RELIEF. ....................................................... 17

C. COUNT IV (ALLEGED "DELAYS" OF CREDIBLE FEAR INTERVIEWS
VIOLATE DUE PROCESS) DOES NOT STATE A CLAIM FOR RELIEF. ............................. 19

D. COUNT V ("DELAYS" OF CREDIBLE FEAR INTERVIEWS AND BOND
HEARINGS VIOLATE THE APA) AND COUNT VI (DENIAL OF PROCEDURAL
PROTECTIONS IS CONTRARY TO CONSTITUTIONAL RIGHT UNDER THE APA)
DO NOT STATE A CLAIM FOR RELIEF. ............................................................................ 20

CONCLUSION................................................................................................................. 22

CERTIFICATE OF SERVICE ......................................................................................... 24

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

ii

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

## INTRODUCTION

This case was filed in 2018, when Plaintiffs' bond hearing claims was governed by *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), which provided bond hearings to class members in this case. Since that time, *Matter of X-K-* has been overturned, and the Supreme Court decided *Dep't of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), which bears directly on the claims here. And yet, despite this legal landscape—which has shifted against Plaintiffs' claims, Plaintiffs' operative complaint remains similar to their Second and Third Amended Complaints, and suffers many of the same flaws. As a result, it must be dismissed.

As a threshold matter, Plaintiffs' claims should all be dismissed under 8 U.S.C. § 1252(a)(2)(A)—or in the alternative transferred to the United States District Court for the District of Columbia under § 1252(e)(3). Plaintiffs challenge both written and unwritten policies implementing 8 U.S.C. § 1225(b)(1), claiming that the Attorney General's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), acts as a directive to deny noncitizens detained for removal proceedings following a credible fear finding bond hearings, and that credible fear interviews, even in the absence of any written policy, are uniformly delayed to an extent Plaintiffs find unreasonable. But § 1252(a)(2)(A)(iv) states that no court shall have jurisdiction to review "procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)." Even in alleging an infringement of their due process rights, Plaintiffs repeatedly refer to Defendants' "policy" or "practice" in carrying out the expedited removal statute, and indeed never question that those policies were adopted to implement § 1225(b)(1).

Plaintiffs' Fourth Amended Complaint (4AC) should also be dismissed in its entirety because it fails to state any claim for relief. Prior to filing the 4AC, the Supreme Court decided *Thuraissigiam*, 140 S. Ct. 1959. *Thuraissigiam* affirms the constitutionality of the expedited removal process for noncitizens like Plaintiffs, underscoring the settled principle "that Congress is entitled to set the conditions for an alien's lawful entry into this country," while noncitizens seeking to enter the country have "no entitlement to procedural rights *other than those afforded by statute*." *Thuraissigiam*, 140 S. Ct. at 1964 (emphasis added). Plaintiffs thus cannot show that

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    Defendants' administration of credible fear interviews pursuant to § 1225(b)(1), as well as the

2    statutory text that provides for release only on parole for noncitizens detained pursuant to

3    § 1225(b)(1)(B)(ii), contravenes any law where the statute makes no provision for bond hearings

4    and supplies no standard that would allow a court to assess how long agency personnel might need

5    to conduct thousands of individual credible fear interviews, which are each circumstance-specific.

6    Though Plaintiffs invoke due process in the broadest sense to try to dictate how quickly the

7    expedited removal process—including credible fear interviews and release—must operate, there

8    is no legal authority that would allow the Court to impose such constraints on the agencies'

9    deliberate application of the expedited removal statute.

10                              **LEGAL BACKGROUND**

11        1. <u>Expedited removal</u>. The Executive Branch has broad constitutional and statutory power

12   over the administration and enforcement of the nation's immigration laws. *Knauff v. Shaughnessy*,

13   338 U.S. 537, 543 (1950); *see*, *e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). Congress has

14   authorized the Department of Homeland Security (DHS) to expeditiously remove from the United

15   States certain inadmissible noncitizens who have arrived at or illegally crossed the border. *See* 8

16   U.S.C. § 1225(b)(1).[2] Under this process—known as "expedited removal"—certain noncitizens

17   arriving in the United States or who entered illegally who lack valid entry documentation or make

18   material misrepresentations shall be "order[ed] . . . removed from the United States without further

19   hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C.

20   § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see id.* § 1182(a)(6)(C), (a)(7); *see*

21   *also Thuraissigiam*, 140 S. Ct. at 1964-67 (discussing expedited removal); *Am. Immigration*

22   *Lawyers Ass'n v. Reno* ("AILA"), 199 F.3d 1352, 1360 (D.C. Cir. 2000) (same). If the noncitizen

23   "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting

24

25   _____

     [2] At the time the class was certified, expedited removal applied to those noncitizens who were
26   encountered at or within 100 miles of the border and were unable to prove that they had been in
     the United States for more than the prior 14 days. *See* Designating Aliens for Expedited Removal,
27   69 Fed. Reg. 48877-01, 48879-80 (Aug. 11, 2004). This was briefly expanded but has now been
     rescinded. *See* Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited
28   Removal, 87 Fed. Reg. 16022 (March 21, 2022).

                                         2

officer must "refer the alien for" an interview by an asylum officer. *Id*. § 1225(b)(1)(A)(ii). The asylum officer assesses whether the noncitizen has a "credible fear of persecution," meaning "that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under [8 U.S.C. § 1158]." *Id*. § 1225(b)(1)(B)(v). If the officer determines that the noncitizen has a credible fear, the officer may refer the noncitizen to removal proceedings under 8 U.S.C. § 1229a where the noncitizen may apply for asylum and other protection from removal. *Id*. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). [3] These removal proceedings provide more extensive procedures than expedited removal, *compare id*. § 1229a *with id*. § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals (BIA) and a federal appellate court. *Id*. § 1252(a)(1).

