Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YOLANY PADILLA, *et al.*,

              Plaintiffs-Petitioners,

        v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

            Defendants-Respondents.

Case No. 2:18-cv-00928-MJP

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDMEND COMPLAINT**

Noted on Motion Calendar:
April 17, 2023

ORAL ARGUMENT REQUESTED

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

    I.    8 U.S.C. § 1252(a)(2)(A)(iv) Does Not Bar Review of Plaintiffs' Claims. ...................... 2

    II.  The Bond Hearing Class Has Stated a Due Process Claim to a Prompt Bond Hearing. .... 6

        A.  Bond Hearing Class Members Have a Due Process Right to a Bond Hearing. ............ 6

            1.    Substantive Due Process Requires an Individualized Bond Hearing. .............. 6

            2.    Procedural Due Process Requires an Individualized Bond Hearing. ............... 10

            3.    *Thuraissigiam* Does Not Preclude Plaintiffs' Claim. .................................... 11

            4.    Defendants' Other Due Process Arguments Lack Merit. .............................. 16

        B.  Due Process Also Requires That the Hearing Be Promptly Afforded. ....................... 18

    III. CFI Class Members Have a Due Process Right to a Prompt Credible Fear Interview..... 20

    IV. The APA Entitles Plaintiffs to Prompt CFIs, Prompt Bond Hearings, and Procedural Protections in Bond Hearings. ......................................................................... 22

CONCLUSION...................................................................................................... 23

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

## INTRODUCTION

2    Plaintiffs filed the Fourth Amended Complaint in light of the Ninth Circuit Court of

3 Appeals' July 29, 2022 order, remanding the case to this Court for further consideration of

4 intervening Supreme Court decisions, including *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057

5 (2022), *Biden v. Texas*, 142 S. Ct. 2528 (2022), and *Department of Homeland Security v.*

6 *Thuraissigiam*, 140 S. Ct. 1959 (2020). The Fourth Amended Complaint addresses this

7 intervening precedent by eliminating requests for class-wide injunctive relief and eliminating

8 causes of action based on prior interpretations of the relevant statutory violations. Bond Hearing

9 (BH) Class members and Credible Fear Interview (CFI) Class members are entitled to move

10 forward with their claims that their prolonged detention, including through delayed credible fear

11 interviews, constitutes a deprivation of liberty without due process of law.

12    Defendants' motion recycles previously rejected arguments that 8 U.S.C. § 1252 bars

13 judicial review; no intervening case law undermines this Court's prior holdings that §

14 1252(a)(2)(A) and § 1252(e)(3) are inapplicable. Defendants' reliance on the Supreme Court's

15 decision in *Thuraissigiam* is misplaced, as Defendants mistakenly conflate challenges to

16 admission and removal with what is at issue: challenges to prolonged and arbitrary detention

17 caused by Defendants' failure to timely provide credible fear interviews and individualized

18 custody hearings. In addition, the Court should reject Defendants' effort to dismiss the due

19 process claim of the CFI Class, including by introducing unproven assertions as to the feasibility

20 of a deadline. Those assertions are improper at the motion to dismiss stage, but if the Court is

21 inclined to entertain them, it should first allow discovery to develop the record. Furthermore,

22 Plaintiffs preserve their contentions that they have stated reviewable claims to prompt credible

23

24

1  fear interviews and bond hearings under the Administrative Procedure Act.[1]

2                                    **ARGUMENT**

3         Defendants fail to demonstrate, as they must under Rule 12(b)(1), that Plaintiffs'

4  allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*

5  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). As for Defendants' motion to dismiss under Rule

6  12(b)(6), Plaintiffs are able to show that the "complaint . . . contain[s] sufficient factual

7  matter . . . to state a claim to relief that is plausible on its face." *Bain v. California Teachers*

8  *Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (citation omitted). In conducting the Rule 12(b)(6)

9  inquiry, the Court "presumes that the facts alleged by the plaintiff are true . . . . [and] draw[s] all

10  reasonable inferences from the complaint in [the plaintiff's] favor." *Brown v. Elec. Arts,*

11  *Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013) (internal quotation marks omitted).

12  **I.    8 U.S.C. § 1252(a)(2)(A)(iv) Does Not Bar Review of Plaintiffs' Claims.**

13         The Court has thrice rejected Defendants' arguments that 8 U.S.C. § 1252(a)(2)(A)(iv)

14  eliminates jurisdiction over Plaintiffs' action. *See Padilla v. U.S. Immigration & Customs Enf't,*

15  387 F. Supp. 3d 1219, 1227 (W.D. Wash. 2019) (order modifying PI), Dkt. 149; Dkt. 100 at 2–3

16  (denying motion to reconsider); Dkt. 91 at 6–7 (denying motion to dismiss). The Ninth Circuit,

17  too, has already reached the merits of Plaintiffs' claims, further underscoring that jurisdiction is

18  proper. Defendants provide no reason to reverse course and instead repeat previously rejected

19  arguments. Defendants again construe Plaintiffs' claims as challenging policies implementing §

20  1225(b) and argue that the jurisdictional provisions provide that such implementations "may be

21

22

23  ───────────────

[1] Plaintiffs inform the Court that they have elected to withdraw Count III of their complaint regarding the lack of rulemaking to address the change of law announced in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2018). They therefore do not respond to the government's arguments on this basis.

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 2
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

challenged, if at all, only in the District Court for the District of Columbia." ECF 200 at 9. The Court has dismissed this position for two primary reasons and should do so again.

