*The Honorable Marsha J. Pechman*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANY PADILLA, IBIS GUZMAN, BLANCA ORANTES, BALTAZAR VASQUEZ,<br>Plaintiffs-Petitioners,<br>v.<br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. CUSTOMS AND BORDER PROTECTION ("CBP"); U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"); PATRICK LECHLEITNER, Acting Director of ICE; ALEJANRO MAYORKAS, Secretary of DHS; TROY A. MILLER, Acting Commissioner of CBP; UR JADDOU, Director of USCIS; ELIZABETH GODFREY, Seattle Field Office Director, ICE; MERRICK GARLAND, United States Attorney General; BRUCE SCOTT, warden of the Northwest Detention Center in Tacoma, Washington; JAMES JANECKA, warden of the Adelanto Detention Facility;<br>Defendants-Respondents. | No. 2:18-cv-928 MJP<br>**DEFENDANTS' MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL**<br>NOTED ON MOTION CALENDAR: FEBRUARY 23, 2024. |

The Court should certify for interlocutory appeal the questions of whether 8 U.S.C. § 1252(a)(2)(A) forecloses jurisdiction and whether the certified Bond Hearing Class can state a claim for relief despite the Supreme Court's recent reaffirmance of the well-settled principle that noncitizens like Plaintiffs who are on the threshold of initial entry to this country enjoy only those



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

due process protections that Congress has granted them. *See DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1981-82 (2020) (ruling that the Ninth Circuit's "holding that respondent had a constitutional right to expedited removal proceedings that conformed to the dictates of due process" was "contrary to more than a century of precedent." (internal quotation omitted). Interlocutory appeal is warranted because both issues "involve[] a controlling question of law as to which there is substantial ground for difference of opinion" and because "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). This case involves two controlling questions of law, both of which this Court recently decided against the government in denying the government's motion to dismiss. Resolution of either question will "materially advance[] the ultimate termination of the litigation" because reversal of either holding—that the Court has jurisdiction and Plaintiffs have stated a claim—would terminate this case. *See, e.g.*, *Educ. Credit Mgmt. Corp. v. Coleman (In re Coleman)*, 560 F.3d 1000, 1003 (9th Cir. 2009) (reviewing order denying motion to dismiss for lack of subject-matter jurisdiction); *Ministry of Defense of Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 768 (9th Cir. 1992) (question of subject-matter jurisdiction reviewed in interlocutory appeal); *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 935-36 (2d Cir. 1984) ("materially advance" standard satisfied where "controlling legal question" present.)

Moreover, there is substantial ground for a difference of opinion on each question. This Court found that it could hear Plaintiffs' claims—which challenge the constitutionality of 8 U.S.C. § 1225(b)(1)(B)(ii)—because 8 U.S.C. §§ 1252(a)(2)(A) and (e)(3), which the government contends foreclose jurisdiction, "only apply to the procedures and policies necessary to implement the removal process" and not challenges to detention. Motion to Dismiss Opinion (Op.), ECF 217



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

8-9. But the expedited removal process and its attendant statutorily-mandated detention are all provided for in the same statute—8 U.S.C. § 1225(b)(1). Other courts within and outside of the Ninth Circuit that have reviewed claims like Plaintiffs' have determined that such claims require a court to construe section § 1225(b), and are therefore unreviewable outside of the District Court for the District of Columbia. *See Cancino Castellar v. Mayorkas*, No. 17-CV-00491-BAS-AHG, 2021 WL 4081559, at *6 (S.D. Cal. Sept. 8, 2021) (holding that challenge regarding "when to present" an individual detained pursuant to § 1225(b)(1)(B)(ii) to an immigration judge "concerns a means by which to carry out, accomplish, or provide an instrument for a mandatory detention applicable to individuals subject to expedited removal proceedings and thus concerns the implementation of Section 1225(b)(1)"); *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 427 (3d Cir. 2016) ("Section 1252(e) … provides jurisdiction to the District Court for the District of Columbia to review …. challenges to the constitutionality of any provision of the expedited removal statute."); *Shunaula v. Holder*, 732 F.3d 143, 146-47 (2d Cir. 2013) ("§ 1252(e)(3) provides for review of constitutional challenges to the validity of the expedited removal system" and "such a [systemic] challenge can be brought only in the United States District Court for the District of Columbia.").