If the asylum officer determines that the noncitizen lacks a credible fear, the noncitizen may seek *de novo* review before an immigration judge (IJ). *Id*. § 1225(b)(1)(B)(iii)(I), (III); *see Thuraissigiam*, 140 S. Ct. at 1965. If the IJ concludes that the noncitizen has a credible fear, the asylum officer's decision is vacated and the noncitizen is placed into removal proceedings. 8 C.F.R. § 1003.42(f). If the IJ finds that the noncitizen lacks a credible fear, the noncitizen is "removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I); 8 C.F.R. § 1208.30(g)(2)(iv)(A). The Immigration and Nationality Act (INA) precludes further review by the BIA or any court of the credible fear determination. 8 U.S.C. §§ 1225(b)(1)(C), 1252(a)(2)(A)(iii), 1252(e)(2); 8 C.F.R. § 1003.42(f).

2. Detention pending credible fear and removal proceedings. Regardless of whether noncitizens in the Plaintiff classes receive a final executable expedited removal order after failing to demonstrate a credible fear, or demonstrate a credible fear and are placed into removal proceedings, § 1225(b) provides that they "shall be detained." 8 U.S.C. §§ 1225(b)(1)(B)(ii),

---

[3] In March 2022, DHS and the Department of Justice adopted an interim final rule that permits, following a positive credible fear determination, asylum officers to conduct an initial asylum merits interview instead of referring the case directly for removal proceedings before an immigration judge under 8 U.S.C. § 1229a. Thus, not all noncitizens found to have a positive credible fear determination are referred for removal proceedings under § 1229a.

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

(b)(1)(B)(iii)(IV). *See Jennings v. Rodriguez,* 138 S. Ct. 830, 845 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) mandate detention throughout the completion of applicable proceedings and not just until the moment those proceedings begin."). In *Jennings*, the Supreme Court also recognized that parole was available for "urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), and that the existence of that "express exception to detention implies that there are no *other* circumstances under which aliens detained under § 1225(b) may be released," and, accordingly, those detention provisions could not be interpreted to provide for bond hearings. *Id.*

Following *Jennings,* the Attorney General, exercising his authority as the head of the Executive Office for Immigration Review (EOIR), under 8 U.S.C. § 1103(a)(l) to give statutory terms "concrete meaning through a process of case-by-case adjudication," *INS v. Aguirre-Aguirre,* 526 U.S. 415, 425 (1999), referred to himself a case involving bond hearings under *Matter of X-K-,* 23 I. & N. Dec. 731, a BIA decision that found ambiguity in the statute and regulations, and concluded that 8 C.F.R. § 1236.l(d)(l), which implements 8 U.S.C. § 1226(a), applied to certain applicants for admission under § 1225(b). On April 16, 2019, the Attorney General issued a precedential decision in *Matter of M-S-*. The "question presented" was "whether aliens who are originally placed in expedited [removal] proceedings and then transferred to full [removal] proceedings after establishing a credible fear become eligible for bond upon transfer." *Matter of M-S-*, 27 I. & N. at 515. The Attorney General "conclude[d] that such aliens remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States." *Id.* The starting point was the statutory text: "Section 235(b)(l)(B)(ii) provides that, if an alien in expedited proceedings establishes a credible fear, he 'shall be detained for further consideration of the application for asylum.'" *Id.* (quoting 8 U.S.C. § 1225(b)(l)(B)(ii)). The Attorney General rejected the argument that the word "for" simply applied to the lead up to full removal proceedings: "[T]hat latter definition makes little sense in light of the surrounding provisions of the [INA]. If section 235(b)(l)(B)(ii) governed detention only 'in preparation for' . . . full proceedings, then another provision, [8 U.S.C. § 1226], would govern detention during those proceedings. Section 1226,

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    however, permits detention only on an arrest warrant issued by the Secretary. The result would be

2    that if an alien were placed in expedited proceedings, DHS could detain him without a warrant,

3    but, if the alien were then transferred to full proceedings, DHS would need to issue an arrest

4    warrant to continue detention. That simply cannot be what the Act requires." *Id.* at 515-16 (internal

5    citations omitted). The Attorney General accordingly concluded that § 1226, which confers

6    discretion to release noncitizens on bond after arrest pursuant to a warrant, applies to a "different

7    class[] of aliens" than § 1225, and because the latter provides for mandatory detention, the two

8    provisions "can be reconciled only if they apply to different classes of aliens." *Matter of M-S-*, 27

9    I. & N. Dec. at 516.

10   The Attorney General observed that "[t]he conclusion that section [1225] requires

11   detention does not mean that every transferred alien must be detained from the moment of

12   apprehension until the completion of removal proceedings" as the INA has an "express exception":

13   parole for "urgent humanitarian reasons or significant public benefit." *Id.* (citing 8 U.S.C.

14   § 1182(d)(5)(A)). The presence of this "express exception" countenanced the conclusion that the

15   INA "cannot be read to contain an implicit exception for bond" because "'[t]hat express exception

16   to detention implies that there are no *other* circumstances under which aliens detained under [§

17   1225(b)] may be released.'" *Matter of M-S-*, 27 I. & N. Dec. at 517 (quoting *Jennings*, 138 S. Ct.

18   at 844) (emphasis in original).

19                              **PROCEDURAL HISTORY**

20   On January 11, 2023, Plaintiffs filed their 4AC. ECF 198. In the 4AC, Plaintiffs drop their

21   claims that they are entitled to custody hearings under the INA and that Defendants have denied

22   them parole hearings before IJs. *See generally* ECF 196-2. In light of *Garland v. Aleman Gonzalez*,

23   142 S. Ct. 2057 (2022), and *Biden v. Texas*, 142 S. Ct. 2528 (2022), they withdraw their requests

24   for class-wide injunctive relief—though they still ask for sweeping nationwide declaratory relief.