First, all of Plaintiffs' claims challenge practices that unlawfully prolong the length of their detention. Such claims are not covered by § 1252(e)(3), which is "addressed to challenges to the removal *process* itself, not the detentions attendant upon that process." ECF 149 at 10; *see also* Dkt. 100 at 3 ("Granting Plaintiffs their constitutional rights to contest an indeterminate period of detention is not a challenge to the removal proceedings themselves."). Text, structure, and precedent support the Court's conclusion. Section 1252(e)(3) "is included as part of a statute that targets 'Judicial review of *orders* under section 235(b)(1) . . . .'" ECF 149 at 10 (emphasis added). And the Supreme Court has already held, there is jurisdiction to review the legality of detention under § 1225(b) where, as here, petitioners were "not asking for review of an order of removal; . . . not challenging the decision to detain them in the first place or seek removal; and . . . not even challenging any part of the process by which their removability will be determined." *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018); *see also* Dkt. 149 at 10–11; Dkt. 100 at 3 (applying "the rationale upon which the *Jennings* court found jurisdiction"); Dkt. 91 at 6 (same);[2] *see also Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) ("[U]nreasonably prolonged detention under 1225(b) [for detained arriving noncitizen] without a bond hearing violates due process." (citation omitted)); *Hong v. Mayorkas*, No. 2:20-cv-1784-

---

[2]    The government cites in support an unpublished, out-of-district decision, *Cancino Castellar v. Mayorkas*, No. 17-cv-00491-BAS-AHG, 2021 WL 4081559 (S.D. Cal. Sept. 8, 2021). That case challenged delays in presentment to an IJ of those who passed a credible fear. The government neglects to mention that, on reconsideration of the cited order, the court found that the challenge was not barred by Section 1252, *see Castellar v. Mayorkas*, 17-cv-491-JO-AHG, 2022 WL 2973424, at *3–5 (S.D. Cal. July 27, 2022), and—moreover—the court there had no occasion to consider this Court's holding specific to challenges to practices that unconstitutionally prolong detention.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 3
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

RAJ-TLF, 2021 WL 8016749, at *3 (W.D. Wash. June 8, 2021), *report and recommendation adopted*, No. 20-CV-01784-LK, 2022 WL 1078627 (W.D. Wash. Apr. 11, 2022).

The government itself has previously agreed that courts have habeas jurisdiction over challenges to detention under § 1225(b)(1)(B)(ii). In their previous motion to dismiss and motion to reconsider, Defendants conceded that a detained noncitizen awaiting a credible fear interview may file a habeas petition to challenge prolonged detention pending the credible fear determination. ECF 92 at 5 ("Section 1252(a)(2)(A)(iv) does not bar challenges to prolonged mandatory detention and putative CFI class members are free to file individual habeas petitions challenging the constitutionality of their detention . . . ."); ECF 76 at 6 ("Defendants do not dispute that Plaintiffs could (consistent with 28 U.S.C. § 2241) bring a habeas challenge to the reasonableness of their immigration detention . . . .").[3]

Defendants' motion to dismiss, if accepted, would leave BH Class members—and countless other noncitizens who are similarly situated—without any judicial forum to hear or correct their unconstitutional detention. Plaintiffs' challenges to unconstitutional executive detention lie at the core of the historical use of habeas, as protected by the U.S. Constitution. *See* U.S. Const. art. I, § 9, cl. 2 (Suspension Clause); *Thuraissigiam*, 140 S. Ct. at 1981 (affirming that Suspension Clause protects, at a minimum, habeas challenges to detention). Accordingly, this Court recognized, "[i]t is now clear that federal district court has habeas jurisdiction under 28 U.S.C. § 2241 to review complaints by detained [noncitizens] for constitutional claims and

---

[3]     Defendants try to distinguish Plaintiffs' credible fear claims based on the remedy sought (a deadline within which the credible fear determination must be made, as opposed to release), Dkt. 200 at 20, but their complaint about the appropriate remedy is distinct from the question of whether judicial review is available. *See Rodriguez*, 909 F.3d at 256–57 (affirming district court jurisdiction over habeas claims and remanding for the court to determine, *inter alia*, "the minimum requirements of due process to be accorded to all claimants that will ensure a meaningful time and manner of opportunity to be heard").

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 4
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1   legal error." Dkt. 91 (internal quotation marks omitted). The Court should affirm jurisdiction and

2   avoid the constitutional violations resulting from the Defendants' view.

3          Second, Plaintiffs' credible fear claims are not barred for the independent reason that they

4   seek to enforce the INA's credible fear interview provision, 8 U.S.C. § 1225(b)(1), and remedy

5   Defendants' abdication of their statutory responsibility to conduct timely interviews. *See* ECF

6   100 at 2 (holding that § 1252(a)(2)(A)(iv) does not apply to claim that government has "not

7   adopted any formal procedure or policy regarding when the credible fear interviews . . . will be

8   held"). As Plaintiffs previously argued, the text of 8 U.S.C. § 1252(a)(2)(A)(iv) only bars

9   challenges to "procedures and policies . . . to implement the provisions of section 1225(b)(1)"

10  except as permitted by § 1252(e)(3). *See* ECF 141 at 21; ECF 98 at 2–8. Plaintiffs challenge

11  precisely the opposite: the agency's failure to adopt *any* policy or procedure to implement the

12  statute's system of timely credible fear interviews for noncitizens in expedited removal. Thus,

13  Defendants' reliance on *M.M.V. v. Garland*, 1 F.4th 1100 (D.C. Cir. 2021), is misplaced, as the

14  question presented here is not whether the policy that the agency "adopted" is lawful (nor does it

15  hinge on whether the policy is written), but rather whether the agency unlawfully failed to adopt

16  *any* policy for timely CFIs to implement the statute. *See also* ECF 100 at 2 ("The gravamen of

17  Plaintiffs' lawsuit is that Defendants have not adopted any formal procedure or policy regarding

18  when the credible fear interviews or the bond hearings of which they complain will be held;

19  hence the issue of impermissible 'indefinite detention.' The Court accepted this argument and

20  finds no manifest error in having done so.").