The same is true of the question regarding the constitutionality of § 1225(b)(1)(B)(ii). Not only has the government contended that noncitizens, like Plaintiffs, who are on the threshold of initial entry to this country are entitled only to those due process protections that Congress has chosen to provide, but the Ninth Circuit has recognized this principle after the reversal of its decision in *Thuraissigiam*. *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148 (9th Cir. 2022) (a noncitizen who "jumped the border fence" "has no constitutional rights regarding his



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

application" because of the "unique constitutional status of arriving aliens with no ties to the United States" (internal quotation omitted); *Guerrier v. Garland*, 18 F.4th 304, 310 (9th Cir. 2021) ("in the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides").

Furthermore, there is no possibility of conflicting decisions arising elsewhere and generating another decision in which the government (or other plaintiffs) can seek review, because this is a certified nationwide class, precluding percolation of this issue in other courts. *See United States v. Mendoza*, 464 U.S. 154, 160 (1984) ("Government litigation frequently involves legal questions of substantial public importance," and allowing one court to issue a definitive ruling in such cases "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue.") This supports an immediate appeal of these important issues.

Finally, the burden on the government to continue litigating this case is substantial. The Court recently granted Plaintiffs' motion to modify the case schedule, despite their failure to serve any discovery during the previous discovery period. Plaintiffs have indicated to Defendants that they will be seeking data going back over a decade, in addition to taking depositions and engaging in expert discovery. *See generally* ECF 231. Their proposed wide-ranging discovery concerns not only class members, but also non-class members detained under different detention provisions to be comparisons. *See generally id*. An immediate appeal of the Court's resolution of the controlling questions in this case, if resolved in the government's favor, would end this litigation—or "materially advance the ultimate termination of the litigation" by transferring it to the District of Columbia, the only place it may be brought. In the interim, any class member is still free, as always,



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

to seek release from detention via parole, or to challenge their own detention in an individual habeas case if they believe their detention has become prolonged.

**ARGUMENT**

Under 8 U.S.C. § 1292(b), a district court may certify a non-final order, such as an order denying a motion to dismiss, for interlocutory appeal where (1) the order involves "a controlling question of law," (2) the controlling issue of law is one as to which there is "substantial ground for difference of opinion," and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The first and third requirements are readily satisfied here, as both challenged holdings involve controlling issues of law where reversal would terminate this case. This motion will therefore focus on the "substantial difference" prong. *See, e.g.*, *Chemical Bank*, 726 F.2d at 935 ("Because these are controlling legal questions, it appears that an immediate appeal from this decision will materially advance the ultimate termination of this litigation.").

"The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case. If proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitation, or the like, certification may be justified at a relatively low threshold of doubt." Wright & Miller, 16 Fed. Prac. & Proc. Juris. § 3930 (3d ed.). The certified issue need only be "an issue over which reasonable judges might differ" and "such uncertainty provides a credible basis for a difference of opinion." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (internal quotation omitted). "[S]ubstantial ground for difference of opinion exists where," as here, "novel and difficult questions of first impression are presented." *Id* (internal quotation omitted).



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

A "substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.*; *see Couch v. Telescope Inc.*, 611 F.3d 629, 633-634 (9th Cir. 2010) ("substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." (internal quotation omitted)).