25   *See* Mot. to Amend, ECF 196; *compare* ECF 130, Prayer for Relief, *with* ECF 198, Prayer for

26   Relief. Plaintiffs persist in their challenges to aspects of 8 U.S.C. § 1225(b)(1), asserting that due

27   process entitles them to credible fear interviews within ten days of expressing a fear and that those

28

5

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

found to have a credible fear must then receive a bond hearing within seven days of requesting one, along with their preferred procedures. 4AC, ECF 198, at 21-26.

When the Second Amended Complaint was the operative complaint—and before the issuance of *Matter of M-S-* and *Thuraissigiam*—Plaintiffs sought certification of two nationwide classes, which this Court granted. Those two classes are defined as:

> (1) **Credible Fear Interview (CFI) Class**: All detained asylum seekers in the United States subject to expedited removal proceedings under 8 U.S.C. § 1225(b) who are not provided a credible fear determination within ten days of *the later of* (1) requesting asylum or expressing a fear of persecution to a DHS official *or* (2) the conclusion of any criminal proceeding related to the circumstances of their entry, absent a request by the asylum seeker for a delayed credible fear interview.

> (2) **Bond Hearing (BH) Class**: All detained asylum seekers who entered the United States without inspection, were initially subject to expedited removal proceedings under 8 U.S.C. § 1225(b), were determined to have a credible fear of persecution, but are not provided a bond hearing with a verbatim transcript or recording of the hearing within seven days of requesting a bond hearing.

ECF 102 at 2 (emphasis in original).

After certification, this Court granted Plaintiffs' motion for preliminary injunction, and held that with regard to the BH Class, EOIR must: 1. Conduct bond hearings within seven days of request, and release any class member whose detention exceeds that limit; 2. Place the burden of proof on DHS in those bond hearings to demonstrate why the class member should not be released; 3. Record the bond hearing and produce the recording or verbatim transcript of the hearing upon appeal; and 4. Produce a written decision with particularized determinations of individualized findings at the conclusion of the bond hearing. ECF 110. Shortly thereafter, the Attorney General decided *Matter of M-S-*. The government sought to vacate the injunction in light of the decision, and Plaintiffs amended their complaint, and sought to modify the injunction. ECF 114, 130, 131. The Court denied the government's motion, and modified the injunction to find that the statutory

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1  prohibition at § 1225(b)(1)(B)(ii) against releasing on bond persons found to have a credible fear

2  of persecution violates the Constitution. ECF 149. The government appealed.

3       The Court of Appeals affirmed in part; and vacated and remanded in part. *Padilla v.*

4  *Immigration and Customs Enforcement*, 953 F.3d 1134 (9th Cir. 2020), *cert. granted Immigration*

5  *and Customs Enforcement v. Padilla*, 141 S. Ct. 1041 (2021). The Court of Appeals affirmed

6  insofar as it concluded that Plaintiffs have a due process right to bond hearings, but remanded for

7  further findings with respect to the particular procedures due. *Id.* at 1142. The Government filed a

8  petition for a writ of certiorari, and the Supreme Court granted the petition, vacated, and remanded

9  for further proceedings in light of *Thuraissigiam. Id.* at 1041-42. In June 2022, the Ninth Circuit

10  remanded and instructed this court to vacate the injunction. ECF 182.

11       On January 11, 2023, Plaintiffs filed the 4AC, which asserts the following claims:

12  • Count I: Failure to provide bond hearings within seven days violates the Due Process
13    Clause;

14  • Count II: Failure to provide bond hearings within seven days is contrary to constitutional
15    right in violation of the APA;

16  • Count III: Failure to follow notice-and-comment rulemaking before issuing *Matter of M-*
17    *S-* violates the APA;

18  • Count IV: Failure to provide credible fear interviews within ten days violates the Due
19    Process Clause;

20  • Count V: Failure to provide credible fear interviews and bond hearings within ten and
21    seven days, respectively, constitutes unreasonable delay under the APA;

22  • Count VI: Pre-*Matter of M-S-* bond procedures violate the Due Process Clause.

23                                    **LEGAL STANDARD**

24       Under Federal Rule of Civil Procedure 12(b)(1), a defendant may challenge jurisdictional

25  allegations two ways: (1) a "facial" attack that accepts the truth of the plaintiff's allegations but

26  asserts that they are insufficient on their face, or (2) a "factual" attack that contests the truth of the

27  plaintiff's factual allegations. *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014); *see also*

28

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1). In a facial attack, the court resolves the motion as it would under Rule 12(b)(6), accepting all reasonable inferences in the plaintiff's favor and determining whether the allegations are sufficient. *Id.* at 1122. In a factual attack, the court applies the evidentiary standard it would for summary judgment. *Id.* Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A complaint may also be dismissed under Rule 12(b)(6) if it fails to allege a cognizable legal theory or fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I.    **Plaintiffs' claims, all challenging the Government's implementation of the expedited removal statute, should be dismissed pursuant to 8 U.S.C. § 1252(A)(2)(A).**

The unambiguous text of 8 U.S.C. § 1252(a)(2)(A) and § 1252(e)(3) forecloses jurisdiction over all of Plaintiffs' claims. Section 1252(a)(2)(A) provides that "notwithstanding any other provision of law" and "except as provided in subsection (e)," no court has jurisdiction over any challenge to "decision[s] by the [Secretary of Homeland Security] to invoke" the expedited removal provisions or to review any "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(ii), (iv).[4] Section 1252(e), in turn, provides that "[j]udicial review of determinations under section 1225(b) of this title *and its implementation* is available in an action instituted in the United States District Court for the District of Columbia." 8 U.S.C. § 1252(e)(3)(A) (emphasis added); *see id.*

---

[4] Sections 1225(b) and 1252(e) refer to the Attorney General, but those functions have been transferred to the Secretary for Homeland Security. *See* 6 U.S.C. §§ 251, 552(D); *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