21         Thus, this case falls into the line of decisions recognizing that the INA's jurisdiction-

22  stripping provisions do not apply where the Department of Homeland Security (DHS) and its

23  sub-agencies fail to implement or comply with the governing statute. *See, e.g., Innovation Law*

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 5
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  *Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1075 n.1 (D. Or. 2018) (finding that § 1252(a)(2)(A)(iv)

2  does not bar review of lawsuit challenging "specific actions . . . that conflict with the very

3  procedures and policies that Defendants . . . have adopted"); *cf.* ECF 98 at 5–6 (citing cases);

4  ECF 100 at 2 ("[W]hat is being challenged here is *not* the constitutionality of § 1225(b)(1), but

5  rather Defendants' *failure to implement the statute*.").

6  **II.    The Bond Hearing Class Has Stated a Due Process Claim to a Prompt Bond
       Hearing.**

7        **A.  Bond Hearing Class Members Have a Due Process Right to a Bond Hearing.**

8             1.   Substantive Due Process Requires an Individualized Bond Hearing.

9  "Freedom from imprisonment—from government custody, detention, or other forms of

10  physical restraint—lies at the heart of the liberty" protected by the Due Process Clause.

11  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court in *Zadvydas* held that

12  immigration detention, like all civil detention, is justified only "where a special justification . . .

13  outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.*

14  (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)); *see also United States v. Salerno*, 481

15  U.S. 739, 747 (1987) (holding that substantive due process prohibits detention that is "excessive

16  in relation to [the government's] regulatory goal"). The only legitimate justifications for

17  immigration detention are to effectuate removal and to protect against danger and flight risk

18  during that process. *Zadvydas*, 533 U.S. at 690–91. Immigration detention violates due process

19  unless it is reasonably related to these legitimate purposes. *See id.* at 690; *see also Hernandez v.*

20  *Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). Moreover, detention must be accompanied by

21  adequate procedural safeguards to ensure that these purposes are served. *See Zadvydas*, 533 U.S.

22  at 690–92; *Hernandez*, 872 F.3d at 990.

23

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 6
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Plaintiffs' due process rights are rooted in the Due Process Clause, which protects—at a minimum—"those settled usages and modes of proceeding existing in the common and statute law of England." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 277 (1855). The common law did not permit prolonged confinement without a hearing before a neutral decisionmaker to assess whether detention was necessary. *See* Caleb Foote, The Coming Constitutional Crisis in Bail: I, 113 U. Pa. L. Rev. 959, 966–68 (1965) (detailing pre-founding English history and practices regarding bail). Indeed, Blackstone recognized the right to bail "in any Case whatsoever." 4 William Blackstone, Analysis of the Laws of England 148 (6th ed. 1771). This right to a bail hearing before a magistrate historically served as a fundamental check against arbitrary detention. *See* 3 Blackstone, Commentaries 291 (1768). The Framers incorporated this legal tradition into the Fifth Amendment guarantee that all "persons" may not be deprived of "liberty" without "due process of law," U.S. Const. amend. V, recognizing that "the practice of arbitrary imprisonments, [has] been, in all ages," among "the favorite and most formidable instruments of tyranny." The Federalist No. 84 (Alexander Hamilton).

The Supreme Court's civil detention jurisprudence has repeatedly reaffirmed these principles. *See, e.g.*, *Salerno*, 481 U.S. at 750 (upholding pretrial detention where Congress provided "a full-blown adversary hearing" on dangerousness, where the government bears the burden of proof by clear and convincing evidence); *Hendricks*, 521 U.S. at 357–58 (upholding civil commitment when there are "proper procedures and evidentiary standards," including an individualized hearing on dangerousness); *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992) (noting individual's entitlement to "constitutionally adequate procedures to establish the grounds for his confinement"); *Schall v. Martin*, 467 U.S. 253, 277, 279–81 (1984) (upholding pretrial detention pending a juvenile delinquency hearing where the government proves dangerousness in a fair

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 7
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

adversarial bond hearing with notice and counsel). Moreover, the Supreme Court has required

individualized hearings by independent adjudicators for far lesser interests than physical liberty,

including for property deprivations. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970)

(finding that failure to provide in-person hearing prior to termination of welfare benefits was

"fatal to the constitutional adequacy of the procedures"); *Califano v. Yamasaki*, 442 U.S. 682,

696–97 (1979) (holding that in-person hearing was required for recovery of excess Social

Security payments); *see also Zadvydas*, 533 U.S. at 692 (noting that "[t]he Constitution demands

greater procedural protection even for property" than the Immigration and Naturalization Service

(INS) provided to *Zadvydas*).

The one exception to this line of case law is *Demore v. Kim*, 538 U.S. 510 (2003), where

the Supreme Court upheld a challenge to a mandatory detention provision that encompasses

noncitizens with enumerated criminal offenses who are subject to removal. *See* 8 U.S.C.