**I. There is Substantial Ground for Difference of Opinion on the Jurisdictional Issue.**

The substantial difference standard is satisfied here. Defendants have argued that 8 U.S.C. § 1252(a)(2)(A) forecloses jurisdiction, and to the extent any court is authorized to review Plaintiffs' claims, it would be the District Court for the District of Columbia consistent with § 1252(e)(3). This is dictated by the statutory text, which provides that "notwithstanding any other provision of law" and "except as provided in subsection (e)," no court has jurisdiction over any challenge to "decision[s] by the [Secretary of Homeland Security] to invoke" the expedited removal provisions or to review any "procedures and policies adopted by the [Secretary] to implement the provisions of section 1225(b)(1)." 8 U.S.C. § 1252(a)(2)(A)(ii), (iv). Section 1252(e), in turn, provides that "[j]udicial review of determinations under section 1225(b) of this title *and its implementation* is available in an action instituted in the United States District Court for the District of Columbia." 8 U.S.C. § 1252(e)(3)(A) (emphasis added); *see id.* § 1252(e)(3)(A)(ii) (stating that such review covers determinations of "whether such a regulation,



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the [Secretary] to implement such section, is not consistent with application provisions of this subchapter or is otherwise in violation of law”). Put simply, any regulation, rule, or policy implementing § 1225(b) may be challenged, if at all, only in the District Court for the District of Columbia.

The Court made two points in support of finding jurisdiction. First, the Court reiterated its previous holdings from the orders denying Defendants’ previous motions to dismiss and for reconsideration, stating: “The gravamen of Plaintiffs’ lawsuit is that Defendants have not adopted any formal procedure or policy regarding when . . . the bond hearings of which they complain will be held; hence the issue of impermissible ‘indefinite detention.’” Op. at 8 (quoting Order Denying Mot. for Reconsideration at 2 (Dkt. No. 100).). But this is not an accurate characterization of the Fourth Amended Complaint, which challenges § 1225(b)(1)(B)(ii) itself as interpreted by *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), which Plaintiffs themselves describe as a “*policy* of not providing bond hearings to class members.” Fourth Amended Compl., ECF 198, ¶ 148 (emphasis added); *see id.*, ¶ 61 (“Pursuant to *Matter of M-S-*, Defendants have a policy and practice of denying bond hearings to noncitizens seeking protection who are apprehended after entering without inspection . . . .”). *Matter of M-S-* is a straightforward interpretation of § 1225(b)(1)(B)(ii), with the Attorney General looking squarely at the “statutory text” to conclude that “all aliens transferred from expedited to full proceedings after establishing a credible fear are ineligible for bond.” 27 I. & N. Dec. at 515, 518-19. As a result, Plaintiffs plainly seek review of “procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1)” contrary to § 1252(a)(1)(A)(iv).



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

Second, the Court reaffirmed its reliance on *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018) (where the Supreme Court determined that 8 U.S.C. § 1252(b)(9) does not require prolonged detention challenges be brought in conjunction with a petition for review following entry of a final order of removal), to conclude that it has jurisdiction. In *Jennings*, the Supreme Court analyzed § 1252(b)(9), a provision channeling review of "questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" into the process for seeking judicial review of a final order of removal. The Supreme Court "assume[d] for the sake of argument" that the claims before it, which included the construction of § 1225(b)(1)(B)(ii), challenged action taken to remove the noncitizen from the United States. *Id*. at 840. The Supreme Court then turned to the question of whether the challenge "arises from" actions taken to remove members of the class. Without fully defining "arises from," the Supreme Court determined that the claims are distinct from removal because the class "is not challenging the decision to detain them in the first place or to seek removal; and they are not . . . challenging any part of the process by which their removability will be determined.". *Id.* at 840-841.

The *Jennings* holding is not relevant here. Sections 1252(a)(2)(A) and 1252(e)(3) are distinct provisions covering a different category of claims. Section 1252(a)(2)(A)(iv) does not use the phrase "arising from" at all, and § 1252(a)(2)(A)(iii) more expansively bars "claim[s] arising from *or relating to* the *implementation or operation of* an order of removal pursuant to section 1225(b)(1) of this title" (emphasis added). Although this Court is correct that § 1252(e)(3) channels only a narrow category of claims to the District of Columbia, to the extent any claims fall outside of § 1252(e)(3), they are completely barred, as opposed to channeled. *See* 8 U.S.C § 1252(a)(1)(A)(iv); *see also Mendoza Linares*, 51 F. 4th at 1155 ("§ 242(a)(2)(A)'s general