§ 1252(e)(3)(A)(ii) (stating that such review covers determinations of "whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary] to implement such section, is not consistent with application provisions of this subchapter or is otherwise in violation of law"). Put simply, any regulation, rule, or policy implementing § 1225(b) may be challenged, if at all, only in the District Court for the District of Columbia. *See AILA*, 199 F.3d at 1358 ("The statute permits judicial review of the 'implementation' of 8 U.S.C. § 1225(b), the provision spelling out the procedures for inspecting applicants for admission" "only in the United States District Court for the District of Columbia."). Indeed, given the importance of the expedited removal system to the inspection of noncitizens at or near the border, Congress meant to "cabin judicial review and to have the validity of the new law [or its implementation] decided promptly." *AILA*, 199 F.3d at 1364; *see* 8 U.S.C. § 1252(e)(3)(D) (providing cases should be "expedite[d] to the greatest possible extent"). As the Supreme Court explained, a "major objective of [the law codifying § 1225(b)(1)] was to protect the Executive's discretion from undue interference by the courts; indeed, that can fairly be said to be the theme of the legislation." *Thuraissigiam*, 140 S. Ct. at 1966 (internal quotation marks and formatting omitted).

Congress thus channeled all challenges to agency actions, rules, or policies implementing the provisions of § 1225(b)(1) to the District of Columbia, and that jurisdictional limitation applies regardless of whether a plaintiff challenges a discrete expedited removal action particular to him or broader rules or policies reflecting a systemwide implementation of the expedited removal statute. *See Make the Road New York v. Wolf*, 962 F.3d 612, 627 (2020) (holding that review under § 1252(e)(3) is "not textually confined to claims arising from individual removal actions" but extends to challenges to procedures and policies adopted to implement the statute "divorced from any individual determination").

Here, all of Plaintiffs' claims pose precisely such a challenge to a policy implementing § 1225(b)(1). *See* 8 U.S.C. §§ 1252(a)(2)(A)(iv), (e)(3). For their claims alleging a right to speedier credible fear interviews under the APA and due process clause—Counts IV and V—Plaintiffs

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

allege that "Defendants have a *policy* or *practice* of delaying the provision of credible fear interviews to asylum seekers who express a fear of return." 4AC, ECF 198, ¶ 40 (emphasis added); *see id.*, ¶¶ 159, 164 (claiming the "practice of delaying credible fear interviews" violates due process and constitutes agency action "unlawfully withheld or unreasonably delayed" under the APA). Plaintiffs' claims thus directly challenge how Defendants implement § 1225(b)(1)(A), which provides for credible fear interviews, though not within any particular timeframe. Plaintiffs have never disputed—but in fact affirmatively state—that this policy of supposedly delaying credible fear interviews is a product of the Government's implementation of § 1225(b)(1)(A), thus jurisdiction is foreclosed in this district to determine whether the policy "is constitutional" or "otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A)(i)-(ii).

The same holds true for Plaintiffs' bond hearing claims—Counts I, II, III, V, and VI are all unreviewable except in the District of Columbia. In alleging that they are entitled to bond hearings—with a seven-day turnaround and featuring their preferred procedures—Plaintiffs ask the Court to construe § 1225(b)(1)(B)(ii), which provides that if a noncitizen in expedited removal proceedings is found to have a credible fear of persecution, he "shall be detained for further consideration of the application for asylum." *See Cancino Castellar v. Mayorkas*, No. 17-CV-00491-BAS-AHG, 2021 WL 4081559, at *6 (S.D. Cal. Sept. 8, 2021) (holding that challenge to whether § 1225(b)(1)(B)(ii) is constitutional or otherwise lawful "concerns a means by which to carry out, accomplish, or provide an instrument for a mandatory detention applicable to individuals subject to expedited removal proceedings and thus concerns the implementation of Section 1225(b)(1)"). To be precise, Plaintiffs reference *Matter of M-S-* to challenge what they describe as an alleged "*policy* of not providing bond hearings to class members." 4AC, ECF 198, ¶ 148 (emphasis added); *see id.*, ¶ 61 ("Pursuant to *Matter of M-S-*, Defendants have a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection . . . ."). *Matter of M-S-* is an interpretation of § 1225(b)(1)(B)(ii), with the Attorney General looking squarely at the "statutory text" to conclude that "all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond." 27 I.

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

& N. Dec. at 515, 518-19. In short, *Matter of M-S-* is a straightforward application of § 1225(b)(1)(B)(ii)—which is part of § 1225(b). *See id.* at 515 ("[t]he text of the [INA] mandates th[e] conclusion" reached by the Attorney General). And because § 1252(e)(3) directs all "determinations under section 1225(b) . . . and its implementation" to the District of Columbia, this Court lacks jurisdiction over all those claims asserting that Defendants' actions, including the adjudication in *Matter of M-S-*, deprives BH class members of the bond hearings they think are due. *See* 4AC, ECF 198, ¶ 7.

Even if Plaintiffs were to argue that the Government's bond hearing and credible fear interview policies fall outside the scope of § 1252(a)(2)(A)(iv) because they were not *lawfully* adopted, "§ 1252(a)(2)(A)(iv) requires only that the disputed policies be 'adopted'"—full stop. *See M.M.V. v. Garland*, 1 F.4th 1100, 1107 (D.C. Cir. 2021) (stating that § 1252(a)(2)(A)(iv)'s "bar on judicial review of certain 'policies adopted' would be ineffective if 'adopted' were construed to mean 'lawfully adopted' as determined by a reviewing court."). Indeed, Plaintiffs cannot have it both ways: either the alleged policies do not implement § 1225(b)—a position belied by the 4AC; or they do implement the statute, thus rendering them subject to the jurisdictional limitations in § 1252(a)(2)(A).