§ 1226(c). The holding in *Demore* is distinguishable for three reasons. First, the statute at issue

in *Demore* imposed mandatory detention on certain noncitizens whom Congress determined pose

a categorical bail risk because they had committed specific crimes. *See id*. The Court emphasized

that this "narrow detention policy," 538 U.S. at 526, was reasonably related to the government's

purpose of effectuating removal and protecting public safety, *id.* at 527–28. By contrast, the

detention statute here applies broadly to individuals with no criminal records and who, by class

definition, have already prevailed in demonstrating bona fide claims to protection in the United

States. *Cf. Zadvydas*, 533 U.S. at 691 (doubting constitutionality of detention statute that did "not

apply narrowly to 'a small segment of particularly dangerous individuals,' . . . but broadly to

[noncitizens] ordered removed for many and various reasons" (citation omitted)).

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 8
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Second, *Demore* emphasized what the Court understood to be the brief period of time that mandatory detention of "criminal aliens" typically lasts. *See* 538 U.S. at 529–30 (noting mandatory detention lasts about 47 days in 85% of cases and about four months for those 15% of cases where individuals appeal to BIA). Further, the Court noted that the individual in question had already conceded he was removable. *Demore*, 538 U.S. at 513–14; *see also id.* at 531("The INS detention of respondent, a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings, is governed by these cases."). In contrast, BH Class members have all been found to have a credible fear after being screened by asylum officers. As such, their cases have been referred to the immigration court for full proceedings where they have the opportunity to submit applications for asylum, withholding of removal, and protection against torture. Asylum seekers can expect to spend a median time of five to six months for their protection claims to be adjudicated before the IJ, Hausman Decl., ECF 132 ¶ 8, nearly a year in cases involving an appeal to the BIA, *id.*, and still longer for judicial review, *see* Admin. Off. of U.S. Courts, U.S. Court of Appeals – Judicial Caseload Profile (Dec. 31, 2022), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile1231.2022.pdf (showing that appeals in the Ninth Circuit take on average 13 months to resolve); *see also* ECF 198 ¶ 59. The Supreme Court has never found that the Constitution authorizes such prolonged detention without any opportunity for review. To the contrary, it has recognized that prolonged detention poses grave constitutional concerns. *See Zadvydas*, 533 U.S. at 697–701; *Muniz v. Hoffman*, 422 U.S. 454, 477 (1975) ("It is not difficult to grasp the proposition that six months in jail is a serious matter for any individual . . . ."); *Foucha*, 504 U.S. at 82 (noting that civil detention must be "strictly limited in duration").

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 9
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

Finally, *Demore* placed great reliance on the voluminous record before Congress. That evidence showed that the "criminal aliens" targeted by the mandatory detention statute posed a heightened categorical risk of flight and danger to the community. *See* 538 U.S. at 518–21 (citing studies and congressional findings). In contrast, Congress made no such findings regarding members of the BH Class, i.e., those found to have bona fide fear-based claims, who by statute are entitled to apply for asylum, withholding of removal, and protection against torture.

2.    Procedural Due Process Requires an Individualized Bond Hearing.

For many of the same reasons, procedural due process likewise entitles members of the BH Class to individualized bond hearings before an IJ. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). First, Plaintiffs have a profound interest in preventing their arbitrary detention. *See Zadvydas*, 533 U.S. at 690; *see also Hernandez*, 872 F.3d at 993; ECF 110 at 6; *supra* Sec. II.B.1.

Second, the parole process, which is the only mechanism available for seeking release, *see Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018), creates an unacceptable risk of the erroneous deprivation of liberty. This parole process lacks many essential safeguards that the Supreme Court has long considered hallmarks of due process to justify a deprivation of physical liberty, including (1) no adversarial hearing conducted in-person, (2) no neutral decisionmaker, (3) no opportunity to call witnesses, (4) no right to review the government's evidence to support detention, and (5) no administrative appeal. *See generally* 8 C.F.R. § 212.5. Instead, low-level ICE detention officers make parole decisions by merely checking a box on a form that contains no factual findings, no specific explanation, and no evidence of deliberation. *See, e.g.*, *Abdi v. Duke*, 280 F. Supp. 3d 373, 404 (W.D.N.Y. 2017), *vacated on other grounds sub nom. Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019); *Damus v. Nielsen*, 313 F. Supp. 3d 317,

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 10
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

324–25, 341 (D.D.C. 2018). The Supreme Court has repeatedly criticized such procedures, observing that "[w]hatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law enforcement." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972); *see also Zadvydas*, 533 U.S. at 692 (criticizing government procedures to detain noncitizens that relied solely on "administrative proceedings . . . without . . . significant later judicial review").

Finally, the government lacks any countervailing interest in denying BH class members' bond hearings. Defendants have no legitimate interest in detaining individuals who pose no flight risk or danger. *See* ECF 110 at 15 (quoting *Hernandez*, 872 F.3d at 994). The only other possible factor, administrative cost, is negligible, as the government previously provided bond hearings to class members pursuant to *Matter of X-K-* for more than a decade, and more generally to noncitizens who have entered the United States for nearly the past 50 years (until the vacatur of the preliminary injunction in this case). ECF 131 at 2–3 (recounting history of INA's detention provisions). Moreover, the government conserves resources by not paying to detain individuals where such detention is not necessary. And, as the Board of Immigration Appeals previously recognized, the government itself has an interest in maintaining bond hearings and ensuring accurate custody determinations. *See, e.g.*, *Matter of X-K-*, 23 I. & N. Dec. at 736.

3.  *Thuraissigiam* Does Not Preclude Plaintiffs' Claim.

Defendants argue that BH class members have no constitutional rights beyond what is provided in the statute. According to Defendants, the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 140 S. Ct. 1959 (2020), held that noncitizens who recently entered and have few connections to the United States "have only those due process rights

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 11
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

provided by statute." ECF 200 at 13. As such, Defendants assert that class members may not challenge detention mandated by 8 U.S.C. § 1225(b)(1).