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

prohibition on judicial review covers the 'procedures and policies' that have been adopted to 'implement' the expedited removal process; the decision to 'invoke' that process in a particular case; the 'application' of that process to a particular noncitizen; and the 'implementation' and 'operation' of any expedited removal order."). Finally, even if any of these provisions were limited to the same set of claims covered by § 1252(b)(9), the claims here meaningfully differ from the claims in *Jennings,* which were triggered only after detention continued for a *prolonged* period such that detention and the decision to initiate proceedings were no longer linked. The claims here come much closer to challenging the removal proceeding because a class member's immigration processing and their detention are provided for in the same statute—8 U.S.C. § 1225(b)(1), and because Plaintiffs argue that class members become immediately eligible for bond hearings upon having their case transferred from expedited removal proceedings to § 240 removal proceedings. Thus, the claims here are directly tied to the decision to initiate removal proceedings in a way that the claims in *Jennings* were not.

Moreover, other courts have reached different conclusions from this Court when construing claims involving § 1225(b), underscoring the "substantial ground for difference of opinion." *See, e.g., Castro*, 835 F.3d at 427 ("Section 1252(e) … provides jurisdiction to the District Court for the District of Columbia to review …. challenges to the constitutionality of any provision of the expedited removal statute."); *Shunaula*, 732 F.3d at 146-47 ("§ 1252(e)(3) provides for review of constitutional challenges to the validity of the expedited removal system . . . only in the United States District Court for the District of Columbia."). The constitutionality of a critical provision of the expedited removal system—detention under § 1225(b)(1)(B)(ii)—is exactly what is at issue in this case. *See Am. Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1358 (D.C. Cir. 2000)



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

("The statute permits judicial review of the 'implementation' of 8 U.S.C. § 1225(b)" "only in the United States District Court for the District of Columbia."). As the Supreme Court explained, a "major objective of [the law codifying § 1225(b)(1)] was to protect the Executive's discretion from undue interference by the courts; indeed, that can fairly be said to be the theme of the legislation." *Thuraissigiam*, 140 S. Ct. at 1966 (internal quotation and formatting omitted). Congress thus channeled all challenges to agency actions, rules, or policies implementing § 1225(b)(1) to the District of Columbia, and that limitation applies regardless of whether a plaintiff challenges a discrete expedited removal action particular to him or broader rules or policies reflecting a systemwide implementation of the expedited removal statute. *See Make the Road New York v. Wolf*, 962 F.3d 612, 627 (2020) (holding that § 1252(e)(3) is "not textually confined to claims arising from individual removal actions" but extends to challenges to procedures and policies adopted to implement the statute "divorced from any individual determination").

Given the scope of this nationwide class, conflicting decisions, and the tension between this Court's ruling the Ninth Circuit's ruling following *Thuraissigiam* in *Mendoza-Linares*, 51 F.4th 1146, the "substantial ground for difference of opinion" ground is easily satisfied, and this Court should certify this issue for interlocutory appeal.

**II. There is Substantial Ground for Difference of Opinion on the Constitutional Issue.**

The substantial difference standard is satisfied here as well. This Court's opinion limits *Thuraissigiam* to its facts, stating that "[g]iven the distinct claims presented in *Thuraissigiam*, the Court finds the decision's narrow holding presents no bar to Plaintiffs' claim." Op. at 10. The crux of this narrowing is that Thuraissigiam himself could not demonstrate a credible fear and was therefore subject to "remov[al] from the United States without further hearing or review," 8 U.S.C.



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

§ 1225(b)(1)(B)(iii)(I), while class members here have demonstrated a credible fear, and are therefore "detained for further consideration of the application for asylum." *Id.* § 1225(b)(l)(B)(ii). But *Thuraissigiam* was not so limited: instead, it is a reaffirmance of the principle that noncitizens like Plaintiffs have "only those rights regarding admission that Congress has provided by statute," *Thuraissigiam*, 140 S. Ct. at 1983, a contention this Court rejected, holding that "the Court's reasoning is necessarily constrained to challenges to admissibility to the United States." Op. at 11-12.