Plaintiffs might also argue that § 1252(a) and (e) do not apply because Defendants have not adopted any formal, *written* policies governing when credible fear interviews or bond hearings would be provided to noncitizens subject to expedited removal. But as the D.C. Circuit has held in construing § 1252(e)(3), "adoption does not require a writing." *M.M.V.*, 1 F.4th at 1106. The word "adopt" has multiple meanings, one of which is "to take up and practice or use." Merriam-Webster's Collegiate Dictionary 16 (10th ed. 1999). Not only that, § 1252(e)(3) notably restores review of what § 1252(a)(2)(A) bars only with respect to *written* policies—suggesting that, along with written policies, § 1252(a)(2)(A) also contemplates unwritten policies being adopted to implement the expedited removal statute, but not being subject to judicial review. *See M.M.V.*, 1 F.4th at 1106-07 ("the statutory exception permits review of any '*written* policy directive, *written* policy guideline, or *written* procedure" to implement section 1225(b)") (emphasis in original);

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

*accord Am. Immigr. Laws. Ass'n v. Reno*, 18 F. Supp. 2d 38, 58 (D.D.C. 1998), *aff'd*, 199 F.3d 1352 (D.C. Cir. 2000) ("this Court cannot review unwritten policies or practices but rather must limit its review to a 'regulation, a written policy directive, written policy guideline, or written procedure'"). Indeed, the structure and context of § 1252 make clear that "Congress knew exactly how to differentiate between written and unwritten policies when it intended to do so," *M.M.V. v. Barr*, 456 F. Supp. 3d 198, 211 (D.C. 2020)—for instance, repeating in § 1252(e)(3)(A)(ii) that review would be permitted only as to "whether such regulation, or a *written* policy directive, *written* policy guideline, or *written* procedure issued by or under the authority of the Attorney General to implement such section" is lawful. 8 U.S.C. § 1252(e)(3)(A)(ii) (emphasis added). Congress's decision to repeat "written" three times in a subsequent section of the same statute suggests that if it intended the word "adopted" to mean "written," it would have said so in § 1252(a)(2)(A)(iv). *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *M.M.V.*, 1 F.4th at 1106-07 (holding as such as to § 1252(e)(3)). Finally, § 1252(a)(2)(A) also reaches "the application of [§ 1225(b)(1)] to individual aliens, including the determination made under [§] 1225(b)(1)(B)." 8 U.S.C. § 1252(a)(2)(A)(iii). Thus, even if the Court were to find that Plaintiffs are not challenging any actual policy, they at best would be challenging an amalgamation of individual decisions—which § 1252(a)(2)(A)(iii) specifically bars.

## II.    All counts should be dismissed for failure to state a claim.

### A.    Counts I and II (failure to provide bond hearings within seven days violated due process and is contrary to constitutional rights under the APA) do not state a claim for relief.

#### i. Plaintiffs lack a sufficient interest in release during removal proceedings to support a due process claim for bond hearings after only seven days.

The Due Process Clause does not afford Plaintiffs *any* right to a bond hearing, let alone a bond hearing within seven days of request. As *Thuraissigiam* explicitly held, noncitizens without

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

substantial connection to this country apprehended shortly after their illegal entry have only those due process rights provided by statute. 140 S. Ct. at 1983. Thus, for Plaintiffs to prevail on their claims, they would have to locate those alleged rights in the governing statute, 8 U.S.C. § 1225(b)(1). But § 1225(b)(1)(B)(ii) requires that a noncitizen "shall be detained"—and notably makes no mention of any right to a bond hearing at all, let alone one along the immediate timeline that Plaintiffs demand. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) ("Congress could have created an expedited removal scheme based entirely on the [Secretary's] discretion, . . . [but] it created" "limited procedural rights for arriving aliens" subject to expedited removal.). That being so, Plaintiffs cannot assert any liberty interest in their rapid release into the United States beyond those already provided by statute and regulation, and absent any liberty interest, have no basis to insist that this Court drastically alter § 1225(b)(1)(B)(ii) by imposing rights or processes found nowhere in statute or regulation. *Thuraissigiam*, 140 S. Ct. at 1982-83; *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application.").

Plaintiffs not only claim that due process affords them the right to a bond hearing—they believe they are entitled to one within seven days of request and with their preferred procedures. 4AC, ECF 198, Prayer for Relief. These requirements are plainly inconsistent with the statute and therefore exceed the constitutional rights available to noncitizens subject to the expedited removal process. *See Jennings,* 138 S. Ct. at 845; *Thuraissigiam*, 140 S. Ct. at 1982-83. Even in contexts where the prospect of indefinite detention loomed much larger than in this case—where removal proceedings have a definite end point—the Supreme Court has not gone farther than to hold that constitutional concerns are implicated only after six months of detention—a far cry from the seven days Plaintiffs ask for here. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), which dealt with detention under 8 U.S.C. § 1231, the Supreme Court articulated a six-month period of presumptively reasonable detention for noncitizens who had developed extensive ties to the United States—with the qualification that the presumption "does not mean that every alien not removed must be released after six months." *Id.* at 701. "To the contrary," it held, "an alien may be held in

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

1    confinement until it has been determined that there is no significant likelihood of removal in the

2    reasonably foreseeable future." *Id.*; *see Demore v. Kim*, 538 U.S. 510, 513 (2003) (finding that a

3    "brief" six-month detention of a noncitizen—who had extensive ties to the United States—during

4    the pendency of removal proceedings did not violate due process). There, the Supreme Court

5    recognized that noncitizens "challenging their detention following final orders of deportation were

6    ones for whom removal was no longer practically attainable"—that is, "the detention there did not

7    serve its purported immigration purpose." *Demore*, 538 U.S. at 527. Put differently, the detention

8    had "no definite termination point." *Id.* at 528.

9        The situation is altogether different here. Detention under § 1225(b)(1)(B)(ii) does have a

10    definite end point, since removal proceedings invariably conclude—whether with a removal order

11    or grant of some relief or protection—and the termination of detention once that critical

12    immigration purpose has been served. For this reason, the Supreme Court took care to circumscribe

13    its opinion in *Zadvydas* to § 1231 detention, acknowledging that noncitizens "who have not yet

14    gained initial admission to this country"—such as Plaintiffs—present a very different question"

15    from § 1231 detainees. *Zadvydas*, 533 U.S. at 682. Thus, Plaintiffs' assertion that they are entitled

16    to bond hearings within seven days—along with their preferred procedures—not only lacks a

17    statutory basis or clear rationale, but also is at odds with Supreme Court precedent. *See id.* at 701.