Defendants misread *Thuraissigiam* and ask this Court to expand its scope far beyond the issue addressed in that case. In *Thuraissigiam*, the petitioner—who was apprehended immediately after physically entering the United States—filed a habeas petition to challenge alleged flaws in his credible fear proceeding, seeking as a remedy a "new opportunity to apply for asylum." 140 S. Ct. at 1968. Thus, unlike this case, the habeas petitioner in *Thuraissigiam* did not challenge "unlawful executive detention," *id.* at 1975 (citation omitted), but rather sought "the opportunity to remain lawfully in the United States," *id.* at 1971. For that reason, the Court held that neither the Suspension Clause nor the Due Process Clause afforded the petitioner a right to judicial review. In reaching its conclusion as to due process, the Court held that a noncitizen "in respondent's position,"—in other words, a noncitizen who had just entered unlawfully and then was found not to have a credible fear—"has only those rights *regarding admission* that Congress has provided by statute." *Id.* at 1983 (emphasis added). The Court explained this point by noting that "the Constitution gives 'the political department of the government' plenary authority to decide which [noncitizens] to admit," *id.* at 1982 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)), "and a concomitant of that power is the power to set the procedures to be followed in determining whether a[] [noncitizen] should be admitted." *Id.* (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).

The Court's focus on due process rights regarding *admission* or lawful entry to the United States is critical and demonstrates why Defendants err in relying on *Thuraissigiam*. The "plenary power" the Court relied on in *Thuraissigiam* allows Congress to determine who may be permitted to lawfully enter the United States. Congress's determination is generally not subject

to judicial review, and noncitizens outside the United States or who have recently entered

unlawfully have no right to "admission" beyond what Congress has provided. *See, e.g.*,

*Nishimura Ekiu*, 142 U.S. at 659; *Kleindienst v. Mandel*, 408 U.S. 753, 765–66 (1972). But

admission has a very specific definition under the INA; it is the "the lawful entry of the

[noncitizen] into the United States after inspection and authorization by an immigration officer."

8 U.S.C. § 1101(a)(13)(A). Notably, admission triggers other legal opportunities, such as the

ability to apply to adjust one's status to a lawful permanent resident if other conditions are met.

*See id.* § 1255(a).

Here, however, Plaintiffs do not seek admission or any other remedy that that would

provide them "the opportunity to remain lawfully in the United States." 140 S. Ct. at 1970.

Instead, they seek only to challenge their detention. Thus, they request a hearing to determine

whether their detention remains justified pending lengthy removal proceedings.[4] They do not

challenge the admission process or even any right to remain in the United States. Such

noncitizens are merely present for purposes of their removal proceedings, are subject to

conditions of supervision, and are removable if a final order of removal issues.

This Court has already recognized that such challenges to "unlawful executive

detention," do not implicate *Thuraissigiam*. 140 S. Ct. at 1975 (citation omitted). As the Court

has explained, cases where a party "challenge[s] the legality of . . . detention or seek[s] release

from confinement" "render *Thuraissigiam* inapposite." *Jatta v. Clark*, No. C19-2086-MJP-MAT,

2020 WL 7138006, at *2 (W.D. Wash. Dec. 5, 2020). "There is nothing in the Supreme Court's

---

[4]    *Compare Judulang v. Holder*, 565 U.S. 42, 55 (2011) (rejecting suggestion that DHS could flip a coin to decide the availability of discretionary relief); *Jean v. Nelson*, 472 U.S. 846, 854–57 (1985) (construing parole regulation to prohibit race discrimination). When the government incarcerates people, it deprives them of liberty and must provide procedures to ensure that the deprivation is not arbitrary.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 13
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

opinion in *Thuraissigiam* that suggests the writ [of habeas corpus] cannot apply to [a noncitizen's] challenge to what he claims is an unlawful detention." *Id.* Other courts have agreed. *See, e.g.*, *Leke v. Hott*, 521 F. Supp. 3d 597, 604 (E.D. Va. 2021) ("Quite clearly, *Thuraissigiam* does not govern here, as the Supreme Court there addressed the singular issue of judicial review of credible fear determinations and did not decide the issue of an Immigration Judge's review of prolonged and indefinite detention."); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 844–48 (E.D. Va. 2020) (similar). And Justice Sotomayor made the same point in her dissent in *Thuraissigiam*, explaining that the Court's due process holding "can extend no further" than the "claims for relief" in *Thuraissigiam*, i.e., claims seeking "promised asylum procedures." 140 S. Ct. at 2013 n.12 (Sotomayor, J., dissenting).

Notably, in *Zadvydas*, the Supreme Court itself rejected a similar argument that the plenary power doctrine means noncitizens have no due process right to challenge detention. There, the government asserted that Congress's "plenary power" required the "the Judicial Branch [to] defer to Executive and Legislative Branch decisionmaking in [immigration law]," including as to the detention at issue in that case. 533 U.S. at 695. The Court rejected that argument, stating that the plenary power "is subject to important constitutional limitations." *Id.* The Court then explained that Congress's plenary power does not apply where a noncitizen challenges "an indefinite term of imprisonment within the United States." *Id.* The same is true here, where Plaintiffs similarly allege that Defendants have unlawfully detained them without a hearing. *See also Hernandez*, 872 F.3d at 990 n.17 (stating that plenary power doctrine did not change the fact that the "Due Process Clause stands as a significant constraint" on the government's detention authority); *Phan v. Reno*, 56 F. Supp. 2d 1149, 1155 (W.D. Wash. 1999) (concluding that the plenary power doctrine does not apply to certain immigration detention

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 14
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

challenges). As the Court of Appeals has explained, "the entry fiction is best seen . . . as a fairly narrow doctrine that primarily determines the procedures that the executive branch must follow before turning an immigrant away" because "[o]therwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-persons." *Kwai Fun Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004) (emphasis omitted), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007); *cf. Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) (affirming preliminary injunction enjoining conditions of confinement of individuals apprehended at or near the border in violation of due process).