There is a "substantial ground for difference of opinion" on this holding. The Supreme Court was explicit that in overturning the Ninth Circuit in *Thuraissigiam*, it was reaffirming decades of case law that stand for the proposition that noncitizens without substantial connection to this country apprehended shortly after their illegal entry have only those due process rights provided by statute. *See Thuraissigiam*, 140 S. Ct. at 1982 (rejecting the Ninth Circuit's decision as "contrary to more than a century of precedent"). This holding has roots in the foundational principle that "an alien on the threshold of initial entry stands on a different footing," *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), and "[w]hatever the procedure authorized by Congress is, it is due process as far as" the noncitizen seeking entry is concerned, *Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950). *See also United States v. Verdugo-Urquidez,* 494 U.S. 259, 271 (1990). The fact that Plaintiffs physically entered the country is therefore of no moment: they stand on no different constitutional footing than noncitizens stopped short of entry. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *Rodriguez v. Robbins,* 715 F.3d 1127, 1141 (9th Cir. 2013)*; Barrera-Echavarria v. Rison,* 44 F.3d 1441, 1450 (9th Cir. 1995); *Alvarez-Garcia v. Ashcroft,* 378 F.3d 1094, 1097 (9th Cir. 2004); *Kwai Fun Wong v. United States,* 373 F.3d 952,



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

971 (9th Cir. 2004); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1085 (9th Cir. 2011) ("Congress could have created an expedited removal scheme based entirely on the [Secretary's] discretion, . . . [but] it created" "limited procedural rights for arriving aliens" subject to expedited removal.). The Ninth Circuit has applied this reasoning to noncitizens in the expedited removal process following *Thuraissigiam*, noting the "unique constitutional status of arriving aliens with no ties to the United States" that allowed Congress to explicitly bar nearly all judicial review of expedited removal orders. *Mendoza-Linares*, 51 F.4th at 1148. It has also been explicit that "in the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides." *Guerrier*, 18 F.4th at 310–13.

This Court also rejected *Thuraissigiam* because "Plaintiffs do not challenge the admission process in any way or assert a right to remain in the United States," and instead analyzed Plaintiffs' claims as pure detention claims. Op. at 12. But even in contexts where noncitizens had more substantial ties to the United States than Plaintiffs, no court has ever held an unadmitted noncitizen apprehended at or near the border to be immediately entitled to either release or a bond hearing. This Court relied on *Zadvydas v. Davis*, 533 U.S. 678 (2001) for the proposition that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id*. at 693. In *Zadvydas,* the Supreme Court articulated a six-month period of presumptively reasonable detention under 8 U.S.C. § 1231. Even there the Court declined to recognize a claim before the six month mark, and qualified its holding by noting that presumption "does not mean that every alien not removed must be released after six months." *Id.* at 701. The Court further qualified that noncitizens "who have not yet gained initial admission to this country"—such as Plaintiffs—present a very "different question" from the



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

admitted section 1231 detainees in *Zadvydas*. Id. at 682. And while *Zadvydas* instructs that "the Due Process Clause applies to all 'persons' within the United States," *id*. at 693, it does not indicate that "entry" is equivalent to "presence." Instead, *Zadvydas* underscores that the critical inquiry in ascertaining what due process rights a noncitizen has is whether or not he has *entered* under the law, even if he is physically *present* in the United States. Thus, "despite nine years' presence in the United States, an 'excluded' alien 'was still in theory of law at the boundary line and had gained no foothold in the United States,'" *id.* (quoting *Kaplan v. Tod,* 267 U.S. 228, 230 (1925)), and similarly, an "alien 'paroled into the United States pending admissibility had not effected an entry.'" *Id.* (quoting *Leng May Ma v. Barber,* 357 U.S. 185, 188-90 (1958)). Moreover, *Zadvydas* confirms that even where a noncitizen has "entered" he may be detained without bond for an extended period consistent with a valid government interest. Thus, *Zadvydas* demonstrates that Plaintiffs' unique status as unadmitted noncitizens apprehended at or near the border prevents them from stating a uniform claim to release within seven days of transfer to removal proceedings.