18        In its prior order granting a preliminary injunction—since vacated, ECF 183—the Court

19    noted that there were cases "[e]lsewhere in the civil commitment context" to justify a seven-day

20    limit for bond hearings. ECF 110, at 13. But those cases cannot be squared with the Supreme

21    Court's longstanding recognition that immigration detention is defined by a particular set of

22    executive powers, legitimate interests, and mitigating factors (including that noncitizens can

23    always terminate detention by returning to their country of nationality) that render it unique and

24    insusceptible to the kinds of narrow and unqualified restrictions Plaintiffs seek to impose. *See,*

25    *e.g.*, *Mathews v. Diaz*, 426 U.S. 67, 80 (1976) ("Congress regularly makes rules that would be

26    unacceptable if applied to citizens."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)

27    ("any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in

28

14
DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government."). As *Thuraissigiam* explained regarding the limited due process rights of a noncitizen apprehended after illegal entry, "the power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority to decide which aliens to admit; and a concomitant of that power is *the power to set the procedures to be followed in determining whether an alien should be admitted*." 140 S. Ct. at 1982 (internal quotation marks and citations omitted) (emphasis added). At most, as noncitizens "seeking initial admission to the United States," the BH class members can seek only "a privilege," as they have "no constitutional rights regarding [their] application." *See Landon*, 459 U.S. at 32. And while Plaintiffs may be dissatisfied with § 1225(b)(1)(B)(ii)—including the absence of any bond hearings—it is well-settled that "an alien on the threshold of initial entry stands on a different footing," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), and "[w]hatever the procedure authorized by Congress is, it is due process as far as" the noncitizen seeking entry is concerned. *Knauff*, 338 U.S. at 544. *See Thuraissigiam*, 140 S. Ct. at 1982 (Ninth Circuit's "holding that respondent had a constitutional right to expedited removal proceedings that conformed to the dictates of due process" was "contrary to more than a century of precedent.") (internal quotations marks omitted).

### ii. The Supreme Court has repeatedly affirmed the Government's authority to detain noncitizens without bond hearings during removal proceedings.

The proper test for evaluating Plaintiffs' claims comes from the Supreme Court's substantive due process analysis of executive immigration detention authority, and is limited to a deferential review of whether the statute continues to "serve its purported immigration purpose." *Demore*, 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690); *see Reno v. Flores*, 507 U.S. 292, 306 (1993); *Carlson v. Landon*, 342 U.S. 524, 540 (1952); *Wong Wing v. United States*, 163 U.S. 228, 235-36 (1896); *see also Demore*, 538 U.S. at 532 (Kennedy, J., concurring). Consistent with this established framework, the Supreme Court, and the Ninth Circuit, have repeatedly upheld the government's authority to detain noncitizens with far more substantial ties to the United States for

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

significantly longer periods than Plaintiffs seven-day release request. *See Barrera-Echavarria v. Rison,* 44 F.3d 1441, 1449-50 (9th Cir.1995); *Zadvydas*, 533 U.S. at 701; *Demore,* 538 U.S. at 531; *Rodriguez v. Robbins II,* 804 F.3d 1060, 1069-70 (9th Cir. 2015. In each case, the government's interests—whether in the detention of criminal noncitizens, during removal preparations, or associated with the executive's plenary power in regulating entry—were sufficient to justify detention.

Even if this was not the proper test, Plaintiffs' claims nonetheless fail under *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The Supreme Court in *Jennings* reaffirmed that due process is "flexible," only "call[ing] for such procedural protections as the particular situation demands." 138 S. Ct. at 852. The Supreme Court, moreover, has "repeatedly stressed" that due process requires an individualized assessment of multiple factors, including "the private interest that will be affected by the official action"; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and "the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334. A strict seven-day rule for bond hearings based on mere policy preferences gives short shrift to that governmental interest. Congress passed § 1225(b)(l)(B)(ii) in part as a response to findings that "thousands" of noncitizens arrive in the United States each year, seek "asylum immediately upon arrival," and when "released into the general population" "do not return for their hearings." H.R. Rep. No. 104-469, 117-18 (1995). Congress also determined that such incentives were mitigated "in districts ... where detention capacity has increased and most [] aliens can be detained." *Id.* Even if detention were not statutorily required, the blunt way in which Plaintiffs have drawn their claims leaves no room to account for the practical difficulties that would arise if agency personnel were forced to build a whole infrastructure, along Plaintiffs' exact specifications, to conduct rapid bond hearings in thousands of cases each month—a scenario that 8 U.S.C. § 1225(b)(1) simply does not contemplate.

Against the clear backdrop establishing the Supreme Court's narrow conception of due

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

process for noncitizens seeking entry into the United States, the Attorney General issued *Matter of M-S-*. Specifically, he found that 8 U.S.C. § 1225 "cannot be read to contain an implicit exception for bond" and that "[t]here is no way to apply [its] provisions *except as they were written*—unless paroled, an alien must be detained until his asylum claim is adjudicated." 27 I. & N. Dec. at 510, 517 (emphasis added). In other words, because *Matter of M-S-* does nothing more than interpret a statutory provision, Plaintiffs' claim of a constitutional right to a bond hearing is reduced to one asserting that § 1225(b)(1)(B)(ii)—the provision that *Matter of M-S-* applies—is unconstitutional, insofar as it fails to provide them with what they believe is guaranteed by due process. *Id.* at 515. Of course, the burden on Plaintiffs to make out such a claim is substantial. Courts "do not impute to Congress an intent to pass legislation that is inconsistent with the Constitution," *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994), and "acts of Congress enjoy a strong presumption of constitutionality," *Schwenk v. Hartford*, 204 F.3d 1187, 1204 (9th Cir. 2000). *See Perez v. Marshall*, 946 F. Supp. 1521, 1531 (S.D. Cal. 1996) ("A party challenging the constitutionality of a statute bears a heavy burden of proof."). Here, where due process is defined by and limited to what the statute provides, Plaintiffs cannot meet their heavy burden to show that § 1225(b)(1)(B)(ii) is unconstitutional. *See Thuraissigiam*, 140 S. Ct. at 1983. Thus, Counts I and II—which allege a constitutional violation—are wholly unsupported and must be dismissed.