In *Thuraissigiam*, the Supreme Court cited to *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), where the Court upheld the summary exclusion and detention of a noncitizen denied entry. But *Mezei* must be read in light of its peculiar circumstances: an exclusion resting on national security. Mr. Mezei had a final order of exclusion as a threat to national security, and remained detained only because no country would accept him. As the Court explained, "to admit a[] [noncitizen] barred from entry on security grounds nullifies the very purpose" of the exclusion order because it could unleash the very threat that the order sought to avoid. *Mezei*, 345 U.S. at 216. That rationale does not apply here. Moreover, class members are all seeking protection from persecution or torture (and BH class members have all been screened and found to have bona fide claims and thus transferred to full removal proceedings). They thus stand in a fundamentally different position from Mr. Mezei, who had lost any basis for seeking admission and been conclusively "denied entry." *Id.* at 212 (citation omitted). In addition, even in *Mezei*, the Court underscored that once a person is standing on U.S. soil—regardless of the legality of his or her entry—he or she is entitled to due process protections. *Id.* ("[Noncitizens] who have once passed through our gates, even illegally, may be

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 15
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1  expelled only after proceedings conforming to traditional standards of fairness encompassed in

2  due process of law.").

3          Regardless of the limits of the Due Process Clause for admission or expulsion

4  procedures, it remains clear that persons detained in the United States are entitled to legal

5  protections with respect to whether they are lawfully detained and the conditions of their

6  confinement. Going back more than a century the Supreme Court has confirmed that such due

7  process protections apply to all *persons*, including noncitizens who were found to have

8  unlawfully entered. *See Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[I]t must be

9  concluded that all persons within the territory of the United States are entitled to the protection

10 guaranteed by [the Fifth and Sixth A]mendments, and that even [noncitizens] shall not be . . .

11 deprived of life, liberty, or property without due process of law."). *Thuraissigiam* explicitly did

12 not address challenges to detention, and did not reverse this settled understanding of due process

13 to give the government a free hand to subject noncitizens to unconstitutional treatment.

14              4.   Defendants' Other Due Process Arguments Lack Merit.

15          The Court should also reject Defendants' other arguments as to why BH class members

16 have no due process right to a bond hearing. First, Defendants argue that *Zadvydas* does not

17 apply because class members' detention has a "definite end point," whereas in *Zadvydas*, "the

18 prospect of indefinite detention loomed much larger." ECF 200 at 13. According to Defendants,

19 Plaintiffs' detention thus serves the purpose of assuring their presence in removal proceedings.

20 *Id.* at 14. This contention simply assumes that because detention *may* serve a valid purpose in

21 some cases, due process allows *all* class members to be detained. But in *Zadvydas*, the Supreme

22 Court rejected the government's argument that independent review is not necessary or should be

23 limited, and that courts must simply "accept the Government's view" about whether detention is

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 16
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

justified. 533 U.S. at 699. Instead, the Court held that neutral decisionmakers must inquire whether detention remains related to its purpose of securing a person's presence for a reasonably foreseeable removal. *Id.* at 699–701. And in other civil detention settings where detention is authorized pending some other proceeding, the Supreme Court has never upheld detention without at least requiring the government to justify that detention before an independent decisionmaker. *See, e.g.*, *Salerno*, 481 U.S. at 750–51; *Schall*, 467 U.S. at 277, 279–81.

Relatedly, Defendants assert that this Court's review is limited only to whether the "*statute* continues to 'serve its purported immigration purpose,'" without any regard for whether detention serves a purpose for any individual noncitizen. ECF 198 at 15 (emphasis added). As an initial matter, that argument is at odds with the federal courts' traditional exercise of de novo habeas corpus review to determine if detention is "in violation of the Constitution." 28 U.S.C. § 2241(c)(3). That assertion also ignores *Zadvydas*, where the Supreme Court explicitly held otherwise and required federal courts to conduct independent review on a case-by-case basis, once detention became prolonged. 533 U.S. at 699–701. And none of the other civil detention cases cited above countenance such a limited review either.

The other authorities Defendants cite for this proposition also do not support them. *Demore* is distinguishable for the reasons noted above. And in *Carlson v. Landon*, 342 U.S. 524 (1952), the Court upheld detention under a statute targeting a narrow category of people who were shown to have posed a specific national security threat. Moreover, the hearings required under that statute resulted in the "allowance of bail in the large majority of cases," even for individuals who were found to fall within this category. *Id.* at 542. Even then, independent review was available, and "the Attorney General [was] not left with untrammeled discretion as to bail. Courts review his determination. Hearings are had, and he must justify his refusal of bail by

1    reference to the legislative scheme to eradicate the evils of Communist activity." *Id.* at 543.

2    Defendants' reliance on *Reno v. Flores*, 507 U.S. 292 (1993) is similarly misplaced. There the

3    Court upheld a challenge to procedures used to detain juveniles, but only because "the detained

4    alien juveniles [already had] the right to a hearing before an immigration judge" to challenge

5    their detention. 507 U.S. at 309 (emphasis omitted); *see also id* at 313–14 (noting that the

6    custody review process required "individualized determination[s]" (citation omitted)).