The Court also rejected the applicability of *Demore v. Kim*, 538 U.S. 510 (2003), because *Demore* concerned a "a narrow category of noncitizens who had committed certain enumerated crimes and found that the voluminous Congressional record before it justified denying bail given the substantial rate at which such individuals either reoffended or absconded" and "Defendants can point to no similar public safety concerns or flight risk that might apply to those, like Plaintiffs, with bona fide asylum claims and who desire to remain in the United States." Op. at 14. This disregards the fact that Congress passed § 1225(b)(l)(B)(ii) in part as a response to findings that "thousands" of noncitizens arrive in the United States each year, seek "asylum immediately upon



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

arrival," and when "released into the general population" "do not return for their hearings." H.R. Rep. No. 104-469, 117-18 (1995).

Defendants recognize that the Court is confident in its ruling and has rejected these arguments in the past, however Defendants respectfully submit that certification is appropriate because this case presents "novel legal issues" "on which fair-minded jurists might reach contradictory conclusions," which "may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese,* 643 F.3d 681, 688. Given the scope of this nationwide class, and the importance, complexity and novelty of this question after *Thuraissigiam,* the "substantial ground for difference of opinion" requirement is easily satisfied, and this Court should certify this issue for interlocutory appeal.

**III. If the Court Grants Certification, it Should also Stay Proceedings**

If the Court certifies an appeal, then the Court should also stay proceedings until either the Ninth Circuit denies the request for interlocutory review or, if the Ninth Circuit grants review, until it issues a decision. *See, e.g.*, *Jarvis v. Regan*, 833 F. 2d 149, 153 (9th Cir. 1987). "A district court has authority to stay proceedings during interlocutory appeal pursuant to 28 U.S.C. § 1292(b) both under § 1292(b) itself and the court's inherent authority to manage its docket." *United States v. Real Prop. & Improvements*, 2014 U.S. Dist. LEXIS 47135, *15 n.4 (N.D. Cal. Apr. 4, 2014). A stay is appropriate here because it will protect the parties and the court from investing time and resources in motion practice and burdensome discovery in this nationwide class. The Court recognized just this principle at the fairness hearing on January 5, 2024, when it also heard argument on Plaintiffs' motion to reopen discovery and stated "if the case goes up to the Ninth Circuit, there's no point in spending a lot of money or putting a lot of people through their paces



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458

to get this done." Tr. pg. 25 lines 9-11. This Court has also already recognized the commonsense value of a stay of proceedings during appeal, having previously stayed this case while it was before the Ninth Circuit and the Supreme Court. The same result is warranted here.

**CONCLUSION**

This Court should grant the motion to certify this case for interlocutory appeal under 28 U.S.C. § 1292(b) and stay proceedings.

RESPECTFULLY SUBMITTED this 2nd day of February, 2024.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director, District Court Section
Office of Immigration Litigation

EREZ REUVENI
Assistant Director, District Court Section
Office of Immigration Litigation

SARAH S. WILSON
Assistant Director, Appellate Section

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM, Fl. Bar #105745
Senior Litigation Counsel,
District Court Section
Office of Immigration Litigation
Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 616-4458; (202) 305-7000 (fax)
lauren.c.bingham@usdoj.gov

DAVID KIM
Trial Attorney, Appellate Section

*Attorneys for Defendants-Respondents*

I certify that this memorandum contains 4,199 words, in compliance with the Local Civil Rules.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2024, I had the foregoing electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

*/s/ Lauren C. Bingham*
LAUREN C. BINGHAM
Senior Litigation Counsel

Attorney for Defendants-Respondents



U.S. Department of Justice, Civil Division
Office of Immigration Litigation, District Court Section
PO Box 868, Ben Franklin Station
Washington, DC 20044
Telephone (202) 616-4458