### B.  Count III (lack of notice-and-comment rulemaking violates the APA) does not state a claim for relief.

Plaintiffs seek to set aside *Matter of M-S-* as "a final agency action" that did not undergo notice-and-comment rulemaking. ECF 198, ¶ 152. But *Matter of M-S-* is an adjudication—not a rule—and as such was not required to go through notice-and-comment procedures.

The Attorney General has authority to review determinations in immigration proceedings and perform other acts he deems necessary to carry out his duties related to the immigration and naturalization of noncitizens. 8 U.S.C. § 1103(g)(2). And while the Attorney General has vested the BIA with power to issue precedential decisions, 8 C.F.R. § 1103.1(d)(1), (h), he retains final

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

decision-making authority and may certify cases to himself to review and decide, 8 C.F.R. § 1003.1(g)-(h). Through this adjudicatory scheme, the Attorney General and the BIA work in concert to give statutory terms "concrete meaning through a process of case-by-case adjudication" that is distinct from generalized rulemaking. *Aguirre-Aguirre*, 526 U.S. at 425. Not only that, Congress has specifically provided that for all "laws relating to the immigration and naturalization of aliens," the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1).

Not surprisingly, then, the Ninth Circuit exempts "adjudications" from the notice-and-comment requirement. *See MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1151 (9th Cir. 2008); *see also Providence Yakima Med. Ctr. v. Sebelius*, 611 F.3d 1181, 1187 (9th Cir. 2010) ("no rule was promulgated as this was a case-by-case adjudication, and did not involve rulemaking of any kind."). Adjudications are distinguishable from rulemaking in two principal ways: First, adjudications, unlike rulemaking, "resolve disputes among specific individuals in specific cases," and second, they "have an immediate effect on specific individuals." *Yesler Terrace Comm. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994). *Matter of M-S-* is unquestionably an adjudication by those standards, where the decision resolved a dispute involving a specific individual in a specific case (the respondent "M-S-"), and also had an immediate effect on that individual (the decision reversed the order granting bond to the respondent). 27 I. & N. Dec. at 519. Further, the rationale undergirding the notice-and-comment requirement—that the agency receive sufficient input before issuing a decision—poses less of a concern here, as the Attorney General received briefs from several amici. 27 I. & N. Dec. at 516.

Lastly, any concerns that an agency might exceed its discretion by promulgating new rules through adjudication are not implicated here. *See Miguel-Miguel v. Gonzales*, 500 F.3d 941, 950 (9th Cir. 2007) (noting the possibility of an agency "abus[ing] its discretion by announcing new rules through adjudication," "such as when the rule operates retroactively and disturbs settled expectations"). In *Matter of M-S-*, the Attorney General straightforwardly applied the relevant statutory provision to the case before him, and Plaintiffs do not claim that the decision is somehow

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

an improper retroactive rule. And while the decisions of the Attorney General do have precedential effect and are entitled to deference, 8 U.S.C. § 1103(g), the impact of *Matter of M-S-* outside the resolution of the respondent's case is purely forward-looking. Count III should also be dismissed for failing to state a claim for relief.

### C. Count IV (alleged "delays" of credible fear interviews violate due process) does not state a claim for relief.

Plaintiffs allege that due process guarantees any noncitizen subject to expedited removal the right to a credible fear interview within ten days of a request for asylum. ECF 198, Prayer for Relief. But a noncitizen "seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application." *Landon*, 459 U.S. at 32. Thus, while Plaintiffs frame their demand for speedier credible fear interviews in constitutional terms, nothing in the Due Process Clause affords them the right to dictate an absolute deadline by which an asylum claim raised during expedited removal proceedings must be heard and considered. Of course, Congress routinely, and permissibly, makes rules concerning noncitizens that "depend on both the character and the duration of [their] residence," *Diaz*, 426 U.S. at 83, and it is well-settled that noncitizens "receive constitutional protections when they have come within the territory of the United States and developed *substantial connections* with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added). Only "once an alien *gains admission* to our country and begins to develop *the ties that go with permanent residence* [does] his constitutional status change[] accordingly." *Landon*, 459 U.S. at 32 (emphasis added*); see Thuraissigiam*, 140 S. Ct. at 1963-63. But none of that applies to the CFI class members here, who are all noncitizens apprehended shortly after illegally crossing the border. As *Thuraissigiam* made clear, such noncitizens "at the threshold of initial entry cannot claim any greater rights under the Due Process Clause" than what the statute affords them, 140 S. Ct. at 1964, and 8 U.S.C. § 1225(b)(1)(B) simply does not require a stringent ten-day period during which all credible fear interviews of all noncitizens in expedited removal proceedings nationwide must be completed.

The argument that Plaintiffs are due some additional, extra-statutory process by virtue of

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

their illegal entry was rejected in *Thurassigiam*, where the noncitizen argued that Supreme Court precedent holding that the only process due was that conferred by statute. The Supreme Court addressed this argument, noting that the respondent argued that this rule did "not apply to him because he was not taken into custody the instant he attempted to enter the country (as would have been the case had he arrived at a lawful port of entry). Because he succeeded in making it 25 yards into U. S. territory before he was caught, he claims the right to be treated more favorably." *Thuraissigiam*, 140 S. Ct. at 1982. The Supreme Court rejected it. It did so for the commonsense reason that the "rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil." *See id.*

Furthermore, the ten days that Plaintiffs propose as an absolute deadline is arbitrarily conceived and would strip the agency of the flexibility it needs to schedule and conduct numerous fact-intensive credible fear interviews in an orderly way. Indeed, the high number of illegal entries into the United States already exerts an incredible amount of pressure on agency personnel, who must work with available resources to process tens of thousands of asylum claims each year, and Plaintiffs' demand for a judicially imposed ten-day deadline blithely ignores that reality, in addition to lacking any basis in law. *See Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978) (holding that the D.C. Circuit had "seriously misread or misapplied . . . statutory and decisional law cautioning reviewing courts against engrafting their own notions of proper procedures upon agencies entrusted with substantive functions by Congress"). This Count should accordingly be dismissed.