7    **B.  Due Process Also Requires That the Hearing Be Promptly Afforded.**

8    The Due Process Clause not only requires an individualized hearing, but also dictates that

9    members of the BH Class receive prompt hearings—as this Court has already made clear. ECF

10   91 at 13–14; ECF 110 at 7, 13–14, 19. Defendants contend that due process is "flexible" concept,

11   ECF 200 at 16, and thus cannot require imposing a deadline, *id*. However, agency guidance and

12   case law from the immigration and civil detention contexts support class members' request for

13   establishing such a deadline.

14   First, agency regulations and case law from the immigration context have repeatedly

15   stated that bond hearings must be conducted in an expedited fashion, recognizing Plaintiffs'

16   liberty interests. *See* ECF 91 at 13–14; ECF 110 at 13–14 (relying in part on agency case law and

17   guidance to deny Defendants' motion to dismiss and issue preliminary injunction imposing

18   deadline for bond hearings). Similarly, as this Court has observed, "further guidance is found in

19   the Congressional mandate" to review credible fear determinations quickly. ECF 110 at 13; *see*

20   *also* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). *Saravia v. Sessions*, 905 F.3d 1137 (9th Cir. 2018),

21   further demonstrates that Plaintiffs have stated a claim for a prompt hearing. In that case, the

22   Ninth Circuit affirmed a district court's decision to impose a seven-day deadline to hold hearings

23   for immigrant minors whom DHS re-arrests following their previous release. 905 F.3d at 1143.

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 18
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

The *Saravia* timeline thus provides important guidance as to what is appropriate for the detained noncitizens here.

Second, pre-trial and civil detention cases support class members' claim. *See, e.g.*, *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); *Doe v. Gallinot*, 657 F.2d 1017, 1025 (9th Cir. 1981). Notably, since the Court's prior decision issuing an injunction, the Ninth Circuit has clarified that the Fourth Amendment's requirement of a prompt hearing (within 48 hours) "to justify detention" applies to the arrests of noncitizens based on immigration detainers. *Gonzalez v. U.S. Immig. & Customs Enf't*, 975 F.3d 788, 824 (9th Cir. 2020). While the Ninth Circuit acknowledged the case did not involve "border detention," *id.* at 825–26, its application of the principle of *McLaughlin* to the immigration context is nonetheless instructive here.

Defendants claim that this Court cannot look to other civil detention cases to support a seven-day timeframe for hearings because "immigration detention is defined by a particular set of executive powers, legitimate interests, and mitigating factors." ECF 200 at 14.[5] But as noted above, the cases on which Defendants rely to make this claim concern the plenary power doctrine, and are not cases regarding the due process rights of noncitizens facing lengthy detention. *Supra* Sec. II.A. In addition, while Defendants do not rely on *Demore* to support this point, ECF 200 at 14–15, even that case does not support Defendants' argument for all the reasons noted above.

---

[5]    Defendants also claim that noncitizens can simply "terminate detention by returning to their country of nationality." Dkt. 200 at 14. This argument is absurd. DHS has determined that Bond Hearing class members have a credible fear of persecution, which gives them the right to remain in the United States while they seek protection. Class members should not be required to voluntarily end their detention by returning to the countries where they face persecution, torture, or even death. *See* Dkt. 110 at 9 ("The Constitution does not require these Plaintiffs to endure such a no-win scenario.").

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 19
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

III.    **CFI Class Members Have a Due Process Right to a Prompt Credible Fear Interview.**

Regardless of this Court's decision on Plaintiffs' bond hearing claims, Defendants' practice of delaying credible fear interviews prolongs their time in detention without the opportunity to appear before a neutral decisionmaker and/or to seek release on parole. Contrary to Defendants' assertions, *see* ECF 200 at 19–20, this Court can grant relief on Plaintiffs' claim that these delays violate the CFI Class's right to due process.

On behalf of the CFI Class, Plaintiffs ask only that DHS fairly implements the process Congress created for presenting credible fear claims. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); (b)(1)(B)(i); *see also Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996). Absent a deadline for conducting credible fear interviews, the detention of CFI Class members is prolonged by weeks or months as they are generally not eligible for release on individual custody determinations. *See, e.g.*, *Damus*, 313 F. Supp. 3d at 323–25; *see also* Dkt. 198 ¶¶ 40, 69, 79, 95, 108. Defendants do not dispute the existence of these lengthy delays. Rather they claim, first, that CFI Class Members lack due process rights, ECF 200 at 19–20, and second, that any deadline for conducting the interviews would strip the agency of "the flexibility it needs," *id.* at 20. Neither warrant dismissal.

First, as this Court already has found, CFI Class Members enjoy due process protections. *See* ECF 91 at 8–10. Nothing in *Thuraissigiam* changes that conclusion. As explained, *Thuraissigiam* does not curtail due process claims that, as here, are focused on their detention, as opposed to challenging the admission or removal process. *See* Sec. II.A.3.

Furthermore, the Supreme Court found that the petitioner in *Thuraissigiam* "has only those rights regarding admission that Congress has provided by statute," 140 S. Ct. at 1983, and then proceeded to find that the petitioner's statutory right to a credible fear "determin[ation]" as

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 20
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1    to his "eligibility for asylum," and thus his due process rights were satisfied, *id.* (alteration in

2    original) (quoting 8 U.S.C. § 1225(b)(1)(B)(ii), (v)). Here, Defendants are delaying, and thus

3    depriving, CFI Class Members of the rights Congress provided by statute, namely, their statutory

4    right to a credible fear determination as to asylum eligibility. This infringement on their statutory

5    rights and consequent prolongment of their detention violates due process.