### D. Count V ("delays" of credible fear interviews and bond hearings violate the APA) and Count VI (denial of procedural protections is contrary to constitutional right under the APA) do not state a claim for relief.

Plaintiffs allege that by failing to provide credible fear interviews and bond hearings to class members within their preferred timeframes, Defendants have breached the duty under 5 U.S.C. § 555(b) to conclude matters presented to them "within a reasonable time." 4AC, ECF 198, ¶ 164 (also alleging that 5 U.S.C. § 706(1) permits them to "compel agency action unlawfully

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

withheld or unreasonably delayed"). But, as an initial matter, the APA does not permit judicial review of decisions traditionally regarded as "committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993) (quoting 5 U.S.C. § 701(a)(2)). Such decisions are "presumed immune from judicial review under § 701(a)(2)," as they involve "a complicated balancing of factors . . . peculiarly within [an agency's] expertise," so that there is "no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985). Under these principles, which are "greatly magnified in the deportation context," *Morales de Soto v. Lynch*, 824 F.3d 822, 828 (9th Cir. 2016), this Court would be hard-pressed to provide meaningful review of Counts V and VI, given the extreme exactitude with which Plaintiffs have drawn their preferred timelines for bond hearings and credible fear interviews. Section 1225(b)(1)(A)(ii), by contrast, simply provides for a credible fear interview if a noncitizen subject to expedited removal indicates a fear of persecution, while § 1225(b)(1)(B)(ii) states that if the noncitizen is determined to have a credible fear, he "shall be detained for further consideration of the application for asylum." There is no mention of any deadline by which the credible fear interview must occur, nor any contemplation that a bond hearing should be granted once a credible fear has been established. Instead, where the statute allows the agencies considerable leave and discretion to carry out their broadly defined statutory duties, and where courts are unlikely to have detailed or percipient insight into the operational challenges of scheduling procedures for tens of thousands of individuals each month, there is no meaningful standard against which the agency's administration of the expedited removal statute could be judged. *Heckler*, 470 U.S. at 821.

This Court has already correctly addressed the allegations in these counts, finding that claims of "unreasonable delay" are "not suitable to resolution by means of class action." Order, ECF 91, at 11-12. As the Court correctly observed, "the absence of any firm regulatory or statutory deadline will require [it] to engage in individualized, fact-dependent inquiries of 'reasonableness,' and such necessity requires a finding that the Bond Hearing class has failed here to adequately state a claim upon which relief can be granted." ECF 91, at 17. Nothing has changed as to Plaintiffs' claims of administrative delay that would affect the Court's reasoning for dismissing

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

them in the first place. As explained above, neither the Constitution nor any statute or regulation sets out a requirement that noncitizens subject to expedited removal must be afforded a credible fear interview within ten days, or a bond hearing within seven days (or any bond hearing at all). Thus, however they try to frame their claims of undue delay, whether by invoking the Constitution or the APA, Plaintiffs are not entitled to the contrived deadlines they seek to impose on Defendants, nor should they be allowed to commandeer the agency's orderly administration of 8 U.S.C. § 1225(b)(1) based on their mere preferences for a speedier process.

As for the "procedural protections" Plaintiffs seek to compel under the APA, that claim is indistinguishable from Count I, in which they claim to be entitled to a bond hearing with their preferred procedures under the Due Process Clause. For the reasons given in relation to Count I, Plaintiffs' APA claim should also be dismissed—namely, that they are not entitled to any bond hearings under the Due Process Clause or 8 U.S.C. § 1225(b)(1), let alone bond hearings subject to all the strictures Plaintiffs would impose. Plaintiffs' claim regarding bond hearing procedures should also be dismissed, where they fail to identify a final agency action and thus there is no judicial review under 5 U.S.C. § 706(2). IJs prepare a bond memorandum as part of a record of the bond proceedings if the bond decision is appealed to the BIA. *Matter of Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999); Immigration Court Practice Manual, § 9.3(e)(iv). And EOIR's manual explains that bond hearings are generally not recorded, although it does not prohibit it. Immigration Court Practice Manual, § 9.3(e)(iii); *Matter of Chirinos*, 16 I. & N. Dec. 276, 277 (BIA 1977). In short, there is no final policy implicated in Plaintiffs' challenge, and Count VI is not subject to review under § 706(a)(2). Counts V and VI should be dismissed for failure to state a claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Fourth Amended Complaint should be dismissed.

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

Dated: March 3, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation,
District Court Section

EREZ REUVENI
Assistant Director
Office of Immigration Litigation,
District Court Section

SARAH S. WILSON
Assistant Director
Office of Immigration Litigation,
Appellate Section

JESI J. CARLSON
Senior Litigation Counsel
Office of Immigration Litigation,
Appellate Section

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation,
Appellate Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 616-4458
Lauren.C.Bingham@usdoj.gov

DAVID KIM
Trial Attorney
Office of Immigration Litigation,
Appellate Section

I certify that this memorandum contains 8,358 words, in compliance with the Local Civil Rules.

DEFENDANTS' MOTION TO DISMISS
FOURTH AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

23

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 3, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, who are registered users of CM/ECF, via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel

DEFENDANTS' MOTION TO DISMISS
THIRD AMENDED COMPLAINT

(Case No. 2:18-cv-00928-MJP)

Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868 Ben Franklin Station
Washington, D.C. 20044
(202) 616-4458