6            Finally, Defendants' alleged factual concerns—namely, the claimed need for "flexibility"

7    in scheduling credible fear interviews, alleged "high number of illegal entries," and purported

8    "pressure on agency personnel" resources, ECF 200 at 20 —are relevant only to the merits of

9    Count IV, specifically, whether due process requires a ten-day deadline to conduct the

10   interviews. Defendants effectively ask the Court to adopt factual allegations beyond those in the

11   complaint and, without the benefit of discovery, weigh unsubstantiated assertions of

12   countervailing administrative interests at the motion to dismiss stage. But, "[g]enerally, a court

13   may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion."

14   *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). Here, Plaintiffs

15   have alleged and documented that the scheduling of credible fear interviews takes weeks and

16   even months. *See* ECF 198 ¶¶ 69, 79, 95, 108; *see also* ECF 40, Patel Decl. ¶ 3 (routine delays of

17   three to four weeks in cases of asylum seekers detained in Maryland); ECF 42, Russell Decl. ¶¶

18   3–6 (routine delays of at least three weeks, and in one case of more than two months, for asylum

19   seekers detained in Texas); ECF 43, Stein Decl. ¶¶ 3–4 (delays in cases of asylum seekers

20   detained at the South Texas Family Detention Center in Dilley, Texas in July 2018). Meanwhile,

21   in violation of their due process rights, CFI Class Members linger in detention and are without

22   access to bond hearings or parole while waiting for Defendants to make a final determination on

23   their applications for protection. In response, Defendants offer unsupported statements as to the

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 21
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

feasibility, not the legality, of a deadline.[6] Because it is premature to accept Defendants' unproven assertions, the Court should deny Defendants' motion to dismiss Count IV and instead permit the parties to engage in discovery and develop the record on this claim. *Cf. Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) (noting that unreasonable delay claim "is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage").

## IV.    The APA Entitles Plaintiffs to Prompt CFIs, Prompt Bond Hearings, and Procedural Protections in Bond Hearings.

Although this Court previously dismissed Plaintiffs' claim that the APA entitles them to prompt credible fear interviews and bond hearings, *see* ECF 91 at 11–13, 16–17, Plaintiffs include this claim, Count V, in the Fourth Amended Complaint to preserve it for review.

With respect to Count VI, BH Class Members are entitled to prompt bond hearings under the Due Process Clause, and thus Defendants' failure to provide such hearings, with necessary procedural protections, merits relief under the APA. *See* Sec. II; 5 U.S.C. § 706(2)(A)–(B) (requiring courts to "hold unlawful and set aside" agency action "not in accordance with law" or "contrary to constitutional right"). Moreover, as this Court has already recognized, Defendants' failure to provide procedural protections in bond hearings constitutes final agency action reviewable under the APA. *See* ECF 91 at 18 ("The procedural defects alleged by the Bond Hearing class are part and parcel of the bond hearing, which is indisputably a 'final agency action' from which legal consequences flow.").

---

[6]    Defendants' citation to *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 525 (1978) is inapposite. That case involved petitions for review involving fully developed administrative records in which the courts of appeals improperly overturned rulemaking proceedings.

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 22
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611

1

**CONCLUSION**

2
    For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

3
Respectfully submitted this 3rd day of April, 2023.

4
_s/ Matt Adams_                        _s/ Trina Realmuto_
Matt Adams, WSBA No. 28287            Trina Realmuto*

5

6
_s/ Aaron Korthuis_                    _s/ Kristin Macleod-Ball_
Aaron Korthuis, WSBA No. 53974        Kristin Macleod-Ball*

7
_s/ Glenda M. Aldana Madrid_          NATIONAL IMMIGRATION LITIGATION
Glenda M. Aldana Madrid, WSBA No. 46987  ALLIANCE

8                                      10 Griggs Terrace
                                       Brookline, MA 02446
9  NORTHWEST IMMIGRANT RIGHTS          (617) 819-4447
   PROJECT                             trina@immigrationlitigation.org
   615 Second Avenue, Suite 400        kristin@immigrationlitigation.org
10 Seattle, WA  98104
   (206) 957-8611
11 matt@nwirp.org                      _s/ Emma Winger_
   aaron@nwirp.org                     Emma Winger*
12 glenda@nwirp.org
                                       AMERICAN IMMIGRATION COUNCIL
13 _s/ Judy Rabinovitz_                American Immigration Council
   Judy Rabinovitz*                    1331 G Street NW, Suite 200
14                                     Washington, DC 20005
   _s/ Anand Balakrishnan_             (857) 305-3600
15 Anand Balakrishnan*                 ewinger@immcouncil.org

16 ACLU IMMIGRANTS' RIGHTS PROJECT
   125 Broad Street, 18th Floor
17 New York, NY 10004
   (212) 549-2618
18 jrabinovitz@aclu.org
   abalakrishnan@aclu.org

19
                    _Attorneys for Plaintiffs and Class Members_
20 *Admitted _pro hac vice_

21

22

23

24

1

**WORD COUNT CERTIFICATION**

2      Pursuant to Local Civil Rule 7, I certify that the foregoing response has 7,156 words and

3  complies with the word limit requirements of Local Civil Rule 7(e).

4

5      *s/ Aaron Korthuis*
       Aaron Korthuis, WSBA No. 53974

6      NORTHWEST IMMIGRANT RIGHTS PROJECT
       615 Second Avenue, Suite 400

7      Seattle, WA  98104
       (206) 816-3872

8      aaron@nwirp.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLS.' RESP. TO DEFS.' MOT. TO DISMISS
FOURTH AMENDED COMPLAINT – 24
Case No. 2:18-cv-00928-MJP

NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
Tel. (206) 957-8611